UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, a foreign corporation,

       Plaintiff,

                            United States District Court Judge
                            Patrick J. Duggan, presiding
                            Michael Hluchaniuk, referral
V                            Case No.: 2:10-cv-10978

STEVEN WOODWARD,

       Defendant.

| Eric A. Buikema (P58379) | STEVEN L. WOODWARD |
| CARDELLI, LANFEAR & BUIKEMA, P.C. | In Pro Per |
| Attorneys for Plaintiff | c/o 7211 Brittwood Lane |
| 322 W. Lincoln | Flint, MI 48507 |
| Royal Oak, MI 48067 | Steve_L_woodward@yahoo.com |
| (248) 544-1100 | |
| ebuikema@cardellilaw.com | |

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

NOW COMES Plaintiff, American University of Antigua College of Medicine "AUA", and pursuant to FRCP 65 moves this Court for entry of a preliminary injunction, for the following reasons:

1. This action arises, in most basic summary, out of Defendant's ownership and publication of a website, and derivative publications, containing false and defamatory information about American University of Antigua College of Medicine ("AUA"), as well as private information about AUA students protected from disclosure under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g), and by his use of a confusingly

1

similar domain name ("www.aua-med.com") that infringes upon and/or dilutes AUA's protected trade name under Federal Statutory and common law including, but not limited to, the United States Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1125(c), and the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).

2. For the reasons set for in Plaintiff's Brief in Support of its Motion for a Preliminary Injunction, Plaintiff has a strong likelihood of success on the merits on each of its claims.

3. For the reasons set for in Plaintiff's Brief in Support of its Motion for a Preliminary Injunction, Plaintiff would suffer irreparable injury without and injunction.

4. For the reasons set for in Plaintiff's Brief in Support of its Motion for a Preliminary Injunction, the issuance of an injunction would not cause substantial harm to Defendant.

5. For the reasons set for in Plaintiff's Brief in Support of its Motion for a Preliminary Injunction, the public interest would be served by issuance of injunction.

WHEREFORE, AUA respectfully requests that this Court enter an Order:

    A. Granting AUA's Motion in its entirety;

    B. Enjoining Defendant Steven Woodward, as well as any agent, internet service provider, domain registry and/or website host acting at his direction or request:

        1. From all further publication under the internet domain name "www.aua-med.com"

        2. From the unlicensed publication, in any manner, of AUA student academic records (other than his own); and

        3. From publication of all other contents presently disseminated through his website "www.aua-med.com" by any other means or medium; and

    C. Granting AUA any other relief that this Honorable Court deems appropriate.

        Respectfully submitted,

        /s/ Eric A. Buikema
        Cardelli, Lanfear, & Buikema, P.C.
        322 W. Lincoln
        Royal Oak, MI  48067
        (248) 544-1100
        ebuikema@cardellilaw.com
        (P58379)

Dated:  April 15, 2010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, a foreign corporation,

       Plaintiff,

                                                                                    United States District Court Judge
                                                                                   Patrick J. Duggan, presiding
                                                                                  Michael Hluchaniuk, referral
V                                                                              Case No.: 2:10-cv-10978

STEVEN WOODWARD,

       Defendant.

_____

| Eric A. Buikema (P58379)<br>CARDELLI, LANFEAR & BUIKEMA, P.C.<br>Attorneys for Plaintiff<br>322 W. Lincoln<br>Royal Oak, MI 48067<br>(248) 544-1100<br>ebuikema@cardellilaw.com | STEVEN L. WOODWARD<br>In Pro Per<br>c/o 7211 Brittwood Lane<br>Flint, MI 48507<br>Steve_L_woodward@yahoo.com |
|---|---|

_____

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION
## FOR A PRELIMINARY INJUNCTION

