UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE,

      Plaintiff,

v.                                           Case No. 10-10978
                                            Honorable Patrick J. Duggan

STEVEN L. WOODWARD,

      Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR A PRELIMINARY INJUNCTION AND DEFENDANT'S MOTION FOR SANCTIONS AND TO DISMISS

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on December 16, 2010 .

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                       U.S. DISTRICT COURT JUDGE

On March 11, 2010, Plaintiff American University of Antigua College of Medicine ("AUA") filed this lawsuit against Defendant Steven L. Woodward ("Woodward"), seeking to shut down Woodward's internet website with the domain name www.aua-med.com. Presently before the Court are the following motions: (1) AUA's Renewed Motion for a Preliminary Injunction, filed November 1, 2010 (Doc. 45); and (2) Woodward's Motion for Sanctions and Motion for Dismissal, filed November 8, 2010 (Doc. 51). Responses have been filed to both motions and, on December 13, 2010, this Court informed the parties that it is dispensing with oral argument with respect to the

motions pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court denies the motions.

**Factual and Procedural Background**

AUA is a medical school located in Antigua which caters, in part, to students from the United States. AUA maintains a website with the domain name: www.auamed.org. Woodward is a former student of the medical school who was discharged without completion of his degree. Woodward filed a lawsuit against AUA and others regarding his discharge, but was unsuccessful. He started the aua-med.com website apparently to express his dissatisfaction with AUA and his belief that AUA engages in various forms of wrongful conduct and misrepresents the safety of the island on which it is located and its students' passage rates on the United States Medical Licensing Examination.

Contending that Woodward's website threatens injury to its reputation, AUA filed the instant lawsuit on March 11, 2010, alleging that Woodward's maintenance of the website and statements contained on the website violate federal and state law. Specifically, AUA alleges: (I) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1); (II) infringement under the Anticybersquatting Consumer Protection Act of 1999 ("ACPA"),15 U.S.C. § 1125(d); (III) a violation of the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g; and (IV) defamation in violation of Michigan law.

On April 15, 2010, AUA filed a motion for preliminary injunction. Woodward previously informed the Court that he would be departing the country on April 20, 2010,

due to an employment opportunity. Therefore, the Court scheduled a hearing on AUA's motion before Woodward left. Woodward and counsel for AUA appeared at the preliminary injunction motion hearing on April 19, 2010.

At the motion hearing, the Court began by discussing with AUA's counsel the merits of AUA's claims against Woodward, expressing some doubt as to the likelihood of AUA's success at least with respect to its claims under the Lanham Act, ACPA, and Family Educations Rights and Privacy Act of 1974. (Doc. 19 at 1-22.) The Court then engaged in a discussion with AUA's counsel and Woodward concerning the alleged defamatory statements on Woodward's website. Discerning that it would be impossible in the time allowed to analyze the truth or falsehood of the various statements on the site, the Court suggested to Woodward the possibility of taking down his website until he returned to the country and could litigate this case.

Eventually, an agreement on the record was reached where Woodward agreed to modify his website to reflect on the main page that it is "under maintenance" or "under construction" and to rename the index file to prevent anyone from automatically going into the directory and bringing up its contents. (*Id*. at 51-56, 59.) Woodward also agreed to mark videos he posted on YouTube as "private" so they would not be accessible to anyone but himself. (*Id*. at 59.) Based on Woodward's representations of what he would do, the Court found it unnecessary to enter a preliminary injunction. (*Id*. at 60.)

According to AUA, in mid-July 2010, after returning to the country, Woodward

republished the contents of his website without first seeking and obtaining leave of the Court. AUA therefore filed the renewed motion for preliminary injunction that currently is pending. Contending that it is likely to succeed on the merits of its defamation claim, AUA asks the Court to enjoin Woodward from the following: (1) "[f]rom all further publication under the internet domain name 'www.aua-med.com'"; (2) "[f]rom the unlicensed publication, in any manner, of AUA student academic records (other than his own)"; and (3) "[f]rom publication of all other contents presently disseminated through his websites [www.aua-med.com](www.aua-med.com) and [www.aua-vet.com](www.aua-vet.com) including associated YouTube videos by any other means or medium." (Doc. 45 at 3.)

In his motion for sanctions and dismissal, Woodward claims that AUA has removed content from its website and appears to be arguing that this inhibits his ability to defend against AUA's claims. Specifically, Woodward asserts that AUA removed information that he would have shown to be false. Woodward asks the Court to impose sanctions against AUA for this conduct, including dismissing its action against him.

## Discussion

A court must balance four factors to determine whether to issue a preliminary injunction: (1) whether the movant has a substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without an injunction; (3) whether issuance of an injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Hamilton Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (citation omitted). As suggested

previously, AUA relies on the success of its defamation claim to support its present request for a preliminary injunction.  Even assuming that AUA could demonstrate a likelihood of success with respect to this claim and that other factors favor AUA, the issuance of an injunction– at least prior to a full adjudication of the merits– is a wholly inappropriate form of relief.

