Case 2:10-cv-10978-PJD-MJH

FILED
2011 JAN 28 P 1:52
U.S. DIST COURT CLERK
EAST DIST. MICH
FLINT

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

Plaintiff,

V                                    CASE No.: 2:10-cv-10978-PJD-MJH
                                     Judge Patrick J. Duggan
                                     Judge Michael Hluchaniuk, referral

STEVEN WOODWARD,

Defendant,

**Defendant's Motion to Compel**

## Defendant's Motion to Compel

**List of Exhibits:**
Exhibit 1: Proof of Service
Exhibit 2: Email from NBME Associate Counsel, Suzanne Williams
Exhibit 3: AUA published USMLE Step 1 pass rates
Exhibit 4: Document 22 Transcript
Exhibit 5: Document 51
Exhibit 6: UHSA published USMLE Step 1 pass rates
Exhibit 7: Medical Education in the Caribbean
Exhibit 8: Step I v. GPA
Exhibit 9: About the NBME
Exhibit 10: USMLE Performance Data
Exhibit 11: 2007 USMLE Performance Data
Exhibit 12: Step I Table 1 – 2006-2007 STEP I Administrations
Exhibit 13: Student Names and STEP 1
Exhibit 14: Transcripts
Exhibit 15: Plaintiff's Rule 26 Disclosures

**1.** The Defendant, Steven Woodward, has requested information from the National Board of Medical Examiners, NBME, via subpoenas, **Exhibit 1**.

**2.** The counsel for the NBME has refused to provide the Defendant with the requested information and/or documentation.

The NBME quotes in **Exhibit 2**:

**"I'm certain you can appreciate our need to maintain the confidentiality of examinee records in our possession."**

**3.** The information sought can not be seen as private, since the Plaintiff has published the alleged information and/or admitted that the information sought by the Defendant is in fact true.

The Defendant is merely validating information already disclosed by the Plaintiff in **Exhibit 3**,

2

**"Since AUA's inception, USMLE Step 1 first-time pass rates for all students is 80.6%"**

Mr. Buikema quotes in **Exhibit 4**,

**"The passage rate is approximately 80 percent of better"**.

This data is according to an affidavit, signed by the President of AUA.

This, 80.6%, evidence and data has been deleted from www.auamed.org and is in contention in both Docket 1 and Docket 51, **Exhibit 5** claims.

There are only two published medical schools on Antigua, the Plaintiff and the University of Health Sciences Antigua, UHSA.

UHSA publishes in **Exhibit 6**,

**"We are proud to say that more than 90% of our graduates pass the USMLE on their first attempt at taking the test."**


Academic Medicine, Vol. 83, No. 10 / October 2008 Supplement, **Exhibit 7**, publishes on page S35 "First-Attempt United States Medical Licensing Examination (USMLE) Exam Pass Rates by Country of Medical School (1993-2007)"

Table 1 states for Antigua and Barbuda "% Pass Rate" = **22.9%**

Since there are only two medical schools on Antigua AUA(80.6%) and UHSA(90%) the numbers do not compute.

**(80.6% + 90% CAN NOT EQUAL 22.9%)**

The Plaintiff published **Exhibit 8** titled "Step 1 v. GPA" and admits it contains student grades.  This published and admitted data demonstrates clearly that the published 80.6% pass rate is not accurate.

The NBME manages the "United States Medical Licensing Examination", USMLE.

As published on their Web site: http://www.nbme.org/about/index.html, **Exhibit 9**.

The NBME has access to the information sought as demonstrated that they can issue

transcripts of containing the information sought, **Exhibit 14**.

Transcripts can be obtained from the NBME:

http://www.usmle.org/Scores_Transcripts/transcripts.html

The NBME publishes the performance data sought as demonstrated in **Exhibit 10**

USMLE Performance Data: http://www.usmle.org/Scores_Transcripts/performance.html

The NBME publishes the data sought to exact numbers as demonstrated in **Exhibit 11**

and **Exhibit 12**: Table 1, Examinees from Non-US/Canadian Schools, 1st Takers, 2007:

#Tested = 15,762

%Passing = 70%

**4.** The Plaintiff published, disclosed, and admits that student grades were disclosed.

The data in **Exhibit 13** is data disclosed by the Plaintiff in **Exhibit 8**.

The Defendant is requesting verification of this data from the NBME.

The NBME manages and provides this data as is evident in **Exhibit 14**, "Transcripts,

Requesting a transcript of USMLE scores"

The Defendant is seeking the following information/documentation verification from the

NBME:

**A:** The Defendant requests the verification of annual aggregate first time test taker

USMLE STEP 1 performance data, pass/fail rates, for the Plaintiff's students, from 2004

until present.

This is not a request of new or private data, since the Plaintiff has published these alleged

scores. This request is merely a verification of data the Plaintiff published and disclosed.


**B:** The Defendant requests the annual aggregate number of first time test taker students

from the Plaintiff.


**C:** The Defendant requests the verification of the Step 1 grades for the students listed in

**Exhibit 13**. The Defendant is not seeking other student grades, only verification of the

data the Plaintiff already disclosed and admitted.

**National Board of Medical Examiners**

**3750 Market St.**

**Philadelphia, PA 19104**

Suzanne Williams, email: SWilliams@NBME.org

Patricia Weaver, email:PWeaver@NBME.org

The Plaintiff intends on presenting in trial "E. Agents, representatives, and/or records

custodians of USMLE" as published in Plaintiff's Rule 26 Disclosures, **Exhibit 15**.

The Defendant requests this data for their defense for the witness/records the Plaintiff

intends to produce in trial.

Steven Woodward
7211 Brittwood Ln
Flint, MI 48507
(810)235-7267

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 1/10/11 | 3750 Market St Philadelphia Pa 19104 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| National Board of Medical Examiner | Patricia Weaver Signed for service at 2:08pm |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Brandon Segal | Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on   1/11/10
                    DATE

SIGNATURE OF SERVER

Seagull Legal Services
PO Box 1706
ADDRESS Southampton, PA 18966

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT 1

**From:** Suzanne Williams (SWilliams@NBME.org)
**To:** steve_1_woodward@yahoo.com;
**Date:** Mon, January 24, 2011 12:50:15 PM
**Cc:**
**Subject:** RE: Woodward vs AU

Mr. Woodward,

I am responding to your second inquiry concerning the status of our reply to the three subpoenas delivered to the NBME on January 10, 2011.  As I noted in my earlier email, the NBME responds to subpoenas that are properly issued from a court with jurisdiction over NBME and otherwise comply with the applicable rules (in this case, FRCP 45).  The subpoenas you are inquiring about do not satisfy this criteria.  I'm certain you can appreciate our need to maintain the confidentiality of examinee records in our possession.  In addition, some of the information sought in the aforementioned subpoenas is vague, overly broad and may not be produced or stored by the NBME.  We would therefore have objections to the subpoena even if it had been properly issued.  Please refer to FRCP 45 and direct any future inquiries on this matter to my attention in writing.  Lastly, while we certainly believe that schools should accurately describe the USMLE passage rates of their students, concerns such as those referenced in your latest emails are appropriately addressed to the school itself or to organizations that regulate the schools, such as accrediting bodies, not to NBME.

Thank you.

