# EXHIBIT

# A

# AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE v. WOODWARD

## STEVEN WOODWARD

February 1, 2011

*Prepared for you by*



**NATIONWIDE COURT REPORTING & VIDEO**

**Bingham Farms/Southfield • Grand Rapids**
Ann Arbor • Detroit • Flint • Jackson • Lansing • Mt. Clemens

STEVEN WOODWARD
February 1, 2011

```
 1                  UNITED STATES DISTRICT COURT

 2                  EASTERN DISTRICT OF MICHIGAN

 3                      SOUTHERN DIVISION

 4

 5   AMERICAN UNIVERSITY OF ANTIGUA

 6   COLLEGE OF MEDICINE, a foreign

 7   corporation,

 8             Plaintiff,

 9      vs.                      Case No. 2:10-cv-10978

10                               Hon. Patrick J. Duggan

11                               Hon. Michael Hluchaniuk

12   STEVEN L. WOODWARD,

13             Defendant.

14   _____

15

16

17      The Videotaped Deposition of STEVEN WOODWARD,

18      Taken at 432 North Saginaw Street, Suite 400,

19      Flint, Michigan,

20      Commencing at 10:25 a.m.,

21      Tuesday, February 1, 2011,

22      Before Cheri L. Gleyre, RPR, CSR-6548.

23

24

25
```



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

STEVEN WOODWARD
February 1, 2011

```
 1    APPEARANCES:

 2

 3    ERIC A. BUIKEMA

 4    Cardelli, Lanfear & Buikema, P.C.

 5    322 West Lincoln Avenue

 6    Royal Oak, Michigan   48067

 7    248.544.1100

 8         Appearing on behalf of the Plaintiff.

 9

10    STEVEN L. WOODWARD

11    7211 Brittwood Lane

12    Flint, Michigan   48507

13    810.235.7267

14         Appearing In Pro Per.

15

16    ALSO PRESENT:

17    Sally Woodward-Volz

18

19

20

21

22

23

24

25
```



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

STEVEN WOODWARD
February 1, 2011

1                    TABLE OF CONTENTS

2

3    WITNESS                                      PAGE

4    STEVEN WOODWARD

5

6    EXAMINATION

7    BY MR. BUIKEMA:................................  4

8

9                       EXHIBITS

10

11   EXHIBIT                                       PAGE

12   (Exhibits retained by counsel.)

13

14   DEPOSITION EXHIBIT 1.............................. 11

15   DEPOSITION EXHIBIT 2.............................. 30

16   DEPOSITION EXHIBIT 3.............................. 33

17

18

19

20

21

22

23

24

25



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

Page 4

STEVEN WOODWARD
February 1, 2011

1    Flint, Michigan

2    Tuesday, February 1, 2011

3    10:25 a.m.

4

5                    STEVEN WOODWARD,

6         was thereupon called as a witness herein, and after

7         having first been duly sworn to testify to the truth,

8         the whole truth and nothing but the truth, was

9         examined and testified as follows:

10                   EXAMINATION

11   BY MR. BUIKEMA:

12   Q.   State your full name.

13   A.   My name is Steven Lee Woodward -- S-T-E-V-E-N, middle

14        name Lee, L-E-E, last name Woodward, W-O-O-D-W-A-R-D.

15   Q.   Where do you currently reside?

16   A.   I currently reside -- I don't have a residence.  Last

17        night I spent the night in my other sister's basement.

18   Q.   Who's your other sister, what's her name?

19   A.   Stephanie Labelle.

20   Q.   Where does she live?

21   A.   What's her address?

22   Q.   You can't ask her.

23   A.   I don't know off the top of my head.

24   Q.   You have to testify from your own personal

25        understanding.



Page 5

STEVEN WOODWARD
February 1, 2011

1   A.   I don't know what my sister's --

2   Q.   I know you've been through this process before.  I

3        know that you find this a difficult situation.  I do

4        not find this a difficult or personal situation.  I'm

5        simply here to ask you questions about this lawsuit,

6        okay?

7             When we testify in circumstances like this

8        there are a few things we bear in mind; first and most

9        important is the oath you just took is the same you

10       take in any court of law.  Even though we're not

11       sitting in a court of law it has the same concordant

12       consequences and you're to give your testimony the

13       same care and candor as you would if you are sitting

14       in a court of law, even though we're here in a less

15       formal circumstance.  Do you understand that?

16  A.   I understand the oath.

17  Q.   All right.  Now, it's important that you answer

18       questions verbally instead of using uh-huh, uh-uhs,

19       nods of the head or other vernacular that may describe

20       something that does not translate clearly on a written

21       record.  As a perfect example, that is to say it was

22       as big as this room or as big as this table and we're

23       later reading that transcript we don't know.  It's

24       important that you attach dimensions to that or a

25       description to that that translates well on the



Page 6

STEVEN WOODWARD
February 1, 2011

```
 1          written record.  Do you understand that?
 2   A.     Some of that is natural behavior when people shake
 3          their head and say uh-huh, yes or no, so I understand
 4          and I'll do the best of my ability to --
 5   Q.     It is and my instructions are solely to inform you
 6          that this is not a conversation, this is testimony,
 7          and because of that and also as a courtesy to the
 8          court reporter that's taking down everything we say we
 9          try and bear a couple of rules in mind that are not
10          natural to normal conversations, another of which is
11          that we try and speak one at a time, so it's important
12          that we not speak over one another.  You may know
13          where my questions are going, but please wait until
14          I've completed speaking before you begin a response,
15          okay?
16   A.     Yes.
17   Q.     If at any time you don't understand a question or you
18          don't hear a question, please ask me to repeat or
19          rephrase it as the case may be.  This is not a
20          contest.  If you need a break for the bathroom or
21          something, just let me know and we'll accommodate you.
22          All right?
23   A.     Can you repeat that?
24   Q.     If you need a break for the bathroom --
25   A.     No, prior to that.
```



