UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, a foreign corporation,

        Plaintiff,

                        United States District Court Judge
                          Patrick J. Duggan, presiding
                          Michael Hluchaniuk, referral
V                                  Case No.:  2:10-cv-10978

STEVEN L. WOODWARD,

        Defendant.

| Eric A. Buikema (P58379) | STEVEN L. WOODWARD |
|---|---|
| CARDELLI, LANFEAR & BUIKEMA, P.C. | In Pro Per |
| Attorneys for Plaintiff | c/o 7211 Brittwood Lane |
| 322 W. Lincoln | Flint, MI 48507 |
| Royal Oak, MI 48067 | Steve_L_woodward@yahoo.com |
| (248) 544-1100 | |
| ebuikema@cardellilaw.com | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

      Plaintiff American University of Antigua College of Medicine ("AUA"), through

Counsel, pursuant to Fed. R. Civ. P. 56, states its Motion for Partial Summary Judgment as

follows:

      1.     This is a defamation, trademark infringement and cybersquatting case where

Plaintiff alleges that Defendant defamed it and infringed on its marks through the publication of

a website, www.aua-med.com

      2.     Defendant failed to answer requests for admissions and has conceded liability.

      3.     As discussed at length in the accompanying brief, the statements made on

Defendant's website are *per se* defamatory, are false, and were made recklessly.

4.      Similarly, Defendant's own testimony indicates that he had no authority to publish or distribute Plaintiff's marks yet did so anyway.

5.      Finally, there is no genuine issue of material fact that Defendant breached the Anti-Cybersquatting Consumer Protection Act.

6.      As there is no genuine issue of material fact as to these claims, Plaintiff is entitled to summary judgment as a matter of law and the only remaining issue for trial is damages.

As there is no genuine issue of material fact for trial, except for the amount of damages, Plaintiff respectfully requests that this Court enter an order granting summary judgment on all counts in its Complaint, enjoining Defendant's defamatory website and setting trial on damages alone.  Plaintiff also requests costs, interest and attorney fees.

Respectfully Submitted,

/s/  Eric A. Buikema (P58379)
Eric A. Buikema (P58379)
Cardelli, Lanfear & Buikema, P.C.
322 West Lincoln Avenue
Royal Oak, Michigan 48067
(248) 544-1100
ebuikema@cardellilaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, a foreign corporation,

        Plaintiff,

                                United States District Court Judge
                                Patrick J. Duggan, presiding
                                Michael Hluchaniuk, referral
V                                   Case No.:  2:10-cv-10978

STEVEN L. WOODWARD,

        Defendant.

| | |
|---|---|
| Eric A. Buikema (P58379)<br>CARDELLI, LANFEAR & BUIKEMA, P.C.<br>Attorneys for Plaintiff<br>322 W. Lincoln<br>Royal Oak, MI 48067<br>(248) 544-1100<br>ebuikema@cardellilaw.com | STEVEN L. WOODWARD<br>In Pro Per<br>c/o 7211 Brittwood Lane<br>Flint, MI 48507<br>Steve_L_woodward@yahoo.com |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.................................................................................................iii

CONCISE STATEMENT OF THE ISSUES PRESENTED...........................................…........ v

OVERVIEW ...................................................................................................................... 1

STATEMENT FACTS ......................................................................................................... 1

STANDARD OF REVIEW ................................................................................................... 4

DISCUSSION ..................................................................................................................... 5

CONCLUSION................................................................................................................. 13

# INDEX OF AUTHORITIES

Page(s)

**Statutes**

11 USC § 1125(d)(1)(A)...................................................................................................10

11 USC § 1125(d)(1)(C)..............................................................................................12, 14

15 USC § 1125(a) ............................................................................................................. 9

15 USC § 1125(c)(1), (5)..................................................................................................13

15 USC § 1125(d) ............................................................................................................ 10

Fed. R. Civ. P. 36(a)(3)...................................................................................................... 5

Fed. R. Civ. P. 36(b) ........................................................................................................ 3

Fed. R. Civ. P. 56(c) ......................................................................................................4, 5

Fed. R. Civ. P. 56(c)(1)(B) ............................................................................................7, 8

Fed. R. Civ. P. 8(c)(1)........................................................................................................7

MCL 600.2911(1) ..............................................................................................................6

**Cases**

*Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ........................................4

*Berryman* v. *Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) ...................................................4

*Braithwaite* v. *Tinken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) .........................................4

