# EXHIBIT

# A

# STATE OF MICHIGAN

# COURT OF APPEALS

| | |
|---|---|
| STEVEN WOODWARD,<br><br>    Plaintiff-Appellant,<br><br>v<br><br>TRINITY HEALTH-MICHIGAN, SUSAN CATHERINE ZONIA and AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE,<br><br>    Defendants-Appellees. | UNPUBLISHED<br>January 13, 2011<br><br><br>No. 292172<br>Oakland Circuit Court<br>LC No. 2007-088103-CZ |

Before: GLEICHER, P.J., and ZAHRA and K.F. KELLY, JJ.

PER CURIAM.

    Steven Woodward appeals as of right the trial court's grant of summary disposition to Trinity Health-Michigan, Susan Catherine Zonia, and the American University of Antigua College of Medicine (AUA). We affirm.

    Woodward was a medical student in his fifth semester of study at AUA. As part of the medical school program, AUA placed Woodward in a clinical experience rotation at St. Joseph Mercy Oakland Hospital (SJMO), which is owned and operated by Trinity Health-Michigan (Trinity). Zonia served as the director of medical education at SJMO, and as a dean for AUA's program at that site. Zonia's duties included oversight of AUA's fifth semester program at SJMO, and the evaluation of student performance. This lawsuit arises from a memorandum authored by Zonia and forwarded to Dr. Ernesto Calderon, an AUA administrator, at Calderon's request. The memorandum described concerns regarding Woodward's demeanor and unprofessional conduct while at SJMO, stating in pertinent part:

> Mr. Woodward's lack of professionalism and poor communication skills are a source of great concern. We do not feel that he will be a good ambassador for AUA, our hospital, or the profession he is to enter. We encourage the faculty at AUA to review his entire record, to determine if he does not meet the qualifications to sit for the boards, and begin clinical rotations.

    The record documents numerous specific examples of Woodward's inappropriate conduct while at SJMO, including his demonstrated resentment of assignments, his completion of 100 patient logs in a mere two-week period accompanied by an indication that he did not wish

to participate further in the program, statements that the program constituted a waste of time and that he wished to transfer, "sabotaging exams," use of inappropriate language and passwords in communications with AUA, and general lack of respect and disruptive behavior while in classroom settings. Before participating in the SJMO program, Woodward had been placed on non-academic probation at AUA for unprofessional conduct. Woodward's academic performance was also tenuous, as he maintained only a 1.5 grade-point average. Ultimately, AUA initiated proceedings before its grievance and disciplinary committee, and Woodward was dismissed from the medical school. Despite receiving notice of the hearing and having an option to appeal the grievance and disciplinary committee's dismissal recommendation, Woodward elected to not attend the hearing or to pursue any administrative remedies.

Woodward filed a complaint against AUA, setting forth claims for breach of contract and an unspecified invasion of privacy. Additionally, Woodward's complaint asserted claims against Trinity and Zonia for libel per se, intentional infliction of emotional distress based on the alleged libel, and tortious interference with a contractual relationship. AUA filed a motion for summary disposition pursuant to MCR 2.116(C)(8), contending that Woodward had failed to state a claim on which relief could be granted. The trial court granted AUA's subrule (C)(8) motion, rejecting Woodward's contract claim. The trial court also dismissed Woodward's invasion of privacy claim against AUA, finding that Zonia's memorandum had not been publically published. Although the trial court afforded Woodward an opportunity to amend his complaint, he failed to timely submit an amended complaint to the court, or to serve it.

Following discovery, Zonia and Trinity sought summary disposition in accordance with MCR 2.116(C)(10), contending that no genuine issue of material fact existed concerning any of Woodward's remaining claims. The trial court granted defendants' motion, and Woodward now appeals.

This Court reviews de novo the grant or denial of summary disposition. *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). A motion brought in accordance with MCR 2.116(C)(8) tests the legal sufficiency of the pleadings, which are considered alone and without any additional evidence. *Johnson-McIntosh v Detroit*, 266 Mich App 318, 322; 701 NW2d 179 (2005); MCR 2.116(G)(5). In contrast, a motion brought in accordance with MCR 2.116(C)(10) tests the factual support for a claim and is to be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *The Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 56; 744 NW2d 174 (2007). "A genuine issue of material fact exists when the record, after drawing all reasonable inferences in favor of the nonmoving party, leaves open an issue on which reasonable minds could differ." *Id.*

Woodward first contends that because defendants failed to plead affirmative defenses, the trial court erred by granting summary disposition in their favor. We find this argument utterly without merit. Fundamentally, Woodward misapprehends the procedural distinction between motions for summary disposition and the pleading of affirmative defenses. Contrary to his allegations on appeal, the trial court granted summary disposition based on Woodward's failure to state a viable claim against AUA, and the absence of a genuine issue of material fact with regard to the claims pertaining to Trinity and Zonia. The failure of these defendants to plead various affirmative defenses did not shift the burden of proof, and lacked any relevance to the disposition of Woodward's claims. This Court has explained:

> [A]n affirmative defense does not controvert the plaintiff's establishing a prima facie case, but . . . denies that the plaintiff is entitled to recover on the claim for some reason not disclosed in the plaintiff's pleadings . . . . [A]n affirmative defense presumes liability by definition. [*Citizens Ins Co of America v Juno Lighting, Inc*, 247 Mich App 236, 241; 635 NW2d 379 (2001) (internal quotation marks and citations omitted).]

