ANSWER:

INTERROGATORY NO. 30:

Prior to December 17, 2007, did anyone listed in the answer to Interrogatory No. 19 have knowledge of the correspondence attached as Exhibit 2.

ANSWER:

INTERROGATORY NO. 31:

Prior to December 17, 2007, did Susan Zonia have knowledge of the correspondence attached as Exhibit 3.

ANSWER: Objected to as seeking irrelevant information and not reasonably calculated to lead to the discovery of admissible evidence.

INTERROGATORY NO. 32:

Prior to December 17, 2007, did anyone listed in the answer to Interrogatory No. 19 have knowledge of the correspondence attached as Exhibit 3.

ANSWER: Objected to as overly broad, vague and unable to be answered in the manner promulgated.

INTERROGATORY NO. 33:

On or before December 19, 2007, did anyone listed in the answer to Interrogatory No. 19 have knowledge of the correspondence attached as Exhibit 2.

ANSWER: Objected to as overly broad, vague and unable to be answered in the manner promulgated.

INTERROGATORY NO. 34:

On or before December 19, 2007, did anyone listed in the answer to Interrogatory No. 19 have knowledge of the correspondence attached as Exhibit 3.

ANSWER: Objected to as overly broad, vague and unable to be answered in the manner promulgated.

INTERROGATORY NO. 35:

When did Mr. Woodward state "waste of time" as reference in Exhibit 1.

ANSWER:

INTERROGATORY NO. 36:

State the date(s), time(s), and locations of any and all exams which Mr. Woodward allegedly sabotaged "by giving the same response to all questions to simply to get it over with." Exhibit 1.

ANSWER:

8

INTERROGATORY NO. 37:

State the basis for the statement that Mr. Woodward was "sabotaging" exams. Exhibit 1.

ANSWER:

INTERROGATORY NO. 38:

What were Mr. Woodward's evaluation scores for professionalism and communication skills between 2006 and 2007?

ANSWER:

INTERROGATORY NO. 39:

When and why was Mr. Woodward contacted via pager by Defendant?

ANSWER:

INTERROGATORY NO. 40:

Did Mr. Woodward ever fail to return Defendants' communication via pager.

ANSWER:

INTERROGATORY NO. 41:

If your answer in Interrogatory No. 40 is yes, state your basis for failing to contact, or Dr Brietenbach's office, or Plaintiff via telephone?

ANSWER:

INTERROGATORY NO. 42:

When did Mr. Woodward's pager number change?

ANSWER:

INTERROGATORY NO. 43:

State your basis for denying Mr. Woodward legal counsel or a recording device during his Grievance Committee hearing.

ANSWER: Objected to as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

INTERROGATORY NO. 44:

State the full and complete basis for the grievance procedures against Plaintiff on December 19, 2007.

9

ANSWER: Objected to as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

INTERROGATORY NO. 45:

Did Defendant(s) inform Plaintiff of the full and complete basis for the grievance procedures against Plaintiff held on December 19, 2007.

ANSWER: Objected to as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

INTERROGATORY NO. 46:

When was Plaintiff first informed of the grievance procedures scheduled for December 19, 2007.

ANSWER: Objected to as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

INTERROGATORY NO. 47:

Did Plaintiff submit written request for continuance of the Grievance Committee hearing scheduled for December 19, 2007.

ANSWER: Objected to as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

INTERROGATORY NO. 48:

Did Plaintiff submit written reason for the request for continuance of the Grievance Committee hearing scheduled for December 19, 2007.

ANSWER: Objected to as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

INTERROGATORY NO. 49:

State the basis for denying Plaintiff's request for a continuance of the Grienvance Committee hearing on December 19, 2007.

ANSWER: Objected to as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

INTERROGATORY NO. 51:

Did Plaintiff provide written statement of appeal in accordance to the American University of Antigua Handbook?

ANSWER: No.

INTERROGATORY NO. 52:

On June 23, 2008, did Defendant(s) receive email containing Plaintiff's written notice of appeal including attached exhibits?

ANSWER: Objected to as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

INTERROGATORY NO. 53:

Did you Defendant(s) a hard copy of Plaintiff's written notice of appeal with attached exhibits on or before June 27, 2008?

