Case 2:10-cv-10978-PJD-MJH

# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

Plaintiff,

V

CASE No.: 2:10-cv-10978-PJD-MJH
Judge Patrick J. Duggan

STEVEN WOODWARD,

Defendant,

**Defendant's Response to Docket 168 - Transcriptions of Recordings**

FILED
2011 SEP 15 P 2:26
U.S. DIST COURT CLERK
EA. DIST. MICH
FLINT

1

**Defendant's Response to Docket 168 - Transcriptions of Recordings**

This is an index of the audio/video recordings that either I transcribe or I had transcribed. I also included files i.e. emails and other recordings that verify dates, voices, conversations of the recordings.

**Index of Files:**

**Directory**: is a container for files

**File**: is individual electronic date; documents (e.g. pdf or .doc), audio/video recordings etc.

**Electronic-Files/** = Top level directory containing all the directories and files.

**Electronic-Files/5th-semester/** Directory containing an example of a Video created by Steven Woodward. In this case the video describes the changes during the 5th Semester class at St Joseph Mercy Oakland Hospital.

**File: Part21-5th-semester.wmv** sample of a video created by Steven Woodward.

**File: Part21-5th-semester.doc** is the transcription by Steven Woodward of the vidoe file **Part21-5th-semester.wmv**

**Electronic-Files/August-11-2011-hearing/** Directory containing the transcript of the August 11, 2011 hearing before the Honorable Judge P. J. Duggan.

**File: (2011 August 11 Antigua v Steven Woodward.pdf)** transcription of the hearing.

**Electronic-Files/Committee-meeting-1/** Directory of recordings form the first Committee Meeting AUA had with Steven Woodward;

**Files: DW_A0018.wav** and **DW_A0019.wav** are recordings of conversations of the First Committee meeting AUA had with Steven Woodward.

**Files**: **DW_A0018-committee-meeting-tape1.doc** and **DW_A0019-committee-meeting-tape2.doc** are the transcription created by Steven Woodward of files DW_A0018.wav and DW_A0019.wav.

This directory contains:

**File**: **Ganguly-email.doc**, which is a copy of the email referenced in the Committee Meeting recording.

**File**: **Kastuck.flv** is an AUA video of Don Kastuck, AUA faculty, who speaks in both files DW_A0018.wav and DW_A-0019.wav.

**File**: **Peter-Bell-email.doc** is a copy of the email Steven Woodward sent Peter Bell concerning the Committee meeting, this email has an attachment which is **steve-bacteria.wav**

**File**: **steve-bacteria.wav** is a portion of the conversation during the class in question, part of the audio file referenced during the Committee Meeting.

**Electronic-Files/December-22-2010-Hearing/** Directory of the recorded electronic transcript of the December 22, 2010 hearing.

**File:Hluchaniuk_20101222-1103_01cba1c7d2325970.wma** is the recorded December 22, 2010 hearing Steven Woodward purchased from the court.

**File: Dec-22-2010-Hearing.pdf** which is the transcription of the December 22, 2010 Hearing written by Gail L. Bolden, Notary Public.

**Electronic-Files/Deposition-1/** This directory contains the files relating to the February 1, 2011 Deposition of Steven Woodward: **Deposition-1.wmv, Deposition-1.wmv.wav.pdf.doc**, **DW_A0068.wav**, and **woodward_steven_-_110201.pdf**

**File: Deposition-1.wmv** is the video recording of the deposition.

**File: DW_A0068.wav** is the audio recording of the deposition.

**File: woodward_steven_-_110201.pdf** is a transcription of the deposition written by Cheri L. Gleyre, RPR, CSR-6548.

**File:Deposition-1.wmv.wav.pdf.doc** is the transcription of conversations during the deposition written by Steven Woodward.

**Electronic-Files/Deposition-2/** This directory contains files concerning the second Deposition of Steven Woodward taken on March 24, 2011.

**File: DW_A0069.wav** is the recording of the deposition of Steven Woodward on March 24, 2011.

**File: Deposition-2-Judge-Plaintiff.doc** is the transcription of conversations of the deposition written by Steven Woodward.

**Files**: **EX_(004,005,006,007,008,009,010,011).pdf** are the Exhibits presented during the Deposition.

**File: woodward.pdf** is the transcription of the March 24, 2011 deposition of Steven Woodward.

**Electronic-Files/Fox-News/** Directory containing files of a FOX News program concerning AUA education program.

**File: Fox-News-AUA.mp4** Video file of Fox News segment

**File: Fox-Video.doc** is the transcription of Fox-News-AUA.mp4

**Electronic-Files/Sallie-Mae/**   Directory containing files regarding Student Loans with Sallie Mae.

**File: DW_B0061.wav** is a recording of Devin Hewitt from Sallie Mae.

**File: SallieMae.doc** is the transcription of recording DW_B0061.wav written by Steven Woodward.

**Electronic-Files/Shelf-Exams/**   Directory contains three files **glasser-bio.jpg**, **glasser-shelf.doc**, and **glasser-shelf.flv** concerning NBME Shelf Exams at AUA.

**File: glasser-bio.jpg** is a picture file of and title of AUA faculty Stephen Glasser.

**File**: **glasser-shelf.flv** is a video file of Stephen Glasser defining the purposes of Shelf Exams at AUA.

**File**: **glasser-shelf.doc** is the transcription of file glasser.shelf.flv written by Steven Woodward.

**Electronic-Files/Somaraju/**   Directory containing recordings, transcriptions, and an email to Peter Bell, AUA Dean concerning a Post Exam Review of said Biochemistry Class referenced in the AUA v Steven Woodward committee meeting.

**File: 001_A_003_Favour_BIOCHEM BLOCK 2 TEST REVIEW.mp3**, is a copy of the entire recording of the Post-exam review for the Biochemistry class Dr. Somaraju taught.

**File: Peter-Bell-email.doc**, is the email Steven Woodward sent to Dean Peter Bell concerning the Post Exam Review and the Committee Meeting.  This email had an attached recording, steve-bacteria.wav, which is a segment of 001_A_003_Favour_BIOCHEM BLOCK 2 TEST REVIEW.mp3.

**File: somaraju-belittles-student.doc** is a transcription of a segment of 001_A_003_Favour_BIOCHEM BLOCK 2 TEST REVIEW.mp3, somaraju-belittles-students.wav

**File: somaraju-belittles-students.wav** is a recorded segment of 001_A_003_Favour_BIOCHEM BLOCK 2 TEST REVIEW.mp3.

**File: somaraju-complaining-steve-speak.pdf** is a transcription of part of recorded file Somaraju-complaining-steve-speak-questions.mp3

**File: Somaraju-complaining-steve-speak-questions.doc** is a transcription of part of recorded file Somaraju-complaining-steve-speak-questions.mp3

**File: somaraju-complaining-steve-speak-questions.mp3** is a segment of the recoding 001_A_003_Favour_BIOCHEM BLOCK 2 TEST REVIEW.mp3

**File: steve-bacteria.wav** is a recorded segment of 001_A_003_Favour_BIOCHEM BLOCK 2 TEST REVIEW.mp3 that was attached to the copy of the email Peter-Bell-email.doc

**File: steve-v-somaraju-bacteria.doc** is a transcription of file steve-v-somaraju-bacteria-dabate.wav.

**File: steve-v-somaraju-bacteria-debate.wav** is a recording segment of 001_A_003_Favour_BIOCHEM BLOCK 2 TEST REVIEW.mp3.

Steven Woodward
7211 Brittwood Ln
Flint, MI 48507
(810)235-7267

Part21-5th-semester.wmv


Part21-5[th]-semester.wmv
**Steven Woodward**:
The American University of Antigua and St Joseph Mercy Oakland Hospital of Trinity

Healthcare Network a synopsis on unethical practices Part 21 5th Semester


In this video I'll address the administration skills organizational skills of AUA, or lack

there of

I will first show the administration that was responsible for the 5th Semester program.

I will show over 20 schedule changes that occurred in a semester that was basically two

and a half months long.  Some of these testing changes occurred the day before the test!

I will show you that AUA instructors were aware of how unorganized the program really

was.

After watching this video ask yourself this question!

Should you waste your money on a program like this?


This is Susan Zonia she has a PhD in Sociology she's an associate professor with AUA

and Director of Medical Education for St Joseph Mercy Oakland Hospital in Pontiac

Michigan


This is Jeffrey Yanez, MD, associate professor for AUA he was the course director for St

Joseph Mercy Oakland Hospital and Academic Counselor.  His personal goal is to enable

the student and resident physician the opportunity to achieve their personal goals.


This is Victor Hrehorovich Vice Chancellor and Executive Dean for AUA's 5th Semester.

1

This is Jorge Calderon Dean of Clinical Sciences

The red boxes in the upper right hand corner indicate the change.

This is the AUA St Joseph Mercy Oakland contract this contract was obtained from the deposition of Susan Zonia.

 I quote "The hospital clerkship program will include rotations in Internal Medicine, Surgery, Family Medicine, Pediatrics, and Obstetrics and Gynecology and electives.  We only receive rotations in Internal Medicine and Family Medicine but paid for this.

This is the 5th Semester schedule of clinical rotations.

Note that it was suppose to start on September 10th I was scheduled to have one week of Emergency Medicine, but didn't because of the administrations poor project management skills.

This is an email from Deneen Nicks, student coordinator, dated September 12th, indicating that we should report to the medical education department of September 13th.

On October 8th we received this email,

Please read the email below and disregard the attached adjusted schedule.  I will email you the revised schedule for Pontiac.

Again, from Deneen October 8th, please see the attached revised lecture schedule for Pontiac.   These changes were given to us by AUA, effective today.

Again on October 8th from the course director, doctor Jeffery Yanez, schedule change: Quiz 3 is now this Friday, 10/12 and not next Friday.

So in one day we were notified of three schedule changes.

And this email from Dr Yanez, Thursday October 25th. Bring your laptops for the quiz this Friday Radiology and Eye.

Notice the lecture schedule October 26th the quiz was only over imaging we weren't suppose to have the eye quiz until November 2nd.

And again an email from Dr Yanez also cc'd Susan Zonia

Wednesday October 31 notifying us of another change this Friday 12:00 Noon: Exam Pending I will let you know ASAP –anticipate dermatology and abdominal.

Note the November 2nd Quiz schedule eye and skin.

Dr Yanez notifies us of another change on Wednesday October 31st.  We will have at least derm this week, look at Addisons disease and hemochromatosis.

Dr Yanez sends us this email Thrusday at 6:30 AM.  Derm Firday

3

And on Thursday at 5:00 PM Dr Yanez sends us this email.  It looks like you have GI and skin Friday.  We were scheduled for eyes and skin.

Dr Jeffrey Yanez sends this email on Tuesday November 6th.  Schedule change, Plan for tests on neurology and nephrology this Friday.

Note the lecture schedule there were no tests schedule on November 9th.  There were no tests scheduled for November 9th.  We were told of this change Tuesday, November 6th.

Dr Yanez sends us this email on Wednesday, the only tests that we may have this Friday could be OG/GYN, rectal, prostate, and male genitalia.

 It is not clear at this time.  The lecture schedule was urology and neurology.

Dr Yanez sends us this email on Friday November 16th.  I am waiting to hear from AUA regarding the date of the final written and their plan for the shelf exam.

Note, We were never given the Shelf Exam or the Shelf Like Exam!  But every student paid for testing.

And Dr Yanez writes us again on November 16th.  I do not have any exams to give at this time, however, things may change.  Pending exams include OBGYN, rectal, prostate, male, breast, peds, muscle skeletal, stats and health maintenance.  Then here is the final exam and a shelf like exam.  I am waiting to hear from AUA on the plan for the Shelf exam.

And from Dr Yanez Monday November 19th.  Unless changed by AUA your last day at St Joseph Mercy Oakland will be Friday December 7.

Dr Yanez writes us again on November 19th.  A follow up to my email from one hour ago regarding your last day of rotations.  The registrar from AUA states that all rotations are 15 weeks in duration.  We started this semester on September 12.  15 weeks puts the last day as December 26.  We will keep the date of the final written exam as Friday December 7.

Dr Yanez writes us yet again of another schedule change on November 19th.  AUA is scheduling a shelf like exam for December 11.  Details to follow.
We were never given the Shelf Exam or the Shelf Like Exam. But every student paid for them.

And yet again on November 19th, Final exam date stands as December 7 and final day in Michigan is still pending.

Dr Yanez writes us this email on November 20th,  OK, as of today the following dates for the AUA semester V program apply.
Pre Shelf exam 4 hours on December 11
Final written exam 800 questions 2 sessions of 400 week of December 10th through the14th or the 17th through the 21st.  Once I have the exam in hand I will give a final date.  I hope for the 10 through 14th.  Final practical exam the week of December 10th through

5

the 14th you are responsible with your current faculty.  Endocrine and hematology test dates are pending.  I hope for 12-7 or 11-30.  Once I have the test in hand I will give a final date.  Last official day is December 21st.


Dr Yanez sends us this email on Monday, November 26th.   We will have tests this Friday November 30th.

Hematology – yes – I got it,

Pediatrics- if I get it,

Muscle skeletal If I get it,

Endocrine unclear, breast, GYN rectal, prostate male- unclear may be on the final only

Stats, prevention- unclear may be on the final only.

Per the lecture schedule on November 30th we were responsible for hemopoietics, lymphatics, health maintenance


Dr Yanez sends us this email on Tuesday November 27th.  For this Friday November 30th peds and hematology and muscle skeletal be prepared.

Final exam date may be moved up to December 7.  I will let you know this Friday the status.   Baltimore is giving the shelf exam on December 14.

The endocrine, GYN breast rectal prostate male stats and preventive tests are unclear at this time.  I will let you know.

Note: the lecture schedule November 19th muscle skeletal, physiology, peds, OB/GYN

Dr Yanez sends us this email on Thursday November 29. The final exam is planned for an on line testing experience with an outside vendor.

Dr Yanez sends us this email on Friday November 30th. If you did not receive an email from scholar360 let Deneen know today. This is the new AUA online testing service. Log onto scholor360.com with the access they sent you and set up your account and password. Review the help file and tutorial. I anticipate that we will use this online system for the final exam next week. Final times and days are pending, next Friday December 7 is a starting date. Here it is Friday November 30th and we still don't know when the final exam is. We did end up taking the final on December 7th.

This is an email Dr Yanez forwarded us from Dr Calderon. For those of you who took the final exam using scholar360, I need you to email me your evaluation of that program. Exclude from it the vocabulary portion that was not good because we did not have the time to correct it.
Note: it was an electronic test, automatic correction
Include in your evaluation how did you like the format grade of difficulty to understand and answer questions the format and clarity of screens, including images and graphics, the speed with which you received the scores and any other aspect that you like to talk about. Finally, your suggestions about possible improvements.

You can go to www.AUA-Med.com video index part 12 Exam Master for an in-depth review of this software. This application did not work for any of the scheduled Friday

test. This application did not work on many other occasions. I could not login for five consecutive days to do my homework and required tests. AUA switched to another testing application the week before the final exam.

This is Dr Hayden he was a professor for the 4th semester clinical medicine on Antigua

I sent Dr Hayden this email in June in reference to the 5th semester program. We had a speaker today, Dr Victor Hrehorovich, I guess he's in charge of 5th semester. According to him these are some of the things we need to learn in 5th semester, I thought it would interesting to you and Dr Manju. It really upset me. How to dress, shoes to wear, how to take a history, following a doctor around and listen to report. I asked him isn't that what we're suppose to learn in ICM DPS and if you coordinate with each other. He told me that they're working on coordinating that with your team

This is Dr Hayden's reply. Appreciate the info about 5th semester. As of yet I am unaware of any attempts to coordinate what goes on there with what's happening here. Obviously we should be and hopefully that will change on a go forward basis. Being the new guy on the block, I'm not at liberty to rock the boat until I'm sure I have my feet on solid ground. However, I understand what you are saying and your input as well as your student colleagues is helpful and constructive. Change will come thanks to your efforts. Unfortunately as a trail blazer, you yourself won't benefit from the path you are creating. But that's usually the case with leaders and forward thinkers.

