*74.*

Case 2:10-cv-10978-PJD-MJH

## UNITED STATES DISTRICT COURT
### IN THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

Plaintiff,

V

CASE No.: 2:10-cv-10978-PJD-MJH
Judge Patrick J. Duggan

STEVEN WOODWARD,

Defendant,

**Letter to the Judge: Perjury, Falsifying My Grades, Breach of Contract, Reporting to the FBI**



FILED
2011 SEP 26 P 1:47
U.S. DISTRICT COURT CLERK
EASTERN DIST. MICH.

**Letter to the Judge: Perjury, Falsifying My Grades, Breach of Contract, Reporting to the FBI**

I need more paper to reply to these issues in more detail, mostly the amount of perjury that was committed by the Plaintiff.

**1. Perjury**

**2. Falsifying Student Grades**

**3. Breach of Contract**

**4. Reporting to the FBI**

**Perjury**

1. Neal S. Simon is President and General Counsel for a University. Neal S. Simon

signed and verified under oath document 1 complaints; Counts 1, 2, 3, and 4 are evidence

of Subonation of Perjury, False Sworn Pleadings and Conspiracy to violate my First

Amendment Civil Rights by Neal Simon, Erik Buikema and AUA.

A. Count 1- Federal Trademark/Tradename Infringement, 15 U.S.C. 1125(c)(3)

Exclusions (C) Any noncommercial use of a mark. I do not engage in commerce.

B. Count II- Infringement Under ACPA, 15 U.S.C. 1125(d)(1)(B)(IV) the person's bona

fide noncommercial or fair use of the mark in a site accessible under the domain name. I

do not traffic, profit, or use in commerce domain names.

C. Count III- Willful Violation of FERPA, Federal Law 20 U.S.C 1232(g) is only

actionable against Universities through the Department of Education. On April 19, 2010

Mr Buikema testified pg 13 "the termination of federal funding, which my client does $E1$

receive" and pg 14 "disclosing the student information could cause the federal

government to terminate funding". The Department of Education sent me this letter

"FERPA applies to educational agencies and institutions that receive Federal funds from $E2$

programs administered by the U.S. Department of Education. Based on the information

you provided, it does not appear that FERPA applies to the American University of

Antigua." D. Count IV- Defamation- They admit what I write is TRUE.

E. Document 1, 13. "As a result of his dismissal from the University, Defendant initiated $E3$

a lawsuit against its educational partner hospital Trinity-Health Michigan's St. Joseph

Mercy Hospital in Pontiac, Michigan." Neal Simon, and AUA faculty was sent an email $E4$

on December 20, 2007, Subject: Steven Woodward v. Trinity Health-Michigan

"Enclosed please find a copy of the civil action that was filed this afternoon. I would hope that this matter could be resolved without the need for costly and protracted litigation." The letter of dismissal is dated May 21, 2008, Neal Simon was copied this *E5* notice. Neal Simon has committed a known act of perjury.

F. Document 1, 21 h. and 54 h. the Plaintiff claims "AUA students are sexually assaulted" their own exhibit clearly states this is untrue that on www.aua-med.com it states "AUA student sexually assaulted!" Neal Simon as an officer of the court has committed perjury and conspires to violate my First Amendment Rights.

2. State of Michigan Court of Appeals No. 292172 LC No. 2007-088103-CZ, page 2, line *E6*

2. "sabotaging exams" in reference to memo written by Susan Zonia; deposition pg 56.

"Q: And you specifically used the word "sabotaging." How was that sabotaging? *E7*

A: Because the exams were weighted and so he would change—by not doing well it would change the distribution and so the scores he could lower the grades for everybody.

Q: So you're saying by his giving the same response he would receive a lower score that he should, therefore,--

A: Well, it would change the curve and so you could play probabilities and hope that you came out with a high enough score."

Dr Jeffrey Yanez's deposition page 35: *E8*

"Q: Dr. Zonia testified that the sabotaging exams manifested itself in throwing off the class curve. So it doesn't sound like that was the case with what you just indicated?

A: The Exam Master had a requirement for the number of questions answered. It was a learning tool the university put in place. It didn't affect their final score at all other than they had to do the questions.

4

Q: So how was that sabotaging?

A: It did not sabotage the class curve.  I'm not sure what she is referring to, but it did not sabotage the class curve."  Eric Buikema was the Defense counsel for this case.

I am now forever known in Court Public Records as a "Saboteur" because of the perjury committed by Eric Buikema, AUA, St Joseph Mercy Oakland Hospital, and Susan Zonia.

3. Oakland County Court Case No. 07-088103-CZ Opinion and Order, page 2 line 3;   E9

"Plaintiff also used the "F word" in letters and emails to school officials".  I did not write this letter and AUA knew it.  AUA Student Handbook, page 12 section: Grievances and   E10 Disciplinary Action, "AUA/KMC students are encouraged to address any academic or non-academic concerns with their Professors, Faculty Advisors or Deans."

Student Vasanth Jayaraman aka VJ, emailed me a dire letter concerning the 5th Semester program that I forwarded to Dr. Victor Hrehorovich.  This letter includes examples of violations of 20 U.S.C. 1011a and discrimination by AUA.   E11

"School has been a waste of time I feel like." , "Kaplan is comin along", "Yeah we did sign a petition", "Dr. metellus has told calderone that he aint gonna follow their orders and will do his own thing so yeah we don't have those quizzes anymore.", "So in that sense it was unfair and fortunately the hospital and Metellus both agreed and had no problems telling the NY office to fuck off", "I guess the only problem we have been causing down here is with exam master questions.  Most of us are just pickin one answer and stickin with it and doin them in under 5 min each."

4. AUA wrote "failed the fifth semester Final Exam", " received an "F" for the fifth   E12 semester", and "washed out" in Court documents, which is absolute perjury.

**Falsifying Student Grades:**

**1.** I paid "**Testing Fee**" as a separate line item on the Statement of Account from *E13*

AUA/GCLR LLC.

The NBME Shelf Exam were scheduled for the 5th Semester, but were not given.

    -The Shelf Exam is a Final Exam for semesters.

    -AUA policy is, passing the NBME Shelf Exam would ensure a passing grade for

    the course associated with that Shelf Exam.

    -The NBME Shelf Exam is a student aid for passing the United States Medical

    Licensing Examination, USMLE Step I.

**2.** The 5th Semester Course Syllabus states: **III. Evaluation and Grading.** *E14*

**A) Passing Grade Minimal Requirements, page 11**

| | |
|---|---|
| -Minimal total course grade | 75% |
| -Minimal lecture attendance | 85% |
| -Minimal practical sessions attendance | 85% |
| -Minimal Hospital lecture and other | |
|     Academic sessions attendance | 50% |
| -Minimal Out-patient sessions attendance | 90% |
| -Minimal correlation course questions | 80% (1,600) |
| -Minimal total quizzes score | 60% |
| -Minimal final written exam score | 80% |
| -Minimal final practical exam score | 80% |

**B: Components Including in Grade Calculation, page 12**

| | |
|---|---|
| -Attendance to Course lectures | 10% |

6

-Practical session reports                        5%

-Outpatient preceptor evaluation                  5%

-Verbal 2-minutes presentation of clinical cases  5%

-Portfolio                                        10%

-Quizzes                                          35%

-Final written exam                               20%

-Final practical exam                             10%

**C.** My reported grades were as follows: Attendance=100, Prac. Sen. Rept.=100, Out-   *E 15*

Patient Evl.=95, Verbal Pres. Of Cl. Cases=100, Portfolio=100, Quizzes=62, Final

Written=71(75 curve), Practical Exam=80 Final 80 include note (3).

Note (3): "Failed Final Exam. Did take remedial and failed"

**D.** Note (3) is an absolute lie:

AUA tried two electronic on-line testing applications for the 5th Semester: Exam Master

and Scholar360. Neither of these computer programs worked properly Exam Master was

replaced with Scholar360 the week prior to the final exam. Dr. Jeffrey Yanez sent an   *E 16*

email on November 30,2007 stating: "If you did not receive an e-mail form scholar360

let Deneen know today. This is the new AUA on line testing service." Dr Yanez sent an   *E 17*

email on December 5, 2007 "AUA and myself are eating a little crow. The Exam Master

results sent out last week were NOT correct." and "If you encounter a question that is

"messed up" for any reason just skip it and move on. I will give you credit for any

questions that is not complete. There may be 8 out of 800, therefore, I will give you a 1%

bonus." The Scholar360 Vocabulary section of the final exam did not grade my test,

this computer program did not work properly just like Exam Master it replaced.

Dr Yanez sent me an email on December 10, 2007, "Steve, Due to testing irregularities, *E 18*

AUA will allow you a retake on the Vocabulary section on Tuesday between 3 and 4 PM.

Please see Deneen for further details and arrangements.  Please note that the test may

look different and have new/different content?  You will need a total score of 560 out of

800 questions.  80%(640) less the 10% curve = 560."  I was guaranteed and promised a

10% curve, in multiple emails, but only received a 4% curve on the final exam.

I had to retake the Vocabulary section because the computer program did not work, NOT

because I failed the final exam as AUA stated on Note (3).

I scored an **88%** on the Vocabulary test.                                      *E 19*

I earned a Total Point Score: **568**,  I passed the final exam per the Program Director.

I passed the 5th Semester.

**3.** AUA sent the fraudulent grades to me via email and US mail after I filled a lawsuit  *E 20*

against AUA, et. al. on December 20, 2007.

**4.** AUA used these fraudulent grades in Court documents using false GPA calculations

and words such as "failed the fifth semester Final Exam", " received an "F" for the fifth

semester", and "washed out".

**5.** AUA did a similar tactic to me, and others, during the Immunology course.     *E 21*

During an Immunology Exam the Instructor gave the answers to about 20 questions(out

of 50) to the class behind those of us in the front row.  The instructor wrote the answers

to the questions on the top of an overhead projector that was ON to the monitors in the

class.

**Breach of Contract**

1. The contract: Clinical Clerkship Affiliation Agreement Between American University of Antigua College of Medicine and St. Joseph Mercy Oakland   *E22*

A. The contract states "The Hospital clerkship program will include rotations in Internal Medicine, Surgery, Family Medicine, Pediatrics, and Obstetrics and Gynecology and electives."   The syllabus states, pg 5 "Start the in-depth study of General Clinical   *E23* Sciences, including Internal Medicine, Surgery, Pediatrics, Gynecology, Obstetrics, Family Medicine and Psychiatry" and the course Guideline states, pg 9 "Clinical   *E24* Rotations are identified as follows: Rotation in hospital wards (H), Emergency Department(ED), hospital outpatient facility (HO), preceptors office(PO); Rotation in outpatient specialty services (either hospital or preceptor's office) Internal Medicine (IM), Surgery(S), Pediatrics (Ped), GYN/OB, Psychiatry(PS).  I only received two   *E25* rotations per the AUA schedule demonstrating premeditation in violation of the contract.

B. The contract states "The hospital agrees to provide support services including counseling for students."  There were no support services for me.

2. St Joseph Mercy Oakland Policy states "Other key component include education an training, auditing and monitoring of Trinity Health business activities, and mechanisms   *E26* that allow associates, medical staff, vendors and other business partners to raise issues and concerns so they may be dealt with timely and appropriately." Susan Zonia sent me the Memo she wrote, per AUA's request, on December 17, 2007.  I was only in the hospital on Fridays (for 1/2 day lectures only per the schedule) the entire month of November and only to take the Final Exam, and drop off homework, pager and badge in December.

3. The AUA Student Handbook states, pg 25 "The University adheres to the mandates of *E10.3*

the United States Family Educational Rights and Privacy Act(FERPA). AUA disclosed

the student records not me. AUA refuses to give me my own student records violating

Federal Rule 34 and Michigan State Law Case Parraway v. Andrews University 50 BR

316 "Accordingly, an order will be entered ordering Defendant to release Plaintiffs'

academic transcripts upon payment of the customary processing fees" I owe AUA

nothing, where are my records! AUA's refusal to release my records clearly

demonstrates their lack of Due Process. Each Committee Meeting AUA initiated is a

violation 20 U.S.C. 1011a and the AUA Student Handbook policy "AUA/KMC students

are encouraged to address any academic or non-academic concerns with their Professors,

Faculty Advisors or Deans."

A. Committee 3, AUA told Susan Zonia to write a memo against me ,not as alleged in the *E27*

notice, for emails I sent the faculty concerning major problems with the 5th Semester

program. The notice states "No recording devices, no legal council" violating Due *E28*

Process and AUA Student Handbook, pg 12," The student has the right to counsel and to *E10.2*

present witnesses and documentary evidence."

B. Committee 2, AUA refused to give me the formal charges against me. The class *E29*

President, Je'Nelle Henderson wrote me "I do agree with everything that you have stated. *E30* *E31*

4th semester classes were brought up at a student representative meeting. I will do all I

can when it comes to path because I do believe that the testing was unfair."

C. Committee 1, I was denied to hear witnesses, denied cross-examination of witnesses, *E32*

and denied production of evidence; the recording of the class in question. I initiated a *E21*

formal complaint against Dr Somaraju and for that AUA initiated a Grievance Committee

Meeting against me.  Dr Somaraju stated "Exam time is not the time for you all to argue about the questions there is a post exam review for that.  I'm here you're here at this time to argue about those questions", "I don't know maybe I've been taking my anger out on the inappropriate group" , and "High Dose of Antibiotics" concerning the multiplication of bacteria in the intestine.  The purpose of the class was to debate questions from the previous exam.  Antibiotics do not make bacteria grow!

4. Federal Law 20 U.S.C. 1011a guarantees fairness in Higher Education programs and AUA Student Handbook confirm anti-discrimination rules page 25.

