84

Case 2:10-cv-10978-PJD-MJH

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U.S. DIST COURT CLERK
EAST DIST MICH
FLINT

2011 NOV -3  A 11: 02

FILED

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

Plaintiff,

V

CASE No.: 2:10-cv-10978-PJD-MJH
Judge Patrick J. Duggan
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

STEVEN WOODWARD,

Defendant,

**Defendant's Objections to Order on Discovery Motions**
**(Dkt. 121, 125, 127, 128, 130, 132, 136, 145, 146)**

1

## Defendant's Objections to Order on Discovery Motions
### (Dkt. 121, 125, 127, 128, 130, 132, 136, 145, 146)

**Index:**

**1.** Section A of "Order on Discovery Motions", page 2, Plaintiff's Responses to

Defendant's Requests for Admissions

**2.** Section A – Defendant's Objections to Denial of Sanctions

**3.** Section B – Defendant's Objections to Requests for Information

**4.** Section C – Defendant's Objections to Denial of Counter Claims

**5.** Section C – Defendant's Objections to Denial of Adjournment

**6.** Section D – Defendant's Objections to Denial of Request fro Filing Electronic Data

**List of Exhibits**

**Exhibit 1**. Plaintiff's Response to Defendant's Requests For Admissions Dated November 22, 2010.

**Exhibit 2**. Plaintiff's Verified Complaint and Ex Parte Request for Temporary Restraining Order.

**Exhibit 3**.  Conferring Email to Mr Buikema from Mr Woodward Dated December 16, 2010.

**Exhibit 4**.  December 22, 2010 Hearing Transcripts, pages 44, 45, and 46

**Exhibit 5**. August 11, 2011 Hearing Transcripts, page 24

**Exhibit 6**.  February 1, 2011 Deposition Transcripts, page 6

**Exhibit 7**.  March 24, 2011 Deposition Transcripts, page 3

**Exhibit 8**. August 11, 2011 Hearing Transcript, page 28 and 29

**Exhibit 9**. Dept of Education Document FR Doc 2010-26796

**Exhibit 10**. ECFMG Email Correspondence with Mr. Woodward

**Exhibit 11**. ECFMG Email Correspondence with Mr. Woodward

**Exhibit 12**. NBME Email Correspondence with Mr. Woodward

**Exhibit 13**, ECFMG Email Correspondence with Mr. Woodward

**Exhibit 14**, Aril 19, 2010 Hearing Transcript, page 7, 13, 14, and 19

**Exhibit 15**, Dept of Education Correspondence with Mr. Woodward

**Section A of "Order on Discovery Motions", page 2**

**Plaintiff's Responses to Defendant's Requests for Admissions**

**1.** FR 36 Requests for Admission

The Defendant asked the Plaintiff fifty-six,(56) Requests for Admissions per FR 36.

The Plaintiff did not answer about 89% (50 of 56) of them as required by FR 36.

**A.** The Plaintiff responded to over 60% (35 of 56 Requests) with the same evasive and

insufficient objection, without any other explanation.

**"Plaintiff objects to this request as irrelevant o the claims and defenses in this case**

**of whether Defendant defamed Plaintiff or violated Plaintiff's marks."**

Requests: 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31,

32, 41, 42, 43, 44, 46, 49, 50, 51, 53, 54, 55, and 56 were responded to with the exact

same bad faith, insufficient, and evasive objection, violating FR 36(a)(5) and FR

36(a)(4).

**Exhibit 1** are the Plaintiff's Response to Defendant's Requests for Admissions Dated

November 22, 2010.

**Exhibit 2** are the Plaintiff's Docket 1 Claims

The Defendant will use the Plaintiff's Docket 1 claim identification to compare each of

the Plaintiff's claims to the Defendants defense for each Request for Admissions, since

there are so many violations committed by the Plaintiff. The Defendant can not double

space each since there are so many violations.  The Plaintiff's answers are contained in

**Exhibit 1,** there are too many violation to include all of the Plaintiff's answers to satisfy

Court 10 page requirements.

Request 7.
Please admit that American University of Antigua College of Medicine had a policy in 2007 that if a student passed the Shelf Exam that the student passed the course.
**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 8.
Please admit that American University of Antigua College of Medicine scheduled the Shelf Exam for their students at St Joseph Mercy Oakland Hospital.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 9.
Please admit that the American University of Antigua College of Medicine 5th Semester students at St Joseph Mercy Oakland Hospital did not receive the scheduled Shelf Exam in 2007.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 10.
Please admit that the students in the 2007 5th Semester program at St Joseph Mercy Oakland Hospital did not receive all the contractual clinical rotations.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 11.
Please admit that the Exam Master application did not work for any of the scheduled Friday Quizzes for the American University of Antigua College of Medicine students at St Joseph Mercy Oakland Hospital.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 12.
Please admit that the Exam Master application could not be used between October 21, 2007 and October 25, 2007.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 13.
Please admit that because Exam Master problems it was replaced with another software application for the Final Exam.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 14.
Please admit that American University of Antigua College of Medicine asks for student evaluations for courses.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 15.
Please admit that American University of Antigua College of Medicine published "AUA/KMC students are encouraged to address any academic or non-academic concerns with their Professors, Faculty Advisors or Deans."

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 16.
Please admit that American University of Antigua College of Medicine published "The University adheres to the mandates of the United States Family Educational Rights and Privacy Act (FERPA)"

**Relevance to, but not limited to, Plaintiff's Docket 1, Count III – Willful Violation of FERPA and Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 17.
Please admit that Steven Woodward was dismissed from American University of Antigua College of Medicine on May 21, 2008.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 19.
Please admit that AUA 5th Semester Final Grades were issued to the students after December 20, 2007.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 21.
Pleases admit that Exam Master software licensing agreement covers user name privacy.

6

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 22.
Please admit that the Preliminary Clinical Medicine Course Guidelines*(September 6 – December 21, 2007) states "You may choose any user name you would like to use".

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 23.
Please admit that American University of Antigua College of Medicine requested Susan Zonia write the Memo dated December 17, 2007.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 24.
Please admit that American University of Antigua College of Medicine allowed students located in Miami to attend a live Kaplan course during a 2007 5th Semester course.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 25.
Please admit that AUA students were exposed to PCP from an HIV positive patient during the 5th Semester at St Joseph Mercy Oakland.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, I, J, K, M, N, O**

Request 26.
Please admit that Steven Woodward communicated with AUA and St Joseph Mercy Oakland Hospital faculty concerning the PCP exposure but was not treated or examined for the exposure.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, I, J, K, M, N, O**

Request 28.
Please admit that American University of Antigua College of Medicine has implemented , in part or in full, suggestions made by Steven Woodward.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, I, J, K, M, N, O**

Request 29.

Please admit that Dr. R. Sanii wrote "Dear Steve;

Thank you for your email. I did read your email with great interest and concern. I think you have brought up few very important and valuable points. I take it that you are very concern and care for this institute. Me too. I like to see student being motivated and have a chance to learn and advance in a very healthy scientific environment. I think it will be helpful ( may be productive) if we meet and put our thought together to find a solution for at least those issues related to SGA responsibility"

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, I, J, K, M, N, O**

Request 30.

Please admit that Dr. Hayden wrote "I understand what you are saying and your input as well as your student colleagues is helpful and constructive. Change will come thanks to your efforts. Unfortunately, as a trail blazer, you yourself won't benefit from the path you are creating. But that's usually the case for leaders and forward thinkers."

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 31.

Please admit Victor Hrehorovich distributed, communicated, and/or forwarded Steven Woodward's private username to a testing software application.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 32.

Please admit that Victor Hrehorovich distributed, communicated, and/or forwarded private emails from Steven Woodward.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 41.

Please admit the 5th Semester Syllabus states "including counseling"

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 42.

Please admit William Cain refused to listen to Steven Woodward's exhibit during a Committee Meeting.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 43.
Please admit William Cain refused to have a Committee meeting recorded.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, C, D, E, F, G, I, J, K, M, N, O**

Request 44.
Please admit William Cain wrote "no recording device, no legal council" in a Notice of
Grievance Committee hearing on December 19, 2007.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, C, D, E, F, G, I, J, K, M, N, O**

Request 46.
Please admit that Steven Woodward earned and 80% for his 5th Semester Final Grade.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 47.
Please admit that Lekedra Evans earned an 83% for her 5th Semester Final Grade.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 49.
Please admit that the AUA 5th Semester Syllabus defined how the 5th Semester course
was graded.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 50.
Please admit that the AUA 5th Semester Syllabus states " III. Evaluation and Grading
A) Passing Grade Minimal requirements
* Minimal total course grade  75%
*Minimal lecture attendance  85% (18 lectures)
*Minimal practical session attendance        85%
*Minimal Hospital lectures and other Academic sessions attendance          50%
*Minimal out-patient session attendance       90%
*Minimal Correlation Course questions       80% (1,600)
*Minimal total quizzes score        60%
*Minimal final written exam score       80%

Minimal final practical exam Score          80%"

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 51.
Please admit the 5th Semester Syllabus states "Their input is critical in developing and advancing the University's academic program."

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 53.
Please admit Victor Hrehorovich wrote to Steven Woodward "Thank you for your suggestions.  It's an excellent one, of great educational and economic import"

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, I, J, K, M, N, O**

Request 54.
Please admit Victor Hrhorovich wrote to Steven Woodward "Your points are well taken"

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, I, J, K, M, N, O**

Request 55.
Please admit there were at least 20 schedule changes during the 2007 5th Semester program at St Joseph Mercy Oakland hospital.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 56.
Please admit Victor Hrhorovich did not reply to Steven Woodward the answer to the following question "Since the word is you're failing a students this semester, I would like to know my standing in the class.   Anything I need to be aware of that would jeopardize me getting out of this semester."

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

**B.** The Plaintiff's objections and answers are evasive and insufficient to fifteen(15)(over

26% - 15 of 56) of the Defendant's Request for Admissions, **Exhibit 1**, violate FR

36(a)(5) and FR 36(a)(4) . The Plaintiff uses the same evasive objection and answer for

Requests 1, 2, 3, 4; and 35, 36, 37, and 39 the Plaintiff's objections and answers to the

other seven Requests for Admissions, **Exhibit 1**, are evasive and insufficient.

Request 1.
Please admit that Jeffrey Yanez wrote: "After reviewing the final exam results AUA has
decided to apply a 10% "curve".

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
A, B, C, D, E, F, G, J, K, M, N, O**

Request 2.
Please admit that Jeffrey Yanez wrote "It is anticipated from AUA that you will only
need 4-5 hours to complete this examination given the fact that you already know the
questions and answers from the quizzes throughout the past 11 weeks.
Good Luck

PS- I took a look at the exam- The questions ARE the exact same as the ones you have
already seen."

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
A, B, C, D, E, F, G, I, J, K, M, N, O**

Request 3.
Please admit that Jeffrey Yanez wrote "AUA (Dr. Calderone) also noted that you scored
0 on the vocabulary and he wondering why or what happened."

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
A, B, C, D, E, F, G, I, J, K, M, N, O**

Request 4.
Please admit that Jeffrey Yanez wrote "All the words from the definitions are listed" and
that these "definitions" were the entire "Vocabulary" section of the Final Exam.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
A, B, C, D, E, F, G, I, J, K, M, N, O**

Request 5.
Please admit that the Final Written Exam given to 5th Semester students were given on
different dates between the three clinical sites.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
A, B, C, D, E, F, G, I, J, K, M, N, O**

Request 6.
Please admit that Sallie Mea was not informed that loans were being issued to American University of Antigua College of Medicine students in 2006.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, B, C, D, E, F, G, J, K, M, N, O**

Request 27.
Please admit that AUA students during the 5th Semester Course at St Joseph Mercy Oakland hospital were not taught biohazard skills and precautions required to perform tests on PCP HIV infected patients.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, C, E, F, G, J, K, O**

Request 35.
Please admit that Jeffrey Yanez diagnosed Steven Woodward as having "episodes", "episodic", "He didn't seem to be able to control his emotions", "I was dealing with a child".

