UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED

2011 NOV 22 P 1: 55

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, Plaintiff

U.S DIST COURT CLERK
E DIST MICH
FLINT

United States District Court
Judge Patrick J. Duggan, presiding

Case No.: 2:10-cv-10978

V
Steven Woodward, Defendant

| | |
|---|---|
| Eric A. Buikema (P58379) | Steven Woodward |
| Cardelli, Lanfear & Buikema, P.C. | 7211 Brittwood Ln |
| Attorneys for Plaintiff | Flint, MI 48507 |
| 322 W. Lincoln | steve_L_woodward@yahoo.com |
| Royal Oak, MI 48067 | |
| (248)544-1100 | |
| ebuikema@cardellilaw.com | |

**Motion for Sealed Documents per LR 5.3**

1

**Motion for Sealed Documents per LR 5.3**

The Defendant requests a Court Order, per LR 5.3, for Sealed Exhibits to support the defense against the Plaintiff's claims.

Facts that the Plaintiff asserts, concerning Susan Zonia's December 17, 2007 memo, prove AUA, Susan Zonia, St. Joseph Mercy Oakland Hospital(Trinity Health), SJMO, David Gunsberg (a convicted kidnapper), and Eric Buikema lied to (including but not limited to filing false documentation and making false declarations) Michigan State Court of Appeals, **Exhibit 1**, Oakland County Circuit Court, **Exhibit 2**, and the United States District Court Eastern District of Michigan Southern Division (Including but not limited to Docket 177), **Exhibit 3**.  (Note: Susan Zonia is not a medical doctor)


**Facts**:

**1)** Dr. Malloy and Dr. Breitenbach were the only two Doctors to evaluate Steven Woodward's Clinical performance for the 5th Semester, these facts are verified by the Schedule of Clinical Rotations, **Exhibit 4**.

(Noted Steven Woodward paid for and was scheduled a rotation in Emergency Medicine, but did not receive this rotation due to poor program management by AUA and SJMO)

**A)** Dr. Malloy's Clinical Evaluation of Steven Woodward's: Attitude, Learning Skills, Communication Skills, and Professionalism are "**90**" equating to "**OUTSTANDING**", **Exhibit 5.**

**B)** Dr. Breitenbach's Clinical Evaluation of Steven Woodward's: Attitude, Learning Skills, Communication Skills, and Professionalism are "**95**" equating to

2

"**OUTSTANDING**", **Exhibit 6**. Steven Woodward's attendance was rated as an "**A**" (Attended all scheduled sessions)

**C)** Steven Woodward's 5th Semester grades for projects relating to patients are nearly perfect: Outpatient Evaluation (**95**), Verbal Presentation (**100**), and Portfolio (**100**), **Exhibit 7**.

**2)** St Joseph Mercy Oakland is a 440(+) bed hospital, **Exhibit 8**.

"The average time that patients spend with physicians during physician office visits increased by about two to three minutes form 1989-1990(16.3-16.7 minutes) to 2003-2004(18.7-19.7 minutes)", **Exhibit 9**.

**A)** The 5th Semester Syllabus defined the Clinical Rotation, **Exhibit 10**, "**1. Observing residents' work, asking pertinent questions and taking notes in their Journal**."

The "SJMO Internal Medicine Residency TEAM ROSTER", **Exhibit 11**, states "**Every Med student with * is observation ONLY**" and "**Woodward ***".

**B)** The following are the dates and number of patients visits accomplished by Steven Woodward between 9/13 and 10/22/2007 of the Fifth(5th) Semester.

(Date patient seen **: Number of patients visits that day**)

(9/13:**5**), (9/17:**7**), (9/18:**2**), (9/19:**3**), (9/20:**4**), (9/24:**7**), (9/25:**9**), (9/26:**6**), (9/27:**4**), (9/30:**9**)

September 30 would equate to TWO(2) Weeks. The total patient visits by Steven Woodward for the first two weeks (9/13 to 9/30) equals only 56 total, but only 33 individual patients.

(10/1:**12**), (10/2:**17**), (10/3:**6**), (10/4:**13**), (10/8:**6**), (10/9:**15**), (10/10:**9**), (10/11:**6**),

(10/12:**4**), (10/15:**5**), (10/16:**8**), (10/17:**9**), (10/18:**2**), (10/22:**6**)

**C)** Between September 13 until October 22, 2007 Steven Woodward rounded at SJMO

under Dr. Malloy's staff for 24 days.  At 19.7(20) minutes per patient a doctor would see

an average of three(3) patients per hour; 24 patients per day.  Multiplying 24 patients per

day by 24 days would equate to 576 patients.

**D)** On October 22, 2007 Steven Woodward finished the requirement of seeing 100

individual patients, the total number of patient visits equaled to approximately 174

patient visits, **Exhibit 12**.

**E)** Susan Zonia collected student patient visit data weekly, **Exhibit 13**.


**3)** The proof, including but not limited to, Fraud and False Statements to the Courts is

Susan Zonia's memo, dated December 17, 2007, **Exhibit 14**, which states:

**"Mr. Woodward appeared to have resented every assignment we gave him.  But,**

**instead of constructive criticism, he vented his anger in a professional unacceptable**

**manner.  For example: he completed his 100 patient log in two weeks and wanted to**

**stop attending the program;"**

Steven Woodward's email, **Exhibit 12**, dated October 22, 2007 proves Susan Zonia's

memo is FALSE and is a BLATANT LIE.

**A)** Deneen McCall(Nicks) deposition, **Exhibit 15**, page 20, Line 17 states

**"Q. Now, you said 150 patient log.  The memo says, 100 patient log.  Why is there a**

**difference, if you know?**

**A. It has changed a lot so I'm not 100 percent sure if his group was 100 or groups after him, but the patient log count changes every semester."**

B) The 2007, 5th Semester class of Steven Woodward was the first 5th Semester course offered by AUA at SJMO.  Students were required to see 150 patients in following 5th Semester courses, a 50% increase in patient visits.

C)  Susan Zonia's own deposition confirms that her memo lies about Steven Woodward.

I) Susan Zonia was asked, **Exhibit 16**, page 54 Line 3

**"Q.  You indicate, "He completed his hundred patient log in two weeks and wanted to stop attending the program."  Is it fair for me to assume that that was based on information from one of the course instructors?**

**A.  Correct.  Most students were hard pressed to log a hundred cases in 12 weeks**."
If this was true the program would not have increased the requirement from 100 to 150 logged patient cases in following semesters.   Steven Woodward finished seeing 100 patients in approximately six(2) weeks; only logging 56 (33 individual patient cases) in two(2) weeks.   These are facts that were emailed to Susan Zonia weekly.

II) Susan Zonia was asked, **Exhibit 16**, page 54 Line 9

**"Q.  Did he ever see more than 100 patients?**

**A.  No.  It's not just see a patient.  Like, "Oh, look.  There is one.  There is one. There is one."  He was suppose to have substantive contact and know the case and the diagnosis and be able to discuss it.  And for someone who has just completed two years of basic science to be able to do 100 cases in two weeks I'm hard pressed having a resident that can do 100 cases in two weeks and these are people that are already licensed."**

This is obviously a lie since the objective of the 5th Semester was to "Observe Only", to shadow licensed doctors. On average a licensed doctor can see 24 patients a day as reported. Steven Woodward Observed (shadowed and witnessed) 100 individual patients under the guidance of Dr. Malloy between September 13 until October 22, 2007, not two(2) weeks. Dr. Malloy's evaluation testifies that Steven Woodward was an OUTSTANDING student. Susan Zonia was given weekly patient log files and Dr Malloy's signed evaluation was kept in her department records.

The patient records will show that Steven Woodward recorded approximately 250 patient cases over the course of the 5th Semester, and every doctor gave him an OUTSTANDING evaluation.

**III)** Susan Zonia was asked, **Exhibit 16**, page 54 Line 18

**"Q. Did you ever verify that that was, in fact, true that he completed 100 patient log in two weeks?**

**A. He walked down a corridor and saw 100 patients. That's not what the intent of the assignment was."**

Susan Zonia's statement is obviously false, Dr. Malloy's evaluation proves it, Steven Woodward could not be an OUTSTANDING student if he didn't do the assignment. Steven Woodward's patient log files proves that the requirement was completed after approximately six(6) weeks not two(2) weeks. Susan Zonia was given weekly reports confirming this, she said nothing until her December 17th memo.