     Plaintiff American University of Antigua College of Medicine ("Plaintiff"), by and through its attorneys Cardelli, Lanfear & Buikema, P.C., and for its Brief in support of its Motion for a Preliminary Injunction, states as follows:

i

## TABLE OF CONTENTS

I. INDEX OF AUTHORITIES……………………………………………………..…iii

II. INTRODUCTION………………………....……………………………….…..1

III. FACTUAL SUMMARY………………………………………………………...1

IV. ARGUMENT ……………………………………………………………………4

    **A. Plaintiff's Request for a Preliminary Injunction Must be Granted.**……………4

V. CONCLUSION AND RELIEF REQUESTED………...……………………..…11

## I. **INDEX OF AUTHORITIES**

## **CASES**

*Audi AG v. D'Amato*
341 F. Supp. 2d 734, 746 ( E.D. Mich. 2004)..................................................................10

*Bird v. Parsons*,
289 F.3d 865 (6th Cir. Ohio 2002) ....................................................................................7

*Brookfield Communications*,
174 F.3d at 1055 ............................................................................................................5, 6

*Campbell v. Bank One*,
79 Fed. Appx. 760 (6th Cir. Mich. 2003) ..........................................................................8

*Cardservice Int'l, Inc. v. McGee*,
129 F.3d 1258 (4th Cir. 1997) ...........................................................................................6

*Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*,
794 F.2d 38 (2d Cir. 1986) ................................................................................................9

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*,
109 F.3d 275 (6th Cir. 1997). ............................................................................................5

*Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*,
670 F.2d 642, (6th Cir. 1982). ...........................................................................................5

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (U.S. 2002) ..................................................................................................8

*GoTo.com v. Walt Disney Corp.*,
202 F.3d 1199 (9th Cir. 2000) ..........................................................................................5

*Green Prods. Co. v. Independence Corn By-Prods. Co.*,
992 F. Supp. 1070 (N.D. Iowa 1997) ................................................................................6

*Ignition Ath. Performance Group, LLC v. Hantz Soccer U.S.A., LLC*,
245 Fed. Appx. 456 (6th Cir. Mich. 2007) ......................................................................11

*Kelly Servs. v. Eidnes*,
530 F. Supp. 2d 940 (E.D. Mich. 2008). ...........................................................................9

*Merril Lynch v. Grall*,
836 F. Supp. 428 (WD Mich. 1993). ................................................................................4

*Mich. Rehab. Clinic Inc., P.C. v City of Detroit* (2004, ED Mich)
310 F Supp 2d 867. ………………………………………………………………………...4

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
920 F.2d 187 (3d Cir. 1990). …………………………………………………………….…9

*Overstreet v. Lexington-Fayette Urban County Government*,
305 F.3d 566, 578 (6th Cir. 2002). …………………………………………………….… .9

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316, 1327 (9th Cir. 1998) ……..………………………………………….… 5, 6

*People for the Ethical Treatment of Animals v. Doughney*,
263 F.3d 359 (4th Cir. 2001) ………………………………………………………….… 5

*Performance Unlimited v. Questar Publishers, Inc.*
52 F.3d 1373, 1381 (6th Cir. 1982). …………………………………………………….. 4

*Valvoline Co. v. Magic Quick Lube*,
2009 U.S. Dist. LEXIS 100944 ( E.D. Mich. Oct. 29, 2009) ……………………………… 9

*Wynn Oil Co. v. Thomas*,
839 F.2d 1183, 6th Cir. 1988). ……………………………………………………………..5

## **STATUTES AND COURT RULES**

15 U.S.C. § 1114(1). ……………………………………………………………………. 4, 7

20 U.S.C. § 1232(g) ……………………………………………………………………...1, 8

15 U.S.C. § 1125(c) ……………………………………….…..………………………… 1

15 U.S.C. § 1125(d). ……………………………………….…..……………………….....1

I.   **Introduction**

This action arises, in most basic summary, out of Defendant's ownership and publication of a website, and derivative publications, containing false and defamatory information about American University of Antigua College of Medicine ("AUA"), as well as private information about AUA students protected from disclosure under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g), and by his use of a confusingly similar domain name ("www.aua-med.com") that infringes upon and/or dilutes AUA's protected trade name under Federal Statutory and common law including, but not limited to, the United States Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1125(c), and the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).