A fundamental principle emerging from the Supreme Court's decisions interpreting the First Amendment is that governmental units and courts may not impose a prior restraint on speech.  *See Near v. Minnesota ex rel Olson*, 283 U.S. 697, 713-14, 51 S. Ct. 625 (1931) ("... prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights."); *see also Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 560, 96 S. Ct. 2791, 2803 (1976); *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 418-19, 91 S. Ct. 1575, 1577-78 (1971) ("[C]ourts do not concern themselves with the truth or validity of the publication.  Under *Near* . . . the injunction, so far as it imposes prior restraint on speech and publication constitutes an impermissible restraint on First Amendment rights.")  "Temporary restraining orders and permanent injunctions– *i.e.*, court orders that actually forbid speech activities– are classic examples of prior restraints."  *Alexander v. United States*, 509 U.S. 544, 550, 113 S. Ct. 2766, 2771 (1993) (citation omitted).  In *Near*, the Court invalidated a court order that perpetually enjoined the named party, who had published a newspaper containing articles found to violate a state nuisance statute, from producing any future "malicious, scandalous or defamatory" publication.  283 U.S. at 706, 51 S. Ct. at 627.

In addition to the First Amendment's "heavy presumption" against prior restraints, *see New York Times Co. v. Sullivan*, 403 U.S. 713, 714, 91 S. Ct. 2140, 2141 (1971), "courts have long held that equity will not enjoin a libel." *Metro. Opera Ass'n v. Local 100, Hotel Employees and Rest. Emp. Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001) (citing cases); *see also Kramer v. Thompson*, 947 F.2d 666, 677-78 (3d Cir. 1991) (following "nearly two centuries of widespread acceptance at common law" to conclude that equity will not enjoin a defamation). "'The usual rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages.'" *Lothschuetz v. Carpenter*, 898 F.2d 1200, 1206 (6th Cir. 1990) (Guy, J., majority opinion, controlling except as to injunctive relief for defamatory speech) (quoting *Cmty. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (D.C. Cir.1987)).

The Court acknowledges that some courts have permitted an exception to this long-standing, traditional rule. In fact, a majority of the court in *Lothschuetz* granted "a narrow and limited injunction" as an exception to this rule, prohibiting the defendant "from continuing and reiterating the same libelous and defamatory charges" found to be false and libelous. 898 F.2d at 1208-09 (Wellford, J., for the court, concurring in part, dissenting in part.) The court made it clear, however, that such an injunction only should be permitted for statements found by the trier of fact to be false and libelous. *Id*. at 1209. Where this "modern rule" has been followed, there has been a full adjudication of the merits before an injunction has issued and the judge or jury has made a final determination that the statements to be enjoined are false and libelous. *See, e.g., Lassiter*

6

*v. Lassiter*, 456 F. Supp. 2d 876, 884 (E.D. Ky. 2006); *Kramer*, 947 F.2d at 676-77 (summarizing cases applying the modern rule but concluding that the Pennsylvania Supreme Court would adhere to the traditional rule).

At this stage of the proceedings, there has been no final determination that any statements on Woodward's website are false and defamatory. Precedent therefore instructs that it would be inappropriate to grant AUA's request for an injunction restraining Woodward's speech and website publications. Moreover, the Court notes that even if an injunction ultimately is entered in this case, it must "be clearly and narrowly drawn so as not to prohibit protected expression."[1] *See Lassiter*, 456 F. Supp. 2d at 884. The injunctive relief AUA requests in its motion reaches far beyond the statements on Woodward's website alleged to be false and defamatory and seeks to suppress *in toto* Woodward's lawful exercise of his First Amendment rights via the internet.

With respect to Woodward's motion for sanctions and motion to dismiss, the same constitutional concerns that foreclose the Court's restraint on Woodward's speech on his website apply to Woodward's request for sanctions based on AUA's modification of the contents of its website. Moreover, Woodward fails to identify a basis for finding AUA's conduct sanctionable. Furthermore, it is unclear what relevance the alleged false

---

[1]This is not to suggest that this Court would follow the modern rule and grant AUA an injunction following a final adjudication of its defamation claim. Notably, the Sixth Circuit was applying District of Columbia and not Michigan law in *Lothscheutz* in granting injunctive relief. Furthermore, the Court finds a number of strong arguments for *not* following the modern rule. *See, e.g.,* Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse L. Rev. 157 (2007).

statements *on AUA's website* have to the issues in this case.  Finally, to the extent they are relevant, Woodward is aware of what those statements were, appears to possess evidence showing what statements AUA previously made, and therefore can inform the Court and/or trier of fact of the same.

Accordingly,

**IT IS ORDERED**, that Plaintiff's Renewed Motion for a Preliminary Injunction (Doc. 45) is **DENIED**;

**IT IS FURTHER ORDERED**, that Defendant's Motion for Sanctions and to Dismiss (Doc. 51) is **DENIED**.

s/PATRICK J. DUGGAN<br>
UNITED STATES DISTRICT JUDGE

Copies to:
Eric A. Buikema, Esq.

Steven Woodward
7211 Brittwood Lane
Flint, MI   48507