Suzanne Williams
Associate Counsel , NBME


**From:** Steve Woodward [mailto:steve_1_woodward@yahoo.com]
**Sent:** Monday, January 24, 2011 12:34 PM
**To:** Suzanne Williams; Trish Weaver
**Subject:** Woodward vs AU

Dear Ms. Weaver and Ms. Williams,

Ms Weaver singed for three subpoenas that I served the NBME on or about January 10th, 2011.

Please reply with the intentions of the NBME to provide me with the requested data.

Thank you for your time,

Steven Woodward

This email and any attachments are intended for the sole use of the named recipient(s) and contain(s) confidential information that may be proprietary, privileged or copyrighted under applicable law. If you are not the intended recipient, do not read, copy, or forward this email message or any attachments. Delete this email message and any attachments immediately.

**EXHIBIT 2**

ECFMG & USMLE Information | ECFMG | AUA - Windows Internet Explorer

File   Edit   View   Favorites   Tools   Help

auamed.org

Norton

GRADUATE SUCCESS
POST-GRADUATE TRAINING
GRADUATE AFFAIRS DEPT
RESIDENCY APPOINTMENTS
ALUMNI PROFILES
CONTACT ALUMNI
SPEAKING INVITATION TO
HOSPITAL ADMINISTRATORS

ECFMG Certification is required to obtain an unrestricted license to practice medicine in the United States. The purpose of ECFMG Certification is to assess the readiness of international medical graduates to enter U.S. residency and fellowship programs that are accredited by the ACGME. More information can be found on the official website www.ecfmg.org

## USMLE

Step 1 is utilized to test a student's overall basic science knowledge before entering clinical rotations. A student is eligible to sit for Step 1 after successfully passing the Basic Science component of medical education and the fifth semester. A student must sit for Step 1 for the first time within six (6) months of eligibility. Furthermore, a student must pass the USMLE Step 1 in no more than three (3) attempts within one (1) calendar year of becoming eligible to do so.

**USMLE Pass Rates for AUA student test takers reported through 04/15/09:**

- Since AUA's inception, USMLE Step 1 first-time pass rates for all students is 80.6%
- For AUA students with an overall Basic Sciences GPA of 3.0 and higher, 98.6% passed USMLE Step 1 on the first attempt
- Those with a cumulative GPA of 3.5 or higher, 100% passed on the first attempt



1-(888) 282-8633 (1-888-AUA-UMED) · TOLL-FREE ADMISSIONS LINE 1-(212)661-8899 · GENERAL QUESTIONS

AMERICAN UNIVERSITY OF ANTIGUA C/O GCLR, L.L.C. | 2 WALL STREET, 10TH FLOOR | NEW YORK, NY 10005

ALL CONTENT 2008 GCLR, L.L.C. ALL RIGHTS RESERVED.

**EXHIBIT 3**

Internet     125%

**Argument By Mr. Buikema**
**Monday/April 19, 2010**                                         20

1          **THE COURT:**  Next one, AUA's professors teach

2     students wrong information.  How does the President

3     know that's not true?

4          **MR. BUIKEMA:**  Because he's responsible for

5     generating a curriculum and overseeing the curriculum.

6          **THE COURT:**  Does he know what every professor is

7     saying in class?

8          **MR. BUIKEMA:**  He signed the affidavit based upon

9     his firsthand knowledge and review of the facts to the

10    best of his knowledge, information, and belief, Your

11    Honor.

12         **THE COURT:**  Let's go to page three, paragraph "l":

13    "AUA students pass rate for USMLE medical board exams

14    is only 22.9%."

15         **MR. BUIKEMA:**  Yes.

16         **THE COURT:**  That's false?

17         **MR. BUIKEMA:**  That's absolutely false.  The

18    passage rate is approximately 80 percent or better.

19    USMLE scores are not published by Universities or

20    institutions to begin with.  So, there's no way for Mr.

21    Woodward to make that representation in the first

22    place.  It's reckless.

23         USMLE scores are published by location.  And if

24    you fair it out, that allegation in Mr. Woodward's

25    website, by clicking on the appropriate links, you'll

*10-10978; American University of Antigua v. Steven Woodward*

# EXHIBIT 4

51

Case 2:10-cv-10978-PJD-MJH





UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

Plaintiff,

V                                    CASE No.: 2:10-cv-10978-PJD-MJH
                                     Judge Patrick J. Duggan
                                     Magistrate Judge

STEVEN WOODWARD,

Defendant,

### Defendants Motion for Sanctions and Motion for Dismissal

**EXHIBIT 5**                                          1

**Defendants Motion for Sanctions and Motion for Dismissal**

**List of Exhibits:**
1. Docket 1 pages 4,5 and 9,10
2. April 19, 2010 Hearing Transcripts
3. www.auamed.org/ecfmg-usmle-information BEFORE
4. www.auamed.org/ecfmg-usmle-information AFTER
5. www.auamed.org/information-seminars BEFORE
6. www.auamed.org/information-seminars AFTER
7. www.auamed.org/new-york-administrative-office
8. www.valuemd.com AUA Step1 Pass rate as of 2010
9. www.valuemd.com Another reason why I do not trust AUA BEFORE
10. www.valuemd.com Another reason why I do not trust AUA AFTER
11. www.auamed.org/susan-zonia-md
12. Deposition of Susan Zonia, PhD
13. Email from Sevrine Rodrigues Barrie
14. Nellie Mae Loan Certification
15. SallieMae Letter
16. www.economictimes.indiatimes.com Manipal Education buys out Antigua University
17. www.manta.com Greater Caribbean Learning Resources, Inc.


The Defendant will show evidence the Plaintiff has violated:


15 U.S.C. 1125 (a)(1) Lanham Act, False Advertising
18 U.S.C. 1506, Alteration of Record
18 U.S.C. 1346, Scheme or Artifice to Defraud
18 U.S.C. 1344, Bank fraud
Federal Rule 7.1 Disclosure Statement
LR 83.22(a)(3)  Attorney Discipline


The Defendant requests sanctions against the Plaintiff and dismissal of the case based on the following evidence.

The Defendant will now support their defense against the Plaintiff's claims , in part, including but not limited to, as written in Docket 1: 1, 8, 17, 21 and 54 (a), (c), (e), (f), (g), (j), (k), (l), (m), (o), 22, 23, 24, 25, 28, 29, 31, 33, 34, 35,36, 37, 38, 41, 44, 47, 48, 49, 50, 51, 53, 55, 56, 57, 58.

By the Plaintiff's own actions of removing information from their Web site, www.auamed.org, they admit that the information they published was false.

This motion supports the Defendants Claims that information posted under www.aua-med.com and related Internet postings is in fact, TRUE, factual, and of use by prospective students(U.S. citizens).

2

**(1)** The Plaintiff has knowingly modified at several critical piece of evidence from their, or associated Web sites, related to the Plaintiff's Docket 1(Exhibit 1) Claims 21 (l) and 54 (l) **"AUA student pass rate for USMLE medical board exams is only 22.9%"** knowing full well that this information was evidence in the case.

This claim is in reference of the Defendants publishing on **www.aua-med.com** hyperlink **"Antigua only has a 22.9% USMLE Pass Rate!"**

The Plaintiff's Claim was specifically communicated and argued before the Court on or about April 19, 2010 as demonstrated in Exhibit 2 page 29, line 13 through page 33, line 10.