STEVEN WOODWARD
February 1, 2011

```
 1   Q.   It's important that we speak one at a time.

 2   A.   Okay.  And then after that?  You said something after

 3        that, something -- if I don't know something, then I

 4        don't know it, so I can't really answer something that

 5        I don't know.  I mean, if I say something and then

 6        later I say -- I think well, I didn't understand it,

 7        well, at the time I can't tell you that I didn't

 8        understand it because I didn't understand it the first

 9        time I said it.

10   Q.   Well, the record will assist us in that regard if

11        there's any controversy.

12             How many nights a week do you spend in

13        Stephanie's basement or with Stephanie?

14   A.   I spend a lot of nights there.  I don't know exactly

15        how long.

16   Q.   How long have you been physically present in the state

17        of Michigan?

18   A.   Since Hurricane Earl, whenever that was.

19   Q.   And you're primarily residing with your other sister

20        who's present with us today?

21   A.   That's a mailing address.

22   Q.   All right.  What is the mailing address?

23   A.   It's 7211 Brittwood Lane, Flint, Michigan.

24   Q.   And if mail is sent to that address for court business

25        or otherwise, that's the best place to get you?
```



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

STEVEN WOODWARD
February 1, 2011

```
 1   A.   That's the best place.

 2   Q.   And it does give you actual notice of the proceedings?

 3   A.   Correct.  That's where you've sent me information and

 4        that's where I've received it for the last five years,

 5        about.

 6   Q.   And I'm only making sure you agree that it's

 7        appropriate to do so, all right?

 8             Now, are you currently employed?

 9   A.   No.

10   Q.   When is the last time you were employed?

11   A.   I was employed after our hearing in April and I was

12        employed to, I don't know, sometime that I believe it

13        was the -- I don't recall exact dates.  Whenever I

14        came back for this proceedings.  You are aware of that

15        during the hearing that we had in April?  I don't

16        know.

17   Q.   Mr. Woodward, this is not for me, this is for a

18        record, okay?

19   A.   And I'm putting it for the record.

20   Q.   When were you last employed?

21   A.   And I told you, I was employed after our hearing in

22        April.

23   Q.   For how long a period of time?

24   A.   I don't remember.  Sometime, I believe it was the end

25        of June.
```



STEVEN WOODWARD
February 1, 2011

```
 1    Q.    What did you earn?

 2    A.    I earned $150 a day.

 3    Q.    And the nature of your employment, sir, during that

 4          time?

 5    A.    I cleaned -- I was like an assistant engineer, they

 6          call them a third engineer, on a mega yacht.

 7    Q.    All right.  And prior to that experience what was your

 8          last employment?

 9    A.    I object to the relevance of this.

10    Q.    Are you --

11    A.    I don't know where this information goes to, but I'm

12          going to object to it but I'll answer it.  Prior to

13          that after Hurricane Omar, just a couple of days after

14          Hurricane Omar -- what I've given Mr. Buikema in this

15          docket is Exhibit 52.

16    Q.    Sir, you're speaking to me, you're not speaking to

17          anybody else.  You're answering questions, you're

18          not --

19    A.    And I'm --

20    Q.    Stop.  It's my objection now, which is it's

21          unresponsive to my question.  And if you continue a

22          speech that is not responsive to my question I'll

23          maintain that objection, I'll seek costs including the

24          court reporter's fees and my attorney's fees for

25          showing up and you wasting my time this morning.  Do
```



STEVEN WOODWARD
February 1, 2011

1        you understand that?

2    A.  I am producing documentation to answer your question.

3    Q.  I haven't asked you for documentation.  I asked you

4        when you last worked.  Answer that question, please,

5        sir.

6    A.  And I'm answering with the documentation that I have

7        to support that.

8    Q.  Answer my question, please, sir.

9    A.  I am answering that --

10   Q.  Go ahead.

11   A.  -- and I have the right to answer with whatever

12       documentation I have.

13   Q.  Where were you last employed prior to the experience

14       you just described as an assistant engineer on that

15       mega yacht, when and where and how?

16   A.  Exhibit 52 is --

17   Q.  There is no exhibit.

18   A.  I can produce documentation for these proceedings.

19   Q.  Are you going to answer my question or not?

20       Mr. Woodward, we're on the record.

21   A.  I'm calling Judge Hluchaniuk again because I'm trying

22       to produce documentation to answer these proceedings.

23       Phone call.

24              (Discussion off the record at 10:33 a.m.)

25              (Back on the record at 10:35 a.m.)


BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

STEVEN WOODWARD
February 1, 2011

1    BY MR. BUIKEMA:

2    Q.   Let's continue with other areas of the exam, and the

3         question that was pending, for the record, was where

4         did you last work prior to your experience as an

5         assistant engineer on the mega yacht that you

6         described, it was when and where, okay?  But we'll

7         move on.

8              Mr. Woodward, I will mark as Exhibit

9    Number 1 notice for the deposition today.

10              MARKED FOR IDENTIFICATION:

11              DEPOSITION EXHIBIT 1

12              10:35 a.m.

13   BY MR. BUIKEMA:

14   Q.   Is Exhibit 1 what I say it is?

15   A.   Objection, authentication.  I don't know.  I would

16        have to look it up in my records.

17   Q.   You can't answer that question.  Did you receive this

18        document?

19   A.   I don't know.  Objection, authentication.

20   Q.   Are you telling me you don't know whether you received

21        that document?

22   A.   I don't know if this is the document you sent me.

23   Q.   Would you read it, please?

24   A.   I wouldn't know unless I compared it to the document

25        you sent me and I don't have it.



Page 12

STEVEN WOODWARD
February 1, 2011

1   Q.   Where is the document that I sent you at?

2   A.   Back at my sister's basement.

3   Q.   I will represent for you that Exhibit 1 is the notice

4        for today's deposition and was served upon you both

5        by -- electronically and also the 7211 Brittwood

6        address, which you identified as being an appropriate

7        address for you.  Exhibit 1 requests certain documents

8        and materials.  Whether you received the document that

9        was exactly the same as Exhibit 1 or whatever you

10       received, you received something that let you know to

11       be here today, correct?

12  A.   I did.

13  Q.   You're here today, therefore --

14  A.   I am here today.

15  Q.   And that request, like its proceeding requests, has a

16       number of identified document production requests,

17       does it not?

18  A.   Yeah, it did.

19  Q.   All right.  And have you made an effort to comply with

20       that document request?