*Campbell v. Bank One*, 79 Fed. App. 760, 762 (6th Cir. Mich. 2003) ............................6

*Community for Creative Non-Violence v. Pierce*, 814 F.2d 663, 671 (D.C. Cir., 1987) ..................................................................................................................................6

*DaimlerChrysler v. Net Inc.*, 388 F.3d 201, 205 (6th Cir. Mich., 2004) ........................12

*Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 607 (7th Cir., 2008) ......................5

*Heritage Optical Center, Inc. v. Levine*, 137 Mich. App. 793, 798; 359 N.W.2d 210 (1984)................................................................................................................5, 6

*Kalamazoo River Study Group* v *Rockwell International Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999) ........................................................................................................4

*Lothschuetz v. Carpetner,* 898 F.2d 1200, 1208-09 (6th Cir., 1990)..............................................13

*Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001)* ...............................................................10

*Swenson-Davis v. Martel*, 135 Mich. App. 632, 635 (1984) ...........................................................6

*Woodward v. AUA et al*, unpublished per curiam opinion of the Michigan Court
    of Appeals, dated January 13, 2011 (Docket No. 292172) ..................................................1

*Woodward v. Trinity Health-Michigan et al,* Unpublished Per Curiam Opinion of
    the Court of Appeals, Docket No. 292172) .......................................................................7

## *CONCISE STATEMENT OF THE ISSUES PRESENTED*

I.      Did Defendant defame Plaintiff?

      Plaintiff says:     Yes.

II.     Did Defendant infringe on Plaintiff's trademarks by publishing Plaintiff's
proprietary information on his website?

      Plaintiff says:     Yes.

III.    Did Defendant violate the Anti-Cybersquatting Consumer Protection Act?

      Plaintiff says:     Yes.

## OVERVIEW

This is a defamation, trademark and Cybersquatting case. Defendant publishes a website, www.aua-med.com which publishes falsehoods about Plaintiff, publishes Plaintiff's proprietary information and has a deceptively similar domain name to Plaintiff's actual domain. For the reasons asserted below, summary judgment in Plaintiff's favor is appropriate.

## STATEMENT OF FACTS

Plaintiff American University of Antigua College of Medicine ("AUA") is a medical school located in Antigua. Defendant is a former student who, due to his lack of professionalism and poor grades flunked out of AUA.

Plaintiff brought suit against AUA, Trinity Health-Michigan and Susan Zonia in Oakland County Circuit Court. The claims against Trinity Health-Michigan (d/b/a St. Joseph Mercy Oakland "SJMO")) and Susan Zonia arose from Defendant's well documented unprofessional conduct during his rotations at SJMO. He pursued claims of libel per se, intentional infliction of emotional distress and tortuous interference with his contractual relationship against SJMO and Zonia. He sought relief for breach of contract and invasion of privacy from AUA. The trial court dismissed all of Defendant's claims for his failure to state a claim and because his allegations were unsupported by the factual record. A unanimous panel of the Michigan Court of Appeals agreed. Exhibit A, *Woodward v. AUA et al*, unpublished per curiam opinion of the Michigan Court of Appeals, dated January 13, 2011 (Docket No. 292172).

Following Defendant's dismissal, he began publishing a website, www.aua-med.com. As the Court can see, the domain Defendant utilizes is nearly identical to Plaintiff's legitimate website, www.auamed.org. A copy of Defendant's webpage is attached as Exhibit B. The main page of Defendant's website contains the following "caution" about AUA:

1

This site contains evidence about AUA:
-Fraud
-Falsifying Student Grades
-Breach of Contract
-Disregard for Student Civil Rights
-Conspires Against Students
- and other unethical practices by AUA and the hospitals they do business
with.

Exhibit B. Defendant's website includes imbedded youtube.com videos and links to youtube

videos. Defendant's website and associated content represents, alleges and publishes, as if true,

false and defamatory information about AUA including, by way of example and not limitation,

that:

a. AUA routinely commits fraud upon its students;
b. AUA falsifies its students grades;
c. AUA disregards student civil rights;
d. AUA conspires against its students;
e. AUA professors teach students wrong information;
f. AUA conspires to commit fraud and violations of civil rights;
g. AUA commits criminal activities reportable to the FBI;
h. AUA student pass rate for USMLE medical board exams is only 22.9%;
i. AUA contrived false evidence to discipline Steven Woodward.

See Exhibit B.