Defendants' premised their motions for summary disposition on the inadequacy of Woodward's pleadings and his failure to establish a factual predicate for his claims. Zonia and AUA never conceded Woodward's establishment of a prima facie case for any cause of action pleaded in his complaint. Accordingly, we reject Woodward's claim that unpleaded affirmative defenses barred summary disposition in this case.

Woodward next challenges summary disposition of his claims for breach of contract and an unspecified violation of his privacy. Although Woodward now asserts that his breach of contract action against AUA was based on the student handbook, his pleadings in the trial court belie this argument. Woodward premised his breach of contract claim solely on his payment of tuition, and failed to preserve any argument based on the student handbook. Consequently, we decline to consider this alternative theory on appeal. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). Similarly, Woodward neither pled nor preserved a due process claim. *Id.*

Despite the deficiency of Woodward's pleadings, we address his contention that AUA violated his rights to substantive due process. Woodward primarily relies on *Regents of the Univ of Mich v Ewing*, 474 US 214; 106 S Ct 507; 88 L Ed 2d 523 (1985). Initially we note that this case is factually distinguishable, as no "state action" exists here; AUA is a private entity. Moreover, Woodward cannot demonstrate that AUA denied him due process. A hearing regarding the allegations against him was scheduled, but Woodward declined to participate and failed to pursue an available administrative appeal. In addition, considerable record documentation complied prior to Zonia's creation of the memorandum supported Woodward's poor academic performance and unprofessional conduct, substantiating sufficient grounds for his dismissal. As noted in *Ewing*, "[w]hen judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment . . . . [and] they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Id.* at 225 (footnote omitted).

We note that Woodward's contentions regarding breach of contract are, to an extent, inherently contradictory. He asserts both the existence of an express contract arising from the student handbook, and an implied contract based on his payment of tuition. An implied contract may exist only in the absence of an express contract governing the same subject matter between the parties. *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 194-195; 729 NW2d 898 (2006). Further, this Court has previously declined to find an implied contract based on the payment of tuition. *Cuddihy v Wayne State Univ Bd of Governors*, 163 Mich App 153, 156-158;

413 NW2d 692 (1987). Specifically, this Court observed in *Cuddihy* the improbability "that a graduate student believed that merely by paying . . . tuition fees" that there existed an entitlement to graduation. *Id.* at 158. Woodward cites to and relies on a recent unpublished case from this Court in support of his contract arguments.[1] Woodward's reliance is unavailing, as his cited authority cites to *Cuddihy* and its progeny, stating that "this Court has implicitly rejected the contention that student handbooks, codes, or other informational material create contracts, expressly or otherwise, between universities and their students." Therefore, we affirm the trial court's grant of summary disposition to AUA on Woodward's breach of contract claim.

Next, we consider the trial court's dismissal of Woodward's claim of invasion of privacy by AUA. As recognized by this Court in *Dalley v Dykema Gossett*, 287 Mich App 296, 306; 788 NW2d 679 (2010),

> Michigan has long recognized the common-law tort of invasion of privacy . . . . Today, the invasion of privacy tort has evolved into four distinct tort theories: (1) the intrusion upon another's seclusion or solitude, or into another's private affairs; (2) a public disclosure of private facts about the individual; (3) publicity that places someone in a false light in the public eye; and (4) the appropriation of another's likeness for the defendant's advantage. [*Id.* (internal citations and quotation marks omitted).]

Once again, we note that Woodward's pleadings lack specificity regarding the actual theory of privacy pursued. Based on our generous construction of Woodward's appellate arguments, we view his claim as one for false light.

This Court has previously found that to establish a viable claim for false-light invasion of privacy, a litigant must demonstrate "a communication broadcast to the public in general or publicized to a large number of people that places the injured party in a light that would be highly offensive to a reasonable person." *Early Detection Ctr, PC v New York Life Ins Co*, 157 Mich App 618, 630; 403 NW2d 830 (1986). Further, the individual accused of having invaded the plaintiff's privacy "must have had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Id.* A "cause of action [under this theory] cannot succeed if the contested statements are true." *Porter v City of Royal Oak*, 214 Mich App 478, 487; 542 NW2d 905 (1995). "[T]he gravamen of this tort is that a defendant's publication 'attribut[ed] to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position.'" *Battaglieri v Mackinac Ctr for Pub Policy*, 261 Mich App 296, 303-304; 680 NW2d 915 (2004) (citation omitted).