ANSWER: Objected to as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

INTERROGATORY NO. 54:

State the basis for denying Plaintiff's written appeal on or before June 27, 2008.

ANSWER: Objected to as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

## INSTRUCTIONS FOR REQUEST FOR DOCUMENTS

a. You must serve a written response within 28 days after service of this request. Your response must state that production and related activities will be permitted as requested or that the requested production is objected to, in which event the reasons for your objection must be stated.

b. Documents produced for inspection must be produced as they are kept in the usual course of business or be organized and labeled to correspond with the categories in this request.

c. If you do not agree to allow the requested production at a reasonable time and on reasonable conditions, a motion may be filed seeking a court order requiring the requested production.

d. The word "documents" means writings, drawings, graphs, charts, photographs, computer files, and other data compilations from which information can be obtained and translated into reasonably usable form.

e. The words "you" and "your" mean you, your representatives, agents, insurers, attorneys, employees, directors, officers, subsidiaries, affiliates, and all others over whom you have control.

f. The words "possession, custody, or control" mean all documents and things belonging to you that are in your possession, all documents and things belonging to others over which you have custody, and all documents and things in the custody of others over which you have the right to control.

## DOCUMENTS REQUESTED

REQUEST NO. 1

All documents and evidence related to the answers, explanations, and denials to the Plaintiff's Complaint set forth in the Defendant's Answer to Complaint as well as the allegations contained in Defendant's Motion for Summary Disposition.

RESPONSE: Objected to as overly broad, ambiguous, seeking irrelevant information, not reasonably calculated to lead to the discovery of admissible evidence.

REQUEST NO. 2

Provide all minutes, and records of evidence considered at the October, 2006 Grievance Committee hearing against Plaintiff.

RESPONSE: Objected to as overly broad, ambiguous, seeking irrelevant information, not reasonably calculated to lead to the discovery of admissible evidence.

REQUEST NO. 3

Provide copies of all reports, findings, and recommendations from the October, 2006 Grievance Committee hearing against Plaintiff.

RESPONSE: Objected to as overly broad, ambiguous, seeking irrelevant information, not reasonably calculated to lead to the discovery of admissible evidence.

REQUEST NO. 4

Provide copies of minutes, and records of evidence considered at the December, 19, 2007 Grievance Committee hearing against Plaintiff.

RESPONSE: Objected to as overly broad, ambiguous, seeking irrelevant information, not reasonably calculated to lead to the discovery of admissible evidence.

REQUEST NO. 5

Provide copies of all reports, findings, and recommendations used to form the basis of Dr. Bell's recommendation to dismiss Plaintiff from American University of Antigua College of Medicine.

RESPONSE: Objected to as overly broad, ambiguous, seeking irrelevant information, not reasonably calculated to lead to the discovery of admissible evidence.

REQUEST NO. 6

Provide copies of minutes, and records of evidence considered at the July 10, 2008 hearing on Plaintiff's appeal.

RESPONSE: Objected to as overly broad, ambiguous, seeking irrelevant information, not reasonably calculated to lead to the discovery of admissible evidence.

REQUEST NO. 7

Provide copies of all reports, findings, and recommendations used to form the basis of denying Plaintiff's appeal his dismissal from American University of Antigua College of Medicine.

RESPONSE: Objected to as overly broad, ambiguous, seeking irrelevant information, not reasonably calculated to lead to the discovery of admissible evidence.

REQUEST NO. 8

Provide copies of all relevant provisions of the University's Student Handbook which allegedly require a "de novo review of the charges against you (Plaintiff) and of your defenses." (see attached correspondence).

RESPONSE: Objected to as overly broad, ambiguous, seeking irrelevant information, not reasonably calculated to lead to the discovery of admissible evidence. No Attached correspondence.

REQUEST NO. 9

Produce a copy of the petition that Elizabeth Bullot and Lakedra Evens wrote to Defendant(s) between 2006 and 2007.

RESPONSE: Objected to as overly broad, ambiguous, seeking irrelevant information, not reasonably calculated to lead to the discovery of admissible evidence. No Attached correspondence.

REQUEST NO. 10

All documents and evidence related to any Affirmative Defenses.

RESPONSE: Objected to as overly broad, ambiguous, seeking irrelevant information, not reasonably calculated to lead to the discovery of admissible evidence. No Attached correspondence.