This is a quote from Susan Zonia's deposition concerning the 5th semester, So those were the hitches and the student adjustment issues.  I mean I think it was a normal roll out of a new program.  It was nothing significant.  After this can you believe anything Susan Zonia says.

Susan Zonia is the chair of the hospital's institutional research board, overseeing all human subject research.  If these people can't manage a clinical program any better than this how do they manage patient care.

Your medical education is going to cost you years of your life and can exceed $150,000 dollars in tuition alone the school you attend can define your future think wisely before selecting American University of Antigua.

**File:** DW_A0018.wav Committee Meeting 1 Tape 1
DK = Don Kastuk
MP = Majid Pathan
RS = Reza Sanii
DK = Don Kastuk
WC = William Cain
SW = Steven Woodward
(reference to Syed Noori)

**DK**: Steve we've got, ah two, two separate, ah, bits of agenda, one is that our understanding is that you have some issue.

**WC**: Time out, what is that?

**SW**: This is a recording device

**WC**: You didn't ask my permission, turn it off

**SW**: Well this is a um committee ah with AUA and if I'm going to speak in front of a committee for AUA in a closed session with faculty and me. Then I'm going to record this

**WC**: Your going to request permission

**SW**: Yea yea yea, I would like to record this meeting if you don't mind. If not then ah then ah either I can leave or you can leave I don't care

**DK**: Why,

**DK**: If leaving, you might be permanently leaving with a remarks like that. You have to ask first. I mean you gotta ask first. Hey you gotta ask first

**SW**: Ok, I'm sorry, I would like to record this, ah, meeting I mean all this, all this, I heard you outside with Syed, I mean it was pretty load in here and that's just,

1

**WC**: That's just what? finish that.

**SW**: Yea, that I, I, I; I just, I just felt that was very, ah, that it's under my best interest that I record this meeting.

**MP**: You OK?

**WC**: Yea

**SW**: Ah, Where would you like to start?

Would you like to start, with ah, does anybody have an issue with me recording this?

**MP**: Yea he has issue,

**SW**: You have an issue with that Dr Sanii

**RS**: Yea, I do, I just don't ah

**DK**: Steve why don't you, ah, sorry to cut you off, why don't you go back outside for a couple of minutes and we'll talk about it, and we'll come get yea

**SW**: I mean, I mean, If we have nothing to hide then I don't feel we have nothing to hide ya know, if you want to talk men to men, faculty to student, I feel we have nothing to hide.

**MP**: We have to check up with the…we'll check up with the

**DK**: Go take a seat for a moment, and we'll

**MP**: policies whether we can do that. hey, if he says OK, then, If he says no, then.

2

DW_A0019 Committee Meeting 1 Tape 2
**File:** DW_A0019.wav
DK = Don Kastuk
MP = Majid Pathan
RS = Reza Sanii
DK = Don Kastuk
WC = William Cain
SW = Steven Woodward
(reference to Syed Noori)

**SW**: Alrighty, umm

**DK**: Lets, sorry there's something else I wanta say, you gotta umm, you gotta recognize that first of all that was a really bad start and and that this is a disciplinary hearing of the faculty of the institution addressing a student Ok it's not any of those other things you suggested a man to man talk or any of those things and it's in your best interest that yea know that it run, it's in the interest of everyone including the institution and you that it run as a disciplinary hearing addressing a student. Take a seat, OK, Steve take a seat

**SW**: I understand I just, the reason I was on the defensive is because I overheard how you were talking to doctor, or doctor, to Syed, OK,  and that just I mean, I felt that was in my best interest.  OK umm

**MP**: Now let me start, ah, do you know Dr Kastuk,

**SW**: Yes I do

**MP**: He's representing the SGA, student representative,

**SW**: OK

**MP**: Dr Cain,

**SW**: I know Dr Cain

**MP**: Dr Sanii.

1

**SW**: I know Dr Sanii

**MP**: and I'm Dr. Pathan

**SW**: Right

**MP**: OK, You know why we're here because we had pursuit your complaint uh, says that ah do not appreciate attitude she presented toward the class this morning before our review and then you would like to know the last grade does not reflect my grade, knowledge of the material my extra 10 extra points for my grade putting me over 20% above the class average, 8 points I failed to transfer from scantron ah, this was not my mistake, I acknowledge this was my mistake,  I'm sure the other professors understood these kind of mistakes and have been equally lenient with the student.

That one and then one side is your complaint the second is Dr Samarajo's

Steven Woodward's remarks are highly disrespectful and also attacked me with a bunch of accusations that I am not capable of conducting my teaching obligation he loudly said that my exam questions were are wrong and they don't reflect examination expectations of USMLE exam standards.

**DK**: Steve what we want to do first address the concern that you have, um, whatever that is.  And ah, and then when we're finished with that is to go on with, yea thanks, go on with the professors complaint about your behavior in the class. OK

**SW**: Right,

**DK**: so the first thing we're going to deal with separately is the concern that you wanted to bring up.

**MP**: Still on that one?

2

**SW**: Yea I am,

**DK**: Yea

**SW**: If you want me to turn it off, please let me know and I'll turn it off.

**MP**: While you are speaking you can put it on

**DK**: Just for your opening statement, so go ahead and make an opening statement

And we'll get through the recording stuff

**SW**: This is what I feel should happen um, instructors do not or should not in my opinion address the class attacking the class at the beginning, accusing the class of 90% of the class playing around and talking, datada, and this is how she started the day two days in a row, OK, if you have, if an instructor has a problem with a student then they should probably talk to a student or they should talk to a group of students.  Uh, if either of you feel that is not the case, then um then I would expect you to say well I think your wrong we should be able to talk to a class as a whole um, personally I don't feel that's right, you start, especially a session where you're reviewing your grades in a class where three students have failed the class by a point, point and a half, OK.  Everything in this class you do by a point, um its its that just how it is I mean and she'll come out and she'll say Hey, this is this is where you argue, argue a point, this is where you argue your question, I'm going to argue a question, OK, that's what I'm going to do, am I loud, I am loud, OK, I admit it, I am loud, when, when, I'm, I feel I'm being attacked then I do take it a defense against that, that I'm sorry I'm working on problems with that but that's, that's what I do.  When an instructor is proven is wrong, I think they should come to the class and say hey look these two questions on the test were wrong and this answer and this answer were right and this is why they were right to the class.

The last block one test we had two questions kicked back which is four points right so that's, that'll, take you from a sixty to a sixty-four Ok that's, there's a lot of points to be made with two questions alright, and we don't know why we got two extra points, four extra points actually, we don't know why OK.

Um, I believe that it's, that it's not fair that the exams are not given out to the students so we can use them for review and we can use them for cases like this and we can use them for relevancy against the USMLE, OK.  Everything I have to say, and you can see it on my emails everything I sent out is I had to try and remember what was the question on Tuesday, you know, what did she say on Tuesday, I contend, that she was very argumentative starting the class off on a class that's going to be an argumentative class to begin with.  She did it again on Wednesday on Thursday I sent an email to to Dr Bell about that.

**MP**: Yea, I have it

**SW**: It's like two days in a row.  On Wednesday I, students were saying if she does it again I'm going to go off.

This is not me this is other students, OK, alright

Other, other

**WC**: Name one,

**SW**: Jake

**WC**: Name another one

**SW**: Angela said I didn't pay for this

**WC**: How many

4

**SW**: What

**WC**: How many students

**SW**: There's, there's, there's two right there I walk in in the morning and see that, I hear that. OK

**CW**: OK, I'm sorry I interrupted your statement, go ahead

**SW**: anyway, ah, an example of two points that we were given of which I went ahead and argued another point with Dr. Lueck who I'm going to argue it just like I did with Dr Somaraju, OK, was the point of ah myoglobin and cytoplasm, and um and what it was this cytoglobin was not used in the respiratory system at all.  Cytoglobin is used for ah according to this research, in connective tissue, OK, so that question, that question, I'm assuming we got two questions right, of course there was only, there was only a couple questions that were that were given that people questioned one was on Marfan syndrome which was MI, and another was on, on um, on cytoglobin. OK

**DK**: Steve I can see you're trying hard here to give us information but we just need to know specifically on

**SW**: I'm building my case Dr Kastuck, please,

**DK**: Yea

**SW**: I, I, OK, I'm building my case, we have to argue these.

**DK**: What's your complaint

**DK**: What's your complaint

**SW**: I'm getting to that, that'll be, that'll be my next statement, OK

**SW**: Um, the question that really started problems in the class was a question on, it

**DK**: We don't need to go into the questions, you can just tell us

**SW**: Well we do because it is a question that is, that is, that is, right there could be two answers to this question

**DK**: that is all you have to tell us, that the question had possible two answers, and that you thought there was some issue with that, we don't have to go into the details of the questions

**SW**: But, but, but I do, because, it's, it's, I need, I need this on the record that this is right, OK this, this, this, point was right.

**DK**: We're, we're, you just have to say that, we don't have to go into the details of the questions, We're not here to discuss Biochemistry.  You can just tell us that you thought there was a point that you thought you were right about on the question and just move on. You don't have to go into the questions.

**SW**: OK, well, well, if that's the case, then again, the question, this question is what started the whole problem of what she's accusing me of.  OK, was this question

**DK**: Um OK, yep, yep, we don't have to go into the question just gotta tell us that

**SW**: OK, this this quest, and when I went back to refute the question it, I had another professor tell me that I'm right also, an MD. OK,

**DK**: OK

**SW**: I, I'm I mean, we're right, OK, I also went in and told, I told Dr Somaraju, the question about aldilose B I was wrong, one word in the symptoms of fructose metabolism

6

was cateracs. OK, I missed that in the symptoms, or I forgot that caterects was not part of the symptoms of aldolose B deficiency, an or cat, I picked aldolose B, and caterects is not one of the symptoms, OK, so I admitted that, OK, I also went to see Dr Somaraju and I said ah you know clearly on my exam if you have my exam you can see on the on the very back page that I clearly nothing else marked on the very back page of this exam is four correct answers that's eight points OK that's ten percent of my grade and I find out that other students missed the exam, now that's pretty harsh if you miss exam twenty percent of your grade your going to lose, your not going to pass Biochemistry if you lose twenty percent of your grade. Is not, you, OK

Is she gona to let those people retake that test, OK, if she if she, you know

This is ten percent of my grade, right here, right, that's twenty percent of their overall grade.

**DK**: so for instance on this one I just want to clearify, this one your saying that your point is that ah some of the answers that were not transferred onto you scantron you think should have counted that's your actual issue here

**SW**: Well its just out of, I mean out its out of common courtesy I mean the USMLE is computer based your not gona miss something like that.

**DK**: Is that, is that the issue

**SW**: No, that's not the issue, its, that's part of the issue.  The issue is, I mean, I understand she can give it to me or not, she can not give it to me, but if she gives something to somebody else shouldn't she be fair with all students?

I'm a good standing student I have a seventy on my first exam that puts my in the top ten people in the class.

DK: OK, so are you then saying, are you saying the issue is other people whose answers were not copied onto the scantron those answers were counted and yours weren't. is that the issue

SW: I'm, I'm arguing for ever point I can argue out of the class and one of the points is is this this  test question of which if you'd let me tell you about it then it would be obvious that I was right, and she wouldn't she wouldn't budge on it in class. If you wanta read in my email to Dr Ganguly or Dr Bell she's uncompromising.   We can't

MP: We don't have the email from Dr Ganguly.

SW: OK

DK: That's OK, that's OK, I think I think We're OK with that, we understand your saying that there's a questions where you felt that information that you've gathered shows that you were correct and and there's a problem with the question. So that's one ,that's one issue.  OK, ah, so what else do you have, that's one thing, we got that

SW: I feel that she's uncompromising, I feel that she's, she's not um, I mean, if you're right or wrong it doesn't matter.  I mean she wont help you out. I can't ask her a question, another time I tried to ask her a question in class I walked up to her quietly asked her a question she she like almost blew me off so Dr Leuck was with another, was with a an one of his new professors he's interviewing I she was going over the same material I asked her again in class to please repeat that because maybe I would get the correct

answer for that, so for twice two days in a row, or not two days in a row, not two days in a row, but twice in the same day I had to ask her the same question because she wouldn't answer me the first time.

**DK**: OK, so you said that there has been some discrepancies about certain questions and secondly that your saying that you found certain situations she's wasn't as helpful as you thought she should have been and then the third thing ah at least myself I wasn't clear about the scantron issue that is is it the case that you're saying that you felt that some of these answers that were not transferred onto the scantron that your saying you thought it would have been fair to count them was that the idea

**SW**: yea

**DK**: OK, so are those, are those your three things

**SW**: That and I don't feel like I said at the beginning of this I don't feel she should yell at the class, I don't feel she should raise her voice in the class, I don't feel that she should lump the class in as a whole, if she want to argue with the class I feel that if I come to school every day I don't I didn't come to start my day by a professor yelling at me two days in a row.  I mean I have this on video, or audio I have it on audio her what her conversation was to start the class. But of course you don't want to hear that, so, yea know, that, yea know, if you don't want to hear my my first question your obviously not gonna want hear her yelling at the class as a whole. OK
I have a masters degree in computer science, I have a bachelors degree in engineering, I have an associates degree in robotics, I've worked for the biggest manufacturing companies in the world and I've never had anybody professionally talk like she does.

9

And it, and it, does it get you in a defensive mood, yes it does. I mean, It is, It is totally unprofessional.

**WC**: Why does that get under your skin so bad?

**SW**: Why?

**WC**: Yea

**SW**: Because it, your starting, your starting in a position that this is unrealistic that somebody is even going to start with something like this.  I get like this with you guys coming in here like this, you start talking to me putting me on the defensive yes, I'm going to be on the defensive, it's not, that's the way it is. I mean I'm sorry but that's that's the way it is.

**WC**: That's your perception of the way it is.

**SW**: Well

**WC**: It doesn't get under a lot of peoples skin

**SW**: You know what other people it does.  Other people it does, obviously other people it does. Yea know.

**WC**: That's, that's your perception

**SW**: OK, OK, OK, that's my perception, my perception it is, now if you feel that's professional and that's professional attitude out of an instructor, then then obviously then you, your perc, your perception is that's OK that a professor comes in and yells their, at their students like that.

**DK**: Your missing, your missing an entire other way of of looking at it with Dr Cain is implying that for example, yea know, we have several witnesses who don't seem to have that interpretation at all.

**SW**: Well that's fine

**DK**: So, Now let me just finish, so it has nothing, he's not, yea know, to say well, if you feel it's OK for her to act like that, as though we're implying we think it's OK for the professors here to act badly that's not the case at all, right.  That's just more illustration of part of the problem that, what he's actually implying is to say other people are not seeing it that way. yea know and that's that's what he asking you to see.

Yea know but let me say to you though that um, so that was your forth thing about how she was addressing the class, um have got other, were those the four points.

**SW**: Well seeing that you wont let me build my case I guess I don't I guess that's what I have I mean obviously I'm right on some points but you wont let me prove it, and so, and so I can't I can't prove it.

**MP**: Steve Steve let me tell you, will you switch off that phone

**Hluchaniuk**

**December 22nd Hearing**

| | |
|---|---|
| Court: | Could I have the appearance of the parties please? |
| Buikema: | Good morning Your Honor, Erick Buikema, Cardelli Lanfear and Buikema on behalf of Plaintiff American University of Antigua. |
| Court: | Good morning Mr. Buikema. |
| Woodward: | Steven Woodward sir. |
| Court: | Good morning Mr. Woodward. |
| Woodward: | Good morning sir. |
| Court: | Gentlemen we have three motions that are scheduled for hearing this morning. Those are the plaintiff's motion to compel the deposition of the defendant, docket number 47, the defendant's motion for protective order, docket number 56 and the plaintiff's motion to adjourn the scheduling order dates, docket number 59. Mr. Buikema is that consistent with your understanding of what we will be addressing this morning? |
| Buikema: | It is Your Honor. |
| Court: | Mr. Woodward is that consistent with your understanding as well? |
| Woodward: | Sure Your Honor. I'm not aware of these types of proceedings. Am I able to, am I focused just totally on this or? I'm without counsel and I've asked for, even a student attorney to help me out. And I, I don't have that. I don't have that privilege. And I |

1

would actually request, at least have a student attorney help me

prepare such documentation by the Court.