A. The 5th Semester computer testing programs, ExamMaster and Scholar360, failed to work properly.  The class (myself included) was promised a 10% curve for the Final Exam, but was only given a 4% curve(one student received a 5% curve) and the passing score was 560 for the Final Exam, I earned a 568.

B. Per the class syllabus I should have passed the 5th Semester, but was failed while others passed failing syllabus requirements.

C. I was written-up for the desire to study Kaplan and for the Board exams, AUA accommodated other students so they could study Kaplan and the Board exams.

D. I was written-up for failure to answer "pages" to see if I was In-house.  There was NO *E33* grading or disciplinary definition for the use of pagers.  It is correct that I was not In-house when paged; I was at an Out-patient family practice clinic per the 5th Semester Schedule defined by AUA and St Joseph Mercy Oakland Hospital.

5. AUA informed the Educational Commission For Foreign Medical Graduates, ECFMG, *E34* on May 6, 2008 "This is to inform you that Steven Woodward is no longer at the American University of Antigua." I was not dismissed until May 21, 2008. *E5*

11

**Reporting to the FBI**

1. I have included this information in Dockets 51, 56, 109, 118, 120, 130, and 139 of Case 2:10-cv-10978. I believe I was an unknowing participant in a loan fraud scheme designed by the Greater Caribbean Learning Resources GCLR, incorporated in New York, NY, Kasturba Medical College, and the American University of Antigua, AUA. I reported this to the FBI due to potential accessory violations by myself and other students. Starting on about 2006 I witnessed myself and other students follow instructions from the financial aid department, of AUA, for filing student loan applications. AUA and GCLR managed the distribution of these loans. I contacted SallieMae on about March 2010 requesting information concerning the loans and was *E 35* sent copies of NellieMae Loan Certificates. The NellieMae Loan Certificates have NO reference of the AUA are signed by Sevrine Barrie, Dean of Registrarial and Student Services for AUA. The financial aid office: Kasturba Medical College, PO Box 8 Manipal 576 119 Karnataka India, FC 576104 are on the loan certificates. I requested more information and had conversations with SallieMae, I received a letter signed by Devine Hewitt, Office of the Customer Advocate, dated October 13, 2010; the letter *E 36* states:

**"This letter is in response to your inquiry requesting assistance with an issue you are having with St Joseph Mercy Oakland Hospital and The American University of Antigua. I have researched your account and have confirmed that you have three Excel Grad Loans that are serviced by SallieMae. These loans were borrowed to finance your attendance at Kasturba Medical College; not American University of Antigua."** I tried to gather more information from SallieMae, and through motions, but have been denied. Devine Hewitt closed my case stating **"I wont be able to be anymore**

assistance to you in this matter I wont be able to give you any information if we did have any contracts with those schools".

**2.** I paid for Student Insurance policy from AUA managed by GCLR.

The Clinical Clerkship Affiliation Agreement between American University of Antigua College of Medicine and St Joseph Mercy-Oakland clearly states on page 3/6 **"The college, at its own expense, must also maintain a Student Accident and Health Insurance policy".** On page 5/6 the contract states **"The hospital agrees to provide support services including counseling for students".**

The 5th Semester Syllabus clearly states on page 13 **"B. Academic Counseling Course Directors (Miami, Baltimore, Pontiac)  Dr. Jeffrey Yanez, MD for Ponitaic Dr. Jorge E Calderon, Dean, Clinical Sciences Dr. Victor Hrehorovich, Vice Chancellor and Executive Dean, AUA**

E37

**C. Psychological Support**

**The aforementioned faculty is available to provide psychological support and make referrals to specialists"**

**(A)**On or about October 16, 2007 two students and myself were told to observe a medical procedure of a patient.  The doctor did not tell us until after the procedure that we would be exposed to respiratory particles and patient infection and should have been protected. The patient was positively diagnosed with a dangerous respiratory infection and deadly illness.  I gave this information to the faculty of AUA.  I did not received information or received an examination for the infection concerning this exposure.

**(B)** According to Mayo Clinic research **10%** of medical students contemplate suicide and **50%** of medical students suffer from **"Burnout".**

Student Burnout Symptoms include: depression, negative or cynical toward work, the

whole school, achievement, approaches assignments with resignation or resentment and

overreacts to normal concerns or events.  Dr. Yanez used throughout his deposition these

words to describe me:"Did not have the ability to cope", "his little episodes",

"grandstanding", "these behaviors", "they were episodic", "he would literally go on a

little tirade", "he didn't seem to be able to control his emotions" and "dealing with a

child".  Dr Yanez was asked:

**Q: Did you ever document the fact that you thought that he was disrupting the**

**class?**

**A: It is not documented on paper.**

**Q: And it's fair for me to assume you never notified AUA that any of that might be**

**necessary in terms of psychological help or anything like that?**

**A: I did not.**  Dr Yanez violated Trinity Health policy, my safety, and health care

contract by not dealing with these issues in a timely fashion; if this is what he truly felt,

this is a lie(perjury) there was no grandstanding, episodes, NOTHING Documented.

(C) AUA's partner St Joseph Mercy Oakland paid $4 million, reported in The

 Department of Justice Healthcare Fraud and Abuse Control Program, page 20.

3. AUA falsified my student grades

The FBI investigates: financial aid fraud, wire fraud, health insurance fraud, student

personal fraud, student grade fraud, campus safety, and personal fraud, and OSHA

violations.   Some FBI programs and partnerships include College and University

Security Effort(CAUSE) and National Security Higher Education Advisory Board,

NSHEAB

14

**List of Exhibits:**

E1: April 19, 2010 Hearing Transcript
E2: Letter from United States Dept of Ed.
E3: Docket 1 Claims
E4: Email Paul Nicoletti – Civil Action Notification and Docket 1 December 20, 2007
E5: Notice of Dismissal May 21, 2008
E6: State of Michigan Court of Appeals Order
E7: Deposition of Susan Zonia
E8: Deposition of Jeffrey Yanez
E9: Oakland County Circuit Court Order, page 2
E10: AUA Student Handbook
E11: Email from Vasanth Jayaraman and Email to V. Hrehorovich
E12: Oakland Circuit Court documents from AUA, Trinity Health St Joseph and Zonia
E13: Statement of Account
E14: Course Syllabus for 5th Semester, pg 11 and 12
E15: 5th Semester Final Grades
E16: Email from Jeffrey Yanez, Nov. 30, 2007
E17: Email from Jeffrey Yanez Dec. 05, 2007
E18: Email from Jeffrey Yanez Dec. 10, 2007
E19: Scholar360 5th Semester Final Exam Grades
E20: Steven Woodward's Transcripts from AUA mail and email
E21: Email to Neal Simon via Karen Kowit
E22: Clinical Clerkship Affiliation Agreement between AUA and S.J.M.O.
E23: 5th Semester Syllabus, Rotations, pg5
E24: 5th Semester Course Guideline, Rotations, pg 9
E25: 5th Semester Schedule of Clinical Rotations
E26: Trinity Health Policy
E27: Memo from Susan Zonia
E28: Notice of Grievance Committee hearing, Dec. 19, 2007
E29: Grievance and Disciplinary Committee Hearing notice, Aug. 1, 2007
E30: Email to Committee Chair Request for Charges, Aug. 6, 2007
E31: Email from class rep JeNelle Henderson
E32: Email to Peter Bell, request for Formal Complaint, Dr. Somaraju
E33: Email for record pager
E34: Email from Sevrine Barrie, ECFMG
E35: Nellie Mae Loan Certificates
E36: SallieMae Letter Devin Hewitt
E37: 5th Semester Syllabus Academic Counseling
E38: Deposition of Jeffrey Yanez,

Steven Woodward
7211 Brittwood Ln
Flint, MI 48507
(810)235-7267

15

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY
Argument By Mr. Buikema                    13
Monday/April 19, 2010

1   claim which is, "Willful violation of Family

2   Educational Rights and Privacy Act"?

3       MR. BUIKEMA:  Correct.

4       THE COURT:  I'm reading from your brief, "The

5   Family Educational Rights and Privacy Act of 1974

6   prohibits the federal funding of educational

7   institutions that have a policy of practice of

8   releasing education records without authorized

9   persons."  What's that got to do with this case?

10      MR. BUIKEMA:  In my view, Your Honor, it's a

11  wrongful act predicate to a tortious interference

12  claim.  And perhaps that's not made as clear as it

13  should be by our pleadings but that's how I regard this

14  claim.

15      FERPA prohibits disclosures of students'

16  information by the University itself.  And has, as

17  consequence, the termination of federal funding, which

18  my client does receive and some of the students receive

19  benefits under that provision.

20      It's my view that Mr. Woodward's conduct in

21  disclosing student information grades, which he admits

22  to doing and, in fact, has muddied this record by

23  attaching yet more of that information, creates

24  standing to my client -- gives standing to my client

25  the challenge on behalf of its students.

*10-10978; American University of Antigua v. Steven Woodward*

E1
1

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

**Argument By Mr. Buikema**
Monday/April 19, 2010

14

1          But more importantly --

2          THE COURT:  Why, he's not an agent of the

3    university in any way, shape or form?

4          MR. BUIKEMA:  But we are an agent of our students

5    whose information has been --

6          THE COURT:  But this prohibits the University from

7    doing it.  How could you possibly argue that the

8    University is doing it, when they're not?

9          MR. BUIKEMA:  I'm not sure I understand Your

10   Honor's question.

11         THE COURT:  It says, "It prohibits federal funding

12   of educational institutions who have a policy or

13   practice."  You don't contend the education has a

14   policy or practice, do you?

15         MR. BUIKEMA:  I do not contend that it has a

16   policy or practice.  But Mr. Woodward's actions in

17   disclosing the student information could cause the

18   federal government to terminate funding --

19         THE COURT:  How could that be a policy or practice

20   of the University?  How would anyone ever believe his

21   conduct is a practice or policy of the University?

22         MR. BUIKEMA:  I'd rather not find out, frankly,

23   Your Honor.

24         THE COURT:  It's just ridiculous.  I don't know

25   why you're arguing that.  His conduct can't be

*10-10978; American University of Antigua v. Steven Woodward*

Federal Funding

FERPA

2



**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE OF MANAGEMENT

Mr. Steven Woodward
7211 Brittwood Lane
Flint, Michigan 48507

SEP 20 2011

Dear Mr. Woodward:

This is to respond to your August 26, 2011, complaint form to this office in which you allege that rights afforded you under the Family Educational Rights and Privacy Act (FERPA) were violated by the American University of Antigua when it did not provide you access to your education records.  This office administers FERPA, which addresses issues pertaining to education records.

FERPA is a Federal law that gives a student the right to have access to his or her education records, the right to seek to have the records amended, and the right to have some control over the disclosure of information from the records.  The term "education records" is defined as those records directly related to a student and maintained by an educational agency or institution or by a party acting for the agency or institution.  Enclosed is a copy of the FERPA fact sheet.

FERPA applies to educational agencies and institutions that receive Federal funds from programs administered by the U.S. Department of Education.  Based on the information you provided, it does not appear that FERPA applies to the American University of Antigua.  Accordingly, this office is unable to assist you in this matter.

Sincerely,

Bernard Cieplak
Program Analyst
Family Policy Compliance Office

Enclosure

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-4500
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*



## GENERAL ALLEGATIONS

8.      AUA is a foreign medical school catering, in part, to students from the United States including Michigan.

9.      AUA regularly places and directs students in clinical education in association with Michigan hospitals.

10.     Defendant Steven Woodward is a former student of AUA.

11.     As a result of misconduct, Defendant was discharged from AUA without completion of his degree.

12.     That is, Defendant is a disgruntled former student of AUA.

13.     As a result of his dismissal from the University, Defendant initiated a lawsuit against AUA and its educational partner hospital Trinity-Health Michigan's St. Joseph Mercy Hospital in Pontiac, Michigan.

14.     The lawsuit was filed in the Oakland County Circuit Court on or about December 20, 2007, where it was known as Case No. 07-088103-CZ and assigned to the Honorable Shalina Kumar.

15.     In the suit, Mr. Woodward alleged that AUA and/or Trinity slandered him, intentionally inflicted emotional distress, tortiously interfered with a contractual relationship, invaded a right to privacy and breached a contract.

16.     The court concluded that Mr. Woodward's allegations were baseless and granted AUA summary disposition of the same on June 30, 2008.  The court similarly granted summary disposition to Trinity on April 29, 2009 finding, on the merits, that the claimed defamatory remarks as to Woodward's misconduct were actually, in fact, true.

E3

1

h.   AUA students are sexually assaulted;

i.   AUA professors teach students wrong information;

j.   AUA conspires to commit fraud and violations of civil rights;

k.   AUA commits criminal activities reportable to the FBI;

l.   AUA student pass rate for USMLE medical board exams is only 22.9%;

m.   AUA contrives false evidence in student disciplinary proceedings (i.e, the hearing Mr. Woodward was provided prior to dismissal and refused to even attend);

n.   AUA colluded with St. Joseph Hospital to maliciously end Mr. Woodward's career, conspired, abused its power, committed perjury and is otherwise immoral and unethical;

o.   AUA agents are liars;

p.   The locality of AUA is full of "rape, murder, fraud, and government corruption."

22.   Defendant's website further publishes, in a manner not repeated here, and without consent of the university or its affected students, other students' identities and personal information including grades and academic information.

22.   In that Plaintiff utilizes its own website to market and provide useful information to prospective students, AUA suffers irreparable injury and harm to its reputation each day that Mr. Woodward's appalling site is permitted to remain available.