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, C, D, E, F, G, I, J, K, M, N, O**

Request 36.
Please admit that Jeffrey Yanez did not documented any diagnosed behavioral problems concerning Steven Woodward.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, C, D, E, F, G, J, K, M, N, O**

Request 37.
Please admit that Jeffrey Yanez never notified AUA concerning any of Steven Woodward's episodes.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, C, D, E, F, G, J, K, M, N, O**

Request 38.
Please admit that St Joseph Mercy Oakland never provided counseling or support services to Steven Woodward.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, C, D, E, F, G, I, J, K, M, N, O**

Request 39.
Please admit that William Cain wrote "the documents I have received are evidence of absurd behavior".

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, C, D, E, F, G, I, J, K, M, N, O**

Request 40.
Please admit William Cain never offered counseling to Steven Woodward during the 5th Semester.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, C, D, E, F, G, I, J, K, M, N, O**

Request 47.
Please admit that Lekedra Evans earned an 83% for her 5th Semester Final Grade.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, B, C, D, E, F, G, J, K, M, N, O**

**Section A - Defendant's Objections to Denial of Sanctions**

Docket 136 is not a second Motion to Compel, the Court's treating it as a "second Motion to Compel" is evidence of blatant bias, discrimination, and a violation of Due Process against the Defendant by the Court.   The Plaintiff has violated FR 37(c)(1)Failure to Disclose; to Supplement an Earlier Response, or to Admit, 18 U.S.C. 1623 False Declarations Before Grand Jury or Court, Fraud on the Court FR 60(b)(3) Fraud, misrepresentation, or misconduct by an opposing party.   The Plaintiff's Dockets (76), (140), (141) and (143) are FASLE pleadings and declarations, and Court Order (Docket 115) is an artifices of fraud.

**1.** The Plaintiff violated Federal and Local Rules filing Docket 76 Motion to Compel. The Defendant tried to confer with the Plaintiff in an email December 16, 2010 regarding the production of Discovery material during the December 22, 2010 hearing, **Exhibit 3,** **"Mr Buikema,**

**Depending on the Decisions and Order by the Honorable Judge Michael Hluchaniuk:**

**Please schedule time after the December 22nd Hearing to sign-for(verify receipt) and receive approximately 2,500 pages of my Exhibits and Rule 26 documentation, my answers to your Interrogatories, Request for Admissions, and Requests for Production."**

The Plaintiff filed Docket 76 Motion to Compel, approximately three(3) hours after the Defendant tried to confer with the Plaintiff concerning the production of Discovery material.  Plaintiff did not attempt to confer with the Defendant prior to writing Docket

76, violating FR 37(a)(1) and LR 37.1.  The Defendant filed four Motions regarding

Discovery (Docket 43 Motion for Protective Order, Docket 51 Defendants Motion for

Sanctions and Motion for Dismissal, Docket 53 Defendants Response to Plaintiff's

Motion to Compel and Renewed Request for a Motion for Protective Order, Docket 56

Defendant's Motion for Protective Order).


**2.** The Plaintiff **LIED** directly to Honorable Judge Hluchaniuk.  The Plaintiff admitted to

refusing to take the Discovery they demanded in their Docket 76 Motion to Compel.

The COURT itself "Noted" that ALL of the Defendant's discovery material was made

available to the Plaintiff December 22, 2010.

**A. Exhibit 4** page 45

"**Woodward:** Any documents that he requested, all of his answers to his interrogatories,

all of his answers for his admissions, all of his documentation is here.

**Buikema:** It's there but I didn't address it quite intentionally.  It's not before you today.

**Court:** It's not scheduled for today.  I'm just noting the existence of it.  And Mr.

Woodward is saying that he intends to comply with that today. "

page 46

"**Court:** It's it's certainly not unreasonable that you would be unable to inspect those

documents today under the circumstance.  But if has documents for you to take with you,

I would certainly encourage you to take those and then assess the completeness of that

production as soon as you possibly can.

**Buikema:** I will."

15

**B.** Hearing August 11, 2011 before Honorable Judge Patrick J. Duggan the Plaintiff admitted to refusing to accept the Defendants Discovery.

**Exhibit 5,** page 24,

"**Buikema**: Yes, I refused to accept documents in lieu of an answer of my question."

"**Buikema**: But it's true, I'll stipulate, for the record, that I left the hearing without accepting the banker's boxes that Mr Woodward brought to that hearing. "

The "Banker's Boxes" was only a 1/2 of a box or documents the Plaintiff demanded per Docket 76 Motion to Compel..

The Defendant gave to the Plaintiff, FREE of charge, documents; the contents were labeled, collated, and included a spreadsheet describing each document.

**C.** The Honorable Judge Michael Hluchaniuk knew of the Plaintiff's refusal to participate in Discovery December 22, 2010, February 1, 2011(Prior to filing Order Docket 115) and again March 24, 2011.

**(i).** December 22, 2010, page 44, **Exhibit 4,**

"**Court**: But if in the future you are unwilling to cooperate or participate in discovery, there could be consequences for that.   Page 45,

**Woodward**: I suspect there will be more motions for that seeing that I've requested a substantial amount of information from Mr. Buikema which is, as obvious that he stated that hasn't appeared yet.  And he has basically four hours to produce it."

…..

16

**Woodward**: Any documents that he requested, all of his answers to his interrogatories, all of his answers for his admissions, all of his documentation is here.

**Buikema**: It's there but I didn't address it quite intentionally.   It's not before you today.

**Court**: It's not scheduled for today.  I'm just noting the existence of it.  And Mr. Woodward is saying that he intends to comply with that today.  Whether that's actually comes to pass is another issue, which we may address at a later time.  But certainly I would invite you Mr. Buikema to look at what Mr. Woodward has brought to court today and accept what he has and then make a determination of whether that satisfies your motion.

**(ii).** February 1, 2011, page 6, **Exhibit 6**, of file Deposition-1.wmv (DW_A0068.wav) before Honorable Judge Michael Hluchaniuk,

"**Woodward (SW)**: Your honor um this laptop isn't my laptop it's a brand new laptop it belongs to my sister I'm using it uh for this I, what I have on it is a spreadsheet of which I brought all electronic files with me I brought every single thing that **I was suppose to bring to the best of my knowledge again I have over 2,600 pieces of paper here this is the documentation that Mr. Buikema did not take during our last hearing.**


**(iii)** March 24, 2011, page 3, **Exhibit 7**, audio file DW_A0069.wav before Honorable Judge Michael Hluchaniuk.

"**Woodward (SW)**: I have your honor.  I produced those every single hearing we've had, every single one of these depositions that these guys have cancelled.  I've brought this documentation with me it's here, it's here today and they refused to take it, he refused.  I

have a recording of him refusing to even turn around and look at the documentation including these of which I brought to the last deposition.

**Court (JH)**: Well, it's my belief that if you make those documents available and that as long as it's clear, so that we can it there is a contest over this in the future we can determine what it was that was made available to them, the obligation of a party is discovery as far as I'm concerned is to, you can produce copies, or simply make copies available, and um, if he brought documents for the inspection for the opposing counsel and **the opposing counsel chooses not to look at it then he's satisfied his obligations as far as I'm concerned**."

The Defendant made available the very documents the Plaintiff demanded in their Motion to Compel, (Docket 76) was available December 22, 2010, and earlier.  The Court Order (Docket 115) was written against the Defendants for Discovery the Plaintiff REFUSED to take.

**D.**  The Plaintiff refused to accept the Discovery material demanded from the Defendant in Docket 76, Motion to Compel, during the December 22, 2010 Hearing.  The Plaintiff refused again to take the Discovery material during the February 1, 2011 Deposition. The Plaintiff did not take the Defendant's answers to the Plaintiff's Interrogatories or Admissions until March 24, 2011.  Court Order(Docket 115) and subsequent Motions written by the Plaintiff against the Defendant for Discovery are artifices or fraud.

**3.** The Plaintiff moved the Court to file Order, Docket 115 on Motion to Compel, Docket 76, based on lies.  Per the Court Order 115,

**"Plaintiff has filed a motion to compel defendant to answer certain written discovery requests that have, apparently, gone unanswered."**

The Discovery Requests were not unanswered, the Plaintiff refused to accept them December 22, 2010.

**4.** The Plaintiff's Docket 140 page 7 of 10, note (3) concerning the Defendant providing Discovery is an example of the Plaintiff's FALSE declarations.

**"(3) Defendant did, at his reconvened deposition serve dilatory responses to there requests, purportedly in response o the Court's order compelling discovery (Docket No. 115)."**

The Plaintiff admitted to refusing to accept all of the Defendant's Discovery material during the December 22, 2010 Hearing.   The Plaintiff filed Docket 140 to fraudulently obtain monetary funds from the Defendant based on false declarations and blatant lies.

**5.** The Plaintiff makes FALSE declarations concerning the production of Discovery in Docket 141, page 1.

**"Plaintiff American University of Antigua College of Medicine ("AUA"), through counsel states its Motion for Sanctions for Defendant's Failure to Comply with Court Order Compelling Discovery(Docket No. 115) as follows:"**

The Plaintiff admitted to refusing to accept all of the Defendant's Discovery material during the December 22, 2010 Hearing.

19

The Plaintiff filed Docket 141 to fraudulently obtain approximately $4, 626.20 from the Defendant.  The Plaintiff tried to wrongfully establish liability for Plaintiff's claims; Preclude Defendant from introducing evidence to contradict Plaintiff's claims; and to Strike Defendant's answer and entering a default judgment against Defendant.

**6.** The Plaintiff makes FALSE declarations concerning the production of Discovery in Docket 143, page 1, number 2.

**"Defendant failed to answer requests for admissions and has conceded liability"**

The Plaintiff admitted before Honorable Judge Patrick J. Duggan that they in fact did receive the Defendant's responses to the Requests for Admissions, these responses were made available to the Plaintiff December 22, 2010, but the Plaintiff refused to take them. The Defendant satisfied their requirement to produce this Discovery per the opinion of Honorable Judge Michael Hluchaniuk.

August 11, 2011, **Exhibit 8**, page 28 and 29

**"The Court**: Counsel, are you saying you've never seen a response to the request for admissions?

**Mr. Buikema**: We have now.

**The Court**: You have now?

**Mr. Buikema**: We have now.

**Mr. Woodward**: So, you do now have my if admissions?

**The Court**: He says he now has them, Okay.

**Mr. Woodward**: Okay. So, what does that say about his part?

**The Court**: I don't know.

**Mr. Woodward**: I'm glad you're typing that up because he's telling, in his thing for next week, he's saying I never gave it to him.

**The Court**: I don't know, we'll talk about that at the hearing, okay.

When did you get it, counsel?

**Mr. Buikema**: I can't answer that question off the top of my head, it's relatively recent.

**The Court**: Pardon?

**Mr. Buikema**: I can't answer that question off the top of my head.  It's relatively recent in the litigation where we received, what I would consider to be, nearly conforming responses to request for admissions.

**The Court**: Is the failure to respond to request for admissions part of the basis for your motion?

**Mr. Buikema**: It is part of the basis for our motion."


The Plaintiff filed Docket 143 in to fraudulently obtain a ruling for Summary Judgment against the Defendant including monetary damages.


**7.** The Plaintiff disobeyed Court Order(Docket 124) failing to respond to the production of documentation.  The requested Documentation included Student Record which are guaranteed by LAW and the Plaintiff's own Student Handbook .  The Documentation was due December 22, 2010 and this issue was brought before the Court by the Defendant.

The Plaintiff by definition has committed contempt of court per FR 37(b)(1).

**8**. The Court warned the Defendant about failure to participate in Discovery, December 22, 2010 **Exhibit 4**, page 44

"**Court:** But if in the future you are unwilling to cooperate or participate in discovery, there could be consequences for that. "

**(A)** The Court has allowed the Plaintiff to violate the very WARNING the Court issued the Defendant concerning cooperation in Discovery.