**IV)** Susan Zonia was asked, **Exhibit 16**, page 54 Line 22

**"Q. How do you know that, because the instructor told you?**

**A. I know it's physically impossible for a student at that level to interview 100 patients in two weeks.**"

Obviously Susan Zonia is a liar and makes false statements. Steven Woodward was an Observation Only student per Susan Zonia's own department documents. Steven Woodward did not turn in his completed assignment until October 22 over a month, approximately six(6) weeks. It is documented that doctors spend on average 20 minutes with a patient(24 per day), Steven Woodward only Observed this action.

**V)** Susan Zonia was asked, **Exhibit 16**, page 54 Line 25

"**Q. OK, I think you're not hearing my question. My question is, did you ever verify that he completed his hundred patient log in two weeks? I'm not asking you if it is possible. I'm asking you if you ever verified it.**

**A. He turned in to Dr. Yanez his log with 100 patients and asked if he could now be excused from the course.**

**Q. In two weeks?**

**A. In two weeks.**

**Q. And that's what Dr. Yanez told you?**

**A. Correct.**

**Q. But did you ever verify that that was true?**

**A. I looked at the logs and knew it wasn't possible.**

**Q. So your answer is, "yes" you did verify it?**

**A. Yes.**"

This statement is definitive proof that Susan Zonia's memo is FALSE, a lie, Fraud, based on HEARSAY. Dr. Yanez was not, and never round with Steven Woodward, Dr. Malloy

and his team did. Steven Woodward completed his patient logs in approximately six(6), not two(2) weeks.

Steven Woodward never asked to be excused from the course.

Steven Woodward completed an assignment in six(6) weeks by hard work, dedication, and overtime. Steven Woodward's OUTSTANDING evaluations prove Susan Zonia's memo and deposition testimony are lies.

**4)** Steven Woodward has an extensive history in patient care, including but not limited to: volunteer Firefighter, Ski Patrol, and Lifeguard, **Exhibit 17**.

American University of Antigua, AUA, students have to take two(2) Clinical medicine courses prior to the 5th Semester:

-Doctor Patient Society, DPS 1st Semester

-Introduction to Clinical Medicine, ICM 4th Semester

The Defendant requests two documents to be sealed: "AUA Portfolio" and a hard copy of the last(October 22, 2007) electronic spreadsheet of patient records that was created by the Defendant. The requested documentation to be sealed are patient log files which can not be made public without violating patient privacy laws.

Steven Woodward
7211 Brittwood Lane
Flint, Michigan 48507
(810)235-7267
steve_L_woodward@yahoo.com

8

**List of Exhibits:**
1. State of Michigan Court of Appeals
2. Circuit Court County of Oakland
3. Docket 177 Case No. 10-cv-10978-PJD-MJH
4. Fifth Semester Schedule of Clinical Rotations
5. In-Patient Student Evaluation
6. Outpatient Student Evaluation
7. Fifth Semester Final Grades
8. SJMO URL About
9. Time Spent with Physician
10. Fifth Semester Syllabus, page 6
11. SJMO Team Roster
12. Email From Steven Woodward Date Oct. 22, 2007
13. Email From Susan Zonia Date 10/10/2007
14. Susan Zonia's Memo, December 17, 2007
15. Deposition of Deneen McCall, page 18-21
16. Deposition of Susan Zonia, page 54-57
17. Certificates of Steven Woodward

# STATE OF MICHIGAN

# COURT OF APPEALS

---

STEVEN WOODWARD,

      Plaintiff-Appellant,

v

TRINITY HEALTH-MICHIGAN, SUSAN
CATHERINE ZONIA and AMERICAN
UNIVERSITY OF ANTIGUA COLLEGE OF
MEDICINE,

      Defendants-Appellees.

UNPUBLISHED
January 13, 2011

No.  292172
Oakland Circuit Court
LC No.  2007-088103-CZ

---

Before:  GLEICHER, P.J., and ZAHRA and K.F. KELLY, JJ.

PER CURIAM.

Steven Woodward appeals as of right the trial court's grant of summary disposition to Trinity Health-Michigan, Susan Catherine Zonia, and the American University of Antigua College of Medicine (AUA).  We affirm.

Woodward was a medical student in his fifth semester of study at AUA.  As part of the medical school program, AUA placed Woodward in a clinical experience rotation at St. Joseph Mercy Oakland Hospital (SJMO), which is owned and operated by Trinity Health-Michigan (Trinity).  Zonia served as the director of medical education at SJMO, and as a dean for AUA's program at that site.  Zonia's duties included oversight of AUA's fifth semester program at SJMO, and the evaluation of student performance.  This lawsuit arises from a memorandum authored by Zonia and forwarded to Dr. Ernesto Calderon, an AUA administrator, at Calderon's request.  The memorandum described concerns regarding Woodward's demeanor and unprofessional conduct while at SJMO, stating in pertinent part:

> Mr. Woodward's lack of professionalism and poor communication skills are a source of great concern.  We do not feel that he will be a good ambassador for AUA, our hospital, or the profession he is to enter.  We encourage the faculty at AUA to review his entire record, to determine if he does not meet the qualifications to sit for the boards, and begin clinical rotations.
>
> The record documents numerous specific examples of Woodward's inappropriate conduct while at SJMO, including his demonstrated resentment of assignments, his completion of 100 patient logs in a mere two-week period accompanied by an indication that he did not wish

-1-

**EXHIBIT 1**



# Circuit Court

### County of Oakland

SHALINA KUMAR
CIRCUIT JUDGE

1200 N TELEGRAPH RD DEPT 404
PONTIAC MI 48341-0404

SIXTH JUDICIAL CIRCUIT
OF MICHIGAN
(248) 858-5280
FAX 248-975-9784
kumars@oakgov.com



BY: ------------------

April 29, 2009

RECEIVED
APR X 0 2009

BY: ------------------

Paul J. Nicoletti, Esq.
Nicoletti & Associates
39520 Woodward Ave., Ste. 200
Bloomfield Hills, MI 48304

David B. Gunsberg, Esq.
Law Office of David Gunsberg
322 North Old Woodward Ave.
Birmingham, MI 48009

**RE: Steven Woodward v Trinity Health-Michigan, et al
Circuit Court Case No. 2007-646-9090**

Dear Counsel:

Enclosed please find the Opinion and Order that was issued by the Honorable
Shalina Kumar with regard to the above referenced matter.

Very truly yours,

Jenice R. McGruder
Judicial Assistant to the
HONORABLE SHALINA D. KUMAR

# EXHIBIT 2

from AUA who had three years of experience prior to his 5th semester at AUA. Plaintiff was cited for unprofessional conduct and used the word "AUSUCKS" as his master program password. Plaintiff also used the "F word" in letters and emails to school officials. In addition, school officials have stated that Plaintiff would "grandstand" and was disruptive during class. During a review exam, Plaintiff used the answer "B" to all questions in order to complete the exam in 10 minutes. Previously, on November 2, 2006, Mr. Woodward was placed on non-academic probation for engaging in inappropriate behavior against one of his professors, Dr. Somaraju of AUA. **(See Exh. 3 - Defendant's Motion for Summary Disposition)**. Mr. Woodward was encouraged to seek counseling for anger management at that time.

Despite the evidence of unprofessional behavior, Plaintiff claims that he was defamed when Defendant, Susan Zonia, PHD, wrote to Dr. Ernesto Calderon of AUA wherein she stated:

> "Mr. Woodward's lack of professionalism and poor communication skills are a source of great concern. We do not feel that he will be a good ambassador for AUA, our hospital, or the profession he is to enter. We encourage the faculty at AUA to review his entire record, to determine if he does not meet the qualifications to sit for the boards, and begin clinical rotations." (Exh. 1 Defendant's motion for summary disposition).

Plaintiff claims that he was dismissed from the AUA medical school program due to this letter and, therefore, this lawsuit followed.