II.   **Factual Summary**

AUA is a foreign medical school catering, in part, to students from the United States including Michigan. (Exhibit A, Plaintiff's Verified Complaint). AUA regularly places and directs students in clinical education in association with Michigan hospitals (Exhibit A). Defendant Steven Woodward is a former student of AUA (Exhibit A). As a result of misconduct, Defendant was discharged from AUA without completion of his degree (Exhibit A). Because of his dismissal from the University, Defendant initiated a lawsuit against AUA and its educational partner hospital Trinity-Health Michigan's St. Joseph Mercy Hospital in Pontiac, Michigan.[1]  Mr. Woodward alleged that AUA and/or Trinity slandered him, intentionally inflicted emotional distress, tortiously interfered with a contractual relationship, invaded a right to privacy and breached a contract. The court concluded that Mr. Woodward's allegations were baseless and granted AUA summary disposition of the same on June 30, 2008. The court

---

[1] The lawsuit was filed in the Oakland County Circuit Court on or about December 20, 2007, where it was known as Case No. 07-088103-CZ and assigned to the Honorable Shalina Kumar.

1

similarly granted summary disposition to Trinity on April 29, 2009 finding, on the merits, that the claimed defamatory remarks as to Woodward's misconduct were actually, in fact, true.

As a result of Mr. Woodward's apparent dissatisfaction with this result and with everyone and everything other than the party truly responsible for his circumstance (himself), he has now registered an internet domain name of www.aua-med.com at which he publishes reckless, false, and malicious purported "facts" about AUA in addition to other objectionable content. A specific date when Mr. Woodward commenced his endeavor is not known but it is well after AUA's first usage in trade of its own similarly named website www.auamed.org. A copy of the legitimate www.auamed.org website homepage, which Plaintiff utilizes to market and provide useful information to current and prospective students, is attached as Exhibit B. Defendant's www.aua-med.com website homepage is attached as Exhibit C.

Defendant's website represents, alleges and publishes, as if true, false and defamatory information about AUA including, by way of example and not limitation, that:

    a.    AUA routinely commits fraud upon its students;

    b.    AUA falsifies its students grades;

    c.    AUA breaches contracts;

    d.    AUA disregards student civil rights;

    e.    AUA conspires against its students;

    f.    AUA pursues unspecified and other unethical practices;

    g.    AUA has "malicious intensions" and administration and academic advisors of a "heinous nature";

    h.    AUA students are sexually assaulted;

    i.    AUA professors teach students wrong information;

j.  AUA conspires to commit fraud and violations of civil rights;

k.  AUA commits criminal activities reportable to the FBI;

l.  AUA student pass rate for USMLE medical board exams is only 22.9%;

m.  AUA contrives false evidence in student disciplinary proceedings (i.e., the hearing Mr. Woodward was provided prior to dismissal and refused to even attend);

n.  AUA colluded with St. Joseph Hospital to maliciously end Mr. Woodward's career, conspired, abused its power, committed perjury and is otherwise immoral and unethical;

o.  AUA agents are liars;

p.  The locality of AUA is full of "rape, murder, fraud, and government corruption."

(See Exhibits A and C).

Defendant's website further publishes, in a manner not repeated here, and without consent of the university or its affected students, other students' identities and personal information including grades and academic information. AUA suffers irreparable injury and harm to its reputation each day that Mr. Woodward's appalling site is permitted to remain available. Moreover, irreparable injury to AUA and its affected students occurs, for which there is not an adequate remedy at law, by virtue of Mr. Woodward's unsanctioned and unauthorized publication of federally protected private academic information. As such, Plaintiff was forced to file this lawsuit and now appropriately seeks injunctive relief from this Honorable Court.