The Defendant quotes **"80.6%"** on page 31, line 8(twice) and page 32, line 24 of (Exhibit 2).

The Defendant's video **"http://www.youtube.com/watch?v=7ieDUVb3_MU"** clearly shows a screen capture (copy) from the Plaintiff's Web site Uniform Resource Locator, URL(Web address) **"http://www.auamed.org/ecfmg-usmle-information"** on or about 2:35 minutes into the video.

The Defendant's video and Exhibit 3 show the content of the Plaintiff's quotes:

**"Since AUA's inception, USMLE Step 1 first-time pass rates for all students is 80.6%"**

**"For AUA students with an overall Basic Sciences GPA of 3.0 and higher, 98.6% passed USMLE Step 1 on the first attempt"**

**"Those with a cumulative GPA of 3.5 or higher, 100% passed on the first attempt"**

The Plaintiff has completely removed this quote from their modified URL, (Exhibit 4).

This is evidence that the Plaintiff's information was false and misleading and that the information the Defendant has posted is in fact TRUE.

**(2)** The Plaintiff has removed information from their URL **www.auamed.org/information-seminars** (Exhibit 5).

**"All students enjoy an overall Basic Science GPA of 3.0 and higher, 98.6% passed USMLE Step 1 on the first attempt Those with a cumulative GPA of 3.5 or higher, 100% passed on the first attempt. (most recently reported scores)"**

The Plaintiff has completely removed the quote and claims from URL: **www.auamed.org/information-seminars.** Exhibit 5 is the BEFORE and Exhibit 6 is the altered version.

By the Plaintiff's actions of removing this statement they admit this information was false and misleading.

**(3)** The Defendant will prove that these claims were on the Plaintiff's Web page by using writings by the Plaintiff's own Associate Director of Admissions, **Tipton Carlson**, (Exhibit 7, page 3).

The Plaintiff uses the URL www.valuemd.com as an Internet advertising tool and student blog. The URL
"**http://www.valuemd.com/aua-medical-school-study-area/191792-aua-step-1-pass-rate-2010-a.html**"
titled "AUA Step 1 Pass rates as of 2010? (Exhibit 8)

One of Tipton Carlson's quotes is on Exhibit 8, page 2. These quotes are hyperlinks(reference) to the Plaintiff's URL "**http://www.auamed.org/ecfmg-usmle-information**".

"**Since AUA's inception, USMLE Step 1 first-time pass rates for all students is 80.6%**",

"**For AUA students with an overall Basic Sciences GPA of 3.0 and higher, 98.6% passed USMLE Step 1 on the first attempt**"

, and "**Those with a cumulative GPA of 3.5 or higher; 100% passed on the first attempt**"

**(4)** Tipton Carlson has also removed his quote:

"You learn. You give your best. **You get abused**. You move on"

from another **www.valuemd.com** entry titled "**Another reason I do not trust AUA**" (Exhibit 9)

Tipton Carlson removed this quote as demonstrated (Exhibit 10).

This statement alone "**You get abused**" summarizes the treatment of AUA students as seen by AUA Administration.

**(5)** The Defendant will now show that the Plaintiff falsifies professor qualifications and titles on their Web site.

From **www.auamed.org/susan-zonia-md** (Exhibit 11) the Plaintiff claims that "Susan Zonia, MD" implies Susan Zonia is a Medical Doctor.

According to Susan Zonia's own testimony, on or about February 3, 2009, she only has a PhD in Sociology (Exhibit 12, page 7).

4

Unless Susan Zonia has earned an "MD" since February 2009 the Plaintiff has falsely advertised the qualifications of at least one faculty.

**(6)** The Defendant will now show that the Plaintiff lied to Sallie Mae(Nellie Mae).

The Defendant signed up for financial aid as instructed by AUA's financial aid officers on or about 2006.  The loans were managed and dispersed by the Plaintiff.

Sevrine Barrie is the Dean of Student Services and Registrar for AUA (Exhibit 13).

The two separate Nellie Mae Loan Certifications (Exhibit 14), that are signed and dated by Sevrine Barrie, were mailed to me from Sallie Mae.

The loan certificates have no references to the American University of Antigua.

On or about October 13, 2010 the Defendant received a letter from Sallie Mae's Office of the Customer Advocate, signed by Devin Hewitt (Exhibit 15)

"I have researched your account and have confirmed that you have three Excel Grad Loans that are serviced by Sallie Mae.  These loans were borrowed to finance your attendance at Kasturba Medical College, **not American University of Antigua.**"

The Plaintiff is currently advertising Title IV loans to prospective students.

**(7)** Violation of Federal Rule 7.1 Disclosure Statement
The Plaintiff has failed to release parent company information.

The Defendant has evidence that American University of Antigua College of Medicine is associated with Manipal Education(Exhibit 16) and Greater Caribbean Learning Resources, GCLR incorporated in New York, NY(Exhibit 17).

The Defendant humbly asks the Court to dismiss this case entirely, file Sanctions against the Plaintiff for tampering with, deleting, and falsifying evidence, or at least authorize and order the discovery of the real information from back-up copies of this evidence from server data storage archives.

Please allow the Defendant to exercise the Freedom of Speech with the intent of protecting prospective U.S. Citizens by continuing to publish the truth concerning this and other so-called Medical Schools and partners.



EXHIBIT

Moderator: Antoinette S. Peters, PhD
Discussant: Ann W. Frye, PhD

# Medical Education in the Caribbean: Variability in Medical School Programs and Performance of Students

Marta van Zanten and John R. Boulet

## Abstract

**Background**
The purpose of this study was to examine the structure of medical training programs in the Caribbean and the performance of the students.

**Method**
There are 56 medical schools in 16 countries currently recognized and open in the Caribbean. Almost 30,000 students from this region applied for exams leading to Educational Commission for Foreign Medical Graduates (ECFMG) certification between 1993 and 2007. The authors summarized school characteristics and pass rates on United States Medical Licensing Examinations, by country.

**Results**
The structure of medical education varies across the region, including existence of accrediting bodies and review processes. First-attempt pass rates by country ranged from 19.4% to 84.4% for Step 1, from 26.3% to 79.7% for the Step 2 Clinical Knowledge Examination, and from 60.6% to 97.2% for the Step 2 Clinical Skills Examination.

**Conclusions**
There is significant variability in undergraduate medical education and the performance of students of medical schools in Caribbean nations.

Acad Med. 2008;83(10 Suppl):S33–S36.

There is significant variation in the structure of medical education worldwide.[1] However, in the United States, undergraduate allopathic medical school programs are accredited by the Liaison Committee on Medical Education, ensuring the quality and consistency of the educational experience of U.S. medical graduates (USMGs). Although the majority of physicians in residency training and practice in the United States are USMGs, approximately one quarter are graduates of international medical schools (IMGs).[2,3] IMGs play an important role in the provision of patient care because they are more likely than USMGs to specialize in primary care disciplines and to fill positions in underserved areas.[4,5] The ECFMG certification process ensures the readiness of IMGs to enter Accreditation Council for Graduate Medical Education-accredited training programs in the United States.