21  A.   I've made an effort to comply not only with that

22       document request but I've brought you every single

23       thing that I have to the best of my knowledge as far

24       as visual aids, including work product, including

25       books that I was going to use as references, and it's



STEVEN WOODWARD
February 1, 2011

```
 1        the same information that I brought to court during

 2        our December 22nd hearing in front of Judge

 3        Hluchaniuk, so it's the same documentation that you

 4        requested.  It's just been sitting there since --

 5   Q.   Mr. Woodward, you've answered the question.

 6   A.   I haven't finished answering the question, sir, and

 7        you overspoke me.

 8   Q.   Again, my objection is your response is now

 9        unresponsive to my question.  You're to focus on my

10        questions and only answer my questions, please, sir.

11             Item A under the document production request

12        says please produce, quote, plaintiff's data

13        auamed.org and auamed.net, end quote, as identified in

14        your Rule 26 disclosure in which you intend to rely

15        upon at trial.  How have you satisfied that request?

16   A.   You're saying auamed.org and auamed.net?

17   Q.   Sure.  This request is generated from your Rule 26

18        disclosures which identify that, quote, as what you're

19        going to produce.

20   A.   I can't produce auamed.net because Mr. Buikema has

21        refused to answer documentation through my

22        interrogatories where I requested my password to

23        auamed.net to my user name, which was provided to me

24        by Steven -- by AUA, and they have locked me out of

25        that system since shortly after I filed a lawsuit on
```



STEVEN WOODWARD
February 1, 2011

1         December 20th of 2007, so I do not have access to that

2         information because I've been refused access to that

3         information by the plaintiff.

4    Q.   Terrific.   Item B asks please produce, quote,

5         defendant's data from yahoo.com, end quote, as

6         identified in your Rule 26 disclosures.  Have you made

7         an effort to -- first of all, what --

8    A.   I haven't -- I haven't --

9    Q.   Mr. Woodward, wait until I finish my question.

10   A.   You stopped.

11   Q.   Have you made an effort to comply with that request?

12   A.   I haven't answered the -- completely the answer -- or

13        the question, the first question, before you rudely

14        interrupted me and went on to the next question.  As

15        far as auamed.org, I have provided with -- to

16        Mr. Buikema not only the documentation that I intend

17        to use in trial to the best of my knowledge, but I've

18        also supplied him with a spreadsheet to reference that

19        information.

20   Q.   Actually you have, and that's why I'm asking you these

21        questions.  I need to understand what it is that you

22        have with you today.  All we're doing is taking

23        inventory right now, Mr. Woodward.  All we're doing is

24        taking inventory.  I need to know what it is that

25        satisfies this category of document production that



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

Page 15

STEVEN WOODWARD
February 1, 2011

```
 1          you have with you today.  How is it stored, what is it
 2          and if necessary we'll break it out and I'll certainly
 3          give you an opportunity to give those things to me
 4          later.  But the question that's on the floor is what
 5          is -- or how have you satisfied our request in the
 6          deposition notice for defendant's data from yahoo.com
 7          as identified in your own Rule 26 disclosure, what
 8          have you brought with you today to satisfy that
 9          request?
10   A.     I've brought with me today to satisfy that request the
11          documentation that I intend to use in trial, of which
12          I had provided to Mr. Buikema on December 22nd and he
13          refused to look at this information.  The information
14          is stored on a DVD of which he now has possession of
15          in electronic form.  There's also copies of
16          information, paper copies of that information, and
17          exhibits, paper documents, of which is over 2,500
18          pages of documentation --
19   Q.     Mr. Woodward --
20   A.     -- to supply that information.
21   Q.     -- my question is specific.
22                  My question is as to defendant's data from
23          yahoo.com, which is a category of documents you
24          identify in your Rule 26 disclosures.  What is that?
25   A.     I've already answered Mr. Buikema's question.  He has
```



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

STEVEN WOODWARD
February 1, 2011

1       electronic copies of files from those sites.  He also

2       has paper documents that are copies of evidence for

3       this case of which was provided to him, but he refused

4       to take on December 22nd --

5  Q.  Where are those right now?

6  A.  They're here in this box.

7  Q.  All right.  Pull out what would respond to our request

8       and specifically your identification of defendant's

9       data from yahoo.com as identified in Mr. Woodward's

10      Rule 26 disclosures.  Please pull that out.

11  A.  I'm sorry, please say it again.

12  Q.  Please pull out the documents that satisfy the

13      category B in the deposition notice, which is

14      defendant's data from yahoo.com, as you have

15      identified in your own Rule 26 disclosures?

16  A.  The information is provided to him on a DVD.  It's in

17      electronic form.  He also has paper copies inside the

18      box, and there's over 2,500 pages of information.  For

19      me to sort out documents specifically from yahoo.com

20      is -- if he'd like me to take the time to sort that

21      out, I'd be more than willing to, but I feel that it

22      would take a substantial amount of time.  And it is

23      provided for him and has been provided for him on

24      December 22nd and he refused to take it, but I am more

25      than willing to sit down and get not only the



STEVEN WOODWARD
February 1, 2011

```
 1          notarized copies of exhibits that I have from
 2          yahoo.com but also show him the electronic copies that
 3          are on his DVD.
 4                    MR. BUIKEMA:  Object as nonresponsive, move
 5          to strike.
 6   BY MR. BUIKEMA:
 7   Q.   Category C, Mr. Woodward, please produce all of,
 8        quote, defendant's data from youtube.com, end quote,
 9        as identified in your Rule 26 disclosures.  Have you
10        made any effort to satisfy that request?
11   A.   On December 22nd I gave Mr. Buikema an opportunity to
12        take that data that was from yahoo.com or from -- what
13        is it, youtube.com we're on right now?  Youtube.com,
14        whatever his last request was, and it's in a DVD
15        format that's in front of him.  He also has paper
16        copies of that same information, and I'll be more than
17        happy to dig that information out if he requests me to
18        go through over 2,500 pages of documentation and
19        specifically draw information from youtube.com.
20   Q.   Mr. Woodward, these requests are derived from your
21        Rule 26 disclosures.  Are you telling me that there is
22        not separately identified categories of documents such
23        as auamed.org documents, defendant's data from
24        yahoo.com, defendant's data from youtube.com that you
25        intend to rely upon at trial?
```



STEVEN WOODWARD
February 1, 2011

1    A.    I produced all my documentation that I plan to arrive

2          by trial.  It's in a spreadsheet that has a

3          description.  It has a date definition.  It has the

4          exhibit number that's on it.