Exhibit C is a list of Defendant's videos along with his synopsis of each. As the Court can see,

video 12 purports to include "evidence of [AUA's] conspiracy to commit fraud, fraud, breach of

contracts, and violations of Civil Rights." Exhibit C at 2. Similarly, video 13 (titled "FBI and

AUA") purports to demonstrate methods of reporting AUA's "criminal activities to the FBI"

Exhibit C at 3. Video 20 purports to include "examples of [AUA's] conspiracy, negligence,

abuse of power, perjury, fraud, and breach of contract." Exhibit C at 3-4. Video 20-9 alleges

that AUA's agent Dr. Susan Zonia "contrived false evidence." Exhibit C at 5-6. A number of

Defendant's videos purport to demonstrate that "the true intent of the AUA/St Joseph Mercy

Oakland Administration was to defraud me." Exhibit C at 4-6. The synopsis for video 30 (titled

2

"Antigua Crime and AUA") purports to demonstrate "the truth about AUA's lies and connections with criminal activities on Antigua." Exhibit C at 7. Video 31[1] of Defendant's "Synopsis on Unethical Practices" is captioned "Student Warning" and in this video Defendant alleges that Antigua is full of rape, murder, fraud, and government corruption. Defendant goes on to allege that Plaintiff violates the Lanham Act and is guilty of the crime of reckless endangerment. See e.g. Exhibit C at 7.

Plaintiff's Verified Complaint (Docket No. 1) was filed on March 11, 2010 alleging, inter alia, defamation, trademark infringement and violation of the Anti-Cybersquatting Consumer Protection Act. Pursuant to the Court's discovery order, Plaintiff sent Defendant requests for admissions on November 8, 2010. Exhibit D, Request for Admissions and Proof of Service. Defendant failed to timely answer requests for admissions[2]. In these conclusive admissions pursuant to Fed. R. Civ. P. 36(b), Defendant admitted to defaming Plaintiff and infringing on Plaintiff's marks.

Similarly, Defendant was deposed over two days in February and March 2011. Portions of his deposition testimony are appended as Exhibit E. For the reasons discussed below, summary judgment in Plaintiff's favor is appropriate.

---

[1] Available at http://www.youtube.com/watch?v=NLLsBYir6Pc
[2] Defendant did, at his reconvened deposition serve dilatory responses to these requests, purportedly in response to the Court's order compelling discovery (Docket No. 115). However, the requests for admissions were not the subject of Plaintiff's Motion to Compel and were not part of the relief sought (Docket No. 76). As such, Defendant had not, as required by Fed. R. Civ. P. 36(b) acquired leave of the court to dilatorily answer these requests. Defendant presents no good cause for the court to allow his responses, served over four months late and without leave of the Court.

## STANDARD OF REVIEW

A motion for summary judgment is determined pursuant to Fed. R. Civ. P. 56(c).  A motion for summary judgment should be granted if the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  "The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." *Kalamazoo River Study Group* v *Rockwell International Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999).  "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." *Id.* (internal citation omitted).  "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. *Berryman* v. *Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (internal citations omitted).  "If after reviewing the record as a whole a rational factfinder could not find for the non-moving party, summary judgment is appropriate." *Braithwaite* v. *Tinken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (internal quotation marks and citations omitted).

## DISCUSSION

### I.      Defendant Concedes Liability

Defendant did not timely respond to requests for admission. By failing to do so, he

conceded each of the requests. Fed. R. Civ. P. 36(a)(3). See also *Fabriko Acquisition Corp. v.*

*Prokos*, 536 F.3d 605, 607 (7th Cir., 2008).

These requests are attached as Exhibit D. As the Court can see, Defendant has admits the

following elements of Plaintiff's defamation claims:

> a.  Made a number of defamatory statements. (Requests 14 through 25 and 28
>     through 36).
> b.  Those statements were false (Request 37).
> c.  They were published to third parties. (Requests 9 and 10).
> d.  They were intended to injure Plaintiff. (Request 14).

Exhibit D.

As such, Defendant has conclusively established the defamatory statements and no issues

of material fact are disputed. Similarly, Defendant admitted to unlicensed publication of AUA's

proprietary information and data on its website. Exhibit D, Request 39.

Consequently, summary judgment in Plaintiff's favor is appropriate pursuant to Fed. R.

Civ. P. 56 as to the defamation and trademark claims.