The memorandum which serves as the basis for Woodward's false-light claim was a communication between Zonia and Calderon, who were both affiliated with AUA. This communication was not broadcast to the public. AUA used the document and its content

---

[1] *Lee v Univ of Michigan-Dearborn*, unpublished opinion per curiam of the Court of Appeals, issued May 12, 2009 (Docket No. 284541). Under MCR 7.215(C)(1), this case lacks precedential value.

internally, and for a limited purpose. Further, Jeffrey Yanez, M.D. substantively affirmed the accuracy of the various statements in the memorandum. This evidence regarding the truth of the statements precludes Woodward's successful pursuit of a false-light claim against AUA. *Porter*, 214 Mich App at 487.

We next turn to the grant of summary disposition in favor of Zonia and Trinity on Woodward's claims of libel per se and tortious interference with a contract. "Libel" has been "defined as a statement of and concerning the plaintiff which is false in some material respect and is communicated to a third person by written or printed words and has a tendency to harm the plaintiff's reputation." *Fisher v Detroit Free Press, Inc*, 158 Mich App 409, 413; 404 NW2d 765 (1987). To establish his claim for libel, Woodward must show: "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Rouch v Enquirer & News of Battle Creek (After Remand)*, 440 Mich 238, 251; 487 NW2d 205 (1992). "[C]laims of libel must be pleaded with specificity." *Royal Palace Homes, Inc v Channel 7 of Detroit, Inc*, 197 Mich App 48, 52; 495 NW2d 392 (1992).

Woodward has failed to establish the falsity of the challenged statements. In addition, the trial court correctly determined that Zonia's statements were protected by a qualified privilege. "The elements of a qualified privilege are (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only." *Prysak v R L Polk Co*, 193 Mich App 1, 15; 483 NW2d 629 (1992) (citation omitted). A qualified privilege may be overcome "only by a showing that the statement was made with actual malice, i.e., with knowledge of its falsity or reckless disregard of the truth." *Id*. "General allegations of malice are insufficient to establish a genuine issue of material fact." *Id*.

Woodward has failed to demonstrate that Zonia's statements lacked "good faith." In response to a solicitation from AUA, Zonia prepared and sent the memorandum evaluating Woodward's performance at SJMO. Clearly, AUA and Zonia maintained an "interest to be upheld" regarding the integrity of their program, their affiliation with Trinity, and the proficiency of their students. The content of Zonia's memorandum was "limited in its scope" to a very specific purpose – the evaluation of Woodward's performance in the SJMO program – and was in response to a request from AUA, constituting both a proper occasion and "publication in a proper manner and to proper parties only." *Prysak*, 193 Mich App 15. The trial court correctly determined that the challenged memorandum and its contents were subject to a qualified privilege.

Because he cannot demonstrate that Zonia acted with malice, Woodward is unable to overcome the finding of the existence of a qualified privilege. No record facts suggest that Zonia's comments were false when made, or were made with reckless disregard for their truth or falsity. Rather, the evidence establishes the contrary, that Zonia's statements were based on ongoing concerns voiced by others regarding Woodward's demeanor and conduct. "[S]ubstantial truth is an absolute defense to a defamation claim." *Collins v Detroit Free Press, Inc*, 245 Mich App 27, 33; 627 NW2d 5 (2001). Although Woodward suggests that Zonia did not sufficiently substantiate the various complaints before drafting her memorandum, mere proof

of a failure to investigate, without anything more, is insufficient to establish a reckless disregard for the truth. *Gertz v Robert Welch, Inc*, 418 US 323, 332; 94 S Ct 2997, 41 L Ed 2d 789 (1974).

We also affirm the trial court's dismissal of Woodward's claim of tortious interference with a contract. To establish a claim for tortious interference with a contract it is necessary to show: "(1) a contract, (2), a breach, and (3) and unjustified instigation of the reach by the defendant." *Mahrle v Danke*, 216 Mich App 343, 350; 549 NW2d 56 (1996). "One who alleges tortious interference with a contractual . . . relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or . . . relationship of another." *CMI Int'l, Inc v Internet Int'l Corp*, 251 Mich App 125, 131; 649 NW2d 808 (2002) (citation omitted). As Woodward has failed to meet the first and second requirements to establish this claim, any action for tortious interference against Zonia and Trinity cannot be sustained.

Finally, *sua sponte*, we note that neither party addressed, nor did the trial court specifically rule on, Woodward's claim of intentional infliction of emotional distress. Because Woodward has not identified this claim as an issue for appeal, we view it effectively abandoned. *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003). Moreover, based on our review of the record, Woodward could not have sustained this claim even had he vigorously pursued it. To maintain a cause of action for the intentional infliction of emotional distress, four elements must be established: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v Ford*, 237 Mich App 670, 674; 604 NW2d 713 (1999). Specifically, for liability to be imposed "the conduct complained of [must have] been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* We reject that the content of the challenged memorandum or the actions taken subsequent to its development meet this high standard of unacceptable behavior. As Woodward cannot demonstrate extreme or outrageous conduct, his intentional infliction claim lacks merit.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Brian K. Zahra
/s/ Kirsten Frank Kelly