REQUEST NO. 11

Any and all documents to be relied upon at trial including.

RESPONSE: Objected to as overly broad, ambiguous, seeking irrelevant information, not reasonably calculated to lead to the discovery of admissible evidence. No Attached correspondence.

Respectfully submitted,

LAW OFFICE OF DAVID B. GUNSBERG, P.C.

David B. Gunsberg (P24235)
Attorney for Defendants
322 North Old Woodward Ave.
Birmingham, MI 48009
248-646-9090

October 14, 2008

**(The Defendant is not a trained stenographer and will do their best to transcribe the recording. )**

**Time Marker: 207:48**
**S. Woodward:** Did you want to take ah your admissions or any of this stuff with you?

**Plaintiff:** Is that, are you serving it?

**S. Woodward:** Well I mean, I'm under Court Order to give you this information and so, and so I want to give you this information so I'm not under violation of the Court Order. Do you want to look at these exhibits that I've given you, these exhibits are on a list but they are not part the information, this is more information that, that I'm going to use

**Plaintiff:** Are you supplementing your entire production

**S. Woodward:** Correct, Correct, OK, and, and again on the DVD I gave you, um

**Plaintiff:** Where's that

**S. Woodward:** Make sure you take that, because this has, this has in it, um, you'll just have to look at it. But it does, it tells you what that Robot is and it and it uh, there's some more information on there that I've gained since. This here, um, this information here an can we go on the record please, because this is important, an an this is important, can we go on the record, it's up to you

**Plaintiff:** That's fine

**S. Woodward:** Ok, when we were discontinued at the first deposition we had on February 1st I tried to tell him about the NBME before he got up and walked out. And what I'm giving you I filed and what I was trying, there's two thing I need to explain to him for that. I filed a subpoena to the NBME and this is the documentation that they sent me. So I'm giving you a copy of it. Some of this documentation, I think if it says 614 or something like that on it will be information that you already have. Right, they were part of Exhibits you already have. Right, but you didn't have maybe parts of it, and I wanted to make sure that if there's anything, this is all the information that the NBME gave me per a subpoena that I, that I, issued to them and they sent that back. And that's all my personal student record stuff. Some of it you have, which would be most of it, and some of the back part stuff you wouldn't have.

**Plaintiff:** OK, your producing a copy of what you received in response to serving a subpoena.

**EXHIBIT 18**

105

**S. Woodward:** Correct, On top of that there was another subpoena served to the, to the Network Solutions, which is AUA's domain, Right. And the subpoena is in the back. I couldn't find he subpoena to this one, but that's the subpoena to that one and this, again to this for my personal information they gave it to me.
I'll look for it more if you need a copy of the subpoena, I'll look for it, I can't find it. That's the subpoena I wrote, that's the information I got back. Basically they couldn't do anything for me. But I want to make sure that you weren't upset because I wrote another subpoena that I didn't recall and that it, and that's the reply I got from that subpoena.

**Plaintiff:** OK, Network Solutions

**S. Woodward:** Correct

**Plaintiff:** Are there other subpoenas that have…

**S. Woodward:** Right now, that, that should be it. What I've, what Ive, what's happened between, NBME, Sallie Mae, and ECFMG that should be it.

**Plaintiff:** Can I have a copy of this

**S. Woodward:** That's yours I made that for you. I made that for you and I made that for you.
And if I find that do you want me to fax you a copy of the original subpoena for the NBME?

**Plaintiff:** That is required under court rules

**S. Woodward:** Oh see that that was the whole confutation. I didn't know htat I wasn't I didn't know the rules for subpoenas. Is why we got in a big tiff.

**Plaintiff:** This folder you handed me named, ah, 3/21/2011 Exhibits can I keep this?

**S. Woodward:** yea, yea those are you your copies
Do you want to look at everything else I brought while you're here?

**Plaintiff:** I'll look at your visual aids

**S. Woodward:** OK

**Plaintiff:** Otherwise we're done you can go off record

**Stenographer:** Is it safe for me to pack-up?

**Plaintiff:** yea

**Stenographer:** Mr Woodward is it safe for me to pack-up

205

**S. Woodward:** Yea, I mean, I think I'm just, yea, I think I just, if he wants to see this stuff he can look at it.
This is a fiber optic training device and the interesting thing about it.
You have the, ah, comments from the Doctor, you have the that, they thanked me for developing this for the University of Michigan Anesthesia Clinic program.