Court:      Well Mr. Woodward we don't have student attorneys that are

readily available to assist parties in litigation.

Woodward:   Well as I mean as, as even an aide sir.

Court:      Again if you can recruit someone to assist you in some fashion.

That person could not necessarily speak for you that wasn't a

licensed lawyer. But if you can recruit somebody on your own to

assist you in this litigation, I have certainly no objection to that.

But we don't have people that we can call up and come in and

assist individuals, law students or lawyers or otherwise. Very, very

occasionally counsel, pro bono counsel can be obtained for

individuals who lack the means to hire a lawyer in a civil case. Of

course a criminal case is another matter. But in civil cases, with

some, with some regularity we're able to find lawyers for people

who simply can't afford lawyers. I'm not sure those circumstances

apply to you. You haven't petitioned the court. I saw in the

pleadings previously that you had indicated to Judge Duggan that

you anticipated having counsel represent you. I guess that's a

long answer to the general proposition that lawyers are not

typically available through the Court for *pro se* litigants.

Woodward:    I did contact a student attorney to try to help me out and he was

under the impression that he couldn't, that he couldn't help me out

because of problems with licensure or etc.

Court:       It's true that, that law students can't appear and argue the case

on your behalf, which isn't to say that they can't assist you in

some other fashion.

Woodward:    Okay, great. That's, that's, Your Honor that's what I - -

Court:       As long as the - -

Woodward:    - - wanted to know.

Court:       As long as they're willing to do it and assist you in some fashion

without appearing in Court on your behalf, that's, I don't see any

reason to be concerned about that. But that's really up to that

person. He or she may be willing to help you under those

circumstances. But getting back to your original question about

whether you're limited to these matters, the answer to that is yes.

These are the only matters scheduled for the Court. If there are

other matters that we can address sort of incidentally, but it's

certainly not my intention to go off on other matters that aren't

germane to the merits of these three motions.

Woodward:    Okay.

Court:       And the way this is gonna proceed is I'm gonna invite Mr.

Buikema to argue, and I think address all three at the same time,

to avoid the people having to get up and down with some

3

|            |                                                                                     |
|------------|-------------------------------------------------------------------------------------|
|            | regularity. So I'm gonna ask him to address all three of these                     |
|            | motions at the same time, even though one of those is yours.                       |
| Buikema:   | I think that's appropriate Your Honor given that they're all                        |
|            | relatively related to one another.                                                  |
| Court:     | Well that was my observation as well. And then I will invite you                    |
|            | Mr. Woodward to give your response to his comments. And then                        |
|            | at least with respect to his motions, still have the opportunity to                 |
|            | reply to yours, so that - the moving party typically has the first                  |
|            | word and the last word at a hearing such as this. So he will have                   |
|            | the first word on his motions and the last word on his motions,                     |
|            | and he will address your motion. And then you will have the                         |
|            | opportunity to respond to his comments. So that's the procedure                     |
|            | that we're follow.                                                                  |
| Woodward:  | Okay.                                                                                |
| Court:     | And I, I wish you did have a lawyer. But you don't. And people                      |
|            | who represent themselves certainly have some leeway by the                          |
|            | Court, not being familiar perhaps as they should be, with court                     |
|            | rules and common practices and things of that nature. But the                       |
|            | rules still have to be complied with in a general sense, even                        |
|            | though some flexibility is given to *pro se* litigants on certain                   |
|            | aspects of the application of those rules. But nonetheless even                      |
|            | *pro se* litigants are expected to comply with the rules. And if it's               |
|            | your point to litigate by yourself without counsel, you're obligated                |

|            |                                                                              |
|------------|------------------------------------------------------------------------------|
|            | to familiarize yourself with those rules and generally be in compliance with those rules. Alright? |
| Woodward:  | Right sir. I did, I don't know the procedure for, excuse me Your Honor, the procedure for petitioning the Court for an attorney because I, I am not able to afford an attorney. And I have asked the Court for an attorney. And I have tried to contact the Genesee County Bar Association, and my name is on some list. But what, what is the, how do, do I just send an email to Ms. Oram at - - |
| Court:     | Actually what *pro se* litigants typically do is file a motion seeking, seeking a pro bono attorney to be – I think the terminology is typically appointed by the Court. Then there is a procedure through which a list of lawyers who have expressed a general willingness to participate on a pro bono basis in litigation is consulted. And those lawyers can express an interest or decline depending on how they view the merits of the case. And so sometimes that happens. Again I think that the number of lawyers willing to do that is fairly small. And the occasions on which they are willing to do that is somewhat rare. So it would be, chances are it's not gonna happen. But that would be the procedure to initiate the request for the Court to try to find someone to represent you in this matter. |
| Woodward:  | Thank you sir. |
| Court:     | Alright, Mr. Buikema, proceed with your argument. |

5

Buikema:       Thank you. And Judge I can tell you as much or as little about this

case as you care to hear. But let me just begin by saying that I

think the issues before you today are relatively straightforward

and clear from the written pleadings that we filed. Mr. Woodward's

responses and own motion, without offense to him, are obtuse

when viewed in the framework of the rules we're dealing with. But

I think the preliminary discussion identified part of the issue that

we're having here, is that Mr. Woodward is representing himself.

He is of course entitled to do so. And if it's necessary for him to

do so, so be it. But while the Court identified leeway and I'm

certainly willing to give him leeway in certain respects, such as

you know margin requirements under the local rules are what I

consider to be formalistic requirements, he's still obligated to fulfill

the obligations both as his own counsel and as, more importantly

for my primary motion, as a party. And one of those basic

requirements of course is to participate meaningfully in discovery.

I sent as you know, a motion, not a motion, but a notice to take

Mr. Woodward's deposition as I'm entitled to do without leave of

the Court or subpoena. And it was ignored. And then a protective

order was, a motion for protective order, purported motion for

protection order was filed by Mr. Woodward, which was denied by

Judge Duggan as moot. So that issue has already been resolved.

Yet here I am trying to secure that same deposition, and facing

6

yet another purported motion for protective order that cites neither
the rule, good cause, or any basis from which the extraordinary
measure of excusing Mr. Woodward as a party defendant from
participating in discovery should be granted. It's equally appalling
to me and wasteful of both my time and my client's money, to
have to appear here today under the circumstances where at first
the communication to me was that Mr. Woodward would be
unable to attend a deposition as scheduled. That's scheduled for
November 4. He said specifically - we've attached the emails -
that next week would be better for me. So we give Mr. Woodward
a date the following week. And he says no, I can't appear on that
date. I'm unavailable all that week, which was the week he
originally suggested as the alternative. After having filed this
motion, I then, pursuant to the requirements of the Court to
confer, asked Mr. Woodward if he would appear in lieu of today's
hearing, and sometime before today's hearing, and he just simply
said no we'll see you at the hearing. So here we are. And I am
attempting to get what is clearly legitimate discovery. It's certainly
not necessary to the proofs of my case. As Mr. Woodward points
out I should have everything I need if I was gonna file this case.
That's true. But it's certainly necessary for the appropriate
presentation and preparation of the case. And the standard as
you know Your Honor, is simply reasonably calculated to lead to

7

discovery of admissible evidence. And that standard is met.
There's, there's no basis to excuse Mr. Woodward. And the bases
cited in his response and then joint statement of unresolved
issues, which is joint at all Judge, is, are frankly conspiracy
theories and ravings, that have no bearing on the issue at bar.
The, I will point out Judge that not one of Mr. Woodward's
motions, pleadings, responses or purported joint statements has
complied with either the local rules or the federal rules. The, my
office did prepare joint statements for each of the issues today
and forwarded those to Mr. Woodward some time ago asking for
his contribution and we were ignored. He has separately filed
what he calls joint statements. But again I view this as a
tremendous waste of my time, a tremendous waste of my client's
resources. Valid notice was sent. Valid discovery has been sent,
which we'll address in the future I'm sure cause he's not
responded to those and he's overdue. And we've been ignored or
games have been played. The protective order motion is simply a
rehash of a motion already denied. And here I am asking that you
simply compel him to appear, and of course asking under these
circumstances for costs to be awarded.

| | |
|---|---|
| Court: | Did you care to say any more about motion for - - |
| Buikema: | I don't Your Honor. |
| Court: | - - a protective order? |

8

Buikema:        I don't Your Honor.

Court:          With respect to the request in docket number 59 to reschedule the

                general scheduling order of the court, with respect to the pretrial

                matters, I saw at one point you requested 90 days?

Buikema:        I did Your Honor. I think, you know, again if there is compliance I

                think it could be done quicker than that. I don't anticipate

                compliance and history has proven that. That's the reason for the

                90 day request. The, the only reason there's any request at all is

                because the discovery efforts have been frustrating. And here we

                are and we have now under the extended deadline given by

                Judge Duggan, we have discovery expiring on December 31st and

                I don't have responses to interrogatories. I don't have responses

                to requests for production. I don't have responses to requests for

                admissions, but that's fine. The rule deals with that. And I don't

                have a deposition of Mr. Woodward. And of course, consequently,

                don't have any follow up information or follow up investigative

                materials from any of those processes. And I think 90 days is

                appropriate under those circumstances.

Court:          It's my practice generally if I'm going to extend discovery dates, to

                extend them with narrower limits to them. Typically if some

                discovery has not been produced and an extension of dates is

                sought as a result of that, then rather than generally extending the

                dates for some period of time, it's my practice generally to extend

                                        9

the dates for the specific purposes that would seem to warrant an extension, rather than a more broad based simply rescheduling of the dates.

Buikema:      I think that's perfectly understandable and entirely appropriate in most cases. In this case Judge I would, I would urge you to do otherwise. And the reason is because despite the length of the existence of this case, it's, there's really been no open period of meaningful discovery. We began by filing the case. We had a response. We had an initial conference with the Court at which time Mr. Woodward appeared before he had even answered the complaint, and asked hey Judge I'm leaving for this, I think it was a 90 day period of time to go work on a yacht in the Caribbean and I really can't address this issue. And I said that's fine, but you know, I want this offending website down in the interim, and then we'll address the merits when you get back, and he'll get an attorney as he promised to do. He came back. He didn't get an attorney. He republished his website. So then a whole bunch of motions followed associated with all that, including my request for entry of default. And once the default was entered by the clerk, there was no, no availability of conducting additional, at least, although I was conducting, there was no availability of conducting additional activity on the file until that issue was resolved, which was resolved more recently. Then of course what followed were

10

the initial discovery requests, which have been ignored, and are the subject of today's motion. This is the first discovery motion in the case. And really the first open discovery period we've had. But because of, and certainly not faulting the Court, but because of the delay in addressing these matters up to December 22nd, today, which is eight days prior to the close of even the extended discovery, we've really had no reasonable opportunity in this case.

Court:          Okay. I understand your argument.

Buikema:        Thank you.

Court:          Mr. Woodward.

Woodward:       Um - -

Court:          I would ask you to make your argument from the lectern sir.

Woodward:       Okay, sir. Mr. Buikema has claimed in his preliminary injunctions that he has success on every one of his claims, etc. But the Honorable Patrick J. Duggan even states in his, in his testimony here in the transcripts from April 19th of what, what Mr. Buikema is talking about. I'd like to quote the Court – it says "It's just ridiculous. I don't know why you're arguing that. His conduct can't be considered a policy of practice of the University. You said that from the very beginning it's not. I don't know why you're arguing these claims that have very little, if any merit. And the problem is you can, obviously, an attorney can argue alternate theories. But

11

you've got to have some basis for the alternate theories. Or what

it is, what happens is the Court says well he is destroying

everything in there, so they're weak. All of his claims must be

equally weak. And it's just bad practice in my judgment to assert

any claim unless you have solid evidence that there are at least

some good merits to it. And I don't think that there's any merit to

this claim at all."

Court:          Mr. Woodward I, I think that by and large the merits of the

plaintiff's case are really not relevant to the arguments that relate

to these motions. And I say that because the case is still there.

The case has not been dismissed.

Woodward:       Sure.

Court:          So, so that case is out there. And we are dealing with a fairly

narrow procedural issue associated with that.

Woodward:       Sure.

Court:          This is not the trial of the case.

Woodward:       Sure.

Court:          This is not even a dispositive motion. This is the question of

whether discovery should be compelled, discovery that you have

resisted.

Woodward:       Sure.

Court:          At least that's the subject of one of those motions.

Woodward:       Sure.

12

Court:      So - -

Woodward:   Right.

Court:      It's fine that Judge Duggan said those things. And I have reviewed actually the transcript that was filed in this matter that was part of that hearing on the preliminary injunctions. So I'm aware of those circumstances. But for the most part, the merits of the, of the complaint are really not before me.

Woodward:   Okay.

Court:      It's just the way litigation proceeds. There are certain compartmentalized sections of the case that have to be litigated. You don't litigate the whole thing every time you're in court.

Woodward:   Are preliminary injunctions, they're supposed to be filed separately, correct, as a separate motion? Per local rule, I think it's 85.1, 86.1, I believe.

Court:      What does that have to do with these issues?

Woodward:   Well he's telling that he's filed all these motions. He's, I've not, I'm not acting right before the Court by filing motions that are incorrect, etc.

Court:      What's important here today is whether or not a deposition should be scheduled for you, whether a protective order should be entered and whether or not the dates that have been established for pretrial matters should be maintained as they are presently or extended.

13

Woodward:    Okay.

Court:       Those are the issues that are before the Court. As I indicated at

             the outset, we're focusing on these motions. And for the most part

             we are not verging off into some other areas that, that don't really

             apply to the merits of those motions.

Woodward:    I'm, I'm just supporting what he's talking about at the beginning

             for defaults that were obviously wrong because I'd be here if it

             was a default case. He filed a default of which I obviously

             answered all of his claims.

Court:       I think that his, his mention of that in the context of this motion,

             was simply to point out that there has been other issues that have

             been addressed that have prevented the parties from engaging in

             meaningful discovery up to this point in time. And that was, that

             was at least my perception of the basis of his comments in that

             regard. He wasn't saying a default should have been entered or

             shouldn't have been entered or anything of that nature. It was just

             an explanation for why that much discovery has been undertaken

             so far.

Woodward:    Well that's because he entered a motion of default and threw us

             all, I tried to do discovery during the time in default. And he filed

             motion saying he was gonna quash and and, and get rid of

             information that I tried to discover back when, when I was in

             default, of which he threw me into, wrongfully. As far as his, his

14

claims of not fulfilling obligations, I submitted interrogatories. I

submitted requests for admissions. I requested documentation

from him. Here's all my documentation Your Honor. There it is.

That's my entire case. I've requested the same information from

him.

Court:      Well if, if the Plaintiff has failed to comply with the rules with

respect to discovery requests that you have made of them, you

could have filed a motion to compel them to answer discovery that

you have properly made for them.

Woodward:      Is that not bad faith? Is that not bad faith on their part not to

reciprocate? Fact of the emails that he says - -

Court:      Again, Mr. Woodward we can't litigate the whole case in the

context of these three motions. If you had, if you had an argument

that they had not complied with discovery requests that you have

made with them, the obligation would have been for you to file a

motion asking the Court to compel that they respond to them. You

haven't done that. There is an order to all of this. Litigation has

certain rules and practices that apply to them. And we're not here

to litigate the entire case. And the question of bad faith, I'm just

not sure how it effects these particular motions.

Woodward:      So now I need to burden the Court more because he's not

provided me with the documentation of which he's requesting

from me. I mean is that, I'm just trying to say is that what I have to do?

Court:        If you have made an appropriate request consistent with the rules asking for some form of discovery that's allowed by the rules, and the Plaintiff has failed to comply with the rules in responding to that request, you have the obligation to bring a motion in court and ask for the Court to order the plaintiff to comply with that.

Woodward:     What, what is my obligation at this point and time since we're in adjournment and since the court's been rescheduled? Do I have to comply with Rule 26? Do I have the right for work product? Do I have the right to withhold evidence that I feel is work product? I don't know Your Honor.

Court:        Well I can't teach you the law Mr. Woodward. And that's where we, that's where people who come to court without counsel get in trouble. Because this is, I'm not your lawyer. I can't give you legal advice.