23.   Moreover, irreparable injury to AUA and its affected students occurs, for which there is not an adequate remedy at law, by virtue of Mr. Woodward's unsanctioned and unauthorized publication of federally protected private academic information.

b.     AUA falsifies its students grades;

c.     AUA breaches contracts;

d.     AUA disregards student civil rights;

e.     AUA conspires against its students;

f.     AUA pursues unspecified and other unethical practices;

g.     AUA has "malicious intensions" and administration and academic advisors of a "heinous nature";

h.     AUA students are sexually assaulted;

i.     AUA professors teach students wrong information;

j.     AUA conspires to commit fraud and violations of civil rights;

k.     AUA commits criminal activities reportable to the FBI;

l.     AUA student pass rate for USMLE medical board exams is only 22.9%;

m.     AUA contrives false evidence in student disciplinary proceedings (i.e, the hearing Mr. Woodward was provided prior to dismissal and refused to even attend);

n.     AUA colluded with St. Joseph Hospital to maliciously end Mr. Woodward's career, conspired, abused its power, committed perjury and is otherwise immoral and unethical;

o.     AUA agents are liars;

p.     The locality of AUA is full of "rape, murder, fraud, and government corruption."

55.     Each and every one of these "facts" is false.

Being First duly sworn:

I, Neil Simon, am an officer of the American University of Antigua and its general counsel. I have personal knowledge of the facts set forth in this complaint and, having read the same, I hereby attest that each and every allegation contained herein is true to the best of my knowledge, information and belief.

_____
Neil Simon
Its: President

Subscribed and sworn to before me this
_____ day of _____, 2010

_____
Notary Public
My commission expires:

LEONARD A. SCLAFANI
Notary Public, State of New York
No. 02SC6120579
Qualified in Westchester County
Commission Expires December 28, 20__

12

**Subject:**    Steven Woodward v. Trinity Health-Michigan

**From:**    Paul J. Nicoletti (paul@nicoletti-associates.com)

**To:**    billcain@comcast.net; steve_l_woodward@yahoo.com; yanezj@trinity-health.org; nssimon@auamed.org; vhrehorovich@auamed.org; zonias@trinity-health.org;

**Date:**    Thursday, December 20, 2007 5:22 PM

Enclosed please find a copy of the civil action that was filed this afternoon. I would hope that this matter could be resolved without the need for costly and protracted litigation.

NICOLETTI & ASSOCIATES, P.C.
Paul J. Nicoletti
39520 Woodward Avenue, Suite 200
Bloomfield Hills, Michigan 48304
(248) 203-7800
Fax (248) 203-7801

* * * * * * * * * *

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the Internal Revenue Service, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any person for the purpose of (i) avoiding tax-related penalties or (ii) promoting, marketing or recommending to another person any transaction or matter addressed in this communication.

* * * * * * * * * *

The information contained in this message is intended only for the personal and confidential use of the designated recipients named above. This message may be an attorney-client communication, and as such would be privileged and confidential. If the reader of this message is not the intended recipient or any agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and destroy the original message. Thank you.

No virus found in this outgoing message.
Checked by AVG.



E 4
1

Approved, SCAO

| | | |
|---|---|---|
| **STATE OF MICHIGAN**<br>6th | **JUDICIAL**<br>**JUDICIAL CIRCUIT**<br>**COUNTY PROBATE** | **SUMMONS AND COMPLAINT** |

Original - Court
1st copy - Defendant

2nd copy - Plaintiff

OAKLAND COUNTY  07-088103-CZ

JUDGE SHALINA KUMAR

WOODWARD,STEV v TRINITY HEALT

**Court address**
1200 N. Telegraph Rd., Pontiac, MI 48341

| **Plaintiff name(s), address(es) and telephone no(s).** | | **Defendant name(s), address(es), and telephone no(s).** |
|---|---|---|
| STEVEN WOODWARD | v | TRINITY HEALTH-MICHIGAN<br>Resident Agent, Daniel Hale<br>27870 Cabot Drive, Novi, MI 48377 |
| **Plaintiff attorney, bar no., address, and telephone no.**<br>NICOLETTI & ASSOCIATES, P.C.<br>Paul J. Nicoletti P44419<br>39520 Woodward Ave., Ste 200<br>Bloomfield Hills, MI 48304<br>(248) 203-7800<br>(248) 203-2968 Fax | | SUSAN CATHERINE ZONIA<br>25845 Lochmoor Lane<br>Novi, MI 48374<br><br>AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE<br>2 Wall Street, 10th Floor<br>New York, NY 10005 |

**SUMMONS**   **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan, you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file an answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). MCR 2.111(C)
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued **DEC 20 2007** | This summons expires **MAR 2 0 2008** | Court clerk **RUTH JOHNSON** |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

**Family Division Cases**
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**
☒ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.
The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**VENUE**

| **Plaintiff(s) residence (include city, township, or village)**<br>Flint, Michigan | **Defendant(s) residence (include city, township, or village)**<br>Pontiac, Michigan |
|---|---|
| **Place where action arose or business conducted**<br>Pontiac, Michigan | |
| 12/20/07<br>Date | Signature of attorney/plaintiff  Paul J. Nicoletti P44419 |

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (3/06) **SUMMONS AND COMPLAINT**      MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

2



**AMERICAN UNIVERSITY OF ANTIGUA**
**COLLEGE OF MEDICINE**

Friar's Hill Road
P.O. Box W - 1451
St. John's, Antigua, West Indies
Telephone: 268 - 481 - 8888
Fax: 268 - 481 - 8880
Website: www.auamed.org

May 21st, 2008

Mr. Steven Woodward
7211 Brittwood Lane
Flint, Michigan 48507

Dear Mr. Woodward:

On December 19, 2007, a grievance hearing was held based on allegations made against you by American University of Antigua, College of Medicine, Professor Susan Catherine Zona and Trinity Health-Michigan. You were provided with notice of the Grievance and Disciplinary Committee hearing and given the opportunity to testify at the hearing and to provide evidence on your behalf and in your defense which you declined to do.

The Grievance Committee investigated the allegations that you behaved inappropriately, unprofessionally and in a manner not befitting that of a physician during the course of your V Semester studies at Trinity Health-Michigan and, after considering all of the evidence presented, found that your behavior during your V Semester studies was disrespectful and unprofessional. As a result, the Committee recommended that you be dismissed from the University and that, should you apply for re-admission at some future date, the re-admission procedure should include a full review of the Committee's recommendation and the evidence considered at the hearing.

After reviewing the Committee's report, I do agree with its findings. I view your actions as highly unprofessional and improper. Your behavior showed clearly that you failed to live up to the high standards of professional conduct of our profession. I also considered that the finding of the Grievance Committee was not the first such finding rendered against you by a Grievance Committee of the University; a Grievance Committee empaneled in October, 2006 had previously found that you had acted rudely, unprofessionally in an improper manner to one of your professors, among other wrongful acts, as a result of which you were placed on non-academic probation for the Fall semester 2006 and Spring semester 2007 and were required to seek counseling (anger management).

Guided by the forgoing, I have decided to accept the recommendation of the Grievance Committee and hereby notify you that:

1. you are forthwith dismissed from American University of Antigua College of Medicine.

Head office:
#2 Wall Street. 10th Floor, New York, NY 10005
Telephone: 1-212-661-8899     Fax: 1-212-661-8864
http://www.auamed.org





E5.

2. Should you apply for re-admission to the University at some future date, the re-admission procedure should include a full review of the Committee's recommendation and the evidence considered by the Committee at its hearing.

You may appeal this decision in writing to the President of the University within 14 days of your receipt of this letter. Should you so appeal, you will have the right to counsel and to present witnesses and documentary evidence and your appeal will be heard by the President and at least one other non-involved member of the University's administration in accordance with the University's Rules and Regulations as set forth in its Student's Handbook, a copy of which you had acknowledged in writing that you received.

Very truly yours,

Dr. med. Peter Bell
**Vice President Academic Affairs and Executive Dean**

cc:     Neal Simon, President
        AUA, College of Medicine

        William Cain, Ph.D.
        Chair Grievance and Disciplinary Committee

        Ernesto Calderon, MD

2

# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN WOODWARD,

    Plaintiff-Appellant,

v

TRINITY HEALTH-MICHIGAN, SUSAN
CATHERINE ZONIA and AMERICAN
UNIVERSITY OF ANTIGUA COLLEGE OF
MEDICINE,

    Defendants-Appellees.

UNPUBLISHED
January 13, 2011

No.  292172
Oakland Circuit Court
LC No.  2007-088103-CZ

Before:  GLEICHER, P.J., and ZAHRA and K.F. KELLY, JJ.

PER CURIAM.

Steven Woodward appeals as of right the trial court's grant of summary disposition to Trinity Health-Michigan, Susan Catherine Zonia, and the American University of Antigua College of Medicine (AUA).  We affirm.

Woodward was a medical student in his fifth semester of study at AUA.  As part of the medical school program, AUA placed Woodward in a clinical experience rotation at St. Joseph Mercy Oakland Hospital (SJMO), which is owned and operated by Trinity Health-Michigan (Trinity).  Zonia served as the director of medical education at SJMO, and as a dean for AUA's program at that site.  Zonia's duties included oversight of AUA's fifth semester program at SJMO, and the evaluation of student performance.  This lawsuit arises from a memorandum authored by Zonia and forwarded to Dr. Ernesto Calderon, an AUA administrator, at Calderon's request.   The memorandum described concerns regarding Woodward's demeanor and unprofessional conduct while at SJMO, stating in pertinent part:

> Mr. Woodward's lack of professionalism and poor communication skills are a source of great concern.  We do not feel that he will be a good ambassador for AUA, our hospital, or the profession he is to enter.  We encourage the faculty at AUA to review his entire record, to determine if he does not meet the qualifications to sit for the boards, and begin clinical rotations.

The record documents numerous specific examples of Woodward's inappropriate conduct while at SJMO, including his demonstrated resentment of assignments, his completion of 100 patient logs in a mere two-week period accompanied by an indication that he did not wish

-1-



to participate further in the program, statements that the program constituted a waste of time and that he wished to transfer, "sabotaging exams," use of inappropriate language and passwords in communications with AUA, and general lack of respect and disruptive behavior while in classroom settings.  Before participating in the SJMO program, Woodward had been placed on non-academic probation at AUA for unprofessional conduct.  Woodward's academic performance was also tenuous, as he maintained only a 1.5 grade-point average.  Ultimately, AUA initiated proceedings before its grievance and disciplinary committee, and Woodward was dismissed from the medical school.  Despite receiving notice of the hearing and having an option to appeal the grievance and disciplinary committee's dismissal recommendation, Woodward elected to not attend the hearing or to pursue any administrative remedies.

Woodward filed a complaint against AUA, setting forth claims for breach of contract and an unspecified invasion of privacy.  Additionally, Woodward's complaint asserted claims against Trinity and Zonia for libel per se, intentional infliction of emotional distress based on the alleged libel, and tortious interference with a contractual relationship.  AUA filed a motion for summary disposition pursuant to MCR 2.116(C)(8), contending that Woodward had failed to state a claim on which relief could be granted.  The trial court granted AUA's subrule (C)(8) motion, rejecting Woodward's contract claim.  The trial court also dismissed Woodward's invasion of privacy claim against AUA, finding that Zonia's memorandum had not been publically published.  Although the trial court afforded Woodward an opportunity to amend his complaint, he failed to timely submit an amended complaint to the court, or to serve it.

Following discovery, Zonia and Trinity sought summary disposition in accordance with MCR 2.116(C)(10), contending that no genuine issue of material fact existed concerning any of Woodward's remaining claims.  The trial court granted defendants' motion, and Woodward now appeals.

This Court reviews de novo the grant or denial of summary disposition.  *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007).  A motion brought in accordance with MCR 2.116(C)(8) tests the legal sufficiency of the pleadings, which are considered alone and without any additional evidence.  *Johnson-McIntosh v Detroit*, 266 Mich App 318, 322; 701 NW2d 179 (2005); MCR 2.116(G)(5).  In contrast, a motion brought in accordance with MCR 2.116(C)(10) tests the factual support for a claim and is to be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *The Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 56; 744 NW2d 174 (2007).  "A genuine issue of material fact exists when the record, after drawing all reasonable inferences in favor of the nonmoving party, leaves open an issue on which reasonable minds could differ."  *Id.*

Woodward first contends that because defendants failed to plead affirmative defenses, the trial court erred by granting summary disposition in their favor.  We find this argument utterly without merit.  Fundamentally, Woodward misapprehends the procedural distinction between motions for summary disposition and the pleading of affirmative defenses.  Contrary to his allegations on appeal, the trial court granted summary disposition based on Woodward's failure to state a viable claim against AUA, and the absence of a genuine issue of material fact with regard to the claims pertaining to Trinity and Zonia.  The failure of these defendants to plead various affirmative defenses did not shift the burden of proof, and lacked any relevance to the disposition of Woodward's claims.   This Court has explained:

Zoila

Q    And that's what Dr. Yanez told you?

A    Correct.

Q    But did you ever verify that that was true?

A    I looked at the logs and knew it wasn't possible.

Q    So your answer is, "yes," you did verify it?

A    Yes.

Q    Your memo says "Sabotaging exams by giving the same response to all questions to simply get it over with." Is that your comment or is that based on something that you were told by one of the instructors?

A    It's what I was told by one of the instructors. It's what the school told me, and it's what Mr. Woodward told me he did was because he thinks the exams are a waste of time.

Q    And you specifically used the word "sabotaging." How was that sabotaging?

A    Because the exams were weighted and so he would change -- by not doing well it would change the distribution and so the scores he could lower the grades for everybody.

Q    So you're saying by his giving the same response he would receive a lower score than he should, therefore, --

A    Well, it would change the curve and so you could just play probabilities and hope that you came out with a high enough score.