**(B)** The Plaintiff has admitted to not cooperating and been allowed to lie directly to the Court concerning Discovery.

**(C)** The Plaintiff has been allowed to produce NO documentation, including the Defendant's own Student Record which are guaranteed by LAW and the Universities own Student Handbook and policies.

**(D)** The Plaintiff has been allowed to answer NO interrogatories, of which the Defendant only asked 54, including answers concerning the Defendant's own Student Records.

**(E)** The Plaintiff has NOT answered approximately 89% of Requests for Admissions in good faith.

**(F)** The Plaintiff has been allowed to disobey a Court Order,(Docket 124) by failing to respond to the production of Documentation per FR 34, and blatant refusal to produce the documentation.

**(G)** The Plaintiff admits to not accepting ANY of the Defendants Discovery material, of which the Plaintiff demanded in their Motions to Compel.

**(H)** The Court has allowed the Plaintiff to refuse the production Rule 7.1 documentation, which is automatic and was due April 19, 2010.

(I) The Plaintiff refuses to cooperate in Discovery and has harassed, burdened, and wasted over 13 months of the Defendants life over their failure to perform Discovery. Refusing a Hearing on Sanctions against the Plaintiff is blatant BIAS, DISCRIMINATION, AND VIOLATION OF DUE PROCESS against an individuals RIGHTS, the Defendant, over that of a Wall Street Business, Greater Caribbean Learning Resources, a corrupt Medical School AUA, a Healthcare Network Trinity Health, and corrupt attorneys.

The Defendant requests Sanctions against the Plaintiff.  The Defendant requests the Court dismissal of the Plaintiff's claims under FR 37(c)(1)(C) and FR 37(b)(2)(A)(v) and/or leave of the Court to file a Motion for Dismissal of the Plaintiff's Claims.

The Defendant requests the Court Grant the Defendant's Motion to file Counter Claims.


**Section B - Defendant's Objections Requests for Information**

The Defendant Objects to Section B "Defendant's Requests for Information (Docket 125, 128, 130).  The Defendant requests a Leave from the Court to file a "Motion for Dismissal" of all the Plaintiff's claims regarding USMLE pass rates since the TRUTH can not be obtained by a Pro Se without the Court.  The Plaintiff refuses, by Quashing the TRUTH and the Court Granted those Motions.


**1.** According to the Department of Education document FR Doc 2010-26796, **Exhibit 9**. Foreign Institution—Federal Student Aid Programs, page 18 of 64, paragraph 3,

**"The Department regards the ECFMG as the most reliable source for pass rates and pass rate data"**

page 19 of 64,  paragraph 2

"Changes: Sections 600.55 (d)(1)(iii) and (d)(2) provide that a foreign graduate medical school may choose to allow the ECFMG or other responsible third party to provide the school's USMLE pass rate directly to the Secretary"

**2.** The ECFMG and USMLE(NBME) does in fact perform the calculations of USMLE pass rates for the Department of Education.

**http://www.ecfmg.org/about/statement-of-values.html**

**"Expand knowledge about international medical education programs and their graduates by gathering data, conducting research, and disseminating the findings"**

**3.** The Defendant has tried to obtain the USMLE pass rate from the ECFMG via written requests according to the ECFMG's own public advertised mission statements, **Exhibit 10** and **Exhibit 11**.

**4.** The Defendant has tried to obtain the USMLE pass rate via several subpoenas and Motions and requests thru the Court.  For each the Plaintiff filed motions, (Motion 31, 104, 109, 113, 120, and138) to refuse access to the TRUTH.

**5.** The Attorneys for the ECFMG and USMLE(NBME) refuse to produce the data **Exhibit 12** and **Exhibit 13**.

Suzanne Williams, Associate Counsel, NBME

**"We would therefore have objections to the subpoena even if it had been properly issued."**

24

Elisa P McEnroe

**"It is ECFMG's position that the pending motion to quash must be resolved before ECFMG is obligated to respond to your subpoena."**

**6. (A)** The Plaintiff refuses to participate in Discovery and files numerous motions to prevent the TRUTH from being obtained.

**(B)** The Plaintiff removed their advertised USMLE pass rate from their Web site.

**(C)** Attorneys refuse to release the data, which should be available via Freedom of Information Act, thru the Department of Education (of which the Defendant has filed a request), via Federal Subpoena and associated Acts between States, or even a simple request from the Court.

It is obvious that neither: the Plaintiff, the Court, the ECFMG, or the NBME wants the TRUTH to be known concerning the USMLE Pass Rates of the Plaintiff.

The Defendant requests Leave from the Court to file a Motion of Dismissal of any of the Plaintiff's claims regarding the Universities pass rates data.

**Section C - Defendant's Objections to Denial of Counter Claims**

The Defendant Objects to Section C "Denial of Counter Claims".

The Plaintiff's Docket 1 claims: Count I, II, and III are stated by the Court itself to be without merit and ridiculous.  The Court and Plaintiff itself stated that the Defendants statements are in fact TRUE; proving the Plaintiff makes FALSE statements in their Count IV Defamation verified claims under oath by an officer of the court Neal S. Simon.

Neal S. Simon, JD is President and General Counsel for a University.  Neal S. Simon

signed and verified under oath Docket 1,**Exhibit 2**, complaints; Counts 1, 2, 3, and 4 are

evidence of Subonation of Perjury, False Sworn Pleadings and Conspiracy to violate the

Defendant's First Amendment Civil Rights by Neal Simon, Erik Buikema and AUA.

**A. Count 1**- Federal Trademark/Tradename Infringement, 15 U.S.C. 1125(c)(3)

Exclusions (C) Any noncommercial use of a mark.

Honorable Judge Patrick J. Duggan stated on April 19, 2010, page 7, **Exhibit 14 "The**

**Court: We're going to go to each one of your theories because I'm trying to figure**

**out why you're asserting these theories because it doesn't seem to me your Lanham**

**Act has any merit at all."**  The Defendant does not engage in commerce.

**B. Count II**- Infringement Under ACPA, 15 U.S.C. 1125(d)(1)(B)(IV) the person's bona

fide noncommercial or fair use of the mark in a site accessible under the domain name.

The Defendant does not traffic, profit, or use in commerce domain names.

**C. Count III**- Willful Violation of FERPA, Federal Law 20 U.S.C 1232(g) is only

actionable against Education Institutions through the Department of Education.  On April

19, 2010 Mr Buikema testified pg 13, **Exhibit 14**, "**the termination of federal funding,**

**which my client does receive**" and pg 14 "**disclosing the student information could**

**cause the federal government to terminate funding**".  The Department of Education

sent the Defendant this letter, **Exhibit 15,** "FERPA applies to educational agencies and

institutions that receive Federal funds from programs administered by the U.S.

Department of Education.  Based on the information you provided, it does not appear that

FERPA applies to the American University of Antigua."

26

On April 19, 2010 the Honorable Judge Patrick J. Duggan testified concerning FERPA

violations, page 14, **The COURT: It's just ridiculous. I don't know why you're**

**arguing that. His conduct can't be considered a policy or practice of the University.**

**You said that form the very beginning, it's not. I don't know why you're arguing**

**these claims that have very little, if any, merit.**

Page 15, **Court: It's not tortuous interference.**

**D. Count IV**- Defamation- The Court asked Mr. Buikema about the sexual assault of one

of AUA students and the Defendant's comments.

On April 19, 2010 Honorable Judge Patrick J. Duggan testified, **Exhibit 14**, page 19,

**"The COURT: That's the spin you put on it. But the statement itself is true."**

**EriK Buikema and Neal S. Simon are liars and perjurers.**

The Defendant's Claims include, but are not limited to:

**1.** The Defendant's First Amendment Rights have already been violated by this case e.g.

Shutting down www.auamed.com so the Defendant could work and not make changes to

www.aua-med.com during these proceedings.


**2.** The Plaintiff's claims are blatant subornation of perjury and false declarations by two

attorneys, a Wall Street business (Greater Caribbean Learning Resources, LLC), and a

Medical School in an attempt to violate the Defendant's First Amendment Rights.


**3.** This case in whole a conspiracy to violate the Defendant's Civil Rights ( and as

defined by 20 U.S.C. 1011a and Law), including but not limited to: Case 2:10-cv-10978-

PJD-MJH, University Committee Meeting 1, Committee Meeting 2, Committee Meeting 3, and First Amendment Rights.

**4.** Civil Rights violations that have already been committed against the Defendant (as defined by 20 U.S.C. 1011a and Law), including but not limited to:

(A) Shutting down www.aua-med.com,

(B) Student safety

(C) Violations of First Amendment Rights,

(D) Denial of the production of evidence during Committee meeting,

(E) Denial of the ability to cross examination of witnesses during a Committee meeting,

(F) Denial of Due Process concerning Committee meetings,

(G) Denial of Counsel for Committee meeting,

(H) Denial of Recording of Committee meetings,

(I) No notification of charges for Committee meetings.

(J) Discrimination

**5.** The Plaintiff's refusal to participate in Discovery, particular Discovery of FR34 documentation, including Student Records of the Defendant violate, including but not limited to, Federal Law and breach of contract of the Universities own Student Handbook.

**6.** The Plaintiff has falsified documentation, including but not limited to:

(A) Student grades(and records),

(B) Committee meeting documents,

(C) Court documents, and

(D) Student loan certificates.

**7.** The Plaintiff has committed fraud, including but not limited to:

(A) Bank fraud,

(B) multiple wire fraud,

(C) mail fraud,

(D) medical insurance fraud,

(E) Unjust enrichment,

(F) Lanham act violations,

(G) Falsified notification to ECFMG to ensure Defendant could not sit for the Medical

Board Exams, and

(H) Fraud on the Court.

**8.** Breach of contract, including but not limited to:

(A) violation of Student Handbook,

(i)FERPA policies concerning student rights(disclosure of student records and production

of student records),

(ii)Unjust Enrichment,

(iii)Counsel during Committee Meetings,

(iv)Discrimination,

(v) Right to produce evidence during committee meetings,

29

(vi) Freedom of Speech via ability to address concerns with the University,

(vii) Refusal of counseling for students, and

(viii) Clinical rotations per hospital and University contract, and

(ix) Tortuous interference between the Defendant and ECFMG.


**9.** The Plaintiff has committed multiple acts perjury including but not limited to: Neal S. Simon, Jeffery Yanez, and Susan Zonia.


## Section C - Defendant's Objections to Denial of Adjournment

The Defendant Objects to Section C "Defendant's Motion's to Adjourn (Dkt. 127, 145, 146). The Plaintiff refuses to participate in Discovery. The Defendant requires an adjournment to the scheduling order to address the violations by the Plaintiff to participate in Discovery and results from this Order.

**1.** The Court Granted at least Two(2), separate requests for Adjournment from the Plaintiff concerning Discovery, including the Plaintiff's wrongful Default entry against the Defendant. (Order Docket. 44(Plaintiff Mt. 38) and Docket 88(Plaintiff Mt. 59).

**2.** The Court's own Order, Docket 174 proves the Plaintiff has FAILED to participate in Discovery; including failing to produce ANY documentation (which was due December 22, 2010) per FR 34, including the Defendant's own student records. Docket 174, page 2, **"Plaintiff is ORDERED to respond to defendant's requests for production of documentation, within 30 days of entry of this order"**.

**3.** The Court Ordered, Docket 124, the Plaintiff to "**file a response to the original motion**", Docket 121, "**The Plaintiff refuses to produce any of the requested**

**documentation**".  The Plaintiff did NOT answer the Court Order regarding the

Production of Documentation violating both FR 26, 34 including Federal Law demanding

the production of Student Records and violation of the Plaintiff's own contractual

obligation, per Student Handbook, to produce Student Records.

**4.** The Plaintiff file Docket 13 "Request For Clerk's Entry Of Default"(Docket 14)

wasting approximately 3 months of the Courts and the Defendants time.  The Plaintiff

filed Docket 38, Adjournment because they wasted the discovery schedule.