Plaintiff alleges in his complaint that Defendants communicated false statements to AUA about Plaintiff's unprofessional behavior. Plaintiff also alleges that Defendants, Trinity and Dr. Zonia interfered with his contractual

**2**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, a foreign corporation,

      Plaintiff,

                              United States District Court Judge
                              Patrick J. Duggan, presiding
                              Michael Hluchaniuk, referral
V                                Case No.:  2:10-cv-10978

STEVEN L. WOODWARD,

      Defendant.

---

| Eric A. Buikema (P58379) | STEVEN L. WOODWARD |
| CARDELLI, LANFEAR & BUIKEMA, P.C. | In Pro Per |
| Attorneys for Plaintiff | c/o 7211 Brittwood Lane |
| 322 W. Lincoln | Flint, MI 48507 |
| Royal Oak, MI 48067 | Steve_L_woodward@yahoo.com |
| (248) 544-1100 | |
| ebuikema@cardellilaw.com | |

---

## AUA'S SUPPLEMENTAL RESPONSE TO WOODWARD'S MOTION FOR SANCTIONS (Dkt. 136) PURSUANT TO COURT ORDER (Dkt. 174)

    This is a defamation and trademark infringement action against Defendant Steven Woodward, who maintains websites and YouTube videos which defame Plaintiff American University of Antigua College of Medicine ("AUA") and allege it to commit fraud, criminal conspiracy, federal crimes (reportable to the FBI) and reckless endangerment of its students. These claims are false and per se defamatory.

    Defendant filed a Motion for Sanctions (Docket No. 136), which the Court determined was a motion to compel.  (Docket No. 174).  The Court ordered limited additional briefing

1



EXHIBIT 3

regarding the relevance of Defendant's requests and the propriety of AUA's answers and objections.   AUA will confine its discussion to the 36 (of 56) requests for admission that Woodward has alleged were not made in "good faith."

## STANDARD OF REVIEW

**Irrelevance as an Objection.**  Objections to requests for admissions are proper where a requested admission is irrelevant to the issues in the case. See e.g. *See* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2254 at 528 (2d ed. 1994). As the Court knows, only relevant evidence is admissible.  FRE 402.  Relevant evidence is evidence "having any tendency to make the existence of any fact that is <u>of consequence to the determination of the action</u> more probable or less probable than it would be without the evidence.  FRE 401.

**Good Faith Responses.**  AUA notes that the "good faith" standard required by Fed. R. Civ. P. 36(a)(4) pertains only to qualified answers and is not the same standard which the Court applies when determining the sufficiency of a response under Fed. R. Civ. P. 36(a)(6).  This sufficiency standard refers to the <u>specificity</u> of the response, not whether the response is correct or in good faith. See e.g. *Foretich v. Chung*, 151 F.R.D. 198, 202 (D.D.C. 1993).

## BACKGROUND

As the Court is no doubt aware, the instant case is not the first litigation between the parties.  The Michigan Court of Appeals (and the Oakland County Circuit Court) in the unpublished per curiam opinion in the case of *Steven Woodward v. American University of Antigua, et al*, decided January 13, 2011 (Docket No. 292172)(Exhibit 1) has already found as a

2

matter of law a number of facts, including that Woodward had no valid contract with AUA. The

Court of Appeals concluded:

- Woodward's conduct at AUA was replete with instances of unprofessional behavior. Exhibit 1 at 1-2.
- Woodward was a poor student, with only a 1.5 grade-point average. Exhibit 1 at 2.
- AUA did not deny Woodward due process. Exhibit 1 at 3.
- AUA had sufficient grounds to dismiss Woodward based on his "poor academic performance and unprofessional conduct." Exhibit 1 at 3.
- No express or implied contract existed between AUA and Woodward. Exhibit 1 at 3-4.
- AUA did not invade Woodward's privacy. Exhibit 1 at 4.
- The statements in Zonia's memo were accurate and made in good faith. Exhibit 1 at 5.
- Neither Zonia nor Trinity tortuously interfered with Woodward's contract as none existed. Exhibit 1 at 6.

Consequently, a number of Woodward's requests are improper and irrelevant in light of the

doctrine of collateral estoppel which prevents him from relitigating facts and issues already

conclusively determined. See e.g. *People v Gates*, 434 Mich. 146, 154; 452 NW2d 627 (1990).

### A.    Requests Regarding "Contract" Claims (Nos. 7-13; 21; 24; 41; 49; 55)

A number of Defendant's Requests were ostensibly aimed at establishing that AUA

somehow breached its "contract" with Woodward arising out of his enrollment at AUA.

AUA objected to these requests as irrelevant to the claims and defenses in this matter. As

no contract existed between the parties (and Defendant is collaterally estopped from charging

otherwise), any of Defendant's attempts to prove a breach of the same is wholly irrelevant.

### B.    Requests Regarding "Invasion of Privacy" (Nos. 21; 22; 31; 32)

A number of Defendant's requests are apparently aimed at establishing that AUA

violated Defendant's privacy.   However, the Michigan Court of Appeals conclusively

3

## University of Antigua School of Medicine
### Fifth Semester - Fall 2007
### SCHEDULE OF CLINICAL ROTATIONS
### SITE:

| Students name | e-mail | SEP 10 | SEP 17 | SEP 24 | OCT 4 | OCT 8 | OCT 15 | OCT 22 | OCT 29 | NOV 5 | NOV 12 | NOV 19 | NOV 26 | DEC 3 | DEC 10 | DEC 17 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 Nicola Hampel | n_hampel@hotmail.com | K | K | K | K | K | EM | K | K | C | C | C | C | PC | S | E |
| 2 Jayadeep Sibia | jaya18_321@yahoo.com | N | N | N | K | K | K | EM | C | A1 | A1 | A1 | A1 | PC | S | E |
| 3 Michael Ozuomba | ozuor_baby@hotmail.com | N | N | N | N | N | A1 | A1 | A1 | A1 | A1 | H | H | PC | S | E |
| 4 Vishal Chheda | vishal.dr@rediffmail.com | N | N | N | A1 | A1 | A1 | A1 | A1 | N | N | N | N | PC | S | E |
| 5 Elizabeth Bulat | elizabethbulat@yahoo.net | C | C | C | N | N | K | EM | H | H | H | H | H | PC | S | E |
| 6 Lekedra Evans | lakedra_evans@hotmail.com | C | C | C | M | M | EM | H | H | H | H | H | EM | PC | S | E |
| 7 Steven Woodward | steve_1woodward@yahoo.com | EM | EM | M | M | M | M | M | M | A2 | A2 | A2 | A2 | PC | S | E |
| 8 Paras Chahal | chahal.paras@yahoo.com | M | M | M | M | M | M | M | A2 | A2 | A2 | A2 | A2 | PC | S | E |
| 9 Mousa Hamed | m.hamed17@gmail.com | D | D | D | D | D | D | D | A3 | A3 | A3 | A3 | A3 | PC | S | E |
| 10 Nico Kristen | nicole.sten@yahoo.com | D | D | D | EM | D | D | D | A3 | A3 | A3 | A3 | A3 | PC | S | E |

### KEY

EM - Emergency Medicine
K - Dr. Khan          (1 week)
M - Dr. Malloy        (Inpatient Team - 6 weeks)
M - Dr. Malloy        (Inpatient Team - 6 weeks)
N - Dr. Nicola        (Inpatient Team - 6 weeks)
N - Dr. Nicola        (Inpatient Team - 6 weeks)
H - Dr. Hodarnau      (Inpatient Team - 6 weeks)
D - Dr. Diaczok       (Inpatient Team - 6 weeks)

C - Clinic - Dr. Yanez/Dr. Lamb   ( 5 weeks)

A1 - Dr. Govolia                  (Ambulatory Office - 5 weeks)
A2 - Dr. Breitenbach              (Ambulatory Office - 5 weeks)
A3 - Dr. I. Mansoor / F. Mansour  (Ambulatory Office - 5 weeks)

PC - Completion of Student Portfolio
S - Study Time
E - Exam (shelf)