### III. Legal Argument

#### A. Plaintiff's Request for a Preliminary Injunction Must be Granted.

There are four factors to be balanced when considering a motion for preliminary injunction; (1) whether movant has a strong likelihood of success on the merits, (2) whether movant would suffer irreparable injury without injunction, (3) whether issuance of an injunction would cause substantial harm to others, and (4) whether the public interest would be served by issuance of injunction. *Mich. Rehab. Clinic Inc., P.C. v City of Detroit* (2004, ED Mich) 310 F Supp 2d 867. None of the four factors considered for injunctive relief is a prerequisite to the issuance of a preliminary injunction; rather, the Court must balance the factors in deciding the propriety of a preliminary injunction. *Performance Unlimited v. Questar Publishers, Inc.* 52 F.3d 1373, 1381 (6th Cir. 1982). Further, "[t]he moving party need show less likelihood of success on the merits if the other factors indicate the Court should issue a preliminary injunction." *Merril Lynch v. Grall*, 836 F. Supp. 428, 432 (WD Mich. 1993). As described in more detail below, each of these factors weighs in favor of Plaintiff's request that a Preliminary Injunction be issued.

##### 1. Plaintiff can Demonstrate a Strong Likelihood of Success on the Merits

*a. Trademark/Tradename Infringement*

Section 32 of the Lanham Act provides a cause of action against "[a] person who . . . uses in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion." 15 U.S.C. § 1114(1).

The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by

the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). In determining whether a "likelihood of confusion" exists, we examine eight factors: (1) strength of the plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) intent of the defendant in selecting the mark; and (8) likelihood of expansion of the product lines. *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). These factors "imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988). "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Daddy's Junky Music Stores*, 109 F.3d at 280. In the Internet context, similarity of the marks, relatedness of the goods or services, and simultaneous use of the Internet as a marketing channel are the three most important factors in finding a likelihood of confusion. *GoTo.com v. Walt Disney Corp.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (citing *Brookfield*, 174 F.3d at 1054 n.16)

Words in many domain names can and do communicate information as to the source or sponsor of the web site. *See, e.g., People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 366 (4th Cir. 2001) ("The domain name peta.org simply copies PETA's Mark, conveying the message that it is related to PETA."); *Brookfield Communications*, 174 F.3d at 1055, 1066 ("The domain name is more than a mere address: like trademarks, second-level domain names communicate information as to source. . . . When a firm uses a competitor's trademark in the domain name of its web site, users are likely to be confused as to its source or sponsorship."); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1327 (9th Cir. 1998) ("We

5

reject [the] premise that a domain name is nothing more than an address. A significant purpose of a domain name is to identify the entity that owns the web site."); *Cardservice Int'l, Inc. v. McGee,* 950 F. Supp. 737, 741 (E.D. Va.), *aff'd,* 129 F.3d 1258 (4th Cir. 1997) ("[A] domain name is more than a mere internet address. It also identifies the internet site to those who reach it, much like ... a company's name identifies a specific company."). In fact, "customers who do not know what a company's domain name is will often guess that the domain name is the same as the company's name" or trademark. *Green Prods. Co. v. Independence Corn By-Prods. Co.*, 992 F. Supp. 1070, 1076-77 (N.D. Iowa 1997); *see also Brookfield*, 174 F.3d at 1044-45 ("Web users often assume, as a rule of thumb, that the domain name of a particular company will be the company name followed by '.com.' . . . Sometimes, a trademark is better known than the company itself, in which case a Web surfer may assume that the domain address will be 'trademark'.com."); *Panavision Int'l*, 141 F.3d at 1327 ("A customer who is unsure about a company's domain name will often guess that the domain name is also the company's name.").

Here, Defendant publishes information under a domain name of www.aua-med.com. Plaintiff has published legitimate information about its educational institution under the domain name www.auamed.org and has otherwise utilized the root term "auamed" in trade since long before Defendant first utilized the above referenced domain name. Defendant's use of the confusingly similar name, and resultant accessibility by any consumer utilizing common search terms employed to glean legitimate information about the University is likely to cause confusion as to whether the Defendant's website is somehow endorsed, sponsored, licensed or affiliated with the AUA.