A large portion of IMGs certified by ECFMG are U.S. citizens who train abroad (USIMGs), many of whom studied at schools located in the Caribbean region.[2,6] Although international medical schools that attract a predominantly U.S. student population are located in countries around the world, including Israel, Ireland, Poland, etc., the geographic proximity and prevalence of the English language in the Caribbean has made this region an attractive location for medical education institutions. Currently over 100 nondomestically owned and operated universities are operating in the English-speaking Caribbean, many of which offer medical degrees.[7]

Large numbers of U.S. students have been seeking medical education opportunities in the Caribbean since the 1970s. Fifty years ago, there were only a small number of medical schools in the region, including national schools in Cuba, the Dominican Republic, Haiti, and Jamaica. The student population at these established schools has been primarily comprised of nationals from the respective countries who complete physician training and remain in their country to practice. The second half of the 20th century saw a slow but steady increase in the creation of medical education institutions in the region, including the opening of a small number of schools aimed primarily for a U.S. student population. The most prolific growth has occurred most recently, with a 40% increase in the number of medical schools opened since 2000,[8] and this growth is expected to continue. For example, plans are currently underway to establish additional medical schools in Anguilla, Montserrat, and St. Kitts and Nevis.[9] Unlike the domestic student body at some of the more established educational institutions, these newly created schools recruit, almost exclusively, an international population of students, including a large number of U.S. citizens.

Because of a lack of uniform oversight processes in the region and the rapid growth in the number of new schools being created, there have been continuing concerns regarding the quality of the educational experiences offered at Caribbean institutions.[10–12] Thirty years ago, studies indicated that U.S. citizens who completed part or all of their studies abroad did not perform as well on knowledge assessments as did USMGs.[13,14] More recently, a study of performance of physicians who attended medical schools in the Caribbean showed considerable variation in quality indicators. Ultimate ECFMG certification rates varied by school from 28% to 86%. Specialty board certification rates were also analyzed, with 63% of USIMGs (compared with the historical 88% for

Correspondence: Marta van Zanten, MEd, FAIMER, 3624 Market Street, Philadelphia, PA 19104; e-mail: (mvanzanten@faimer.org).


EXHIBIT 7

USMGs[15] ultimately achieving this marker of quality.[15] In a study of students' transcripts and survey responses from the 10 schools that supplied the most USIMGs seeking ECFMG certification between 2001 and 2004, there were significant differences in the educational experiences of USIMGs from Caribbean schools as compared with a representative sample of USMGs.[16] Comparison of performance of this study population on the United States Medical Licensing Examinations (USMLE) Step 1 and Step 2 Clinical Knowledge (CK) exams also showed remarkable variation, with USMGs performing the best, followed by non-USIMGs and, lastly, USIMGs.

Often, Caribbean medical schools are viewed as a single entity, ignoring the variability in training programs and performance of students. The purpose of this study is to follow up on previous research[15,16] by describing the variability of educational experiences, structure and oversight of medical schools, and performance of students who attended medical schools in the region. Specifically, descriptive information is provided summarizing the various structures of medical education, degrees offered, languages of instruction, and student populations at Caribbean institutions. Additionally, the diverse systems of accreditation of medical school programs are described, and data depicting the variability in USMLE performance is provided, by country, for students attempting ECFMG certification. Current ECFMG policies prohibit reporting school-level performance data.

## Method

There are 16 countries located in the Caribbean that have a total of 56 open medical schools listed in the International Medical Education Directory (IMED) (http://imed.ecfmg.org). A medical school is listed in IMED after the Foundation for Advancement of International Medical Education and Research receives confirmation from the ministry of health or other appropriate agency in the country where the medical school is located that the medical school is recognized by the ministry or other appropriate agency.

Data used to describe the structure and content of medical education and demographic student profiles were drawn from IMED and culled from medical school Web sites. This information was supplemented with data from a previous study that included a random sample of 100 medical student transcripts and a survey of 418 medical students.[16]

Accreditation information was gathered from a variety of sources, including specific organizations that accredit the educational institutions, the U.S. Department of Education's National Committee on Foreign Medical Education and Accreditation, and medical school Web sites.

Among other requirements, passing the USMLE Step 1, Step 2 CK, and Step 2 Clinical Skills (CS) exams are necessary for ECFMG certification. We analyzed a cohort of applicants who applied for an exam leading to ECFMG certification between 1993 and 2007, inclusive. First-attempt pass rates on these exams, summarized for the 15-year period, are provided.

## Results

**Medical schools.** Of the 56 currently operating medical schools in the Caribbean listed in IMED, the distribution of schools per country is as follows: six countries each have one school, four countries have two schools, one country has three schools, one country has four schools, one country has five schools, one country has six schools, one country has 10 schools, and one country has 14 schools. The majority (n = 50) of the schools in the region offer a doctor of medicine (MD) degree. Three schools offer a bachelor of medicine and bachelor of surgery (MBBS), and three schools are capable of awarding both degrees, depending on the course of study followed. In general, the official languages of the various countries in the region correspond to the language of instruction at the medical schools, although there are some exceptions. English is the mode of instruction at 29 schools, and Spanish is used at 21 schools. Three schools offer instruction in both Spanish and English, and three schools use French. The duration of the curriculum at Caribbean schools also varies across the region, ranging from just more than three years (e.g., some schools in Antigua and Barbuda and Aruba) to six years (e.g., Cuban and Haitian schools).

**Accreditation.** There is a wide variety of oversight and formal accreditation practices in the region. In the past, review of the educational quality of medical programs was conducted sporadically by various organizations, depending on the country and the affiliations of the schools in question. Some countries, such as Cuba and the Dominican Republic, have a governmental agency in place that oversees medical education quality. In countries without a national system of accreditation, some schools have chosen to become accredited by entities located outside of the region. For example, an independent organization, the Accreditation Commission on Colleges of Medicine, has accredited medical schools located in various Caribbean countries, such as the Cayman Islands and Netherlands Antilles.[17–19]

Before 2003, the University of the West Indies (UWI) in Jamaica and its associated campuses located in Barbados and Trinidad and Tobago were accredited by the General Medical Council (GMC) located in the United Kingdom. When the GMC ceased accrediting programs located abroad, the Caribbean Community (CARICOM) member states established the Caribbean Accreditation Authority for Education in Medicine and Other Health Professions (CAAM-HP) in 2004 as an independent regional accreditation authority to fulfill this need. To date, CAAM-HP has reviewed six medical schools in the region (e.g., the UWI campuses and some schools in Montserrat) (www.CAAM-HP.org).

Because of the overlap in jurisdictions of some accrediting entities or the desire to promote quality claims, a small number of educational institutions have voluntarily chosen to be reviewed by more than one accrediting body. Conversely, some schools in the region have never undergone a formal accreditation process by an external review body because of the noncompulsory nature of the process, the lack of a national system in some countries, or the perceived lack of value of the system.

**Applicants.** Between 1993 and 2007, 29,321 individuals who attended a school in the Caribbean applied for an exam leading to ECFMG certification. The three countries producing the most applicants were Dominica (n = 6,678), Grenada (n = 6,384), and the Netherlands Antilles (n = 4,916). Almost two thirds of the applicants were U.S. citizens, and 62% self reported English as

their native language. The mean age of initial exam applicants was 29.5 years, and 38% were female.