5    Q.    All right.  Where is that spreadsheet?

6    A.    It's on here.

7    Q.    It's on this CD --

8    A.    It's on that DVD.

9    Q.    -- that we can't read at this deposition?

10   A.    Sure, you can.

11   Q.    So I have in my hand a DVD-R that's got some black

12         marker on it that says Exhibit 607.  What you're

13         telling me is Exhibit 607 is -- this CD has all of the

14         documents that you're referring to?

15   A.    That doesn't have all the documents I'm referring to.

16         The rest of the documents are on paper form there.

17         They're in this box.

18   Q.    Okay.

19   A.    Exhibit 607 has the documents that Mr. Buikema

20         requested.  It has -- in electronic form.  I did not

21         rename each document because I believe that it would

22         subtract from the -- where the document actually came

23         from in its original content and also it could alter

24         the date of originality of that document.

25   Q.    Mr. Woodward, your Rule 26 disclosures identify a



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstockny.com

STEVEN WOODWARD
February 1, 2011

 1          category of documents called, quote, defendant's data

 2          from youtube.com.  The notice for today's deposition

 3          asked you to produce those today.  Have you done that?

 4    A.    That information is on this DVD.  It is also on

 5          electronic format.  I'd also like to state at this

 6          time that according to Judge Hluchaniuk that Rule 26

 7          is not even valid at this point in time since we are

 8          still in discovery and those dates have changed and

 9          that this documentation I didn't actually have to

10          bring here except for his deposition -- I forget how

11          you would say the Latin word for it -- for request of

12          documentation during a deposition.

13    Q.    The Latin phrase is de bene esse and these are exactly

14          the categories I'm going through, sir.  So I'm asking

15          you as part of that de bene esse -- or excuse me,

16          the -- now you've got me confused -- duces tecum

17          production of this category C, the deposition notice,

18          the duces tecum portion of the deposition notice asked

19          you to identify and produce defendant's data from

20          YouTube.  This is a term that you employed, not us, so

21          what is that is what I want to know, what is it?

22    A.    Well, now he's asking for work product.  It's now time

23          to call the judge.  It's now been ten minutes.

24    Q.    Are you making a work product objection to that

25          question, sir?



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

STEVEN WOODWARD
February 1, 2011

1  A.   I don't recall what your question was.  I'm now

2       focusing on calling the judge.

3  Q.   Okay.

4            THE WITNESS:  Yes, hello.  This is Steve

5       Woodward calling for Judge Hluchaniuk.

6            Yes, Judge Hluchaniuk, this is Steve

7       Woodward.  Yes, sir.  I'd like to put you on

8       speakerphone, please?  Judge, can you hear me?

9            JUDGE HLUCHANIUK:  I can.

10           THE WITNESS:  I would like the court

11      reporter to restate the question.  Mr. Buikema asked

12      me for my employment history and I tried to produce

13      documentation as such to support my work history, and

14      Mr. Buikema denied me the right to and threatened me

15      with legal jargon not to produce documentation to

16      support my answer.

17           MR. BUIKEMA:  Your Honor, my question was --

18      and let me preface this by saying in the course of

19      this I assume about a half hour of this deposition I

20      received a work product objection, I've received let's

21      say no less than six objections by Mr. Woodward, none

22      of which are founded at law and he is unfortunately a

23      victim of his own misunderstanding of the law.

24           But nevertheless, the question that he's

25      asking you about and unfortunately bothering you this



STEVEN WOODWARD
February 1, 2011

1       morning is that I asked him for a little bit of his

2       employment experience after asking him to state his

3       name and his address.  He told me his last employment

4       experience was as an assistant engineer on a mega

5       yacht.  I asked him about his next previous employment

6       experience, and he refused to answer that question but

7       instead starts breaking out and marking exhibits,

8       which I don't need to tell you is inappropriate.

9               All I want is an answer to my question.  I

10      want to be able to control the exam and proceed as I

11      see fit, given that it's my discovery exam, and

12      Mr. Woodward wants to mark exhibits and offer things

13      into evidence.  He can do so during his own exams or

14      his own trial, but this is my opportunity and

15      unfortunately, Judge, he's stepping all over it and to

16      the point where I'm about ready to walk out and

17      suggest we redo it in your courtroom.

18              THE WITNESS:  Your Honor, the last time I

19      was asked this before these plaintiffs or -- I gave my

20      answer to my work history and it was bastardized to

21      discriminate me, to lack of a better word.  The

22      reference material is during -- directly after

23      Hurricane Omar, which pictures I was trying to show

24      this attorney, the damage on St. Martin caused by

25      Hurricane Omar.



STEVEN WOODWARD
February 1, 2011

1           JUDGE HLUCHANIUK:  Mr. Woodward, let me deal

2       with this issue in this fashion.  A deposition is

3       basically an opportunity that the opposing side has to

4       ask you questions.  You don't necessarily have the

5       right to volunteer information during the time that

6       they're asking you questions, so you should answer the

7       question that is put to you and only that question.

8           If at the end of the questioning by opposing

9       counsel you feel that an answer to -- the answer that

10      you gave earlier was limited in some fashion such that

11      the record would be incomplete if you didn't

12      supplement, just as you could if you had a lawyer

13      representing you, you could add additional information

14      at the end of the questions that are put to you by the

15      opposing counsel.

16          So the sequence should be Mr. Buikema asks

17      you questions, you should answer those questions, and

18      then after he is finished answering those questions --

19      after he's finished asking you those questions, if you

20      feel that additional information should be provided to

21      clarify some answer that you couldn't supplement at

22      the time that he asked you the question, then you can

23      add information to the record or you can add

24      information at a later time, at the trial or at some

25      other occasion in which it's appropriate.


BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

STEVEN WOODWARD
February 1, 2011

```
 1              MR. BUIKEMA:  To the extent he intends to --
 2              JUDGE HLUCHANIUK:  This is not a trial,
 3      Mr. Woodward, in which all the information needs to
 4      come out.  The deposition -- the taking of your
 5      deposition by the opposing party is for them to gather
 6      information that's important to them.  So if you feel
 7      there's something that's left out of the answer that
 8      you give, at a later time you could supplement it or
 9      you could supplement it at the occasion in the
10      deposition when he has finished asking you questions.
11              MR. BUIKEMA:  At the end of my exam, Your
12      Honor.
13              JUDGE HLUCHANIUK:  Yes.
14              MR. BUIKEMA:  That's important to point out.
15              THE WITNESS:  Your Honor, it's my
16      understanding that I can produce documentation to
17      support my answer; is that correct?
18              JUDGE HLUCHANIUK:  What you need to do is
19      answer the question that he puts to you.
20              THE WITNESS:  But if to answer the question
21      requires documentation can I produce documentation to
22      answer the question?
23              JUDGE HLUCHANIUK:  Certainly there was no
24      answer that -- as I would perceive it that what he
25      simply asked you what was your employment before your
```



STEVEN WOODWARD
February 1, 2011

1        most recent employment.  You don't need documents to

2        show that, you could just say what you did.

3                    THE WITNESS:  Your Honor, the example here

4        is that after Hurricane Omar I aided this island to

5        rescue boats.  I even was sent over to the island of

6        Anguilla to restore water for that island, and when it

7        came out in court documentation they made it sound

8        like I was playing and having fun on St. Martin, where

9        I was diving in gasoline and diesel fuel to help these

10       islands out, and they completely bastardized my whole

11       deposition over that issue because I was doing --

12       diving over this issue.

13                   JUDGE HLUCHANIUK:  The point is,

14       Mr. Woodward, this is not the trial.  This is a

15       deposition in which they are asking you questions, so

16       you need to answer the questions that they put to you

17       and only those things.  A deposition that is a

18       discovery deposition, as this one is, is not intended

19       to be a complete picture of everything that happened.

20                   THE WITNESS:  But this information can be

21       used in court and it's used against me in other

22       literature.

23                   MR. BUIKEMA:  That's exactly the purpose of

24       this exam, Mr. Woodward.

25                   JUDGE HLUCHANIUK:  It can be used against



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

STEVEN WOODWARD
February 1, 2011

1   you, but you can supplement your answer if there's

2   something that was left out of it.  You're not

3   prohibited from offering additional information at a

4   subsequent occasion to explain in some broader sense

5   what you were doing, if that's ever even relevant.

6        THE WITNESS:  Then why is he asking me

7   irrelevant information??

8        JUDGE HLUCHANIUK:  Well, I guess what I'm

9   saying is your employment would be a relevant issue in

10   most circumstances that I can see, but the details

11   that you're offering at this stage of things don't

12   appear to be particularly relevant and it's not

13   responsive to the question that he's asked you.  He

14   just simply asked you what you were doing, and you

15   have the right to answer that question, but to produce

16   documents and move into an area that is beyond the

17   question that was asked of you I don't think is

18   appropriate.  It drags out the process and this is his

19   deposition.  He gets to ask you the questions.  It is

20   not the trial in which a full presentation of

21   information is necessary, so you simply need to answer

22   the questions.

23        THE WITNESS:  Then if I can't produce

24   documentation and this information is used in trial

25   against me, then I have no choice then to say I don't



Page 26

STEVEN WOODWARD
February 1, 2011

1      recall over any of this information because I can't

2      give accurate information without documentation.

3              MR. BUIKEMA:  Your Honor, I'm ready to

4      proceed with the exam.

5              JUDGE HLUCHANIUK:  Mr. Woodward, that just

6      doesn't seem honest to me.

7              THE WITNESS:  Well, it seems as honest as

8      these proceedings are to me.

9              JUDGE HLUCHANIUK:  Well, ultimately if --

10     whatever conduct you engage in at the deposition, if

11     it's sent to a judge at a later occasion and it's not

12     appropriate, then you could be sanctioned for that.

13     You need to answer the questions that he puts to you

14     and leave it at that.

15             THE WITNESS:  And I can't produce any

16     documentation to support my answers?

17             JUDGE HLUCHANIUK:  You know, I'm not

18     conducting this hearing here.  This is not something

19     that's happening in the courtroom.  I'm giving you

20     informal advice as to what I think is appropriate

21     under the circumstances.  You're going to do whatever

22     you want to do, but you'll do it at your own peril.

23     That is you could be sanctioned if you improperly

24     respond to questions that are put to you at the

25     deposition.  I can't referee this on the phone, so



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

STEVEN WOODWARD
February 1, 2011

```
1        what I'm telling you is that you need to answer the

2        questions that are put to you.  You don't need to go

3        beyond that.

4                  MR. BUIKEMA:  Thank you, Your Honor.

5                  JUDGE HLUCHANIUK:  Answer the questions?

6                  MR. BUIKEMA:  I'm ready to proceed.

7                  JUDGE HLUCHANIUK:  All right.

8                  MR. BUIKEMA:  Mr. Woodward, are you ready?

9                  JUDGE HLUCHANIUK:  Our conversation then is

10       ended and I'll leave you with the hopes that you can

11       get through this process as expeditiously as possible.

12                 MR. BUIKEMA:  Thank you very much, Your

13       Honor.

14                 THE WITNESS:  Thank you, Your Honor.

15                 JUDGE HLUCHANIUK:  Good day.

16   BY MR. BUIKEMA:

17   Q.   Mr. Woodward, section D of the deposition notice, the

18        duces tecum portion, references please produce any and

19        all videos you've produced which discuss plaintiff,

20        AUA.  So, first of all, I want to ask you have you

21        produced videos that have as their subject AUA or your

22        experience with AUA or Antigua more generally?

23   A.   Please restate that question.  I'm sorry.  I'm sorry,

24        I'm a little upset right now.  I need to take a break.

25        I need to take a break.
```



Page 28

STEVEN WOODWARD
February 1, 2011

1                    MR. BUIKEMA:  Go ahead.

2                    (Recess taken at 10:57 a.m.)

3                    (Back on the record at 11:00 a.m.)