### II.     Defendant Defamed Plaintiff

Should the Court for some reason allow Defendant to withdraw his conclusory

admissions, and require an inquiry into the merits of Plaintiff's claims, there are no grounds on

which Defendant could prevail. For the reasons discussed below, summary judgment is

appropriate.

#### A.      Per Se Defamatory Statements

Some allegations that Defendant makes that allege that AUA's actions are criminal are

*per se* defamatory and are actionable without regard to fault. See e.g. *Heritage Optical Center,*

5

*Inc. v. Levine*, 137 Mich. App. 793, 798; 359 N.W.2d 210 (1984) citing *Diplomat Electric, Inc v Westinghouse Electric Supply Co*, 378 F2d 377, 383 (5th Cir., 1967) (holding that where "a libel contains an imputation upon a corporation in respect to its business, its ability to do business, and its methods of doing business, the same becomes libelous per se."). Similarly, the "uttering or publishing of words imputing the commission of a criminal offense" are *per se* defamatory under Michigan's statute governing libel and slander. MCL 600.2911(1). As noted above, a number of Defendant's videos make allegations that AUA is guilty of certain criminal activities, such as conspiracy, fraud, perjury and reckless endangerment. See e.g. Exhibits B and C.

## B.   *Defamation*

To establish a claim for defamation[3], Plaintiff "must establish each of the following four elements: "(a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm, (defamation per se) or the existence of special harm caused by the publication (defamation per quod)." *Campbell v. Bank One*, 79 Fed. App. 760, 762 (6th Cir. Mich. 2003).

A communication is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Swenson-Davis v. Martel*, 135 Mich. App. 632, 635 (1984) citing *Nuyen v. Slater*, 372 Mich. 654; 127 N.W.2d 369 (1964). Similarly, an imputation of dishonesty or fraud is defamatory. *Community for Creative Non-Violence v. Pierce*, 814 F.2d 663, 671 (D.C. Cir., 1987), citing *Hoffman v. Washington Post Co.*, 433 F. Supp. 600 (D.D.C. 1977).

---

[3] A corporation such as AUA may be defamed. See e.g. *Heritage Optical Center, Inc. v. Levine*, 137 Mich. App. 793, 797; 359 N.W.2d 210 (1984).

*False Statements*

An affidavit of Neal Simon, the president of AUA is appended as Exhibit H. In it, he testifies that the statements Plaintiff made were false and that AUA has sustained damages as a result of Defendant's website. Plaintiff's verified complaint contains the same or similar testimony and Plaintiff fails to demonstrate a triable issue as to the purported truth of his appalling statement by any admissible evidence.

For example, one of Defendant's false statements is that Plaintiff "breaches contracts." However, there is no factual support for this statement. A panel of Michigan's Court of Appeals unanimously concluded that as a matter of law, Defendant had no contract with Plaintiff who was not therefore entitled to pursue a breach of contract claim. See *Woodward v. Trinity Health-Michigan et al,* Unpublished Per Curiam Opinion of the Court of Appeals, Docket No. 292172, attached as Exhibit A. In fact, Plaintiff knew that the statement was false when made because the Oakland County Circuit Court had dismissed this claim at the time he made the statement.

Finally, Plaintiff notes that Defendant bears the burden of proving his presumed affirmative defense of truth[4]. He cannot do so. Fed. R. Civ. P. 56(c)(1)(B) provides that the Court may determine that an issue is not genuinely disputed where the non-movant cannot produce admissible evidence to contest the issue. Here Defendant will be unable to produce any admissible evidence to support the truth of these allegations. Instead he will point to his "documents" which consist of a collection of hearsay and other inadmissible papers. Plaintiff will address all the defects in Defendant's "evidence" in its reply brief.

### C. *Publication*

Defendant admits to publication of the aforementioned statements on his site. Similarly,

---

[4] Plaintiff notes that Defendant never filed any affirmative defenses in this matter, yet from the tenor of the pleadings is contesting the falsity element of Plaintiff's defamation claim. As the Court knows, affirmative defenses must be pleaded. Fed. R. Civ. P. 8(c)(1).

he admits that the website and youtube.com videos have been viewed by non-AUA agents/employees. Exhibit E at 113.  Evidence supports this contention.  For example, the following comments were located on Defendant's YouTube Channel[5]:

> **Sidlum** (1 year ago)
> AH!!! I'm AT AUA..doing clinical rotations..SCARED NOW! :(
>
> **DuckandDeerGrinder** (1 year ago)
> thank you for sharing this.....I was really considering AUA

There is no genuine issue of material fact that Defendant's statements have been published to the public.