**Plaintiff:** For what is this for

**S. Woodward:** his is for, if you're learning how to use, ah, a fiber optic training, fiber optic dexterity 3mm camera, you know what I'm talking about fiber optics

**Plaintiff:** OK

**S. Woodward:** Most people think of them as like colonoscopy, right, but for anesthesia that's as big as fiber optic, that's as big as your scope is.

**Plaintiff:** so this is to teach Doctors how to thread it through and,

**S. Woodward:** Correct, So what you do is you, instead of paying whatever these are 2 grand or whatever they are for producing this I made this for $50, $20.

**Plaintiff:** OK

**S. Woodward:** Right, Basically the interesting thing about it is that instead of going down through you know, you can change the path. Depending on the, that's what anesthesia providers have to do they have to go down and they have to pick the airway that they're going to, because they don't, they're not looking up the colon, right. They're weaving around down in cavities, right.
And they go Left or Right depending on where they where they nee to, doing whatever they are doing. And the device is only that big around, I think that is.

**Plaintiff:** OK

**S. Woodward:** Right, and so you can configure it different ways, you can put there's a little smilie face, that they put in there. I didn't put that in there, somebody else did.

But, ah, you configure it like here's another disc. Interesting thing about it is that these disks you can change the placement of the disk. So as you go through here you have to hit that one in the center and if you come up to this disk, you'd have either go, to go to one of, so you can move it, because they're flexible, Right, and it's flexible during the little hand....

**Plaintiff:** OK

**S. Woodward:** trigger on there, OK. So, that's this.

305

**Plaintiff:** This is a lot of stuff

**S. Woodward:** That, you have copies of everything that's in there. I mean you can look through it. I'm not going to hide anything from you. Those are standard books.
This book here explains the corneal reflex test.

**Plaintiff:** OK

**S. Woodward:** Right, AUA can give you a copy of that. This here is Human Anatomy, is from our Anatomy class. That AUA can give you, describes the eye.
This here is for a, I don't recall whether it's DLT or 3mm Tape cartridge, because of the library on of the Libraries I worked on. I used this for training aids when I was teaching kids how to, do you want to be an engineer. I gave you documentation where I received awards, for teaching students if they wanted to be an engineer or not.
This is one of the hand assemblies that I worked on, actually I worked on the gripper assemblies and how to get it to work right.

This here you have information on all of this.
This is a Powderhorn hand, this hand, ah, I worked on this in 92' and ah,
This was the Ferrari of tape drives at the time.
I mean every time you scan an American Express card good chances that, that data is stored off-site somewhere, I believe in one of their offsite campuses, a whole there's warehouses full of these robots that store all this data in deep archieve.

**Plaintiff:** OK

**S. Woodward:** Matter of fact I think Langley has, If you watch the movie Patriot Games one of these is in the movie Patriot Games, then I think Eraser has this in there and they're just short little blurbs you see the robot running around in the background

**Plaintiff:** OK

**S. Woodward:** Maybe, Clear, it's one of...

**Plaintiff:** Tom Clancy movie

**S. Woodward:** Right, Right, Right you'll see this in a couple of those and that because it was so Hightech at the time.
So, I was the Advanced Manufacturing Engineer of this product

**Plaintiff:** OK

**S. Woodward:** You also have a video of how this product works an you can see the silo I mena it's like 10X 10 silo what these things run around in are there

405

**Plaintiff:** OK

**S. Woodward:** If you want to look at what this thing does, so, you need, you need...this is my check board

**Plaintiff:** OK whatever you need

**S. Woodward:** I'm just saying

**Plaintiff:** Whatever your going to do your going to do

**S. Woodward:** Right, I'm not hiding anything I'm just saying

**Plaintiff:** I'm aware of your exhibits and you know I'm not replying about the admissibility, but

**S. Woodward:** Right true

**Plaintiff:** I've inspected them

**S. Woodward:** OK, we're good
So I'm clear of all obligations for per the Court Order as far as producing documentation and exhibits to you , right

**Plaintiff:** Assuming you've produced everything to me

**S. Woodward:** Well sure, I mean if there's something, again, we said there's something, I don't recall what it ws that you wanted, that you, subpoena,
Do me a favor if there's something you wanted in that list of Domain names that I have, you send me an email of the stuff you want you want me to give you.