Woodward:     Right. But I'm just saying is this bad faith on his part? Am I, am I demonstrating bad faith on his part by not providing -- let me quote his email to me. "The Court has issued a new scheduling order and denied your motion of protective order is moot. This means that the obligation of the parties for preparation of the final pretrial order including an exchange of exhibits has been put off for a future date. We are under no obligation to exchange now."

16

|  |  |
|---|---|
|  | But yet he, now he comes up and he says oh but I want everything you have. |
| Court: | You, you're raising an issue that I don't think is relevant to the motions that are pending before me. So - - |
| Woodward: | He said, okay. |
| Court: | It, that, as far as I'm concerned you haven't properly raised the plaintiff's failure to respond to discovery requests. There is a procedure for that. And your request may be entirely meritorious. But that matter is not before me today. I only, I only address the motions that the District Judge has referred to me. I don't have the entire case to solve. I only deal with the motions that are before me. |
| Woodward: | Is this not frivolous with him just saying right from the beginning that we don't need an adjournment but yet we filed an adjournment for an extra 90 days? |
| Court: | I, I'm confused - - |
| Woodward: | We have evidence - - |
| Court: | - - by your comment. |
| Woodward: | We have the evidence to support our claims and hearing but yet we don't have the evidence. That's what he's saying. |
| Court: | Well, I didn't interpret - - |
| Woodward: | And now he burdens the Court with - - |

17

Court:        I didn't interpret his comments quite like you do. He said that he

              had evidence but that he wanted to pursue discovery, which

              plaintiffs in cases are expected to have some evidence. But they

              are also entitled to conduct discovery to determine during the

              course of the litigation other information that may be relevant to a

              claim that they're making or a defense that the defendant is

              making.

Woodward:     Which he wasted by filing the default, request by default.

Court:        You know I, I'm not going there Mr. Woodward because that is not

              something that's before me.

Woodward:     I don't want to upset you Your Honor.

Court:        I'm not getting upset. I'm just trying to inform you of the fairly

              narrow scope of what we're trying to do today. I can't re-litigate

              whether that default was appropriate or not.

Woodward:     That, that's my, that's my motion for protective order. Cause he

              even filed a Rule 7.1 telling me who I'm even being sued by.

              Who's the owner of this company?

Court:        Well I'm, that perhaps is a failure that could be addressed

              independent of these motions. I'm not sure that failure is a

              defense to - -

Woodward:     That's part of my motion Your Honor. That's part of my motions

              that I've, that I've filed for this, for this proceeding.

18

Court:          So, so you're, when you say the motions you're talking about your

                motion for a protective order?

Woodward:       Right. He's, I mean, they go back to their, they're stripping their

                website. They're stripping public blog systems of evidence, of

                discoverable information prior to a trial. And I'm not gonna file a, a

                motion for protective order when they're, they're deleting things

                off of their website and deleting things off of a public blog, by their

                administration, that are, that are exhibits of mine. And now I have

                to go hire a notary republic to sit down and – I'm not gonna –

                three sets, try to pack up three sets of my exhibits because

                they're deleting things. That they, on November 4th, which he

                claims I couldn't be. Here it is sir. This is what I did all day. I went

                through all of my exhibits and tried to find everything single thing

                that he could potentially delete off of his website and had a notary

                sit down and document. Is that adequate notice November 3rd

                telling me that I have to be there November 4th? Is that adequate

                notice for a subpoena? Was it adequate notice demanding that I

                be there?

Court:          Are you saying the first you knew about a November 4th date was

                the 3rd of November? You had not been informed that that - -

Woodward:       There was no stipulated schedule Your Honor. There was no

                stipulated schedule of when these depositions were to be put on.

19

Court:      And there isn't in court. The court doesn't order the scheduling of depositions. It provides the parties with a range of time within which discovery should be conducted.

Woodward:   No, I'm saying him sir. He told me on November 3rd you be here tomorrow, November 4th. He told me on November 2nd to be here on November 4th. Is that adequate notice for me to show up for a deposition?

Court:      The Plaintiff alleges that you were served a notice of that prior to those dates.

Woodward:   And prior to those days I filed a motion for protective order, correct? That protective order was done, denied. I have the entire, the entire log here. And what he'd saying is not accurate.

Court:      Alright, tell me what he said that's not accurate.

Woodward:   Okay. I'm not familiar with the joint pretrial order. This is starting on October 23rd. So right here it says you'll receive copies of my exhibits when I come down for the deposition. I'll bring the fiber optic training device, sitting right there. Please provide the required exhibits of my information as required by a joint pretrial order. So I'm asking him for information there. And I'm telling him I'm gonna bring that information, okay. I file a motion of protective order.

Court:      Are you talking about the current motion that's pending?

20

Woodward:   No, the one, the other one. I will not attend the deposition. I'm

filing a motion for protective order. I will mail you a copy to your

office later today and I'll have a stamped copy at the court. I will

mail you exhibits, files and documentations you required. If you

still required to see the fiber optic training device and the books I

plan to bring to court, please let me know and I'll meet you

halfway between Flint and your office. That's on, that's on

October 27th, to Mr. Buikema this is October 27th, later on that

day. Attached is my motion for protective order I filed today.

November 1st, Plaintiff's motion for preliminary injunction. That's

him filing a preliminary injunction against me on November 1st.

November 2nd, I have not received a reply from the Plaintiff

regarding a meeting - this is me telling him - hey I got a, I haven't

heard a reply from you to meet me to see my exhibits. I'm telling

him. He doesn't reply to me. He filed a protective, a motion of

preliminary injunction, which was considered a violation of my

First Amendment rights. And he, he then, then I say even after he

filed this preliminary injunction, I go back and I say I have not

received a reply from you sir regarding a meeting to see my

exhibits, okay. Please let me know when you would like to meet

so you can view the exhibits. I would prefer a public place halfway

between Flint and your office. I'm just reiterating what I said

before. Instead of mailing you a paper copy of the exhibits, I'll

21

bring them with me to the mutually agreed upon public location so

you can witness and sign that you have received the exhibits.

Please contact me with a date and time you would like to meet so

I can determine if I am available to meet you. At the same time

please bring copies of all your exhibits so that I can sign and

receive them. November 2nd I have not received, okay, that's the

same thing. November 2nd, later on, please do not include the

court in routine correspondence with me and the parties. It's busy

enough. I cannot tell you or advise you what to do. But if you wish

to address the Court or invoke the system it's my suggestion that

you do so by proper motion. I was told by Judge Duggan that any

correspondence we have to courtesy copy Ms. Long. The, the

Court has issued a new scheduling order and denied your motion

for protective order as moot. This means that the obligations of

the parties for preparation of (**inaudible**) protective order,

including exchange of exhibits has been put off for future date.

We are under no obligation to do an exchange now. Having said

that your deposition notice - I don't know what this, I'm sorry I

don't that - and requires you to produce documents listed in a

notice at the time of your deposition on November 4th. Please

review carefully and comply with your personal attendance and

production of all materials. So basically he's telling me oh we

don't have to provide any information but now we want you to

provide all the information, okay.

Court:        The obligation to produce information is dependent on the

appropriate requests. You can ask the other side informally to

produce certain documents. If they decline to do that, it's really

not enforceable. An informal request is not enforceable.

Woodward:     These are informal requests that we are making that is, that is

here today.

Court:        Well actually these are formal requests. He serves you with a

notice of a deposition, that's a formal request. That's not an

informal request.

Woodward:     Did he, a subpoena, did he subpoena me?

Court:        He doesn't have to subpoena you.

Woodward:     Oh, okay. I'm not aware of that. I'm sorry.

Court:        Well you are now.

Woodward:     I'm now. Thank you sir. I appreciate that. Let me continue.

November 2nd, I will not be available to attend your November 4th

deposition. The following week would be better for me. So I can

get - okay. Here I send to the Court please reply, cause we're

preparing for a trial now, right. Please reply with the contact

information of the Court reporter so I can get instructions for

recording my trial exhibits. This is to the Court. I'm asking her how

23

do I, how do I do this. How do I record my exhibits. I have them, here they are, how do I do this.

Court:       Well again, Mr. Woodward you're asking for legal advice which the courts are really not permitted to do. They can't give advice to the parties that are before them.

Woodward:    Oh, okay. And that's, I'm just saying this is supporting that I have the exhibits. I'm willing to, I'm gonna turn them in. He's gonna have access to them. November 2nd to his, to his counterpart, Katherine. Mr. Buikema is available on Monday, November 8th, 10:00 for deposition. Please advise as soon as possible, okay. So now it's 4th, now she changes the schedule to the 8th.

Court:       Because you said the 4th was not convenient for you.

Woodward:    4th was not convenient for me. I will not be available all next week. I'm filing motions for this preliminary injunction. I'm filing motions because he's, he's deleting things off of his website and public blogs. I'm trying to get all my stuff together for, for a trial that's not happening now because he's filed for an adjournment.

Court:       Well the obligation to participate in discovery is not one that says whenever it's convenient, when you have nothing else to do. It's an obligation - -

Woodward:    Did he give me a proper, proper notice?

Court:       A notice? Did he send you a notice of a deposition? Document that's called notice of deposition? He says he did.

24

| | |
|---|---|
| Woodward: | Okay, then he probably did. But it was done on the 19th of October, before the motion for, motion for protective order. |
| Court: | Well we'll ask him to, to - - |
| Woodward: | I mean, I, I probably have a - - |
| Court: | A notice of a deposition that's sent to opposing party is a sufficient pleading to obligate you to appear at the deposition. Normally the parties to a litigation agree. They discuss a date that's mutually convenient and they agree to do that. But a party has an obligation to participate in that kind of a discussion. |
| Woodward: | But now he's, now he's changed that. He said okay well we'll meet on the 8th. |
| Court: | As I understand it he rescheduled for the 8th because you said the 4th was not convenient for you. |
| Woodward: | Right. |
| Court: | That you would be available the next week. |
| Woodward: | Right. |
| Court: | And the 8th was a day on the next week. |
| Woodward: | And I can't be available then cause I'm preparing for his preliminary injunction and these motions. |
| Court: | Did you respond to say I can't make it the 8th but I can be available the 9th or the 10th or some other date? |

25

Woodward:    I said I couldn't make it next week. And he replied and said okay

how about the following Monday. No, he gave me two days. And

he demanded - -

Court:    That is not - -

Woodward:    He even said he demanded that I show up. He didn't say I'd try to

accommodate. He says both actually. And one, one of, one of

these things he says oh I tried to accommodate him the best I

can. And then in the first one he says I demanded that you show

up. Is that respectful to another party that he, that he's

demanding? What do I have to do to get him to supply me Rule

7.1 information that he's supposed to supply me during the April

19th hearing? That's, I mean that's automatic. Automatically I, my

understanding of Rule 7.1 is that, that's an automatic discovery

and it should be, it should be given to me - -

Court:    It's not discovery. It's an obligation that the parties have in

litigation to file a certificate of corporate affiliations. I, my review of

the record suggests that he did not do that. He, the Plaintiff, did

not do that. And that, but that's a separate issue. I don't think that

that means that he's prevented from conducting discovery.

Woodward:    How, how is, how is - -

Court:    Alright, let's, let's cut to the chase here.

Woodward:    One, one, one more thing sir.

26

Court:          No, let's, let's cut to the chase here on the question of the

                deposition.

Woodward:       How is, how - -

Court:          Mr. Woodward I'm talking.

Woodward:       Sorry sir.

Court:          The deposition is something that you need to participate in. If I

                have to get you to agree with Mr. Buikema today on a mutually

                convenient date, I'm gonna do that.

Woodward:       Okay.

Court:          Cause I'm gonna grant the motion. You, you have to submit to a

                deposition and be deposed. It's an obligation that a party has in a

                case. So, so that, you are obligated to participate in discovery and

                to be deposed where a proper request has been made. It sounds

                like the two of you are not communicating on the scheduling. So if

                I have to tell you when to do it, I'm going to do that.

Woodward:       How does Mr. Kilpatrick not have to perform discovery on a

                deposition and Allan Stanford doesn't have and his grandfather

                doesn't have to perform depositions under the Fifth Amendment?

                What, what right do they have of not performing depositions,

                where I, I do?

Court:          What does that have to do with this case?

Woodward:       Is that not my civil right not to, not to, not to testify against myself?

Court:          In a criminal case you have a Fifth Amendment right to refuse to

                                    27

answer a question if the answer to the question would criminally incriminate you. You don't have that right in a civil case just because you have something that you would rather not say. This is apples and oranges. Those are criminal cases and that's a right a person has in a criminal case. It has no real application in a civil case.

Woodward:    And which I, I don't even an attorney to go with me to a, to a, to this deposition.

Court:    You have no right to an attorney in a civil case. There's no constitutional right to a lawyer in a civil case. That's the law. You're entitled to have a lawyer. But you have no right to a lawyer such that the court is obligated to pay for a lawyer to represent you if you can't afford to pay for a lawyer. That's the law. So you have to be deposed. If we, if we want to, to work out a schedule for that today.

Woodward:    Sure, yes Your Honor. Whenever is convenient for Mr. Buikema.

Court:    Alright. Mr. Buikema do you have some dates available that you can - -

Buikema:    Your Honor I do. Tomorrow, first of all, is available. And because of the holiday schedule only tomorrow until after the week preceding the New Year. And the week preceding, sorry, and the week following the New Year. And in that week any day except for the 7th is fine with my calendar.

28

| Court: | Alright. I think tomorrow is a little too soon under the circumstances. Mr. Woodward the suggestion has been made that the deposition be held on the week beginning January the 3rd. Can you speak to your schedule that week? |
|---|---|
| Woodward: | I can't, to your disposal Your Honor. |
| Court: | Not my disposal. We're trying to work out a date that's mutually convenient. |
| Woodward: | I can, I can, if you tell me to be here or wherever on the 3rd. I would be prefer to be up here versus being somewhere in Detroit. |
| Buikema: | I would like the 4th at my office. |
| Court: | Alright. The 4th is a Tuesday. The location is subject to, I suppose, some discretion. You reside in Flint or Genesee County? |
| Woodward: | Yes sir. I, I reside up here on Grand Blanc Road. |
| Court: | The, Mr. Buikema, at least traditionally as I understand it, depositions are typically held at the location of the opposing party's lawyer. In this case we don't have one. |
| Buikema: | That's true. That's not available. And so obviously we need a facility that's appropriate for the court reporter which is why I originally chose my office. That was noticed by the way for October 19th, proof of service filed with the Court. Was not objected to on that basis, ever, including today. |
| Court: | Alright. Well I think we're past that issue. |
| Buikema: | Fair enough. |

29

Court:        So it'll be the 4th. And we just now have to discuss the location of
              it. Again, following the traditional practice of deposing a party at
              their lawyer's office, at least as I'm familiar with it. Is there a
              location in Genesee County that you could schedule the
              deposition?

Buikema:      I don't have one in mind. But of course Your Honor we're
              resourceful enough to be able to find one. I'm not gonna object on
              that basis. If you want it done here, we'll do it here. We'll go
              wherever we need to. Let me just ask as follows. You haven't
              addressed the cost issue today. But my client has incurred
              significant burden and my time has been wasted. And really it's a
              function of his ignorance of the law. But he's not excused for that
              purpose. But my client has paid the price for that. And you know,
              asking me to come here is rather insulting from a time
              perspective.

Court:        Well I guess I respectfully disagree with the insult, injury aspect of
              it. I'm trying to be fair and I'm following what I believe to be the
              traditional normal pattern associated with depositions of parties.
              And it seems to me that something that could be scheduled in
              Genesee County.

Buikema:      We'll arrange for something on the 4th. And we will give Mr.
              Woodard notice of that no later than within the next few days.

Court:        Okay. Mr. Woodward is that clear?

30

Woodward:     Yes sir.

Court:        Alright. What, what you are gonna receive is a written notice telling you when and where to appear. And it'll be on the 4th. Is there an agreement as to the time of day that this will take place?

Buikema:      10:00 a.m. would be my preference.