Q    So it wasn't sabotaging the exam. It was sabotaging the grades from

E7

*Yancz*

Master that you're familiar with online questions that the university scheduled and it was relayed to us from the university that he was basically answering "B" to all questions just to get them done.  The score on the exam didn't matter.  They had to complete so many questions in the semester to get credit and rather than actually do the questions he just marked "B" down for all them and, you know, did the three-hour exam in ten minutes.

Q    Dr. Zonia testified that the sabotaging exams manifested itself in throwing off the class curve.  So it doesn't sound like that was the case with what you just indicated?

A    The Exam Master had a requirement for the number of questions answered.  It was a learning tool the university put in place.  It didn't affect their final score at all other than they had to do the questions.

Q    So how was that sabotaging?

A    It did not sabotage the class curve.  I'm not sure what she is referring to, but it did not sabotage the class curve.

Q    Did it sabotage the exam?

A    Which exam?

Q    Whichever exam she mentions in her --

A    It didn't have any affect on the quizzes that AUA offered.  They call them quizzes on this exhibit.  So here exam, quizzes, tests, all the same thing.  Exam Master was a completely separate entity.

Q    You're referring to Exhibit 11?

Παγε 35

**E8**

from AUA who had three years of experience prior to his 5th semester at AUA. Plaintiff was cited for unprofessional conduct and used the word "AUSUCKS" as his master program password. Plaintiff also used the "F word" in letters and emails to school officials. In addition, school officials have stated that Plaintiff would "grandstand" and was disruptive during class. During a review exam, Plaintiff used the answer "B" to all questions in order to complete the exam in 10 minutes. Previously, on November 2, 2006, Mr. Woodward was placed on non-academic probation for engaging in inappropriate behavior against one of his professors, Dr. Somaraju of AUA. **(See Exh. 3 – Defendant's Motion for Summary Disposition)**. Mr. Woodward was encouraged to seek counseling for anger management at that time.

Despite the evidence of unprofessional behavior, Plaintiff claims that he was defamed when Defendant, Susan Zonia, PHD, wrote to Dr. Ernesto Calderon of AUA wherein she stated:

> "Mr. Woodward's lack of professionalism and poor communication skills are a source of great concern. We do not feel that he will be a good ambassador for AUA, our hospital, or the profession he is to enter. We encourage the faculty at AUA to review his entire record, to determine if he does not meet the qualifications to sit for the boards, and begin clinical rotations." (Exh. 1 Defendant's motion for summary disposition).

Plaintiff claims that he was dismissed from the AUA medical school program due to this letter and, therefore, this lawsuit followed.

Plaintiff alleges in his complaint that Defendants communicated false statements to AUA about Plaintiff's unprofessional behavior. Plaintiff also alleges that Defendants, Trinity and Dr. Zonia interfered with his contractual

2

E9

# AMERICAN UNIVERSITY of ANTIGUA

# COLLEGE of MEDICINE

# STUDENT HANDBOOK



**T**he Student Handbook is published by the American University of Antigua College of Medicine for the students in the College of Medicine.

The rules and regulations outlined here are binding and must be adhered to by all AUA/KMC students, including those on leave.  The rules and regulations of this institution are reviewed and revised periodically.   Students are expected to be familiar with the most recent revisions of all AUA/KMC manuals and publications.

*E10*

1

A student may withdraw before the second week of a semester without academic consequences.

In exceptional circumstances, determined on a case-by-case basis, the Promotions Committee reserves the right to allow a student to continue at the University while on probation, even if the student has not met all of the above requirements. **In such circumstances, however, the student may be ineligible for financial aid.**

# GRIEVANCES and DISCIPLINARY ACTION

The University's policies regarding disciplinary action apply to non-academic matters. Disciplinary actions may include, but are not limited to, verbal reprimand, written reprimand, required restitution, and suspension or expulsion from the University.

AUA/KMC students are encouraged to address any academic or non-academic concerns with their Professors, Faculty Advisors or Deans.

The Grievance and Disciplinary Committee is composed of faculty and student representatives. It is the investigative and judicial arm of the Dean's Office. The Grievance and Disciplinary Committee has authority over all matters referred by the Dean, the Dean of Student Affairs, the Student Government Association, students, and faculty. The Dean reviews the decisions and issues a final determination to the Grievance and Disciplinary Committee that is forwarded to the President.

A student may appeal any recommendation of suspension or dismissal authorized by the Grievance and Disciplinary Committee and executed by the Dean. The student must give written notice of intent to appeal the Committee's decision to the President's Office within ten days of receiving a decision.

The student has the right to counsel and to present witnesses and documentary evidence. The President and at least one other non-involved member of the administration will hear the appeal.

The three part appeal process is as follows:

- The written appeal must be received by the President's office no later than 14 days after receipt of the notice to appeal.

- The appeal must be heard within 2 weeks after receipt of the written appeal.

- The decision on the appeal will be communicated to the student in writing within one week after the final decision has been made by the President.

# PROFESSIONAL CONDUCT and ETHICAL BEHAVIOR

It is incumbent upon each student at the University to maintain the highest level of ethics and morals, and to conduct himself in a manner befitting a physician.

# POLICY of NON-DISCRIMINATION

The University does not discriminate nor does it condone harassment based upon race, creed, ethnicity, religion, gender, national origin, age, disability, sexual orientation or any other characteristic protected by law.

This applies to all students and employees (faculty and staff) on the AUA/KMC premises as well as during AUA/KMC sponsored events.

Sexual harassment, defined as non-gender specific, is subject to disciplinary action, and includes the following:

    i. Harassment of women by men, men by women, or persons of the same gender;

    ii. Unwelcome sexual advances;

    iii. Requests for sexual favors and sexual displays of any kind;

    iv. Inappropriate sexual behavior or verbal abuse that is sexually based and offensive in nature.

# PRIVACY RIGHTS

The University adheres to the mandates of the United States Family Educational Rights and Privacy Act (FERPA):

1. The student has the right to inspect and review his educational record within 45 days of the University's receiving a written request for access. Students must submit this written request to the Dean of Student Services identifying the records they wish to inspect. The Dean of Student Services will notify the student of the time and place where the record may be inspected.

2. Students have the right to request the amendment of their educational records. Students may write to the Dean of Student Services to identify the part of the record they wish to have corrected and specify why it is inaccurate.

3. If the University decides not to make the requested amendment it notifies the student and advises the student of her right to a hearing. The University provides additional information about the hearing with the notification.

4. The student has the right to consent to disclosures of personally identifiable information contained in his educational record, except to the extent that FERPA authorizes disclosure without consent.

One exception is disclosure to school officials with legitimate educational interest. A school official is a person employed by the University in an administrative, supervisory, academic, research or support position (including law enforcement personnel and health staff); a person or company with whom the University has contracted (such as an attorney, auditor, or collection

**3**

Print - Close Window

**Subject:Re: 5th Semester**
**From:**  Vasanth Jayaraman (vmjayara@gmail.com)
**To:**    steve_l_woodward@yahoo.com;
**Date:**  Sat, 27 Oct 2007 20:41:51

**Hey Steve,**

School has been a waste of time i feel like. Goin to hospital has been fun some weeks and pointless
other weeks. Kaplan is comin along. It has been pretty crazy learning biochem in about a week and
now we are doin anatomy and will be starting physio on thursday. Well i dont know what you mean if
the hospital has been helpful but when we get sent home after like an hour everyday cuz there is
nothin to do in that department then i guess it is beneficial. Yeah we did sign a petition to stop the
whole standardizing of programs and now dr. metellus has told calderon that he aint gonna follow their
orders and will do his own thing so yeah we dont have those quizzes anymore. But it was more than
just the quizzes cuz the school wanted to implement a whole new program like two weeks ago. I mean
how on earth does someone try to do that. So in that sense it was unfair and fortunately the Hospital
and Metellus both agreed and had no problems tellin the NY office to fuck off. Ok about the last thing
you said i dont know who you are talkin to but thats total bullshit. I wanna crack up after i read that.
All i know is if they got rid of miami then AUA would be fuckin themselves over with the next
semester comin along. I mean their class is twice the size of ours and the michigan and maryland
programs cant hold all those students. I guess the only problem we have been causing down here is
with the exam master questions. Most of us are just pickin one answer and stickin with it and doin
them in under 5 mins each.

On 10/27/07, **Steve Woodward** <steve_l_woodward@yahoo.com> wrote:
> VJ,
>
> Hey, What's up?  How's the semester and Kaplan treating you?
> Is the hospital helping out with your schedule, so you can spend more time with Kaplan?
>
>
> I heard there was a petition passed around to stop the Friday quizzes.
> Is that true?
>
>
> I heard Dr Hro. is going to try to get rid of the Miami program, because the students aren't doing
> what they are told...
> I heard he's going to make examples of a people.
> Have you heard this?
>
>
>
> Steve

--
VJ Jayaraman

*E11*
*1*

6331 Chickering Woods Drive
Nashville, TN 37215
315-372-1000

2

**Subject:** 5th Semester

**From:** Steve Woodward (steve_l_woodward@yahoo.com)

**To:** VHREHOROVICH@auamed.org;

**Date:** Sunday, October 28, 2007 3:45 PM


Dear Dr. Hrehorovich,

You've called me unprofessional.  You've hindered my education when I'm just trying to do what I was told was a requirement.   I've even tried to give you constructive critisism on this program!

This is what other students, and doctors feel about this program:

School has been a waste of time i feel like. Goin to hospital has been fun some weeks and pointless other weeks. Kaplan is comin along. It has been pretty crazy learning biochem in about a week and now we are doin anatomy and will be starting physio on thursday. Well i dont know what you mean if the hospital has been helpful but when we get sent home after like an hour everyday cuz there is nothin to do in that department then i guess it is beneficial. Yeah we did sign a petition to stop the whole standardizing of programs and now dr. metellus has told calderon that he aint gonna follow their orders and will do his own thing so yeah we dont have those quizzes anymore. But it was more than just the quizzes cuz the school wanted to implement a whole new program like two weeks ago. I mean how on earth does someone try to do that. So in that sense it was unfair and fortunately the Hospital and Metellus both agreed and had no problems tellin the NY office to fuck off. Ok about the last thing you said i dont know who you are talkin to but thats total bullshit. I wanna crack up after i read that. All i know is if they got rid of miami then AUA would be fuckin themselves over with the next semester comin along. I mean their class is twice the size of ours and the michigan and maryland programs cant hold all those students. I guess the only problem we have been causing down here is with the exam master questions. Most of us are just pickin one answer and stickin with it and doin them in under 5 mins each.

Maybe it's not the students?

Steve

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

STEVEN WOODWARD,

        Plaintiff,

v.

TRINITY HEALTH-MICHIGAN,
a Michigan Nonprofit corporation,
SUSAN CATHERINE ZONIA, an Individual,
AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE,
a Foreign corporation,

        Defendants.

**07-088103-CZ**

JUDGE SHALINA KUMAR
WOODWARD,STEV  v  TRINITY HEAL

/

| NICOLETTI & ASSOCIATES, P.C. | LAW OFFICE OF DAVID B. GUNSBERG, P.C. |
|---|---|
| Paul J. Nicoletti (P44419) | David B. Gunsberg (P24235) |
| *Attorney for Plaintiff* | *Attorney for Defendants Trinity Health-Michigan* |
| 39520 Woodward Avenue, Suite 200 | *and Susan Catherine Zonia* |
| Bloomfield Hills, MI 48304 | 322 North Old Woodward Avenue |
| 248.203.7800 | Birmingham, MI 48009 |
|  | 248.646.9090 |

LAW OFFICES OF BRYAN L. SCHEFMAN
Bryan L. Schefman (P35435)
*Attorney for Defendant American University of Antigua*
     *College of Medicine*
322 North Old Woodward Ave.
Birmingham, MI 48009
248-723-1650

/

**Brief in Support of Answer to Plaintiff's Motion for Entry of Default
and Judgment**

**STATEMENT OF FACTS**

*The Case:*

      This is a Motion to Compel Discovery in a meritless case in which

Plaintiff "washed out" of the fifth semester of his second year at the

American University of Antigua Medical School (AUA). This case is not about



*E12*

*1*

invasion of privacy action.  If such were the case, every complaint involving any individual sent through the disciplinary/grievance process would subject any complaining person to an independent "false light invasion of privacy" action.  Clearly, such a claim is not contemplated by this cause of action.

Although Plaintiff alleges he should be entitled to amend his Complaint, the Court should not allow Plaintiff to amend his Complaint if such amendment would still not state a cause of action.  Based on Plaintiff's Response, amending Plaintiff's Complaint would be a futility, and should be denied.  *Lane v KinderCare Learning Centers, Inc.,* 231 Mich App. 689, (1998) (Motion to amend denied if futile, i.e. where merely adds allegations already made or adds allegations that still fail to state a claim).  Plaintiff's invasion of privacy action against AUA should be dismissed.

### Plaintiff's Response Still Does Not State A Claim For Breach Of Contract

In his Response, Plaintiff now asserts the existence of an "implied contract to continue enrollment free from arbitrary dismissal" (Resp., pp. 9-10).  Yet on December 20, 2007, when this lawsuit was filed, Plaintiff had not been "dismissed" from AUA.  Per Plaintiff's exhibits, as of December 20 2007, Plaintiff had merely received notice of a disciplinary hearing, which Plaintiff refused to attend (see Pl. Ex. B & C).  Plaintiff was (later) notified he received an "F" in the Foundations of Clinical Medicine course on January 6, 2008.  The letter (Pl. Ex. G) advised Plaintiff, "If you think they (the grades) are not correct, please contact the Course Director".  Plaintiff has not done so.  Plaintiff never contacted AUA thereafter.