The Defendant requests the Court Grant Adjournment to the scheduling Order so the

Defendant can obtain Discovery for trial exhibits and prepare Motions against the

Plaintiff for their failures in the production of Discovery et al.


**Section D - Defendant's Objection to Denial of Request for Filing Electronic Data**

The Defendant's Objections to Section D, "Defendant's Request for Filing Electronic

Data (Dkt, 132).

The Plaintiff's Docket 1claims, **Exhibit 2,** are in regards to the Defendant's Web site

www.aua-med.com and associated electronic files, including but not limited to: audio,

video, PowerPoint files, (from the Plaintiff themselves) and other electronic files.

The Plaintiff has asked for and has in their possession those electronic files, including

files of the Plaintiff's own production.

Examples include: PowerPoint presentation, created by the Plaintiff which contains and

Disclosures of over 150 Private Student Information, audio files of a Committee Meeting,

video Files from Fox News as well as Video Files produced by the Defendant.

The Law of Evidence States:

**Rule 102**, These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.

**Rule 1001 Definitions**

(1) Writings and recordings.  "Writings" and "recordings" consist of letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation.

(2) Photographs. "Photographs" including still photographs, X-ray films, video tapes, and motion pictures.

Electronic Exhibits are used from traffic violations, robberies, and murders caught on video.

The Defendant does not file Electronically.

The PDF requirement applies to filing electronically.

**Electronic Filing Policies and Procedures, Eastern District of Michigan**

Page 15, R18 Exhibits (c)Video Tapes, DVDs and Physical Objects


The "Traditional manner" of filing exhibits is the production of evidence that "the truth may be ascertained and proceedings justly determined".

PDF files are limitations imposed upon the Defendant by the Courts electronic document management systems, not tradition or complying with Federal Rules for evidence.

Steven Woodward
7211 Brittwood Ln
Flint, MI 48507
(810)235-7267

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, a foreign corporation,

      Plaintiff,

                                  United States District Court Judge
                                  Patrick J. Duggan, presiding
                                  Michael Hluchaniuk, referral

V                                      Case No.:  2:10-cv-10978

STEVEN L. WOODWARD,

      Defendant.

| Eric A. Buikema (P58379) | STEVEN L. WOODWARD |
|---|---|
| CARDELLI, LANFEAR & BUIKEMA, P.C. | In Pro Per |
| Attorneys for Plaintiff | c/o 7211 Brittwood Lane |
| 322 W. Lincoln | Flint, MI  48507 |
| Royal Oak, MI 48067 | Steve_L_woodward@yahoo.com |
| (248) 544-1100 | |
| ebuikema@cardellilaw.com | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUESTS FOR
ADMISSIONS DATED NOVEMBER 22, 2010**

 Request 1.
Please admit that Jeffrey Yanez wrote: "After reviewing the final exam results AUA has decided to apply a 10% "curve".

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.  Without waving this objection, see Dr. Yanez's deposition transcript from the prior court proceedings.**

1





 Request 2.
Please admit that Jeffrey Yanez wrote "It is anticipated from AUA that you will only need 4-5 hours to complete this examination given the fact that you already know the questions and answers from the quizzes throughout the past 11 weeks.
Good Luck

PS- I took a look at the exam- The questions ARE the exact same as the ones you have already seen."

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks. Without waving this objection, see Dr. Yanez's deposition transcript from the prior court proceedings.**

 Request 3.
Please admit that Jeffrey Yanez wrote "AUA (Dr. Calderone) also noted that you scored 0 on the vocabulary and he wondering why or what happened."

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks. Without waving this objection, see Dr. Yanez's deposition transcript from the prior court proceedings.**

 Request 4.
Please admit that Jeffrey Yanez wrote "All the words from the definitions are listed" and that these "definitions" were the entire "Vocabulary" section of the Final Exam.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks. Without waving this objection, see Dr. Yanez's deposition transcript from the prior court proceedings.**

Request 5.
Please admit that the Final Written Exam given to 5th Semester students were given on different dates between the three clinical sites.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks. Plaintiff further objects to this request as vague and not reasonably limited in scope.**

2

 Request 6.
Please admit that Sallie Mea was not informed that loans were being issued to American University of Antigua College of Medicine students in 2006.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks. Without waving said objection, Plaintiff can neither admit nor deny this request as it does not know what "Sally Mea" was informed or not informed.**

 Request 7.
Please admit that American University of Antigua College of Medicine had a policy in 2007 that if a student passed the Shelf Exam that the student passed the course.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

 Request 8.
Please admit that American University of Antigua College of Medicine scheduled the Shelf Exam for their students at St Joseph Mercy Oakland Hospital.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

 Request 9.
Please admit that the American University of Antigua College of Medicine 5th Semester students at St Joseph Mercy Oakland Hospital did not receive the scheduled Shelf Exam in 2007.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

 Request 10.
Please admit that the students in the 2007 5th Semester program at St Joseph Mercy Oakland Hospital did not receive all the contractual clinical rotations.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 11.
Please admit that the Exam Master application did not work for any of the scheduled Friday Quizzes for the American University of Antigua College of Medicine students at St Joseph Mercy Oakland Hospital.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 12.
Please admit that the Exam Master application could not be used between October 21, 2007 and October 25, 2007.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 13.
Please admit that because Exam Master problems it was replaced with another software application for the Final Exam.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 14.
Please admit that American University of Antigua College of Medicine asks for student evaluations for courses.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 15.
Please admit that American University of Antigua College of Medicine published "AUA/KMC students are encouraged to address any academic or non-academic concerns with their Professors, Faculty Advisors or Deans."

4

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 16.
Please admit that American University of Antigua College of Medicine published "The University adheres to the mandates of the United States Family Educational Rights and Privacy Act (FERPA)"

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 17.
Please admit that Steven Woodward was dismissed from American University of Antigua College of Medicine on May 21, 2008.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 18.
Please admit that lawsuit Case No. 07-088103-CZ was filed on December 20, 2007.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks. Without waiving said objection, Plaintiff states that Defendant filed his Oakland County Court Case No. 07-088103-CZ on December 20, 2007 and that this is a matter of public record.**

Request 19.
Please admit that AUA 5th Semester Final Grades were issued to the students after December 20, 2007.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 20.
Please admit that the file http://www.aua-med.com/dowloads/usmle-pass-rate.ppt contains student grades and scores.

**Response:**

**Admitted that Defendant has wrongfully published confidential student data and information.**

Request 21.
Pleases admit that Exam Master software licensing agreement covers user name privacy.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 22.
Please admit that the Preliminary Clinical Medicine Course Guidelines*(September 6 – December 21, 2007) states "You may choose any user name you would like to use".

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 23.
Please admit that American University of Antigua College of Medicine requested Susan Zonia write the Memo dated December 17, 2007.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 24.
Please admit that American University of Antigua College of Medicine allowed students located in Miami to attend a live Kaplan course during a 2007 5th Semester course.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 25.
Please admit that AUA students were exposed to PCP from an HIV positive patient during the 5th Semester at St Joseph Mercy Oakland.

6

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

 Request 26.
Please admit that Steven Woodward communicated with AUA and St Joseph Mercy Oakland Hospital faculty concerning the PCP exposure but was not treated or examined for the exposure.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

 Request 27.
Please admit that AUA students during the 5th Semester Course at St Joseph Mercy Oakland hospital were not taught biohazard skills and precautions required to perform tests on PCP HIV infected patients.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks. Without waiving said objections, Plaintiff states that its students were provided a first-rate medical education.**

 Request 28.
Please admit that American University of Antigua College of Medicine has implemented, in part or in full, suggestions made by Steven Woodward.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

 Request 29.
Please admit that Dr. R. Sanii wrote "Dear Steve;
Thank you for your email. I did read your email with great interest and concern. I think you have brought up few very important and valuable points. I take it that you are very concern and care for this institute. Me too. I like to see student being motivated and have a chance to learn and advance in a very healthy scientific environment. I think it will be helpful (may be productive) if we meet and put our thought together to find a solution for at least those issues related to SGA responsibility"

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 30.
Please admit that Dr. Hayden wrote "I understand what you are saying and your input as well as your student colleagues is helpful and constructive. Change will come thanks to your efforts. Unfortunately, as a trail blazer, you yourself won't benefit from the path you are creating. But that's usually the case for leaders and forward thinkers."

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 31.
Please admit Victor Hrehorovich distributed, communicated, and/or forwarded Steven Woodward's private username to a testing software application.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 32.
Please admit that Victor Hrehorovich distributed, communicated, and/or forwarded private emails from Steven Woodward.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 33.
Please admit that Neal Simon signed a contract between American University of Antigua College of Medicine and St Joseph Mercy Oakland Hospital.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks. Without waiving said objection, Plaintiff admits that it has a contractual relationship with the Trinity-Health Michigan.**

8

Request 34.
Please admit that the contract between American University of Antigua College of Medicine and St Joseph Mercy Oakland Hospital states "The hospital agrees to provide support services including counseling for students"

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks. Plaintiff further states that no third-party beneficiary contract claims were made either in the state court case or the instant case.**



Request 35.
Please admit that Jeffrey Yanez diagnosed Steven Woodward as having "episodes", "episodic", "He didn't seem to be able to control his emotions", "I was dealing with a child".

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks. Plaintiff admits that Defendant's unprofessionalism is well documented and was deemed unprofessional by Judge Shalina Kumar in dismissing his claims against Trinity Health Michigan and Dr. Susan Zonia.**



Request 36.
Please admit that Jeffrey Yanez did not documented any diagnosed behavioral problems concerning Steven Woodward.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks. Plaintiff admits that Defendant's unprofessionalism is well documented and was deemed unprofessional by Judge Shalina Kumar in dismissing his claims against Trinity Health Michigan and Dr. Susan Zonia.**



Request 37.
Please admit that Jeffrey Yanez never notified AUA concerning any of Steven Woodward's episodes .

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks. Plaintiff admits that Defendant's unprofessionalism is well documented and was deemed unprofessional by**

Judge Shalina Kumar in dismissing his claims against Trinity Health Michigan and Dr. Susan Zonia.



Request 38.
Please admit that St Joseph Mercy Oakland never provided counseling or support services to Steven Woodward.

**Response:**

**Plaintiff cannot admit or deny this interrogatory as it cannot speak for St. Joseph Mercy Oakland.**



Request 39.
Please admit that William Cain wrote "the documents I have received are evidence of absurd behavior".

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks. Plaintiff admits that Defendant's unprofessionalism is well documented and was deemed unprofessional by Judge Shalina Kumar in dismissing his claims against Trinity Health Michigan and Dr. Susan Zonia.**



Request 40.
Please admit William Cain never offered counseling to Steven Woodward during the 5th Semester.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks. Plaintiff admits that Defendant's unprofessionalism is well documented and was deemed unprofessional by Judge Shalina Kumar in dismissing his claims against Trinity Health Michigan and Dr. Susan Zonia.**



Request 41.
Please admit the 5th Semester Syllabus states "including counseling"

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**



Request 42.
Please admit William Cain refused to listen to Steven Woodward's exhibit during a Committee Meeting.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**



Request 43.
Please admit William Cain refused to have a Committee meeting recorded.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**



Request 44.
Please admit William Cain wrote "no recording device, no legal council" in a Notice of Grievance Committee hearing on December 19, 2007.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**

Request 45.
Please admit the AUA student handbook states "The student has the right to counsel and to present witnesses and documentary evidence".

**Response:**

**Admitted.**



Request 46.
Please admit that Steven Woodward earned and 80% for his 5th Semester Final Grade.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**



Request 47.
Please admit that Lekedra Evans earned an 83% for her 5th Semester Final Grade.

11

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks. Plaintiff further objects to this request as federal law and regulations prohibit it from disclosing private and confidential student information without a release and protective order.**



Request 48.
Please admit that Michael Ozuomba earned a 77% for his 5th Semester Final Grade.

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks. Plaintiff further objects to this request as federal law and regulations prohibit it from disclosing private and confidential student information without a release and protective order.**



Request 49.
Please admit that the AUA 5th Semester Syllabus defined how the 5th Semester course was graded.