DEPOSITION EXHIBIT
2-3-09



**EXHIBIT 4**





UNIVERSITY
OF ANTIGUA
COLLEGE OF
MEDICINE

KASTURBA
MEDICAL
COLLEGE

C/O *Greater Caribbean Learning Resources*

SEMESTER V: PRELIMINARY CLINICAL TRAINING

## St. Joseph Mercy Oakland Hospital, Pontiac Michigan – Fall 2007

### IN-PATIENT STUDENT EVALUATION - TEAM _____

| Student's Name: **Steven Woodward** | Preceptor's Name: **D. Malloy, M.D.** |
|---|---|

### 1) PLEASE, RATE THE STUDENT FROM A TO F:

**1.0**

**Attendance: Attended academic sessions:** including: a) morning rounds, b)morning case presentations, c) questions/discussion, d) ward rounds, e) morning lectures, f) grand rounds

| **F** (Missed 3 or more sessions in 2 weeks) | **C** (Missed 2 sessions in 2 weeks) | **B** (Missed 1 session in 2 weeks) | **A** (Attended all scheduled sessions) |
|---|---|---|---|

**RATE**

A

### 2) PLEASE, GIVE THE STUDENT A PERCENTAGE SCORE AS FOLLOWS:

| < 60% | **Substandard** |
|---|---|
| 60 - <70% | **Borderline adequate** |
| 70 - <80% | **Competent** |
| 80 - <90% | **Superior** |
| 90 - 100% | **Outstanding** |

**2.1**

**Medical Knowledge:** Demonstrated appropriate **knowledge of basic sciences** and was able to apply it to the clinical situations he/she encountered..

**SCORE**

80

**2.2**

**Attitude:** Displayed initiative and positive disposition to learn, **cooperative and constructive** attitude toward the members of team or Group that he/she was assigned to (As opposite to being negative and conflictive)

**SCORE**

90

**2.3**

**Learning Skills:** Gradually started to **master proper skills** concerning elaboration of clinical history and examination of the different body systems, analyses of the results, and formulation of working diagnosis.

**SCORE**

90

**2.4**

**Communication Skills:** Demonstrates listening skills, interchange medically related information with other members of the team, shows progress in **concisely and effectively** presenting clinical cases both in written and verbal form.

**SCORE**

90

**2.5**

**Professionalism:** a) Demonstrated commitment to professional development and solid ethical principles and sensitivity to patients/family and peer diversity; b) showed compassion, respect and honesty; c) Accepted responsibility for his/her acts.

**SCORE**

90

FORM DOCS  EVALUATION 015



**EXHIBIT 5**

**2.6**

**Suggestions for Improvement**

Evaluation reviewed with the student:

_____ 12/5/07
Preceptor                    Date

_____ 12/5/07
Student                      Date

FORM DOCS - EVALUATION.015



*C.N.S Greater Caribbean Learning Resources*

SEMESTER V: PRELIMINARY CLINICAL TRAINING
SITE  Pontiac, Michigan  - FALL 2007
**STUDENT EVALUATION - OUTPATIENT ROTATION**

DEPOSITION EXHIBIT
8
Mc Call

| Student's Name: Steven Woodward | Preceptor's Name: Dr. Breitenbach | Dates: From: 10/29/07 — To: 11/30/07 |
|---|---|---|

## 1) PLEASE, RATE THE STUDENT FROM A TO F:

**1.0**

**Attendance:  Attended scheduled sessions at your Office**

| F | C | B | A | **RATE** |
|---|---|---|---|---|
| (Missed 3 or more sessions in 6 weeks) | (Missed 2 sessions in 6 weeks) | (Missed 1 session in 6 weeks) | (Attended all scheduled sessions) | A |

## 2) PLEASE, GIVE THE STUDENT A PERCENTAGE SCORE AS FOLLOWS:

| < 60% | Substandard |
|---|---|
| 60 - <70% | Borderline adequate |
| 70 - <80% | Competent |
| 80 - <90% | Superior |
| 90 - 100% | Outstanding |

**2.1**

**Medical Knowledge:** Demonstrated appropriate **knowledge of basic sciences** and was able to apply it to the clinical situations he/she encountered.

**SCORE** 79

**2.2**

**Attitude:**  Displayed initiative and positive disposition to learn, **cooperative and constructive** attitude toward the members of team or Group that he/she was assigned to (As opposite to being negative and conflictive)

**SCORE** 95

**2.3**

**Learning Skills:** Gradually started to **master proper skills** concerning elaboration of clinical history and examination of the different body systems, analyses of the results, and formulation of working diagnosis.

**SCORE** 95

**2.4**

**Communication Skills:** Demonstrates listening skills, interchange medically related information with other members of the team, shows progress in **concisely and effectively** presenting clinical cases both in written and verbal form.

**SCORE** 95

**2.5**

**Professionalism:**  a) Demonstrated commitment to professional development and solid ethical principles and sensitivity to patients/family and peer diversity; b) showed compassion, respect and honesty; c) Accepted responsibility for his/her acts.

**SCORE** 95

**EXHIBIT 6**



**3. - General observations on the student's performance and suggestions for improvement:**

Very Computer Literate

Excellent Student.

**4. - Please, fill the following portion for the students rotating at your Office from March 1 through March 29, 2007.**

The student has mastered the following skills:

| | |
|---|---|
| < 60% | Substandard |
| 60 - <70% | Borderline adequate |
| 70 - <80% | Competent |
| 80 - <90% | Superior |
| 90 - 100% | Outstanding |

| Skills | Score | Pointed Suggestions for improvement |
|---|---|---|
| A) Elaboration of solid comprehensive clinical history | 80 | |
| B) Elaboration of focused Clinical History | 80 | |
| a) General examination of the eyes | 80 | |
| b) Examination of HENT and Neck | 80 | |
| c) Examination of Chest and Lungs | 80 | |
| d) Examination of Heart and CV System | 80 | |
| e) Examination of Abdomen | 80 | |
| f) Examination of Breast | 80 | |
| g) Examination of Female GU System | | Not Done this office |
| h) Examination of Male GU System | 80 | |
| i) Examination of Nervous System | 80 | |
| j) Gross examination of Mental Condition | 80 | |
| k) Examination of Musculoskeletal System | 80 | |
| l) Examination of Skin | 80 | |
| C) Overall skill to perform comprehensive physical examination | 80 | |
| D) Overall Skill to perform focused Physical examination | 80 | |

**4. - Evaluation discussed with student:**

_____    11/29/07
Preceptor's Signature          Date

_____    11/29/07
Student's Signature            Date

Form DOCS- EVALUATION 05 - 09/01/07 JEC

American University of A...gua College of Medicine
V Semester - Preliminary Clinical Training
Pontiac Michigan - St. Joseph Mercy Oakland