Defendant's actions, along with the use on the offending website of information purportedly from, sponsored or published by AUA (including items bearing the AUA logo)

constitute willful infringement upon AUA's exclusive rights in its tradename and trademarks under 15 U.S.C. § 1114. Defendant's use of the similar domain name, including copies, reproductions and/or counterfeits of the AUA logo on the site itself has been, and continues to be done with the intent to cause confusion, mistake and harm as to the source or sponsorship of the information disseminated.

  b. *Infringement Under the ACPA*

  Plaintiff is likely to succeed on the merits of its claim for infringement under the ACPA. The ACPA was enacted in 1999 to address "a new form of piracy on the Internet caused by acts of 'cybsersquatting,' which refers to the deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners." S. Rep. No. 106-140, at 4 (1999). Cybersquatting involves the registration as domain names of well-known trademarks by non-trademark holders who then try to sell the names back to the trademark *Bird v. Parsons*, 289 F.3d 865, 880 (6th Cir. Ohio 2002)

> The ACPA provides, in pertinent part, as follows:
>
>> A person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person (i) has a bad faith intent to profit from that mark . . . and (ii) registers, traffics in, or uses a domain name that--
>>
>> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>>
>> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark . . . .

*Bird v. Parsons*, 289 F.3d 865, 880 (6th Cir. Ohio 2002)

  Here, Defendant has registered, in bad faith and with intent to profit, a domain name confusingly similar to that utilized by AUA in the course of its business. The AUA domain is

7

distinctive and has been utilized in trade (as has its root tradename ("AUAMED") since long before Defendant's offending registration and use of www.aua-med.com. The AUA tradename and domain name are widely recognized by the general consuming public as a designation of services and source of same from AUA. Defendant's conduct is not a fair usage. Defendant has attempted to profit from the use of this site directly and by leveraging the same in the prior litigation in which he was a plaintiff.

 c. *Willful Violation of the FERPA*

The Family Educational Rights and Privacy Act of 1974, 20 U.S.C.S. § 1232g, prohibits the federal funding of educational institutions that have a policy or practice of releasing education records to unauthorized persons. *Gonzaga Univ. v. Doe*, 536 U.S. 273 (U.S. 2002). Plaintiff's actions of releasing sensitive educational records of other students puts AUA in violation of the FERPA. Plaintiff's actions could cause the federal government to cease providing funds which AUA relies upon to operate its school. Plaintiff's selfish and slanderous actions undoubtedly constitute a willful violation of the FERPA. As such, AUA is likely to prevail on the merits on this claim.

 d. *Defamation*

To establish a claim for defamation, Plaintiff "must establish each of the following four elements: '(a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm, (defamation per se) or the existence of special harm caused by the publication (defamation per quod).'" *Campbell v. Bank One*, 79 Fed. Appx. 760, 762 (6th Cir. Mich. 2003).

Defendant publishes a website in which he intentionally, maliciously and/or recklessly or negligently publishes falsehoods about AUA. By use of direct words, narrated video clips, weblinks and "YOUTUBE" videos of his making, Defendant promulgates as if true the above-listed "facts" about AUA. Each and every one of these "facts" is false. Defendant's statements are undisputedly unprivileged because he is knowingly and deliberately publishing false statements about AUA. Further, Plaintiff's falsehoods are published to millions of third party users of the various websites listed above.

### 2. Plaintiff is Suffering and will Continue to Suffer Irreparable Harm if a Preliminary Injunction is not Issued Against Defendant.