**Exam performance.** Exam performance by country of medical school summary data is shown in Table 1. Of all Caribbean medical school students who took an exam leading to ECFMG certification during this 15-year study period, 57.4% passed the USMLE Step 1 on the first attempt, 61.7% passed Step 2 CK, and 88.0% passed Step 2 CS or the previous requirement, the Clinical Skills Assessment (CSA). Pass rates by country ranged from 19.4% to 84.4% for Step 1, from 26.3% to 79.7% for Step 2 CK, and from 60.6% to 97.2% for Step 2 CS/CSA.

Because training programs and medical student characteristics are heterogeneous, even within a country, exam performances were also summarized by school and examinee characteristics. On first attempts of Step 1, USIMGs (n = 19,425) outperformed non-USIMGs (n = 9,837) with pass rates of 60.6% and 51.1%, respectively. Examinees who attended schools with English as the language of instruction (n = 24,890) passed Step 1 at a rate of 62.9%, whereas students at non-English schools (n = 4,425) had a 26.5% first-attempt success rate. Results for Step 2 CK and CS/CSA were similar, with USIMGs and those attending schools with English instruction modestly outperforming their counterparts.

## Discussion

The purpose of this study was to examine, in detail, Caribbean medical education structure and oversight and the performance of students. A large portion of physicians seeking to enter graduate medical training and eventual practice in the United States are currently training in the Caribbean. With the anticipated shortage of physicians[20] and a relatively slow increase in domestic education opportunities, this trend of individuals looking outside of the United States for medical training is likely to continue. Given the expanded role of Caribbean-trained doctors in the United States, it is important to know more about the characteristics of the medical education programs and the qualities of the students and graduates.

Often, generalizations about individual schools, associated countries, and graduates are made based on the Caribbean as a whole. However, the results of this study show wide variability in the structure of medical education throughout the region. Likewise, the existence of quality-control oversight measures by an external body, the rigor of the review, and the level of transparency of the process and standards used also vary significantly throughout the region. A number of countries require that schools be periodically reviewed and accredited by a governmental body in order to continue to function, whereas in other countries the initial granting of a charter is the only requirement for operation. The recent creation of CAAM-HP and its governmentally sanctioned jurisdiction over a large portion of the medical schools located in the Caribbean provides evidence of a commitment of CARICOM nations toward increased oversight in the region.

## Table 1

**First-Attempt United States Medical Licensing Examination (USMLE) Exam Pass Rates by Country of Medical School (1993–2007)**

| Country | | Step 1 | | Step 2 CK | | Step 2 CS/CSA | |
|---|---|---|---|---|---|---|---|
| | | No. | Pass rate | No. | Pass rate | No. | Pass rate |
| Antigua and Barbuda | 2 | 684 | 22.9 | 223 | 37.2 | 157 | 80.2 |
| Aruba | 2 | 143 | 30.1 | 42 | 38.1 | 57 | 64.9 |
| Barbados | 1 | 75 | 72.0 | 79 | 77.2 | 58 | 96.6 |
| Cayman Islands | 1 | 1,378 | 33.4 | 562 | 44.3 | 601 | 79.4 |
| Cuba | 14 | 1,722 | 30.9 | 1,748 | 32.8 | 719 | 64.8 |
| Dominica | 2 | 6,694 | 69.7 | 5,398 | 70.6 | 4,731 | 90.9 |
| Dominican Republic | 12[†] | 3,910 | 27.7 | 3,035 | 31.8 | 1,415 | 75.3 |
| Grenada | 1 | 6,379 | 84.4 | 5,419 | 79.7 | 4,217 | 94.0 |
| Haiti | 3 | 487 | 32.0 | 403 | 39.2 | 170 | 60.6 |
| Jamaica | 1 | 744 | 72.6 | 678 | 79.1 | 284 | 97.2 |
| Montserrat | 2 | ‡ | ‡ | ‡ | ‡ | ‡ | ‡ |
| Netherlands Antilles | 6 | 4,904 | 59.4 | 3,722 | 67.7 | 3,043 | 91.0 |
| Saint Kitts and Nevis | 6[§] | 975 | 40.2 | 465 | 64.5 | 463 | 87.0 |
| Saint Lucia | 4 | 741 | 19.4 | 552 | 26.3 | 315 | 73.6 |
| Saint Vincent and the Grenadines | 1 | ** | ** | ** | ** | ** | ** |
| Trinidad and Tobago | 1 | 474 | 61.8 | 435 | 71.7 | 282 | 93.6 |

[*] For a variety of reasons, these numbers do not equal the numbers of students enrolled or the numbers of graduates.
[†] Two of these schools have closed.
[‡] n < 40.
[§] One of these schools has closed.
[**] The medical school is affiliated with another medical school.

Additional time is needed to determine whether schools will choose to undergo the review process, and the impact and outcomes of the decisions.

Results of analysis of a 15-year period show wide variability in USMLE exam performance of students of Caribbean medical schools. The variability is greatest with Step 1, whereas pass rates on Step 2 CS are somewhat more similar across the Caribbean countries. Countries with medical schools that typically cater to large numbers of U.S. citizens (e.g., Dominica, Grenada, the Netherlands Antilles) tend to have higher pass rates. Likewise, students from countries with long-standing oversight mechanisms (e.g., Jamaica) also perform well. Finally, students who attend schools in countries that typically provide medical education in languages other than English (e.g., Cuba, Dominican Republic, and Haiti) tend to underperform compared with other Caribbean-trained peers.

Although efforts were made to ensure the accuracy of the descriptive school information (i.e., each institution's accreditation status was verified directly with the appropriate accreditation organization), some data were based solely on school reports, which could potentially bias the results. Specifically, data regarding language of instruction, degrees offered, and curriculum duration were drawn from IMED, where available, and supplemented directly from medical school Web sites, but not independently verified.

Despite the differences of pass rates by country, these performance results should also be interpreted with caution. Most Caribbean countries have more than one medical school, with varying numbers of students per school, and with potentially great variation in admission requirements, quality of teaching, and resources available. Additionally, pass rates are reported by country for the entire 15-year block, obscuring changes in student performance over time. Because these results include only the first attempt of all applicants who took an exam leading to ECFMG certification, and not only those who eventually achieved certification, the motivation levels of some of these students may have

varied. Some students, especially non-U.S. citizens, may attempt USMLE exams even though they intend to practice in a country other than the United States. Conversely, schools in some countries may require passage of the USMLE for progression. Additionally, the attrition rates at these schools are unknown and, therefore, the number of test takers does not necessarily equal the number of students enrolled or the number of graduates. Finally, a student who transfers from a Caribbean medical school to another institution during his or her education would have all exam scores categorized under the country he or she attended when beginning the ECFMG certification application process.

The number of graduates of Caribbean medical schools seeking training positions and licensure in the United States is expected to continue to increase. Results of this study provide baseline data indicating that there is wide variation in the structure of the education and performance of the students on ECFMG certifying exams. Further research is necessary to determine how the characteristics and qualities of medical programs in the Caribbean, students' clinical training experiences (which can vary within a medical school), and national and regional accreditation activities impact student performance. This research will be essential to link medical education and student-selection practices at individual schools to relevant performance measures, including practice-based patient outcomes, for those doctors who return to the United States.