4     BY MR. BUIKEMA:

5     Q.   Have you produced videos in which the topic of the

6          video is AUA, your experience at AUA or your

7          experience at Antigua more generally?

8     A.   I don't even know what AUA is.  The plaintiff has

9          refused to give me any information concerning the

10         corporation AUA.  I've never seen any articles of

11         incorporation of AUA.  I don't even know -- AUA claims

12         to be a trademark of which there are many AUAs that

13         were established prior to AUA.  I did attend a school

14         on Antigua, but who knows --

15    Q.   Mr. Woodward, let me stop you there.

16    A.   -- what it is.

17    Q.   Let me stop you there, and my objection is

18         nonresponsive.  The question is simply have you

19         produced videos in which AUA is the topic?

20    A.   I have produced videos of which the alleged company,

21         university, whatever it is, limited-liability company,

22         whatever Mr. Buikema calls it, about the American

23         University of Antigua and also St. Joseph Mercy

24         Oakland Hospital, so...

25    Q.   Are you finished?  How many more videos -- how many



STEVEN WOODWARD
February 1, 2011

1      videos have you produced in total?

2   A.  I don't know.

3   Q.  How many are currently published?

4   A.  I don't know exact number.

5   Q.  Where are they currently published?

6   A.  I can't give you that information.

7   Q.  Have you published videos on YouTube?

8   A.  I have.

9   Q.  Have you published videos elsewhere?

10  A.  I have.

11  Q.  Where else have you published videos with AUA as the

12      subject?

13  A.  On my website.

14  Q.  What is your website?

15  A.  Auamed.com.

16  Q.  How long have you maintained that website?

17  A.  I don't recall the exact date that it was started.

18  Q.  What year?

19  A.  I believe it was 2009.

20  Q.  Do you know the month of 2009?

21  A.  I believe March or April.

22  Q.  How many videos are published on your website?

23  A.  I don't have the exact number.

24  Q.  Where else have you published videos?

25  A.  I published videos on other websites.  Whether they're



STEVEN WOODWARD
February 1, 2011

1      active or not, I don't know.

2  Q.  And of those videos what are the topics?

3  A.  I can't recall all the topics at this time.

4  Q.  Your Rule 26 disclosures in this case identify videos

5      and that you intend to rely on such videos at trial.

6      Are all of the videos upon which you intend to rely

7      upon at trial produced somewhere in conjunction with

8      what you've brought with you today?

9  A.  All that documentation, my entire website, all the

10     files that I can find concerning my website are on the

11     DVD of which Mr. Buikema has in his possession.

12  Q.  Are we referring to the same DVD I pulled out, has

13     Exhibit 607 written on the front of it?

14  A.  Correct.  In there there's a file that specifically

15     states -- I believe it's called web, dash, site or

16     something to that effect.

17        MR. BUIKEMA:  Mark this, please, as

18     Exhibit 2.

19        MARKED FOR IDENTIFICATION:

20        DEPOSITION EXHIBIT 2

21        11:04 a.m.

22  BY MR. BUIKEMA:

23  Q.  Mr. Woodward, what else is on Exhibit 2 other than

24     those videos?

25  A.  On those videos are the recordings that Mr. Buikema



Page 31

STEVEN WOODWARD
February 1, 2011

```
 1           requested, other files, as I've already mentioned, the
 2           Excel spreadsheet that gives a list of documentation.
 3           There's a -- there's the entire recording of the
 4           biochemistry class record where the instructor tells
 5           the class that -- multiple times that they already
 6           used this class for argument.  There also are
 7           recordings concerning a committee meeting that I was
 8           at.  There's --
 9    Q.     Are --
10    A.     You asked me for a list of information on here, sir.
11           I'm trying to give you a list of documentation and
12           information on this file.
13    Q.     And I'm asking you to clarify one of your statements,
14           which was you mentioned recordings or audio
15           recordings.  Are they audio recordings of the
16           professor, are they audio recordings of you, are they
17           something -- you tell me what they are more
18           specifically, please?
19    A.     The biochemistry, it was an exam review.  I'm trying
20           to think of the professor's name right now.  I just
21           dropped it.  I should know it.  Anyway, it's an entire
22           class recording.  The recordings of the committee
23           meeting are on there.  There were I believe two
24           recordings on there.  There's -- actually for the
25           class recording there's actually two recordings
```



STEVEN WOODWARD
February 1, 2011

```
 1          because one of the recordings is a specific file

 2          format to I believe it's a Sony recorder, which I

 3          didn't have, so I had to get a converter to convert

 4          it, so it's actually converted into a normal playable

 5          format.

 6                  There's also downloaded recordings to verify

 7          Don Kostic (phonetic) as a voice on one of the

 8          recordings.  There's I believe several -- at least two

 9          files in there.  There's a video file that AUA

10          produced and then there's the audio files from the

11          committee meeting and then there's also an audio file

12          of him in class on there.  There are, like I stated

13          earlier, all the content of my website.  There's --

14     Q.   You mentioned an Excel spreadsheet of documentation.

15     A.   Now I just can't -- now Mr. Buikema overspoke and I'm

16          trying to --

17     Q.   You need not editorialize.  The record will speak for

18          itself and you're taping it and it's being recorded by

19          this fine reporter.

20                  The Excel spreadsheet of documentation that

21          you mentioned as being on this disc, it's a

22          spreadsheet of what documentation or what categories

23          of documentation?

24     A.   What it is is a spreadsheet that lists my exhibits and

25          a brief description of what each exhibit is.
```



STEVEN WOODWARD
February 1, 2011

1   Q.   Are the exhibits themselves produced?

2   A.   Yes.

3   Q.   Where are the exhibit themselves?

4   A.   They're in this box over here in the corner.

5   Q.   And you're going to give that box to me today?

6   A.   I tried to give it to you on December 22nd.

7   Q.   Are you going to give that box to me today?

8   A.   I brought it for you.

9   Q.   Thank you.  Let's mark it as Exhibit 3 then.  Just

10       bring up the whole box, we'll put a sticker on it.

11                  MARKED FOR IDENTIFICATION:

12                  DEPOSITION EXHIBIT 3.

13                  11:08 a.m.