### D.    *Fault/Malice*

Defendant's fault/malice is apparent from his complete lack of inquiry or investigation before making statements.  As Defendant cannot establish the truth of his defamatory statements, Fed. R. Civ. P. 56(c)(1)(B) allows the Court to determine that an issue is not genuinely disputed where the non-movant cannot produce admissible evidence to contest the issue.  Here Defendant will be unable to produce any <u>admissible evidence</u> to support the truth of these allegations or that he made any reasonable inquiry prior to making them.

### III.    Defendant Violated Plaintiff's Trademarks

Plaintiff is entitled to summary judgment on its trademark claims as well.  The appropriate trademark statute provides as follows:

> (a) Civil action.
>> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,

---

[5] Available at http://www.youtube.com/user/auastudentrights#g/u

connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, ...

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 USC § 1125(a). Here Plaintiff is indisputably involved in commerce by virtue of its providing medical education services. As such, the trademark statute applies since Defendant's actions are "in connection with...services" in that he seeks to curtail the services that Plaintiff provides. Section A is clearly met. Defendant admits to the publication of AUA proprietary materials on his website. Exhibit E, 103 to 109. The deposition exhibits bearing Plaintiffs marks are attached as Exhibit F[6]. Similarly, Defendant admits that he had no license to publish AUA proprietary materials on his website.

Q. Did you have any permission from AUA to post on your website any of the syllabi that you might have on your web page?
A. Did I have permission? I did not not have permission.
Q. Did you have permission?
A. Did I have permission from -- no one from AUA said not to post this on my website.
Q. Did you have permission, yes or no?
A. No.
Q. Did you have permission from AUA to publish any of the course guidelines on your website?
A. No.
Q. Did you have permission from AUA to publish any of the PowerPoints on your web page?
A. No.
Q. Did you have any permission from AUA to publish any of its logos on your web page?
A. No.

Exhibit E at 110. Because Defendant has published AUA's actual (though unlicensed) materials on his website, he's created a substantial likelihood that web viewers will be confused as to the source of the information disseminated. Similarly, as discussed below, Defendant purposely utilizes "American University of Antigua" as a HTML tag to divert internet traffic intended for

---

[6] Only the first pages of these documents are appended.

9

the real AUA to his slander site.

As there is no genuine issue of material fact as to the trademark claim, summary judgment is appropriate.

## IV. Defendant is a Cybersquatter

Defendant's maintenance of his website is in violation of 15 USC § 1125(d), which prohibits the wrongful registration of internet domains which violate others' marks. Under the Anti-Cybersquatting Consumer Protection Act (ACCPA), a Defendant is liable where he:

> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> (ii) registers, traffics in, or uses a domain name that—
> > (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

See 11 USC 1125(d)(1)(A). See also *Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001)*.

Defendant obviously seeks to benefit and profit from the dissipation of his defamatory statements. In ascertaining whether a Defendant has a"bad faith intent", the directs the Court to consider a number of factors:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
> (VII) the person's provision of material and misleading false contact information

10

when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

The vast majority of these factors favor the Plaintiff. As to factor I, Defendant has no intellectual property rights in the trade name "AUAMED." Similarly, for factor II, Defendant cannot assert that AUAMED is his legal or common name. As to factor III, Defendant cannot establish that he's ever used AUAMED in connection with the bona fide provision of goods or services. Factor IV similarly favors Plaintiff as Defendant has no legitimate purposes for publishing content at his website, with the same content being tortuous. No fair reading of Factor V could favor the Defendant. As discussed above, Defendant admitted that the term "American University of Antigua" was used as an HTML tag on his website—aimed directly at receiving search engine traffic aimed at the real AUA. This evidences Defendant's intent to divert consumers from AUA's legitimate site to Defendant's website. Similarly, Defendant's site is published for the sole purpose of tarnishing and disparaging AUA and includes unlicensed publication of AUA's proprietary materials. Factor VII favors Plaintiff as Defendant must have provided false and misleading information to the domain registry service (i.e. that he had a legitimate purpose for his website and that the website did not violate this act or Plaintiff's marks) in order to receive the registration. Factor VII similarly favors Plaintiff. Defendant admitted to having procured multiple domains which include AUA in the title, such as aua-vet.com and aua-nurse.com. Plaintiff has both a veterinary program and a nursing school. Factor IX favors Plaintiff for the reasons stated in section III of this motion. Finally,

Defendant's bad faith is evident from his "caution" warnings on his website:

- "Hopefully, this prevents you from wasting years of your life and possibly as much as $150,000 in tuition alone."
- "Consider yourself informed about the business practices of AUA."
- "If these businesses do this to their students, one can only imagine what they do to their patients."
- "This web site is dedicated to all the students whose lives, careers, and dreams were ruined by AUA."