**Plaintiff:** OK

**S. Woodward:** Such as that subpoena and list of domain names and I'll get it to you.

5o5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, a foreign corporation,

     Plaintiff,

                       United States District Court Judge
                       Patrick J. Duggan, presiding
V                         Michael Hluchaniuk, referral
                       Case No.: 2:10-cv-10978

STEVEN L. WOODWARD,

     Defendant.

| Eric A. Buikema (P58379)<br>CARDELLI, LANFEAR & BUIKEMA, P.C.<br>Attorneys for Plaintiff<br>322 W. Lincoln<br>Royal Oak, MI 48067<br>(248) 544-1100<br>ebuikema@cardellilaw.com | STEVEN L. WOODWARD<br>In Pro Per<br>c/o 7211 Brittwood Lane<br>Flint, MI 48507<br>Steve_L_woodward@yahoo.com |
|---|---|

## PLAINTIFF'S INTERROGATORIES TO DEFENDANT

Plaintiff American University of Antigua College of Medicine, through counsel, pursuant to Fed. R. Civ. P. 33 submits the following interrogatories to Defendant to be answered fully and under oath. Pursuant to Fed. R. Civ. P. 33(a)(2), you have 30 days from being served to respond. Fed. R. Civ. P. 26(e) imposes a duty upon you to timely supplement your responses.

    1.    State your full name, address, social security number and driver's license number.

**RESPONSE:**

**EXHIBIT 19**

2. State your age, date, and place of birth.

**RESPONSE:**

3. Provide the address and dates of residence for every place you have resided in the last 10 years.

**RESPONSE:**

4. Employment History. Provide the name, address, telephone of every place where you have been employed in the last 15 years. Separately for each employer, provide your title, rate of compensation, dates of employment and the name of the person to whom you reported.

**RESPONSE:**

5. Please state the reasons and purpose for maintaining aua-med.com website.

**RESPONSE:**

6. Please state the reasons and purpose for maintaining the auastudentrights YouTube video Channel.

**RESPONSE:**

7. Please state all your defenses in this matter and their factual bases.

**RESPONSE:**

8. Have you ever been arrested for or convicted of a crime? If so, state
   a. the nature of the arrest/conviction,
   b. the date, and
   c. the court and location.

**RESPONSE:**


9. Separately for each person who has knowledge of any fact relevant to this lawsuit, state:
   a. The person's name, address, telephone number, employer address and employer telephone number;
   b. The facts known to the witness;
   c. The relationship of the witness to any party to this litigation, if any;
   d. Produce all documents relating to this witness and/or his or her testimony, including statements, notes of conversations, memorandums, correspondence, reports, or any other records, written, electronic or otherwise.

**RESPONSE:**


10. Separately for every oral communication between plaintiff or anyone acting on its behalf and this defendant or anyone acting on its behalf relating to any fact relevant to this lawsuit:
    a. State the substance of the communication;
    b. State the date the communication occurred;
    c. Identify by name, address, telephone number and employer all parties to the communication;
    d. Produce all documents or records relating to or evidencing the communication.

**RESPONSE:**


11. Have you ever been party to a lawsuit before, including any bankruptcy proceeding, worker's compensation proceeding or divorce? If so, please provide

3

      a.    the name of case including the names of parties, the state, county and court where it was filed, the year it was filed; and
      b.    a brief description of the issue(s) in the case.

**RESPONSE:**


12.    Have you ever been treated for a mental health condition or issue? If so, Please provide the name, address and telephone number for every mental health professional you have consulted, been examined by or seen in the last 10 years

**RESPONSE:**


/s/ Eric A. Buikema (P58379)
Eric A. Buikema (P58379)
Cardelli, Lanfear & Buikema, P.C.
322 West Lincoln Avenue
Royal Oak, Michigan 48067
(248) 544-1100
ebuikema@cardellilaw.com

Dated: November 8, 2010