Court:        Okay. So your expectation Mr. Woodward should be that you will receive a notice that you need to appear at a location in Genesee County for purposes of being deposed. Are you familiar at all with a deposition?

Woodward:     Yes sir, I mean, yes sir.

Court:        Okay. For purposes - -

Woodward:     I mean I'm not aware of like objections or any of, I mean I'm aware that you show up and you answer his questions. I'm not aware of information that's protective. Like can I, should I give somebody my social security number, my driver's license numbers, things that are, where somebody could access personal protected information, such as bank account information and, and hack in possibly to my website information, information of that sort. I don't know how I can be protected if he says what's your password to your website. I mean I don't know how to protect myself against those kind of questions.

Buikema:      My suggestion is that he obtain counsel. And if he fails to do so, he does so at his own peril. Cause he has a general obligation as

31

do I. There's a simple solution to this, which is not spread

malicious lies about my client.

Woodward:      Well they're not lies sir. Now you're just, now you're just - -

Court:         We're not gonna argue about this. We're gonna talk about it. But

we're not gonna argue about it. So - -

Buikema:       And - -

Court:         It's Mr. Buikema's opportunity to speak now. And when I want

some input from you I'll inform you of that.

Woodward:      Thank you sir.

Buikema:       If Mr. Woodward wishes to assert objections, he asserts, he

asserts objections. But he does so subject to the rules. And, and

I, you'll find me an impatient person in dealing with that issue. He

can certainly assert, I', I'm, I've been known to ask questions that

are objectionable, or legitimately so, rarely at deposition. But it

happens. But if he objects and it's appropriate, fine. But you will

find me a very impatient person if he starts asserting bases that

are not supported at law or by the rules. Then we'll be back here.

He raised the Fifth Amendment issue. He still retains the Fifth

Amendment issue to the extent it's applicable. But if he doesn't

understand and he asserts that as basis, he does so at his own

peril. I mean that's the, the unfortunate situation we're in. It's not

of my making. But he doesn't have counsel. We do what, do the

best we can in that circumstance.

Court:    The way this will work Mr. Woodward is I'm not prejudging

anything associated with the questions that can be asked and the

answers that should be given to those questions. I refer you to the

Federal Rules of Civil Procedure, which contain some information

about the circumstances under which objections can be made to

questions. And beyond that you should consult with a lawyer. Or if

you seek to discuss the matter with a law student or someone

else who's willing to assist you. You have to act based on your

judgment consistent with the rules. And what will happen is this, if,

if there are questions that are asked that you refuse to answer,

which the Plaintiff brings to my attention or Judge Duggan's

attention in some form, then, and it turns out that your refusal to

answer was not supported by law or some other appropriate

basis, you could be ordered to answer those questions and be

ordered to pay the costs associated with having to retake the

deposition or the cost of Plaintiff in bringing a motion to compel

answers to questions which should have been answered to begin

with. So the rule generally is, as Mr. Buikema suggests, and that

is that if you refuse to answer a question, you do it essentially at

your own peril. Because if you're wrong then you could be, there

could be monetary sanctions as a result of that. But I don't know

what the questions are gonna be. I'm not prejudging any of that.

He can ask the question he wants and you can elect to answer

33

|  |  |
|---|---|
|  | them or not answer them. But if you don't' answer them and it turns out that you were wrong, that you didn't have a valid basis for not answering a question, there could be consequences. |
| Woodward: | Is that the same with him if he asks questions that are obviously wrong and for bad practice, that if I answer them that he is liable for that information? |
| Court: | Liable for the information? |
| Woodward: | I mean, say I gave him access to my social security number, and he, what would be the grounds of that? What's the relevance of that? |
| Buikema: | My standard practice on that issue - I think I can diffuse that. My standard practice on that issue is to always ask for the social security number for purposes of follow up investigation. But to only have the court reporter transcribe the last four digits on the written record. |
| Court: | Well first of all without a doubt if somebody improperly uses your social security number that could very well be a crime, well beyond any particular sanction question. But certainly a party can be sanctioned for the inappropriate use of information that they obtain during the course of litigation. Absolutely. |
| Woodward: | And the Court, excuse me Your Honor. Could, can the Court limit the questions that Mr. Buikema, particular to the matter and which is the, based on his claims of the website? |

34

Court:          The limitations that exist for the scope of questioning is contained

                in the Court Rules. And the Court Rules say that discovery is

                permitted as to any matter that might lead to admissible evidence,

                or any claim of the plaintiff or defense of the defendant. So it's

                fairly broad. I'm sure Mr. Buikema is familiar with the scope of

                that. Beyond that I mean there are time limitations associated with

                the depositions. He's obligated to comply with those time

                limitations unless the Court gives him authority to do otherwise.

Woodward:       He's already said that he's very assertive. And the rules on

                harassing and bullying and etc., how does that apply? At what

                point in time after his assertion and his, and his inquisition, can I

                say hey you've been bullying me enough at this point and time?

Court:          I, I, again I can't give you advice Mr. Woodward. I can't tell you

                what, I can refer you to the rules, and you can look at the rules,

                and you can draw conclusions from those rules, and interpret as

                best you can. But I can't give you legal advice.

Woodward:       Thank you.

Buikema:        Judge, with your indulgence, could I just address perhaps three

                facts or misrepresentation of facts for fear that they're coming yet

                again before this Court? First is the Rule 7.1 issue. My client is

                not a publicly traded entity. Therefore is not obligated to disclose

                subsidiaries or affiliates for purposes of a judicial conflict check,

                which I think is the, the point of that rule. At least the rule Mr.

                                                35

Woodward intends to reference, if I'm interpreting it correctly. Second, the discovery requests, those formal discovery requests. He did issue interrogatories and requests for production to my client. It's my belief those are due today. So they're not yet overdue.

Court:          Your responses to his requests?

Buikema:        That's correct, that's correct. And last this confusion over the Rule 26 final pretrial issue – under the previous existing scheduling order we were coming up against the exhibit exchange. The pretrial, final pretrial order exhibit exchange, which is what he's referencing. And we would have had that obligation under the existing order that was of course displaced by the extension. That's all.

Court:          Alright.

Woodward:       Your Honor so am I now because of those rules of when he's, he has an extension and his documentation isn't available? Is my documentation now also not available to him under those same rules? Or am I under a separate set of rules?

Buikema:        That's an important point Judge. The original notice and the substitute notice for the change in date will be the same. And it's a duces tecum notice. So that's, that's yet another request - -

Court:          I think he's talking about something else though. I think he's talking about the, some other obligation as part of the preparation

36

|  | of a joint pretrial statement for an – I'm not familiar. What, what – |
| Buikema: | As far as I'm concerned I have no, such obligation, other than, again the discovery requests that were served on my client approximately 28 to 38 days, 30 days ago. And are I think, due today. |
| Court: | Alright Mr. Woodward, just to it's clear, what, what obligation for the exchange of documents are you referring to? Is it in an order by, that was entered by Judge Duggan? |
| Woodward: | Well they would be the, with the pretrial order, for exchange of documentation and exhibits for the – I mean that's what he's asking for. He's asking for all of my exhibits and all my evidence for this case. |
| Buikema: | The parties fulfilled the 26A1 disclosure requirements. I had some issues with Mr. Woodward so I, I did not bother the Court with. But I think what he's referencing is the final pretrial order exhibit exchange requirement under the original scheduling order. Cause we were scheduled for trial on the trailing docket. I think, I want to say late November, mid-November, which would have given us that obligation. Obviously because of the adjournment, that obligation is really, we don't have to do the final pretrial exhibit exchange. I think that's what he's getting at. |
| Court: | Well I just want to clarify that. I'm looking at Judge Duggan's Order of April the 14th of 2010, which I'm assuming is the initial |

37

|            |                                                                                      |
|------------|--------------------------------------------------------------------------------------|
|            | scheduling order in this matter?                                                     |
| Buikema:   | I think so Judge.                                                                     |
| Court:     | And that has a reference to a final pretrial, which was at that time, scheduled for November the 16th of 2010. And a reference to Local Rule 16.2 with respect to the requirements of that. And contained in that are a reference to the requirement that the parties must number and list with appropriate identification each exhibit, including summaries, as provided in Rule 26(a)(3)(c) of the Federal Rules of Civil Procedure. Is that what you're referring to Mr. Woodward? |
| Woodward:  | Yes all the - -                                                                       |
| Court:     | Alright, well - -                                                                     |
| Woodward:  | I mean that's what he's asking for in this request for documentation.                 |
| Court:     | Actually he may be asking for those, but it's in a different manner that that request is being made. This, this obligation is something that will be applicable at the time that the joint pretrial statement is submitted to the court, which is down the road. |
| Woodward:  | Those would be documentation for Rule 26 right, documentation as of Rule 26. Provide documentation as Rule 26. |
| Court:     | This will be your, your exhibits that you intend on offering at the trial.            |
| Woodward:  | Per Rule 26?                                                                          |

38

Court:          Yes.

Woodward:       What is stated on Rule 26?

Court:          Yeah, the reference is as provided in Rule 26(a)(3)c).

Woodward:       So those are not due today, correct? Those would not be during

                a, a deca, decum or whatever.

Buikema:        It's duces tecum sir.

Court:          Well I guess I'm a little confused by that to be honest.

Buikema:        If I understand it Judge, and I can help. I think, I think you clarified

                for Mr. Woodward that the exhibits due, or the parties exchange

                of exhibits for purposes of the final pretrial order are no longer

                due to one another at this point, because of the adjournment.

                What I think he is saying is well therefore the duces tecum

                documents, which are essentially or in substance the same thing,

                covered by my deposition notice to him, are therefore also not

                due, which as you know is a broad way of thinking about the

                issue. Again you've ordered the deposition to take place. I've sent

                a valid notice. I'll resend another valid notice for its directive. Mr.

                Woodward can either comply or not comply. But you can be

                assured that if he doesn't comply in accordance with the rules, I'll

                be back here.

Court:          Alright. Well I, I, I'm still trying to answer the initial question that

                Mr. Woodward had asked, and that is those exhibits that are

                required as part of the preparation of the, of the joint final pretrial

order, are not due yet. That obligation does not currently apply, okay.

Woodward:     So his request for documentation - -

Court:        No, I'm, there are different types of requests that have to be complied with. But this request, the one that relates to documents that have to be submitted as part of the preparation of the joint final pretrial order, does not have to be complied with. If you receive a notice of a deposition which includes with it the requirement to produce certain documents, that is an obligation that you have to comply with. If you have received a written request for the production of documents, you have a certain period of time within which to provide copies of those documents or allow the inspection of those documents that are specifically requested. And those are obligations which exist separate and apart from any obligation that would result or come out of a notice of a joint final pretrial order requirement. So all requests are not the same. And different requests come at different stages and are applicable at different stages of the litigation. So you are asking me whether the obligation to, as I understand it, the obligation to exchange copies of proposed trial exhibits as part of the creation of a joint final pretrial order, is applicable. And I'm saying that that doesn't apply yet. That's an exchange that has to be addressed down the road. But if you have received, subject to your ability to

40

object. But if you have received a written request for the

production of documents, which the Plaintiff asserts that you

have, you're obligated to provide copies or the opportunity to

inspect those documents within 30 days. Separate from that,

however, is that if you have received a notice of the taking of your

deposition that requests that you produce certain documents as

part of that process, you have an obligation to comply with that,

assuming you've received reasonable notice of it, and to have

those documents available at the deposition.

Woodward:       Thank you.

Court:          So, so those are three separate requirements, each one of which

could result in or would impose an obligation on you to produce

documents.

Woodward:       I would not want to burden Mr. Buikema anymore and the Court.

This is all of my documentation that I would like him to sign for

today. He's seen it. Your scheduled, I sent you an email

concerning that, that today would be a good time for you to sign

for this information.

Court:          Well I, you can discuss that matter with him once the hearing is

concluded, because that's, I'm not involved in the negotiation of

that. If you have documents that you want to provide him or allow

him to inspect, in compliance with the request for the production

of documents that was made earlier of you, that's a matter that

41

|  |  |
|---|---|
|  | you need to discuss with him. But I don't think you can necessarily, without notice, say to him, here are these documents. This is your one and only opportunity to inspect them. And that satisfies your obligation. |
| Woodward: | I did notify him several days ago, yes. |
| Court: | Well I, I'm not ruling on whether that's an appropriate compliance with the discovery requests or not, because that matter is really not before me. |
| Woodward: | I, I would, yeah at this point and time I'd just rather, just here it is. Here's what I have so far. |
| Court: | Are you giving him copies of those or are you simply - - |
| Woodward: | I might as well, then he's satisfied, and I don't have to - - |
| Court: | That's completely up to you. |
| Woodward: | Right. I'm - - |
| Court: | That's completely up to you. But that, that matter really isn't before me. |
| Woodward: | Okay. |
| Court: | And that's between the two of you. |
| Woodward: | Alright, thank you sir. |
| Court: | So we've, we've resolved at least the first motion. That is the motion to compel the deposition of the defendant. And I've ordered that the motion be granted. We scheduled that deposition for the, January the 4th. Was it 10:00n a.m. Mr. Buikema? |

42

Buikema:      It is Your Honor.

Court:        And the location will be specified in the notice of deposition, which

              you'll receive, but it will be in Genesee County someplace, at

              perhaps a court reporting facility, at a lawyer's office, at some

              other location in Genesee County.

Woodward:     Thank you sir.

Court:        Alright. Now the, did you have anything else to say Mr. Woodward

              with respect to your motion for a protective order?

Woodward:     I guess that's now moot Your Honor.

Court:        Alright. And with respect to the, the last motion that is Plaintiff's

              motion to adjourn the scheduling order dates for 90 days, did you

              have anything else to say about that?

Woodward:     He's the one burdening the Court with this, another request to put

              off discovery or whatever.

Court:        Well - -

Woodward:     It's up to him.

Court:        His request benefits you as well to the extent that if - -

Woodward:     Correct.

Court:        - - we're extending those dates, those dates are extended for you.

              So the dates are not just being extended for the Plaintiff to

              conduct additional discovery. The dates are being extended to

              allow both sides to conduct additional discovery. So anything else

              you want to say about that?

43

Woodward:      No Your Honor.

Court:         Alright. Then I'm going to grant that motion to provide for an

               extension by 90 days of those previously established currently

               existing discovery dates or any other dates that are associated

               with the scheduling order previously entered by Judge Duggan.

               So Mr. Buikema does that conclude all the matters that we had?

Buikema:       It does Your Honor. You did not, and I assume it was intentional,

               address the cost issue.

Court:         Well I'm glad you pointed that out because the record should be

               clear. I'm gonna deny the request for costs based on our current

               circumstances. But I'm certainly making Mr. Woodward aware of

               the fact that they are consequences for failing to comply with the

               rules that apply to these circumstances. Again there's some

               leeway that is afforded people who are representing themselves.

               But that only goes so far. And it, it really is important that to the

               extent you're not, and you have some familiarity with the rules,

               you've cited some of the rules. So you have some familiarity with

               the rules. You have to be familiar with the rules. You have to

               comply with those rules or there can be consequences. I'm

               denying the imposition of costs based on our present

               circumstances.

Woodward:      Thank you Your Honor.

Court:         But if in the future you are unwilling to cooperate or participate in

                                      44

|  |  |
|---|---|
|  | discovery, there could be consequences for that. |
| Woodward: | I suspect there will be more motions for that seeing that I've requested a substantial amount of information from Mr. Buikema which is, as obvious that he stated that hasn't appeared yet. And he has basically four hours to produce it. |
| Court: | I would, I would also note the existence of another motion that has been filed in this matter relating to, filed by the Plaintiff, relating to the Defendant's failure to produce documents and comply with other discovery requests. I just note that that's been filed. The time for responding has not passed yet. But that is another issue that may come before me. |
| Woodward: | Any documents that he request, all of his answers to his interrogatories, all of his answers for his admissions, all of his documentation is here. |
| Buikema: | It's there but I didn't address it quite intentionally. It's not before you today. |
| Court: | It's not scheduled for today. I'm just noting the existence of it. And Mr. Woodward is saying that he intends to comply with that today. Whether that's actually comes to pass is another issue, which we may address at a later time. But certainly I would invite you Mr. Buikema to look at what Mr. Woodward has brought to court today and accept what he has and then make a determination of whether that satisfies your motion. |

45

Buikema:     I, I just, I have a logistical issue with that today. But - -

Court:       That's fine.