In any event, modern Michigan jurisprudence does not recognize an implied contractual right to continued enrollment in a university free from arbitrary dismissal. The *Ewing* case, cited by Plaintiff, was a U.S. Supreme Court case which addressed the question of whether Ewing had

3

In any event, in early December 2007, <u>before</u> Dr. Zonia's December 17 letter, Woodward took and <u>failed</u> the fifth semester Final Exam.  AUA required an 80% score to pass the final exam.  Based on AUA's curve for the exam, which was set by AUA in Antigua, Woodward scored a 75% on the final exam.  Woodward received an "F" for the fifth semester.[2]

Woodward appealed his dismissal (but not the "F" for fifth semester) to Neil Simon at AUA.  An appeal hearing was scheduled for July 10, 2008, but (again) Woodward refused to appear.  The appeal was (apparently) denied.  Zonia was not involved in the scheduling of the appeal procedures.

Woodward has not invoked in any appeals of his failing grade, requested to retake the fifth semester, sought readmission to AUA, or tried to enter any other medical school.  Since December 2007, Woodward has been living on a sailing yacht in St. Maarten, scuba diving.

AUA issues a Student Handbook (**Exhibit 9**) which has disciplinary procedures. Woodward claims the Student Handbook is a "contract" between Woodward and AUA which was "interfered with" by Dr. Zonia.  Woodward acknowledged that the AUA Disciplinary Committee could consider his unprofessional behavior and discipline him, <u>including dismissal</u> (Woodward Dep., pp. 149-150).  In his amended complaint, which was untimely filed and not served, Woodward claims that the "breach" by AUA was that he was not given a "timely" appeal hearing on July 10, 2008, i.e. within 14 days of filing his appeal.  Woodward, however, testified that he made a conscious decision not to

---

[2] Woodward claims he actually passed the final exam, but he never appealed his failing grade, although allowed to appeal under the Student Handbook.

**American University of Antigua - KMC**

**c/o GCLR LLC**
**Phone: 212.661.8899 option 5**
**2 Wall Street, 10th Floor**
**New York, NY 10005**

**Statement of Account**

| Date |
| --- |
| 3/19/2009 |

| Bill To |
| --- |
| Steven Woodward<br>7211 Brittwood Lane<br>Flint, MI 48507 |

This statement reflects your balance from January 2009.  If you are on a payment plan your last payment was due on the first of March or a 1.25% late fee will be assessed to your outstanding balance.  If you have already made your payment please disregard this notice. If your account is not paid in full you will not be allowed to register for the May semester, receive grades or a transcript.  If you feel this bill is in error please contact the Bursar office @ 212-661-8899 option #5.

| **Payment is due upon receipt** | Amount Due |
| --- | --- |
| | $-5,681.00 |

| Date | Item | Description | Amount | Balance |
| --- | --- | --- | --- | --- |
| 08/20/2007 | | Balance forward | | 210.00 |
| 08/21/2007 | | PMT GL 9/5/07 to 4/25/08 1 of 2 | -20,681.00 | -20,471.00 |
| 08/30/2007 | | CHK #1578. Student Refund - Michigan | 8,933.00 | -11,538.00 |
| 09/01/2007 | 5th Semester | #BO 2. | 10,675.00 | -863.00 |
| 09/01/2007 | Admin Fee | #BO 2. | 175.00 | -688.00 |
| 09/01/2007 | Testing Fee | #BO 2. | 125.00 | -563.00 |
| 09/01/2007 | Insurance - Student | #BO 2. | 563.00 | 0.00 |
| 12/20/2007 | | PMT GL  09/05/2007 to 04/25/2008     2 of 3 | -15,000.00 | -15,000.00 |
| 03/01/2008 | | GENJRNL #5025. Disb. 2/5/08 GL 9/5/07 to 4/25/08 3 of 3 | -5,681.00 | -20,681.00 |
| 03/27/2008 | | CHK #1307. Student Refund-Home | 15,000.00 | -5,681.00 |
| 03/19/2009 | | Amount Due | | -5,681.00 |

E 13

the entire semester. **Only the Course Director or the Dean of Clinical Sciences can authorize any deviation from this policy**.

To request an absence from a clinical assignment, students must submit to the Course Director a written request one week prior the requested absence.

**Failure to comply with attendance policy may result in the lowering of the final grade, failing the rotation, or dismissal.**

### B. Conduct

The AUA expects students to exhibit the highest level of professional standards, behavior, and integrity. Professional appearance and attitude are essential to a quality doctor-patient relationship.

### C) Mandatory Attire

**The attire for males is a dress shirt, tie and trousers** and for **females, a dress, skirt or slacks with blouses. Students must wear white coats and AUA/KMC identification tags when at the Hospital or on its grounds and when seeing patients at any location. Teachers and preceptors will not allow violators to participate in the academic or practical sessions**

### D) Disaster Precautions

A Disaster Preparation Booklet includes a safety plan for students attending the Hospital and is available upon request at the Hospital.

## III. EVALUATION AND GRADING

### A)    Passing Grade Minimal requirements

|  |  |
|---|---|
| ❖ Minimal total course grade | 75% |
| ❖ Minimal lectures attendance | 85%  (18 lectures) |
| ❖ Minimal practical sessions attendance | 85% |
| ❖ Minimal Hospital lectures and other Academic sessions attendance | 50%* |

 11

❖ Minimal Out-patient sessions  attendance      90%
❖ Minimal  Correlation Course questions         80%  (1,600)
❖ Minimal total quizzes score                   60%
❖ Minimal final written exam score              80%
❖ Minimal final practical exam Score            80%

*During Hospital rotations*

B)    **Components included in Grade Calculation**

❖ Attendance to Course lectures                 10 %
❖ Practical session reports                      5%
❖ Outpatient Preceptor evaluation               5%
❖ Verbal  2-minutes  presentation  of clinical cases   5%
❖ Portfolio                          1          10%
❖ Quizzes                                       35%
❖ Final written Exam                            20%
❖ Final Practical Exam                          10%

C)    **Student Evaluation of Academic Activities**

Students will submit an evaluation of every lecture and academic activity in which they have been involved, making suggestions for improvement. The *Fifth Semester Guidelines* booklet includes the respective forms and instructions.

IV.   **BOOKS, LIBRARIES AND ON-LINE RESOURCES**

1. **Mosby's Guide to the Physical Exam,** 6th Edition, Mosby, 2006 and accompanying CD which is the required textbook.

2. **MKSAP for Students 3** Developed by the American College of Physicians - Clerkship Directors n Internal medicine, 2005 and accompanying CD

3. **Harrison's Principles of Internal Medicine,** 16th Edition, McGraw-Hill, 2005 printing

American University of Antigua College of Medicine
V Semester - Preliminary Clinical Training
Pontiac Michigan - St. Joseph Mercy Oakland

## Final Grades by Component - Fall, 2007



| | Code | Attendance 10% | | Prac Session 5% | | Outpatient E 5% | | Verbal Prest 5% | | Portfolio 10% | | Quizzes 35% | | Written Ex 20% | | | Practical Ex 10% | | Final Grade | Final Grade Adjusted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Score | PT | Score | PT | Score | PT | Score | PT | Score | PT | Scor | PT | Score | Curv | PT | Score | PT | | |
| 1 | Hampel, Nicola | 92 | 9.2 | 92 | 4.6 | 100 | 5.0 | 100 | 5.0 | 100 | 10.0 | 54 | 18.9 | 77 | 81 | 16.2 | 95 | 9.5 | 78 | C |
| 2 | Jayadeep, Simbia | 100 | 10.0 | 100 | 5.0 | 80 | 4.0 | 100 | 5.0 | 100 | 10.0 | 57 | 20.1 | 80 | 84 | 16.8 | 95 | 9.5 | 79 | C |
| 3 | Ozuomba, Michael | 100 | 10.0 | 100 | 5.0 | 83 | 4.2 | 100 | 5.0 | 100 | 10.0 | 56 | 19.6 | 70 | 74 | 14.8 | 80 | 8.0 | 77 | F (2) |
| 4 | Chheda, Vishal | 75 | 7.5 | 75 | 3.8 | 86 | 4.3 | 100 | 5.0 | 100 | 10.0 | 62 | 21.7 | 86 | 90 | 18.0 | 75 | 7.5 | 76 | C |
| 5 | Bulat, Elizabeth | 100 | 10.0 | 100 | 5.0 | 96 | 4.8 | 100 | 5.0 | 100 | 10.0 | 70 | 24.4 | 84 | 88 | 17.6 | 85 | 8.5 | 83 | B |
| 6 | Evans, Lekedra | 100 | 10.0 | 100 | 5.0 | 96 | 4.8 | 100 | 5.0 | 100 | 10.0 | 65 | 22.6 | 73 | 77 | 15.4 | 85 | 8.5 | 83 | C(-) (1) |
| 7 | Woodward, Steve | 100 | 10.0 | 100 | 5.0 | 95 | 4.8 | 100 | 5.0 | 100 | 10.0 | 62 | 21.6 | 71 | 75 | 15.0 | 80 | 8.0 | 80 | F (3) |
| 8 | Paras, Chahal | 100 | 10.0 | 100 | 5.0 | 92 | 4.6 | 100 | 5.0 | 100 | 10.0 | 58 | 20.4 | 79 | 83 | 16.6 | 80 | 8.0 | 81 | B |
| 9 | Hamed, Mousa | 100 | 10.0 | 100 | 5.0 | 0.0 | 0.0 | 100 | 5.0 | 100 | 10.0 | 70 | 24.4 | 87 | 92 | 18.4 | 93 | 9.3 | 82 | B (-) |
| 10 | Kristen, Nico | 100 | 10.0 | 100 | 5.0 | 0.0 | 0.0 | 100 | 5.0 | 100 | 10.0 | 68 | 23.9 | 78 | 82 | 16.4 | 80 | 8.0 | 83 | B (4) |

(1)   Failed Final Exam.  Remedial score '76.  Final Grade. C(-)
(2)   Failed Final Exam.  Has not taken remedial
(3)   Failed Final Exam.  Did take remedial and failed
(4)   Did not have OP rotation.  Total Score / 95
(4)   Did not take OP rotation. Total Score / 95

513

Print - Close Window

Subject: e-mail
From: Jeffrey Yanez (YANEZJ@trinity-health.org)
To: elizabethbulat@comcast.net; m.hamed01@gmail.com; vishal.doctor@gmail.com; lakedra_evans@hotmail.com; n_hampel@hotmail.com; ozuomba@hotmail.com; NICKSD@trinity-health.org; chahalparas@yahoo.com; jaya18_221@yahoo.com; nicokristen@yahoo.com; steve_l_woodward@yahoo.com;
Date: Fri, 30 Nov 2007 11:25:44

Everyone,
If you did not receive an e-mail from scholar360 let Deneen know today. This is the new AUA on line testing service. Log onto scholar360.com with the access they sent you and set up your account and password. Review the help file and tutorial. I anticipate that we will use this on line system for the final exam next week. If the on line system does not work, we will have a back up CD with the questions for each of you. Either way, you will need a functioning lap top with internet and a CD ROM capable of opening a PDF and Word File. Bring your power adapters and an extension cord. The final is 800 questions = 8 hours! Final times and days are pending. Next Friday December 7 is a starting date. See Deneen for further details on day and time and location.

Make sure that your portfolios are complete and turn them into Deneen. Follow the AUA sample and have a table of contents.

The official final day of the semester V -15 week semester- is December 21, 2007.



Print - Close Window

Subject: Information
From:  Jeffrey Yanez (YANEZJ@trinity-health.org)
       elizabethbulat@comcast.net; m.hamed01@gmail.com; vishal.doctor@gmail.com;
To:    lakedra_evans@hotmail.com; n_hampel@hotmail.com; ozuomba@hotmail.com;
       chahalparas@yahoo.com; jaya18_221@yahoo.com; nicokristen@yahoo.com;
       steve_l_woodward@yahoo.com;
Cc:    NICKSD@trinity-health.org; ZONIAS@trinity-health.org;
Date:  Wed, 05 Dec 2007 13:48:15


Please log onto scholar360 and set up your account before this Fridays final exam. If you do not, I will
not be able to allow you to sit for the exam and you will need to take it up with AUA- not myself or
Deneen.

AUA and myself are eating a little crow. The EXAM MASTER results sent out last week were NOT
correct. You should receive a e-mail from George K explaining the situation. You can log onto exam
master and get your correct number of questions answered. Also, AUA can get the correct number. It
does not change the AUA policy. You must complete 1600 questions to pass the semester. You must
complete ALL the questions (>2000) to have the EXAM MASTER pre shelf exam opened. It is in your
best interest to try the pre shelf in preparation for step 1.

For the final exam Friday. If you encounter a question that is "messed up" for any reason just skip it and
move on. I will give you credit for any question that is not complete. There may be 8 out of 800,
therefore , I will give you a 1% bonus.

Lastly, your portfolios need to be turned in to us for review. We will return it to you. It is your to keep
and have available to AUA if they request it.

E17

Print - Close Window

Subject: test
From: Jeffrey Yanez (YANEZJ@trinity-health.org)
To: steve_l_woodward@yahoo.com;
Cc: MCCALLDY@trinity-health.org; ZONIAS@trinity-health.org;
Date: Mon, 10 Dec 2007 07:05:42

Steve,

Due to testing irregularities, AUA will allow you a retake on the Vocabulary section on Tuesday between 3 and 4 PM. Please see Deneen for further details and arrangements. Please note that the test may look different and have new/different content?