**Response:**
**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**



Request 50.
Please admit that the AUA 5th Semester Syllabus states " III. Evaluation and Grading
A) Passing Grade Minimal requirements
* Minimal total course grade  75%
*Minimal lecture attendance  85% (18 lectures)
*Minimal practical session attendance          85%
*Minimal Hospital lectures and other Academic sessions attendance          50%
*Minimal out-patient session attendance          90%
*Minimal Correlation Course questions          80% (1,600)
*Minimal total quizzes score          60%
*Minimal final written exam score          80%
Minimal final practical exam Score          80%"

**Response:**

**Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.**



Request 51.
Please admit the 5th Semester Syllabus states "Their input is critical in developing and advancing the University's academic program."

12

**Response:**

Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.

Request 52.
Please admit AUA faculty teach wrong information.

**Response:**

**Denied.**

Request 53.
Please admit Victor Hrehorovich wrote to Steven Woodward "Thank you for your suggestions. It's an excellent one, of great educational and economic import"

**Response:**
Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.

Request 54.
Please admit Victor Hrhorovich wrote to Steven Woodward "Your points are well taken"

**Response:**

Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.

Request 55.
Please admit there were at least 20 schedule changes during the 2007 5th Semester program at St Joseph Mercy Oakland hospital.

**Response:**

Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.

Request 56.
Please admit Victor Hrhorovich did not reply to Steven Woodward the answer to the following question "Since the word is you're failing a students this semester, I would like to know my standing in the class. Anything I need to be aware of that would jeopardize me getting out of this semester."

<u>Response:</u>

Plaintiff objects to this request as irrelevant to the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks.

Respectfully submitted,

<u>/s/  Eric A. Buikema (P58379)</u>
Eric A. Buikema (P58379)
Cardelli, Lanfear & Buikema, P.C.
322 West Lincoln Avenue
Royal Oak, Michigan 48067
(248) 544-1100
ebuikema@cardellilaw.com

14

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

     Plaintiff,

V                                                 Case No.

STEVEN WOODWARD,

     Defendant.

ERIC A. BUIKEMA (P58379)
Cardelli, Lanfear, & Buikema, PC
Attorneys for Plaintiff
322 W. Lincoln
Royal Oak, MI 48067
(248) 544-1100

## PLAINTIFF'S VERIFIED COMPLAINT AND EX PARTE REQUEST FOR TEMPORARY RESTRAINING ORDER

NOW COMES Plaintiff, American University of Antigua, College of Medicine, by and through its attorneys, CARDELLI, LANFEAR & BUIKEMA, P.C., and for its Verified Complaint and Ex Parte Request for Temporary Restraining Order, states as follows:

1.     Plaintiff American University of Antigua, College of Medicine ("AUA") is an Antiguan corporation located at University Place, Antigua, West Indies.

2.     Plaintiff places students in certain Michigan hospitals for clinical education and training.

**EXHIBIT 2**

3.      Defendant Steven Woodward is a resident of Flint, Michigan who, upon last information and belief, makes his home on a sailboat in the vicinity of Flint, Michigan.

4.      This action arises, in most basic summary, out of Defendant's ownership and publication of a website, and derivative publications, containing false and defamatory information about AUA, as well as private information about AUA students protected from disclosure under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g), and by his use of a confusingly similar domain name ("www.aua-med.com") that infringes upon and/or dilutes AUA's protected trade name under Federal Statutory and common law including, but not limited to, the United States Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1125(c), and the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).

5.      The amount in controversy exceeds $75,000 exclusive of fees, costs or interest.

6.      This court has jurisdiction over Plaintiff's Federal Statutory claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's common law claims pursuant to 28 U.S.C. § 1367.  As there exists complete diversity of citizenship amongst the parties, this court further has jurisdiction pursuant to 28 U.S.C. § 1332.

7.      As the sole Defendant is a resident of this judicial district, venue is proper pursuant to 28 U.S.C. § 1391.

2

## GENERAL ALLEGATIONS

8.    AUA is a foreign medical school catering, in part, to students from the United States including Michigan.

9.    AUA regularly places and directs students in clinical education in association with Michigan hospitals.

10.    Defendant Steven Woodward is a former student of AUA.

11.    As a result of misconduct, Defendant was discharged from AUA without completion of his degree.

12.    That is, Defendant is a disgruntled former student of AUA.

13.    As a result of his dismissal from the University, Defendant initiated a lawsuit against AUA and its educational partner hospital Trinity-Health Michigan's St. Joseph Mercy Hospital in Pontiac, Michigan.

14.    The lawsuit was filed in the Oakland County Circuit Court on or about December 20, 2007, where it was known as Case No. 07-088103-CZ and assigned to the Honorable Shalina Kumar.

15.    In the suit, Mr. Woodward alleged that AUA and/or Trinity slandered him, intentionally inflicted emotional distress, tortiously interfered with a contractual relationship, invaded a right to privacy and breached a contract.

16.    The court concluded that Mr. Woodward's allegations were baseless and granted AUA summary disposition of the same on June 30, 2008. The court similarly granted summary disposition to Trinity on April 29, 2009 finding, on the merits, that the claimed defamatory remarks as to Woodward's misconduct were actually, in fact, true.

17.     As a result of Mr. Woodward's apparent dissatisfaction with this result and with everyone and everything other than the party truly responsible for his circumstance (himself), he has now registered an internet domain name of www.aua-med.com at which he publishes reckless, false, and malicious purported "facts" about AUA in addition to other objectionable content.

18.     A specific date when Mr. Woodward commenced his endeavor is not known but it is well after AUA's first usage in trade of its own similar name and website www.auamed.org.

19.     A copy of the legitimate www.auamed.org website homepage is attached as Exhibit 1.

20.     A copy of Defendant's www.aua-med.com website homepage is attached as Exhibit 2.

21.     Defendant's website represents, alleges and publishes, as if true, false and defamatory information about AUA including, by way of example and not limitation, that:

a.     AUA routinely commits fraud upon its students;

b.     AUA falsifies its students grades;

c.     AUA breaches contracts;

d.     AUA disregards student civil rights;

e.     AUA conspires against its students;

f.     AUA pursues unspecified and other unethical practices;

g.     AUA has "malicious intensions" and administration and academic advisors of a "heinous nature";

4

h.      AUA students are sexually assaulted;

i.      AUA professors teach students wrong information;

j.      AUA conspires to commit fraud and violations of civil rights;

k.      AUA commits criminal activities reportable to the FBI;

l.      AUA student pass rate for USMLE medical board exams is only 22.9%;

m.      AUA contrives false evidence in student disciplinary proceedings (i.e, the hearing Mr. Woodward was provided prior to dismissal and refused to even attend);

n.      AUA colluded with St. Joseph Hospital to maliciously end Mr. Woodward's career, conspired, abused its power, committed perjury and is otherwise immoral and unethical;

o.      AUA agents are liars;

p.      The locality of AUA is full of "rape, murder, fraud, and government corruption."

22.     Defendant's website further publishes, in a manner not repeated here, and without consent of the university or its affected students, other students' identities and personal information including grades and academic information.

22.     In that Plaintiff utilizes its own website to market and provide useful information to prospective students, AUA suffers irreparable injury and harm to its reputation each day that Mr. Woodward's appalling site is permitted to remain available.

23.     Moreover, irreparable injury to AUA and its affected students occurs, for which there is not an adequate remedy at law, by virtue of Mr. Woodward's unsanctioned and unauthorized publication of federally protected private academic information.

24.    Consequently, AUA respectfully requests an immediate, but temporary (until such time as opportunity for hearing can be afforded) restraining order prohibiting further publication of this offending information by any means and further prohibiting use, of any kind, of the confusingly similar domain name.

25.    Pursuant to FRCP 65(b)(1), AUA seeks temporary restraining order relief on an immediate and ex parte basis because, as demonstrated by this verified complaint, irreparable injury is occurring and will continue to occur and because Mr. Woodward cannot be located for purpose of immediate service.  Undersigned counsel has made reasonable and diligent search of the prior lawsuit file and record, including the deposition of Mr. Woodward, which reveals, solely, that he resides on a movable sailboat and utilizes his sister's Flint address as a mailing address.

26.    A proposed temporary restraining order is appended as Exhibit 3.

## COUNT I- FEDERAL TRADEMARK/TRADENAME INFRINGEMENT

27.    Plaintiff incorporates and restates its answers to paragraphs 1 through 26 above.

28.    Defendant publishes information under a domain name of www.aua-med.com.

29.    Plaintiff has published legitimate information about its educational institution under the domain name www.auamed.org and has otherwise utilized the root term "auamed" in trade since long before Defendant first utilized the above referenced domain name.

30.    Defendant's use of the confusingly similar name, and resultant accessibility by any consumer utilizing common search terms employed to glean

legitimate information about the University is likely to cause confusion as to whether the Defendant's website is somehow endorsed, sponsored, licensed or affiliated with the AUA.

31.     Defendant's actions, along with the use on the offending website of information purportedly from, sponsored or published by AUA (including items bearing the AUA logo) constitute willful infringement upon AUA's exclusive rights in its tradename and trademarks under 15 U.S.C. § 1114.

32.     Defendant's use of the similar domain name, including copies, reproductions and/or counterfeits of the AUA logo on the site itself has been, and continues to be done with the intent to cause confusion, mistake and harm as to the source or sponsorship of the information disseminated.

33.     As a direct and proximate result, AUA has suffered irreparable harm to its protected tradename and trademarks.

34.     AUA has no adequate remedy at law that will compensate it for the continued harm it will suffer if Defendant's acts are allowed to continue.

35.     AUA has gained a reputation as a well respected educational institution and there is an association of its tradename and marks with this reputation.

36.     Defendant has utilized that name and the marks with the intention of maliciously attacking that reputation and goodwill to satisfy some misguided personal vendetta against the University.

37.     Defendant publishes false information in conjunction with the tradename and marks that dilutes, blurs and tarnishes the distinctiveness and positive association of the same.

38.     Accordingly, this is an exceptional case within the meaning of the Lanham Act.

39.     In addition to the temporary relief prayed for elsewhere in this verified complaint AUA respectfully requests permanent injunction as well as all rights, remedies and damages available at law including but not limited to treble damages and attorney fees.

WHEREFORE, Plaintiff American University of Antigua, respectfully requests a judgment against Defendant, together with costs, interest, and attorney fees.

## COUNT II- INFRINGEMENT UNDER THE ACPA

40.     Plaintiff incorporates and restates its answers to paragraphs 1 through 39 above.

41.     Defendant has registered, in bad faith and with intent to profit, a domain name confusingly similar to that utilized by AUA in the course of its business.

42.     The AUA domain is distinctive and has been utilized in trade (as has its root tradename ("AUAMED") since long before Defendant's offending registration and use of www.aua-med.com.

43.     The AUA tradename and domain name are widely recognized by the general consuming public as a designation of services and source of same from AUA.

44.     Defendant's conduct is not a fair usage.

45.     Defendant has attempted to profit from the use of this site directly and by leveraging the same in the prior litigation in which he was a plaintiff.

WHEREFORE, Plaintiff American University of Antigua, respectfully requests a judgment against Defendant, together with costs, interest, and attorney fees.

8

## COUNT III- WILLFUL VIOLATION OF FERPA

46.     Plaintiff incorporates and restates its answers to paragraphs 1 through 45 above.

47.     Defendant has published private educational information about other students including names and grades on his website.

48.     This publication is without the consent of the University or its affected students and is otherwise unauthorized.

49.     The academic records are otherwise private and are protected from public disclosure under federal law.

50.     The consequence of disclosure has an immediate and obvious impact on the affected students' privacy rights for which there is no adequate remedy at law.

51.     Further, as a direct and proximate result of Defendant's actions, AUA could lose significant access to federal educational funding and student aid.

WHEREFORE, Plaintiff American University of Antigua, respectfully requests a judgment against Defendant, together with costs, interest, and attorney fees.