## Final Grades by Component - Fall, 2007

| # | Code | Attendance 10% | | Prac Session 5% | | Outpatient E 5% | | Verbal Pres 5% | | Portfolio 10% | | Quizzes 35% | | Written Ex 20% | | | Practical Ex 10% | | Final | Final Grade Adjusted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Score | PT | Score | PT | Score | PT | Score | PT | Score | PT | Score | PT | Score | Curv | PT | Score | PT | | |
| 1 | Hampel, Nicola | 92 | 9.2 | 92 | 4.6 | 100 | 5.0 | 100 | 5.0 | 100 | 10.0 | 54 | 18.9 | 77 | 81 | 16.2 | 95 | 9.5 | 78 | C |
| 2 | Jayadeep, Simbia | 100 | 10.0 | 100 | 5.0 | 80 | 4.0 | 100 | 5.0 | 100 | 10.0 | 57 | 20.1 | 80 | 84 | 16.8 | 95 | 9.5 | 79 | C |
| 3 | Ozuomba, Michael | 100 | 10.0 | 100 | 5.0 | 83 | 4.2 | 100 | 5.0 | 100 | 10.0 | 56 | 19.6 | 70 | 74 | 14.8 | 80 | 8.0 | 77 | F (2) |
| 4 | Chheda, Vishal | 75 | 7.5 | 75 | 3.8 | 86 | 4.3 | 100 | 5.0 | 100 | 10.0 | 62 | 21.7 | 86 | 90 | 18.0 | 75 | 7.5 | 76 | C |
| 5 | Bulat, Elizabeth | 100 | 10.0 | 100 | 5.0 | 96 | 4.8 | 100 | 5.0 | 100 | 10.0 | 70 | 24.4 | 84 | 88 | 17.6 | 85 | 8.5 | 83 | B |
| 6 | Evans, Lekedra | 100 | 10.0 | 100 | 5.0 | 96 | 4.8 | 100 | 5.0 | 100 | 10.0 | 65 | 22.6 | 73 | 77 | 15.4 | 85 | 8.5 | 83 | C(-) (1) |
| 7 | Woodward, Steve | 100 | 10.0 | 92 | 4.6 | 95 | 4.8 | 100 | 5.0 | 100 | 10.0 | 62 | 21.6 | 71 | 75 | 15.0 | 80 | 8.0 | 80 | F (3) |
| 8 | Paras, Chahal | 100 | 10.0 | 100 | 5.0 | 100 | 5.0 | 100 | 5.0 | 100 | 10.0 | 58 | 20.4 | 79 | 83 | 16.6 | 80 | 8.0 | 81 | B |
| 9 | Hamed, Mousa | 100 | 10.0 | 100 | 5.0 | 100 | 5.0 | 100 | 5.0 | 100 | 10.0 | 70 | 24.4 | 87 | 92 | 18.4 | 93 | 9.3 | 82 | B |
| 10 | Kristen, Nico | 100 | 10.0 | 100 | 5.0 | 100 | 5.0 | 100 | 5.0 | 100 | 10.0 | 68 | 23.9 | 78 | 82 | 16.4 | 80 | 8.0 | 83 | B (4) |

(1) Failed Final Exam.  Remedial score 78.  Final Grade: C(-)

(2) Failed Final Exam.  Has not taken remedial

(3) Failed Final Exam.  Did take remedial and failed

(4) Did not have OP rotation.  Toal score / 95
    Did not take OP rotation.  Total Score / 95

**EXHIBIT 7**



**EX~~HIBIT~~8**

About Us    Maps & Directions    Ways to Give

KEYWORD

🔍 Advanced Search

🖶 Print    ✉ Email This Page | A A A

| Find a Physician | Patients & Visitors | Healthy Living | Classes & Events | Careers | Quality & Safety | Community Benefit | Health Professionals |

**Find it Fast**
Select...

**All Services**
Select a Service...

## ABOUT US

### Additional Information

CEO Jack Weiner Welcome Video
Board of Directors/Trustees
Videos
News Room
Mission Vision & Values
History

## About Us



St. Joseph Mercy Oakland (SJMO) is a 443-bed comprehensive, community and teaching hospital and a long-time leader in health care in Oakland County. The hospital is located on the west side of Woodward, just north of Square Lake Road in Pontiac, Michigan.

Our address is 44405 Woodward Avenue, Pontiac, MI 48341. Need Directions?
Please feel free to call us at: (248) 858-3000

It is a member of the Saint Joseph Mercy Health System, a subsidiary of Trinity Health, the country's fourth largest Catholic health care system. A member of the Pontiac community for more than 80 years, SJMO's $54.5 million renovation and expansion of its west wing demonstrate its commitment to meeting the needs of the community. Our new, two-story, 50,000-square-foot Surgical Pavilion enables us to combine advanced technology with compassionate care to create a unique healing environment.

A different experience The St. Joseph Mercy Oakland (SJMO) experience is different from that of other hospitals and is what makes SJMO a leading health care institution.

As a health care leader, SJMO

- Is ranked in the top five percent of hospitals across the nation for clinical excellence.
  Has earned itself a position among the top 100 cardiovascular programs in the United States.
- Is Michigan's first certified primary stroke center and one of 19 in the state today with this designation.
- Has received national recognition for palliative care programs.
- Is a nationally recognized leader in joint care and a model for orthopedic programs across the country.
- Offers a continuum of care for Cancer treatment, with access to ongoing clinical trials and new treatment options.
- Is Northern Oakland County's hospital of choice and has received national recognition for being in the forefront of patient safety and quality. It has transformed the way care is delivered by uniting state-of-the-art computer information systems to create a 21st century health care organization providing world-class patient care and safety.

The heart of the hospital is comprised of a team of understanding nurses, physicians, administrative staff, volunteers and families. These people are here for one reason: the patients. Day in and day out, this dedicated team consistently provides compassionate care and services that make a difference in the health and well-being of the communities and patients they serve by making personal connections. For example, SJMO has launched an Hispanic clinic for women's health, created a health care clinic for the working poor, reached out to congregations through Faith Community Nursing, added soothing elements to the emergency center, placed a spare bed in a private room for a spouse to stay close by and allowed an ailing patient to order his favorite milkshake from his hospital bed.

With our leading technological advancements and personalized care, we are efficiently providing the best quality of care to our patients. As a faith-based organization, our mission is to improve the health of our entire community, and we continue to partner with our stakeholders to tackle challenges facing all of its people. We offer compassion and kindness to every patient, family member and guest who walks through our doors and to those who live and work in the community we serve. By personalizing service, connecting with the community's needs and offering a health care experience that seeks to heal the patient's mind, body and spirit, we retain our position as a leading health care organization and a vital community resource.

Contact Us | Notice of Privacy Practices | Site Map | Regional Site

**EXHIBIT 8**

10/5/2010 5:03 PM



# THE COMMONWEALTH FUND
A Private Foundation Working Toward a High Performance Health System



## Time Spent with Physician

---

**How much time do patients spend with their physicians during office visits?**

Patients spent about 19 to 20 minutes with their physician on average during office visits in 2003 and 2004, as compared with about 16 to 17 minutes in 1989 and 1990.



**Average Time (in Minutes) that Patients Spent with Physicians, As Reported by Physicians, 1989–2004**

Data: National Ambulatory Medical Care Survey (National Center for Health Statistics 2001–2006). Data for years 1989–1998 were derived from Mechanic, D. et al. 2001. *N Engl J Med* 344:198–204. Includes only visits in which patients saw a physician.
Source: McCarthy and Leatherman, Performance Snapshots, 2006. www.cmwf.org/snapshots

**Why is this important?**
The amount of time physicians spend with their patients is one measure of the responsiveness of the health care system to patient needs. A common perception is that recent cost-containment pressures and paperwork burdens are squeezing out time for patient care.

**Findings**
The average time that patients spend with physicians during physician office visits increased by about two to three minutes from 1989–1990 (16.3–16.7 minutes) to 2003–2004 (18.7–19.7 minutes), based on data reported by physicians to a national government survey (Mechanic et al. 2001; NCHS 2001–2006).

**Implications**
In other national surveys, one of five patients said that they did not spend enough time with their physician (KFF 2005), and two of five physicians said that they did not spend enough time with patients to deliver quality care (Blendon et al. 2001).

A perception that less time is being spent with patients may arise from the need to do more during a patient visit, including provide preventive care and more fully explain a larger number of treatment options as patients ask more questions.

**Measure:**
The denominator population includes outpatient visits by civilian, noninstitutionalized persons to "the offices of nonfederally employed physicians (excluding those in the specialties of anesthesiology, radiology, and pathology) who were classified by the American Medical Association (AMA) and the American Osteopathic Association (AOA) as 'office-based, patient care.' Visits to private, nonhospital-based clinics and health maintenance organizations (HMOs) were within the scope of the survey, but those that occurred in federally operated facilities and hospital-based outpatient departments were not. Telephone contacts and visits made outside the physician=s office were also excluded. . . . Sample physicians were asked to complete Patient Record forms for a systematic random sample of approximately 30 office visits occurring during a randomly assigned one-week reporting period" (NCHS 2006).

**Limitations:**
These data were not adjusted for changes in the case-mix of physician visits or the intensity of services provided during visits. However, an analysis of 1989 to 1998 data found that the upward trend observed during that time period could not be explained by increases in



completing their portfolio, reviewing and studying the course materials, testing, and evaluation activities.