A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages. *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 578 (6th Cir. 2002). *Kelly Servs. v. Eidnes,* 530 F. Supp. 2d 940, 951 (E.D. Mich. 2008). "[M]any courts have stated that where the plaintiff makes a strong showing of likely confusion, irreparable injury follows as a matter of course." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 196 (3d Cir. 1990). As stated by the Second Circuit,[f]or many years we have consistently held that a preliminary injunction should usually issue when the use of a mark creates a likelihood of confusion in the consumers' minds as to the ownership or sponsorship of a product. Our cases clearly say that establishing a high probability of confusion as to sponsorship almost inevitably establishes irreparable harm. *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 41 (2d Cir. 1986) (citations omitted). *Valvoline Co. v. Magic Quick Lube*, 2009 U.S. Dist. LEXIS 100944 ( E.D. Mich. Oct. 29, 2009) The *Valvoline* Court found that the loss sustained by a trademark holder from the unauthorized use of its trademarks is the loss of the trademark holder's ability to control its reputation. "In the context of trademark litigation, 'grounds for irreparable harm include loss

9

of control of reputation, loss of trade, and loss of goodwill,' regardless of whether the infringer is putting the mark to a good or favorable use." *Audi AG v. D'Amato*, 341 F. Supp. 2d 734, 746 ( E.D. Mich. 2004)

Plaintiff utilizes its own website to market and provide useful information to prospective students, AUA suffers irreparable injury and harm to its reputation each day that Mr. Woodward's appalling site is permitted to remain available. Moreover, irreparable injury to AUA and its affected students occurs, for which there is not an adequate remedy at law, by virtue of Mr. Woodward's unsanctioned and unauthorized publication of federally protected private academic information. As explained above, Defendant's actions could result in the federal government ceasing to provide funding to AUA pursuant to the FERPA. It is clear that AUA will suffer irreparable harm if injunctive relief is not granted.

### 3. **An Issuance of Injunction Against Defendant Would Not Cause Substantial Harm to Others**

Here, Defendant cannot seriously argue that he would be harmed by the issuance of a Preliminary Injunction. Defendant simply uses this website as an avenue to disseminate false and disparaging "information" about AUA. Defendant is simply a disgruntled former student seeking to exact revenge against AUA in any manner possible. An injunction preventing Defendant's illegal and improper actions will not serve to "harm" Defendant. If anything, it will serve to help Defendant by ending his tortious and illegal conduct. This factor again weighs in favor of granting the preliminary injunction because the harm to Plaintiff far outweighs any potential harm to Defendant.

### 4. Public Interest would be Served by the Issuance of Injunction

The Court of Appeals has held that there is a public interest in "preventing confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Ignition Ath. Performance Group, LLC v. Hantz Soccer U.S.A., LLC*, 245 Fed. Appx. 456, 460 (6th Cir. Mich. 2007). Here, this is exactly the harm that Plaintiff seeks to avoid by requesting a preliminary injunction. Defendant is publishing a website with a confusingly similar name to Plaintiff's through which is his promulgating false and defamatory statements about AUA. AUA's current and prospective students utilize AUA's legitimate website to access important information. Plaintiff's defamatory website serves no public interest whatsoever; its sole purpose is to spread lies and slanderous remarks about AUA. This final factor clearly weighs in favor of AUA.

### IV. CONCLUSION AND RELIEF REQUESTED

WHEREFORE, AUA respectfully requests that this Court enter an Order:

A. Granting AUA's Motion in its entirety;

B. Enjoining Defendant Steven Woodward, as well as any agent, internet service provider, domain registry and/or website host acting at his direction or request:

1. From all further publication under the internet domain name "www.aua-med.com"

2. From the unlicensed publication, in any manner, of AUA student academic records (other than his own); and

3. From publication of all other contents presently disseminated through his website "www.aua-med.com" by any other means or medium; and

C. Granting AUA any other relief that this Honorable Court deems appropriate.

                                          Respectfully submitted,

                                              /s/ Eric A. Buikema
                                        Cardelli, Lanfear, & Buikema, P.C.
                                        322 W. Lincoln
                                        Royal Oak, MI  48067
                                        (248) 544-1100
                                        ebuikema@cardellilaw.com
                                        (P58379)

Dated:  April 15, 2010