## References

1 Karle H. International trends in medical education: Diversification contra convergence. Med Teach. 2004;26:205–206.

2 McAvinue MB, Boulet JR, Kelly WC, Seeling SS, Opalek A. U.S. citizens who graduated from medical schools outside the United States and Canada and received certification from the Educational Commission for Foreign Medical Graduates, 1983–2002. Acad Med. 2005;80:473–478.

3 Boulet JR, Norcini JJ, Whelan GP, Hallock JA, Seeling SS. The international medical graduate pipeline: Recent trends in certification and residency training. Health Aff (Millwood). 2006;25:469–477.

4 Blanco C, Carvalho C, Olfson M, Finnerty M, Pincus HA. Practice patterns of international

and U.S. medical graduate psychiatrists. Am J Psychiatry. 1999;156:445–450.

5 Mick SS, Lee SY. International and U.S. medical graduates in U.S. cities. J Urban Health. 1999;76:481–496.

6 Johnson K, Hagopian A, Veninga C, Hart LG. The changing geography of Americans graduating from foreign medical schools. Acad Med. 2006;81:179–184.

7 Gift S, Leo-Rhynie E, Moniquette J. Quality assurance of transnational education in the English-speaking Caribbean. Qual High Educ. 2006;12:125–133.

8 Boulet JR, Bede C, McKinley DW, Norcini J. An overview of the world's medical schools. Med Teach. 2007;29:20–26.

9 The Caribbean Accreditation Authority for Education in Medicine and Other Health Professions (CAAM-HP). Overview and Status of The Caribbean Accreditation Authority for Education in Medicine and Other Health Professions. Kingston, Jamaica: CAAM-HP; 2007.

10 Busari OJ, Vervoort M, Hermans SM, Blom JR. Medical education in the new millennium: A Caribbean perspective. Med Educ. 2001;35:703–706.

11 Croasdale M. Quality concerns spur scrutiny of Caribbean medical schools. AMNews. January 16, 2006:1–2.

12 Ceaser M. Sun, sand and an M.D. Chron High Educ. 2005;52:A55–A60.

13 Relman AS. Americans studying medicine abroad: The distressing facts. N Engl J Med. 1978;299:887–889.

14 Weinberg E, Bell AI. Performance of United States citizens with foreign medical education on standardized medical examinations. N Engl J Med. 1978;299:858–862.

15 Norcini JJ, McKinley DW, Boulet JR, Anderson MB. Educational Commission for Foreign Medical Graduates certification and specialty board certification among graduates of the Caribbean medical schools. Acad Med. 2006;81(10 suppl):S112–S115.

16 Norcini JJ, Anderson MB, McKinley DW. The medical education of United States citizens who train abroad. Surgery. 2006;140:338–346.

17 National Committee on Foreign Medical Education and Accreditation. U.S. Department of Education Staff Analysis of the Report Submitted by the Cayman Islands. Washington, DC: U.S. Department of Education; 2007.

18 National Committee on Foreign Medical Education and Accreditation. U.S. Department of Education Staff Analysis of the Report Submitted by St. Maarten. Washington, DC: U.S. Department of Education; 2007.

19 National Committee on Foreign Medical Education and Accreditation. U.S. Department of Education Staff Analysis of the Report Submitted by Saba. Washington, DC: U.S. Department of Education; 2007.

20 Cooper RA, Getzen TE, McKee HJ, Laud P. Economic and demographic trends signal an impending physician shortage. Health Aff (Millwood). 2002;21:140–154.



Step I v. GPA



EXHIBIT 8

# NBME ®

Serving the public through
evaluation of healthcare
professionals worldwide

## About the NBME

Founded in 1915, the National Board of Medical Examiners® (NBME®) is an independent, not-for-profit organization that serves the public through its high- quality assessments of healthcare professionals.

### The United States Medical Licensing Examination® (USMLE®)

The NBME develops and manages the USMLE. While the individual licensing boards grant the license to practice medicine, all medical boards in the US accept a passing score on the USMLE as evidence that an applicant demonstrates the core competencies to practice medicine. As a result, healthcare consumers throughout the nation enjoy a high degree of confidence that their doctors have met a common standard. The NBME and the Federation of State Medical Boards co- sponsor the USMLE, and the Educational Commission for Foreign Medical Graduates is the third collaborator in the USMLE program.

### Other Services

The NBME and the Federation also co-sponsor the Post-Licensure Assessment System, which medical licensing authorities can use to evaluate physicians who are already licensed. A new exam program, the International Foundations of Medicine, extends the concept of common standards to an international arena.

Medical specialty boards, other healthcare professions, and academic institutions call on the NBME to develop customized assessments, while online assessments help students and professionals identify their own strengths and weaknesses. Organizations can draw on the NBME's expertise as consultants for their own assessment programs, test administration, and scoring.

**EXHIBIT** 

Case 2:10-cv-10978-PJD-MJH   ECF No. 100, PageID.1283   Filed 01/28/11   Page 23 of 33



# USMLE Performance Data

The National Board of Medical Examiners published USMLE performance data in its newsletter, the NBME Examiner, from 1993 to 2000 and publishes USMLE performance data in its annual reports. Most of the data presented here are excerpted from those publications with modification or as they appeared originally.

USMLE Home | © 1996-2011 FSMB and NBME® ⋅ Contact USMLE | Site Map

**EXHIBIT 10**

Case 2:10-cv-10978-PJD-MJH   ECF No. 100, PageID.1284   Filed 01/28/11   Page 24 of 33



## 2007 USMLE Performance Data
## As published in the 2007 NBME Annual Report,
## Copyright 2008 by the National Board of Medical Examiners®

### USMLE Administration, Minimum Passing Scores, and Performance

Continuous test administration of the USMLE is available to all examinees. For Step 1, Step 2 Clinical Knowledge (CK), and Step 3, which are the computer-based testing (CBT) components of the USMLE program, test scheduling and delivery are provided by Prometric. These CBT examinations are currently administered at more than 350 US/Canadian Prometric test centers and more than 125 international Prometric test centers. Additional test centers are located at seven medical schools in the United States. The Step 1 and Step 2 CK examinations are administered worldwide; the Step 3 examination is administered only in the United States.

Step 2 Clinical Skills (CS) is a standardized patient (SP) examination. Scheduling and test delivery for Step 2 CS are provided by the Clinical Skills Evaluation Collaboration (CSEC). There are five CSEC centers.

For each of the Step examinations, once the registration process is completed, applicants make their own appointment to take the examination at a location and time most convenient to their schedule. Examination results are processed continuously, and scores are reported weekly. Most examinees taking the computer-based Step examinations receive their scores approximately three to four weeks after their test date. For Step 2 CS, examinees receive their results by approximately eight weeks but this length of time may vary for some individuals because of the scoring and quality assurance steps associated with this component of USMLE. The schedule for reporting Step 2 CS results is published here.

A pass or fail result is provided, as a USMLE recommendation, for each examinee. Passing results are based on achievement of specified levels of proficiency established prior to administration of examinations. Statistical procedures are employed to ensure that for each Step, the level of proficiency required to pass remains uniform across forms of the examination. As noted in the USMLE *Bulletin of Information* and on this website, the score required to meet the recommended level of proficiency is reviewed periodically and may be adjusted without prior notice. Notice of adjustments is posted on this website.