14  BY MR. BUIKEMA:

15  Q.   Exhibit 3 are all the exhibits upon which you intend

16       to rely on at trial, correct?

17  A.   We still have approximately two months worth of

18       discovery left, so they possibly could not be the

19       entirety of my exhibits.  On this disc, of which I was

20       interrupted, is also further disclosures --

21  Q.   Stop.

22  A.   -- with discovery information that I've produced.

23  Q.   You identify something called audio files from

24       committee meeting in your Rule 26 disclosures.  Are

25       whatever you're referencing by that term on Exhibit 2?



STEVEN WOODWARD
February 1, 2011

```
 1   A.   They are.

 2   Q.   You reference something called audio file biochemistry

 3        test review on your Rule 26 disclosures.  Is that

 4        document or that type of information on Exhibit 2?

 5   A.   That recording is on Exhibit 2.

 6   Q.   Is there anything upon which you intend to rely that's

 7        not on Exhibit 2 in terms of audio file biochemistry

 8        test review?

 9   A.   I still have two months worth of discovery left over

10        and so that would not be an accurate statement.

11   Q.   Are the e-mail from journalist, The Daily Herald, as

12        you identify in your Rule 26 disclosures, a document

13        or documents that are on Exhibit 2?

14   A.   No.  I believe those are -- oh, they might be.

15   Q.   Are they in the box marked as Exhibit 3?

16   A.   They're in this set of documentation.  They were --

17   Q.   It's a yes-or-no question, sir.  Is it --

18   A.   I don't know.  If I can't answer it, I can't answer.

19   Q.   Are they on one or the other?

20   A.   They could be either one or both.

21   Q.   All right.  Now, plaintiff's data from valuemd.com is

22        identified in your Rule 26 disclosures as something

23        you intend to rely upon at trial.  Is that document or

24        group of documents produced somewhere in Exhibit 2 or

25        Exhibit 3?
```



STEVEN WOODWARD
February 1, 2011

1    A.    Say it again.  On which one?  What is it?

2    Q.    Valuemd.com.

3    A.    Yeah.  Those I believe are in the box.

4    Q.    Quote/unquote, data from ecfmg.org identified in your

5          Rule 26 disclosures, is that document or group of

6          documents produced on Exhibit 2 or somewhere in

7          Exhibit 3?

8    A.    I've just sent out a subpoena to ECFMG, so I don't

9          have a complete, accurate information back from ECFMG.

10   Q.    How is it that you sent out a subpoena to ECFMG?

11   A.    I went to the county clerks and I had them give me a

12         subpoena and I wrote a subpoena and actually I wrote

13         three subpoenas and I sent them to the ECFMG.

14   Q.    Who signed then?

15   A.    I signed them.

16   Q.    Where?

17   A.    I signed them.

18   Q.    At the bottom where it says attorney/court judge?

19   A.    I scratched out attorney and I signed my name.

20   Q.    And you sent these to whom?

21   A.    I sent them to be served to the ECFMG.

22   Q.    Okay.  You said you got three subpoenas?

23   A.    Correct.

24   Q.    So you served one on ecfmg.com?

25   A.    All three of them I served to the ECFMG.



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

STEVEN WOODWARD
February 1, 2011

1   Q.   Okay.  What is ECFMG?

2   A.   It's the Education Commission for Foreign Graduates, I

3        believe.

4   Q.   And what was the substance of the request and

5        subpoena?

6   A.   The varication of USMLE student pass rates, the

7        verification of the USMLE step 1 grades that AUA

8        disclosed and Victor Horovich's (phonetic)

9        presentation, the verification of aggregates, number

10       of students that have taken the USMLE step 1 -- it's

11       all about the USMLE step 1 first-time test takers for

12       students from the American University of Antigua.

13  Q.   Have you sent purported subpoenas to any other third

14       party?

15  A.   I sent subpoenas to -- I sent them to Sally Mae, I

16       sent them to NBME.

17  Q.   What's NBME?

18  A.   It's a National Board for Medical Education, I

19       believe.

20  Q.   Why else?

21  A.   Sally Mae.

22  Q.   You said ECFMG, Sally Mae, NBME?

23  A.   I believe it's NBME.  It's the National -- it's either

24       NMB or NBME.

25  Q.   Is there any other third party to whom you sent a


BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

STEVEN WOODWARD
February 1, 2011

```
 1        purported subpoena in this case?

 2    A.  Not that I recall at this time.

 3    Q.  The subject of your subpoena with Sally May was what?

 4    A.  Student loans.

 5    Q.  The subject of your subpoena to NBME was what?

 6    A.  Similar to the subpoenas that I sent to the ECFMG.

 7    Q.  You signed all of these documents?

 8    A.  I don't know if I -- I believe so, yes.

 9    Q.  The court didn't sign any of these?

10    A.  The court signed them, yeah.

11    Q.  Did the judge sign any?

12    A.  No, the judge wouldn't have signed them.  You should

13        have -- actually there should be a motion for -- a

14        motion to compel.

15    Q.  Just respond to my question, sir.  That's not my

16        question.  My question is did the judge sign them?

17        That's a yes-or-no question.

18    A.  I don't know if the judge signed the motion to compel.

19    Q.  Now, the subpoenas that were sent used this case

20        number and caption?

21    A.  To the best of my ability I filled out those

22        subpoenas.  I tried to seek help on filling out a

23        subpoena.

24    Q.  It's a yes-or-no question.  Did it use this case

25        number and caption?
```



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

STEVEN WOODWARD
February 1, 2011

```
 1   A.   I requested subpoenas back in the beginning of this --

 2   Q.   My question is did the subpoenas that you purported to

 3        issue in this case use this case number and this

 4        caption?

 5   A.   Yes, to the best of my ability.

 6   Q.   Why were they not served on my office as the attorney

 7        for AUA?

 8   A.   I didn't know that -- they're a third party.

 9   Q.   You agree you did not serve any such subpoenas on my

10        office?

11   A.   I didn't serve any subpoenas on your office.  Oh, I

12        take that back.  I did ask the -- for subpoenas to go

13        out to these same organizations back when you

14        wrongfully threw me into default, so that would be

15        back in -- I forget when that was, and you threatened

16        to quash these subpoenas.

17   Q.   You're referring to a motion you filed requesting --

18   A.   To have --

19   Q.   Excuse me.  Let me finish my question, sir.  Are you

20        referring in your last answer to a motion that you

21        filed requesting subpoenas be issued?

22   A.   I believe there were several motions that I filed to

23        request several subpoenas to be filed.

24   Q.   But in this circumstance what you're telling me is you

25        issued three subpoenas to ECFMG, one to Sally Mae, or
```



STEVEN WOODWARD
February 1, 2011

1         at least one to Sally Mae, and at least one to NBME?