Exhibit B.

The second element of an ACCPA claim is that Defendant register, traffic in, or use a domain name which is "identical or confusingly similar" to Plaintiff's mark. Here Defendant's use of Plaintiff's "AUAMED" mark in his domain "www.AUA-MED.com" is nearly identical and is certainly confusingly similar. Case law is clear that minor differences in domain names still result in a finding of liability under the statute. Even "…slight differences between domain names and registered marks, such as the addition of minor or generic words to the disputed domain names are irrelevant." *DaimlerChrysler v. Net Inc.*, 388 F.3d 201, 205 (6th Cir. Mich., 2004), citing *Ford Motor Co. v. Greatdomains.com, Inc.*, 177 F. Supp. 2d 635, 641 (E.D. Mich. 2001) (holding that www.4adodge.com violated the legitimate mark of www.foradodge.com). In fact, Defendant admits utilizing HTML tags[7] to benefit from web searches for the term "American University of Antigua." Exhibit E at 157-8. See also Exhibit G, the deposition exhibit revealing these embedded HTML tags.

As there is no genuine issue of material fact, Plaintiff requests an order of summary judgment on this count and an award of damages to be determined at a later evidentiary hearing. Plaintiff also requests that the Court enter an order requiring Defendant to forfeit the domain pursuant to 11 USC § 1125(d)(1)(C).

---

[7] For the Court's benefit, HTML tags are text data embedded into websites. This data is accessed by search engines which continuously "index" the internet.

## V.    A Permanent Injunction is Appropriate

In conjunction with its request for summary judgment, Plaintiff requests equitable relief in the form of a permanent injunction.  The Court has ample authority to issue injunctive relief for the claims in this matter.

### A.    *Defamation*

The Court may enjoin Defendant from making statements adjudicated to be "false and libelous."  See e.g. *Lothschuetz v. Carpetner,* 898 F.2d 1200, 1208-09 (6th Cir., 1990).  Should the Court determine that Defendant's statements are defamatory, then injunctive relief is proper.

### B.    Trademark

A permanent injunction is an appropriate remedy for a trademark infringement.  See 15 USC § 1125(c)(1), (5).

### C.    Cybersquatting

An equitable order requiring that Defendant forfeit the domains is appropriate pursuant to 11 USC § 1125(d)(1)(C).

### *CONCLUSION*

AUA respectfully requests that this Court enter an Order:

A. Granting AUA's Motion in its entirety;

B. Enjoining Defendant Steven Woodward, as well as any agent, internet service provider, domain registry and/or website host acting at his direction or request:

> 1. From all further publication of defamatory content under the internet domain name www.aua-med.com

13

2. From the unlicensed publication, in any manner, of AUA proprietary information, including student academic records (other than his own); and

3. From publication of all other defamatory content presently disseminated through his website www.aua-med.com or www.aua-vet.com by any other means or medium;

C. Forfeiting the domains www.aua-med.com, www.aua-vet.com, and www.aua-nurse.com pursuant to 11 USC 1125(d)(1)(C).

D. An award of damages to be determined by the Court at a subsequent evidentiary hearing or trial; and

E. Granting AUA any other relief that this Honorable Court deems appropriate.

Respectfully Submitted,

/s/ Eric A. Buikema (P58379)
Eric A. Buikema (P58379)
Cardelli, Lanfear & Buikema, P.C.
322 West Lincoln Avenue
Royal Oak, Michigan 48067
(248) 544-1100
ebuikema@cardellilaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Plaintiff's Motion for Partial Summary Judgment and Brief in Support of Motion and this Certificate of Service were served upon Steven L. Woodward, Defendant, via his email address Steve_L_woodward@yahoo.com and

14

First Class U.S. mail to Steven Woodward, c/o 7211 Brittwood Lane, Flint, MI  48507 on April 29, 2011.

/s/ Eric A. Buikema
Cardelli, Lanfear, & Buikema, P.C.
322 W. Lincoln
Royal Oak, MI  48067
(248) 544-1100
ebuikema@cardellilaw.com
(P58379)

15