Buikema:     We'll address that outside of the Court's presence.

Court:       It's, it's certainly not unreasonable that you would be unable to
             inspect those documents today under the circumstances. But if
             has documents for you to take with you, I would certainly
             encourage you to take those and then assess the completeness
             of that production as soon as you possibly can.

Buikema:     I will. Judge would you like for my office to prepare a written order
             or will your staff prepare one?

Court:       I would request that you prepare an order.

Buikema:     Be happy to do so. We'll submit it, hopefully later today.

Court:       Very good.

Buikema:     Thank you.

Court:       Alright, Mr. Woodward anything else you care to say today for the
             record?

Woodward:    No sir. Thank you.

Court:       Alright. I would, Mr. Woodward do you have a phone?

Woodward:    I do.

Court:       Alright. Does, does Mr. Buikema have your phone number?

Woodward:    Yes sir.

Court:       Alright. I would encourage you to try to discuss these matters. It's
             always awkward for a lawyer dealing with a non-lawyer. I mean I

46

know that because I constantly see problems that result in those kinds of communications. But I would encourage you to communicate as, as well as you can to try to work your way through this discovery process. And if there are issues that you can work through, I would encourage you to try to do that. And if email works as a form of communication, that's fine. Telephones sometimes help as well. But I know everybody isn't always available at the moment when a phone call is being placed. There are, Mr. Woodward, some things, some information that's available on the website for the Federal Court for the Eastern District of Michigan. Are you familiar with that location?

Woodward:     I am sir.

Court:         Alright. Until the final order I think that's a good source of information that might be helpful to you. And so I would suggest you try to take advantage of that when questions arise that you perhaps can answer by looking at that location.

Woodward:     Thank you Your Honor.

Buikema:      Thank you.

Court:         Aright, thank you gentlemen. We'll be in recess. Have a happy holiday.

Buikema:      Thank you.

**End of hearing**

47

## CERTIFICATE OF TRANSCRIPTION

STATE OF MICHIGAN      )
                        ) SS
COUNTY OF OAKLAND    )

      I hereby certify the transcription of the above hearing.  This hearing was not

recorded by me nor under my supervision or control.  I certify that this is a full, true,

complete and correct transcription of the hearing.

GAIL L. BOLDEN
Notary Public
Oakland County, Michigan
My Commission expires:  12/07/2013

Dated:  September 6, 2011

48



**NATIONWIDE COURT REPORTING & VIDEO**

30800 Telegraph Rd., Suite 2925
Bingham Farms, MI 48025
Tel: 248.644.8888  Fax: 248.644.1120
www.bienenstock.com

Job #: **110830GLB**
Job Date: **08/30/2011**
Order Date: **08/30/2011**
DB Ref.#:
Date of Loss: / /
Your File #:
Your Client:

# Invoice

Invoice #: **484914**
Inv.Date: **09/07/2011**
Balance: **$0.00**

Bill To:
**Steven Woodward**
30800 Telegraph Rd., Suite 2925
Bingham Farms, MI 48025

Action: **Hearing Transcription**
VS

Action #:
Rep: **GLB**
Cert:

| Item | Proceeding/Witness | Description | Units | Quantity | Amount |
|------|--------------------|--------------|-------|----------|--------|
| 1 | Hearing from Dec. 22 Transcription | Transcription of CD | Pages | 47 | $188.00 |

Comments:

Offices in: Bingham Farms I Ann Arbor I Detroit I Flint I Grand Rapids I Jackson I Lansing I Mt. Clemens

| | |
|---|---|
| Sub Total | $188.00 |
| Shipping | $0.00 |
| Tax | N/A |
| **Total Invoice** | $188.00 |
| Payment | $188.00 |
| Balance Due | $0.00 |

Federal Tax I.D.: 38-3231100     Terms: Net 30. After 30 1.5%/Mo or Max Legal Rate

*Please KEEP THIS PART for YOUR RECORDS.*
*Please FOLD then TEAR HERE and RETURN THIS PART with PAYMENT.*

Bill To:
**Steven Woodward**

Deliver To:
**Steven Woodward**

# Invoice



**NATIONWIDE COURT REPORTING & VIDEO**

30800 Telegraph Rd., Suite 2925
Bingham Farms, MI 48025
Tel: 248.644.8888  Fax: 248.644.1120

Invoice #: 484914
Inv.Date: 09/07/2011
Balance: $0.00
Job #: 110830GLB
Job Date: 08/30/2011
DB Ref.#:
Date of Loss: / /
Your File #:
Your Client:

Deposition-1.wmv video (and DW_A0068.wav audio and February 1, 2011 Deposition
Transcript file woodward_steven_-_110201.pdf)
**JL** = Judge Lhuchaniuk
**EB** =Eric Buikema
**Sw**= Steven Woodward
**CG** = Cheri Gleyre (Stenographer)

**Time: 8:26** Deposition-1.wmv

**JL**: Hello

**EB**: Good morning how are you?

**JL**: I'm fine thanks how are you

**EB**: I'm well this is Eric Buikema and Steven Woodward is, uh, in the room he's initiated
the call so I'll let him tell you why.

**JL**: Alright very good thank you

**SW**: Yes your honor um, my sister came along with me and it's my understanding that I
can have somebody here with me um, and ah, since I am not ah, I don't have an attorney I
don't have anyone here with me, ah, it's my understanding I can have her here also um,
Mr Buikema was given notice on three separate occasions ah that I was going to bring
her, and um also Mr Buikema on our last hearing said that he is that he does act
aggressive during depositions and ah or something to that effect ah and ah that he does
ask questions that are ah that are ah, are ah, of questionable ah substance um I don't have
the hearing minutes right with me or transcripts with me but ah this is why I requested
this and you gave me permission ah through Tammy ah during what was suppose to be
our first meeting ah to have a video camera and a recording device with me I notified Mr
Buikema of this also and now he's objecting to that too.

**EB**: Good morning your honor I first of all I have to disagree with the assessment of ah
what I said about my deposition practices ah I think that's a unique interpretation and

1

never emerged from my mouth but nevertheless the issue this morning is that Mr Woodward has appeared here with a witness who is not an attorney who is not an agent who is not a party of the litigation and by the way was disclosed I think on his Rule 26a1 disclosures as a potential material witness to the action. As such she has to be sequestered from the proceedings and I don't say that to be rude to her or to him uh but simply because that's how we do things and ah and I don't see any support in the rules or or in Mr Woodward's understanding or having sent me an email on the subject that would permit him to bring a non attorney but a material witness to sit thru his own deposition, she's a non-party. Beyond that uh although Mr Woodward did email me about having ah an intention to record the proceedings ah usually that comes in the form as you know of a more formal notice that describes the means methods ah and party what he's done is brought his own web cam and it's aimed directly at me and not at the proceedings in total.  So ordinarily I would not make an issue of that uh I would say regardless of whether the notice was quote unquote sufficient or not sufficient go ahead and do it doesn't make a difference to me and I maintain that position if and only if Mr Woodward is able to video tape the entirety of the proceedings rather than just pointing a video camera in my face and recording it unilaterally uh that's my objection on that portion of it I think that would go away if we could tape the entire proceedings somehow.

**JL**: Alright,um Mr. Woodward ah ah can you hear what I'm saying

**SW**: Yes I can Sir.

**JL**: OK, Mr Buikema's concern about the ah the person that's present with you that you've disclosed as being a witness

2

**SW**: I have not disclosed that she is a witness your honor that is ah that is something that Mr Buikema has fabricated I don't believe in any of my Rule 26 ah rulings that ah I stated that my sister would be a witness to this anything I think he just fabricated that as he's fabricated his ah docket one claims.

**EB**: Wow

**JL**: Well, I certainly I certainly have no reason to believe he's fabricated anything but he made have seen something with her name on it that caused him to believe she is a potential witness.  If you're saying she's not a witness then I think that addresses his legitimate concern about a a a fact witness sitting thru the testimony of another witness, it's common practice to sequester witnesses that would be testifying about the same fact so that one witness is not influenced by the testimony of another if you're saying your sister is not going to be a witness, then that's fine I think that resolves his issue and ah I think she would be allowed to at least observe the deposition ah I don't think that there's anything in the rules that prohibits non-party observers from being present during a deposition as long as there isn't a conflict with the ah witness issue that Mr Buikema has addressed

**EB**: Your honor if you may ah and ah I don't contend to be contrarian, but the witness is his sister of whom he resides and with whom he has resided thru the original state court proceedings uh that have been affirmed on appeal the dismissal has been affirmed on appeal ah but his and he uses his sisters address for ah receipt of all the pleadings in this case ah he has used it that was where he was served with process apparently it's the person with whom he has I guess the closest familiar relationship during the pentency of all these proceedings and more importantly the underlying conduct that's at issue in case

the publication of the web site his dismissal from university etc etc etc so while Mr Woodward may say she's not going to be a witness I don't know that until I've had the opportunity to A depose him to find out what that relationship is and what she might know and what she might have observed that might be of relevance or potentially depose her so I don't want to get in the situation where I'm later precluded uh form or later prejudiced for that matter and in in pursuing that discovery if it becomes necessary

**SW**: Your honor Mr Buikema has just ah just proved his own theory my Rule 26 in that now he's trying to say that my sister is now a witness in yet he has not ah asked for her deposition he has not said anything there is no mention of of my sister in any of his documentation um he's fabricating this as as well as everything else he's fabricated.

**JL**: Alright well you know with respect to her presence there in my view is that if you had somehow Mr Woodward indicated that she was going to be a witness for you that you would not be allowed her present during the deposition in the extent that you haven't enforced her or identified her as witness for you I think she can remain there even if there is some potential for her being a witness for the case I simple don't think the rule prohibit nonparties from being present during a deposition as long as they don't interrupt or interfere with the proceedings and that no one has indicated that the case here so I don't see any prohibition with respect to her being present as an observer during the deposition I do think if you're going to record the deposition via a video recording of some kind that you record the entire event usually the cameras are focused on the witness they can pick up the audio but I don't I have to agree Mr Buikema I don't think it's appropriate to just focus the camera him ah your recording the deposition and picking up anything that would be said and and ah I think it's important that the camera be on the witness who is

being deposed as opposed to the lawyer or someone else who is present at the time of the deposition so if you want to record it in the common fashion and that is to record the testimony of the witness presumably yourself I'll permit it but I I I don't want to have the procedure focused on the conduct of the lawyer I simply don't have any reason to believe that Mr Buikema is going to act in any extraordinary fashion and if you record yourself as you're testifying you're going be able to pick up any audio that would be part of the process and an if he raises his voice or uses inappropriate language you're going to record that I just don't' think the camera should be focused on him I think the camera should be focused on the witness which is the traditional way in which depositions are preserved if you want to do it that way, so your sister can stay there as far as I'm concerned you can use the video camera as long as you focus the video camera as cameras are used in the traditional sense to record a deposition and that is they record the questions that are asked of the witness and the response of the witness and ah in that fashion I have no objection of that is that an issue with you Mr Woodward

**SW**: um yes your honor I have problem with this attorney and um ah and ah it's my understanding that um ah that I have objections etc for attorney behavior and in such ah that's that is my intention of why I brought this ah this camera again this camera in bringing a video camera was was brought to his attention um since our, since our first meeting

**JL**: I didn't hear him objecting to the recording

**EB**: I don't

**JL**: through the video camera I heard him objecting to the manner in which it was being employed in that is that the camera is directed at him rather than the witness and and

that's what I'm saying I I don't think you should do, you should, you should train the camera on the witness you whose being deposed and that any statements that he makes are going to be recorded ah by the audio recording capability of the equipment and so there is really no prejudice to you to modifying what what your plan was with respect to the use of that equipment so your satisfying your concerns by recording what's going on I'm just telling you that you should not do it in the fashion you that have apparently intended on doing it you should do it in another fashion which has absolutely no prejudice to you

**EB**: Your honor I'm I'm sorry to trouble you this morning but since we do have you already ah let me just raise two quick things first if Mr Woodward does persist and record in the manner that you have directed I'd like a copy of the recording to be provided for me it's looped in it's just a web cam looped into his laptop apparently rather than any tape or CD or something that could be provide to me as to the ordinary course

Second it looks to me he's brought his laptop to refer to the web site or what not and I just I want to indicate for your purposes and for the record that in the event Mr Woodward's gonna refer to that laptop I think it becomes discoverable any information there on which he relies upon to assist his testimony in deposition

I want that to be out there before we have controversy later

**SW**: Your honor um this laptop isn't my laptop it's a brand new laptop it belongs to my sister I'm using it uh for this I , what I have on it is a spreadsheet of which I brought all electronic files with me I brought every single thing that I was suppose to bring to the best of my knowledge again I have over 2,600 pieces of paper here

this is the documentation that Mr Buikema did not take during our last hearing

I have all the visual documentation and to reference this information it's my understanding that during a deposition I can reference documentation I have to rely on a spreadsheet because there's so much information to ah I don't know what he's going to ask and I don't know whether or not I have the information

I even actually brought all my all my legal which believe are ah work product if he wanted to see what my legal grounds were to defend myself if he wanted to review that um but that's all that's on this camera or on the video or on this laptop is the video I'm going to take today and a spreadsheet that's it if he wants to go search this spreadsheet then he'd have to subpoena it from my sister because it's not mine

**JL:** Well, first of all lets dispose of that issue it's not who own the laptop its who has access to it and if you're using it in some way to supplement your testimony or to refresh your memory or to testify about some incident that was previously recorded ah it is discoverable and so it doesn't matter if your sister owns it if you have access to it then essentially that the information is available to you and you would be obligated to produce it

**SW:** and that's what I'm saying your honor I'm say is that the information that's on here is two pieces of information one is a spreadsheet of which I'm giving him he has a DVD of the electronic files he's requested and the only other thing is this video tape I'm making

**JL:** Well he doesn't get to see everything that's stored on the computer he only gets to see those matters or document electronic documents that you have used ah to refer to prior to answering questions so he doesn't get to see everything that's on the computer but if you're using documents that you have put on that computer it doesn't matter if she

7

owns it that is not the issue it's what you use so if you rely on something that's stored on

that computer he's entitled to see it

**SW**: and that's what I'm telling you your honor I'm not only gona let him see I'm gona

to give it to him and I tried to give it to him during our last hearing

**JL**: Then we don't have a problem

**EB**: What are What are you going to give me Mr Woodward

**SW**: Sir here is a DVD of everything single thing that's on this that that I am using on

this computer this contains the spreadsheet that I have the only thing you're not, you

don't have is what you've just now requested is the video taped deposition

**EB**: And my notice reflects

**SW**: Electronic files

Recordings electronic files etc

**EB**: where is that

**JL**: So So, there is no objection Mr Woodward for providing Mr Buikema a copy of the

video recording video and audio recording of the deposition that you are going to be

taking

**SW**: Correct, I have no problem giving him that

**JL**: give him that and you will give him a copy of anything that you refer to during the

course of your deposition

**SW**: Correct and I already intended to do that and I brought that information with me and

Mr Buikema now has it in his possession

**JL**: Then I don't think we have a problem

**EB**: Thank you judge

**JL**: Alright gentlemen ah is there anything else that I can resolve

**EB**: I sure hope not

**SW**: Thank you your honor

**JL**: Alright have a good day

**EB**: Alright swear the witness

**Time 54:11** Deposition-1.wmv(Also February 1, 2011 Page 27 Deposition, DW_A0068.wav)
**EB**: Mr. Woodward, section D of the deposition notice, the duces tecum portion,

references please produce any and all videos you've produced which discusse plaintiff,

AUA. So, first of all, I want to ask you have you produced videos that have as their

subject AUA or your experience with AUA or Antigua more generally?

**SW**: Please restate that question. I'm sorry. I'm sorry, I'm a little upset right now. I need

to take a break. I need to take a break.

**EB**: Go ahead.

You don't have to answer this if you don't want to. Is he OK? Does he have all his

faculties?