You will need a total score of 560 out of 800 questions. 80% (640 questions) less the 10% curve = 560 questions

*E18*

Scholar360

Home | Profile | Blog | Contacts | Messages
RSS Reader | Calendar
My Classes | All Classes
My Communities | All Communities
My Grades | My Files | Digital Dropbox
Search | Help | Logout

## My Grades

| Item | Date | Available Points | Grade |
|------|------|------------------|-------|
| AUA Online | | | |
| Final Grade: 71 | | | |
| Test - Final Exam - Block 4 (Dermatology, Imaging, Gyn, Psychiatry) | 2007-12-06 | 200 | 142 |
| Test - Final Exam - Block 2B (Opthalmology) | 2007-12-06 | 50 | 43 |
| Test - Final Exam - Block 2A (History and Physical Exam) | 2007-12-06 | 50 | 37 |
| Test - Final Exam - Block 2C (Vocabulary) | 2007-12-06 | 100 | 88 |
| Test - Final Exam - Block 3B (Hemopoietic/Lymphopoietic System) | 2007-12-05 | 50 | 21 |
| Test - Final Exam - Block 3A (Cardiovascular) | 2007-12-05 | 100 | 47 |
| Test - Final Exam - Block 3C (GI System) | 2007-12-05 | 50 | 37 |
| Test - Final Exam - Block 1B (ENT) | 2007-12-03 | 100 | 71 |
| Test - Final Exam - Block 1A (Respiratory) | 2007-12-03 | 100 | 82 |

**Total Points Possible: 800**
**Total Points Earned: 568**
**Current Average: 71**

Terms of Service | Help | Support





E 19

http://www.scholar360...

# AMERICAN UNIVERSITY OF ANTIGUA
## KASTURBA MEDICAL COLLEGE TWINNING PROGRAM
### Administrative Office
### 501 Fifth Avenue
### Suite 1600
### New York, NY 10017



**OFFICIAL TRANSCRIPT**

February 21, 2008

Student ID: ▮▮▮▮▮
Woodward, Steven  Mr
7241 ▮▮▮▮▮▮▮ Lane
▮▮▮▮▮▮ MI 48507
USA

**Transferred From:** The University of New Mexico

## Transfer Credit

|  |  | Credit |
|---|---|---|
| *Pre-Med* |  |  |
| **The University of New Mexico** |  |  |
| 4100 | English and Composition I | 3 |
| | **Pre-Med Transfer Credits:** | 3 |
| | **Total Transfer Credits:** | 3 |

## Basic Science Division

|  |  | Grade | Credit | QP | GPA |
|---|---|---|---|---|---|
| *January 1, 2006 to April 30, 2006* |  |  |  |  |  |
| 5601 | Anatomy / Embryology | C | 9 | 18 | |
| 5602 | Histology / Cell Biology | C | 7 | 14 | |
| 5603 | Doctor, Patients and Society | C | 3 | 6 | |
| | | | 19 | 38 | 2.00 |
| *May 1, 2006 to August 31, 2006* |  |  |  |  |  |
| 5701 | Neuroscience | C | 6 | 12 | |
| 5702 | Medical Physiology | C | 6 | 12 | |
| 5704 | Biochemistry | F | 6 | 0 | |
| 5705 | Genetics | F | 3 | 0 | |
| | | | 21 | 24 | 1.14 |
| *August 1, 2006 to September 30, 2006* |  |  |  |  |  |
| 6601 | Behavioral Sciences | B | 6 | 18 | |
| | | | 6 | 18 | 3.00 |
| *September 1, 2006 to December 31, 2006* |  |  |  |  |  |
| 5704 | Biochemistry | C | 6 | 12 | |
| 5705 | Genetics | C | 3 | 6 | |
| | | | 9 | 18 | 2.00 |

## Basic Science Division

|  |  | Grade | Credit | QP | GPA |
|---|---|---|---|---|---|
| *December 1, 2006 to January 31, 2007* |  |  |  |  |  |
| 6605 | Immunology | F | 2 | 0 | |
| | | | 2 | 0 | 0.00 |
| *January 2, 2007 to April 30, 2007* |  |  |  |  |  |
| 6603 | Pathology I | C | 6 | 12 | |
| 6604 | Microbiology | C | 7 | 14 | |
| 6605 | Immunology | C | 2 | 4 | |
| | | | 15 | 30 | 2.00 |
| *May 1, 2007 to August 31, 2007* |  |  |  |  |  |
| 6701 | Pharmacology | C | 6 | 12 | |
| 6702 | Introduction to Clinical Medicine | C | 8 | 16 | |
| 6703 | Pathology II | C | 8 | 16 | |
| | | | 22 | 44 | 2.00 |

**Basic Science Cumulative GPA:**  1.83

## Clinical Division

|  |  | Grade | Credit | QP |
|---|---|---|---|---|
| 7000 | Foundations of Clinical Medicin | F | 15 | 0.00 |

*9/1/2007 to 12/31/2007*

**Clinical Science Cumulative GPA:**  0.00

| Attempted Credits | GPA Credits | GPA QPts | Final GPA |
|---|---|---|---|
| 112 | 109 | 172 | 1.58 |

**TRANSCRIPT IS VALID ONLY WHEN THE WHITE SIGNATURE OF THE ASSISTANT DEAN OF STUDENTS SERVICES APPEAR**



This officially sealed and signed transcript is printed on bright blue SCRIP-SAFE© security paper with the name of the institution printed in white type across the face of the document. A raised seal is not required. When photocopied a security statement containing the institution name will appear: A BLACK ON WHITE OR A COLOR COPY SHOULD NOT BE ACCEPTED!

In accordance with USC 438 (6) (4) (B) (The Family Educational Rights and Privacy Act of 1974) you are hereby notified that this information is provided upon the condition that you, your agent or employee, will not permit any other party access to this record without consent of the student. Alterations of this transcript may be a criminal offense.

Sevrine Barrie
Assistant Dean of Student Services

# AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE
# KASTURBA MEDICAL COLLEGE / TWINNING PROGRAM

*Semester Grade Results*

January 6, 2008

**Student ID**

53054   **Woodward, Steven**

stevenw@students.auamed.net

steve_l_woodward@yahoo.com

Listed below are your September - December 2007 semester grades from The American University of Antigua, College of Medicine, as submitted to the Registrar's Office.

| Course | | Grade | Shelf |
|---|---|---|---|
| 7000 | Foundations of Clinical Medicine | F | |

**The above grades are for reference only.**
**If you think they are not correct, please contact the Course Director.**

**Registrar's Office**
**Phone: 268-481-8886**
**Fax: 268-481-8885**

*Administrative Office:* **Two Wall Street 10th Fl, New York, NY, 10005**

*Antigua Campus:* **Jasmine Court, Friar's Hill Road, Woods, Antigua, W.I.**



Print                                                                    http://us.mg4.mail.yahoo.com/dc/launch?.rand=1&&.gx

**From:** Steve Woodward (steve_l_woodward@yahoo.com)
**To:** KKowit@AUAMED.ORG;
**Date:** Sat, March 31, 2007 7:11:18 AM
**Cc:**
**Subject:** Committee Hearing Letter

Karen,

I have an issue that needs Mr. Simon's attention.
Please give a copy of the following attached letters to Mr. Simon.

Thank you for your time,

Steve



Dear Mr. Simon,

I am writing this letter in response to a letter I received regarding a committee meeting ruling about my grades over the Immunology block class I took in December 2006.

The letter I gave you during the meeting we had is the same letter that is attached to this email.

I know you will not hear rulings over academic rulings, but due to the last incident with committee meetings I was involved in, I think this is an issue that needs to be brought to your attention.   I think you should be aware of the following actions that were taken that were against the AUA school policy and student handbook.

1. There was a committee hearing held of which I was not notified i.e. able to attend.
2. I was not able to produce witnesses.
3. I was not able to provide written evidence.
4. I notified both Dr. Bell verbally about the problems in this class in January, he told me he would look into this matter.  I gave a letter to Dr Glasser shortly thereafter.  There was no ruling given by the committee on this matter until March 29th.
5. Other students had similar complaints regarding classes and grading by Dr Dipeolu.

This was not an isolated incident and I feel the committee meetings at AUA are bios and unfair toward the students.  The actions taken here are no different than what happened to me in the last issue committee meeting I attended.

This matter has effected my, my records, current grades and monetarily.


Thank you for your time,

Steven Woodward

Dr Bell,

Below are the reasons I feel I should have passed Immunology during the December Block course.

Per Dr. Dipeolu I missed passing by 2.5%(5 exam questions overall)

1. During the second exam Dr. Dipeolu wrote the answer key on the overhead, which was ON.
All the students behind the third row had the first 22 (out of 50) answers to the exam.
I know students that checked their exam from this mistake.   I was sitting in the front row.

2. We never had a complete review of any exam.
The day before the final exam Dr Dipeolu reviewed only questions that 50% or more of the students missed.  There were many questions that over 70+% of the class missed yet we received no extra points for some of them.  Of those we found questions that were wrong or couldn't be answered.

3. If my grade was recalculated removing the 5% for attendance from the overall grade I would have passed.  I went to every class.  This is the only class where attendance is graded and mandatory.

4. I scheduled time to review my exams and scantrons; I found one scantron error.
He had our original exams destroyed less than a week after the final so I could not review them for errors.

My standing in the current Immunology class is 11th out of 54 students.  I am around the 80 percentile of the class.

Passing Immunology would help me monetarily, allow me more time to study for my other classes, but most importantly my records will show that I did not fail this class.


Thank you for your time,

Steven Woodward

3

## CLINICAL CLERKSHIP AFFILIATION AGREEMENT
### Between
## AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE
### And
### St. JOSEPH MERCY-OAKLAND

*THIS AGREEMENT, made the      of May, 2007 by and between the, American University of Antigua College of Medicine (hereinafter referred to as "College") and St. Joseph Mercy Oakland (hereinafter called "Hospital").*

*WHEREAS, the College of Medicine, is engaged in the education of physicians at American University of Antigua College of Medicine, Antigua*

*WHEREAS, the Hospital, organized under the laws of the State of Michigan with its principal place of business at 44405 Woodward Avenue, Pontiac, Michigan, is providing health care services in appropriate facilities for the implementation of a program of clinical clerkships to improve the educational and clinical opportunities of qualified students*

*NOW, THEREFORE, in consideration of the mutual covenants herein contained, and intending to be legally bound hereby, it is agreed as follows:*

*The goals of the Program are to (1) improve the opportunities for professional training of students of the College; (2) increase the students' exposure to the clinical disciplines in the Hospital; (3) educate the students in such a manner as to maximize the efficiency and success of the students.*

*This Agreement shall take effect for a period of one year from the signing of this Agreement and is subject to annual renewal upon mutual consent. The College has the responsibility for preparing the affiliation clerkship curriculum for implementation by the Hospital, appoint the individuals who will be responsible for supervising and monitoring each clinical discipline and who will implement the clerkship program. The discipline coordinators at the Hospital will receive academic appointments according to the College's criteria and prevailing academic standards, and will be subject to regular review by the College's Committee on Academic Ranking System, and shall receive the same rights, tenure and fringe benefits as clinical faculty staff members of the College. The College assumes responsibility for the continuity of the program both financially and academically.*

*The Hospital clerkship program will include rotations in Internal Medicine, Surgery, Family Medicine, Pediatrics, and Obstetrics and Gynecology and electives*

*The structure of the clerkship program is subject to annual review and modification by the College, provided that such modifications are consistent with the goals and objectives of the program and are in compliance with New York State regulations.*

DEPOSITION EXHIBIT
7
Zonia

E22

b. *Conspicuously displaying his/her name badge, when engaging in activities at the Hospital.*

*In the event that a student is involved in any situation which requires filing an "incident report" by the Hospital pursuant to the Public Health Law, the College shall be advised of the nature of the situation giving rise to the report and the parties shall discuss the potential impact, if any, on this Agreement, including but not limited to appropriate corrective action to be taken.*

*The hospital agrees to provide support services including counseling for students.*

*College agrees to fund the clinical clerkship program provided to its student in accordance with the provision of exhibit (1) one.*

**IN WITNESS WHEREOF** *the parties hereto have executed this Agreement on the day and year first above written.*

Signatures,

Neal S. Simon

AMERICAN UNIVERSITY OF ANTIGUA

St JOSEPH MERCY- OAKLAND

5. Collect, logically organize, and document the information related to patients' condition.

6. Formulate working diagnoses expressed as syndromes, specific pathological processes, or diseases.

7. Understand the interaction between physicians and other health professionals.

8. Present in an effective manner clinical cases in both verbal and written form before peers, preceptors and other medical audiences.

9. Identify and learn the links between basic and clinical sciences.

10. Explain symptoms and signs on the basis of physiological, pathological, and biochemical changes occurring in the human body.

11. Start the in-depth study of General Clinical Sciences, including Internal Medicine, Surgery, Pediatrics, Gynecology, Obstetrics, Family Medicine and Psychiatry.

12. Collect clinical data from individual patients related to primary prevention based on life cycles and secondary prevention of prevalent illnesses in the USA.

13. Understand and properly apply the clinical and technical terms used by the medical profession to describe symptoms, signs and syndromes.

## D. THEMES AND FINAL OUTCOMES

The booklet "Fifth Semester Guidelines" includes Schedules, Themes and Final Outcomes by academic activity.