## COUNT IV- DEFAMATION

52.     Plaintiff incorporates and restates its answers to paragraphs 1 through 51 above.

53.     Defendant publishes a website in which he intentionally, maliciously and/or recklessly or negligently publishes falsehoods about AUA.

54.     By use of direct words, narrated video clips, weblinks and "YOUTUBE" videos of his making, Defendant promulgates as if true the following "facts" about AUA:

a.     AUA routinely commits fraud upon its students;

b.    AUA falsifies its students grades;

c.    AUA breaches contracts;

d.    AUA disregards student civil rights;

e.    AUA conspires against its students;

f.    AUA pursues unspecified and other unethical practices;

g.    AUA has "malicious intensions" and administration and academic advisors of a "heinous nature";

h.    AUA students are sexually assaulted;

i.    AUA professors teach students wrong information;

j.    AUA conspires to commit fraud and violations of civil rights;

k.    AUA commits criminal activities reportable to the FBI;

l.    AUA student pass rate for USMLE medical board exams is only 22.9%;

m.    AUA contrives false evidence in student disciplinary proceedings (i.e, the hearing Mr. Woodward was provided prior to dismissal and refused to even attend);

n.    AUA colluded with St. Joseph Hospital to maliciously end Mr. Woodward's career, conspired, abused its power, committed perjury and is otherwise immoral and unethical;

o.    AUA agents are liars;

p.    The locality of AUA is full of "rape, murder, fraud, and government corruption."

55.    Each and every one of these "facts" is false.

56.     Defendant knew at the time of publication, or reasonably should have known, that each of his representations was false.

57.     The publication of these purported "facts" about AUA is misleading, damaging and in certain circumstances per se actionable inasmuch as they allege criminal activity or the like.

58.     AUA has suffered damages to its reputation as a direct and proximate result of Defendant's actions.

WHEREFORE, Plaintiff American University of Antigua, respectfully requests a judgment against Defendant, together with costs, interest, and attorney fees.

Respectfully submitted,

/s/ Eric A. Buikema
Cardelli, Lanfear, & Buikema, P.C.
322 West Lincoln Avenue
Royal Oak, MI  48067-2505
(248) 544-1100/(248) 544-1191(fax)
ebuikema@cardellilaw.com
(P58379)

DATED:  March 9, 2010

Being First duly sworn:

I, Neil Simon, am an officer of the American University of Antigua and its general counsel.  I have personal knowledge of the facts set forth in this complaint and, having read the same, I hereby attest that each and every allegation contained herein is true to the best of my knowledge, information and belief.

Neil Simon
Its: President


Subscribed and sworn to before me this
___ day of _____, 2010.

Notary Public
My commission expires:

LEONARD A. SCLAFANI
Notary Public, State of New York
No. 02SC6120579
Qualified in Westchester County
Commission Expires December 20, 20__

12

| | |
|---|---|
| **Subject:** | AUA vs Woodward - Documentation, Interrogatories, Admissions, Documentation Requests |
| **From:** | Steve Woodward (steve_l_woodward@yahoo.com) |
| **To:** | ebuikema@cardellilaw.com; kzalewski@cardellilaw.com; marilyn_orem@mied.uscourts.gov; |
| **Date:** | Thursday, December 16, 2010 12:15 PM |

Mr Buikema,

Depending on the Decisions and Order by the Honorable Judge Michael Hluchaniuk:

Please schedule time after the December 22nd Hearing to sign-for(verify receipt) and receive approximately 2,500 pages of my Exhibits and Rule 26 documentation, my answers to your Interrogatories, Request for Admissions, and Requests for Production.

What you receive will depend on the Order and Decision of the Court.

Please bring with you all documentation the Defendant has requested and the answers to:
Defendant's Interrogatories to Plaintiff
Defendant's Request for Documentation
Defendant's Request for Admissions

Thank you for your time,

Steven Woodward

This email and any attachments are intended for the sole use of the named recipient(s) and contain(s) confidential information that may be proprietary, privileged or copyrighted under applicable law. If you are not the intended recipient, do not read, copy, or forward this email message or any attachments. Delete this email message and any attachments immediately.



1 of 1          10/31/2011 4:19 PM

Woodward:      No Your Honor.

Court:         Alright. Then I'm going to grant that motion to provide for an

               extension by 90 days of those previously established currently

               existing discovery dates or any other dates that are associated

               with the scheduling order previously entered by Judge Duggan.

               So Mr. Buikema does that conclude all the matters that we had?

Buikema:       It does Your Honor. You did not, and I assume it was intentional,

               address the cost issue.

Court:         Well I'm glad you pointed that out because the record should be

               clear. I'm gonna deny the request for costs based on our current

               circumstances. But I'm certainly making Mr. Woodward aware of

               the fact that they are consequences for failing to comply with the

               rules that apply to these circumstances. Again there's some

               leeway that is afforded people who are representing themselves.

               But that only goes so far. And it, it really is important that to the

               extent you're not, and you have some familiarity with the rules,

               you've cited some of the rules. So you have some familiarity with

               the rules. You have to be familiar with the rules. You have to

               comply with those rules or there can be consequences. I'm

               denying the imposition of costs based on our present

               circumstances.

Woodward:      Thank you Your Honor.

Court:         But if in the future you are unwilling to cooperate or participate in

                                          44

**EXHIBIT 4**

discovery, there could be consequences for that.

Woodward:  I suspect there will be more motions for that seeing that I've requested a substantial amount of information from Mr. Buikema which is, as obvious that he stated that hasn't appeared yet. And he has basically four hours to produce it.

Court:  I would, I would also note the existence of another motion that has been filed in this matter relating to, filed by the Plaintiff, relating to the Defendant's failure to produce documents and comply with other discovery requests. I just note that that's been filed. The time for responding has not passed yet. But that is another issue that may come before me.

Woodward:  Any documents that he request, all of his answers to his interrogatories, all of his answers for his admissions, all of his documentation is here.

Buikema:  It's there but I didn't address it quite intentionally. It's not before you today.

Court:  It's not scheduled for today. I'm just noting the existence of it. And Mr. Woodward is saying that he intends to comply with that today. Whether that's actually comes to pass is another issue, which we may address at a later time. But certainly I would invite you Mr. Buikema to look at what Mr. Woodward has brought to court today and accept what he has and then make a determination of whether that satisfies your motion.

45


EXHIBIT

Buikema:      I, I just, I have a logistical issue with that today. But - -

Court:         That's fine.

Buikema:      We'll address that outside of the Court's presence.

Court:         It's, it's certainly not unreasonable that you would be unable to inspect those documents today under the circumstances. But if has documents for you to take with you, I would certainly encourage you to take those and then assess the completeness of that production as soon as you possibly can.

Buikema:      I will. Judge would you like for my office to prepare a written order or will your staff prepare one?

Court:         I would request that you prepare an order.

Buikema:      Be happy to do so. We'll submit it, hopefully later today.

Court:         Very good.

Buikema:      Thank you.

Court:         Alright, Mr. Woodward anything else you care to say today for the record?

Woodward:     No sir. Thank you.

Court:         Alright. I would, Mr. Woodward do you have a phone?

Woodward:     I do.

Court:         Alright. Does, does Mr. Buikema have your phone number?

Woodward:     Yes sir.

Court:         Alright. I would encourage you to try to discuss these matters. It's always awkward for a lawyer dealing with a non-lawyer. I mean I

46

1     MR. WOODWARD: What's that? It's whoever the

2     court reporter is.

3     **RESPONSE BY MR. BUIKEMA**

4     MR. BUIKEMA: He's referring, Your Honor, to his

5     deposition, at which I would ask him questions, such

6     as, "What's your name?" And he'd want to produce

7     documents.

8     THE COURT: So, this is his deposition?

9     MR. BUIKEMA: Yes, I refused to accept documents

10    in lieu of an answer of my question, is what he's

11    referring to, I believe.

12    MR. WOODWARD: That is not true. Sir, I brought

13    to December 22nd, 2,500 pages of documentation,

14    interrogatories, the answers to his interrogatories,

15    the answers to his request to admissions and he's

16    refusing to take this information.

17    MR. BUIKEMA: And I can short circuit this, I

18    hope.

19        The only item that he's listed, that I think would

20    be relevant to next week's hearing on the dispositive

21    motion, would be the request for admission responses.

22    I don't know whether they were at that hearing or not.

23        But it's true, I'll stipulate, for the record,

24    that I left the hearing without accepting the banker's

25    boxes that Mr. Woodward brought to that hearing, which,

*10-10978; American University of Antigua v. Steven Woodward*

**EXHIBIT 5**

that's what I'm saying I I don't think you should do, you should, you should train the

camera on the witness you whose being deposed and that any statements that he makes

are going to be recorded ah by the audio recording capability of the equipment and so

there is really no prejudice to you to modifying what what your plan was with respect to

the use of that equipment so your satisfying your concerns by recording what's going on

I'm just telling you that you should not do it in the fashion you that have apparently

intended on doing it you should do it in another fashion which has absolutely no

prejudice to you

**EB**: Your honor I'm I'm sorry to trouble you this morning but since we do have you

already ah let me just raise two quick things first if Mr Woodward does persist and record

in the manner that you have directed I'd like a copy of the recording to be provided for

me it's looped in it's just a web cam looped into his laptop apparently rather than any

tape or CD or something that could be provide to me as to the ordinary course

Second it looks to me he's brought his laptop to refer to the web site or what not and I

just I want to indicate for your purposes and for the record that in the event Mr

Woodward's gonna refer to that laptop I think it becomes discoverable any information

there on which he relies upon to assist his testimony in deposition

I want that to be out there before we have controversy later

**SW**: Your honor um this laptop isn't my laptop it's a brand new laptop it belongs to my

sister I'm using it uh for this I , what I have on it is a spreadsheet of which I brought all

electronic files with me I brought every single thing that I was suppose to bring to the

best of my knowledge again I have over 2,600 pieces of paper here

this is the documentation that Mr Buikema did not take during our last hearing

6

EXHIBIT 

**PK:** I think what Mr Woodward is getting at is he, he brought some visual aids, um, that are responsive to the decus tecum portion of the deposition notice and the discovery request he's....

**SW:** and your Order Sir.

**PK:** There is a continuing obligation to answer discovery.  The Court ordered him to answer interrogatories, and request for production of documents to date he has not done so.

**SW:** I have your honor I produced those every single hearing we've had, every single one of these depositions that these guys have cancelled.  I've brought this documentation with me it's here, it's here today and they refused to take it, he refused. I have a recording of him refusing to even turn around and look at the documentation including these of which I brought to the last deposition.

**JH:**  Well, it's my belief that if you make those documents available and that as long as it's clear, so that we can if there is a contest over this in the future we can determine what it was that was made available to them, the obligation of a party in discovery as far as I'm concerned is to, you can produce copies, or simply make copies available, and um, if he brought documents for the inspection for the opposing counsel and the opposing counsel chooses not to look at it then he's satisfied his obligations as far as I'm concerned.

**Time Marker: 12:17**

**SW:** And this is also a Motion to Compel I'm going to give you to give to Eric because you have not produced anything that I have requested for to date any documentation,

3

**EXHIBIT 7**

1       **THE COURT:**  You're not going to have to flip

2    through 2,500 pages, now, right?

3       **MR. WOODWARD:**  No, it's right here on this stuff

4    that I have right here.

5       **THE COURT:**  Counsel, are you saying you've never

6    seen a response to the request for admissions?

7       **MR. BUIKEMA:**  We have now.

8       **THE COURT:**  You have now?

9       **MR. BUIKEMA:**  We have now.

10      **MR. WOODWARD:**  So, you do now have my if

11   admissions?

12      **THE COURT:**  He says he now has them, okay.

13      **MR. WOODWARD:**  Okay.  So, what does that say about

14   his part?

15      **THE COURT:**  I don't know.

16      **MR. WOODWARD:**  I'm glad you're typing that up

17   because he's telling, in his thing for next week, he's

18   saying I never gave it to him.