**a)   Course on History and Physical Examination**

This course provides an in-depth review of the techniques and methods for the elaboration of clinical histories and the examination of the human body systems.  The course consists of twenty (20) core lectures and nine (9) Practical Sessions by experienced specialists.

**b)   In-Hospital Clinical Rotation**

The objective of the In-Hospital Clinical rotation is to demonstrate the practical aspects of elaborating clinical histories and performing physical examinations on patients admitted to the Hospital.  This is a valuable tool in reinforcing the concepts, theories, techniques and facts presented in Course lectures.

During this rotation the students will engage in proactive learning with the residents and preceptors assigned to them.   Students' responsibilities include:

1.   Observing residents' work, asking pertinent questions and taking notes in their Journal.

2.   Developing a good rapport with patients, attending physicians, nurses and other health professionals

3.    Assisting practicing physicians in examining patients when requested.

4.   Communicating with patients face-to face, taking clinical histories and observing examination techniques.

5.   Accessing and reviewing charts as authorized by physicians and elaborating full write-ups on selected patients. **Due to confidentiality laws and regulations, students cannot use or disclose the names of patients or give other identifying information in the write-up of cases.**



**EXHIBIT 10**

In-service Exam Schedule October 15th,16th 2007

IM/FP SUBSPECIALTY ROTATIONS

| | NAME | TIME | | NAME | TIME |
|---|---|---|---|---|---|
| **PGY 1** | Internal Med. | | **PGY 2** | Internal Med. | |
| | Abdul-Ahad | PM | | Ahmed | AM |
| | Badshah | AM | | Bandagi | AM |
| | Basoor | PM | | Dambach | AM |
| | Behura | PM | | Farran | AM |
| | Danescu | PM | | Grewal | PM |
| | Gandra | PM | | Hussain N. | PM |
| | Hussain Z. | PM | | Jabi | AM |
| | Joy | PM | | Malik | AM |
| | Katta | PM | | Manu | AM |
| | Kolpuru | PM | | Pasha | AM |
| | Mittal | PM | | Radhi | AM |
| | Moinuddin | PM | | Reddy | PM |
| | Muddana | PM | | Shah N. | PM |
| | Obideen | AM | | Singala | PM |
| | Polisetty | AM | | Stoica | PM |
| | Qadir | AM | | Vuppali | PM |
| | Shah M. | PM | | Zaitoon | AM |

| | NAME | TIME | | NAME | TIME |
|---|---|---|---|---|---|
| **PGY 3** | Internal Med. | | **PGY 1** | Transitional | |
| | Aswad | AM | | Batla | PM |
| | Azhar | PM | | Fetouh | AM |
| | Beemath | PM | | Golovoy | AM |
| | Cosma | AM | | Holmes | AM |
| | Dobrin | PM | | Jabi F. | AM |
| | Girgla | AM | | Nash | PM |
| | Hanna | AM | | | |
| | Javed | AM | | | |
| | Liu | AM | | | |
| | Mirza | AM | | | |
| | Najjar | AM | | | |
| | Shamsi | AM | | | |
| | Todor | PM | | | |
| | Youssef | AM | | | |
| | Zamlut | AM | | | |

| ROTATION | RESIDENT(s) | PRECEPTOR(s) | CURRICULUM RECEIVED |
|---|---|---|---|
| Ambulatory Medicine, Eye, ENT, Ortho, Derm, Office Gyn | Drs.Aswad, Bandagi | Dr.Chun | |
| | Dr.Jabi F. | Dr.Bogdon | |
| | | Dr.Usha Ram (OB/GYN) | |
| | Drs.Pasha (30-16), Roddy (15-30) | Drs.Bahu, Succar (ENT) | |
| | Singala (14-30) | | |
| | Drs.Beemath (30-15), Vuppali (14-30) | Dr.Siegel (Dermalogy) | |
| | | Dr.Aminka | |
| | Dr.Reddy (30-14) | Dr. Wilkinson (Ophthalmology) | |
| Anesthesia | Drs.Shamsi (30-15) | | |
| | Farran (14-30), Vuppali (30-13) | Dr. Bruni | |
| Allergy/Immunology | Drs.Hanna (16-30), Hussain N (14-30) | Dr. M Saviiwala | |
| | Sinqala (30-13) | | |
| | | Dr. V. Saigal | |
| Staff Cardiology | Dr. Zaitoon | Dr.Salvia | |
| Consult Medicine | | IM Faculty | |
| Emergency | Drs. Batla, Jabi A., Stoica | Dr. Velarde | |
| Endocrinology | | Dr. Grunberger | |
| | | Dr. Bradlee | |
| Gastroenterology | | Dr. Shamsuddoha | |
| | Dr.Malik | Dr.Talvat | |
| | | Dr. Baluch | |
| | | Dr. Akhras | |
| | | Dr. S. Hasan | |
| Geriatrics | Drs.Hanna (1-15) | VA Hospital | |
| Infectious Disease | | Dr. Rosenblat | |
| | Dr.Mirza | Dr. Mahvjoni | |
| | | Dr. Kalyan | |
| Nephrology | | Drs. Masser, Al-Saghir, Hannoudi | |
| Neurology | Dr.Grewal | Dr. Jolly | |
| | | Dr. Glass | |
| | | Dr. Watsson | |
| Non-operative ortho | Dr.Holmes | Dr. Henderson | |
| Hematology/Thrombosis | | Dr. Franklin | |
| Hematology/Oncology | Drs.Moinuddin,Badshah (8-31) | Dr. Garg | |
| | | Dr.Owalnati | |
| | | Dr. Fata | |
| Pediatrics | | Dr. Baraceros | |
| Physical Med/ Palliative care | | Dr. Richter | |
| Psychiatry | | Dr. Kakar | |
| Pulmonary | | Dr. Najjar (inpatient only) | |
| | | Dr. Maxwell | |
| Radiology | Drs.Shamsi (16-30), Golovoy | Dr. Denier | |
| | Ahmod (30-16) | | |
| Research (itinerary required) | | | |
| Rheumatology | Drs.Liu (16-30), Radhi (14-30) | Dr. Champion | |
| | Drs.Shah N., Fetouh | Dr. Lasichak | |
| | | Dr. Shaqrin | |
| Conference | | | |

**VACATIONS** Drs.Azhar(30-20), Ahmod(17-30), Farran(30-13), Hussain N.(30-13), Pasha(17-30), Radhi(30-13), Badshah(1-7)

9/24/2007

ST. JOSEPH
**MERCY** OAKLAND
A MEMBER OF ✚ TRINITY HEALTH

### SJMO Internal Medicine Residency
### TEAM ROSTER – October 2007

| FLOOR TEAMS | TEACHING ROUNDER | RESIDENT (S) | TEAM INTERN (S) | STUDENT | CURRICULUM Received |
|---|---|---|---|---|---|
| A | DR. DIACZOK | Dr. Zamlut | Drs. Qadir, Kolpuru | Panchai, Warritay, Hamed*, Kristen* | |
| B | DR. HODARNAU | Dr. Javed | Drs. Hussain Z., Abdulahad | pfiffner, Nayar (29-30), Evans*, Bulat* | |
| C | DR. MALLOY | 1036 Dr. Dambach | 1125 1121 Drs. Polisetty, Mittal | Spearman, 1004 5217 Pravin(1-26), 3 2in 5435 Woodward*, Chahal* 5234 | |
| D | DR. NICOLA | Dr. Dobrin | Drs. Joy, Katta | Mohen, Samaan, Chheda*, Ozuomba* | |
| E | DR. KHAN | Dr. Cosma | Drs. Obideen, Danescu | Durrani, Saleh(1-26), Hampel*, Sibia* | |
| NIGHT FLOAT | FACULTY | Dr. Manu | Drs. Behura, Muddana | | |
| ICU | DR. BANDER | Dr. Girgla (team leader), Drs. Liu (30-15), Beemath (16-30), Youssef | Dr. Basoor | | |
| CCU | DR. SALVIA | Dr. Najjar (team leader), Dr.Todor | Drs. Shah M., Gandra | Hansen (29-30) | |

Every Med student with * is observer ONLY.