In reviewing standards for USMLE examinations, the USMLE Step Committees employ information gathered from a number of sources including standard setting surveys. These surveys, which seek opinions on the appropriateness of current USMLE pass/fail standards for each of the Steps, are sent to random samples of examinees, directors of basic and clinical science courses and clinical clerkships, associate deans for academic and student affairs, directors and chief residents from residency programs, members of USMLE test material development committees, executive directors and presidents of all state medical boards, and members of the NBME Board and the FSMB Board of Directors.

In addition to surveys, USMLE Step Committees consider the results of content review by standard setting panels. These panels typically consist of physicians who are not otherwise involved in the USMLE program. These panels review the content of the Step examinations and, through a series of exercises, provide data that reflect their opinions on minimally acceptable levels of performance.

### Step 1

Details on the performance of examinees taking Step 1 in 2006 and 2007 are provided in Table 1. Data for 2007 are based upon examinees whose results were reported through February 6, 2008. Approximately 16,800 and 17,000 first-time takers from US and Canadian medical schools that grant the MD degree were

**EXHIBIT 11**

Case 2:10-cv-10978-PJD-MJH   ECF No. 100, PageID.1285   Filed 01/28/11   Page 25 of 33

USMLE Home | © 1996-2011 FSMB and NBME® | Contact USMLE | Site Map

## Step 1

Details on the performance of examinees taking Step 1 in 2006 and 2007 are provided in Table 1. Data for 2007 are based upon examinees whose results were reported through February 6, 2008. Approximately 16,800 and 17,000 first-time takers from US and Canadian medical schools that grant the MD degree were tested in both 2006 and 2007. First-time takers from non-US/Canadian medical schools numbered 14,585 and 15,752 for the same years. The pass rate for first-time takers from MD-granting US and Canadian medical schools was 95% for both years. Because failing examinees generally retake Step 1, the ultimate passing rate across test administrations is expected to increase to approximately 99% for this same group.

**TABLE 1. 2006-2007 STEP 1 ADMINISTRATIONS**
**Number Tested and Percent Passing**

| | 2006 | | 2007* | |
|---|---|---|---|---|
| | #Tested | %Passing | #Tested | %Passing |
| **Examinees from US/Canadian Schools that Grant** | | | | |
| 1st Takers | 16,818 | 96% | 17,028 | 95% |
| Repeaters** | 1,349 | 67% | 1,190 | 65% |
| 1st Takers | 1,258 | 77% | 1,411 | 82% |
| Repeaters** | 67 | 52% | 59 | 49% |
| **Total US/Canadian** | | | | |
| **Examinees from Non-US/Canadian Schools** | | | | |
| 1st Takers | 14,585 | 71% | 15,762 | 70% |
| Repeaters** | 6,017 | 39% | 6,126 | 37% |
| **Total Non-US/Canadian** | | 61% | | 61% |

* Represents data for examinees tested in 2007 and reported through February 6, 2008.
** 'Repeaters' represents examinations given, not number of different examinees.

## Step 2 CK

Details on the performance of examinees taking Step 2 CK in the 2005-2006 and 2006-2007 academic years are

| Student Name | STEP 1 |
|---|---|
| Preciado Jeffrey | 39 |
| Gonzalez, Claudia | 40 |
| Rakalla, Gurvinder | 46 |
| Dhillon, Rupeet | 49 |
| Harris III, Junior | 50 |
| Bohnert, Shannon | 54 |
| Decoteau, Carlond | 55 |
| Monroe, Mariam | 55 |
| Petrova, Veronika | 55 |
| Kannankeril, Joe | 56 |
| Stevenson, Clinton | 57 |
| Adamu, Hephzibah | 58 |
| Thomas, Debra | 58 |
| Devaney, Thomas | 59 |
| Linkowski, Micheal | 59 |
| Robinson, Gail | 59 |
| Romanik, Nikki | 59 |
| Sarathchandra, Janaka | 59 |
| Schroeder, Hilary | 59 |
| Ali, Husam | 60 |
| Abdullah, Sirhan | 61 |
| Kurien, Alvin | 61 |
| Nakhwal, Sukhminder | 61 |
| Crespo-Valez, Carmen | 62 |
| Zverinsky, Aleksandr | 62 |
| Eni, Eni | 63 |
| Ashley, Cherrise | 64 |
| Boakye, Kwaku | 64 |
| Kamash, Tamer | 64 |
| Lanphear, Eric | 64 |
| Martin, Nathan | 64 |
| Soresen, Hollie | 64 |
| August, Mihenka | 65 |
| Belpulsi, Danamarie | 65 |
| Cafiero, Ralph | 65 |
| Haddad, Mousa | 65 |
| Pate, Judy | 65 |
| Lima. Ateaya | 66 |
| Merkley, Kenneth | 66 |
| Nwagbo, Anthonia | 66 |
| Addhavarapu, Venkatesh | 67 |
| Hang, Tammy | 67 |
| Okoro, Philip | 67 |
| Okoronkwo, Earnest | 67 |
| Toussaint, Pierrette | 67 |
| Andhavarapu, Venkatesh | 67 |
| Aguilera, Francia | 68 |
| Corbin, Aaron | 68 |
| Knowles-James,Cerise | 68 |
| Kohli, Navreet | 68 |
| Pennisi, Dominic | 68 |

**EXHIBIT 18**

1

| | |
|---|---|
| Tadros, Adeeb | 68 |
| Gnanashekar, Ephraim | 69 |
| Huda, Sophia | 69 |
| Selvarajah, Priya | 69 |
| Shahzad, Humara | 69 |
| Thomas, Lisa | 69 |
| Tiwana, Raju | 69 |
| Vijayan, Pravin | 69 |
| Felix, Ashvin | 70 |
| Jain, Atul | 70 |
| Muhammad, Aqeel | 70 |
| Tammara, Anita | 70 |
| Chineme, Jessica | 71 |
| Fasihy, Shahram | 71 |
| Hadawy, Angel | 71 |
| Lafond, Fritzanella | 71 |
| Olorunnisola, Moses | 71 |
| Roever, Christopher | 71 |
| Yun, Roderick | 71 |
| Beranger, Alexandria | 72 |
| Martin, Ravonna | 72 |
| Shodunke, Temitope | 72 |
| Zimmerman, Sara | 72 |
| Davis, Barbara | 73 |
| Jackson, Larry | 73 |
| Kaur, Harjeet | 73 |
| Kalaria, Neha | 74 |
| Syed, Hassan | 74 |
| Ahmadi, Yunus | 75 |
| Dabas Vivek | 75 |
| Ferrol, Isaline | 75 |
| France, Kenneth | 75 |
| Franklin, Bina | 75 |
| Kodali, Smila | 75 |
| Loza, Alejandro | 75 |
| Bagenholm, Allyson | 76 |
| Bhaskarla, Niveditha | 76 |
| Crew Erica | 76 |
| Ioffe, Julia | 76 |
| Isacoff, Adam | 76 |
| Lambert, Nahesi | 76 |
| Miskin, Chandrabhaga | 76 |
| Rao, Panisri | 76 |
| Shahani, Monica | 76 |
| Tahir, Hina | 76 |
| Uppal, Amandeep | 76 |
| Chumak, Maxim | 77 |
| El-Sherif, Dana | 77 |
| Harden, Kimberly | 77 |
| Marin, Louis | 77 |
| Panchal, Roshni | 77 |
| Patel, Rupal | 77 |