2   A.   No.  There would be more to NBME.  I believe there's,

3         yeah, multiple to NBME.

4   Q.   How many subpoenas in total did you purport to issue

5         in this case?

6   A.   I have no idea.

7   Q.   How many of those did you serve on my office or a copy

8         of on my office when you issued them?

9   A.   You had copies of the information that was sent out.

10   Q.   Mr. Woodward, my question, how many of these subpoenas

11        which we are presently discussing did you serve on my

12        office at the time you served them on those third

13        parties, if any?

14   A.   I served subpoenas to your office.  You received

15        copies of those back when they were motions in the

16        time frame when we were in default.

17   Q.   What's the date of the ECFMG subpoenas?

18   A.   I believe I sent those out on Monday.

19   Q.   Okay.  And copies were not served on my office on

20        Monday or shortly thereafter, were they?

21   A.   No.

22   Q.   The date of the Sally Mae subpoenas?

23   A.   I don't recall.

24   Q.   Okay.  Were they contemporaneously served on my office

25        when they were issued?



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

Page 40

STEVEN WOODWARD
February 1, 2011

1   A.   No.

2   Q.   Is the response deadline expired?

3   A.   Yeah, they never responded.

4   Q.   And NBME, did you also serve subpoenas on NBME without

5        contemporaneously serving them on my office?

6   A.   I don't know what you mean by contemporarily (sic)

7        serving them on your office, but I did serve NBME with

8        subpoenas.

9   Q.   Have you served any other requests on third parties

10       that have not also been directed to my office?

11  A.   Those are what I understand that I needed to send out.

12  Q.   Have you filed any other pleadings in this case which

13       you have not also served on my office?

14  A.   I don't understand the question.

15  Q.   Okay.

16  A.   If I've sent something to the court I sent it to you

17       except for those there.

18  Q.   Your Rule 26 disclosures reference something called

19       personal references and awards.

20  A.   By the way, NBME had sent me --

21  Q.   There's no question pending.  You answer my questions

22       as I ask them, sir, all right?  The question that's

23       pending now is your Rule 26 disclosures reference

24       something called personal references and awards, end

25       quote.  Are the documents that you intend to rely upon



Page 41

STEVEN WOODWARD
February 1, 2011

```
 1          in that category produced somewhere in conjunction

 2          with Exhibit 2 or Exhibit 3?

 3   A.     Yes.

 4   Q.     Do you know which?

 5   A.     They could be both.

 6   Q.     All right.  Now, your Rule 26 disclosures also

 7          reference something called all public accessible

 8          Internet data.  What does that mean?

 9   A.     It's data issued on the Internet, data on the

10          Internet.

11   Q.     What portion of all public accessible Internet data do

12          you reasonably intend to rely upon at trial?

13   A.     Whatever's in that box --

14   Q.     Okay.

15   A.     -- at this particular time.

16               I still have --

17   Q.     Stop.  That box, meaning Exhibit 3?

18   A.     Whatever I have at this point in time in discovery is

19          in that box.  I still have approximately two months

20          for more discovery.  As I've stated before, anything

21          that I've currently discovered past December 22nd I've

22          put either in here or in that box.

23   Q.     By that box, Mr. Woodward, are you referring to

24          Exhibit 3?

25   A.     I am.
```



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

Page 42

STEVEN WOODWARD
February 1, 2011

1    Q.    Again, I'm going to caution you, please just respond
2          to my questions?
3    A.    All right.  At this particular time I'd like to
4          restate for the NBME subpoenas --
5    Q.    Mr. Woodward --
6    A.    -- I did receive --
7    Q.    -- there's no question pending.
8    A.    -- information back.
9    Q.    There's no question pending.
10   A.    I'm trying to give you information on this.
11   Q.    I'm terminating --
12   A.    I'm trying to restate --
13              MR. BUIKEMA:  Stop, stop.  I'm terminating
14         the exam.   We'll continue this in court and after the
15         judge has had an opportunity to review this conduct.
16         Thank you.
17              (The deposition was adjourned at 11:18 a.m.
18              Signature of the witness was requested.)
19
20
21
22
23
24
25



Page 43

STEVEN WOODWARD
February 1, 2011

```
1    AMERICAN UNIVERSITY OF ANTIGUA

2    COLLEGE OF MEDICINE, a foreign

3    corporation,

4                 Plaintiff,

5        vs.                      Case No. 2:10-cv-10978

6    STEVEN L. WOODWARD,

7                 Defendant.

8    _____/

9

10                 VERIFICATION OF DEPONENT

11

12       I, having read the foregoing deposition consisting

13   of my testimony at the aforementioned time and place, do

14   hereby attest to the correctness and truthfulness of the

15   transcript.

16

17

18               _____

19               STEVEN WOODWARD

20               Dated:

21

22

23

24

25
```



BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO
www.bienenstock.com

Page 44

STEVEN WOODWARD
February 1, 2011

```
 1                    CERTIFICATE OF NOTARY

 2        STATE OF MICHIGAN      )

 3                               ) SS

 4        COUNTY OF OAKLAND      )

 5

 6            I, CHERI L. GLEYRE, certify that this deposition

 7        was taken before me on the date hereinbefore set

 8        forth; that the foregoing questions and answers were

 9        recorded by me stenographically and reduced to

10        computer transcription; that this is a true, full and

11        correct transcript of my stenographic notes so taken;

12        and that I am not related to, nor of counsel to,

13        either party nor interested in the event of this

14        cause.

15

16

17

18

19

20

21                             _____

22                             CHERI L. GLEYRE, CSR-6548

23                             Notary Public,

24                             Oakland County, Michigan

25        My Commission expires:  May 9, 2013
```