**EB**: Ready to proceed

**SW**: I'm ready

**EB**: OK

**EB**: Have you produced videos in which the topics of the video is AUA, your experience

at AUA or your experience at Antigua more generally?

**Time**: 01:05:14 Deposition-1.wmv (February 1, 2011 Deposition page 33, Line 1,

DW_A0068.wav)

**EB**: Are the exhibits themselves produced?

**SW**: Yes

**EB**: Where are the exhibit themselves?

**SW**: They're in this box over here in the corner

**EB**: And you're going to give that box to me today?

**SW**: I tried to give it to you on December 22nd.

**EB**: Are you going to give that box to me today?

**SW**: I brought it for you.

**EB**: Thank you.  Let's mark it as Exhibit 3 then.  Just bring it up the whole box, we'll put a sticker on it.

**(01:05:36 a picture of the box)**


**Time 1:32:45 DW_A0068.wav**

**EB**: I'll retain the exhibits

**SW**: Sure they're yours, I made them for you

**SW**: Do you want to witness the visual aids at this time while you are here it'll take two minutes.

**EB:** We'll be doing a un-audible ..

**SW**: I'd like it on anyway my recording Mr. Buikema is now leaving refusing again to view, ah, visual aids.

**CG**: OK so when I call you about the transcript you I should call your sister at this number?

**Time 1:34:48 DW_A0068.wav**

**SW**: He didn't take his answers to his Interrogatories either

**CG**: That wasn't marked was it?  He didn't mark it as an exhibit

**SW**: He didn't want it again, OK

March 24, 2011 Deposition Audio File: **DW_A0069.wav**
**JH = Judge Hluchanuik**
**SW = Steven Woodward, Defendant**
**PK = Paul Kittinger, Plaintiff**
**CG = Cheri Gleyre(Stenographer)**


**Time: 7: 57**
SW: Good morning your honor

JH: Council

PK: Paul Kittinger,

JH: Mr Kittinger nice to meet you Mr Woodward

SW: Mr Woodward, nice to meet you Sir

JH: This deposition is obviously being conducted at the court house

PK: Would like us to go on the record

JH: No I don't think so, not because it's I intend to be intimately involved in the process. But simply that I would be available for issues that might arise.  Because apparently there was a previous attempt to conduct a deposition and it didn't work out very well.  So, I'm not going to be a referee who's going to make calls constantly during the course of this, if you can't work out the basic process of this then we're going to have to schedule a motion and determine whether sanctions have to be imposed or not because it's just not possible for me to be here throughout this process and have it like I would if we were conducting an evidentiary hearing in the court room.  So with that being said this is a standard procedure deposition I assume Mr Woodward that you have become familiar with the Court rules and understand how those rules apply to your conduct the conduct of anybody who is being deposed in a case so I don't know if that's true or not but it's my

1

expectation that you would have attempted to familiarize myself with those court rules so

that you understand what your obligations are.  Is that accurate?

**SW**: I've tried to familiar myself with this information and

**Time Mark: 9:36**

**SW:** I think this has been very bias.  The attitude, I've brought this evidence and they

have refused to look at it during your hearing and during the last deposition.

**JH**: They don't have to look at it, you have to make it available to them and if they elect

not to look at it, then you've satisfied your obligation by making it available.

**SW**: So I'm finished with my court order of…..you ordered

**JH**: What, what you need to do to document the fact that you've made it available is to

identify in some list the items that you have presented to them and made available to

them so that its clear what, what, what they had the opportunity to see, if they elect not to

look at it that's their problem not yours so you have to make it available to them and, ah,

I can't force somebody to look at documents.  I can compel a party to produce for

inspection documents which we have done and if you've produced it and afforded them

the opportunity to look at it and they don't want to that's up to them, but in order to

properly document what you have made available to them you need to list it, and create a

list with some descriptive language which could be used to show what it was that was

made available to them

**SW**: OK

**JH**: Do you have a different view of the rules?

2

**PK**: I think what Mr Woodward is getting at is he, he brought some visual aids, um, that are responsive to the decus tecum portion of the deposition notice and the discovery request he's....

**SW**: and your Order Sir.

**PK**: There is a continuing obligation to answer discovery. The Court ordered him to answer interrogatories, and request for production of documents to date he has not done so.

**SW**: I have your honor

I produced those every single hearing we've had, every single one of these depositions that these guys have cancelled. I've brought this documentation with me it's here, it's here today and they refused to take it, he refused.

I have a recording of him refusing to even turn around and look at the documentation including these of which I brought to the last deposition.

**JH**: Well, it's my belief that if you make those documents available and that as long as it's clear, so that we can if there is a contest over this in the future we can determine what it was that was made available to them, the obligation of a party in discovery as far as I'm concerned is to, you can produce copies, or simply make copies available, and um, if he brought documents for the inspection for the opposing counsel and the opposing counsel chooses not to look at it then he's satisfied his obligations as far as I'm concerned.

**Time Marker: 12:17**

**SW**: And this is also a Motion to Compel I'm going to give you to give to Eric because you have not produced anything that I have requested for to date any documentation,

Nothing, including my own student records and any kind of physical exam information which that your school would have, Nothing

**PK**: Well we'll have to look at the motion and see,

**JH**: So

**PK**: Well there's no motion up so I can't respond to it I haven't looked at it

**SW**: I'm just telling you there it is so I don't have to mail it to you

**JH**: So are there any general questions that I can answer about the procedure that's to be followed during this deposition?

**SW**: Your honor, I've tried to answer these guys questions the last time, I've tried to produce this information to them and just like you're hearing they turn around and walk out without taking it, I gave them that same box of information to them during your hearing.

**JH**: Your obligation is only to make it available to them if they chose not to take it then that's they have no basis to complain later, but it's important so that we know what it is that you made available.

**SW**: correct, to date addition to the stuff that I've already listed the stuff I already listed I have tow robotic hands and I have two books one is, there both, there both from the school there both is their standard reading information one is the Mosby's book which basic physical examination

**JH**: I don't have the time to be here and go through all this process with you

**SW**: Well I'm just recording it that it's available to them if they want to look at there it is this is now the fifth time I've made it available to them

4

**JH**: That's fine you've made the record it's just important to identify what it is that you've brought and what it is you made available to them and if they

**SW**: So I don't need to bring it anymore, if they continue these depositions

**JH**: I'm not ruling on anything I'm just telling you what your obligation is to make it available to them and if you've done that you've satisfied your obligation

**SW**: These are their answers to their first Interrogatories

**JH**: Alright, I don't want to get into this minutia we're not conducting a hearing here I'm just trying to get you started on this deposition so that you can complete this process today and move on with other matters and if there are motions to be made and considered I will do that on the record after the opposing side has had the opportunity to respond. This is not an ad hock kind of proceeding where I'm going to make rulings on things every step of the way.  I told you Mr Woodward you have satisfied your obligation if you've made documents available that they are seeking and if they elect not to take them you're still your obligation has been satisfied

**SW**: Thank you your honor, that's all I wanted to know

**JH**: We need to know what it is you've made available

**SW**: That's that's I've done that

**JH**: OK Very Good

**PK:** In terms of objections how would you like to resolve those or

**JH**: at a deposition an objection is the answer should be given even if there is an objection to the relevance of an answer the only exception to that is if there is a privilege claim and a privilege claim has to be a privilege claim that is based in the law and

attorney client privilege or some other privilege that's recognized under Federal Law otherwise even if you believe Mr Woodward

**SW:** Yes Sir

**JH:** that the question is not relevant to the process you can put your objection on the record and preserve it for later purposes but you still have to answer the question.

**SW:** Correct I know, I did read that

**JH:** OK, So is there any other issue associated with objections

**PK:** I don't foresee that but

**JH:** OK, I think Mr Woodward understands his obligation in that regard

**SW:** I've been trying to go through this process your honor if you read through the transcripts I tried to answer his questions and he got mad he walked out, I tried to answer his questions

**JH:** Alright

**JH:** Well We all understand you are here without a lawyer we're attempting to find a lawyer for you but it is not an easy process because lawyers who are willing to work Pro Bono are hard to find. So all leave and invite you to go forward and try as hard as you can to get through this process without raising your voices without getting irritating with each other I hope that this process will be conducted in the spirit of civility and good faith and hopefully the occasions in which I need to intercede will be few. Alright

**SW:** Thank you sir. This here is other evidence to date because I have til April 4th to produce this evidence, this here this here is also a list of evidence there is electronic documentation in there including amendments to the file that's in there the index of all the evidence I've given you so far listing what's in there.

6

**PK**: Swear the witness please

**CG**: Mr Woodward would you raise your right hand please

**SW**: I do

**Time Mark 17:50**

**Time Marker: 207:48 (03:27:51)**
**SW**: Did you want to take ah your admissions or any of this stuff with you?

**PK:** Is that, are you serving it?

**SW**: Well I mean, I'm under Court Order to give you this information and so, and so I want to give you this information so I'm not under violation of the Court Order. Do you want to look at these exhibits that I've given you, these exhibits are on a list but they are not part the information, this is more information that, that I'm going to use

**PK:** Are you supplementing your entire production

**SW:** Correct, Correct, OK, and, and again on the DVD I gave you, um

**PK:** Where's that

**SW:** Make sure you take that, because this has, this has in it, um, you'll just have to look at it. But it does, it tells you what that Robot is and it and it uh, there's some more information on there that I've gained since. This here, um, this information here an can we go on the record please, because this is important, an an this is important, can we go on the record, it's up to you

**PK:** That's fine

**SW:** Ok, when we were discontinued at the first deposition we had on February 1st I tried to tell him about the NBME before he got up and walked out. And what I'm giving you I filed and what I was trying, there's two thing I need to explain to him for that. I filed a

subpoena to the NBME and this is the documentation that they sent me. So I'm giving you a copy of it. Some of this documentation, I think if it says 614 or something like that on it will be information that you already have. Right, they were part of Exhibits you already have. Right, but you didn't have maybe parts of it, and I wanted to make sure that if there's anything, this is all the information that the NBME gave me per a subpoena that I, that I, issued to them and they sent that back. And that's all my personal student record stuff. Some of it you have, which would be most of it, and some of the back part stuff you wouldn't have.

**PK:** OK, your producing a copy of what you received in response to serving a subpoena.

**SW:** Correct, On top of that there was another subpoena served to the, to the Network Solutions, which is AUA's domain, Right. And the subpoena is in the back.

I couldn't find he subpoena to this one, but that's the subpoena to that one and this, again to this for my personal information they gave it to me.

I'll look for it more if you need a copy of the subpoena, I'll look for it, I can't find it. That's the subpoena I wrote, that's the information I got back. Basically they couldn't do anything for me. But I want to make sure that you weren't upset because I wrote another subpoena that I didn't recall and that it, and that's the reply I got from that subpoena.

**PK:** OK, Network Solutions

**SW:** Correct

**PK:** Are there other subpoenas that have...

**SW:** Right now, that, that should be it. What I've, what I've, what's happened between, NBME, Sallie Mae, and ECFMG that should be it.

**PK:** Can I have a copy of this

**SW:** That's yours I made that for you.  I made that for you and I made that for you.
And if I find that do you want me to fax you a copy of the original subpoena for the
NBME?

**PK:** That is required under court rules

**SW:** Oh see that that was the whole confutation.  I didn't know that I wasn't I didn't
know the rules for subpoenas.  Is why we got in a big tiff.

**PK:** This folder you handed me named, ah, 3/21/2011 Exhibits can I keep this?

**SW:** yea, yea those are you your copies

Do you want to look at everything else I brought while you're here?

**PK:** I'll look at your visual aids

**SW:** OK

**PK:** Otherwise we're done you can go off record

**CG:** Is it safe for me to pack-up?

**PK:** yea

**CG:** Mr Woodward is it safe for me to pack-up

**SW:** Yea, I mean, I think I'm just, yea, I think I just, if he wants to see this stuff he can
look at it.

This is a fiber optic training device and the interesting thing about it.

You have the, ah, comments from the Doctor, you have the that, they thanked me for
developing this for the University of Michigan Anesthesia Clinic program.

**PK:** For what is this for

**SW:** This is for, if you're learning how to use, ah, a fiber optic training, fiber optic
dexterity 3mm camera, you know what I'm talking about fiber optics

9

**PK:** OK

**SW:** Most people think of them as like colonoscopy, right, but for anesthesia that's as big as fiber optic, that's as big as your scope is.

**PK:** so this is to teach Doctors how to thread it through and,

**SW:** Correct, So what you do is you, instead of paying whatever these are 2 grand or whatever they are for producing this I made this for $50, $20.

**PK:** OK

**SW:** Right, Basically the interesting thing about it is that instead of going down through you know, you can change the path. Depending on the, that's what anesthesia providers have to do they have to go down and they have to pick the airway that they're going to, because they don't, they're not looking up the colon, right.

They're weaving around down in cavities, right.

And they go Left or Right depending on where they where they need to, doing whatever they are doing.  And the device is only that big around, I think that is.

**PK:** OK

**SW:** Right, and so you can configure it different ways, you can put there's a little smilie face, that they put in there.  I didn't put that in there, somebody else did.

But, ah, you configure it like here's another disc.  Interesting thing about it is that these disks you can change the placement of the disk.  So as you go through here you have to hit that one in the center and if you come up to this disk, you'd have either go, to go to one of, so you can move it, because they're flexible, Right, and it's flexible during the little hand….

10

**PK:** OK

**SW:** trigger on there, OK. So, that's this.

**PK:** This is a lot of stuff

**SW:** That, you have copies of everything that's in there. I mean you can look through it. I'm not going to hide anything from you. Those are standard books.

This book here explains the corneal reflex test.

**PK:** OK

**SW:** Right, AUA can give you a copy of that. This here is Human Anatomy, is from our Anatomy class. That AUA can give you, describes the eye.

This here is for a, I don't recall whether it's DLT or 3mm Tape cartridge, because of the library on of the Libraries I worked on. I used this for training aids when I was teaching kids how to, do you want to be an engineer. I gave you documentation where I received awards, for teaching students if they wanted to be an engineer or not.

This is one of the hand assemblies that I worked on, actually I worked on the gripper assemblies and how to get it to work right.

This here you have information on all of this.

This is a Powderhorn hand, this hand, ah, I worked on this in 92' and ah,

This was the Ferrari of tape drives at the time.

I mean every time you scan an American Express card good chances that, that data is stored off-site somewhere, I believe in one of their offsite campuses, a whole there's warehouses full of these robots that store all this data in deep archive.

**PK:** OK

11

**SW:** Matter of fact I think Langley has, If you watch the movie Patriot Games one of these is in the movie Patriot Games, then I think Eraser has this in there and they're just short little blurbs you see the robot running around in the background

**PK:** OK

**SW:** Maybe, Clear, it's one of…

**PK:** Tom Clancy movie

**SW:** Right, Right, Right you'll see this in a couple of those and that because it was so Hightech at the time.

So, I was the Advanced Manufacturing Engineer of this product

**PK:** OK

**SW:** You also have a video of how this product works an you can see the silo I mean it's like 10X 10 silo what these things run around in are there

**PK:** OK

**SW:** If you want to look at what this thing does, so, you need, you need…this is my check board

**PK:** OK whatever you need

**SW:** I'm just saying

**PK:** Whatever your going to do your going to do

**SW:** Right, I'm not hiding anything I'm just saying

**PK:** I'm aware of your exhibits and you know I'm not replying about the admissibility, but

**SW:** Right true

**PK:** I've inspected them

**SW:** OK, we're good

So I'm clear of all obligations for per the Court Order as far as producing documentation and exhibits to you , right

**PK:**  Assuming you've produced everything to me

**SW:**  Well sure, I mean if there's something, again, we said there's something, I don't recall what it was that you wanted, that you, subpoena,

Do me a favor if there's something you wanted in that list of Domain names that I have, you send me an email of the stuff you want you want me to give you.

**PK:** OK

**SW:**  Such as that subpoena and list of domain names and I'll get it to you.

Fox Video (Fox-News-AUA.mp4)
RV = Rosie Valasquez (sp)
FOX = Fox Reporter
LB = Lind Berdau (sp)
IJ = Ishmal Jeffers (sp)
NS = Neal Simon

**RV**: I was devastated I was, I didn't expect that

**FOX**: Rosie Valasquezs' dreams were destroyed and it is the same tail of heartache for

Linda Berdua and Ishmal Jeffers.