## E. COMPONENTS

The first twelve (12) weeks of the fifteen- week semester are dedicated to lectures and clinical rotations.  Students will use the final three (3) weeks for


E 23

| 026 | 10.00 Quantitative methods (Epidemiology and Statistics), Others | 80 | 09/07 | 10/15 |
|---|---|---|---|---|
| | 11.00 Hematopoietic, Lymphoreticular systems | | | |
| 027 | 11.01 Hematopoietic and LR Sytems 1 | 50 | 09/07 | 10/16 |
| 028 | 11.02 Hematopoietic and LR 2 | 45 | 09/07 | 10/18 |
| | 12.00 Nervous System | | | |
| 029 | 12.01 Nervous System 1 | 50 | 09/07 | 10/20 |
| 030 | 12.02 Nervous System 2 | 45 | 09/07 | 10/21 |
| 031 | 13.00 Skin | 25 | 09/07 | 10/23 |
| | 14.00 Musculo Skeletal System | | | |
| 032 | 14.01 Musculo Skeletal System 1 | 50 | 09/07 | 10/26 |
| 033 | 14.02 Musculo Skeletal System 2 | 50 | 09/07 | 10/28 |
| 034 | 14.03 Musculo Skeletal System 3 | 40 | 09/07 | 10/29 |
| 035 | 15.00 Respiratory System | 50 | 09/07 | 11/03 |
| | 16.00 Cardiovascular System | | | |
| 036 | 16.01 Cardiovascular System 1 | 50 | 09/07 | 11/03 |
| 037 | 16.02 Cardiovascular System 2 | 50 | 09/07 | 11/04 |
| 038 | 16.03 Cardiovascular System 3 | 50 | 09/07 | 11/07 |
| 039 | 17.00 Gastrointestinal System | 70 | 09/07 | 11/09 |
| 040 | 18.00 Renal and Urinary system | 50 | 09/07 | 11/10 |
| 041 | 19.00 Reproductive System | 65 | 09/07 | 11/12 |
| | 20.00 Endocrine System | | | |
| 042 | 20.01 Endocrine System 1 | 50 | 09/07 | 11/13 |
| 043 | 20.02 Endocrine System 2 | 50 | 09/07 | 11/14 |
| 044 | 21.03 Vignettes | 100 | 09/07 | 11/17 |
| 045 | 21.00 Shelf - Like (#1) | 50 | 09/17 | 12/05 |
| 046 | 21.00 Shelf - Like (#1) | 50 | 09/17 | 12/05 |
| 047 | 21.00 Shelf - Like (#1) | 50 | 09/17 | 12/05 |
| 048 | 21.00 Shelf - Like (#1) | 50 | 09/17 | 12/05 |

E   Clinical Rotations – Schedule

Clinical rotations are identified as follows:

Rotation in  hospital wards (H),  Emergency Department (ED), hospital outpatient facility (HO), preceptors office (PO)

Rotation in outpatient specialty services (either hospital or preceptor's office) Internal Medicine (IM), Surgery (S), Pediatrics (Ped), GYN/OB, Psychiatry (PS))


E24



**University of Antigua School of Medicine**
**Fifth Semester - Fall 2007**
**SCHEDULE OF CLINICAL ROTATIONS**
**SITE:**

| # | Students name | e-mail | Sep 10 | 17 | 24 | Oct 4 | 8 | 15 | 22 | 29 | Nov 5 | 12 | 19 | 26 | Dec 3 | 10 | 17 |
|---|---------------|--------|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|
| 1 | Nicola Hampel | n_hampel@hotmail.com | K | K | K | K | K | K | EM | K | C | C | C | C | PC | S | E |
| 2 | Jayadeep Sibia | java18_77@yahoo.com | K | K | K | K | K | K | EM | C | C | C | C | C | PC | S | E |
| 3 | Michael Ozuomba | ozum_baby@hotmail.com | N | N | N | N | N | N | A1 | A1 | A1 | A1 | EM | N | PC | S | E |
| 4 | Vishal Chheda | vishal_doctor@gmail.com | N | N | C | N | C | A1 | A1 | A1 | A1 | A1 | N | EM | PC | S | E |
| 5 | Elizabeth Bulat | elizabethbulat@comcast.net | C | C | C | C | C | H | H | H | EM | H | H | H | PC | S | E |
| 6 | Lekedra Evans | lakedra_evans@hotmail.com | C | C | C | C | C | H | H | H | H | EM | H | H | PC | S | E |
| 7 | Steven Woodward | steve_1.woodward@yahoo.com | EM | M | M | M | M | M | M | M | A2 | A2 | A2 | A2 | PC | S | E |
| 8 | Paras Chahal | chana.paras@yahoo.com | M | EM | M | M | M | M | M | A2 | A2 | A2 | A2 | A2 | PC | S | E |
| 9 | Mousa Hamed | m.hamed91@gmail.com | D | D | D | D | D | D | D | A3 | A3 | A3 | A3 | A3 | PC | S | E |
| 10 | Nico Kristen | nico_steiny@yahoo.com | D | D | EM | EM | D | D | D | D | A3 | A3 | A3 | A3 | PC | S | E |

**KEY**

| | | |
|---|---|---|
| EM - Emergency Medicine | (1 week) | |
| K - Dr. Khan | (Inpatient Team - 6 weeks) | |
| M - Dr. Malloy | (Inpatient Team - 6 weeks) | |
| N - Dr. Nicola | (Inpatient Team - 6 weeks) | |
| H - Dr. Hodarnau | (Inpatient Team - 6 weeks) | |
| D - Dr. Diaczok | (Inpatient Team - 6 weeks) | |
| | | |
| C - Clinic - Dr. Yanez/Dr. Lamb | (5 weeks) | |
| | | |
| A1 - Dr. Govolia | (Ambulatory Office - 5 weeks) | |
| A2 - Dr. Breitenbach | (Ambulatory Office - 5 weeks) | |
| A3 - Dr. I. Mansoor / F. Mansour | (Ambulatory Office - 5 weeks) | |
| | | |
| PC - Completion of Student Portfolio | | |
| S - Study Time | | |
| E - Exam (shelf) | | |

DEPOSITION EXHIBIT
Yanez
2-3-09
E 25



Organization...tegrity - Windows Internet Explorer

File  Edit  View  Favorites  Tools  Help

http://www.trinity-health.org/ProgramsServices/OrganizationalIntegrity/index.htm

Links  Customize Links  Free Hotmail  My Yahoo!  Cards & Log-ins

Norton

Web Search  Bookmarks  Settings  Mail  My Yahoo!  Answers  Games  Anti-Spy

My Yahoo!  RealPlayer  Windows  Windows Marketplace  Windows Media  Yahoo!  Yahoo! Downloads  Yahoo! Mail

Page  Tools

| Programs & Services | Find a Physician | Hospitals & Facilities | Community Benefit | Careers | Health Library | Newsroom |

## Programs & Services

### Organizational Integrity Program

Trinity Health was established on a foundation of faith-based principles: Respect, Social Justice, Compassion, Care of the Poor and Underserved, and Excellence. These principles and the Mission serve as a compass to guide our ongoing health care ministry.

Trinity Health is committed to acting with integrity and making decisions based on the highest standards of ethical behavior, including complying with all applicable laws and regulations. Under the direction of the Board of Directors, Trinity Health established the Organizational Integrity Program in 1997 in support of this commitment.

Why is it called an Organizational Integrity Program? Trinity Health is not only concerned with compliance with laws and regulations, but also with behaviors and actions consistent with our Mission and Values. Compliance asks the question, "Can we do this?" Integrity asks the question, "Should we do this?"

The Organizational Integrity Program provides our associates, medical staff, vendors and other business partners with resources to assist them in meeting applicable legal, ethical and professional responsibilities in Trinity Health. One key resource is Trinity Health's Standards of Conduct (Also see addendum), which describes expected behaviors and conduct of all who work in Trinity Health and provides appropriate responses to common issues that are often encountered in the workplace. Other key components include education and training, auditing and monitoring of Trinity Health business activities, and mechanisms that allow associates, medical staff, vendors and other business partners to raise issues and concerns so they may be dealt with timely and appropriately.

### Education and Training

All newly hired Trinity Health associates are required to attend an orientation session on the Organizational Integrity Program and sign an agreement to abide by the Standards of Conduct. The information is reinforced through ongoing education and training, particularly for associates whose positions require additional knowledge and understanding of the laws and regulations that apply to their work responsibilities.

Health Services
Advocacy
Caring Excellence
Genesis
Quality Report Cards
Supply Chain Management
Best Practice Sharing
Nursing Focus

EXHIBIT 93

start  (0 unread) Yahoo! M...  Organizational Integri...  C:\AUA  Paint Shop Pro

Internet  100%  3:50 PM



## ST. JOSEPH
## MERCY OAKLAND

44405 Woodward Avenue
Pontiac, Michigan 48341-5023
248-858-3000

TO:        Ernesto Calderon, M.D.
FROM:      Susan Zonia, Ph.D.
RE:        V Semester
DATE:      December 17, 2007

We have been reviewing our experiences with offering the V Semester for the first time. As with any new program, it was not without its hitches and student adjustment issues. However, we found the attitude and demeanor of Steven Woodward to be completely inappropriate and detrimental to the program. Mr. Woodward appeared to have resented every assignment we gave him. But, instead of constructive criticism, he vented his anger in a professional unacceptable manner. For example: he completed his 100 patient log in two weeks and wanted to stop attending the program; he requested a transfer to the Miami program saying that the V Semester was a waste of time and his time would be better spent in a Kaplan course; sabotaging exams by giving the same response to all questions to simply get it over with; requesting early release on virtually a daily basis from his clinical rotation so that he could study for boards, etc. We believe that if he perceived the AUA V Semester curriculum as inappropriate, the professional response would have been to engage in a reasoned dialogue with representatives of the school, not argue with faculty at St. Joseph Mercy Oakland, or openly demonstrate his contempt for the curriculum, and those charged with delivering it.

Mr. Woodward's lack of professionalism and poor communication skills are a source of great concern. We do not feel that he will be a good ambassador for AUA, our hospital, or the profession he is about to enter. We encourage the faculty at AUA to review his entire record, to determine if he does meet the qualifications to sit for the boards, and begin clinical rotations.



A MEMBER OF ✪ TRINITY HEALTH

OUR MISSION: We serve together in Trinity Health in the spirit of the Gospel to heal the body, mind and spirit, to improve the health of our communities and to steward the resources entrusted to us.

**Subject:**  Notice of Grievance Committe hearing

**From:**  William Cain (billcain@comcast.net)

**To:**  steve_l_woodward@yahoo.com;

**Cc:**  sbarrie@auamed.org; jecmpark@aol.com; metellug@bellsouth.net; yanezj@trinity-health.org; nikhielrau@gmail.com; pbell@auamed.net; vhrehorovich@AUAMED.ORG;

**Date:**  Wednesday, December 19, 2007 11:47 AM


Steve Woodward, Med Student V:


An American University of Antigua Faculty Grievance and Disciplinary Committee has been examining the subject introduced to you by Dr. Zonia (memo from Dr. Zonia to Dr. Calderon , December 17, 2007 , RE: V Semester).


According to Dr. Zonia 's memo and evidence available to the Committee, you may again be in violation of articles contained in the American University of Antigua Student Handbook (AUA-KMC_2007 Student Handbook_v71807, pp. 12-14).  More specifically, the committee has received evidence suggesting that your demeanor has continued to be inappropriate in that you have rudely and unprofessionally vented anger toward the AUA curriculum, failed to answer hospital pages, selected an unseemly username in ExamMaster and defended the epithet when challenged.


A hearing with regard to your conduct will be held by conference call at 10:00 AM , Friday 21Dec07.  Please speak to Zonia for access to a private room and telephone connection. Rules of the hearing will be as you experienced in Antigua (*i.e.*, no recording device, no legal council written and/or verbal responses to committee questions, availability of evidence and witnesses, right to cross examine, *etc.*)  During the hearing, you will be questioned by Committee members.  Please respond directly to the questions asked, and please keep your responses brief and succinct.  If you wish to make an opening statement, you will have five minutes for that purpose.  If you have more to say than you can express within five minutes, please type it up and distribute it to the committee prior to the hearing.


After the meeting, the Committee will report to the appropriate dean(s).  You will not receive a copy of the Committee's recommendation from the Committee.  The dean(s) will further dispose of this matter.  Under some conditions (stated in the Student Handbook, p13) you have the right to appeal the Deans' action to the President of the University in which case you may be represented by legal council.

E2B

If you have any questions, please address them directly to me.  You may reach me by email reply or call me at (410) 299-5550 .


Thank you.


William A. Cain , Ph.D.

AUA Faculty Grievance Committee Chair

**Subject:** FW: Grievance and Disciplinary Committee Hearing

**From:** Woodward, Steven (stevenw@auamed.net)

**To:** steve_l_woodward@yahoo.com;

**Date:** Thursday, August 2, 2007 10:39 AM

---

**From:** Morcos, Hani
**Sent:** Wed 8/1/2007 9:29 AM
**To:** Woodward, Steven
**Cc:** Bell, Peter
**Subject:** Grievance and Disciplinary Committee Hearing

Mr. Steve Woodward,

A disciplinary hearing is scheduled on Wednesday August 8, 2007 at 4:00 pm to investigate the allegations brought against you by the Dean's office regarding " Misbehaving and offending a Faculty" The hearing will be held at the Faculty lounge on the west campus.

Members of the Committee will meet first and you will be asked to join them.

During this hearing:

1. You are allowed to present witnesses and documentary evidence.
2. You can address the Committee either orally or in writing.

You will be given 15 minutes for an opening statement and then you will be asked questions by the members of the Committee.

At the end of the hearing, you will be dismissed and the Committee will review your case and present a recommendation to the Dean's with their decision.
Any request for adjournment of the hearing must be in writing and must state the reason of the request.

Sincerely,
Chair of the Grievance and Disciplinary Committee

# H. A. Morcos, MD, PhD

**Chair of Pharmacology**
**American University of Antigua**
**College of Medicine**
**Jasmine Court, Friar's Hill Road**
**St John's Antigua**
**Tel: 268-481-8838**
**Email: hmorcos@auamed.net**
**http://auamed.net/pharm**


E29

**Subject:**  Committee Meeting

**From:**  Steve Woodward (steve_l_woodward@yahoo.com)

**To:**  hmorcos@auamed.net; baker_soft@yahoo.com; kbaker@blindsaver.com; tdsdiver@comcast.net; clerks@sallegalservices.com; pbell@auamed.net; stevenw@auamed.net; steve_l_woodward@yahoo.com;

**Date:**  Monday, August 6, 2007 2:48 PM

Please reply to this email.