19      **THE COURT:**  I don't know, we'll talk about that at

20   the hearing, okay.

21      When did you get it, counsel?

22   **RESPONSE BY MR. BUIKEMA**

23      **MR. BUIKEMA:**  I can't answer that question off the

24   top of my head, it's relatively recent.

25      **THE COURT:**  Pardon?

*10-10978; American University of Antigua v. Steven Woodward*

**EXHIBIT 8**

**Response By Mr. Buikema**
**Thursday/August 11, 2011**                    29

1      **MR. BUIKEMA:**  I can't answer that question off the

2      top of my head.  It's relatively recent in the

3      litigation where we received, what I would consider to

4      be, nearly conforming responses to request for

5      admissions.

6          **THE COURT:**  Is the failure to respond to request

7      for admissions part of the basis for your motion?

8          **MR. BUIKEMA:**  It is part of the basis for our

9      motion.  And I'll say failure to respond timely is part

10     of the basis, rather than the failure to respond at

11     all, which I think is a distinction that Mr. Woodward

12     is missing.

**RESPONSE BY MR. WOODWARD**

14     **MR. WOODWARD:**  Sir, I asked Ms. Orem here if she

15     would verify the date of which he filed the motion for

16     non-compliance of the motion to compel me to produce

17     that information.  He did it, like, three hours after I

18     sent him that email on December 16th.

19         I brought that information to him, he didn't have

20     to go through a bunch of documentation.  Matter of

21     fact, the documentation I gave him, everything was

22     stamped, Exhibit 1, Exhibit 3, and it has an index, an

23     electronic Excel Spreadsheet of every single thing that

24     was inside that 2,500 pages of exhibits.

25         **THE COURT:**  Okay.  Well, he said he's got the

---

*10-10978; American University of Antigua v. Steven Woodward*

FR Doc 2010-26796
[Federal Register: November 1, 2010 (Volume 75, Number 210)]
[Rules and Regulations]
[Page 67169-67200]
From the Federal Register Online via GPO Access [wais.access.gpo.gov]
[DOCID:fr01no10-5]

Download: 

------------------------------------------------------------------------

[[Page 67169]]

------------------------------------------------------------------------

Part II




Department of Education




------------------------------------------------------------------------




34 CFR Parts 600, 668, 682, et al.


Foreign Institutions--Federal Student Aid Programs; Final Rule

[[Page 67170]]


------------------------------------------------------------------------

DEPARTMENT OF EDUCATION

34 CFR Parts 600, 668, 682 and 685

[Docket ID ED--2010--OPE--0009]
RIN 1840-AD03

Foreign Institutions--Federal Student Aid Programs

AGENCY: Office of Postsecondary Education, Department of Education.

ACTION: Final regulations.

------------------------------------------------------------------------

SUMMARY: The Secretary amends the regulations for Institutional
Eligibility Under the Higher Education Act of 1965, the Student
Assistance General Provisions, the Federal Family Education Loan (FFEL)


EXHIBIT 9

foreign graduate medical schools to report on USMLE pass rates, MCAT scores, residency placement and citizenship data (unless it is exempt from providing citizenship data) for a calendar year, and to submit that information, to its accrediting authority or the Department, as applicable, no later than April 30 of each year, unless the Secretary specifies a different date through a notice in the Federal Register.

Comments: None.

Discussion: The proposed regulations provided that, instead of submitting USMLE pass rate data directly to the Department, a foreign graduate medical school could choose to allow the ECFMG or other responsible third party to calculate and report the school's USMLE rates directly to the Secretary. The Department has reconsidered this provision, however, in view of the fact that the ECMFG does not provide schools with individual pass rate data, except with written student-by-student consent. In addition, ECFMG does not calculate or report a school pass rate if fewer than five test results would be included in the rate.

The Department regards the ECFMG as the most reliable source for pass rates and pass rate data. We note that the pertinent HEA provision refers explicitly to pass rates on examinations administered by ECFMG, and the Department cannot identify any more authoritative source for ECMFG data and pass rates than ECFMG. The Department also recognizes that the option of having ECFMG calculate and report a school's rate may be a significant convenience to foreign graduate medical schools participating or seeking to participate in the Direct Loan program, in contrast to obtaining individual consents in a manner consistent with applicable privacy laws, and then submitting those consents to ECFMG so as to obtain all individual test results, and then furnishing those results to the Department. Furthermore, reliance on ECFMG to provide pass rates is consistent with the GAO's recommendation regarding data sharing.

For these reasons, with two limitations, the Department is retaining the option in proposed Sec. 600.55(d)(2) for foreign graduate medical schools to rely on ECFMG pass rate reports in lieu of obtaining individual student and graduate consents and then collecting and submitting reports of all test results to the Department under Sec. 600.55(d)(1)(iii). The first limitation is that foreign graduate medical schools desiring to invoke the option of relying on ECFMG reports of pass rates must annually provide written consent acknowledging that the ECFMG calculation will be conclusive for purposes of Title IV institutional eligibility. This limitation is necessary because the data needed to confirm the accuracy of ECMFG calculations is available only through obtaining individual consents from all students and graduates included in the ECFMG rate, and because the availability of such consents is not within the control of the Department, the ECFMG, or, at that stage, the foreign graduate medical school. As long as the foreign graduate medical school is fully informed of this circumstance, the Department regards the ECFMG option as contributing to effective administration of the Title IV programs.

The second limitation is that the option cannot be used by foreign graduate medical schools that had fewer than eight test results during the year on any of the three USMLE tests for which rates are to be determined. Under Sec. 600.55(f)(4), the Department uses an alternate methodology to compute rates for these schools. ECFMG does not use

[[Page 67179]]

this methodology, nor in most cases will its reports contain the data the Department would need to do the calculation itself. This means that schools will need to determine whether the number of test takers will be high enough to invoke the ECFMG option early enough to obtain individual consents if there is any possibility it will not. We note that the previously discussed change to include the USMLE pass rate

...res of all students, rather than limiting the calculation to U.S. citizens, nationals, and eligible permanent residents, is likely to result in fewer schools that will be barred by low numbers of test takers from using the ECFMG reported rates option.

Finally, because the language of the HEA makes clear that a loss of eligibility for a failure to meet the USMLE pass rate threshold is nondiscretionary, and to reflect the discussion above, including the new regulatory requirement for written consent from the school to considering an ECFMG report as conclusive regarding the calculation of the school's pass rates, the Department is revising its provision regarding administrative appeals from loss of institutional eligibility to reflect the limited scope remaining for such an appeal. The Department's approach is consistent with treatment of other nondiscretionary eligibility requirements, such as accreditation and state licensure (Sec. 600.41(e)(1) and (e)(2)).

Changes: Sections 600.55(d)(iii) and (d)(2) provide that a foreign graduate medical school may choose to allow the ECFMG or other responsible third party to provide the school's USMLE pass rate directly to the Secretary only if that school has provided by April 30 to the Secretary written consent acceptable to the Secretary (1) allowing the Secretary to rely on the USMLE pass rate information provided to the Department by the ECFMG or other responsible third party; and (2) agreeing that the rate calculated by the ECFMG will be conclusive for purposes of determining the school's compliance with the required 75-percent pass rate thresholds. Section 600.55(d)(2) provides that a foreign graduate medical school that, in accordance with Sec. 600.55(f)(4), must use the alternative means of providing pass rate information to the Department because it does not have a sufficient number of step/test results, may not opt to have its pass rates provided to the Department by the ECFMG. We have added Sec. 600.41(e)(3) to make clear that, in an appeal from a loss of institutional eligibility resulting from a pass rate or pass rates below 75 percent, the level of the pass rate for the foreign graduate medical school for the preceding calendar year is the sole issue, and that, for a foreign graduate medical school that invoked the ECFMG report option, ECFMG's calculation of the rate or rates is conclusive.

Comments: None.

Discussion: Under section 102(a)(2)(A)(i)(I)(aa) of the HEA, for a foreign graduate medical school to remain eligible for participation in the Title IV, HEA programs, during the preceding year at least 60 percent of the school's students and graduates must not have been U.S. citizens, nationals, or eligible permanent residents, unless the school has had a State-approved clinical training program since prior to January 1, 2008. Schools must submit their citizenship rates in order for the Department to implement this HEA requirement. The requirement for submission of such data was implicit in, but not explicitly set out in, Sec. 600.55(f)(1)(i)(A) of the proposed regulations. The Department is, therefore, adding to the data-submission provision in Sec. 600.55(d)(1)(iv) new language to clarify that schools that have not had clinical training programs approved by a State since prior to January 1, 2008, must annually supply the Secretary with their citizenship rates, together with the methodology used to determine them, for purposes of enabling the Secretary to ensure compliance with section 102(a)(2)(A)(i)(I)(aa) of the HEA. In connection with this change, and for conformity with the ECFMG data-submission requirements, the Department has also changed the phrase ``academic year,'' in Sec. 600.55(f)(1)(i)(A), relating to citizenship rates, to ``calendar year.''

Changes: The Department is adding new language in Sec. 600.55(d)(1)(iv) to require schools that have not had clinical training programs approved by a State since prior to January 1, 2008, to annually supply the Secretary with their citizenship rates, together with the methodology used to determine them, for purposes of enabling

**Subject:**    RE: ECFMG core values

**From:**    Kelly, Bill (bkelly@ECFMG.org)

**To:**    steve_l_woodward@yahoo.com; paul@nicoletti-associates.com; alex@nicoletti-associates.com; VKesting@ECFMG.org;

**Date:**    Tuesday, March 24, 2009 4:30 PM

March 24, 2009

Mr. Woodward:

ECFMG does not provide pass/fail data on USMLE exams for individual medical schools. ECFMG publishes only aggregate performance data, which is published annually in the ECFMG Annual Report.

Sincerely,

William Kelly
Associate Vice President for Operations
ECFMG
3624 Market St., 4th Floor
Philadelphia, PA 19104
USA
Telephone: (215) 823-2277
Fax: (215) 386-9767
Email: bkelly@ecfmg.org

---

**From:** Steve Woodward [mailto:steve_l_woodward@yahoo.com]
**Sent:** Tuesday, March 24, 2009 10:46 AM
**To:** Kelly, Bill ; paul@nicoletti-associates.com; alex@nicoletti-associates.com; Kesting , Virginia
**Subject:** ECFMG core values

Mr Kelly and Ms. Kesting,

I am writing you to remind you that I am looking for all pass/fail rates for the USMLE Step 1, for the American University of Antigua , AUA from at least 2006 until now and all other data you have concerning this institution.



EXHIBIT 10

You notified me that I was no longer elligible to sit for the USMLE Step I, per an email AUA sent you May 6th 2008, AUA did not notify me until May 21st that I was no longer enrolled at AUA.  Since December 2007 I have been involved in a lawsuit with AUA and St Joseph Mercy.

I have evidence of how AUA manipulates student grades and conspired to have me removed from medical school.

I'm sure you are aware of the time, money and emotions I have spent dealing with this issue.

Before I go further with this matter with the ECFMG I would like to remind you of your values and goals.

ECFMG

Values:

"Improving world health through excellence in medical education in the context of ECFMG's core values of collaboration, professionalism and accountability."

Goals:

"Expand knowledge about international medical education programs and their graduates by gathering data, conducting research, and disseminating the findings."

Thank you for you time,

Steven Woodward

This Email has been scanned for all viruses Scanning Services, utilizing A proprietary SkyScan infrastructure.

| | |
|---|---|
| **Subject:** | RE: AUA USMLE Pass Rates |
| **From:** | Kelly, Bill (bkelly@ECFMG.org) |
| **To:** | steve_l_woodward@yahoo.com; |
| **Date:** | Tuesday, December 15, 2009 7:53 AM |

December 15, 2009

Re: USMLE/ECFMG ID No. 0-750-143-0

Dear Mr. Woodward:

This is in response to your December 4, 2009 e-mail concerning information that you indicated is USMLE performance data for students and graduates of the American University of Antigua School of Medicine ("AUA"). You have stated this performance data was posted on the AUA website or included in a presentation made by Dr. Victor Hrehorovich. You asked that ECFMG "confirm which is accurate the data incorporated in the data of the presentation or on the AUA website." ECFMG will neither confirm nor deny the accuracy of summaries and analyses completed by other organizations.