EXHIBIT 11

**Subject:** Student Log

**From:** Steve Woodward (steve_l_woodward@yahoo.com)

**To:** yanezj@trinity-health.org; zonias@trintiy-health.org; VHREHOROVICH@auamed.org;

**Date:** Monday, October 22, 2007 5:50 PM


Dear Sir's and Mam,

I have attached my student log spreadsheet to demonstrate that I have now completed the goal of seeing 100 pateints.  I have actually had 170 separate pateint contacts.  To accomplish this I have stayed late and came in on weekends.

I still need to write up 15 cases and one more two minute presentation.

I would like use this time to finish my potfoilio, study for the weekly quizzes and Step I.

I do not feel that seeing anymore patients without contact is of any benefit to me, so I would like to discontinue patient visits until after I have passed the Step and am in a facility that will allow me to have patient contact.

Thank you for your time,

Steve


**EXHIBIT 12**

**Subject:** Fwd: Patient Logs

**From:** Deneen Nicks (NICKSD@trinity-health.org)

**To:** elizabethbulat@comcast.net; m.hamed01@gmail.com; vishal.doctor@gmail.com; lakedra_evans@hotmail.com; n_hampel@hotmail.com; ozuomba@hotmail.com; chahalparas@yahoo.com; jaya18_221@yahoo.com; nicokristen@yahoo.com; steve_l_woodward@yahoo.com;

**Date:** Wednesday, October 10, 2007 3:56 PM


>>> Susan Zonia 10/10/2007 12:03 PM >>>

All 5th Semester Students need to provide me weekly with a copy of their patient encounters/logs. It would be best if they were turned in to Deneen by noon on Thursday for me to review and then send to Dr. Calderon.


Thank you.



Susan C. Zonia, Ph.D.
Chief Academic Officer & DIO
St. Joseph Mercy-Oakland
44405 Woodward
Pontiac, Michigan 48341
(248)858.6796
zonias@trinity-health.org

**EXHIBIT 13**



**Subject:** Re: Patient Logs

**From:** Deneen Nicks (NICKSD@trinity-health.org)

**To:** steve_l_woodward@yahoo.com;

**Date:** Thursday, October 11, 2007 8:10 AM

This should be fine.

Deneen

>>> "Steve Woodward" <steve_l_woodward@yahoo.com> 10/10/2007 10:36 PM >>>
Deneen,

Attached is my patient log file.
It's up-to-date for all my patient except for yesterday and today.
I have the raw data sheets for those two days with me, I can photocopy them for you.
I need to add around 23 more patient visits for those two days, +/- for seeing the same patient on the same day because of training rounds.

I hope this works for you, if you need the raw datasheets for all my visits please let me know and I'll photocopy them for you.

Thanks again for all your help,

Steve

**2**

**Subject:**    Fw: Student Log

**From:**    Steve Woodward (steve_l_woodward@yahoo.com)

**To:**    zonias@trintiy-health.org; yanezj@trinity-health.org;

**Date:**    Friday, October 19, 2007 5:53 PM


Dr Yanez,

I tried to get this email to Dr Zonia yesterday, unfortunately the email address I have for her must be wrong.
I have an email delivery error.

If you could please forward it to her or reply with the right email address it would be greatly appreciated.

Thank you for your help,

Steve

----- Forwarded Message ----
From: Steve Woodward <steve_l_woodward@yahoo.com>
To: Dr Zonia <zonias@trintiy-health.org>
Sent: Thursday, October 18, 2007 3:59:38 PM
Subject: Student Log

Dr Zonia,

Attached is my student log spreadsheet.

I'll bring copies of my activity log tomorrow.

Thank you for your help,

Steve

3



## ST. JOSEPH
## MERCY OAKLAND

44405 Woodward Avenue
Pontiac, Michigan 48341-5023
248-858-3000

TO:        Ernesto Calderon, M.D.
FROM:     Susan Zonia, Ph.D.
RE:        V Semester
DATE:     December 17, 2007



We have been reviewing our experiences with offering the V Semester for the first time. As with any new program, it was not without its hitches and student adjustment issues. However, we found the attitude and demeanor of Steven Woodward to be completely inappropriate and detrimental to the program. Mr. Woodward appeared to have resented every assignment we gave him. But, instead of constructive criticism, he vented his anger in a professional unacceptable manner. For example: he completed his 100 patient log in two weeks and wanted to stop attending the program; he requested a transfer to the Miami program saying that the V Semester was a waste of time and his time would be better spent in a Kaplan course; sabotaging exams by giving the same response to all questions to simply get it over with; requesting early release on virtually a daily basis from his clinical rotation so that he could study for boards, etc. We believe that if he perceived the AUA V Semester curriculum as inappropriate, the professional response would have been to engage in a reasoned dialogue with representatives of the school, not argue with faculty at St. Joseph Mercy Oakland, or openly demonstrate his contempt for the curriculum, and those charged with delivering it.

Mr. Woodward's lack of professionalism and poor communication skills are a source of great concern. We do not feel that he will be a good ambassador for AUA, our hospital, or the profession he is about to enter. We encourage the faculty at AUA to review his entire record, to determine if he does meet the qualifications to sit for the boards, and begin clinical rotations.

A MEMBER OF ✪ TRINITY HEALTH

OUR MISSION: We serve together in Trinity Health in the spirit of the Gospel to heal the body, mind and spirit,
to improve the health of our communities and to steward the resources entrusted to us.

**EXHIBIT 14**

Page 18

1   A   I'm not sure.

2   Q   In terms of time frame are we talking a week, two weeks, a
3       month, a year?

4   A   I'm not sure.

5   Q   Tell me about the discussion that you had with Dr. Zonia
6       pertaining to that memorandum? When was it? Where was it?
7       How did it take place?

8   A   I talked to her in her office and I was telling her about
9       the constant complaining from Steven Woodward about the
10      program and Dr. Zonia said that she was going to talk to AUA
11      about it and AUA responded to Dr. Zonia asking her to put it
12      in writing.

13  Q   And was that in December of 2007?

14  A   Yes.

15  Q   How many times did you talk to Dr. Zonia about the fact that
16      Steven Woodward complained too much?

17  A   Several.

18  Q   At the time that you talked to Dr. Zonia about Steven
19      Woodward complaining too much did you know that she was
20      working on some type of a memorandum to send to AUA?

21  A   No.

22  Q   When was it that you found out for the first time that she
23      was going to write a memorandum to AUA?

24  A   I'm not for sure of the date.

25  Q   Did she specifically discuss that memo with you before it

Page 19

1       was sent to AUA?

2   A   I'm not sure.

3   Q   Could you hand me that, please?

4           (Witness hands exhibit to counsel)

5   Q   Did you ever have a discussion with Dr. Zonia about Steven
6       Woodward having a poor attitude or his demeanor being
7       inappropriate or detrimental to the program?

8   A   I'm not sure.

9   Q   Did you ever have a discussion with Dr. Zonia about Mr.
10      Woodward representing -- or I'm sorry -- resenting every
11      assignment that he was given?

12  A   Yes.

13  Q   When was that? Tell me about that.

14  A   That was in the beginning of the 15 weeks.

15  Q   How much in the beginning?

16  A   At least the first five I can remember.

17  Q   First five what?

18  A   Not the first five. The first two to three weeks I can
19      remember.

20  Q   The first two to three weeks --

21  A   Of the program.

22  Q   -- that the program had started. And tell me about his
23      resentment about assignments he was being given?

24  A   He did not want to be on the service. He did not feel like
25      the academic sessions were any good. He said that the tests

Page 20

1       were stupid and they were not helpful to him.

2   Q   And besides that did he say anything else?

3   A   No.

4   Q   Did you ever have a discussion with Mr. Zonia about Mr.
5       Woodward venting his anger in a professionally unacceptable
6       manner?

7   A   Not that I can remember.

8   Q   Did you ever see Mr. Woodward express his anger in a
9       professionally unacceptable manner?

10  A   No.

11  Q   Do you have any personal knowledge whether Mr. Woodward
12      completed his hundred patient log in two weeks?

13  A   Yes.

14  Q   What personal knowledge do you have?

15  A   He came to my office first and said that he finished his 150
16      patient log, now do he have to return to the service.