| | |
|---|---|
| Patel, Samir | 77 |
| Bastien, Carl-Frederic | 78 |
| Beckwith, Micheal | 78 |
| Faustin, Guerry | 78 |
| Jones, Takaya | 78 |
| Lapikov, Vitaliy | 78 |
| Oyelowo, Doyin | 78 |
| Patel, Bhavika | 78 |
| Patel, Bhavika | 78 |
| Rojas, Luis | 78 |
| Soyoye, Tajudeen | 78 |
| St.Denis, Anthony | 78 |
| Freier, Richard | 79 |
| Kidd, Vicki | 79 |
| Oyedepo, Babadele | 79 |
| Soni Ambica | 79 |
| Thoman, Stacey | 79 |
| Ajayi, Olumide | 80 |
| August, Elizabeth | 80 |
| Kumar, Seema | 80 |
| Patel, Dipesh | 80 |
| Saleh, Tarek | 80 |
| Stair, Erin | 80 |
| Ajala, Khaalisha | 81 |
| Ansari, Osama | 81 |
| Barrett, Shean | 81 |
| Ghani, Helai | 81 |
| Akitan, Abosede | 82 |
| Oprea, Micheal | 82 |
| Esmaeili, Ehsan | 83 |
| Jiansakul, Thanavut | 83 |
| Lhungay, Cherie | 83 |
| Shoja, Pantea | 83 |
| Johnsen, Jay | 84 |
| Budhraja, Vikram | 86 |
| Ray, Asheesh | 86 |
| Betz, Milica | 87 |
| Falter, Keith II | 87 |
| Hasselfeld, Randi | 87 |
| Baker, Iyad | 88 |
| Woodard, Jameson | 89 |
| Pate, Amy | 91 |
| Polynice, Judette | 93 |
| Cheruku, Sreekanth | 95 |
| Reilly, Thomas | 95 |
| Gray, Sanjiv | 98 |
| Patel,Amit | 98 |
| Rao, Ryan | 99 |
| Torabi, Radmehr | 99 |

Case 2:10-cv-10978-PJD-MJH   ECF No. 100, PageID.1290   Filed 01/28/11   Page 30 of 33



# Transcripts

## Requesting a transcript of USMLE scores

To obtain your USMLE transcript or have it sent to a third party, you must contact the ECFMG, FSMB, or NBME. Which entity you contact depends on which Steps you have taken and where you want your transcript sent. Use the table below to determine which entity you should contact based on your specific details and needs.

### Who to Contact for Transcript Requests:

| Step(s)/Component(s) Taken | Recipient of Transcript | Contact |
|---|---|---|
| One or more USMLE Steps | Medical licensing authority | **FSMB** <br> e-mail: usmle@fsmb.org <br> telephone: 817-868-4041 |
| All three USMLE Steps; or Step 1 and Step 2 CK and CS (if required), only when registered for or after taking Step 3 | Any recipient | **FSMB** <br> e-mail: usmle@fsmb.org <br> telephone: 817-868-4041 |
| Step 1 and/or Step 2 CK and/or CS only, registered by ECFMG | Any recipient other than a medical licensing authority | **ECFMG** <br> e-mail: info@ecfmg.org <br> Telephone: 215-386-5900 |
| Step 1 and/or Step 2 CK and/or CS only, registered by NBME | Any recipient other than a medical licensing authority | **NBME** <br> e-mail: scores@nbme.org <br> telephone: 215-590-9700 |

USMLE *Bulletin:* Official Transcripts and Providing Scores to Third Parties

USMLE Home | © 1996-2011 FSMB and NBME® | Contact USMLE | Site Map



EXHIBIT 14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, a foreign corporation,

Plaintiff,

United States District Court Judge
Patrick J. Duggan, presiding
Michael Hluchaniuk, referral
V                                                                Case No.: 2:10-cv-10978

STEVEN L. WOODWARD,

Defendant.

| | |
|---|---|
| Eric A. Buikema (P58379)<br>CARDELLI, LANFEAR & BUIKEMA, P.C.<br>Attorneys for Plaintiff<br>322 W. Lincoln<br>Royal Oak, MI 48067<br>(248) 544-1100<br>ebuikema@cardellilaw.com | STEVEN L. WOODWARD<br>In Pro Per<br>c/o 7211 Brittwood Lane<br>Flint, MI  48507<br>Steve_L_woodward@yahoo.com |

## PLAINTIFF'S RULE 26 DISCLOSURES

Plaintiff American University of Antigua College of Medicine, through its attorneys, Cardelli, Lanfear & Buikema, P.C. states its Fed. R. Civ. P. 26(a) disclosures as follows:

Fed. R. Civ. P. 26(a)(1)(A)(i) Disclosures Regarding Witnesses:

A.  Steven Woodward, Defendant

B.  Neal S. Simon, President, American University of Antigua (may be contacted

through plaintiff's counsel)

1


EXHIBIT 15

C.   Leonard Sclafani, General Counsel, American University of Antigua (may be contacted through plaintiff's counsel.

D.   Agents, representatives and/or records custodians of Trinity Health System.

E.   Agents, representatives and/or records custodians of USMLE.

F.   Agents, representatives and/or records custodians of American University of Antigua.

G.   Any and all of Defendant's listed witnesses.

H.   Necessary rebuttal witnesses.

I.   Any and all records custodians necessary to authenticate documents or provide foundation testimony.

Fed. R. Civ. P. 26(a)(1)(A)(ii) Disclosures Regarding Documents:

J.   Defendant's website http://www.aua-med.com/ (copy electronically stored at Plaintiff's counsel's office)

K.   Defendant's YouTube webpage/channel (copy electronically stored at Plaintiff's counsel's office)

L.   Defendant's 36 YouTube videos retrieved from http://www.youtube.com/user/auastudentrights#p/u (copies electronically stored at Plaintiff's counsel's office)

Fed. R. Civ. P. 26(a)(1)(A)(iii) Disclosure Regarding Damages:

M.   Plaintiff makes a damages claim of $75,001.00.

N.   Plaintiff further demands permanent injunctive relief.

Fed. R. Civ. P. 26(a)(1)(A)(iv) Disclosure Regarding Insurance:

O.   No claims are asserted against Plaintiff, so no disclosure of insurance is necessary.

2

Fed. R. Civ. P. 26(a)(2) Disclosure Regarding Experts:

P.     None.


Respectfully Submitted,

/s/  Eric A. Buikema (P58379)
Eric A. Buikema (P58379)
Cardelli, Lanfear & Buikema, P.C.
322 West Lincoln Avenue
Royal Oak, Michigan 48067
(248) 544-1100
ebuikema@cardellilaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Plaintiff's Rule 26 Disclosures and this Certificate of Service were served upon Steven L. Woodward, Defendant, via his email address Steve_L_woodward@yahoo.com and First Class U.S. mail to Steven Woodward, c/o 7211 Brittwood Lane, Flint, MI 48507 on October 11, 2010.

/s/  Eric A. Buikema (P58379)
Eric A. Buikema (P58379)
Cardelli, Lanfear & Buikema, P.C.
322 West Lincoln Avenue
Royal Oak, Michigan 48067
(248) 544-1100
ebuikema@cardellilaw.com

3