**LB**: It was very hard to deal with and knowing that at the end there is nothing

**IJ**: I think it is just very important to expose the situation so that no one else could fall

prey to this circumstance.

**FOX**: It all started with the desire to become nurses Rosie, Linda, and Ishmal all applied

to the American University of Antigua's nursing school.

**RV**: I got accepted right away

**FOX**: The University's medical and nursing programs are taught here on this sprawling

70 million dollar campus in the Caribbean island of Antigua, but it's headquarters is on

Wall Street.  Rosie graduated last spring with an associates degree and she came back

home here to New York to take her state exam to become a nurse.  She applied to the

state to take what's called the NCLEX exam, which is short for the National Council

Licensure Examination, but the states response was a shocker.

**RV**: It took about maybe four months before I receive the denied letter

**FOX**: And why did New York State deny Rosie the opportunity to take the state board

exam?

**RV**: Because the school is not being recognized by the countries Nursing Council of

Antigua therefore I am unable to take my exam my state board exam in New York.

**FOX**: That's right the head of the Nursing Council of Antigua says the Nursing program at the American University of Antigua is quote "not approved by the Nursing Council" and if the Nursing Council doesn't approve the New York State says that graduates can not take the state exam here so Rosie's diploma at least for now is worthless. And to make matters even worse she owes 47 thousand dollars in tuition and with interest it brings her student lone to a whopping 91 thousand dollars for a two year program.

**RV**: They lied to me I was cheated I was sent, I went to Antigua I left my family and I gave them two years out of my life to come back to nothing

**FOX**: The University's own literature tells students they'll be eligible to sit for the National Council Licensure Examination known as the NCLEX exam once they graduate

**IJ**: The first question that I asked I said you know is this an accredited program they said yes it is I said will I be eligible to sit for the NCLEX exam when I when I come back, yes you will,

**FOX**: But since the American University of Antigua began it's nursing program back in 2009 there isn't one graduate from New York whose been able to take the state board exam to become a nurse.

**RV**: They promised me that I was going to become a nurse after I completed my program

**FOX**: And Linda Berdua left the program early after realizing there was a problem

**LB**: I blame the American University of Antigua, that's who I blame

**NS**: Our students are getting the raw end of the stick

**FOX**: Neal Simon is the President of the American University of Antigua he agrees that the nursing students have been mistreated but he says it is not by his University he says the University's Nursing program is accredited and approved

2

**NS**: We have documentation from the government of Antigua which says specifically that we were chartered and approved and that our graduates are eligible for licensure.

**FOX**: In fact Simon has this letter from the prime minister of Antigua stating that in 2007 the government quote "granted a charter to the American University of Antigua.. and its school of nursing" and that the program was quote "fully approved and accredited by the Minister of Health"

The problem is the prime minister and the minister of health apparently don't have the final say on the issue, according to this letter right here from the New York State education department from last October it's the Nursing Council of Antigua that determines if a school is approved

And the head of the Nursing Council Nurse Warner says the University is not approved by the Nursing Council and in order for the University's program to be approved they would have to increase their number of credits to 130 not current 73.  Simon says he and his University quickly realized that there was an issue when it's first graduating class ran into problems last year

**NS**: After we knew there was a serious problem with the program we never accepted another nursing student.

**FOX**: Simon also says that he and the students are caught up in web of politics he says the Nursing Council of Antigua and it's chair person Nurse Warner have a serious conflict of interest.  The council also operates a nursing school in Antigua that competes with Simons.  While this battle is going on between the University and the Nursing Council of Antigua the New York State Education Department is trying to figure out who

3

has oversight of the Nursing program: the Prime Minister, the Ministry of Health, or the Nursing Council.  Until that's determine the students are stuck.

**RV**: All this should have been straighten out from day one when they accepted the first student to go to Antigua into their nursing program.

**FOX**: Now Mr Simon tells Fox 5, that he is currently working with the government in Antigua to try and pass legislation confirming that his nursing school is approved.  But if that doesn't happen.

**NS**: We will reimburse the students their cost of their education which includes their tuition and their housing etc their plane fair down to Antigua yes we will reimburse them

**IJ**: Everyone's intention was to start a career, which we've been robbed of now.

**FOX**: And while New York students have not been able to take the State Nursing exam here in order to get a job the University is telling us that students from Florida haven't had any problems and they've been able to take the test in their state.

4

SallieMae
**DW_B0061.wav**

Devin Hewitt

Answering Machine: Old Message Monday 11:25 AM
**Devin**:
This is for Mr. Steven Woodward Hi sir my name is Devin I am just giving you a call

back from SallieMae regarding your inquiry about the schools that you had the questions

about regarding the contracts you wanted all the information that we had for the schools

for 06 and 07 if we had any contracts with those schools unfortunately I was told that if

we did an that would be preparatory and confidential and I wouldn't be able to disclose

that to you anyway so unfortunately I don't have any information for you I was told that

like I said I wouldn't be able to disclose that either way that is proprietary information so

I just giving you that update and

 I will be closing out the case for you on my end because I wont be able to be anymore

assistance to you in this matter I wont be able to give you any information if we did have

any contracts with those schools thank you have a good day bye

1

File: glasser-shelf.flv

Stephen Glasser PhD, Professor of Physiology, Neuroscience, Chair Neuroscience, Associate Dean of Academic Organization.



**Stephen Glasser:**

The Shelf exams are examinations that utilize retired Step 1 questions to make up a comprehensive final exam in the subject.  90% of all of the Basic Science courses have Shelf examinations.  At the end of every course where there exists a USMLE NBME Shelf exam the students take that as a final.  Every student sits the Shelf and must achieve a minimum grade on the Shelf exam in order to pass the course.

**Somaraju-belittles-students.wav**

0:0
**Somaraju**: You have the knowledge but you are refusing to think, you do not be able to

think.  You should apply your mind.

**Steve Woodward**

**Somaraju complaining**

Somaraju:   All of the students **(inaudible)**. So **(inaudible)** entering the class, please make sure that you come early. When I am taking **(inaudible)**. You cannot come half an hour late and **(inaudible)** half an hour each of you **(inaudible)** you should not come. **(inaudible)** exam, alright. You all know that. It's important for me, for them to know that who **(inaudible)** and who **(inaudible)** not understanding the question. And second thing is I am very disappointed at the behavior of quite a few of you in this exam. Exam time is not the time for you all **(inaudible)** the question. There is a **(inaudible)** exam review just for that. I am here, you are here at this time to ask me about those questions only. And if you can **(inaudible)** and if you can find out the **(inaudible)** yes we can take it up. We are asking for **(inaudible)** to be as fair to you all as possible. But this kind of unprofessional behavior is not expected. Remember this is a professional college. You are all going on after this college to become physicians. Please show some attitude, some professional attitude towards the teacher **(inaudible)**. And remember when we are wanting to study **(inaudible)** you be quiet **(inaudible)**. This again does not mean that you get up in the **(inaudible)** because I know 19% of the students who are in the class, I know what you do. You think I'm standing here and I don't know what you are doing. I

1

know you are texting. I know you are doing things on the internet. I know you are doing many things, except listening to what is being told you. If you are not interested please don't come. I see many of you (**inaudible**). Don't (**inaudible**). This is not (**inaudible**) for parties. There are clubs. There are many things (**inaudible**). The classroom is not for that. You are disturbing the others and you are disturbing me and (**inaudible**) disturbing the other person. When they come to the class they come (**inaudible**). Again this (**inaudible**) to the students in the classroom. (**inaudible**) is bad (**inaudible** if you are interrupting the class work. And the second thing is the attendance during the review, not during this review, but before, before the exam the review I give you. Both reviews are useful to those students who attend all the classes, who read the (**inaudible**) a number of times but they are not able to (**inaudible**) which they have to be just before the exam. Not attending the classes, not understanding anything, and attending just the reviews and thinking that they are going to take, take the exam is, what should I say, sheer foolishness. You cannot do that. (**inaudible**) are not ready (**inaudible**) either you make sure that you know the material heavily. It is not required that (**inaudible**). Some of you are intelligent enough not to be (**inaudible**). I know that. So we are not (**inaudible**). But those who don't attend the classes, please make sure that you sit (**inaudible**) required information. And one more

thing (**inaudible**) many of you (**inaudible**), these are required (**inaudible**). We have been reviewing the (**inaudible**) question. We have been reviewing the shell questions many times. Not (**inaudible**) but the concepts of biochemistry are required for you to understand other subjects. That is why we keep reviewing all the required subjects also. And we formulate this lecture, the instructors, those things on that information. If you think it is not necessary, (**inaudible**) answer the questions and the answer, the shell and go through. We are not preventing you. But I think this kind of behavior is very, very unprofessional. And please I am expecting you all to behave at least during the next exam (**inaudible**) 100%. Write down the comments. (**inaudible**). You can write whatever you want about that question on that, and you can make a note of it. The first exam review in the year for us to discuss each question. If you have a doubt I can clarify. If you think that (**inaudible**) yes. If (**inaudible**) on tape, you can take it off the, the question itself. **Beginning of recording to 6:04**

**21:40-27:00**

Somaraju:     See this is what I (**inaudible**). This is very, very, very complex. If you are going to do (**inaudible**) go do that and (**inaudible**)

Male:         These are cool. Those, that, those, those two answers man are just picking hairs. It's all like multiple. Is it by the number?

3

Somaraju:   Reasonably, think about it. Why should they be any reasonable number of bacteria when (**inaudible**) is not being digested?

Male:   So, so the bacteria is, never multiplies?

Somaraju:   They do not multiply associated with (**inaudible**).

Male:   Do they multiply?

Somaraju:   Yes they do multiply.

Male:   What do they need to multiply?

Somaraju:   They need, one thing is (**inaudible**) antibiotics.

Male:   Antibiotics will make them multiply?

Somaraju:   Yeah. They - -

Male:   The antibiotics, they multiply - -

Somaraju:   Common flora. Remember the common flora (**inaudible**) I can see those (**inaudible**) other flora (**inaudible**) to the bacteria then (**inaudible**). The common flora, they do not cause anything but they are (**inaudible**). What are (**inaudible**). And this along with (**inaudible**). They have been (**inaudible**) properly. So they are (**inaudible**), detail required for number of entities. They also (**inaudible**) do not provide any (**inaudible**) vitamin D. We get our (**inaudible**) our vitamin D from these normal flora.

Male:   Well when they eat a lot they don't multiply. They stay constant.

Somaraju:   (**inaudible**) content. Usually (**inaudible**) their number is constant. And here they do not eat a lot. They just, they - -

Male:   That's what they're doing.

4

Somaraju:        Lactose (**inaudible**).

Male:            Exactly, well that's eating right? (**inaudible**) just have you know,

                 what you, lactose intolerant, intolerance. You have a (**inaudible**).

                 You have cramps.

Somaraju:        Uh huh.

Male:            And you have diarrhea.

Female:          Uh huh.

Male:            And those things are (**inaudible**).

Female:          (**inaudible**) can we go to the next question please.

Male:            Have you, you ask a lot of questions in class and nobody ever

                 bitches about you alright.

Somaraju:        Okay, okay, please don't (**inaudible**) the class. The only person you

                 are supposed to teach is me. Each of you, you can speak only to

                 me, not to each other. I can give the class all you need to

                 (**inaudible**) okay. I am here (**inaudible**). Remember the question

                 here is about the same things that have other (**inaudible**) academic

                 (**inaudible**).

Male:            I, I understand now. I just think that, I think that - -

Somaraju:        (**inaudible**) the class when you are (**inaudible**) the (**inaudible**).

Male:            I think that it's just plucking hairs, this question.

Somaraju:        This?

Male:            This, this question that, that's pretty, that's kind of unfair compared –

Male:            (**inaudible**) this, this question (**inaudible**) there.

Somaraju:       **(inaudible)** there is no mistake in the question.

Male:           Oh, very well.  I understand.

Somaraju:       You have to go through that topic again and **(inaudible)**. And see if

                at any point in the **(inaudible)** whether I have missed anything

                **(inaudible)**.

Female:         Dr. Somaraju?

Somaraju:       Yes?

Female:         **(inaudible)**

Somaraju:       Yes.

Female:         **(inaudible)** the word short on there. **(inaudible)** problem with the

                brain **(inaudible)** in the molecule. **(inaudible)** put short, I would

                have put **(inaudible)**.

Somaraju:       **(inaudible)** branches.

Female:         Right. Meaning, to me it's being clipped off. It's being, there's more

                problems e-branching, **(inaudible)**. There's a problem within the

                branching not making the chain **(inaudible)**.

Female:         You said the word short.

Somaraju:       **(inaudible)** E-branching is the **(inaudible)**.

6

# BIENENSTOCK

NATIONWIDE COURT REPORTING & VIDEO

30800 Telegraph Rd., Suite 2925
Bingham Farms, MI 48025
Tel: 248.644.8888  Fax: 248.644.1120
www.bienenstock.com

Job #: 110908GLB2
Job Date: 09/08/2011
Order Date: 09/08/2011
DB Ref.#:
Date of Loss:  / /
Your File #:
Your Client:

# Invoice

| | |
|---|---|
| **Invoice #:** | 485746 |
| **Inv.Date:** | 09/15/2011 |
| **Balance:** | $0.00 |

**Bill To:**
Steve Woodward

**Action:** **Transcription**
VS

**Action #:**
**Rep:** GLB
**Cert:**

| Item | Proceeding/Witness | Description | Units | Quantity | Amount |
|---|---|---|---|---|---|
| 1 | CD Transcription | Transcription of tapes | Pages | 6 | $24.00 |

**Comments:**

Offices in:  Bingham Farms I Ann Arbor I Detroit I Flint I Grand Rapids I Jackson I Lansing I Mt. Clemens

| | |
|---|---|
| Sub Total | $24.00 |
| Shipping | $0.00 |
| Tax | N/A |
| **Total Invoice** | $24.00 |
| Payment | $24.00 |
| **Balance Due** | $0.00 |

Federal Tax I.D.: 38-3231100

**Terms:** Net 30. After 30 1.5%/Mo or Max Legal Rate

Please KEEP THIS PART for YOUR RECORDS.

Please FOLD then TEAR HERE and RETURN THIS PART with PAYMENT.

**Bill To:**
Steve Woodward

**Deliver To:**
Steve Woodward

# Invoice

| | |
|---|---|
| **Invoice #:** | 485746 |
| **Inv.Date:** | 09/15/2011 |
| **Balance:** | $0.00 |
| **Job #:** | 110908GLB2 |
| **Job Date:** | 09/08/2011 |
| **DB Ref.#:** | |
| **Date of Loss:** | / / |
| **Your File #:** | |
| **Your Client:** | |



# BIENENSTOCK

NATIONWIDE COURT REPORTING & VIDEO

30800 Telegraph Rd., Suite 2925
Bingham Farms, MI 48025
Tel: 248.644.8888  Fax: 248.644.1120
www.bienenstock.com

**File:** Somaraju-complaining-steve-speak-questions.mp3

**1:26**

**Somaraju:** Exam time is not the time for you all to argue about the questions there is a post exam review just for that.  I'm here you're here at this time to argue about those questions only and if you convince me and if you can point out the mistake we will take it off,

**5:48**

**Somaraju:** The post exam review is for us to discuss each question.  If you have a doubt I can clarify.  If you think the question is unfair\, yes if I'm convinced that it is unfair we will take it off the questions itself we will get the extra points.

**7: 33**

**Somaraju:**  I'm sorry I've been very upset I don't know maybe I've been taking my anger out on the inappropriate group.

1

**File:** steve-v-somaraju-bacteria-debate.wav
Steven Woodward = SW
Dr. Somaraju = DS

**0:00**
**SW**: Do they multiply?

**DS:** Yes they do multiply

**SW**: What do they need to multiply

**DS:** They need, one thing is ah,

**SW**: Food

**DS**: High Dose of Antibiotics

**SW**: Food, Antibiotics to make them multiply?

**DS**: Yea,