I sent several emails out last week concerning a committee hearing meeting, I have not heard a reply from any of them.

Thank you for your time,

Steve

----- Forwarded Message ----
From: Steve Woodward <steve_l_woodward@yahoo.com>
To: Dr Morcos <hmorcos@auamed.net>
Sent: Saturday, August 4, 2007 12:55:12 AM
Subject: Committee Meeting

Dr Morcos,

Seeing that I was not given a formal document stating the grievance against me and I am only working on assumptions, I would like to formally request a postponement of the hearing until after August 18th.

Without this document I can not seek legal counsel, build my case and gather proof, witnesses and documentation to support my case.
Seeing that the faculty has had unknown amount of time to gather the same witnesses and build their case this puts me in a disadvantage.

I've sent you emails that I only assume are in reference to any incident of a disagreement with a faculty member I've had this semester.
In reading these email, you'll see that even the class president agreed with what I said.
Today other students agreed with me, but as student are they look out for themselves so I need a formal document confirming my suspicion.

With the long weekend you are only giving me one day to build my case, with your exam on the 10th, this is not adequate time for me to gather the information regarding any incident.  Having this meeting at this time also puts me in a disadvantage for asking fellow students to give up their study time for this hearing.

Thank you for your time,

Steve

E30

**Subject:**   Committee Hearing

**From:**   Steve Woodward (steve_l_woodward@yahoo.com)

**To:**   hmorcos@auamed.net;

**Date:**   Friday, August 3, 2007 8:24 AM

FYI

----- Forwarded Message ----
From: Je'Nelle Henderson <jenellejanet@yahoo.com>
To: Steve Woodward <steve_l_woodward@yahoo.com>
Sent: Thursday, July 19, 2007 7:28:29 PM
Subject: Re: Support

I do agree with everything that you have stated. 4th
semester classes were brought up today at a student
representative meeting. I will do all that I can when
it comes to path because I do believe that the testing
was unfair. And it directly effects me because right
now I have to pull a rabbit out of my ass on the next
path exam in order to pass the class and I really
don't want to be here next semester. So know that I'm
one of those students right now that needs all the
help that I can get to pass path.

Je'Nelle
--- Steve Woodward <steve_l_woodward@yahoo.com> wrote:

> Oh yea!
>
> It would be nice if he had his presentations ready
> before class at least once this semester!
> It would be even better if they were ready far
> enough in advance we had time to read them.
> Like at the begining of the semester!
> And he has the right to tell us we're not prepared!
>
> Steve
>
>
> ----- Original Message ----
> From: Je'Nelle Henderson <jenellejanet@yahoo.com>
> To: Steve Woodward <steve_l_woodward@yahoo.com>
> Sent: Thursday, July 19, 2007 9:12:10 AM
> Subject: Re: Support
>
>

E31

**Subject:**   Dr Somaraju

**From:**   Steve Woodward (steve_l_woodward@yahoo.com)

**To:**   pbell@auamed.net;

**Date:**   Tuesday, October 17, 2006 6:20 PM

Dear Dr Bell,

I would like to file a formal complaint about Dr Somaraju.
I do not appreciate the attitude she presented toward our class this morning before our review.  In my opinion this started the exam review in a defensive atmosphere.  If she has a problem with certain individuals she should confront them with her issues.  She should not present her frustrations and accusations to the handful of people that attended her class.  This was extremely unprofessional; similar to a trait that I am trying to work on and that I have been accused of.

I would also like you to know that my last grade does not adequately reflect my knowledge of the material.  My exam should reflect ten extra points per my grade, putting me almost 20% above the class average.  This 20% reflects an obvious 8 points that I failed to transfer from my exam to my scantron.  I acknowledge this as my mistake.  I'm sure other professors have understood these kind of mistakes and have been equally leinent with their students.

Thank you for your time,

Steve Woodward

E32

**Sevrine Barrie**

| | |
|---|---|
| ~rom: | Victor Hrehorovich |
| ~nt: | Wednesday, October 31, 2007 11:52 AM |
| ~o: | Sevrine Barrie |
| Subject: | FW: Student Woodward |

For the record.

Victor R. Hrehorovich, M.D., FACP, FCCP
Vice Chancellor and Executive Dean
American University of Antigua, College of Medicine c/o Greater Caribbean Learning
Resources
888 282-8633, FAX: 212 661-8864
-----Original Message-----
From: Susan Zonia [mailto:ZONIAS@trinity-health.org]
Sent: Wednesday, October 31, 2007 11:31 AM
To: Victor Hrehorovich
Subject: Student Woodward



Victor:

I spoke with Dr. Yanez, and he said that Steve showed up last Friday for lecture.  He was
uninterested, but physically present.  Following our conversation yesterday, I paged him,
to see if he was in-house at 2pm.  He did not return the page.  I paged him at 9am and
10:30am today; he did not return the page.

Susan



EXHIBIT

E33

**From:** Sevrine Barrie [mailto:Sbarrie@AUAMED.ORG]
**Sent:** Tuesday, May 06, 2008 1:24 PM
**To:** Kelly, Bill
**Subject:** RE: ECFMG USMLE /Steven Woodward

Hi Bill:

Thanks for taking the time to return my call.

This is to inform you that Steven Woodward is no longer enrolled at the American University of Antigua. Thank you.


Sincerely,

Sevrine Rodrigues Barrie
Dean of Student Services and Registrar

E 34

# Nellie Mae Loan Certification

App. #: 576417          Date:  11/07/06          FO #: 923:

Fax: 866-347-0693                    Tel.: 866-335-1500

### General Student Information

Student Name:  STEVEN L. WOODWARD          Loan Type:  MDEXCEL

SSN: ███████          Academic Loan Period:  From: 09/06  To: 12/06

Program of Study:  Medicine          Amount Approved:  $  18,286
* Medical Program of Study verified on Santa

### Certification of Attendance

Academic Loan Period:  From _____ To _____   Anticipated Graduation Date: 12 or Dec 2009

9-6-06 - 12-26-06

Student Grade Level: 4          Is student enrolled at least 1/2 time?  Yes ✓  No ____

### Certification of Cost

Note: Applicant may borrow a guarantee fee in addition to the amount disbursed.    Fee  5.050 %

Complete for all students:

Preferred # of disbursements this loan:     1 ✓    2 ____   3 ____   4 ____          Hold / Release:

Preferred 1st disbursement date:  11 / 7 / 06  and amount: $ 18,286      H ____  R ____

Preferred 2nd disbursement date:  ___ / ___  and amount: $ _____      H ____  R ____

Preferred 3rd disbursement date:  ___ / ___  and amount: $ _____      H ____  R ____

Preferred 4th disbursement date:  ___ / ___  and amount: $ _____      H ____  R ____

Total School Certified Amount: $ 18,286

### Certification Options

Note: Participating institutions only. Call Nellie Mae for program details.

Interest Subsidy Options:

Interest subsidy flat rate.          Interest subsidy %
1 2 3 4 5 6 7 8 9 10          25 50 75 100

### College / University Certification

Note: The school certified amount must not exceed the cost of attendance less other aid for the loan period.

Financial Aid Office:

KASTURBA MEDICAL COLLEGE          Signature and Date
PO BOX 5   MANIPAL 576 119
KARNATAKA          DEVRINE BARRIE
INDIA, PC 576104          Name (please print)

                                 Dean of Registrarial and
                                 Title (please print)   Student Services

DOE Code:  008450 00

E 35
1

# Nellie Mae Loan Certification

App. #: 736939          Date: 01/06/06          File #: 9221

Fax: 800-931-2200                              Tel: 800-338-1900

| General Student Information |
|---|

Student Name:  STEVEN L. WOODWARD

SSN: ████          Academic Loan Period:   From: 01/06  To: 08/06   Loan Type: MDEXCEL

Program of Study:  medicine          Amount Approved:  $ 34,397

| Certification of Attendance |
|---|

Academic Loan Period:   From: 1-5-06  To: 8-25-06   Anticipated Graduation Date: 5/30/2009

Student Grade Level:  A          Is student enrolled at least 1/2 time?  Yes  X   No ____

| Certification of Cost |
|---|
Note: Applicant may borrow a registration fee in addition to the amount disbursed.          Fee:  0 %

Complete for all students:

Preferred # of disbursements this loan:      1 ___  2  X  3 ___  4 ___          Hold / Release:

Preferred 1st disbursement date:  1 / 10 / 06  and amount:  $ 17,198 50   H ___  R ___

Preferred 2nd disbursement date:  4 / 21 / 06  and amount:  $ 17,198 50   H ___  R ___

Preferred 3rd disbursement date:  __ / __ / __  and amount:  $ _____   H ___  R ___

Preferred 4th disbursement date:  __ / __ / __  and amount:  $ _____   H ___  R ___

Total School Certified Amount:  $ 34,397.00

| Certification Options |
|---|
Note: Participating institutions only. Call Nellie Mae for program details.

Interest Subsidy Options:

Interest subsidy flat rate.          Interest subsidy %
1 2 3 4 5 6 7 8 9 10          25 50 75 100

| College / University Certification |
|---|
Note: The school certified amount must not exceed the cost of attendance less other aid for the loan period.

Financial Aid Office:

KASTURBA MEDICAL COLLEGE
PO BOX 8  MANIPAL 576 119
KARNATAKA
INDIA, FC 576104

Signature and Date

Name (please print)

Title (please print)  Services

DOE Code:  008450 00

2

**SallieMae**
www.SallieMae.com

P.O. Box 4200
Wilkes-Barre, PA 18773-4200

October 13, 2010

Mr. Steven L. Woodward
7211 Brittwood Lane
Flint, MI 48507-4623

RF:   **Your Student Loan Account** ~~████████~~

Dear Mr. Woodward:

This letter is in response to your inquiry requesting assistance with an issue you are having with St. Joseph Mercy Oakland Hospital and The American University of Antigua.

I have researched your account and have confirmed that you have three Excel Grad Loans that are serviced by Sallie Mae. These loans were borrowed to finance your attendance at Kasturba Medical College, not American University of Antigua. Enclosed please find copies of your promissory notes.

I hope that the information and documentation provided are helpful to you. You may contact me directly and toll-free at 888-545-4199, x89180, if you have any questions.

Sincerely,

Devin Hewitt
Office of the Customer Advocate
Sallie Mae

Enclosures

EXHIBIT ~~████~~

E 36

4. **The on-site Hospital Library** containing collections of updated books, journals, and modern audiovisual equipment.

5. **American College of Physicians/ACP**: Enroll for a free Student Membership on line or by phone at 800-523-1546, extension 2711.  Some enrollment benefits, in addition to membership in the largest medical specialty society include the opportunity to explore the internal medicine profession, access to members-only sections of ACP Online, free attendance at scientific meetings, a subscription to *IMpact*, an on-line newsletter for medical students, and discount eligibility to some programs and  products.

6. **Exam Master**.  The Fifth Semester entry is:

**http://www.exammaster2.com/wdsentry/aua-balt.htm**


**V.    STUDENT RESOURCES AND CONTACTS**

**A. Student Services Coordinator**

Dr. J. Ernesto Calderon, Dean, Clinical Sciences, AUA

| | |
|---|---|
| Office: | 410 636  - 2222 |
| Cellular: | 443 463 – 6182 |
| E-mail: | jecmpark@aol.com |

**B. Academic Counseling**

Course Directors (Miami, Baltimore, Pontiac)

Dr. Jorge E. Calderon, Dean, Clinical Sciences

Dr. Victor Hrehorovich, Vice Chancellor and Executive Dean, AUA

Office:    212 661-8899   ext. 119

**C. Psychological Support**

The aforementioned faculty is available to provide psychological support and make referrals to specialists.



sessions. He would literally grandstand in the classroom and he would direct the classroom. He disrupted his colleagues. His little episodes, as I mentioned, were recurrent over and over again so every piece of information distributed became a little time for him to complain. And his complaining wasn't at me or St. Joe's. It was at Antigua, the university, the curriculum. You know, he would go off and start talking about the faculty on the islands that he had apparently had knowledge of their intimate relationships and affairs and, you know, I immediately would cut him off, get him back on course, continue with our process, but it would reoccur. So something would turn up and he would go again. And it was a ongoing process and I was able to, you know, draw him in at the time and get him to calm down.

Q   Did you ever document the fact that you thought that he was disrupting the class?

A   It is not documented on paper. It came out as I would discuss issues with Dr. Zonia, as my supervisor, of how things are going. She would say, "How are things going with the students?" I would tell her what was going on. These issues came up during conference calls with Antigua. I'm not sure what they have documented regarding their conference calls, but I don't have anything where I sat down and wrote anything on paper.

Q   Do you know if Steve Woodward completed his 100 patient log in

Παγε 31

E38
1

*Yancz*

wanted to go to Miami.  He wanted to stop coming in.  So he was able to do it, but it was like I was dealing with a child -- okay -- and it was recurrent and repetitive.

Q    And did you ever suggest to Steve that he needs some kind of counseling or psychological consultation to help deal with that situation?

A    All of the social worker, psychology support services were offered through Antigua.  My job was to do the medical aspects.  I was able to reel him in at the episode time so I did not feel it was needed or part of my job responsibility to play social worker or intervene in those issues.

Q    And it's fair for me to assume you never notified AUA that any of that might be necessary in terms of psychological help or anything like that?

A    I did not.

        MR. NICOLETTI:  I don't think I have further questions for you.  Thank you.  Questions?

        MR. GUNSBERG:  Just a couple of followup questions.

                    EXAMINATION

BY MR. GUNSBERG:


                    Παγε 40