I can advise that under a new ECFMG policy, ECFMG may provide international medical schools with examinee-specific performance data for their students and graduates who apply to ECFMG for USMLE Step 1, Step 2 CK, and Step 2 CS examinations on or after November 2, 2009. Beginning in early 2010, ECFMG expects to start providing international medical schools with aggregate USMLE performance data on their students and graduates. This performance data will be provided to international medical schools only under certain conditions.

Kindly refer to the information in the November 4, 2009 issue of the ECFMG newsletter, *The ECFMG Reporter*. The link is at http://www.ecfmg.org/reporter/2009/iss146.html#heading1

Sincerely,

William C. Kelly

Associate Vice President for Operations

ECFMG

3624 Market St., 4th Floor

Philadelphia, PA 19104, USA

**EXHIBIT ‖**

Telephone: 1 215 823-2277

E-mail: bkelly@ecfmg.org

---

**From:** Steve Woodward [mailto:steve_l_woodward@yahoo.com]
**Sent:** Friday, December 04, 2009 3:22 PM
**To:** Kelly, Bill
**Subject:** AUA USMLE Pass Rates

Dear Mr. Kelly,

Please verify these facts published by the American University of Antigua, AUA.

On the AUA web site (http://www.auamed.org/ecfmg-usmle-information) AUA quotes these USMLE pass rates:

"Since AUA's inception, USMLE Step 1 first-time pass rates for all students is 80.6%"

Reported through 04/15/09.

Attached is a presentation, which Dr. Victor Hrehorovich gave his 5th semester students.

On page 13 of this presentation there is a graph of AUA pass rates, which clearly show the pass rate to that time frame was not 80.6%.

If you open the graph object, right-click, chart object, open. AUA revealed the USMLE and GPA for students that were reported per this graph.

The attached spreadsheet is that chart object saved as an excel spreadsheet.

If you open the "AUA" tab you will see all the student names and corresponding USMLE and GPA grades.  If you select all and select data, sort, column B(step 1) only 39 of the 87 students passed the USMLE.  This equals 44% not 80.6%

Please confirm which is accurate the data incorporated in the data of the presentation or the AUA web site.

Thank you for your time,


Steven Woodward


This Email has been scanned for all viruses Scanning Services, utilizing A proprietary SkyScan infrastructure.

**Subject:**   Subpoena

**From:**   Suzanne Williams (SWilliams@NBME.org)

**To:**   Steve_L_Woodward@yahoo.com;

**Date:**   Thursday, December 30, 2010 12:30 PM


Mr. Woodward,

I am responding to your inquiry concerning the status of our reply to the subpoena issued to the NBME on December 6, 2010.   The NBME responds to subpoenas that are properly issued from a court with jurisdiction over NBME and otherwise comply with the applicable rules (in this case, FRCP 45).   The subpoena you are inquiring about does not satisfy this criteria.  I'm certain you can appreciate our need to maintain the confidentiality of the records in our possession.  In addition, the information sought in the aforementioned subpoena is vague, overly broad and may not be produced or stored by the NBME.  We would therefore have objections to the subpoena even if it had been properly issued.   Please direct any future inquiries on this matter to my attention in writing.   Thank you.


Suzanne Williams

Associate Counsel , NBME


EXHIBIT 12

**Subject:** AUA v. Woodward - Subpoenas to ECFMG

**From:** McEnroe, Elisa P. (emcenroe@morganlewis.com)

**To:** Steve_L_Woodward@yahoo.com;

**Cc:** ebuikema@cardellilaw.com;

**Date:** Wednesday, February 23, 2011 3:17 PM


Mr. Woodward,


Please see the attached correspondence.


**Elisa P. McEnroe**
Morgan, Lewis & Bockius LLP
1701 Market Street | Philadelphia, PA 19103-2921
Direct: 215.963.5917 | Main: 215.963.5000 | Fax: 215.963.5001
emcenroe@morganlewis.com | www.morganlewis.com

Assistant: Angela P. Garden | 215.963.5463 | agarden@morganlewis.com


```
DISCLAIMER
This e-mail message is intended only for the personal use
of the recipient(s) named above. This message may be an
attorney-client communication and as such privileged and
confidential and/or it may include attorney work product.
If you are not an intended recipient, you may not review,
copy or distribute this message. If you have received this
communication in error, please notify us immediately by
e-mail and delete the original message.
```

EXHIBIT 13

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: 215.963.5000
Fax: 215.963.5001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**Elisa P. McEnroe**
215.963.5917
emcenroe@morganlewis.com


February 23, 2011

**VIA ELECTRONIC MAIL**

Steven L. Woodward
c/o 7211 Brittwood Lane
Flint, Michigan 48507
Steve_L_Woodward@yahoo.com

Re:     *American University of Antigua College of Medicine v. Steven Woodward,*
        *E.D. Mich., Case No. 10-cv-10978*

Dear Mr. Woodward:

My firm represents the Educational Commission for Foreign Medical Graduates ("ECFMG").

I write regarding the three subpoenas you served on ECFMG in connection with the above-captioned action.  As you are no doubt aware, the American University of Antigua College of Medicine ("AUA") filed a motion to quash third party subpoenas (docket number 104), including those you served on ECFMG.  It is ECFMG's position that the pending motion to quash must be resolved before ECFMG is obligated to respond to your subpoenas.  In the meantime, ECFMG reserves all of its rights and obligations thereto.

I remain available if you have any questions or would like to discuss.

Very truly yours,

Elisa P. McEnroe

c:  Eric A. Buikema, Esq. (ebuikema@cardellilaw.com)

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Argument By Mr. Buikema                    7
Monday/April 19, 2010

1        THE COURT:  Wait, that's a different theory.

2        MR. BUIKEMA:  You asked me specifically about the

3    confusing --

4        THE COURT:  We're going to go to each one of your

5    theories because I'm trying to figure out why you're

6    asserting these theories because it doesn't seem to me

7    your Lanham Act has any merit at all.

8        MR. BUIKEMA:  The Lanham Act claim is relative not

9    to the use of the confusingly similar web domain name,

10   I misunderstood, Your Honor, apologies.

11       The Lanham Act claim is relative to plaintiff's

12   use, republication of our actual logo, trade name.

13       THE COURT:  Where is that set forth here?

14       MR. BUIKEMA:  This is set forth in the verified

15   complaint.

16       THE COURT:  No, no, I've got your motion.  I'm

17   reading your motion.  Your motion tells me why you're

18   entitled to relief.  Now, you're coming up with

19   something I didn't read in the motion at all.

20       MR. BUIKEMA:  That is contained, I believe, at

21   page six, Your Honor -- excuse me, top of page seven.

22   Our motion reads, "Defendant's use of the similar

23   domain name, including copies, reproduction and/or

24   counterfeits of the AUA logo on the site itself has

25   been and continues to be done with the intent to cause

*10-10978; American University of Antigua v. Steven Woodward*

**EXHIBIT 14**

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Argument By Mr. Buikema
Monday/April 19, 2010                          13

1      claim which is, "Willful violation of Family

2      Educational Rights and Privacy Act"?

3          MR. BUIKEMA:  Correct.

4          THE COURT:  I'm reading from your brief, "The

5      Family Educational Rights and Privacy Act of 1974

6      prohibits the federal funding of educational

7      institutions that have a policy of practice of

8      releasing education records without authorized

9      persons."  What's that got to do with this case?

10         MR. BUIKEMA:  In my view, Your Honor, it's a

11     wrongful act predicate to a tortious interference

12     claim.  And perhaps that's not made as clear as it

13     should be by our pleadings but that's how I regard this

14     claim.

15         FERPA prohibits disclosures of students'

16     information by the University itself.  And has, as

17     consequence, the termination of federal funding, which

18     my client does receive and some of the students receive

19     benefits under that provision.

20         It's my view that Mr. Woodward's conduct in

21     disclosing student information grades, which he admits

22     to doing and, in fact, has muddied this record by

23     attaching yet more of that information, creates

24     standing to my client -- gives standing to my client

25     the challenge on behalf of its students.

_10-10978; American University of Antigua v. Steven Woodward_

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

**Argument By Mr. Buikema**
Monday/April 19, 2010                          14

1        But more importantly --

2        THE COURT:  Why, he's not an agent of the

3    university in any way, shape or form?

4        MR. BUIKEMA:  But we are an agent of our students

5    whose information has been --

6        THE COURT:  But this prohibits the University from

7    doing it.  How could you possibly argue that the

8    University is doing it, when they're not?

9        MR. BUIKEMA:  I'm not sure I understand Your

10   Honor's question.

11       THE COURT:  It says, "It prohibits federal funding

12   of educational institutions who have a policy or

13   practice."  You don't contend the education has a

14   policy or practice, do you?

15       MR. BUIKEMA:  I do not contend that it has a

16   policy or practice.  But Mr. Woodward's actions in

17   disclosing the student information could cause the

18   federal government to terminate funding --

19       THE COURT:  How could that be a policy or practice

20   of the University?  How would anyone ever believe his

21   conduct is a practice or policy of the University?

22       MR. BUIKEMA:  I'd rather not find out, frankly,

23   Your Honor.

24       THE COURT:  It's just ridiculous.  I don't know

25   why you're arguing that.  His conduct can't be

*10-10978; American University of Antigua v. Steven Woodward*

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Argument By Mr. Buikema
Monday/April 19, 2010

19

1    His name is Neil Simon, not to be confused with the

2    playwright.

3        THE COURT:  Let's go, for example, to small "h":

4    "AUA students are sexually assaulted."  Is that a false

5    statement?

6        MR. BUIKEMA:  In and of itself, an AUA student was

7    apparently assaulted.  The connotation of AUA students

8    being sexually assaulted, in the tense, is a false

9    statement.

10        THE COURT:  In the what?

11        MR. BUIKEMA:  In the tense utilized or represented

12    by the website is a false statement.

13        THE COURT:  I'm missing what you're talking about,

14    "Tense".

15        MR. BUIKEMA:  The statement in the website

16    connotes a general practice or happening as if "All

17    students" or generally students are sexually assaulted

18    at AUA.

19        THE COURT:  That's the spin you put on it.  But

20    the statement itself is true, "AUA students are

21    sexually assaulted", have they?

22        MR. BUIKEMA:  An AUA student was sexually

23    assaulted.

24        THE COURT:  Only one?

25        MR. BUIKEMA:  To my knowledge, yes.

*10-10978; American University of Antigua v. Steven Woodward*



# UNITED STATES DEPARTMENT OF EDUCATION

### OFFICE OF MANAGEMENT

Mr. Steven Woodward
7211 Brittwood Lane
Flint, Michigan 48507

SEP 20 2011

Dear Mr. Woodward:

This is to respond to your August 26, 2011, complaint form to this office in which you allege that rights afforded you under the Family Educational Rights and Privacy Act (FERPA) were violated by the American University of Antigua when it did not provide you access to your education records. This office administers FERPA, which addresses issues pertaining to education records.

FERPA is a Federal law that gives a student the right to have access to his or her education records, the right to seek to have the records amended, and the right to have some control over the disclosure of information from the records. The term "education records" is defined as those records directly related to a student and maintained by an educational agency or institution or by a party acting for the agency or institution. Enclosed is a copy of the FERPA fact sheet.

FERPA applies to educational agencies and institutions that receive Federal funds from programs administered by the U.S. Department of Education. Based on the information you provided, it does not appear that FERPA applies to the American University of Antigua. Accordingly, this office is unable to assist you in this matter.

Sincerely,

Bernard Cieplak
Program Analyst
Family Policy Compliance Office

Enclosure

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-4500
www.ed.gov

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness by fostering educational excellence and ensuring equal access.*





**EXHIBIT** *15*