17  Q   Now, you said 150 patient log. The memo says, 100 patient
18      log. Why is there a difference, if you know?

19  A   It has changed a lot so I'm not 100 percent sure if his
20      group was 150 or groups after him, but the patient log count
21      changes every semester.

22  Q   All right. So he came to you and said he had completed his
23      100 patient log in two weeks?

24  A   Yes.

25  Q   And what did you say?

Page 21

1   A   That he needed to talk to Dr. Yanez if he no longer wanted
2       to return to the service.

3   Q   And did he talk to Dr. Yanez about that?

4   A   I'm not sure.

5   Q   Did you ever talk to Dr. Zonia about Mr. Woodward requesting
6       a transfer to the Miami program?

7   A   No.

8   Q   Did Mr. Woodward ever tell you that he thought he was
9       wasting his time in the fifth semester program and that he
10      thought his time would be better spent in a Kaplan course?

11  A   Yes.

12  Q   And when was that?

13  A   Two weeks after he started the program.

14  Q   And what did he say?

15  A   That it was a waste of his time and he can spend his time
16      studying.

17  Q   And what did you say?

18  A   He needed to talk to American University of Antigua.

19  Q   Did you talk to Dr. Zonia about Mr. Woodward sabotaging
20      exams by giving the same response to all questions?

21  A   Yes.

22  Q   And when was that?

23  A   I'm not quite sure of the date.

24  Q   What was the conversation that you had?

25  A   Dr. Zonia told me that American University of Antigua

**Network**Reporting

_1-800-632-2720_

6 (Pages 18 to 21)



EXHIBIT 15

Case 2:10-cv-10978-PJD-MJH   ECF No. 182, PageID.2987   Filed 11/22/11   Page 32 of 35

WOODWARD v. TRINITY HEALTH-MICH., ET AL                    DEPOSITION OF SUSAN ZONIA, PH.D.

## Page 54

transfer request or are you talking about different request?

A   **No, that is the transfer request.**

Q   You indicate, "He completed his hundred patient log in two weeks and wanted to stop attending the program."  Is it fair for me to assume that that was based on information from one of the course instructors?

A   **Correct.  Most students were hard pressed to log a hundred cases in 12 weeks.**

Q   Did he ever see more than 100 patients?

A   **No.  It's not just see a patient.  Like, "Oh, look.  There is one.  There is one.  There is one."  He was supposed to have substantive contact and know the case and the diagnosis and be able to discuss it.  And for someone who has just completed two years of basic science to be able to do 100 cases in two weeks I'm hard pressed having a resident that can do 100 cases in two weeks and these are people that are already licensed.**

Q   Did you ever verify that that was, in fact, true that he completed 100 patient log in two weeks?

A   **He walked down a corridor and saw 100 patients.  That's not what the intent of that assignment was.**

Q   How do you know that, because the instructor told you that?

A   **I know it's physically impossible for a student at that level to interview 100 patients in two weeks.**

Q   Okay.  I think you're not hearing my question.  My question

## Page 55

is, did you ever verify that he completed his hundred patient log in two weeks?  I'm not asking you if it is possible.  I'm asking you if you ever verified it.

A   **He turned in to Dr. Yanez his log with 100 patients and asked if he could now be excused from the course.**

Q   In two weeks?

A   **In two weeks.**

Q   And that's what Dr. Yanez told you?

A   **Correct.**

Q   But did you ever verify that that was true?

A   **I looked at the logs and knew it wasn't possible.**

Q   So your answer is, "yes," you did verify it?

A   **Yes.**

Q   Your memo says "Sabotaging exams by giving the same response to all questions to simply get it over with."  Is that your comment or is that based on something that you were told by one of the instructors?

A   **It's what I was told by one of the instructors.  It's what the school told me, and it's what Mr. Woodward told me he did was because he thinks the exams are a waste of time.**

Q   And you specifically used the word "sabotaging."  How was that sabotaging?

A   **Because the exams were weighted and so he would change -- by not doing well it would change the distribution and so the scores he could lower the grades for everybody.**

## Page 56

1  Q   So you're saying by his giving the same response he would
2      receive a lower score than he should, therefore, --
3  A   **Well, it would change the curve and so you could just play**
4      **probabilities and hope that you came out with a high enough**
5      **score.**
6  Q   So it wasn't sabotaging the exam.  It was sabotaging the
7      grades from the exam?
8          MR. GUNSBERG:  Objection; argumentative.
9  Q   Is that right?
10  A   **It's also sabotaging the intent of the exam.  The intent is**
11      **to have a measure the acquisition of information that**
12      **students have been gleaning from their experiences and if**
13      **you don't take it seriously it defeats the purpose of having**
14      **the exam.**
15  Q   Was that a course strategy that was taught by Kaplan as far
16      as if you don't know the answer answer the same question for
17      every question?
18  A   **I really have no knowledge of how Kaplan instructs.**
19  Q   If Kaplan instructs that way would that make a difference?
20  A   **Not to me.**
21  Q   Your memo says "Requesting early release on virtually a
22      daily basis from his clinical rotations so that he could
23      study for the boards, et cetera."  What does the "et cetera"
24      mean?
25  A   **I just got tired of listing what his concerns were.**

## Page 57

1  Q   How do you know that he requested early release on virtually
2      a daily basis?
3  A   **That is some amount of hyperbole, but when you interview,**
4      **when you speak with Dr. Yanez and Deneen McCall it felt like**
5      **it was every day he was asking, "Can I go home now?  Are we**
6      **done?"**
7  Q   So did you just take the liberty to add "virtually a daily
8      basis"?
9  A   **It is hyperbole.**
10  Q   Which means what, in your opinion?
11  A   **It happened very frequently.  It felt like every day.**
12  Q   So none of the course instructors told you that it was on a
13      daily basis?
14  A   **No, they did not.**
15  Q   "We believe that if perceived" --
16  A   **"That if he perceived."**
17  Q       -- "if he perceived the AUA fifth semester curriculum
18          as inappropriate the professional response would have
19          been to engage in a reasoned dialogue with
20          representatives of the school, not argue with the
21          faculty at St. Joe Mercy Oakland or openly demonstrate
22          his contempt for the curriculum and those charged with
23          delivering it."
24      Do you know if he ever tried to engage in a reasoned
25      dialogue with anybody from the school?

EXHIBIT 16



# This Certificate is awarded to

Steve Woodward

## for successful completion

## of S- 131 Advanced Firefighter / Squad Boss

4 / 5 / 03
DATE

INSTRUCTOR

Certificate of Training

**EXHIBIT**
**1**



*Certificate of Training*

awarded to

**Steve Woodward**

*for successful completion of*

**S-231 Session B: Engine Boss**

*Colorado Wildfire Academy*
*in Alamosa, Colorado*

June 8, 2003
Date

Instructor

© GOES 747
All Rights Reserved

LITHO. IN U.S.A.



C O U N T Y   M I C H I G A N
DEPARTMENT OF CENTRAL SERVICES

Daniel T. Murphy, Oakland County Executive
PUBLIC SAFETY
Medward J. Tessier, Chief

August 24, 1988

**TO:** Steve Woodward, Lifeguard
Groveland Oaks County Park

**RE:** Letter of Commendation

This letter of commendation is being presented to you for your outstanding performance as a lifeguard during and after a rescue which took place on Sunday, July 17, 1988.

You were observed, along with fellow lifeguards Kris Campbell and Julie Stotz, carrying the victim from the water, displaying superior team work and communication skills. Your initial patient survey allowed us to provide vital information to responding EMS units. The fact that you could supply this information even though the victim was lethargic, totally deaf, speechless and mentally impaired further demonstrated your flexability and control in a crisis. After EMS arrived, your automatic assistance with crowd control was exemplary.

Your efforts were also observed by Lt. Easton of the Groveland Twp. Fire Department who agrees with our department that you should be commended for a job well done and are a compliment to the lifeguard profession.

Sincerely,

Medward J. Tessier, Chief
Oakland County Public Safety

LT. Gary L. Hall
Lt. Gary L. Hall, Public Safety

Ofc. Kevin Holton, Public Safety

3