Case 2:10-cv-10978-PJD-MJH

**FILED**

2011 DEC 13 P 2: 40

U.S. DIST. COURT CLERK
EAST DIST. MICH
FLINT

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

Plaintiff,

V                                          CASE No.: 2:10-cv-10978-PJD-MJH
                                           Judge Patrick J. Duggan

STEVEN WOODWARD,

Defendant,

**Motion Reconsideration of Judges Order**

1

## Motion Reconsideration of Judges Order

The Defendant requests the Judge reconsider the Summary Judgment Order Docket 185 Defamation Claims against the Defendant. The Defendant requests the Court review the following facts and errors in the court OPINION, Docket 184. The Defendant requests the Court Adjourn Order 185 until all the Defendant's motions concerning the Plaintiff's failure in Discovery per FR 26, FR 34, and FR 36 are heard and Orders applied for violation of FR 37. The Defendant requests the Court GRANT Mr. Woodward a fair trial by Jury on Counts IV Defamation Claims based on the following facts.

**Breif:**

**(a)** The Defendant believes the Court has violated his RIGHT of Due Process.

The Court has erred concerning the Standard for Summary Judgment, Docket 184, page 5, **Exhibit 1**.

There is a genuine dispute as to material fact and there has NOT been adequate time for discovery. The Plaintiff has failed to perform Discovery including production of Documentation (per FR 34, FERPA violation of 20 U.S.C 1232g, and Student Handbook, breach of contract). The Plaintiff has failed to answer 89% of the Defendant's Request for Admissions per FR 36, page 4, **Exhibit 3**.

**The Court has not ruled on these issues, prior Order 185, including applying requested sanctions against the Plaintiff per FR 37(c)(1)(C) and FR 37(b)(2)(A)(v) dismissal of Plaintiff's claims. Order on Discovery Motions (Dkt 121, 125, 127, 128, 130, 132, 136, 145, 146), Docket 174, Exhibit 2, responses were not been heard and/or answered by the Court prior to Order 185. The Defendant claims the Plaintiff has committed "FRAUD on the Court", Exhibit 3 page 14**

**"Defendant's Objections to Order on Discovery Motions"**

**The Plaintiff's "Requests for Admissions" and "Motion for Summary Judgment",**

**Docket 143, Exhibit 4 are evidence of the Defendant's claim.  It has been over a year**

**since the Defendant requested Discovery, requested November 22, 2010 from the**

**Plaintiff, of which the Plaintiff has not provided in Good Faith, violating FR 37.**

**In fact the Plaintiff admits to refusing service of requested Discovery material,**

**during December 22, 2010 Hearing.**

The Plaintiff filed a motion for summary judgment prior to the close of discovery.

The Defendant filed "Motion to Compel", Docket 121 prior to the "Plaintiff's Motion for

Summary Judgement", Docket 174.  The Court has not settle the Defendant's Motion to

Compel towards the Plaintiff.  The Defendant requests Docket 186, "Order Terminating

Motions as Moot (Dkt 136, 140, 141) be reconsidered upon ruling of this motion.

Order 186 combined with Order 185 would cause reason for the Defendant to believe the

Court has allowed the Plaintiff's Summary Judgment without performing Discovery

show material facts, allowing the Plaintiff to violate FR 37, FR 34, FR 36, FR 26, Federal

Law 20 U.S.C 1232g, breach of contract, and the Civil Rights of Due Process, and acting

with extreme Bias against Mr. Woodward.


1)  The Defendant filed "Plaintiff's Motion for Summary Judgment", **Exhibit 4**, on

**4/29**/2011.

2)  The Defendant had to file "Motion to Compel Plaintiff", Docket 121, on **03/24**/11,

**Exhibit 5** because of the Plaintiff's failure to perform Discovery per FR 26, FR 33, FR

34, FR 36.

3

"The Defendant requests the Court order the Plaintiff to produce all of the requested documentation, Answer Admissions, and the Interrogatories, if not all at least the required amount. The Defendant requests the Court impose sanctions against the Plaintiff due for burden, harassment, and annoyance."

3) The Court filed "Order Requiring Response to Defendant's Motion to Compel Plaintiff", Docket 124, 03/25/11, **Exhibit 6.**

"Plaintiff must file a response to the original motion, including a written brief, in accordance with Local Rule 7.1 The deadline for plaintiff's response is April 11, 2011. **Failure to file a response may result in sanctions, including granting all or part of the relief requested by the moving party.**"

The Plaintiff failed to respond to this Order.

4) The Defendant filed "Motion For Sanctions", Docket 136, **Exhibit 7**, and Docket 135, **Exhibit 8**, on **04/15**/11 because the Plaintiff failed to respond per Court Order, Docket 124, **Exhibit 7**. Docket 136 was written because the Plaintiff failed to respond to Defendant's requests for Documentation per FR 34 and failure to answer the Defendant's Request for Admissions per FR 36. The Defendant's "Motion for Sanctions" was filed prior to 04/29/11 filing date of the Plaintiff's Motion for Summary Judgement.

5) The Court filed "Order on discovery Motions", Docket 174, 10/14.2011 **Exhibit 2.**

"According to Defendant's motion, plaintiff has failed to respond to his requests for admissions, interrogatories, and requests for production of documents."

"Based on the record before the Court, defendant's motion to compel is granted in part and denied in part."

"To the extent that plaintiff has not already done so, plaintiff is ORDERED to respond to defendant's requests for production of documents, including the identification of documents as responsive to each request, within 30 days of entry of this order.  As to Plaintiff's answers to the requests for admission, the Court will address this in conjunction with defendant's motion for sanctions (Dkt. 136), which is related."

**6)**  The Court hasn't ruled on the "Defendant's Objections to Order on Discovery Motions", Docket 178, filed 11/03/2011 **Exhibit 3**, which includes the Defendant's request for sanctions against the Plaintiff, including dismissal of the Plaintiff's claims under FR 37(c)(1)(C) and FR 37(b)(2)(A)(v) and/or leave of the Court to file a Motion for Dismissal of the Plaintiff's Claims.

The Plaintiff admits to Refusing to accept their Requested Discovery material, which was served on them personally by Mr. Woodward, before Judge Hluchaniuk on December 22, 2010.  Order 185 is being issued against the Defendant based on allegations of violating due dates for the Plaintiff's FR 36, of which the Plaintiff refused to take when served, but the Court is allowing the Plaintiff to violate FR 36.  This is unfair.

**(b)**The Defendant "**ADMITTED**" to claims 14, 15, 16, 25, 30, and 33, **Exhibit 9**.

The Court's decision of ruling because of FR 36(b) is false.

**1)** The Defendant does not know how or why they would change an admission; i.e. "withdraw or amendment of admission", page 20-22, Docket 184, **Exhibit 1** (numbering per the "Plaintiff's Requests For Admissions")

**2)** The Court has erred in, Docket 184, page 22,  Fed. R. Civ P. 36(b) "Prejudice under Rule 36(b)… 'relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission,"

**A)** The Plaintiff REFUSED to participate in Discovery, violating FR 37 "Failure to Make Disclosures or to Cooperate in Discovery" (further demonstrated in section "d" of this Motion)

**B)** The Plaintiff Refused Mr. Woodward's answers to the Plaintiff's Request for Admissions, which were **personally served**, on December 22, 2010, February 1, 2011, and Judge Hluchaniuk was required to intervene on March 24, 2011 to ensure the Plaintiff accepted the Defendants Discovery Material as requested by the Plaintiff. The Plaintiff failed to perform Discovery on December 22, 2010, violating FR 37.

**3)** These admissions are verified and consistent with the "DEFENDANT'S ANSWER and AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT", Docket 40, **Exhibit 10**.

The Plaintiff has caused undue burden and harassed the Defendant with Requests for Admissions which the Defendant already Admitted.

The Plaintiff's statements in "Request for Admissions" and "Complaint", Docket 1, **Exhibit 11**, are the same questions.

Plaintiff's Request for Admissions, **Exhibit 12** = Plaintiff's Docket 1, **Exhibit 11**

14 = 54(a) Admitted Docket 40, 10/15/2010

15 = 54(b) Admitted Docket 40, 10/15/2010

16 = 54(c) Admitted Docket 40, 10/15/2010

24 = 54(j) (Compound Question, Admitted individually Docket 40, 10/15/2010 )

25 = 54(k) Admitted Docket 40, 10/15/2010

30 = 54(n) (Compound Questions, Admitted individually Docket 40, 10/15/2010)

33 = 54(o) Admitted, Docket 40, 10/15/2010

(summation of which now known further as "CLAIMS" in this docket)

**4)** Claim 24 is the only one of these claims which the Defendant Objected"Object Compound Statement" for the "Plaintiff's Request for Admissions".

The Defendant's Objection to Claim 24 is **"Admitted"** and explained in "DEFENDANT'S ANSWER and AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT", **Exhibit 10**.

Claim 24/(j), **Exhibit 10**,

"The Defendant deny as untrue. The Defendant admit that AUA conspires to commit fraud. The Defendant admit that AUA violates and disregards civil rights."

**5)** Failure relating to FR 36(a)(3) Time to Respond, results in an admission. The Defendant already "Admitted" to each of these claims.

The purpose of Rule 36 is to narrow the scope of controversy, it is not a device to prevent defense of a previously admitted claim.

The Court has erred Fed. Rule 36(b) fails analysis on prejudice since the Plaintiff Refused to accept the Discovery Material, which was made available to them December 22, 2010 and knew of the Mr. Woodward's ADMISSION to the CLAIMS since October, 2010.

Mr. Woodward ADMITTED to each one of these claims, the only logical conclusion is that Mr. Woodward is being denied their RIGHTS to defend the fact that each of the Claims is TRUE.

**c)** The Court has erred on Opinion Docket 184, page 23, **Exhibit 1**:

**1)** The statement:

"Woodward **no longer** states on his website that "AUA students are sexually assaulted."

(see Request for Admissions No. 22 (emphasis added)); instead, he asserts: "AUA

student sexually assaulted."

See http://aua-med.com. Woodward presents evidence to show that this is a true

statement.

**2)** The Court has erred in statement

"Similarly, Woodward **no longer** states that "AUA's student pass rate for USMLE

medical board exams is only 22.9%."  (Request for Admissions No. 28. ) Instead

Woodward states that "Antigua only has a 22.9% USMLE Pass Rate!"

The Court has clearly errors in the statement "**no longer**"

-Woodward **NEVER** published "**AUA students are sexually assaulted**"

-Woodward **NEVER** published "**AUA's student pass rate for USMLE medical board**

**exams is only 22.9%**"

**3)** The Court's Opinion, Docket 184 is erred, page 23, **Exhibit 1**:

"**Woodward presents evidence to show that this is a true statement**"

It was the **Plaintiff's own evidence, filed in "Plaintiff's Motion for a Preliminary**

**Injunction", Docket 8, 4/15/10, Docket Exhibit 8-4, Exhibit 13** that proved that the

Defendant's CLAIMS are TRUE, demonstrating the **Plaintiff committed perjury**.

This evidence was proven to the Court on April 19, 2010, prior to, November 8th 2010,

date which the Plaintiff submitted their Requests for Admissions.  These statements are

obvious lies fabricated by the Plaintiff in their Docket 1 verified complaint by Medical

College, AUA and their President Neal Simon.  **Exhibit 14**

**4)** The definition of "Perjury" is "the voluntary violation of an oath or vow either by swearing to what is untrue or by omission to do what has been promised under oath : false swearing" reference: http://www.merriam-webster.com/dictionary/perjury

By the Court's own Opinion, Docket 184, Neal S. Simon has committed perjury, not only on defamation claims, but also Counts I-III.

Neal Simon is an Officer of the Court, General Counsel for AUA, President and Co-founder of a Medical School.  Not only did Neal Simon verify Docket 1, **Exhibit 10**; the Plaintiff testified April 19, 2010, page 18, line 17 **Exhibit 15**:

**"The very last page, of course, is a verification signed, under oath, by the President of the University indicating that the allegations contained in the complaint are, in fact, true.  He's reviewed them and the like.  So, he's affirmed that those representations by Mr. Woodward's website are false in sworn testimony."**

The Court itself has produced material fact and evidence that prior to the November 8, 2010 Plaintiff's Requests for Admissions, the Defendant's, admitted, statements are in fact TRUE:  33 **"AUA committed perjury"**

**5)** Mr. Woodward produced evidence to support **"AUA committed perjury"** in, at least, Docket 27, filed 08/06/2010, **Exhibit 27**, prior to the Plaintiff's Request for Admissions, November 8, 2010.

**A)** Mr. Woodward states, page 3, Docket 27, **Exhibit 27**,

**"The following exhibits is another example of perjury made by the plaintiff."**

**B)** Mr. Woodward states, page 4, Docket 27 **"What follows will support the statement that the plaintiff was fully aware of the true residence of the defendant.  This**

perjury would effect court Rules, both Eric A. Buikema and "Neal S. Simon, JD"

are trained in the law."

**C)** Mr. Woodward states, page 8, Docket 27,

**"I will now show evidence of fraud, Internet fraud, and perjury with intent to**

**commit obstruction by the plaintiff"**

The Defendant was never given the opportunity because of the Court's time limitation on

April 19th, 2010 to prove that the remaining defamation claims were also TRUE.

The Court concurred consistently that the Plaintiff's claims are false in four(4) of the

Plaintiff's failed Preliminary Injunction attempts.

**d)** The Court has erred in the date of which Mr. Woodward answered the "Plaintiff's

Request for Admissions".

The Court states, page 4, **Exhibit 1**:

**"Woodward did not timely answer; however, he apparently served late responses to**

**AUA's requests "at his reconvened deposition" which the Court gleans to have been**

**in March 2011."**

This statement is absolutely FALSE;

Mr Woodward served the Plaintiff with his answers to their Requests for Admissions,

December 22, 2010.  The Plaintiff refused them, which Mr. Buikema admits doing.

This error affects the Courts ruling concerning the Plaintiff's claim of failing to answer

admissions timely and the decision of the Court's Opinion, Docket 184, Fed Rule 36(b)

Prejudice.

**1)** The Defendant filed "Defendant's Motion for Protective Order", Docket 56, on

November 19, 2010, **Exhibit 16**.  Page 4 of Docket 56 states:

**"The Defendant requests the Court GRANT the Defendant a "Protective Order" against all Discovery, verbal and written, from Defendant by the Plaintiff for the purpose of protecting evidence."**

2) Prior to the "Plaintiff's Requests for Admissions", November 8, 2010, the Defendant already ADMITTED to the Claims in "Defendant's Answers and Affirmative Defense to Plaintiff's Complaint." Docket 40.

The Defendant defeated the Plaintiff's allegations in four(4) Preliminary Injunctions attempts: Docket 1, Docket 8, Docket 22, Docket 45 prior to Nov 8th, 2010.

This is evidence that the sole purpose of the Plaintiff was to in fact: harass, oppress, and undue burden and cause additional expense toward Mr. Woodward regarding these Claims. The Court had good cause to issue a Protective Order to the Defendant against further harassment according to Federal Rule 26(c)(1).

The "Defendant's Motion for Protective Order", Docket 56, was heard on December 22, 2010 and the Order not entered until December 23, 2010, Docket 84, **Exhibit 17**.

The Defendant was within their Rights to file for a Protective Order and not produce an answer until after the December 22, 2010 hearing.

Mr. Woodward DID produce and **Personally Served** the Plaintiff with "Defendants Objections and Answers to Plaintiff's Request For Admissions" during the December 22, 2010 hearing and the **Plaintiff admits to REFUSING them on December 22, 2010**.

3) The Court has erred in the date of which the Defendant answered the Plaintiff's Request for Admissions. The Court's Opinion, Docket 184, page 4,**Exhibit 1**, states:

**"Woodward did not timely answer; however, he apparently served late responses to AUA's requests "at his reconvened deposition" which the Court gleans to have been in March 2011"**

This statement is FALSE.

**4)** The Plaintiff was notified, by email, **Exhibit 18**, that the Defendant was going to provided all of the requested Discovery material on December 22, 2010 which also re-notified the Plaintiff of the "Defendant's Motion for Protective Order".

**"Depending on the Decision and Order by the Honorable Judge Michael Hluchaniuk:**

**Please schedule time after the December 22nd Hearing to sign-for(verify receipt) and receive approximately 2,500 pages of my Exhibits and Rule 26 documentation, my answers to your Interrogatories, Request for Admissions, and Requests for Production.**

**What you receive will depend on the Order and Decision of the Court."**

**5)** The Plaintiff was served all of their Requested Discovery Material, by Mr Woodward himself, by means of Personal Service before Judge Michael Hluchaniuk and witnesses during the December 22, 2010 hearing, **Exhibit 19**:

**"Woodward:  Any documents that he request, all of his answers to his documentation is here.**

**Buikema:  It's there but I didn't address it quite intentionally.  It's not before you today.**

**Court:  It's not scheduled for today.  I'm just noting the existence of it.  And Mr. Woodward is saying that he intends to comply with that today.  Whether that's**

**actually comes to pass is another issue, which we may address at a later time.  But certainly I would invite you Mr. Buikema to look at what Mr. Woodward has brought to court today and accept what he has and then make a determination of whether that satisfies your motion.**

**Buikema:  I, I just have a logistical issue with that today.  But—**

**Court:  That's fine.**

**Buikema:  We'll address that outside of the Court's presence.**

**Court:  It's, It's certainly not unreasonable that you would be unable to inspect those documents today under the circumstances.  But if has documents for you to take with you, I would certainly encourage you to take those and then assess the completeness of that production as soon as you possibly can.**

**Buikema:  I will."**

The Plaintiff refused to take any of the Discovery material they requested after the December 22, 2010 hearing.  The Plaintiff didn't bother to even look at the visual aids Mr. Woodward brought as requested by the Plaintiff.

**6)**  Mr. Woodward tried to serve the Plaintiff during the February 1, 2010, deposition, the Plaintiff again refused to take the Discovery material.

**A)** From Exhibit 20, page 6 **"Woodward: Your honor … I brought every single thing that I was suppose to bring to the best of my knowledge again I have over 2,600 pieces of paper here this is the documentation that Mr Buikema did not take during our last hearing"**

**B)** From Exhibit 20, page 10

13

"**Woodward: I'd like it on anyway my recording Mr. Buikema is now leaving refusing again to view, ah, visual aids.**"

**C)**From Exhibit 20, page 11

"**Woodward: He didn't take his answers to his Interrogatories either.**

**Cheri Gleyre: That wasn't marked was it?  He didn't mark it as an exhibit**

**Woodward: He didn't want it again, OK.**"

**7)** It required Mr. Woodward to have Judge Hluchanuik to intervene to ensure the Plaintiff took the Discovery material that they requested.  This was during March 24, 2010 deposition Exhibit 21, page 2

"**Woodward: I think this is very bias.  The attitude, I've brought this evidence and they have refused to look at it during your hearing and during the last deposition.**

**Judge Hluchanuik: They don't have to look at it, you have to make it available to them and if they elect not to look at it, then you've satisfied your obligation by making it available.**"

The Plaintiff refused to look at or take any of the Discovery material which was provided to them December 22, 2010, not March, 2011.

**8)** On August 11, 2011 the Plaintiff admitted to refusing to take the Discovery material which was served upon him December 22, 2010.  Page 24, Line 9 **Exhibit 23:**

"**Mr. Buikema:**  Yes, **I refused to accept documents** in lieu of an answer of my question, is what he's referring to, I believe.

**Mr. Woodward:**  That is not true.  Sir, I brought to December 22nd, 2.500 pages of documentation, interrogatories, the answers to his interrogatories, the answers to his request to admissions and he's refusing to take this information.

**Mr. Buikema:**  And I can short circuit this, I hope.  The only item that he's listed, that I think would be relevant to next week's hearing on the dispositive motion, would be the request for admission responses.  I don't know whether they were at that hearing or not. **But it's true, I'll stipulate, for the record, that I left the hearing without accepting the banker's boxes that Mr. Woodward brought to that hearing."**

**A)** The Court was made aware of the Plaintiff's Lies during the August 11, 2011 hearing, page 29, line 6, **Exhibit 23**.

"**Court:** Is the failure to respond to request for admissions par of the basis for your motion?

**Mr. Buikema**: It is part of the basis for our motion.  And I'll say failure to respond timely is part of the basis, rather than the failure to respond at all, which I think is a distinction that Mr. Woodward is missing."

**B)** This conclusion proves the **Plaintiff Lied** and made **False Declarations** in "Plaintiff's Motion For Summary Judgment", **Exhibit 4**, which states:

"**Defendant failed to answer requests for admissions and has conceded liability**."

Mr. Woodward personally served the Plaintiff all the Discovery materials, they requested, including the "Defendant's Objections and Answers to Plaintiff's Request for Admissions" on **December 22, 2010**.

The Plaintiff refused to look at or take them.

The Court did not file an Order concerning the "Defendant's Motion for Protective Order", Docket 56, until December 23, 2010.

**The Defendant was not delinquent in answering the Plaintiff's requests for admissions until after the ruling on the Motion for Protective Order.  The Plaintiff Refused the Discovery Material in December 2010.**

The Court's ruling of Fed Rule 36(b) is erred, the Plaintiff is not prejudiced; the Plaintiff purposefully Refused to participate in Discovery, violating FR 37.

e)  The Court makes specific mention of the fact that a pro bono attorney was assigned to the Defendant in the Court's Opinion, Docket 184, page 4, **Exhibit 1**.

The Court claims that the Defendant is guilty of defamation; Claim 30

**"AUA colluded with St. Joseph Hospital or maliciously end [Woodward's] career."**

Leigh C. Taggart was the appointed attorney for Mr. Woodward.  Mr. Taggart emailed, **Exhibit 24**. Mr Woodward and specifically told him:

**"SJMO/Trinity Health" and "If you consider our separate trademark work for Trinity to be a problem that affects either our advice to you or your willingness to follow that advice"**

Mr. Woodward believes this relationship between St Joseph Mercy Oakland, SJMO/Trinity Health and the Courts Opinion, Docket 184, is evidence to believe there would be a definite and significant **conflict of interest** relating to this Pro Bono assignment of Mr. Taggart by the Court.

To further this the Court wrongfully Ordered, Docket 164, Mr. Woodward to:

**"IT IS FURTHER ORDERED that the defendant retain new counsel within 45 days."**  Knowing full well Mr. Woodward could not afford Counsel.

f) The Court has erred in that "Consent" was given to Woodward.

(Wallace v. Skadden) (Farrington v. Bureau of Nat'l Affairs)( LeBaron v. Board of Public Defense) (Utecht v. Shopko Dep't Store)  "Consent is an absolute defense to defamation."

 A Student Handbook, **Exhibit 25**, is a contract (Fellheimer v. Middlebury College).

**1)** Language of a contract is present on page 1

**"The rules and regulations outlined here are binding"**

**2)** Page 12 **"AUA/KMC students are encouraged to address any academic or non-academic concerns with their Professors. Faculty Advisors or Deans."**

**3)** DOC – Fifth Semester Syllabus VH, JEC (08/31/07), **Exhibit 26**

"Students will have the opportunity to evaluate lectures, practices, and **all activities**. **Their input is critical in developing and advancing the University's academic program."**

**4)** AUA Student Handbook, page 25, **Exhibit 25**,

**"The University adheres to the mandates of the United States Family Education Rights and Privacy Act (FERPA)"** 20 U.S.C. 1232G(a)(6) For the purposes of this section, the term **"student"** includes any person with respect to whom an educational agency or institution maintains education records or personally identifiable information"

**5)** 20 U.S.C. 1011A(a)(2)(D) "students **should not** be intimidated, harassed, **discouraged from speaking out**, or discriminated against."

Mr Woodward had complete and absolute consent, for ALL ACTIVITIES, from AUA and protection by Federal Law 20 U.S.C. 1011A for "speaking out" prior to the filing of the Plaintiff's Docket 1 claims.

The Plaintiff just did not like the medium of which the Mr. Woodward used for communication.  Mr. Woodward's "Speaking Out" has proven that AUA, a Medical College, has violated Federal Law 20 U.S.C. 1232g, the disclosure of Private Student Documentation of over 150 students.

**g)** The Court's own Opinion, Docket 184, is material fact to support Woodward's statements "**AUA breaches contracts**".

**1)** It is uncontested that Private Student Information was disclosed, violating FERPA 20 U.S.C 1232G.

**2)** The Plaintiff's verified a contract between AUA and their students concerning FERPA and AUA's Student Handbook, **Exhibit 25**.

"**Mr. Buikema:  In my view, Your Honor, it's a wrongful act predicate to a tortuous interference claim.**" from page 13, line 10, **Exhibit 15**

**3)** Student Handbooks, **Exhibit 25**, are contracts in Federal Court (Fellheimer v. Middlebury College).

By the Court's own Opinion, Docket 184, Woodward is not guilty of Count I FERPA. Pure logic dictates AUA has violated Federal Law and CONTRACT of over 150 students.  The Court and the Plaintiff has provided material fact that "**AUA breaches contracts**" is in fact **TRUE**.

**4)** Mr. Woodward produced evidence and defended the statement "AUA breaches contracts" in Docket 27, Exhibit 27, August 6, 2010; prior to the Plaintiff's Request for Admissions, November 8, 2010.

**A)** Mr. Woodward states in Docket 27, page 5, **Exhibit 27**

"**The following demonstrates that the plaintiff knowingly commits breach of contract, fraud, Internet fraud**."

**B)** Mr. Woodward states in Docket 27, page 7

"**This is evidence of the plaintiff and their partners knowingly committed fraud and breach of contract**"

**C)** Mr. Woodward produces another example in Docket 27, page 7

"**I will now demonstrate another example that the plaintiff knowingly commits breach of contract, fraud, Internet fraud, during the 5th Semester program.**"

**h)** The Court's own Opinion, Docket 184, is material fact, to support Woodward's statements "**AUA conspires to commit fraud and violations of civil rights**"

**1)** The Court's own Opinion, Docket 184, proves Mr. Woodward is not guilty of FERPA violations.  Pure Logic is that AUA is guilty of violating Federal Law per FERPA.

**2)** Mr. Woodward is Legally Obligated to state "**AUA conspires to commit fraud and violations of civil rights**" or Mr. Woodward could be in violation of 18 U.S.C. "Accessory after the fact" or 42 U.S.C. 1986 "Action for neglect to prevent".  Without such protect the Criminals of all sorts could claim Defamation.

**3)** AUA wrote Docket 1, "Plaintiff's Verified Complaint and Ex Parte Request for Temporary Restraining Order", page 9, **Exhibit 11** accusing Mr Woodward of violating FERPA Federal Law.   AUA sought monitory damages to defraud Mr. Woodward.

"51. WHEREFORE, Plaintiff American University of Antigua, respectfully requests a judgment against Defendant, **together with costs, interest, and attorney fees.**"

**4)** AUA's obvious intent was to violate Mr. Woodward's First Amendment Rights and Civil Legal Obligation to expose the disclosure of over 150 Private Student Records by AUA, **which is uncontested**.

By shutting down Mr Woodward's Web site, AUA attempted to cover-up the Disclosure of over 150 Private Student Records defrauding students of their opportunity to report and seek damages via the Department of Education and violating "**Students' Privacy Rights**".  AUA themselves confirms RIGHTS stating "**Student Privacy Rights**"

AUA's motives are clear as stated in Docket 1, page 9, number 50, **Exhibit 11**.

"The consequence of disclosure has an immediate and obvious impact on the affected **students' privacy rights** for which there is no adequate remedy at law."

**5)**  It is clear by AUA's own evidence and testimony of their intent and motive to defraud the United States financial education system stating, page 9, number 51, **Exhibit 11**:

"**Further, as a direct and proximate result of Defendant's actions, AUA could lose significant access to federal education funding and student aid**."

Rightfully so!

AUA further verifies their motive and material fact during the April 19, 2010 hearing, page 13, line 15, **Exhibit 15**,

" FERPA prohibits disclosures of students' information by the University itself.  And has, as **consequence, the termination of federal funding**, which my client does receive and some of the students receive benefits under that provision."

Rightfully so!

**6)** AUA verifies "Student Privacy Rights" as "RIGHTS" and has motive for "**Conspiring to commit fraud and violations of Civil Rights**" and in fact did attempt to do just that

to Mr. Woodward and over 150 AUA students as Ruled by the Court's own Opinion, Docket 184.

7)  Mr. Woodward defends and produces evidence to support the claim **"AUA conspires to commit fraud and violations of civil rights"** in Docket 27, Exhibit 27, on August 8, 2010, prior to the "Plaintiff's Request for Admissions", November 8, 2010.

A) Mr. Woodward states in Docket 27, page 5

**"plaintiff knowingly commits breach of contract, fraud, Internet fraud."**

B) Mr. Woodward states in Docket 27, page 7

**"plaintiff and their partners knowingly committed fraud and breach of contract for not providing services per"**

C) Mr. Woodward states in Docket 27, page 7

**"plaintiff knowingly commits breach of contract, fraud, Internet fraud, during the same 5th Semester program"**

D) Mr. Woodward states in Docket 27, page 8

**"I will now show evideince of fraud, Internet fraud, and perjury with intent to commit obstruction by the plaintiff.  The evidence that I will provide was from the same 5th Semester program."**

E) Mr. Woodward states in Docket 27, page 10

**"This evidence shows that the plaintiff used the Internet to commit fraud for purposefully failing the plaintiff(should be Defendant) and for not administrating exams that were paid for by the student."**

Mr. Woodward goes into great detail the "Falsification of the Students" grades on page 11-12 of Docket 27.

**F)** Mr. Woodward states in Docket 27, page 13

**"I have shown how AUA unfairly falsifies and manipulates student grades**

**defrauding their student(s). The plaintiff used the Internet to commit this fraud."**

**G)** Mr. Woodward states in Docket 27, page 13

**"From the exhibits presented I will now create a timeline further demonstrating that**

**the plaintiff committed fraud with the intent to commit obstruction and perjury."**

**i)** The Court's own Opinion, Docket 184, and the Plaintiff's testimony and Docket 1

Claims are material fact to support the **"AUA routinely commits fraud upon its**

**students"**

The word "Routine" is defined as "a regular course of procedure" sited

"http://www.merriam-webster.com/dictionary/routine"

It is "Routine" since AUA attempts to commit fraud against over 150 students, on

multiple separate occasions, including Mr. Woodward's,

**1)** The Court's own Opinion, Docket 184, proves Mr. Woodward is not guilty of FERPA

violations. Pure Logic is that AUA is guilty of violating Federal Law per FERPA. It is

uncontested that Private Student Records are disclosed.

**2)** Mr. Woodward is Legally Obligated to state **"AUA routinely commits fraud upon its**

**students"** or Mr. Woodward could be in violation of 18 U.S.C. "Accessory after the fact"

or 42 U.S.C. 1986 "Action for neglect to prevent". Without such protect the Criminals of

all sorts could claim Defamation.

**3)** AUA wrote Docket 1, "Plaintiff's Verified Complaint and Ex Parte Request for

Temporary Restraining Order", page 9, **Exhibit 11** accusing Mr. Woodward of violating

FERPA Federal Law. AUA sought monitory damages to defraud Mr. Woodward.

"51. WHEREFORE, Plaintiff American University of Antigua, respectfully requests a judgment against Defendant, **together with costs, interest, and attorney fees**."

**4)** AUA's obvious intent was to violate Mr. Woodward's First Amendment Rights and Civil Legal Obligation to expose the disclosure of over 150 Private Student Records by AUA, which is uncontested.

By shutting down Mr Woodward's Web site, AUA attempted to cover-up the Disclosure of over 150 Private Student Records defrauding students of their opportunity to report and seek damages via the Department of Education and violating "**Students' Privacy Rights**".

AUA's motives are clear as stated in Docket 1, page 9, number 50, **Exhibit 11**.

"The consequence of disclosure has an immediate and obvious impact on the affected **students' privacy rights** for which there is no adequate remedy at law."

**5)** Mr. Woodward defends and produces evidence to support the claim "**AUA routinely commits fraud upon its students**" in Docket 27, Exhibit 27, on August 6, 2010, prior to the "Plaintiff's Request for Admissions", November 8, 2010.

**A)** Mr. Woodward states in Docket 27, page 5

"**plaintiff knowingly commits breach of contract, fraud, Internet fraud.**"

**B)** Mr. Woodward states in Docket 27, page 7

"**plaintiff and their partners knowingly committed fraud and breach of contract for not providing services per**"

**C)** Mr. Woodward states in Docket 27, page 7

"**plaintiff knowingly commits breach of contract, fraud, Internet fraud, during the same 5th Semester program**"

23

**D)** Mr. Woodward states in Docket 27, page 8

**"I will now show evideince of fraud, Internet fraud, and perjury with intent to commit obstruction by the plaintiff. The evidence that I will provide was from the same 5th Semester program."**

**E)** Mr. Woodward states in Docket 27, page 10

**"This evidence shows that the plaintiff used the Internet to commit fraud for purposefully failing the plaintiff(should be Defendant) and for not administrating exams that were paid for by the student."**

Mr. Woodward goes into great detail the "Falsification of the Students" grades on page 11-12 of Docket 27.

**F)** Mr. Woodward states in Docket 27, page 13

**"I have shown how AUA unfairly falsifies and manipulates student grades defrauding their student(s). The plaintiff used the Internet to commit this fraud."**

**G)** Mr. Woodward states in Docket 27, page 13

**"From the exhibits presented I will now create a timeline further demonstrating that**

**j)** The Court's own Opinion, Docket 184, and the Plaintiff's testimony and Docket 1 Claims is material fact to support the **"AUA commits criminal activities reportable to the FBI."**

**1)** It is uncontested that over 150 Private Student Records have been disclosed. The Court has ruled in Docket 185 that Mr. Woodward is innocent of this charge. Pure logic is that AUA is guilty.

**2)** Mr. Woodward is Legally Obligated to state **"AUA commits criminal activities reportable to the FBI"** or Mr. Woodward could be in violation of 18 U.S.C. "Accessory

after the fact" or 42 U.S.C. 1986 "Action for neglect to prevent". Without such protect

the Criminals of all sorts could claim Defamation, such is the case here.

**3)** It is Mr. Woodward's Civil Obligation to expose the Disclosure of Private Student

Records.  AUA's own testimony and that of Court Order, Docket 185 is material fact of

AUA's intentions to defraud the United States Student Aid Financial System.

Docket 1, number 51, **Exhibit 11**:

**"Further, as a direct and proximate result of Defendant's actions, AUA could lose**

**significant access to federal education funding and student aid**."

Rightfully so!

AUA further verifies their motive and material fact during the April 19, 2010 hearing,

page 13, line 15, **Exhibit 15**

" FERPA prohibits disclosures of students' information by the University itself.  And has,

as **consequence, the termination of federal funding**, which my client does receive and

some of the students receive benefits under that provision."

Rightfully so!

**4)** Mr. Woodward has demonstrated the production of evidence for violations of other

Federal Laws, including but not limited to, fraud, perjury in Docket 27, **Exhibit 27**( as

stated in sections above)

**k)**  The Court's Opinion, Docket 184, page 23 states

"Woodward presents evidence to show that this is a true statement" material fact as Ruled

by the Court, Docket 185.  Likewise, Mr. Woodward presented evidence to show "**AUA**

**falsifies its students' grades**" and "**AUA colluded with St. Joseph Hospital to**

**maliciously end[Woodward's] career**" prior to the contested date of December 8, 2010.

The evidence is from the 5th Semester Program by AUA and St Joseph Mercy Oakland Hospital.

**1)** Mr. Woodward presented evidence to support "AUA falsifies its students' grades", during the April 19, 2010 Hearing, page 34, line 4, **Exhibit 15**:

**"But on the documentation that I just turned in today, your Honor, as far as all of te – that contained all of the student information that was released, I can demonstrate that I earned an 80 percent on my final grade and AUA gave me an "F"."**

**A)** Mr. Woodward supports this on page 35, line 9, **Exhibit 15**:

**"If they give a person an "F" on their final grade that earned an 80 percent on their final grade, that's fraud, as far as the definition of cheating a student.  They further went on to say "Failed final exam. Did not have OP rotation."  That is also fraud, Your Honor."**

**B)** Mr. Woodward states on page 36, line 9, **Exhibit 15**:

**"And I paid $12,000 for this education that is supposedly the quality, great education.  And instead they gave me an "F"."**

**2)** Mr Woodward "Admitted" to stating "AUA falsifies students' grades", prior to the Plaintiff serving their "Requests for Admissions".

**3)** Mr. Woodward successfully defended four(4) Preliminary injunctions attempts, including the Statement "AUA falsifies students' grades", prior to the Plaintiff serving their "Requests for Admissions".

**4)** Mr Woodward presented evidence to show "AUA falsifies its students' grades", prior to the Plaintiff serving their "Requests for Admissions" in at least Dockets: 11, 27, 56, and 57.

**5)** Mr. Woodward defends and produces evidence to support the claim "**AUA falsifies its students' grades**" in Docket 27, **Exhibit 27**, on August 8, 2010, prior to the "Plaintiff's Request for Admissions", November 8, 2010.

Mr. Woodward demonstrates and produces detailed evidence in Docket 27, pages 10 – 13 of how "AUA falsifies its student grades".

On page 13, Docket 27, Mr. Woodward states " **I have shown how AUA unfairly falsifies and manipulates student grades defrauding their student(s).**"

6) Mr. Woodward filed a lawsuit against AUA and St Joseph Mercy Oakland Hospital, December, 2010. January 2008, AUA turned Mr. Woodward's earned grade of 80%(B) to an "F" and further falsified Mr. Woodward's grades by stating Note (3) "Failed Final Exam. Did take remedial and failed" this statement is absolutely FALSE. AUA and St Joseph Mercy Oakland Hospital further publish in Court Documents filed with Oakland County Court Case 07-088103 these false grades, **Exhibit 27**, page 3 of exhibit 7 of Docket 27. The further published "Woodward received an "F" for the fifth semester" Docket 27, page 5 exhibit 7, which is absolutely FALSE. AUA and St Joseph Mercy Hospital published " Woodward failed the fifth semester course, receiving an "F" for the fifth semester before he was dismissed from AUA" Docket 27, page 11 exhibit 7.

AUA and St Joseph Mercy Oakland Hospital knowingly falsified Mr. Woodward's grades with the intent to knowingly publish FALSE Declarations in Court Documents, which is perjury. This information was brought before this Court August 6, 2010, prior to the Plaintiff's November 8, 2010 "Request for Admissions" AUA, a Medical School is using FR 36 as a scheme and artifice to defraud Mr. Woodward.

l) On April 19, 2010 the Court cancelled the Hearing because of the Courts Time Constraints, page 55, line 7, **Exhibit 15**

**"Court: Well, here's my concern.  I'm not prepared today to go through each and every statement as to whether it's false or not; it may be, may not be."**

**1)** The Court commented, April 19, 2010, concerning Plaintiff's Count III FERPA, page 14, line 24, **Exhibit 15:**

"The Court: It's just **RIDICULOUS**"

**2)**  The Court commented concerning Plaintiff's Count I, April 19, 2010, page 7, line 6, **Exhibit 15:**

"The Court: …."**it doesn't seem to me your Lanham Act has any merit at all**" and the same holds for Count II as Ordered, Docket 185.

**3)** The Court finds that the Defendant's statements are in fact TRUE; when Woodward is given the opportunity to defend them.  The Court attests to this on page 19, line 19, **Exhibit 15:**

**"The Court: That's the spin you put on it.  But the statement itself is true"**

The Court never reconvened a preliminary hearing to assess further whether any of the Plaintiff's claims had any merit, were equally ridiculous, or that Woodward was telling the TRUTH. Instead Mr. Woodward has had to abandon his home and give up a year and a half of his life over the lies of AUA.   Per Court Opinion, Docket 184 and Court Order, Docket 185,

Mr. Woodward is innocent of Plaintiff's Claims I, II, III, and 14 of 21 Defamation Claims Count IV.

The Plaintiff testified on April 19, 2010 page 18, line 17, Exhibit 15:

"Mr. Buikema:  The very last page, of course, os a verification signed, under oath, by the

President of the University indicating that the allegations contained in the complaint are,

in fact, true.  He's reviewed them and the like.  So, he's affirmed that those

representations by Mr. Woodward's website are false in sworn testimony."

Neal Simons signature is in Docket 1, page 12, Exhibit 11.

Docket 1, page 10, number 55, states:

**"Each and every one of these "facts" is false."**

The Court has proved otherwise, that in fact the majority of the facts are either TRUE or

not actionable.

The only conclusion is; AUA lies in verified Court documents under oath.

This is the state of this Medical School and their business partner St Joseph Mercy

Oakland Hospital.

The Defendant requests the Court Reconsider Order 185.  The Defendant requests the

Court Adjourn Order 185 until all the Defendant's motions concerning the Plaintiff's

failure in Discovery per FR 26 are heard and so Ruled.  The Defendant requests the Court

GRANT Mr Woodward a fair trial by Jury on Counts IV Defamation Claims based on the

facts presented.  Mr. Woodward requests a reversal on Court Order 186 and a fair hearing

on those matters.


Steven Woodward
7211 Brittwood Ln
Flint, MI 48507
(810)235-7267


29

**List of Exhibits:**

Exhibit 1: Docket 184, Opinion

Exhibit 2: Docket 174, Order on Discovery Motions

Exhibit 3: Docket 178, Defendant's Objections to Order on Discovery Motions

Exhibit 4: Docket 143, Plaintiff's Motion for Summary Judgment

Exhibit 5: Docket 121, Motion to Compel Plaintiff

Exhibit 6: Docket 124, Order requiring Response to Defendant's Motion to Compel Plaintiff.

Exhibit 7: Docket 136, Motion for Sanctions

Exhibit 8: docket 135, Defense Response to Order Requiring Response to Defendant's Motion to Compel Plaintiff

Exhibit 9: Defendant's Objections and Answers to Plaintiff's Request for Admissions

Exhibit 10: Docket 40, Defendant's Answer and Affirmative Defenses to Plaintiff's Complaint

Exhibit 11: Docket 1, Plaintiff's Verified Complaint and Ex Parte Request for Temporary Restraining Order

Exhibit 12: Plaintiff's Requests for Admissions

Exhibit 13: Docket 8, Plaintiff's Motion for a Preliminary Injunction

Exhibit 14: Neal Simon, JD Bio

Exhibit 15: Transcripts, April 19, 2010 Hearing

Exhibit 16: Docket 56, Defendant's Motion for Protective Order

Exhibit 17: Docket 84, Order on Motion Heard December 22, 2010

Exhibit 18; Email, From Woodward, To Buikema

Exhibit 19: Transcripts Hearing December 22, 2010

Exhibit 20: Transcripts Deposition, February 1, 2011

Exhibit 21: Transcripts Deposition, March 24, 2011

Exhibit 23: Transcripts Hearing August 11, 2011

Exhibit 24: Email From Taggart To Woodward

Exhibit 25: AUA Student Handbook

Exhibit 26: AUA/SJMO 5th Semester Syllabus

Exhibit 27:Docket 27, Amendment To:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE,

            Plaintiff,

v.                                                                    Case No. 10-10978
                                                                     Honorable Patrick J. Duggan

STEVEN L. WOODWARD,

            Defendant.

_____/

## **OPINION**

On March 11, 2010, Plaintiff American University of Antigua College of Medicine

("AUA") filed this lawsuit against Defendant Steven L. Woodward ("Woodward"),

seeking to quiet his complaints about AUA and shut down his internet website with the

domain name www.aua-med.com where many of his complaints are being published.

AUA alleges the following claims against Woodward in its Complaint: (I) trademark

infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (II) infringement under

the Anticybersquatting Consumer Protection Act of 1999 ("ACPA"), 15 U.S.C.

§ 1125(d); (III) violation of the Family Educational Rights and Privacy Act of 1974, 20

U.S.C. § 1232g; and (IV) defamation in violation of Michigan law. AUA seeks a

permanent injunction prohibiting Woodward from publishing, on his website or by any

other means or medium, defamatory content or AUA proprietary information (including

student academic records other than his own). AUA also asks the Court to order

Woodward to forfeit the domain names he has registered using "AUA" and to award


**EXHIBIT 1**

*Creative Non-Violence v. Pierce*, 814 F.2d 663, 672 (D.C. Cir. 1987) ("'The usual rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages.'")) Although recognizing an exception prohibiting a defendant "'from continuing and reiterating the same libelous and defamatory charges' found to be false and libelous," the Court concluded that the exception is inapplicable where there has been no final determination that the statements to be enjoined are false and libelous. (Doc. 72 at 6.)

On November 8, 2010, shortly after filing its renewed motion for preliminary injunction, AUA sent Woodward requests for admissions. (Pl.'s Mot. Ex. D.) Pursuant to Federal Rule of Civil Procedure 36(a)(3), Woodward was required to answer the admissions within thirty (30) days or by December 8, 2010, or the matters would be deemed admitted. Woodward did not timely answer; however, he apparently served late responses to AUA's requests "at his reconvened deposition" which the Court gleans to have been in March 2011. (*See id.* at 3 and n.2.) Neither party has provided the Court with a copy of Woodward's responses.

On December 27, 2010, Woodward filed a motion seeking the appointment of a pro bono attorney to assist him in defending against AUA's lawsuit. This Court referred the motion to Magistrate Judge Michael Hluchaniuk. On January 5, 2011, Magistrate Judge Hluchaniuk conditionally granted the motion based on the ability to obtain counsel willing to represent Woodward within ninety days.

While that search ensued, AUA filed its pending motion for summary judgment,

4

relying in large part on Woodward's failure to timely answer its request for admissions. Woodward filed a response to the motion on May 19, 2011; AUA filed a reply brief on June 3, 2011. This Court delayed addressing AUA's motion for summary judgment, however, while the search for an attorney to represent Woodward was pending. The Court eventually identified and appointed counsel to represent Woodward on July 14, 2011; however, for reasons not relevant to the pending motion, Woodward asked the Court to withdraw the assignment. Woodward therefore is proceeding pro se in this matter.

### Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine

22.9%;

29.    AUA contrives false evidence in student disciplinary proceedings;
30.    AUA colluded with St. Joseph Hospital to maliciously end [Woodward's] career;
31.    AUA's agents and employees engaged in a conspiracy;
32.    AUA abused its power;
33.    AUA committed perjury;
34.    AUA is otherwise immoral and unethical;
35.    AUA's agents are liars; and
36.    Antigua is full of "rape, murder, fraud, and government corruption" and that therefore AUA is an unsafe place.

(Pl.'s Mot. Ex. D [Requests for Admission].)

In the request for admissions that AUA directed to Woodward on November 8, 2010, AUA asked Woodward to admit that (1) he published the above statements; (2) they are intended to be factual; (3) they are false; and, (4) he knew they were false when they were published. (*Id.*) Because Woodward failed to timely answer AUA's request for admissions, AUA contends that the requests are deemed admitted and it, therefore has satisfied the corresponding elements of its defamation claim. To the extent any statement requires a showing of damages, AUA further provides an affidavit from its president stating: "AUA has suffered damages stemming from the Defendant's publication of his website www.aua-med.com." (Pl.'s Mot. Ex. H; Doc. 171 ¶ 10.)

As briefly mentioned earlier, under the Federal Rules of Civil Procedure, a request for admissions that is not responded to within the applicable time period "is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed. R. Civ. P. 36(b).  Woodward has not filed a motion asking the Court to withdraw his admissions.  Pursuant to Rule 36(b), "the court may permit withdrawal or

20

amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." *Id.* Although Woodward has not filed a motion asking the Court to withdraw or amend his admissions, he has attempted to demonstrate in his pleadings and at hearings before the Court that his alleged defamatory statements are not false. Moreover, at hearings before the Court, he also has argued that the matters should not be deemed admitted because he eventually did respond to the request for admissions.[7] The Sixth Circuit Court of Appeals has upheld a district court's determination that "statements made by defense counsel at oral argument were equivalent to a motion to withdraw or amend." *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 154 (6th Cir. 1997). The court expressed a "reluctan[ce] to assign talismanic significance to the attorney's failure to use the phrase 'I move.'" *Id.*

"A 'district court has considerable discretion over whether to permit withdrawal or amendment of admissions.'" *Id.* at 154 (quoting *Am. Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir. 1991)). In exercising its discretion, however, the Court must follow Rule 36(b)'s instruction that withdrawal or amendment if proper only if (1) "it would promote the presentation of the merits of the action" and (2) it would not cause prejudice to the party who requested the admissions "in maintaining or

---

[7]To the Court's recollection, AUA has never argued that Woodward's untimely responses were inadequate. As the Court has never been presented with a copy of his responses, it cannot say that they were insufficient.

21

defending the action on the merits." Fed. R. Civ. P. 36(b). "Prejudice under Rule 36(b) . . . 'relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission.'" *Kerry Steel*, 106 F.3d at 154 (quoting *AAA Legal Clinic of Jefferson Crooke*, 930 F.2d at 1120).

This Court believes that allowing Woodward to withdraw his admissions would not promote the presentation of the merits of the action and would prejudice AUA. As indicated below, many of the statements that AUA seeks to enjoin are not actionable. As to those statements that are actionable, Woodward is barred by the doctrine of collateral estoppel or res judicata from challenging whether they are false and/or his evidence fails to demonstrate that the statements are true.

The Court finds that the following alleged defamatory statements constitute subjective assertions that, under the circumstances, could not reasonably be interpreted as stating actual facts about AUA:

17.　AUA disregards student civil rights.
18.　AUA conspires against its students.
19.　AUA engages in unethical practices.
20.　AUA has "malicious intensions [sic]."
21.　AUA administration and academic advisors are of a "heinous nature."
23.　AUA professors teach students wrong information.[8]
29.　AUA contrives false evidence in student disciplinary proceedings.

---

[8]This statement on one hand is verifiable because the word "wrong" implies that the information that should be taught could be determined. The term, however, also is used to express disapproval or inappropriateness of the information taught, which is an expression of personal opinion that is not capable of objective verification.

31.    AUA's agents and employees engaged in a conspiracy.[9]
32.    AUA abused its power.
34.    AUA is otherwise immoral or unethical.
35.    AUA's agents are liars.[10]

Woodward no longer states on his website that "AUA students are sexually assaulted" (*see* Request for Admissions No. 22 (emphasis added)); instead, he asserts: "AUA student sexually assaulted." *See* http://aua-med.com. Woodward presents evidence to show that this is a true statement. Similarly, Woodward no longer states that "AUA's student pass rate for USMLE medical board exams is only 22.9%." (Request for Admissions No. 28.) Instead Woodward states that "*Antigua* only has a 22.9% USMLE Pass Rate!" *See id.* (emphasis added). "A preliminary injunction is proper only to prevent an on-going violation."[11] *Taubman Co.*, 319 F.3d at 775 (citing *Hecht Co. v. Bowles*, 321 U.S. 321, 329-30, 64 S. Ct. 587 (1944)).

Woodward's statement that "Antigua is full of 'rape, murder, fraud, and government corruption' and that therefore AUA is an unsafe place" (Request for Admission No. 36), constitutes an objectively verifiable (the first clause) and subjective (the second clause) assertion.[12] Woodward's statement about the level of crime on

---

[9]As the statement is vague as to what AUA conspired to achieve, it is not objectively verifiable.

[10]Unlike the example in *Milkovich*, Woodward's statement does not refer to any specific AUA agent and thus the Court does not find the statement objectively verifiable.

[11]Moreover, neither statement as now published is "concerning the plaintiff."

[12]The Court believes, however, that the inclusion of "full of" may convert the first
(continued...)

23

the publication . . ." *Kevorkian, supra.*

The statements numbered 24, 25, and 33 constitute accusations of criminal activity and, as such, are "defamatory per se, meaning that special harm need not be proved." *See Kevorkian, supra.* AUA, therefore, must demonstrate the existence of special harm caused by the remaining statements. AUA satisfies its burden through the affidavit of its president, Neil Simon. (*See* Doc. 171 ¶ 10.)

As such, the Court concludes that AUA demonstrates that it is entitled to summary judgment with respect to its defamation claim concerning the following statements:

14. AUA routinely commits fraud upon its students.
15. AUA falsifies its students' grades.
16. AUA breaches contracts.
24. AUA conspires to commit fraud and violations of civil rights.
25. AUA commits criminal activities reportable to the FBI.
30. AUA colluded with St. Joseph Hospital to maliciously end [Woodward's] career.
33. AUA committed perjury.

Otherwise, AUA fails to demonstrate that Woodward engaged in defamation.

## Relief Requested

AUA seeks an injunction preventing Woodward from publishing any defamatory content, whether on his website or by any other means. The Supreme Court repeatedly has recognized that an "injunction, so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on First Amendment rights." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 418-19, 91 S. Ct. 1575, 1577-78 (1971) (citing *Near v. Minnesota ex rel Olsen*, 283 U.S. 697, 51 S. Ct. 625 (1931)). "'The usual rule is

## Conclusion

For the reasons set forth above, the Court concludes that AUA fails to demonstrate that it is entitled to summary judgment with respect to the claims alleged in its Complaint, except its claim that Woodward engaged in defamation. AUA's claims under the Lanham Act, Anticybersquatting Consumer Protection Act, and Family Educational Rights and Privacy Act of 1974 (Counts I-III, respectively) fail as a matter of law. Thus the Court is granting summary judgment to Woodward with respect to those claims pursuant to Federal Rule of Civil Procedure 56(f).[14]

While the Court concludes that AUA is entitled to summary judgment with respect to its defamation claim (Count IV), the Court concludes that AUA prevails with respect to the following statements by Woodward, only:

- AUA routinely commits fraud upon its students.
- AUA falsifies its students' grades.
- AUA breaches contracts.
- AUA conspires to commit fraud and violations of civil rights.
- AUA commits criminal activities reportable to the FBI.
- AUA colluded with St. Joseph Hospital to maliciously end [Woodward's] career.
- AUA committed perjury.

The Court therefore is entering a permanent injunction, enjoining Woodward from

---

[14]Rule 56(f) allows a court to grant summary judgment for a nonmovant "[a]fter giving notice and a reasonable time to respond . . ." On prior occasions in this litigation, the Court has shared with the parties its reasons for concluding that AUA's claims under the Lanham Act, ACPA, and Family Educational Rights and Privacy Act of 1974 fail to state a claim for relief as a matter of law. AUA has failed to respond in a reasonable time with arguments suggesting that the Court's analysis is incorrect.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE,

          Plaintiff,

vs.

STEVEN WOODWARD,

          Defendant.

_____/

Case No. 10-10978

Patrick J. Duggan
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

## ORDER ON DISCOVERY MOTIONS
### (Dkt. 121, 125, 127, 128, 130, 132, 136, 145, 146)

A.    <u>Defendant's Motions to Compel and for Sanctions (Dkt. 121, 136)</u>

According to defendant's motion, plaintiff has failed to respond to his requests for admission, interrogatories, and requests for production of documents. (Dkt. 121). In response, plaintiff asserts that it timely responded to defendant's requests for admission and defendant has not identified any deficiency in its responses. (Dkt. 134). As to defendant's interrogatories, plaintiff further points to an earlier order, in which the Court denied defendant leave to serve 200 interrogatories. (Dkt. 115). Plaintiff takes no position on the motion to compel as it relates to the requests for production of documents. (Dkt. 134).

Based on the record before the Court, defendant's motion to compel is granted in part and denied in part. Defendant was previously denied leave to serve

1


EXHIBIT 2

200 interrogatories on plaintiff. For these reasons, defendant's motion to compel further responses to interrogatories is **DENIED**. To the extent that plaintiff has not already done so, plaintiff is **ORDERED** to respond to defendant's requests for production of documents, including the identification of documents as responsive to each request, within 30 days of entry of this order. As to plaintiff's answers to the requests for admission, the Court will address this in conjunction with defendant's motion for sanctions (Dkt. 136), which is related.

As to defendant's motion for sanctions, the Court interprets it to be more of a second motion to compel, pertaining to the same set of discovery discussed above. The Court's ruling, as to the interrogatories and requests for production of documents, remains the same and sanctions are **DENIED**. Defendant attached plaintiff's responses (which were not included in the brief on defendant's initial motion to compel (Dkt. 121) by either party. (Dkt. 136, Pg ID 1815-1828). After reviewing the requests and responses, the Court has concerns about both the propriety of the requests for admission and the responses. Thus, the Court **ORDERS** further briefing by both parties **STRICTLY LIMITED TO THE FOLLOWING ISSUES**: (1) the relevance of each request for admission to the claims and defenses posed in this case; (2) whether the objections are proper in light of applicable case law and Rule 36(a)(5); and (3) whether each of the answers complies with Rule 36(a)(4). Each party must file their brief by **October 28, 2011**

2

and it must not exceed 10 pages in length. Any brief that fails to comply with this Order will be stricken and the matter will be decided without regard to that party's arguments.

B.   Defendant's Requests for Information (Dkt. 125, 128, 130)

In this motion, defendant again seeks discovery from non-parties over which this Court does not have jurisdiction. (Dkt. 125, 128, 130). As plaintiff points out, the Court previously quashed subpoenas issued by this Court to the same non-parties, Sallie Mae, the National Board of Medical Examiners, and the Educational Commission for Foreign Medical Graduates. (Dkt. 123). The Court indicated to defendant that subpoenas to these non-parties had to be issued by the district court in which their places of business are physically located, not this Court. (Dkt. 123). For these same reasons, defendant's "requests for information" from these non-parties over which the Court has no jurisdiction are **DENIED**.

C.   Defendant's Motions to Adjourn (Dkt. 127, 145, 146)

Defendant has filed multiple requests for adjournment of the deadlines in this case to conduct discovery and to add counterclaims. (Dkt. 127, 145, 146). Defendant offers no discernable basis for such relief in any of his motions. Defendant's motions are, therefore, **DENIED**.

D.   Defendant's Request for Filing Electronic Data (Dkt. 132)

Defendant requests permission to file documents in an electronic format

3

other than PDF format and permission to file video and audio files. The Court's

electronic filing procedures require documents to be filed in PDF format and any

documents or media that cannot be converted to PDF to be filed in the traditional

manner. Defendant's motion is, therefore, **DENIED**.

    **IT IS SO ORDERED**.

    The parties to this action may object to and seek review of this Order, but are

required to file any objections within 14 days of service as provided for in Federal

Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). A party may not assign

as error any defect in this Order to which timely objection was not made.

Fed.R.Civ.P. 72(a). Any objections are required to specify the part of the Order to

which the party objects and state the basis of the objection. Pursuant to Local Rule

72.1(d)(2), any objection must be served on this Magistrate.

                                         s/Michael Hluchaniuk

Date: October 14, 2011                    Michael Hluchaniuk

                                      United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on October 14, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following: Eric A. Buikema, and I certify that I have either hand delivered/ mailed by United States Postal Service the paper to the following non-ECF participant(s): Steven Woodward, 7211 Brittwood Lane, Flint, MI 48507.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

84

Case 2:10-cv-10978-PJD-MJH

## UNITED STATES DISTRICT COURT
### IN THE EASTERN DISTRICT OF MICHIGAN
#### SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

Plaintiff,

V

STEVEN WOODWARD,

Defendant,

CASE No.: 2:10-cv-10978-PJD-MJH
Judge Patrick J. Duggan
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**Defendant's Objections to Order on Discovery Motions**
**(Dkt. 121, 125, 127, 128, 130, 132, 136, 145, 146)**

FILED
2011 NOV -3  A 11: 02
U.S. DIST. COURT CLERK
EASTERN DIST. MICH
FLINT

**EXHIBIT 3**  1

3

**Section A of "Order on Discovery Motions", page 2**

**Plaintiff's Responses to Defendant's Requests for Admissions**

**1. FR 36 Requests for Admission**

The Defendant asked the Plaintiff fifty-six,(56) Requests for Admissions per FR 36. The Plaintiff did not answer about 89% (50 of 56) of them as required by FR 36.

**A.** The Plaintiff responded to over 60% (35 of 56 Requests) with the same evasive and insufficient objection, without any other explanation.

**"Plaintiff objects to this request as irrelevant o the claims and defenses in this case of whether Defendant defamed Plaintiff or violated Plaintiff's marks."**

Requests: 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31, 32, 41, 42, 43, 44, 46, 49, 50, 51, 53, 54, 55, and 56 were responded to with the exact same bad faith, insufficient, and evasive objection, violating FR 36(a)(5) and FR 36(a)(4).

**Exhibit 1** are the Plaintiff's Response to Defendant's Requests for Admissions Dated November 22, 2010.

**Exhibit 2** are the Plaintiff's Docket 1 Claims

The Defendant will use the Plaintiff's Docket 1 claim identification to compare each of the Plaintiff's claims to the Defendants defense for each Request for Admissions, since there are so many violations committed by the Plaintiff. The Defendant can not double space each since there are so many violations. The Plaintiff's answers are contained in **Exhibit 1,** there are too many violation to include all of the Plaintiff's answers to satisfy Court 10 page requirements.

4

Request 7.
Please admit that American University of Antigua College of Medicine had a policy in 2007 that if a student passed the Shelf Exam that the student passed the course.
**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 8.
Please admit that American University of Antigua College of Medicine scheduled the Shelf Exam for their students at St Joseph Mercy Oakland Hospital.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 9.
Please admit that the American University of Antigua College of Medicine 5th Semester students at St Joseph Mercy Oakland Hospital did not receive the scheduled Shelf Exam in 2007.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 10.
Please admit that the students in the 2007 5th Semester program at St Joseph Mercy Oakland Hospital did not receive all the contractual clinical rotations.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 11.
Please admit that the Exam Master application did not work for any of the scheduled Friday Quizzes for the American University of Antigua College of Medicine students at St Joseph Mercy Oakland Hospital.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 12.
Please admit that the Exam Master application could not be used between October 21, 2007 and October 25, 2007.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 13.
Please admit that because Exam Master problems it was replaced with another software application for the Final Exam.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 14.
Please admit that American University of Antigua College of Medicine asks for student evaluations for courses.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 15.
Please admit that American University of Antigua College of Medicine published "AUA/KMC students are encouraged to address any academic or non-academic concerns with their Professors, Faculty Advisors or Deans."

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 16.
Please admit that American University of Antigua College of Medicine published "The University adheres to the mandates of the United States Family Educational Rights and Privacy Act (FERPA)"

**Relevance to, but not limited to, Plaintiff's Docket 1, Count III – Willful Violation of FERPA and Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 17.
Please admit that Steven Woodward was dismissed from American University of Antigua College of Medicine on May 21, 2008.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 19.
Please admit that AUA 5th Semester Final Grades were issued to the students after December 20, 2007.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 21.
Pleases admit that Exam Master software licensing agreement covers user name privacy.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 22.
Please admit that the Preliminary Clinical Medicine Course Guidelines*(September 6 –
December 21, 2007) states "You may choose any user name you would like to use".

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 23.
Please admit that American University of Antigua College of Medicine requested Susan
Zonia write the Memo dated December 17, 2007.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 24.
Please admit that American University of Antigua College of Medicine allowed students
located in Miami to attend a live Kaplan course during a 2007 5th Semester course.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 25.
Please admit that AUA students were exposed to PCP from an HIV positive patient
during the 5th Semester at St Joseph Mercy Oakland.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, C, D, E, F, G, I, J, K, M, N, O**

Request 26.
Please admit that Steven Woodward communicated with AUA and St Joseph Mercy
Oakland Hospital faculty concerning the PCP exposure but was not treated or examined
for the exposure.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, C, D, E, F, G, I, J, K, M, N, O**

Request 28.
Please admit that American University of Antigua College of Medicine has implemented
, in part or in full, suggestions made by Steven Woodward.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, C, D, E, F, G, I, J, K, M, N, O**

Request 29.
Please admit that Dr. R. Sanii wrote "Dear Steve;
Thank you for your email. I did read your email with great interest and concern. I think
you have brought up few very important and valuable points. I take it that you are very
concern and care for this institute. Me too. I like to see student being motivated and have
a chance to learn and advance in a very healthy scientific environment. I think it will be
helpful ( may be productive) if we meet and put our thought together to find a
solution for at least those issues related to SGA responsibility"

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, C, D, E, F, G, I, J, K, M, N, O**

Request 30.
Please admit that Dr. Hayden wrote "I understand what you are saying and your input as
well as your student colleagues is helpful and constructive. Change will come thanks to
your efforts. Unfortunately, as a trail blazer, you yourself won't benefit from the path you
are creating. But that's usually the case for leaders and forward thinkers."

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 31.
Please admit Victor Hrehorovich distributed, communicated, and/or forwarded Steven
Woodward's private username to a testing software application.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 32.
Please admit that Victor Hrehorovich distributed, communicated, and/or forwarded
private emails from Steven Woodward.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 41.
Please admit the 5th Semester Syllabus states "including counseling"

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 42.
Please admit William Cain refused to listen to Steven Woodward's exhibit during a
Committee Meeting.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 43.
Please admit William Cain refused to have a Committee meeting recorded.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, I, J, K, M, N, O**

Request 44.
Please admit William Cain wrote "no recording device, no legal council" in a Notice of Grievance Committee hearing on December 19, 2007.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, I, J, K, M, N, O**

Request 46.
Please admit that Steven Woodward earned and 80% for his 5th Semester Final Grade.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 47.
Please admit that Lekedra Evans earned an 83% for her 5th Semester Final Grade.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 49.
Please admit that the AUA 5th Semester Syllabus defined how the 5th Semester course was graded.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 50.
Please admit that the AUA 5th Semester Syllabus states " III. Evaluation and Grading
A) Passing Grade Minimal requirements
* Minimal total course grade  75%
*Minimal lecture attendance  85% (18 lectures)
*Minimal practical session attendance        85%
*Minimal Hospital lectures and other Academic sessions attendance        50%
*Minimal out-patient session attendance        90%
*Minimal Correlation Course questions        80% (1,600)
*Minimal total quizzes score        60%
*Minimal final written exam score        80%

Minimal final practical exam Score          80%"

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, B, C, D, E, F, G, J, K, M, N, O**

Request 51.
Please admit the 5th Semester Syllabus states "Their input is critical in developing and advancing the University's academic program."

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 53.
Please admit Victor Hrehorovich wrote to Steven Woodward "Thank you for your suggestions.  It's an excellent one, of great educational and economic import"

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, I, J, K, M, N, O**

Request 54.
Please admit Victor Hrhorovich wrote to Steven Woodward "Your points are well taken"

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, I, J, K, M, N, O**

Request 55.
Please admit there were at least 20 schedule changes during the 2007 5th Semester program at St Joseph Mercy Oakland hospital.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

Request 56.
Please admit Victor Hrhorovich did not reply to Steven Woodward the answer to the following question "Since the word is you're failing a students this semester, I would like to know my standing in the class.   Anything I need to be aware of that would jeopardize me getting out of this semester."

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims 21/54 A, C, D, E, F, G, J, K, M, N, O**

**B.** The Plaintiff's objections and answers are evasive and insufficient to fifteen(15)(over

26% - 15 of 56) of the Defendant's Request for Admissions, **Exhibit 1**, violate FR

10

36(a)(5) and FR 36(a)(4) . The Plaintiff uses the same evasive objection and answer for

Requests 1, 2, 3, 4; and 35, 36, 37, and 39 the Plaintiff's objections and answers to the

other seven Requests for Admissions, **Exhibit 1**, are evasive and insufficient.

Request 1.
Please admit that Jeffrey Yanez wrote: "After reviewing the final exam results AUA has
decided to apply a 10% "curve".

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
A, B, C, D, E, F, G, J, K, M, N, O**

Request 2.
Please admit that Jeffrey Yanez wrote "It is anticipated from AUA that you will only
need 4-5 hours to complete this examination given the fact that you already know the
questions and answers from the quizzes throughout the past 11 weeks.
Good Luck

PS- I took a look at the exam- The questions ARE the exact same as the ones you have
already seen."

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
A, B, C, D, E, F, G, I, J, K, M, N, O**

Request 3.
Please admit that Jeffrey Yanez wrote "AUA (Dr. Calderone) also noted that you scored
0 on the vocabulary and he wondering why or what happened."

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
A, B, C, D, E, F, G, I, J, K, M, N, O**

Request 4.
Please admit that Jeffrey Yanez wrote "All the words from the definitions are listed" and
that these "definitions" were the entire "Vocabulary" section of the Final Exam.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
A, B, C, D, E, F, G, I, J, K, M, N, O**

Request 5.
Please admit that the Final Written Exam given to 5th Semester students were given on
different dates between the three clinical sites.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims
A, B, C, D, E, F, G, I, J, K, M, N, O**

Request 6.
Please admit that Sallie Mea was not informed that loans were being issued to American University of Antigua College of Medicine students in 2006.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, B, C, D, E, F, G, J, K, M, N, O**

Request 27.
Please admit that AUA students during the 5th Semester Course at St Joseph Mercy Oakland hospital were not taught biohazard skills and precautions required to perform tests on PCP HIV infected patients.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, C, E, F, G, J, K, O**

Request 35.
Please admit that Jeffrey Yanez diagnosed Steven Woodward as having "episodes", "episodic", "He didn't seem to be able to control his emotions", "I was dealing with a child".

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, C, D, E, F, G, I, J, K, M, N, O**

Request 36.
Please admit that Jeffrey Yanez did not documented any diagnosed behavioral problems concerning Steven Woodward.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, C, D, E, F, G, J, K, M, N, O**

Request 37.
Please admit that Jeffrey Yanez never notified AUA concerning any of Steven Woodward's episodes.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, C, D, E, F, G, J, K, M, N, O**

Request 38.
Please admit that St Joseph Mercy Oakland never provided counseling or support services to Steven Woodward.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, C, D, E, F, G, I, J, K, M, N, O**

12

Request 39.
Please admit that William Cain wrote "the documents I have received are evidence of absurd behavior".

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, C, D, E, F, G, I, J, K, M, N, O**

Request 40.
Please admit William Cain never offered counseling to Steven Woodward during the 5th Semester.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, C, D, E, F, G, I, J, K, M, N, O**

Request 47.
Please admit that Lekedra Evans earned an 83% for her 5th Semester Final Grade.

**Relevance to, but not limited to, Plaintiff's Docket 1 Count IV – Defamation claims A, B, C, D, E, F, G, J, K, M, N, O**

13

**Section A - Defendant's Objections to Denial of Sanctions**

Docket 136 is not a second Motion to Compel, the Court's treating it as a "second Motion to Compel" is evidence of blatant bias, discrimination, and a violation of Due Process against the Defendant by the Court.   The Plaintiff has violated FR 37(c)(1)Failure to Disclose; to Supplement an Earlier Response, or to Admit, 18 U.S.C. 1623 False Declarations Before Grand Jury or Court, Fraud on the Court FR 60(b)(3) Fraud, misrepresentation, or misconduct by an opposing party.  The Plaintiff's Dockets (76), (140), (141) and (143) are FASLE pleadings and declarations, and Court Order (Docket 115) is an artifices of fraud.

**1.** The Plaintiff violated Federal and Local Rules filing Docket 76 Motion to Compel. The Defendant tried to confer with the Plaintiff in an email December 16, 2010 regarding the production of Discovery material during the December 22, 2010 hearing, **Exhibit 3**,

**"Mr Buikema,**

**Depending on the Decisions and Order by the Honorable Judge Michael Hluchaniuk:**


**Please schedule time after the December 22nd Hearing to sign-for(verify receipt) and receive approximately 2,500 pages of my Exhibits and Rule 26 documentation, my answers to your Interrogatories, Request for Admissions, and Requests for Production."**

The Plaintiff filed Docket 76 Motion to Compel, approximately three(3) hours after the Defendant tried to confer with the Plaintiff concerning the production of Discovery material.  Plaintiff did not attempt to confer with the Defendant prior to writing Docket

76, violating FR 37(a)(1) and LR 37.1. The Defendant filed four Motions regarding

Discovery (Docket 43 Motion for Protective Order, Docket 51 Defendants Motion for

Sanctions and Motion for Dismissal, Docket 53 Defendants Response to Plaintiff's

Motion to Compel and Renewed Request for a Motion for Protective Order, Docket 56

Defendant's Motion for Protective Order).

**2.** The Plaintiff **LIED** directly to Honorable Judge Hluchaniuk. The Plaintiff admitted to

refusing to take the Discovery they demanded in their Docket 76 Motion to Compel.

The COURT itself "Noted" that ALL of the Defendant's discovery material was made

available to the Plaintiff December 22, 2010.

**A. Exhibit 4** page 45

"**Woodward:** Any documents that he requested, all of his answers to his interrogatories,

all of his answers for his admissions, all of his documentation is here.

**Buikema:** It's there but I didn't address it quite intentionally. It's not before you today.

**Court:** It's not scheduled for today. I'm just noting the existence of it. And Mr.

Woodward is saying that he intends to comply with that today. "

page 46

"**Court:** It's it's certainly not unreasonable that you would be unable to inspect those

documents today under the circumstance. But if has documents for you to take with you,

I would certainly encourage you to take those and then assess the completeness of that

production as soon as you possibly can.

**Buikema:** I will."

**B.** Hearing August 11, 2011 before Honorable Judge Patrick J. Duggan the Plaintiff

admitted to refusing to accept the Defendants Discovery.

**Exhibit 5,** page 24,

"**Buikema**: Yes, I refused to accept documents in lieu of an answer of my question."

"**Buikema**: But it's true, I'll stipulate, for the record, that I left the hearing without

accepting the banker's boxes that Mr Woodward brought to that hearing. "


The "Banker's Boxes" was only a 1/2 of a box or documents the Plaintiff demanded per

Docket 76 Motion to Compel..

The Defendant gave to the Plaintiff, FREE of charge, documents; the contents were

labeled, collated, and included a spreadsheet describing each document.


**C.** The Honorable Judge Michael Hluchaniuk knew of the Plaintiff's refusal to participate

in Discovery December 22, 2010, February 1, 2011(Prior to filing Order Docket 115) and

again March 24, 2011.

**(i).** December 22, 2010, page 44, **Exhibit 4,**

"**Court**: But if in the future you are unwilling to cooperate or participate in discovery,

there could be consequences for that.   Page 45,

**Woodward**: I suspect there will be more motions for that seeing that I've requested a

substantial amount of information from Mr. Buikema which is, as obvious that he stated

that hasn't appeared yet.  And he has basically four hours to produce it."


…..

16

**Woodward**: Any documents that he requested, all of his answers to his interrogatories, all of his answers for his admissions, all of his documentation is here.

**Buikema**: It's there but I didn't address it quite intentionally.   It's not before you today.

**Court**: It's not scheduled for today.  I'm just noting the existence of it.  And Mr. Woodward is saying that he intends to comply with that today.  Whether that's actually comes to pass is another issue, which we may address at a later time.  But certainly I would invite you Mr. Buikema to look at what Mr. Woodward has brought to court today and accept what he has and then make a determination of whether that satisfies your motion.

**(ii)**. February 1, 2011, page 6, **Exhibit 6**, of file Deposition-1.wmv (DW_A0068.wav) before Honorable Judge Michael Hluchaniuk,

"**Woodward (SW)**: Your honor um this laptop isn't my laptop it's a brand new laptop it belongs to my sister I'm using it uh for this I, what I have on it is a spreadsheet of which I brought all electronic files with me I brought every single thing that **I was suppose to bring to the best of my knowledge again I have over 2,600 pieces of paper here this is the documentation that Mr. Buikema did not take during our last hearing.**

**(iii)** March 24, 2011, page 3, **Exhibit 7**, audio file DW_A0069.wav before Honorable Judge Michael Hluchaniuk.

"**Woodward (SW)**: I have your honor.  I produced those every single hearing we've had, every single one of these depositions that these guys have cancelled.  I've brought this documentation with me it's here, it's here today and they refused to take it, he refused.  I

have a recording of him refusing to even turn around and look at the documentation

including these of which I brought to the last deposition.

**Court (JH):** Well, it's my belief that if you make those documents available and that as

long as it's clear, so that we can it there is a contest over this in the future we can

determine what it was that was made available to them, the obligation of a party is

discovery as far as I'm concerned is to, you can produce copies, or simply make copies

available, and um, if he brought documents for the inspection for the opposing counsel

and **the opposing counsel chooses not to look at it then he's satisfied his obligations

as far as I'm concerned.**"

The Defendant made available the very documents the Plaintiff demanded in their Motion

to Compel, (Docket 76) was available December 22, 2010, and earlier.  The Court Order

(Docket 115) was written against the Defendants for Discovery the Plaintiff REFUSED

to take.

**D.**  The Plaintiff refused to accept the Discovery material demanded from the Defendant

in Docket 76, Motion to Compel, during the December 22, 2010 Hearing.  The Plaintiff

refused again to take the Discovery material during the February 1, 2011 Deposition.

The Plaintiff did not take the Defendant's answers to the Plaintiff's Interrogatories or

Admissions until March 24, 2011.  Court Order(Docket 115) and subsequent Motions

written by the Plaintiff against the Defendant for Discovery are artifices or fraud.

18

3. The Plaintiff moved the Court to file Order, Docket 115 on Motion to Compel, Docket 76, based on lies. Per the Court Order 115,

**"Plaintiff has filed a motion to compel defendant to answer certain written discovery requests that have, apparently, gone unanswered."**

The Discovery Requests were not unanswered, the Plaintiff refused to accept them December 22, 2010.

4. The Plaintiff's Docket 140 page 7 of 10, note (3) concerning the Defendant providing Discovery is an example of the Plaintiff's FALSE declarations.

**"(3) Defendant did, at his reconvened deposition serve dilatory responses to there requests, purportedly in response o the Court's order compelling discovery (Docket No. 115)."**

The Plaintiff admitted to refusing to accept all of the Defendant's Discovery material during the December 22, 2010 Hearing. The Plaintiff filed Docket 140 to fraudulently obtain monetary funds from the Defendant based on false declarations and blatant lies.

5. The Plaintiff makes FALSE declarations concerning the production of Discovery in Docket 141, page 1.

**"Plaintiff American University of Antigua College of Medicine ("AUA"), through counsel states its Motion for Sanctions for Defendant's Failure to Comply with Court Order Compelling Discovery(Docket No. 115) as follows:"**

The Plaintiff admitted to refusing to accept all of the Defendant's Discovery material during the December 22, 2010 Hearing.

19

The Plaintiff filed Docket 141 to fraudulently obtain approximately $4,626.20 from the Defendant. The Plaintiff tried to wrongfully establish liability for Plaintiff's claims; Preclude Defendant from introducing evidence to contradict Plaintiff's claims; and to Strike Defendant's answer and entering a default judgment against Defendant.

**6.** The Plaintiff makes FALSE declarations concerning the production of Discovery in Docket 143, page 1, number 2.

**"Defendant failed to answer requests for admissions and has conceded liability"**

The Plaintiff admitted before Honorable Judge Patrick J. Duggan that they in fact did receive the Defendant's responses to the Requests for Admissions, these responses were made available to the Plaintiff December 22, 2010, but the Plaintiff refused to take them. The Defendant satisfied their requirement to produce this Discovery per the opinion of Honorable Judge Michael Hluchaniuk.

August 11, 2011, **Exhibit 8**, page 28 and 29

**"The Court**: Counsel, are you saying you've never seen a response to the request for admissions?

**Mr. Buikema**: We have now.

**The Court**: You have now?

**Mr. Buikema**: We have now.

**Mr. Woodward**: So, you do now have my if admissions?

**The Court**: He says he now has them, Okay.

**Mr. Woodward**: Okay. So, what does that say about his part?

20

**The Court**: I don't know.

**Mr. Woodward**: I'm glad you're typing that up because he's telling, in his thing for next week, he's saying I never gave it to him.

**The Court**: I don't know, we'll talk about that at the hearing, okay.

When did you get it, counsel?

**Mr. Buikema**: I can't answer that question off the top of my head, it's relatively recent.

**The Court**: Pardon?

**Mr. Buikema**: I can't answer that question off the top of my head.  It's relatively recent in the litigation where we received, what I would consider to be, nearly conforming responses to request for admissions.

**The Court**: Is the failure to respond to request for admissions part of the basis for your motion?

**Mr. Buikema**: It is part of the basis for our motion."


The Plaintiff filed Docket 143 in to fraudulently obtain a ruling for Summary Judgment against the Defendant including monetary damages.


**7.** The Plaintiff disobeyed Court Order(Docket 124) failing to respond to the production of documentation.  The requested Documentation included Student Record which are guaranteed by LAW and the Plaintiff's own Student Handbook .  The Documentation was due December 22, 2010 and this issue was brought before the Court by the Defendant.

The Plaintiff by definition has committed contempt of court per FR 37(b)(1).

**8.** The Court warned the Defendant about failure to participate in Discovery, December 22, 2010 **Exhibit 4**, page 44

"**Court:** But if in the future you are unwilling to cooperate or participate in discovery, there could be consequences for that. "

**(A)** The Court has allowed the Plaintiff to violate the very WARNING the Court issued the Defendant concerning cooperation in Discovery.

**(B)** The Plaintiff has admitted to not cooperating and been allowed to lie directly to the Court concerning Discovery.

**(C)** The Plaintiff has been allowed to produce NO documentation, including the Defendant's own Student Record which are guaranteed by LAW and the Universities own Student Handbook and policies.

**(D)** The Plaintiff has been allowed to answer NO interrogatories, of which the Defendant only asked 54, including answers concerning the Defendant's own Student Records.

**(E)** The Plaintiff has NOT answered approximately 89% of Requests for Admissions in good faith.

**(F)** The Plaintiff has been allowed to disobey a Court Order,(Docket 124) by failing to respond to the production of Documentation per FR 34, and blatant refusal to produce the documentation.

**(G)** The Plaintiff admits to not accepting ANY of the Defendants Discovery material, of which the Plaintiff demanded in their Motions to Compel.

**(H)** The Court has allowed the Plaintiff to refuse the production Rule 7.1 documentation, which is automatic and was due April 19, 2010.

(I) The Plaintiff refuses to cooperate in Discovery and has harassed, burdened, and wasted over 13 months of the Defendants life over their failure to perform Discovery. Refusing a Hearing on Sanctions against the Plaintiff is blatant BIAS, DISCRIMINATION, AND VIOLATION OF DUE PROCESS against an individuals RIGHTS, the Defendant, over that of a Wall Street Business, Greater Caribbean Learning Resources, a corrupt Medical School AUA, a Healthcare Network Trinity Health, and corrupt attorneys.

The Defendant requests Sanctions against the Plaintiff.  The Defendant requests the Court dismissal of the Plaintiff's claims under FR 37(c)(1)(C) and FR 37(b)(2)(A)(v) and/or leave of the Court to file a Motion for Dismissal of the Plaintiff's Claims.

The Defendant requests the Court Grant the Defendant's Motion to file Counter Claims.

## Section B - Defendant's Objections Requests for Information

The Defendant Objects to Section B "Defendant's Requests for Information (Docket 125, 128, 130).  The Defendant requests a Leave from the Court to file a "Motion for Dismissal" of all the Plaintiff's claims regarding USMLE pass rates since the TRUTH can not be obtained by a Pro Se without the Court.  The Plaintiff refuses, by Quashing the TRUTH and the Court Granted those Motions.


**1.** According to the Department of Education document FR Doc 2010-26796, **Exhibit 9.** Foreign Institution—Federal Student Aid Programs, page 18 of 64, paragraph 3, **"The Department regards the ECFMG as the most reliable source for pass rates and pass rate data"**

143 4/29/2011

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, a foreign corporation,

Plaintiff,

United States District Court Judge
Patrick J. Duggan, presiding
Michael Hluchaniuk, referral
Case No.: 2:10-cv-10978

V

STEVEN L. WOODWARD,

Defendant.

| Eric A. Buikema (P58379) CARDELLI, LANFEAR & BUIKEMA, P.C. Attorneys for Plaintiff 322 W. Lincoln Royal Oak, MI 48067 (248) 544-1100 ebuikema@cardellilaw.com | STEVEN L. WOODWARD In Pro Per c/o 7211 Brittwood Lane Flint, MI 48507 Steve_L_woodward@yahoo.com |
| --- | --- |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff American University of Antigua College of Medicine ("AUA"), through

Counsel, pursuant to Fed. R. Civ. P. 56, states its Motion for Partial Summary Judgment as

follows:

1.    This is a defamation, trademark infringement and cybersquatting case where

Plaintiff alleges that Defendant defamed it and infringed on its marks through the publication of

a website, www.aua-med.com

2.    Defendant failed to answer requests for admissions and has conceded liability.

3.    As discussed at length in the accompanying brief, the statements made on

1

4 **EXHIBIT 4**

Case 2:10-cv-10978-PJD-MJH

**FILED**

2011 MAR 24  A 7 44

U.S. DIST COURT CLERK
EAST DIST. MICH
FLINT

## UNITED STATES DISTRICT COURT
### IN THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

Plaintiff,

V                                              CASE No.: 2:10-cv-10978-PJD-MJH
                                               Judge Patrick J. Duggan
                                               Judge Michael Hluchaniuk, referral

STEVEN WOODWARD,

Defendant,

**Motion to Compel Plaintiff**

5        **EXHIBIT 5** 1

**Motion to Compel Plaintiff**

**List of Exhibits:**
Exhibit 1. Defendant's Request for Documentation
Exhibit 2. Defendant's Request for Interrogatories
Exhibit 3. Defendant's Request for Admissions
Exhibit 4. Plaintiff's Answers to Exhibit 3.


The Plaintiff is acting in Bad Faith regarding Discovery. The documentation and

answers, Exhibit 1, Exhibit 2, and Exhibit 3, were due December 22, 2010. The

Plaintiff's attorney indicated to the Court, and Defendant, that they were going to

produce the Discovery documentation and answers after the December 22, 2010 hearing.

Instead of producing any documentation or answers in good faith the Plaintiff emailed the

Defendant only Exhibit 4, in Bad Faith. The Plaintiff refuses to produce any of the

requested documentation, including the Defendant's, Steven Woodward, own school

records. The Plaintiff removed access to the Defendant's own private email address

**stevenw@auamed.net** after the Defendant filed a lawsuit against them, prior to the

wrongful dismissal. The Plaintiff has refused to produce access to stevenw@auamed.net

email account.

The Defendant requests the Court order the Plaintiff to produce all of the requested

documentation, Answer Admissions, and the Interrogatories, if not all at least the

required amount. The Defendant requests the Court impose sanctions against the

Plaintiff due for burden, harassment, and annoyance.


Steven Woodward
7211 Brittwood Ln
Flint, MI 48507
(810)235-7267

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE,

    Plaintiff,

vs.

STEVEN WOODWARD,

    Defendant.

_____/

Case No.  10-10978

Patrick J. Duggan
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

## ORDER REQUIRING RESPONSE TO DEFENDANT'S
## MOTION TO COMPEL PLAINTIFF (Dkt. 121)

Defendant filed a motion to compel plaintiff. (Dkt. 121).  Plaintiff must
file a response to the original motion, including a written brief, in accordance with
Local Rule 7.1.  The deadline for plaintiff's response is **APRIL 11, 2011**.  **Failure
to file a response may result in sanctions, including granting all or part of the
relief requested by the moving party.**  The deadline for the moving party's reply
is **APRIL 25, 2011**.

   **IT IS SO ORDERED.**

Date: March 25, 2011

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

 **EXHIBIT** 6

1

93

Case 2:10-cv-10978-PJD-MJH

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U.S. DIST. COURT CLERK
DETROIT OFFICE MICH
FLINT

FILED

2011 APR 15 A 9 08

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

Plaintiff,

V                                          CASE No.: 2:10-cv-10978-PJD-MJH
                                           Judge Patrick J. Duggan
                                           Judge Michael Hluchaniuk, referral

STEVEN WOODWARD,

Defendant,

**Motion For Sanctions**

EXHIBIT 7

1

## Motion For Sanctions

**List of Exhibits:**
Exhibit 1. Docket 124, Order Requiring Response to Defendant's Motion To Compel Plaintiff(Dkt121)

Exhibit 2. Docket 134, Plaintiff's Response To Defendant's Motion To Compel

Exhibit 3. Docket 121, Defendant's "Motion to Compel Plaintiff"

Exhibit 4. Email, From: Steven Woodward date: Mon, November 22, 2010, Subject: AUA-Woodward.

Exhibit 5. Email, From: Steven Woodward date: Tue, November 23, 2010 Subject: Re: AUA-Woodward

Exhibit 6. Email, From: Steven Woodward date: Thu, December 16, 2010 Subject: AUA vs Woodward – Documentation, Interrogatories, Admissions, Documentation Requests

Exhibit 7. Email, From: Steven Woodward date: Tue, December 28, 2010 Subject: AUA vs Woodward

Exhibit 8. Plaintiff's Response To Defendants Requests For Admissions Dated November 22, 2010

Exhibit 9. Case History

Exhibit 10. Clinical Clerkship Affiliation Agreement between American University of Antigua College of Medicine and St Joseph Mercy-Oakland


The Plaintiff has failed to perform their duties in Good Faith and is now in clear violation of FR 37 Failure to Make Disclosures or to Cooperate in Discovery.


The Plaintiff is in Civil Contempt for failing to respond as defined in the Court Order to the original motion.

2

**1.** The Plaintiff has failed to comply with Court Order, Docket 124, "ORDER

REQUIRING TO DEFENDANT'S MOTION TO COMPEL PLAINTIFF", **Exhibit 1**

The Plaintiff has failed to completely respond to and answer the Court Order.

The Plaintiff has failed to respond, confer, answer, or object to the "**Defendant's**

**Request for Production Pursuant to FRCP 34.**", **Exhibit 2 (Exhibit 1 of Docket 121)**

The Plaintiff has failed to produce, confer, answer, or object to these documents per

Federal Rule V. 34 Producing Documents.


These documents were due December 22, 2010.


The Plaintiff has failed to produce, respond objection, or answers to the request for

Documents as required in Docket 124, "**Order Requiring Response to Defendant's**

**Motion To Compel Plaintiff**", **Exhibit 1.**


The Court Order clearly states "**Plaintiff must file a response to the original motion**"


The Defendant's Docket 121, "**Motion to Compel Plaintiff**", **Exhibit 3, page 2,**

"**List of Exhibits**

**Exhibit 1. Defendant's Request for Documentation.**"


**Exhibit 3, page 2 line 6** states

"**The Plaintiff refuses to produce any of the requested documentation, including the**

**Defendant's, Steven Woodward, own school records.**"


3

C. The Plaintiff failed to produce answers to the "Defendant's Requests for Admissions",

**Exhibit 3, (Exhibit 3 of Docket 121)** in "Good Faith" as demonstrated in "Plaintiff's

Response To Defendant's Requests For Admissions Dated November 22, 2010"


The Plaintiff responded to "Request 38. Please admit that St Joseph Mercy Oakland never

provided counseling or support services to Steven Woodward."

The response was

**"Plaintiff cannot admit or deny this interrogatory as it cannot speak for St Joseph**

**Mercy Oakland"** the Plaintiff is a partner under contract with St Joseph Mercy Oakland

Hospital concerning this Admission, **Exhibit 10, page 4, line 3**

**"The hospital agrees to provide support services including counseling for students"**


The Plaintiff answered "Request 52" **"Denied"** without giving a statement for denial as

required per FR 36 (4) Answer  **"A denial must fairly respond to the substance of the**

**matter."**


The Plaintiff has not answered in "Good Faith" to Requests: 7, 8, 9, 10, 11, 12, 13, 14,

15, 16, 17, 19, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31, 32, 41, 42, 43, 44, 46, 49, 50, 51, 53,

54, 55, and 56

per "Good Faith" and  FR 36 (5) Objections.  **"A party must not object solely on the**

**ground that the request presents a genuine issue for trial."**

9



Case 2:10-cv-10978-PJD-MJH

## UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

Plaintiff,

V                                          CASE No.: 2:10-cv-10978-PJD-MJH
                                           Judge Patrick J. Duggan
                                           Judge Michael Hluchaniuk, referral

STEVEN WOODWARD,

Defendant,


**Defense Response to Order Requiring Response to Defendant's Motion To Compel Plaintiff(Dkt. 121)**



1

**1.** The Plaintiff has failed to comply with Court Order, Docket 124, "ORDER

REQUIRING TO DEFENDANT'S MOTION TO COMPEL PLAINTIFF", **Exhibit 1**

The Plaintiff has failed to completely respond to and answer the Court Order.

The Plaintiff has failed to respond, confer, answer, or object to the "**Defendant's**

**Request for Production Pursuant to FRCP 34.**", **Exhibit 2 (Exhibit 1 of Docket 121)**

The Plaintiff has failed to produce, confer, answer, or object to these documents per

Federal Rule V. 34 Producing Documents.


These documents were due December 22, 2010.


The Plaintiff has failed to produce, respond objection, or answers to the request for

Documents as required in Docket 124, "**Order Requiring Response to Defendant's**

**Motion To Compel Plaintiff**", **Exhibit 1.**


The Court Order clearly states "**Plaintiff must file a response to the original motion**"


The Defendant's Docket 121, "**Motion to Compel Plaintiff**", **Exhibit 3, page 2,**

"**List of Exhibits**

**Exhibit 1. Defendant's Request for Documentation**."


**Exhibit 3, page 2 line 6** states

"**The Plaintiff refuses to produce any of the requested documentation, including the**

**Defendant's, Steven Woodward, own school records.**"

C. The Plaintiff failed to produce answers to the "Defendant's Requests for Admissions",

**Exhibit 3, (Exhibit 3 of Docket 121)** in "Good Faith" as demonstrated in "Plaintiff's

Response To Defendant's Requests For Admissions Dated November 22, 2010"


The Plaintiff responded to "Request 38. Please admit that St Joseph Mercy Oakland never

provided counseling or support services to Steven Woodward."

The response was

**"Plaintiff cannot admit or deny this interrogatory as it cannot speak for St Joseph**

**Mercy Oakland"**  the Plaintiff is a partner under contract with St Joseph Mercy Oakland

Hospital concerning this Admission, **Exhibit 10, page 4, line 3**

**"The hospital agrees to provide support services including counseling for students"**

The Plaintiff answered "Request 52" **"Denied"** without giving a statement for denial as

required per FR 36 (4) Answer  **"A denial must fairly respond to the substance of the**

**matter."**


The Plaintiff has not answered in "Good Faith" to Requests: 7, 8, 9, 10, 11, 12, 13, 14,

15, 16, 17, 19, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31, 32, 41, 42, 43, 44, 46, 49, 50, 51, 53,

54, 55, and 56

per "Good Faith" and  FR 36 (5) Objections.  **"A party must not object solely on the**

**ground that the request presents a genuine issue for trial."**


The Defendant has performed Discovery in Good Faith, the Plaintiff has gone as far as

block Discovery, in reference to Motions to Quash discovery.

Case 2:10-cv-10978-PJD-MJH

## UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

Plaintiff,

V

CASE No.: 2:10-cv-10978-PJD-MJH
Judge Patrick J. Duggan

STEVEN WOODWARD,

Defendant,


**Defendant's Objections and Answers to Plaintiff's Request For Admissions.**

9    **EXHIBIT 9**

**Defendant's Objections and Answers to Plaintiff's Request For Admissions.**

1. Objection Compound Question.

2. Admit

3. Admit

4. Deny, The Defendant provides factual criticisms and information about the Plaintiff and the hospitals they do business.

5. Deny, The Defendant provides factual criticisms and information about the Plaintiff and the hospitals they do business.

6. Deny, The Defendant provides factual criticisms and information about the Plaintiff and the hospitals they do business.

7. Deny, The Defendant had permission from the Court per the United States Constitution Civil Rights.

8. Deny, The Defendant had permission from the Court per the United States Constitution Civil Rights.

9. The Defendant can not admit or deny, please restate the question the Defendant does not understand.

10. The Defendant can not admit or deny, please restate the question the Defendant does not understand.

11. Admit, The Plaintiff's own Dean Dr. Victor Hrehorovich released this information.

12. Admit, The Plaintiff admits that this information contains private student information, Dr. Victor Hrehorovich presented this information as fact during a 5th Semester class orientation at St Joseph Mercy Oakland Hospital in September, 2007.

13. Deny, The statements made on www.aua-med.com are factual to the best of the Defendant's knowledge.

14. Admit

15. Admit

16. Admit

17. Admit

18. Admit

19. Admit

20. Admit

21. Admit

22. Deny, The Defendant has published only information that one, singular, student was sexually assaulted, of which the Plaintiff admits.  The Plaintiff has failed to provide requested documentation concerning this matter.

23.  Admit

J  24. Object Compound Statement

K  25. Admit

26.  Deny, St Joseph Mercy Oakland Hospital paid $4 million to the FBI, St Joseph Mercy Oakland was a contractual education partner.

27. Deny, St Joseph Mercy Oakland Hospital paid $4 million to the FBI, St Joseph Mercy Oakland was a contractual education partner.

28. Deny, According to published information "Antigua only has a 22.9% USMLE Pass Rate".

29. Deny, AUA contrives false evidence

N  30. Admit

31. Admit

32. Admit

O  33. Admit

34. Admit

35. Admit

36. Object Compound Statement

37. Object Compound Statement

38. Object Compound Statement

39. Deny, The Defendant has license under the United States Constitution and United States Laws, and therefore does not need license, approval, or other forms of consent from the Plaintiff.

Case 2:10-cv-10978-PJD-MJH

## UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

Plaintiff,

V                                    CASE No.: 2:10-cv-10978-PJD-MJH
                                     Judge Patrick J. Duggan
                                     Magistrate Judge

STEVEN WOODWARD,

Defendant,

**Defendant's amendments to Document 10 "Response to Motion" filed 04/16/2010;
sent to the court and plaintiff via email 04/15/2010, first sentence "Attached is my
rebuttal to the plaintiff's claims"**

 **to**

**"DEFENDANT'S ANSWER and AFFIRMATIVE DEFENSES TO PLAINTIFF'S
COMPLAINT"**

**EXHIBIT 10**          1

10

## COUNT IV -DEFAMATION

**52.** The Defendant incorporates and restates its answers to paragraph 1 through 51.

**53.** The Defendant deny as untrue.

**54.** The Defendant deny as untrue.  The Defendant uses direct words, narrated video clips, weblinks and "YOUTUBE" videos of his making which are true and factual to the best of his knowledge or opinion:

**14**  a)  The Defendant admit that AUA routinely commits fraud upon its students;

**15**  b)  The Defendant admit that AUA falsifies its student grades;

**16**  c)  The Defendant admit that AUA breaches contracts;

d)  The Defendant admit that AUA disregards student civil rights;

e)  The Defendant admit that AUA conspired against its students;

f)  The Defendant deny as untrue. The Defendant admit that in their opinion some AUA faculty are unethical;

g)  The Defendant deny as untrue.  The Defendant admit that in their opinion some of AUA and St Joseph Mercy Oakland Hospital's faculty and staff act with malicious intensions and that some of AUA and St Joseph Mercy Oakland Hospital's faculty and staff are heinous;

h)  The Defendant deny as untrue.  The Defendant admit to publishing information , that was published in an Antiguan Online Newspaper, about one AUA student that was sexually assaulted;

i)  The Defendant admit that AUA professors teach students wrong information;

**24**  j)  The Defendant deny as untrue.  The Defendant admit that AUA conspires to commit fraud.  The Defendant admits that AUA violates and disregards civil rights.

**25**  k)  The Defendant admit to reporting AUA to the FBI.

l)  The Defendant deny as untrue.  The Defendant admit to publishing that "Antigua only has a 22.9% USMLE Pass Rate".

m)  The Defendant deny as untrue.  The Defendant admits that AUA contrives false evidence used for committee meetings.

8

**30**

n)  The Defendant deny as untrue.

The Defendant admit that some faculty and staff of AUA and St Joseph Mercy Oakland Hospital colluded to maliciously end their career.

The Defendant admit that some faculty and staff of AUA and St Joseph Mercy Oakland Hospital conspired to end their career.

The Defendant admit that perjury was committed by some faculty and employees of AUA and St Joseph Mercy Oakland Hospital.

The Defendant admit that in their opinion, some of the AUA and St Joseph Mercy Oakland Hospital faculty and staff abuse their power.

The Defendant admit that in their opinion some AUA and St Joseph Mercy Oakland Hospital staff and faculty are immoral and unethical.

**33**

o)  The Defense admit that some of AUA agents are liars.

p)  The Defense deny as untrue.  The Defense merely republishes public domain articles and information concerning Antigua.

55.  The Defendant deny as untrue.

56.  The Defendant deny as untrue.

57.  The Defendant deny as untrue.

58.  The Defendant deny any damages to the Plaintiff's reputation.

The Defendant deny that they owe the Plaintiff anything, including but not limited to, damages for costs, interest, or fees.

The Defendant deny any action requiring judgment and maintains their innocents in these matters.

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

      Plaintiff,

V                                              Case No.

STEVEN WOODWARD,

      Defendant.

---

ERIC A. BUIKEMA (P58379)
Cardelli, Lanfear, & Buikema, PC
Attorneys for Plaintiff
322 W. Lincoln
Royal Oak, MI 48067
(248) 544-1100

---

## PLAINTIFF'S VERIFIED COMPLAINT AND EX PARTE REQUEST FOR TEMPORARY RESTRAINING ORDER

      NOW COMES Plaintiff, American University of Antigua, College of Medicine, by and through its attorneys, CARDELLI, LANFEAR & BUIKEMA, P.C., and for its Verified Complaint and Ex Parte Request for Temporary Restraining Order, states as follows:

      1.    Plaintiff American University of Antigua, College of Medicine ("AUA") is an Antiguan corporation located at University Place, Antigua, West Indies.

      2.    Plaintiff places students in certain Michigan hospitals for clinical education and training.



EXHIBIT 11

## COUNT III- WILLFUL VIOLATION OF FERPA

46.    Plaintiff incorporates and restates its answers to paragraphs 1 through 45 above.

47.    Defendant has published private educational information about other students including names and grades on his website.

48.    This publication is without the consent of the University or its affected students and is otherwise unauthorized.

49.    The academic records are otherwise private and are protected from public disclosure under federal law.

50.    The consequence of disclosure has an immediate and obvious impact on the affected students' privacy rights for which there is no adequate remedy at law.

51.    Further, as a direct and proximate result of Defendant's actions, AUA could lose significant access to federal educational funding and student aid.

WHEREFORE, Plaintiff American University of Antigua, respectfully requests a judgment against Defendant, together with costs, interest, and attorney fees.

## COUNT IV- DEFAMATION

52.    Plaintiff incorporates and restates its answers to paragraphs 1 through 51 above.

53.    Defendant publishes a website in which he intentionally, maliciously and/or recklessly or negligently publishes falsehoods about AUA.

54.    By use of direct words, narrated video clips, weblinks and "YOUTUBE" videos of his making, Defendant promulgates as if true the following "facts" about AUA:

a.    AUA routinely commits fraud upon its students;

9

**15**    b.     AUA falsifies its students grades;

**16**    c.     AUA breaches contracts;

       d.     AUA disregards student civil rights;

       e.     AUA conspires against its students;

       f.     AUA pursues unspecified and other unethical practices;

       g.     AUA has "malicious intensions" and administration and academic advisors of a "heinous nature";

       h.     AUA students are sexually assaulted;

       i.     AUA professors teach students wrong information;

**24**    j.     AUA conspires to commit fraud and violations of civil rights;

**25**    k.     AUA commits criminal activities reportable to the FBI;

       l.     AUA student pass rate for USMLE medical board exams is only 22.9%;

       m.     AUA contrives false evidence in student disciplinary proceedings (i.e, the hearing Mr. Woodward was provided prior to dismissal and refused to even attend);

**30**    n.     AUA colluded with St. Joseph Hospital to maliciously end Mr. Woodward's career, conspired, abused its power, committed perjury and is otherwise immoral and unethical;

**33**    o.     AUA agents are liars;

       p.     The locality of AUA is full of "rape, murder, fraud, and government corruption."

55.     Each and every one of these "facts" is false.

Being First duly sworn:

I, Neil Simon, am an officer of the American University of Antigua and its general counsel.  I have personal knowledge of the facts set forth in this complaint and, having read the same, I hereby attest that each and every allegation contained herein is true to the best of my knowledge, information and belief.

Neil Simon
Its:  President

Subscribed and sworn to before me this
___ day of _____, 2010.

Notary Public
My commission expires:

LEONARD A. SCIAFANI
Notary Public, State of New York
No. 02SC6120579
Qualified in Westchester County
Commission Expires December 20, 20__

12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, a foreign corporation,

      Plaintiff,

                               United States District Court Judge
                                Patrick J. Duggan, presiding
                              Michael Hluchaniuk, referral

V                                    Case No.: 2:10-cv-10978

STEVEN L. WOODWARD,

      Defendant.

| Eric A. Buikema (P58379) | STEVEN L. WOODWARD |
| CARDELLI, LANFEAR & BUIKEMA, P.C. | In Pro Per |
| Attorneys for Plaintiff | c/o 7211 Brittwood Lane |
| 322 W. Lincoln | Flint, MI 48507 |
| Royal Oak, MI 48067 | Steve_L_woodward@yahoo.com |
| (248) 544-1100 | |
| ebuikema@cardellilaw.com | |

## PLAINTIFF'S REQUESTS FOR ADMISSIONS

     Plaintiff American University of Antigua College of Medicine, through counsel, pursuant to Fed. R. Civ. P. 36 submits the following requests for admission.  Your answer must admit the request, specifically deny the request, or make a statement that you cannot truthfully admit or deny the request.  Fed. R. Civ. P. 36(a)(4).  A denial must fairly respond to the substance of the matter.  Fed. R. Civ. P. 36(a)(4).  Pursuant to Fed. R. Civ. P. 36(a)(3) you have 30 days from the date of this request to respond.

**EXHIBIT 12**

12

**REQUEST 1**

Please admit that you are the owner and operator of aua-med.com

**RESPONSE:**


**REQUEST 2**

Please admit that you are the YouTube user auastudentrights.

**RESPONSE:**


**REQUEST 3**

Please admit that you are the owner of the YouTube channel auastudentrights.

**RESPONSE:**


**REQUEST 4**

Please admit that a purpose of aua-med.com is to deter potential students from enrolling at AUA.

**RESPONSE:**


**REQUEST 5**

Please admit that a purpose of the auastudentrights videos on YouTube is to deter potential students from enrolling at AUA.

**RESPONSE:**

**REQUEST 6**

Please admit that a purpose of the auastudentrights Channel on YouTube is to deter potential students from enrolling at AUA.

**RESPONSE:**


**REQUEST 7**

Please admit that on or before July 23, 2010 you republished aua-med.com without permission from the court.

**RESPONSE:**

**REQUEST 8**

Please admit that on or before July 23, 2010 you republished the videos by auastudentrights on YouTube and the associated channel without permission from the court.

**RESPONSE:**


**REQUEST 9**

Please admit that people have viewed the aua-med.com website and sent you that these viewers are not parties to the instant suit.

**RESPONSE:**


**REQUEST 10**

Please admit that people have viewed and commented on the auastudent rights videos and associated channel on YouTube and that these viewers are not parties to the instant suit.

**RESPONSE:**

**REQUEST 11**

Please admit that you published the following file: http://www.aua-med.com/downloads/usmle-pass-rate.ppt

**RESPONSE:**


**REQUEST 12**

Please admit that the http://www.aua-med.com/downloads/usmle-pass-rate.ppt document contains embedded student information including GPA and USMLE scores.

**RESPONSE:**


**REQUEST 13**

Please admit that the statements made on your website are intended to be factual.

**RESPONSE:**


**REQUEST 14**

Please admit that you published statements that AUA routinely commits fraud upon its students;

**RESPONSE:**


**REQUEST 15**

Please admit that you published statements that AUA falsifies its students' grades;

**RESPONSE:**

**REQUEST 16**

Please admit that you published statements that AUA breaches contracts

**RESPONSE:**


**REQUEST 17**

Please admit that you published statements that AUA disregards student civil rights;

**RESPONSE:**


**REQUEST 18**

Please admit that you published statements that AUA conspires against its students;

**RESPONSE:**


**REQUEST 19**

Please admit that you published statements that AUA engages in unethical practices;

**RESPONSE:**


**REQUEST 20**

Please admit that you published statements that AUA has "malicious intensions"

**RESPONSE:**

**REQUEST 21**

Please admit that you published statements that AUA administration and academic advisors are of a "heinous nature";

**RESPONSE:**


**REQUEST 22**

Please admit that you published statements that AUA students are sexually assaulted;

**RESPONSE:**


**REQUEST 23**

Please admit that you published statements that AUA professors teach students wrong information

**RESPONSE:**


**REQUEST 24**

Please admit that you published statements that AUA conspires to commit fraud and violations of civil rights;

**RESPONSE:**


**REQUEST 25**

Please admit that you published statements that AUA commits criminal activities reportable to the FBI.

**RESPONSE:**

**REQUEST 26**

Please admit that the only basis for your statement that AUA's alleged criminal activities are reportable to the FBI is your own report of these alleged activities to the FBI.

**RESPONSE:**

**REQUEST 27**

Please admit that you have no knowledge or information about other reports made about AUA to the FBI.

**RESPONSE:**

**REQUEST 28**

Please admit that you published statements that AUA's student pass rate for USMLE medical board exams is only 22.9%;

**RESPONSE:**

**REQUEST 29**

Please admit that you published statements that AUA contrives false evidence in student disciplinary proceedings;

**RESPONSE:**

**REQUEST 30**

Please admit that you published statements that AUA colluded with St. Joseph Hospital to maliciously end your career.

**RESPONSE:**

**REQUEST 31**

Please admit that you published statements that AUA's agents and employees engaged in a conspiracy.

**RESPONSE:**

**REQUEST 32**

Please admit that you published statements that AUA abused its power.

**RESPONSE:**

**REQUEST 33**

Please admit that you published statements that AUA committed perjury.

**RESPONSE:**

**REQUEST 34**

Please admit that you published statements that AUA is otherwise immoral and unethical.

**RESPONSE:**

**REQUEST 35**

Please admit that you published statements that AUA's agents are liars;

**RESPONSE:**


**REQUEST 36**

Please admit that you published statements that Antigua is full of "rape, murder, fraud, and government corruption" and that therefore AUA is an unsafe place.

**RESPONSE:**

**REQUEST 37**

If you admitted that you published any of the statements outlined in Requests 14 through 25 and 28 through 36, <u>for each</u>, please admit that you knew the statements were false when published.


**REQUEST 38**

If you admitted that you published any of the statements outlined in Requests 14 through 25 and 28 through 36, <u>for each</u>, please admit that you had no knowledge regarding the truth or falsity of the statement when you published it.

**RESPONSE:**


**REQUEST 39**

Please admit that you do not have and never had any license, approval or other form of consent from AUA to reproduce or otherwise utilize AUA's tradename, trademarks or logos on your websites.

**RESPONSE:**

/s/  Eric A. Buikema (P58379)
Eric A. Buikema (P58379)
Cardelli, Lanfear & Buikema, P.C.
322 West Lincoln Avenue
Royal Oak, Michigan 48067
(248) 544-1100
ebuikema@cardellilaw.com

Dated:  November 8, 2010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, a foreign corporation,

        Plaintiff,

                           United States District Court Judge
                           Patrick J. Duggan, presiding
                           Michael Hluchaniuk, referral

V                               Case No.:  2:10-cv-10978

STEVEN WOODWARD,

        Defendant.

| | |
|---|---|
| Eric A. Buikema (P58379)<br>CARDELLI, LANFEAR & BUIKEMA, P.C.<br>Attorneys for Plaintiff<br>322 W. Lincoln<br>Royal Oak, MI 48067<br>(248) 544-1100<br>ebuikema@cardellilaw.com | STEVEN L. WOODWARD<br>In Pro Per<br>c/o 7211 Brittwood Lane<br>Flint, MI 48507<br>Steve_L_woodward@yahoo.com |

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

    NOW COMES Plaintiff, American University of Antigua College of Medicine "AUA",

and pursuant to FRCP 65 moves this Court for entry of a preliminary injunction, for the

following reasons:

1.    This action arises, in most basic summary, out of Defendant's ownership and publication

    of a website, and derivative publications, containing false and defamatory information

    about American University of Antigua College of Medicine ("AUA"), as well as private

    information about AUA students protected from disclosure under the Family Educational

    Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g), and by his use of a confusingly

1

EXHIBIT 13

similarly granted summary disposition to Trinity on April 29, 2009 finding, on the merits, that the claimed defamatory remarks as to Woodward's misconduct were actually, in fact, true.

As a result of Mr. Woodward's apparent dissatisfaction with this result and with everyone and everything other than the party truly responsible for his circumstance (himself), he has now registered an internet domain name of www.aua-med.com at which he publishes reckless, false, and malicious purported "facts" about AUA in addition to other objectionable content. A specific date when Mr. Woodward commenced his endeavor is not known but it is well after AUA's first usage in trade of its own similarly named website www.auamed.org. A copy of the legitimate www.auamed.org website homepage, which Plaintiff utilizes to market and provide useful information to current and prospective students, is attached as Exhibit B. Defendant's www.aua-med.com website homepage is attached as Exhibit C.

Defendant's website represents, alleges and publishes, as if true, false and defamatory information about AUA including, by way of example and not limitation, that:

a. AUA routinely commits fraud upon its students;

b. AUA falsifies its students grades;

c. AUA breaches contracts;

d. AUA disregards student civil rights;

e. AUA conspires against its students;

f. AUA pursues unspecified and other unethical practices;

g. AUA has "malicious intensions" and administration and academic advisors of a "heinous nature";

h. AUA students are sexually assaulted;

i. AUA professors teach students wrong information;

2

j.      AUA conspires to commit fraud and violations of civil rights;

k.      AUA commits criminal activities reportable to the FBI;

l.      AUA student pass rate for USMLE medical board exams is only 22.9%;

m.      AUA contrives false evidence in student disciplinary proceedings (i.e., the hearing Mr. Woodward was provided prior to dismissal and refused to even attend);

n.      AUA colluded with St. Joseph Hospital to maliciously end Mr. Woodward's career, conspired, abused its power, committed perjury and is otherwise immoral and unethical;

o.      AUA agents are liars;

p.      The locality of AUA is full of "rape, murder, fraud, and government corruption."

(See Exhibits A and C).

Defendant's website further publishes, in a manner not repeated here, and without consent of the university or its affected students, other students' identities and personal information including grades and academic information. AUA suffers irreparable injury and harm to its reputation each day that Mr. Woodward's appalling site is permitted to remain available. Moreover, irreparable injury to AUA and its affected students occurs, for which there is not an adequate remedy at law, by virtue of Mr. Woodward's unsanctioned and unauthorized publication of federally protected private academic information. As such, Plaintiff was forced to file this lawsuit and now appropriately seeks injunctive relief from this Honorable Court.

# American University of Antigua

This Web site is intended to ensure you are well informed about this institution and the hospitals they do business with.

Hopefully, this prevents you from wasting years of your life and possibly as much as $150,000 in tuition alone.

Consider yourself informed about the business practices of AUA.



## Antigua only has a 22.9% USMLE Pass Rate!

## AUA student sexually assaulted!

Learn more truth about rape, murder, and other crimes on Antigua!

This site contains evidence about AUA:

-**Fraud**

-**Falsifying Student Grades**

-**Breach of Contract**

-**Disregard for Student Civil Rights**

-**Conspires Against Students**

and other unethical practices by AUA and the hospitals they do business with.

"The Memo" is a link to evidence about a letter that had no other than malicious intensions. This demonstrates the pure heinous nature of the administration and academic advisors of both AUA and St Joseph Mercy Oakland hospital of Trinity Healthcare network.

"**Video Index** " is the complete list of videos.

The documents included on this site are: court exhibits, depositions, interrogatories, student records, emails from student and faculty, recordings, pictures, and other documentation.

If these businesses do this to their students, one can only imagine what they do to their patients.

This web site is dedicated to all the students whose lives, careers, and dreams were ruined by AUA.

(This is not the official American University of Antigua, AUA, site.)

1 of 1                                                                                               4/15/2010 9:21 AM

Case 2:10-cv-10978-PJD-MJH   ECF No: 188, PageID.3157   Filed 12/13/11   Page 102 of 221

_Discover a technologically advanced campus, extensive recreational opportunities and modern amenities._

- Follow us and stay up to date with all of AUA's events and happenings:
- Facebook
- Twitter
- Youtube

[Search field] Search

Home Administration Executive Administration Neal Simon, JD



# Neal Simon, JD Full Bio

President and Co-Founder

Mr. Simon is AUA's President and Co-Founder. Mr. Simon received his BS/MA from American University and his JD from New York Law, where he made the Law Review.

- Email
- Share
- Print

- About AUA
- Schools
- Admissions
- Student Life

## Student Blogs

Find out about life at AUA firsthand from our students.

Read Blogs

### Graduate Success

- Find out where our graduates are in the U.S. and Canada

### Affiliations

- Explore where our students fulfill their clinical rotations

EXHIBIT 14
14

Argument By Mr. Buikema                    7
Monday/April 19, 2010

1        THE COURT:  Wait, that's a different theory.

2        MR. BUIKEMA:  You asked me specifically about the

3    confusing --

4        THE COURT:  We're going to go to each one of your

5    theories because I'm trying to figure out why you're

6    asserting these theories because it doesn't seem to me

7    your Lanham Act has any merit at all.

8        MR. BUIKEMA:  The Lanham Act claim is relative not

9    to the use of the confusingly similar web domain name,

10   I misunderstood, Your Honor, apologies.

11       The Lanham Act claim is relative to plaintiff's

12   use, republication of our actual logo, trade name.

13       THE COURT:  Where is that set forth here?

14       MR. BUIKEMA:  This is set forth in the verified

15   complaint.

16       THE COURT:  No, no, I've got your motion.  I'm

17   reading your motion.  Your motion tells me why you're

18   entitled to relief.  Now, you're coming up with

19   something I didn't read in the motion at all.

20       MR. BUIKEMA:  That is contained, I believe, at

21   page six, Your Honor -- excuse me, top of page seven.

22   Our motion reads, "Defendant's use of the similar

23   domain name, including copies, reproduction and/or

24   counterfeits of the AUA logo on the site itself has

25   been and continues to be done with the intent to cause

*10-10978; American University of Antigua v. Steven Woodward*

15  EXHIBIT 15

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Argument By Mr. Buikema
Monday/April 19, 2010

13

1    claim which is, "Willful violation of Family

2    Educational Rights and Privacy Act"?

3        MR. BUIKEMA:  Correct.

4        THE COURT:  I'm reading from your brief, "The

5    Family Educational Rights and Privacy Act of 1974

6    prohibits the federal funding of educational

7    institutions that have a policy of practice of

8    releasing education records without authorized

9    persons."  What's that got to do with this case?

10       MR. BUIKEMA:  In my view, Your Honor, it's a

11   wrongful act predicate to a tortious interference

12   claim.  And perhaps that's not made as clear as it

13   should be by our pleadings but that's how I regard this

14   claim.

15       FERPA prohibits disclosures of students'

16   information by the University itself.  And has, as

17   consequence, the termination of federal funding, which

18   my client does receive and some of the students receive

19   benefits under that provision.

20       It's my view that Mr. Woodward's conduct in

21   disclosing student information grades, which he admits

22   to doing and, in fact, has muddied this record by

23   attaching yet more of that information, creates

24   standing to my client -- gives standing to my client

25   the challenge on behalf of its students.

*10-10978; American University of Antigua v. Steven Woodward*

1          But more importantly --

2          THE COURT:  Why, he's not an agent of the

3     university in any way, shape or form?

4          MR. BUIKEMA:  But we are an agent of our students

5     whose information has been --

6          THE COURT:  But this prohibits the University from

7     doing it.  How could you possibly argue that the

8     University is doing it, when they're not?

9          MR. BUIKEMA:  I'm not sure I understand Your

10    Honor's question.

11         THE COURT:  It says, "It prohibits federal funding

12    of educational institutions who have a policy or

13    practice."  You don't contend the education has a

14    policy or practice, do you?

15         MR. BUIKEMA:  I do not contend that it has a

16    policy or practice.  But Mr. Woodward's actions in

17    disclosing the student information could cause the

18    federal government to terminate funding --

19         THE COURT:  How could that be a policy or practice

20    of the University?  How would anyone ever believe his

21    conduct is a practice or policy of the University?

22         MR. BUIKEMA:  I'd rather not find out, frankly,

23    Your Honor.

24         THE COURT:  It's just ridiculous.  I don't know

25    why you're arguing that.  His conduct can't be

*Federal funding*   *FERPA*

10-10978; American University of Antigua v. Steven Woodward

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Argument By Mr. Buikema
Monday/April 19, 2010

18

1   allegations in our complaint are true", and it's signed

2   by the President of the University.

3          THE COURT:  Hold on.

4          MR. BUIKEMA:  In fact, that's the only evidence

5   you have, in this case, thus far.

6          THE COURT:  Hold on.  Tell me what the verified

7   complaint says with respect to these individual items.

8          MR. BUIKEMA:  I will.

9          If you look at page four of the verified

10  complaint, paragraph 21, Your Honor, reads:

11  "Defendant's website represents, alleges, and

12  publishes, as if true, false and defamatory about AUA,

13  including by way of example and not by limitation

14  that:"

15         And then you see the same subparagraphs "A"

16  through "P" in that allegation.

17         The very last page, of course, is a verification

18  signed, under oath, by the President of the University

19  indicating that the allegations contained in the

20  complaint are, in fact, true.  He's reviewed them and

21  the like.

22         So, he's affirmed that those representations by

23  Mr. Woodward's website are false in sworn testimony.

24         THE COURT:  Who signed the affidavit?

25         MR. WOODWARD:  The President of the University.

*10-10978; American University of Antigua v. Steven Woodward*

15

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Argument By Mr. Buikema                    19
Monday/April 19, 2010

1    His name is Neil Simon, not to be confused with the

2    playwright.

3         THE COURT:  Let's go, for example, to small "h":

4    "AUA students are sexually assaulted."  Is that a false

5    statement?

6         MR. BUIKEMA:  In and of itself, an AUA student was

7    apparently assaulted.  The connotation of AUA students

8    being sexually assaulted, in the tense, is a false

9    statement.

10        THE COURT:  In the what?

11        MR. BUIKEMA:  In the tense utilized or represented

12   by the website is a false statement.

13        THE COURT:  I'm missing what you're talking about,

14   "Tense".

15        MR. BUIKEMA:  The statement in the website

16   connotes a general practice or happening as if "All

17   students" or generally students are sexually assaulted

18   at AUA.

19        THE COURT:  That's the spin you put on it.  But

20   the statement itself is true, "AUA students are

21   sexually assaulted", have they?

22        MR. BUIKEMA:  An AUA student was sexually

23   assaulted.

24        THE COURT:  Only one?

25        MR. BUIKEMA:  To my knowledge, yes.

*10-10978; American University of Antigua v. Steven Woodward*

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Response By Mr. Woodward
Monday/April 19, 2010                               34

1        its students."  What's the basis for that?

2            MR. WOODWARD:  Well, I don't know the basis for

3        routinely commits fraud, Your Honor.

4            But on the documentation that I just turned in

5        today, Your Honor, as far as all of the -- that

6        contained all of the student information that was

7        released, I can demonstrate that I earned an 80 percent

8        on my final grade and AUA gave me an "F".

9            THE COURT:  Hold on.  One thing to say you believe

10       you were.

11           Counsel, why do you say in here:  "AUA routinely

12       commits fraud"?  Does he say that on the website?

13   RESPONSE BY MR. BUIKEMA

14           MR. BUIKEMA:  I do say that and he does say that.

15       And the home page says, "You'll find evidence of fraud.

16       Contains evidence of AUA committing fraud."

17           If you click on the link and then either the

18       evidence links or the video links to these Youtube

19       videos which, by the way, are narrated by Mr. Woodward

20       and published by Mr. Woodward as well.  He goes through

21       these synopsis of how AUA commits fraud upon its

22       "Students", plural.  And it's about an eight-minute

23       video, I think, in that particular circumstance.

24           And the characterization of my motion is an

25       accurate characterization of his website from us and

    *10-10978; American University of Antigua v. Steven Woodward*

Response By Mr. Buikema
Monday/April 19, 2010                    35

1        publications.

2   RESPONSE BY MR. WOODWARD

3        MR. WOODWARD:  If the data is not released and you

4   have the student grades that the school reported to me

5   on their Power Point presentation that their grades are

6   only 50% and on the internet they're claiming an 80.6%

7   pass rate, they're not telling the truth.  That's false

8   advertisement.

9        If they give a person an "F" on their final grade

10  that earned an 80 percent on their final grade, that's

11  fraud, as far as the definition of cheating a student.

12       They further went on to say, "Failed final exam.

13  Did not have OP rotation."  That is also fraud, Your

14  Honor.  I had an out-patient rotation.  I only had two

15  clinical rotations --

16       THE COURT:  Let's stay away from you, I understand

17  you.  On what basis do you conclude whatever happened

18  to you happens to other students?

19       MR. WOODWARD:  Because, Your Honor, we were

20  supposed to have clinical rotations and more than just

21  two rotations.  All of these students only had two

22  rotations.

23       They claimed superior, quality education, et

24  cetera.  If you look at this semester program, we had

25  over 20 changes in the schedule of this semester

*10-10978; American University of Antigua v. Steven Woodward*

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Response By Mr. Woodward
Monday/April 19, 2010                          36

1        program, Your Honor.  The applications that they had

2        didn't even work, Your Honor.  The testing applications

3        did not work.  The testing applications failed.

4            There was a week time, Your Honor, when I couldn't

5        do any of my work for the testing application because

6        it did not work.  Five days, Your Honor, that their

7        application didn't work.

8            That would be like your employees not being able

9        to do their work for five days.  And I paid $12,000 for

10       this education that is supposedly this quality, great

11       education.  And instead they give me an "F".

12           THE COURT:  One thing to complain about the way

13       you were treated, okay.  I'm more concerned about you

14       making generalized statements about other students,

15       without any basis for it.

16           MR. WOODWARD:  I am a student.  I was a student.

17           THE COURT:  "Other students", okay.  It's one

18       thing to express complaints about the way you were

19       treated, but to go on and generally suggest that this

20       is happening to all kinds of students may be

21       inaccurate.

22           MR. WOODWARD:  Your Honor, in my experience it is

23       not because I've just demonstrated that they say on

24       their website about the quality of education and I just

25       gave you an example about the quality education we get,

*10-10978; American University of Antigua v. Steven Woodward*

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Response By Mr. Woodward                    39
Monday/April 19, 2010

1    in my opinion.

2        THE COURT:  That's what you're trying to convey,

3    isn't it?

4        MR. WOODWARD:  It is.  And it's totally different

5    than what they state on their web pages, which what I'm

6    trying to convey.  Which is what they state on their

7    web pages is not true.  It's not as true as like they

8    would like to lead you to believe.

9        They would like to lead you to believe in these

10   pictures that it's all sandy beaches and warm sun and

11   you're going to come down and nothing is going to

12   happen to you.

13       THE COURT:  They say in here that your website

14   says that:  "AUA disregards student's civil rights",

15   did you say that?

16       MR. WOODWARD:  Disregard for civil rights, yes,

17   Your Honor.

18       THE COURT:  What's the basis for that?

19       MR. WOODWARD:  The basis for that on the first

20   committee meeting they had against me was a tit for

21   tat.

22       I claimed that one of the professors, Your Honor,

23   and I have the documentation for this, was

24   confrontational to the students and I initiated a

25   grievance committee against the school.  The school, in

*10-10978; American University of Antigua v. Steven Woodward*

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Response By Mr. Woodward
Monday/April 19, 2010                                40

1    return, initiated a grievance committee against me for

2    this and the professor claimed that I was rude to her

3    during her presentation of the class, it was a test

4    review.

5         And I had the video -- I had the audiotape of that

6    entire conversation, Your Honor.  The audiotape of the

7    entire class.  And during the committee meeting, I was

8    not allowed to present that as evidence.

9         THE COURT:  That applies to you.

10        MR. WOODWARD:  Right.

11        THE COURT:  Well, I'm concerned that you're not

12   saying that on the website.

13        MR. WOODWARD:  Another student was also implicated

14   in the same committee meeting, Your Honor, that's two

15   of us.

16        THE COURT:  How can you say they conspired against

17   the other student?

18        MR. WOODWARD:  That's not a conspiracy, that's the

19   committee meeting.  Civil rights.

20        THE COURT:  How do you know that?

21        MR. WOODWARD:  I could hear them yelling at him

22   through the door, Your Honor.  I'm sitting outside the

23   door of this committee meeting and hear them talking to

24   this individual outside the door.

25        Okay.  Another example, Your Honor, is they tried

10-10978; American University of Antigua v. Steven Woodward

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Response By Mr. Woodward
Monday/April 19, 2010                     41

1      to initiate another committee meeting against me during

2      final week and during that they wouldn't even give me

3      what it was for.

4           I have emails where I'm requesting, "What did I

5      do?  Please, explain what and when I did something?"

6      They never gave me that information, Your Honor, never.

7      And that committee meeting was dropped.

8           During this committee meeting that I had in

9      December of 2007, they denied me the right to counsel

10     even though per their student handbook it says that I

11     have the right to evidence and counsel.

12          THE COURT:  Okay.  My concern is this, it's one

13     thing for you to express your dissatisfaction about the

14     way you were treated, okay.

15          But it's not necessarily fair for you to

16     generalize and suggest that what's happening to you is

17     happening to everyone.  You agree with me?

18          MR. WOODWARD:  Your Honor, it happened to me and

19     another student --

20          THE COURT:  Do you agree that it would be wrong to

21     say that, "What happened to me, happens to all the

22     students", wouldn't that be wrong?

23          MR. WOODWARD:  Your Honor, I've seen this school.

24     I've seen --

25          THE COURT:  Wouldn't it be wrong to say that,

*10-10978; American University of Antigua v. Steven Woodward*

1    "What happened to me, happens to all the students",

2    wouldn't that be wrong?

3          MR. WOODWARD:  Not when you witness it happening?

4          THE COURT:  To all the students?

5          MR. WOODWARD:  I never said, "All the students".

6          THE COURT:  Wouldn't it be wrong to make that

7    statement?

8          MR. WOODWARD:  If you say, "Every single student

9    this happens to"--

10          THE COURT:  I'm not saying, "Every single

11   student".

12          Wouldn't it be wrong to say that, "What happened

13   to me, happens to all the students", wouldn't that be

14   wrong?

15          MR. WOODWARD:  How many students need to be

16   destroyed at that place?

17          THE COURT:  Wouldn't that be a wrong statement?

18          MR. WOODWARD:  If you had said, "Everybody", yes.

19          THE COURT:  I said, "All the students", yes, okay.

20          Now, if you said, "What's happened to me, happens

21   to other students", do you have proof of all that?

22          MR. WOODWARD:  I have proof that there's a

23   committee meeting issued against me and the other

24   student, that first committee meeting when it was over

25   that tit for tat thing, and they didn't let me produce

*10-10978; American University of Antigua v. Steven Woodward*

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Response By Mr. Woodward
Monday/April 19, 2010

43

1    the evidence and they obviously didn't let him.

2         THE COURT:  Obviously?

3         MR. WOODWARD:  Well, I have the evidence to clear

4    both of us and they didn't allow me to produce it and

5    he didn't have it.  I had the computer with me, I had

6    the evidence.  I was not allowed to produce it.

7         THE COURT:  They claim you say:  "AUA conspires

8    against its students."

9         MR. WOODWARD:  That's right, Your Honor.  I have

10   documentation evidence, Your Honor, that shows that we

11   were given pagers at St. Joseph Mercy Hospital, Your

12   Honor, this is just another example.

13        We were given pagers September at St. Joseph Mercy

14   Hospital.  Pagers were not part of any of the syllabus,

15   course guidelines, no documentation of the use of

16   pagers, okay.

17        In October, supposedly, Susan Zonia, the director

18   of the program, paged me on a Friday after one o'clock,

19   at two o'clock it says in her email.  She did it again

20   on Monday, which would have been at the end of the

21   program.  The following week, Monday, she paged me

22   twice.  And a committee meeting was written up against

23   me that I missed pages.

24        Your Honor, at one o'clock I would have been

25   excused per the schedule of the whole course.  I was

*10-10978; American University of Antigua v. Steven Woodward*

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Response By Mr. Woodward
Monday/April 19, 2010                                    55

1    just put maintenance on this one page, then I'll stay

2    in line.

3         THE COURT:  And then delete the other, you'll

4    still stay in line, won't you?

5         MR. WOODWARD:  I don't know, Your Honor.  I can't

6    imagine deleting all of that information out of there.

7         THE COURT:  Well, here's my concern.  I'm not

8    prepared today to go through each and every statement

9    as to whether it's false or not; it may be, may not be.

10   It could take days and weeks and I'm not going to go

11   through all that.  And you've got to leave, you don't

12   have time to go through that now.

13        However, on the other hand, I'm concerned that if

14   there's some false information on there, it shouldn't

15   be on there.  And if we can put maintenance on there

16   and still hold your page, then maybe you can sit down

17   with brother counsel at a later point and say, "All

18   right, here's what I want to do, I'm going to put this

19   statement, this statement; this is a matter of

20   opinion --"

21        MR. WOODWARD:  How about this, Your Honor, as far

22   as a happy median?  The stuff like I use downloads, for

23   example, the download file or directory, if I rename

24   that to, "Dash-1", then the odds of somebody finding

25   that file, they'd never find that information because

10-10978; American University of Antigua v. Steven Woodward

56

Case 2:10-cv-10978-PJD-MJH

FILED

UNITED STATES DISTRICT COURT 2010 NOV 19  A 11. 49
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U.S. DISTRICT COURT CLERK
EASTERN MICH
FLINT

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

Plaintiff,

V                                        CASE No.: 2:10-cv-10978-PJD-MJH
                                         Judge Patrick J. Duggan

STEVEN WOODWARD,

Defendant,

### Defendant's Motion for Protective Order

16          **EXHIBIT 16**

1

**Defendant's Motion for Protective Order**

**List of Exhibits:**
Exhibit 1: Final Grades
Exhibit 2: Oakland County Circuit Court Docket January 19, 2009
Exhibit 3: Oakland County Circuit Court Docket November 4, 2008
Exhibit 4: Sallie Mae Letter
Exhibit 5: Loan Certificates
Exhibit 6: Notarized Copy, Susan Zonia, MD
Exhibit 7: Susan Zonia Deposition


The Defendant believes the Plaintiff is forcibly seeking discovery for unethical purposes.

The Plaintiff has the motive, means, and history of deleting and/or altering evidence, and/or falsifying documentation as demonstrated in Docket 51 "Defendants Motion for Sanctions and Motion for Dismissal", Final Grades, Loan Certificates, and faculty Professional Credentials.

The Plaintiff admits that their student grades were Disclosed and their continued requests for Preliminary Injunctions against the Defendant further demonstrates their desire and purpose to cover-up this evidence.

The Plaintiff is attempting to discover evidence with the intent to alter and/or delete the evidence before trial.

The Defendant begs the Court to grant a Protect Order, both written and verbal for the purposes of protecting evidence.


**(1)** The Defendant caught the Plaintiff deleting and/or altering Court evidence, as exposed here and in Docket 51 "Defendants Motion for Sanctions and Motion for Dismissal".

The Defendant had to hire a Notary Public (Exhibit 6), to witness evidence, because the Plaintiff is untrustworthy and was deleting and/or altering evidence before trial.

The Defendant and the Court now endure undue burden and expense because the Plaintiff has violated 18 U.S.C 1506 by altering or deleting evidence.


**(2)** The Plaintiff falsified(fixed) the Final Grades(Exhibit 1) of students enrolled in a Clinical course at St Joseph Mercy Oakland Hospital in Pontiac, Michigan.

The Defendant's Final Grades(Exhibit 1) were falsified from an **80%** to an **F** for the purposes of committing perjury as presented before Judge Shalina Kumar of Oakland

2

County Circuit Court (Exhibit 2, page 2(5))  **"Woodward took and failed the fifth semester Final Exam."** and " **Woodward received an "F" for the fifth semester"** Note #2 at the bottom of page 5 states **"Woodward claims he actually passed the final exam"**

In the "Brief in Support of Answer to Plaintiff's Motion for Entry of Default and Judgement"(Exhibit 3, page 2) to Judge Shalina Kumar, the Plaintiff wrote **"washed out"** concerning Steven Woodward, which is a total absolute lie before the Court and fraud against Steven Woodward.

The following are other examples of fraud committed against students during the same course at St Joseph Mercy Oakland Hospital.  It should be noted that these grades (Exhibit 1) are only 10 of approximately 100 students that were enrolled in the 5th Semester course.

The Plaintiff assigned the grade of "**C**" to the person that had the **lowest grades** (76%) in the course, **Vishal Chheda**; giving a lower grade, (C-), to **Lekedra Evans** who earned an **83%** in the course.

**Michael Ozuomba** also outperformed Vishal Chheda, earning a **77%**, but was given an "**F**" for the course.

This one course cost each student approximately $12,000 for just school fees.

**(3)** Devin Hewitt, Office of the Customer Advocate Sallie Mae, states **"These loans were borrowed to finance your attendance at Kasturba Medical College; not American University of Antigua"**(Exhibit 4).

These student loans were managed by American University of Antigua.  Two Nellie Mae Loan Certifications (Exhibit 5) are signed by the Dean of Student Services and Registrar, Sevrine Barrie, under the letter-head of Kasturba Medical College.

**(4)** The Defendant has reason to believe the Plaintiff falsified the credentials of their faculty.  Susan Zonia is published as having an "MD" implying a Medical Doctor (Exhibit 6).

The Faculty and Staff page for Susan Zonia (Exhibit 6) and Susan Zonia's own testimony (Exhibit 7, page 2 (7)) confirm that she has a PhD in sociology.

**(5)** The Plaintiff's continued requests for Preliminary Injunctions demonstrate that they disregard Civil Rights, both Due Process and Freedom of Speech.

3

The request of a Preliminary Injunction demonstrates the Plaintiff's intent to cover-up their disclosure of student grades, obstructing justice for those students that seek damages for their suffering from this disclosure.

**(6)**The Defendant requests a "Motion of Protective Order" for the purposes of protecting evidence.

The Plaintiff can not be trusted with this information and has the motive, means, and history of modifying and/or destroying evidence.

The Plaintiff has a history of falsifying documentation: student records, records to Oakland County Circuit Court, faculty credentials, and documents to a financial institution.

Docket 51 demonstrates that the Plaintiff has destroyed or altered evidence that was verbally disclosed by the Defendant during the Hearing on or about 4/19/2010.

The granting of the "Protective Order" will aid in preventing the Plaintiff from having access and opportunity to destroy or alter other Defense evidence.

The Defendant believes they are justified for a "Motion of Protective Order", since they are without counsel, due to financial reasons, and have little means of protecting evidence.

The Defendant requests the Court GRANT the Defendant a "Protective Order" against all Discovery, **verbal and written**, from Defendant by the Plaintiff for the purpose of protecting evidence.



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, a foreign corporation,

Plaintiff,

United States District Court Judge
Patrick J. Duggan, presiding
Michael Hluchaniuk, referral
Case No.: 2:10-cv-10978

V

STEVEN L. WOODWARD,

Defendant.

| Eric A. Buikema (P58379) | STEVEN L. WOODWARD |
| CARDELLI, LANFEAR & BUIKEMA, P.C. | In Pro Per |
| Attorneys for Plaintiff | c/o 7211 Brittwood Lane |
| 322 W. Lincoln | Flint, MI 48507 |
| Royal Oak, MI 48067 | Steve_L_woodward@yahoo.com |
| (248) 544-1100 | |
| ebuikema@cardellilaw.com | |

## ORDER ON MOTIONS HEARD DECEMBER 22, 2010

At a session of said court held in the United States District Court,
Eastern District, Southern Division, State of Michigan on
_____

PRESENT: _____
Honorable Michael Hluchaniuk
United States District Court Magistrate Judge

IT IS HEREBY ORDERED:

**EXHIBIT 17**

17

Plaintiff's Motion to Compel Defendant's Deposition (Docket No. 47) is granted for the reasons stated on the record. Specifically, Defendant is ordered to appear for deposition on **January 4, 2011 at 10 a.m.** at a Genesee County location to be determined by Plaintiff's counsel. Plaintiff's related request for costs is denied at this time.

Plaintiff's Second Motion for Adjournment (Docket No. 59) is granted for the reasons stated on the record. The discovery cut off and remaining dates in this matter are hereby adjourned 90 days and the clerk shall issue a new scheduling order consistent with this extension.

Defendant's Motion for Protective Order (Docket No. 56) is denied for the reasons stated on the record.

SO ORDERED,

_____

United States District Court Magistrate Judge

**Subject:** AUA vs Woodward - Documentation, Interrogatories, Admissions, Documentation Requests

**From:** Steve Woodward (steve_l_woodward@yahoo.com)

**To:** ebuikema@cardellilaw.com; kzalewski@cardellilaw.com; marilyn_orem@mied.uscourts.gov;

**Date:** Thursday, December 16, 2010 12:15 PM

Mr Buikema,

Depending on the Decisions and Order by the Honorable Judge Michael Hluchaniuk:

Please schedule time after the December 22nd Hearing to sign-for(verify receipt) and receive approximately 2,500 pages of my Exhibits and Rule 26 documentation, my answers to your Interrogatories, Request for Admissions, and Requests for Production.

What you receive will depend on the Order and Decision of the Court.

Please bring with you all documentation the Defendant has requested and the answers to:
Defendant's Interrogatories to Plaintiff
Defendant's Request for Documentation
Defendant's Request for Admissions

Thank you for your time,

Steven Woodward

This email and any attachments are intended for the sole use of the named recipient(s) and contain(s) confidential information that may be proprietary, privileged or copyrighted under applicable law. If you are not the intended recipient, do not read, copy, or forward this email message or any attachments. Delete this email message and any attachments immediately.

LB    **EXHIBIT 18**

Hearing

discovery, there could be consequences for that.

Woodward: I suspect there will be more motions for that seeing that I've requested a substantial amount of information from Mr. Buikema which is, as obvious that he stated that hasn't appeared yet. And he has basically four hours to produce it.

Court: I would, I would also note the existence of another motion that has been filed in this matter relating to, filed by the Plaintiff, relating to the Defendant's failure to produce documents and comply with other discovery requests. I just note that that's been filed. The time for responding has not passed yet. But that is another issue that may come before me.

Woodward: Any documents that he request, all of his answers to his interrogatories, all of his answers for his admissions, all of his documentation is here.

Buikema: It's there but I didn't address it quite intentionally. It's not before you today.

Court: It's not scheduled for today. I'm just noting the existence of it. And Mr. Woodward is saying that he intends to comply with that today. Whether that's actually comes to pass is another issue, which we may address at a later time. But certainly I would invite you Mr. Buikema to look at what Mr. Woodward has brought to court today and accept what he has and then make a determination of whether that satisfies your motion.

45

**EXHIBIT 19**

Buikema:    I, I just, I have a logistical issue with that today. But - -

Court:      That's fine.

Buikema:    We'll address that outside of the Court's presence.

Court:      It's, it's certainly not unreasonable that you would be unable to
            inspect those documents today under the circumstances. But if
            has documents for you to take with you, I would certainly
            encourage you to take those and then assess the completeness
            of that production as soon as you possibly can.

Buikema:    I will. Judge would you like for my office to prepare a written order
            or will your staff prepare one?

Court:      I would request that you prepare an order.

Buikema:    Be happy to do so. We'll submit it, hopefully later today.

Court:      Very good.

Buikema:    Thank you.

Court:      Alright, Mr. Woodward anything else you care to say today for the
            record?

Woodward:   No sir. Thank you.

Court:      Alright. I would, Mr. Woodward do you have a phone?

Woodward:   I do.

Court:      Alright. Does, does Mr. Buikema have your phone number?

Woodward:   Yes sir.

Court:      Alright. I would encourage you to try to discuss these matters. It's
            always awkward for a lawyer dealing with a non-lawyer. I mean I

46

Deposition-1.wmv video (and DW_A0068.wav audio and February 1, 2011 Deposition
Transcript file woodward_steven_-_110201.pdf)
**JL** = Judge Lhuchaniuk
**EB** =Eric Buikema
**Sw**= Steven Woodward
**CG** = Cheri Gleyre (Stenographer)

**Time: 8:26** Deposition-1.wmv

**JL**: Hello

**EB**: Good morning how are you?

**JL**: I'm fine thanks how are you

**EB**: I'm well this is Eric Buikema and Steven Woodward is, uh, in the room he's initiated

the call so I'll let him tell you why.

**JL**: Alright very good thank you

**SW**: Yes your honor um, my sister came along with me and it's my understanding that I

can have somebody here with me um, and ah, since I am not ah, I don't have an attorney I

don't have anyone here with me, ah, it's my understanding I can have her here also um,

Mr Buikema was given notice on three separate occasions ah that I was going to bring

her, and um also Mr Buikema on our last hearing said that he is that he does act

aggressive during depositions and ah or something to that effect ah and ah that he does

ask questions that are ah that are ah, are ah, of questionable ah substance um I don't have

the hearing minutes right with me or transcripts with me but ah this is why I requested

this and you gave me permission ah through Tammy ah during what was suppose to be

our first meeting ah to have a video camera and a recording device with me I notified Mr

Buikema of this also and now he's objecting to that too.

**EB**: Good morning your honor I first of all I have to disagree with the assessment of ah

what I said about my deposition practices ah I think that's a unique interpretation and

1

**EXHIBIT 20**

20

that's what I'm saying I I don't think you should do, you should, you should train the

camera on the witness you whose being deposed and that any statements that he makes

are going to be recorded ah by the audio recording capability of the equipment and so

there is really no prejudice to you to modifying what what your plan was with respect to

the use of that equipment so your satisfying your concerns by recording what's going on

I'm just telling you that you should not do it in the fashion you that have apparently

intended on doing it you should do it in another fashion which has absolutely no

prejudice to you

**EB**: Your honor I'm I'm sorry to trouble you this morning but since we do have you

already ah let me just raise two quick things first if Mr Woodward does persist and record

in the manner that you have directed I'd like a copy of the recording to be provided for

me it's looped in it's just a web cam looped into his laptop apparently rather than any

tape or CD or something that could be provide to me as to the ordinary course

Second it looks to me he's brought his laptop to refer to the web site or what not and I

just I want to indicate for your purposes and for the record that in the event Mr

Woodward's gonna refer to that laptop I think it becomes discoverable any information

there on which he relies upon to assist his testimony in deposition

I want that to be out there before we have controversy later

**SW**: Your honor um this laptop isn't my laptop it's a brand new laptop it belongs to my

sister I'm using it uh for this I , what I have on it is a spreadsheet of which I brought all

electronic files with me I brought every single thing that I was suppose to bring to the

best of my knowledge again I have over 2,600 pieces of paper here

this is the documentation that Mr Buikema did not take during our last hearing

I have all the visual documentation and to reference this information it's my

understanding that during a deposition I can reference documentation I have to rely on a

spreadsheet because there's so much information to ah I don't know what he's going to

ask and I don't know whether or not I have the information

I even actually brought all my all my legal which believe are ah work product if he

wanted to see what my legal grounds were to defend myself if he wanted to review that

um but that's all that's on this camera or on the video or on this laptop is the video I'm

going to take today and a spreadsheet that's it if he wants to go search this spreadsheet

then he'd have to subpoena it from my sister because it's not mine

**JL:** Well, first of all lets dispose of that issue it's not who own the laptop its who has

access to it and if you're using it in some way to supplement your testimony or to refresh

your memory or to testify about some incident that was previously recorded ah it is

discoverable and so it doesn't matter if your sister owns it if you have access to it then

essentially that the information is available to you and you would be obligated to produce

it

**SW:** and that's what I'm saying your honor I'm say is that the information that's on here

is two pieces of information one is a spreadsheet of which I'm giving him he has a DVD

of the electronic files he's requested and the only other thing is this video tape I'm

making

**JL:** Well he doesn't get to see everything that's stored on the computer he only gets to

see those matters or document electronic documents that you have used ah to refer to

prior to answering questions so he doesn't get to see everything that's on the computer

but if you're using documents that you have put on that computer it doesn't matter if she

owns it that is not the issue it's what you use so if you rely on something that's stored on

that computer he's entitled to see it

**SW:** and that's what I'm telling you your honor I'm not only gona let him see I'm gona

to give it to him and I tried to give it to him during our last hearing

**JL:** Then we don't have a problem

**EB:** What are What are you going to give me Mr Woodward

**SW:** Sir here is a DVD of everything single thing that's on this that that I am using on

this computer this contains the spreadsheet that I have the only thing you're not, you

don't have is what you've just now requested is the video taped deposition

**EB:** And my notice reflects

**SW:** Electronic files

Recordings electronic files etc

**EB:** where is that

**JL:** So So, there is no objection Mr Woodward for providing Mr Buikema a copy of the

video recording video and audio recording of the deposition that you are going to be

taking

**SW:** Correct, I have no problem giving him that

**JL:** give him that and you will give him a copy of anything that you refer to during the

course of your deposition

**SW:** Correct and I already intended to do that and I brought that information with me and

Mr Buikema now has it in his possession

**JL:** Then I don't think we have a problem

**EB:** Thank you judge

**JL**: Alright gentlemen ah is there anything else that I can resolve

**EB**: I sure hope not

**SW**: Thank you your honor

**JL**: Alright have a good day

**EB**: Alright swear the witness


**Time 54:11** Deposition-1.wmv(Also February 1, 2011 Page 27 Deposition, DW_A0068.wav)

**EB**: Mr. Woodward, section D of the deposition notice, the duces tecum portion,

references please produce any and all videos you've produced which discuss plaintiff,

AUA. So, first of all, I want to ask you have you produced videos that have as their

subject AUA or your experience with AUA or Antigua more generally?

**SW**: Please restate that question. I'm sorry. I'm sorry, I'm a little upset right now. I need

to take a break. I need to take a break.

**EB**: Go ahead.

You don't have to answer this if you don't want to.  Is he OK? Does he have all his

faculties?

**EB**: Ready to proceed

**SW**: I'm ready

**EB**: OK

**EB**: Have you produced videos in which the topics of the video is AUA, your experience

at AUA or your experience at Antigua more generally?


**Time**: 01:05:14 Deposition-1.wmv (February 1, 2011 Deposition page 33, Line 1,

DW_A0068.wav)

9

**EB**: Are the exhibits themselves produced?

**SW**: Yes

**EB**: Where are the exhibit themselves?

**SW**: They're in this box over here in the corner

**EB**: And you're going to give that box to me today?

**SW**: I tried to give it to you on December 22nd.

**EB**: Are you going to give that box to me today?

**SW**: I brought it for you.

**EB**: Thank you. Let's mark it as Exhibit 3 then. Just bring it up the whole box, we'll put

a sticker on it.

**(01:05:36 a picture of the box)**


**Time 1:32:45 DW_A0068.wav**

**EB**: I'll retain the exhibits

**SW**: Sure they're yours, I made them for you

**SW**: Do you want to witness the visual aids at this time while you are here it'll take two

minutes.

**EB**: We'll be doing a un-audible ..

**SW**: I'd like it on anyway my recording Mr. Buikema is now leaving refusing again to

view, ah, visual aids.

**CG**: OK so when I call you about the transcript you I should call your sister at this

number?

**Time 1:34:48 DW_A0068.wav**

SW: He didn't take his answers to his Interrogatories either

CG: That wasn't marked was it?  He didn't mark it as an exhibit

SW: He didn't want it again, OK

March 24, 2011 Deposition Audio File: **DW_A0069.wav**
**JH = Judge Hluchanuik**
**SW = Steven Woodward, Defendant**
**PK = Paul Kittinger, Plaintiff**
**CG = Cheri Gleyre(Stenographer)**

**Time: 7: 57**
SW: Good morning your honor

**JH**: Council

**PK**: Paul Kittinger,

**JH**: Mr Kittinger nice to meet you Mr Woodward

**SW**: Mr Woodward, nice to meet you Sir

**JH**: This deposition is obviously being conducted at the court house

**PK**: Would like us to go on the record

**JH**: No I don't think so, not because it's I intend to be intimately involved in the process. But simply that I would be available for issues that might arise. Because apparently there was a previous attempt to conduct a deposition and it didn't work out very well. So, I'm not going to be a referee who's going to make calls constantly during the course of this, if you can't work out the basic process of this then we're going to have to schedule a motion and determine whether sanctions have to be imposed or not because it's just not possible for me to be here throughout this process and have it like I would if we were conducting an evidentiary hearing in the court room. So with that being said this is a standard procedure deposition I assume Mr Woodward that you have become familiar with the Court rules and understand how those rules apply to your conduct the conduct of anybody who is being deposed in a case so I don't know if that's true or not but it's my

1                    Zl     **EXHIBIT 2l**

expectation that you would have attempted to familiarize myself with those court rules so that you understand what your obligations are.  Is that accurate?

**SW:** I've tried to familiar myself with this information and

**Time Mark: 9:36**

**SW:** I think this has been very bias.  The attitude, I've brought this evidence and they have refused to look at it during your hearing and during the last deposition.

**JH:** They don't have to look at it, you have to make it available to them and if they elect not to look at it, then you've satisfied your obligation by making it available.

**SW:** So I'm finished with my court order of.....you ordered

**JH:** What, what you need to do to document the fact that you've made it available is to identify in some list the items that you have presented to them and made available to them so that its clear what, what, what they had the opportunity to see, if they elect not to look at it that's their problem not yours so you have to make it available to them and, ah, I can't force somebody to look at documents.  I can compel a party to produce for inspection documents which we have done and if you've produced it and afforded them the opportunity to look at it and they don't want to that's up to them, but in order to properly document what you have made available to them you need to list it, and create a list with some descriptive language which could be used to show what it was that was made available to them

**SW:** OK

**JH:** Do you have a different view of the rules?

**PK**: I think what Mr Woodward is getting at is he, he brought some visual aids, um, that are responsive to the decus tecum portion of the deposition notice and the discovery request he's....

**SW:** and your Order Sir.

**PK**: There is a continuing obligation to answer discovery.  The Court ordered him to answer interrogatories, and request for production of documents to date he has not done so.

**SW:** I have your honor

I produced those every single hearing we've had, every single one of these depositions that these guys have cancelled.  I've brought this documentation with me it's here, it's here today and they refused to take it, he refused.

I have a recording of him refusing to even turn around and look at the documentation including these of which I brought to the last deposition.

**JH:**  Well, it's my belief that if you make those documents available and that as long as it's clear, so that we can if there is a contest over this in the future we can determine what it was that was made available to them, the obligation of a party in discovery as far as I'm concerned is to, you can produce copies, or simply make copies available, and um, if he brought documents for the inspection for the opposing counsel and the opposing counsel chooses not to look at it then he's satisfied his obligations as far as I'm concerned.

**Time Marker: 12:17**

**SW:** And this is also a Motion to Compel I'm going to give you to give to Eric because you have not produced anything that I have requested for to date any documentation,

Nothing, including my own student records and any kind of physical exam information which that your school would have, Nothing

**PK**: Well we'll have to look at the motion and see,

**JH**: So

**PK**: Well there's no motion up so I can't respond to it I haven't looked at it

**SW**: I'm just telling you there it is so I don't have to mail it to you

**JH**: So are there any general questions that I can answer about the procedure that's to be followed during this deposition?

**SW**: Your honor, I've tried to answer these guys questions the last time, I've tried to produce this information to them and just like you're hearing they turn around and walk out without taking it, I gave them that same box of information to them during your hearing.

**JH**: Your obligation is only to make it available to them if they chose not to take it then that's they have no basis to complain later, but it's important so that we know what it is that you made available.

**SW**: correct, to date addition to the stuff that I've already listed the stuff I already listed I have tow robotic hands and I have two books one is, there both, there both from the school there both is their standard reading information one is the Mosby's book which basic physical examination

**JH**: I don't have the time to be here and go through all this process with you

**SW**: Well I'm just recording it that it's available to them if they want to look at there it is this is now the fifth time I've made it available to them

4

1    **MR. WOODWARD:**  Unless I can get a copy of the

2    transcription from the December 22nd hearing.  I can't

3    afford a transcription of the 22nd hearing.

4         **THE COURT:**  You've told me you've identified in

5    the recording.

6         **MR. WOODWARD:**  Correct.

7         **THE COURT:**  Okay.  And what is it I'm going to

8    hear in that section of the recording when I listen to

9    it?

10        **MR. WOODWARD:**  You're going to hear where I

11   produced my admissions, my answers to interrogatories,

12   and all of my documentation to support my case.  Every

13   single thing that he wanted, I produced in court.

14        He said to Judge Hluchaniuk that he would take

15   that information after that hearing and he didn't.  He

16   refused to.

17        **THE COURT:**  What do you mean, "Take that

18   information"?

19        **MR. WOODWARD:**  I brought that information for him.

20        **THE COURT:**  Are you talking about documents?

21        **MR. WOODWARD:**  I'm talking about my admissions, my

22   answer to my admissions.  My answers to

23   interrogatories.  It's 2,500 pages of all my evidence

24   that I had for him.  The index of all that information

25   I brought for him and he didn't take it.  He refused to

2 **EXHIBIT 23**

1    take it.  And it's recorded in front of Judge

2    Hluchaniuk.  And it proves that what he said in his

3    last motion is a total lie.

4         **THE COURT:**  Is this relevant to the hearing on the

5    18th?

6         **MR. BUIKEMA:**  In my mind, absolutely not, Your

7    Honor.

8         **MR. WOODWARD:**  Of course, it's not, it proves that

9    he's lying to the Court.

10        **THE COURT:**  Well, counsel, that doesn't mean

11   something's not relevant.  Irrelevancy has nothing to

12   do with which side is true, it's just whether it

13   relates to the subject matter.

14        **MR. WOODWARD:**  It does if he says I'm not

15   producing evidence and I didn't give him the answers to

16   admissions?

17        **THE COURT:**  Where is this disc?

18        **MR. WOODWARD:**  I have probably a copy of it here.

19        As a matter of fact, I have an electronic copy on

20   my computer.  It's either going to be this disc or this

21   disc.

22        **THE COURT:**  Now, you told me there's a specific

23   point on that recording that relates to what you're

24   talking about.

25        **MR. WOODWARD:**  Correct, sir.  Can I go back here

---

*10-10978; American University of Antigua v. Steven Woodward*

1      **MR. WOODWARD:**  What's that?  It's whoever the

2      court reporter is.

3  **RESPONSE BY MR. BUIKEMA**

4      **MR. BUIKEMA:**  He's referring, Your Honor, to his

5      deposition, at which I would ask him questions, such

6      as, "What's your name?"  And he'd want to produce

7      documents.

8      **THE COURT:**  So, this is his deposition?

9      **MR. BUIKEMA:**  Yes, I refused to accept documents

10     in lieu of an answer of my question, is what he's

11     referring to, I believe.

12     **MR. WOODWARD:**  That is not true.  Sir, I brought

13     to December 22nd, 2,500 pages of documentation,

14     interrogatories, the answers to his interrogatories,

15     the answers to his request to admissions and he's

16     refusing to take this information.

17     **MR. BUIKEMA:**  And I can short circuit this, I

18     hope.

19         The only item that he's listed, that I think would

20     be relevant to next week's hearing on the dispositive

21     motion, would be the request for admission responses.

22     I don't know whether they were at that hearing or not.

23         But it's true, I'll stipulate, for the record,

24     that I left the hearing without accepting the banker's

25     boxes that Mr. Woodward brought to that hearing, which,

**Response By Mr. Buikema**
**Thursday/August 11, 2011**                    25

1    by the way, were a motion to compel because they were

2    all already overdue.

3         And the salient portion of that is the request for

4    admission responses would still have been overdue as of

5    that date and therefore deemed admitted.

6         Again, that's not the basis or the entire basis

7    for the motion for summary disposition but it is part

8    of the motion.  But I think it's of no consequence of

9    what he's attempting to prove.

10        **MR. WOODWARD:**  Sir, can I read another thing to

11   you?

12        **THE COURT:**  Hold on.  I think I'm hearing him say

13   that with respect to the request for admissions that he

14   was handing you his response, including those other

15   documents.

16        **MR. BUIKEMA:**  I don't know whether that's true or

17   not.  But I can say they would not have been timely at

18   that time anyway.

19        **THE COURT:**  Are you saying that you had with you

20   the answers to the request for admissions?

21   **RESPONSE BY MR. WOODWARD**

22        **MR. WOODWARD:**  I've told him that I've had these.

23   Yes, sir.

24        **THE COURT:**  Okay.  And were they included in a lot

25   of other documents?

*10-10978; American University of Antigua v. Steven Woodward*

1          MR. WOODWARD:  They were included in a separate

2    folder.

3          THE COURT:  Okay.  But was he ever going to have

4    to go through all these other documents?

5          MR. WOODWARD:  No, sir.  He left it on the table.

6    His stenographer even pointed out that he purposely --

7    well, he left it on the table and didn't take it.

8          THE COURT:  What is it that you sat on the table?

9          MR. WOODWARD:  It was 2,500 pages of the evidence

10   that I was going to give him.

11         THE COURT:  That's not what we're talking about.

12   He says you didn't answer the request for admissions.

13         MR. WOODWARD:  Okay.  Let me go back to this and I

14   sent you an email, whether or not you got this email or

15   not, this is last week.

16         This is an email dated December 16th, 2010, at

17   12:15 p.m.  And it was sent to you, myself, and

18   Mr. Buikema.  And the title -- it says in the email,

19   the title, the subject line of the email is,

20   "Documentation Interrogatories and Admissions".  And in

21   there I state, "Please, schedule a time after the 22nd

22   hearing to sign for, verify receipt, and receive

23   approximately 2,500 pages of my exhibits and Rule 26

24   documentation, my answers to your interrogatories

25   request for admissions and request for production."

1    He didn't take any of it.

2        **THE COURT:**  Why should he have to go through 2,500

3    pieces of paper?  That's terribly burdensome.

4        **MR. WOODWARD:**  I didn't -- I gave it to him on

5    February 1st.

6        **THE COURT:**  Why should he have to go through them?

7        **MR. WOODWARD:**  I gave it to him, Your Honor.  I --

8        **THE COURT:**  You didn't answer my question.  It's

9    not fair he wants one thing about another thing, the

10   request for admissions and you hand him 2,600 pages and

11   say, "It's in there some place, you find it"?

12       **MR. WOODWARD:**  That is not right.  That is not

13   correct.  No, it was in another manila envelope with my

14   answers to interrogatories, it was completely separate.

15       Judge Hluchaniuk even visually looked at that

16   stuff and said, "I witness that you have that", and he

17   told him to take what I brought with him today.  He

18   didn't even have to sign for it, I brought it for him.

19   I made copies for him.

20       On February 1st, he took the information.  Did I

21   make him sign for it?  No.  Did he take my 2,500 pages

22   of that documentation?  Yes.

23       **THE COURT:**  Do you have copies of your response to

24   his request for admissions?

25       **MR. WOODWARD:**  I'm sure I do.

*10-10978; American University of Antigua v. Steven Woodward*

1    THE COURT:  You're not going to have to flip

2    through 2,500 pages, now, right?

3        MR. WOODWARD:  No, it's right here on this stuff

4    that I have right here.

5        THE COURT:  Counsel, are you saying you've never

6    seen a response to the request for admissions?

7        MR. BUIKEMA:  We have now.

8        THE COURT:  You have now?

9        MR. BUIKEMA:  We have now.

10       MR. WOODWARD:  So, you do now have my if

11   admissions?

12       THE COURT:  He says he now has them, okay.

13       MR. WOODWARD:  Okay.  So, what does that say about

14   his part?

15       THE COURT:  I don't know.

16       MR. WOODWARD:  I'm glad you're typing that up

17   because he's telling, in his thing for next week, he's

18   saying I never gave it to him.

19       THE COURT:  I don't know, we'll talk about that at

20   the hearing, okay.

21       When did you get it, counsel?

22   RESPONSE BY MR. BUIKEMA

23       MR. BUIKEMA:  I can't answer that question off the

24   top of my head, it's relatively recent.

25       THE COURT:  Pardon?

*10-10978; American University of Antigua v. Steven Woodward*

1      MR. BUIKEMA:  I can't answer that question off the

2   top of my head.  It's relatively recent in the

3   litigation where we received, what I would consider to

4   be, nearly conforming responses to request for

5   admissions.

6      THE COURT:  Is the failure to respond to request

7   for admissions part of the basis for your motion?

8      MR. BUIKEMA:  It is part of the basis for our

9   motion.  And I'll say failure to respond timely is part

10  of the basis, rather than the failure to respond at

11  all, which I think is a distinction that Mr. Woodward

12  is missing.

13  RESPONSE BY MR. WOODWARD

14      MR. WOODWARD:  Sir, I asked Ms. Orem here if she

15  would verify the date of which he filed the motion for

16  non-compliance of the motion to compel me to produce

17  that information.  He did it, like, three hours after I

18  sent him that email on December 16th.

19      I brought that information to him, he didn't have

20  to go through a bunch of documentation.  Matter of

21  fact, the documentation I gave him, everything was

22  stamped, Exhibit 1, Exhibit 3, and it has an index, an

23  electronic Excel Spreadsheet of every single thing that

24  was inside that 2,500 pages of exhibits.

25      THE COURT:  Okay.  Well, he said he's got the

**Subject:** RE: Please verify the receipt of this email - AUA v Woodward

**From:** Leigh C. Taggart (lct@raderfishman.com)

**To:** steve_l_woodward@yahoo.com;

**Cc:** dlj@raderfishman.com; mjw@raderfishman.com; lct@raderfishman.com;

**Date:** Thursday, July 21, 2011 9:38 AM

Dear Steven:

We received this e-mail yesterday at 12:22 p.m., although I just opened read it myself a few minutes ago. There was no attachment to this e-mail, and it appears from your message that you omitted it when you re-sent the e-mail.

Your questions seem to repeat many of the points that we covered in our meeting on Tuesday. To briefly respond to a couple of the most important issues:

Rule 56(d) motion -- you provide a few examples of how the allegedly defamatory statements are true and that AUA only alleges that they are untrue by mischaracterizing what your website actually says. Judge Duggan has recognized at least some examples of this, as you point out. That is fine, but remember that the Court's job at summary judgment is different than at a preliminary injunction hearing. This is particularly true when the plaintiff, AUA in this case, is trying to get the judge to issue a preliminary injunction to restrict the free exercise of non-commercial speech, which is highly disfavored in the law. At summary judgment, the Court evaluates whether the statements are defamatory (AUA's burden), then the burden shifts to you to prove that the statements that are potentially defamatory are in fact true. You must prove the truth of the statements, and new articles may not be enough to do so. We have not yet fully analyzed each of the statements or your response to the allegation that each is defamatory, but there is a long list of such statements.

We have two concerns -- 1) it does not appear that we have an equally good response for each of the alleged defamatory statements (for example the pass rate issue), and discovery on those points may be helpful, and 2) as a non-lawyer your briefing understandably did not fully highlight the best legal arguments why summary judgment is inappropriate on each claim, and we think that the additional discovery will naturally also provide an opportunity for supplemental briefing that will allow us to make those arguments.

Ultimately Steven, you will have to make a decision whether you are willing to accept and follow legal advice on these issues or not. If not, then let's not waste each others' time working together. If so, then please follow our advice -- we just do not have a lot of time to spend debating at this point if we are going to file a Rule 56(d) motion by August 3rd. If you are not going to permit us to file the motion, then tell us now so that I do not commit significant resources of the legal team for no purpose. In the alternative, we would at least prepare a supplemental legal brief and file it with a motion seeking leave to do so. In our view, that would not be as good as taking the additional discovery that may be most helpful in defending the defamation claims, but it would be better than just showing up at the hearing and arguing the record as it currently stands.

SJMO/Trinity Health -- Steven, we simply are not going to be able to work with you if you cannot distinguish between the lawsuit that you already lost against SJMO/Trinity and the lawsuit by AUA that you are currently defending. I made this point with you very clearly at our meeting. If you consider our separate trademark work for Trinity to be a problem that affects either our advice to you or your willingness to follow that advice, you need to tell us that right now. The fact that we do not think it poses a problem in this case is not the important issue. The question is whether you think it presents a

EXHIBIT 24   12/10/2011 1:52 PM

problem. If you do, tell us now and we will withdraw from the representation. We are not able or willing to provide legal services to you if you believe that we have a conflict of interest in doing so.

Please respond at your earliest opportunity to these points.

Best regards,
Leigh



**Leigh C. Taggart, Esq.**
Rader, Fishman & Grauer PLLC
39533 Woodward Ave., Suite 140
Bloomfield Hills , Michigan 48304
+1-248-593-3315 direct
+1-248-594-0610 facsimile
lct@raderfishman.com

**CONFIDENTIAL AND PRIVILEGED INFORMATION IMPORTANT:** The enclosed message and any attachments are intended for the addressee only and are privileged and confidential. If you are not the addressee, then please DO NOT read, copy or distribute the message or any attachment. Please reply to the sender that you received the message in error and delete it. Thank you.

---

**From:** Steve Woodward [mailto:steve_l_woodward@yahoo.com]
**Sent:** Wednesday, July 20, 2011 12:22 PM
**To:** Leigh C. Taggart; Jennifer Wunsche
**Subject:** Please verify the receipt of this email - AUA v Woodward

Dear Mr. Taggart and Jennifer,

Please verify the receipt of this email.

I received an email "Failure notice" for an email I sent you last night.

This is the email I sent you minus the attachment:

Dear Mr Taggart,

Attached is my requests for Rule 26 information.
The Plaintiff hasn't provide any Rule 34 information or answers to any Interrogatories...
They have refused to produce any documentation, including:
"18: Please produce a copy of all documentation identified by Plaintiff's Rule 26 disclosures."
"19: Please produce a copy of all exhibits or demonstrative aids which the Plaintiff intends to rely upon at trail."

How can the Plaintiff have or build any case against me seeing the burden of proof is on them....
Please help me understand how they can build a case since they can not produce any evidence under Rule 37, (c)(1) Failure to Disclose....

I don't understand how a Motion Rule 56(d) is going to solve anything, what evidence do you want?
I doubt we'll get anything, at the present time they've failed to produce Student Records, violating FERPA Student Civil Right laws.

The only evidence I want, at the time, is what I've requested from Sallie Mae, NBME, and ECFMG.
I want to have the opportunity to write counter-claims, at this point Student Loan(Banking) Fraud, Falsifying Documentation, Civil Rights Violations to start with.

They have nothing and have provided nothing, their claims have been proven to be lies...Judge Duggan has agreed.
Example:
Docket 1
"Claims 13. As a result of his dismissal from the University, Defendant initiated a lawsuit against AUA and its educational partner hospital Trinity-Health Michigan's St. Joseph Mercy Hospital in Pontiac, Michigan."
Fact: The lawsuit was filed December 20, 2007 I wasn't wrongfully dismissed until May 21, 2008.

"Claim 21-54(H) AUA students are sexually assaulted;"
Fact: What is written on www.aua-med.com is "AUA student sexually assaulted!"
this is NOT what I wrote and the judge agreed with me during the April 19th 2010 hearing( The transcript is available on PACER)
Court: "that's your spin on it" to Erik Buikema.
Erik Buikema even admitted a student was in fact sexually assaulted.

These claims alone and combined prove: Claim 21-54(o) AUA agents are liars.
Neal Simon was under oath when he made and signed these lies.

Failing to produce my student records proves they violate the very FERPA laws(Student Civil Rights)
Claim 21- 54 d,e, and j are now proven true.
Not counting their admission that student records were in fact disclosed, violating (Student Civil Rights)
If you watch the Fox video I sent you Neal Simon admits AUA's students can not sit for the Board Exams for their Nursing Program, again violating 20 U.S.C 1011a Student Rights and Fraud(Neal Simon agrees to pay the students back)

The fact is what I've written is true.
They admit it's true, and your employer SJMO is guilty too and destroyed a medical student's life for no other reason than the vanity, pride, and arrogance of their Director of Education Susan Zonia, Jeffrey Yanez and the faculty of AUA for doing what the student was told to do, evaluate the program.  They were cheating each of us and violating Federal Law 20 U.S.C. 1011a be doing so.


Steven Woodward


This email and any attachments are intended for the sole use of the named recipient(s) and contain(s) confidential information that may be proprietary, privileged or copyrighted under applicable law. If you are not the intended recipient, do not read, copy, or forward this email message or any attachments. Delete this email message and any attachments immediately.

# AMERICAN UNIVERSITY of ANTIGUA

# COLLEGE of MEDICINE

# STUDENT HANDBOOK



**T**he Student Handbook is published by the American University of Antigua College of Medicine for the students in the College of Medicine.

The rules and regulations outlined here are binding and must be adhered to by all AUA/KMC students, including those on leave.  The rules and regulations of this institution are reviewed and revised periodically.   Students are expected to be familiar with the most recent revisions of all AUA/KMC manuals and publications.

EXHIBIT 25

A student may withdraw before the second week of a semester without academic consequences.

In exceptional circumstances, determined on a case-by-case basis, the Promotions Committee reserves the right to allow a student to continue at the University while on probation, even if the student has not met all of the above requirements. **In such circumstances, however, the student may be ineligible for financial aid.**

# GRIEVANCES and DISCIPLINARY ACTION

The University's policies regarding disciplinary action apply to non-academic matters. Disciplinary actions may include, but are not limited to, verbal reprimand, written reprimand, required restitution, and suspension or expulsion from the University.

AUA/KMC students are encouraged to address any academic or non-academic concerns with their Professors, Faculty Advisors or Deans.

The Grievance and Disciplinary Committee is composed of faculty and student representatives. It is the investigative and judicial arm of the Dean's Office. The Grievance and Disciplinary Committee has authority over all matters referred by the Dean, the Dean of Student Affairs, the Student Government Association, students, and faculty. The Dean reviews the decisions and issues a final determination to the Grievance and Disciplinary Committee that is forwarded to the President.

A student may appeal any recommendation of suspension or dismissal authorized by the Grievance and Disciplinary Committee and executed by the Dean. The student must give written notice of intent to appeal the Committee's decision to the President's Office within ten days of receiving a decision.

The student has the right to counsel and to present witnesses and documentary evidence. The President and at least one other non-involved member of the administration will hear the appeal.

The three part appeal process is as follows:

- The written appeal must be received by the President's office no later than 14 days after receipt of the notice to appeal.

- The appeal must be heard within 2 weeks after receipt of the written appeal.

- The decision on the appeal will be communicated to the student in writing within one week after the final decision has been made by the President.

# PROFESSIONAL CONDUCT and ETHICAL BEHAVIOR

It is incumbent upon each student at the University to maintain the highest level of ethics and morals, and to conduct himself in a manner befitting a physician.

# POLICY of NON-DISCRIMINATION

The University does not discriminate nor does it condone harassment based upon race, creed, ethnicity, religion, gender, national origin, age, disability, sexual orientation or any other characteristic protected by law.

This applies to all students and employees (faculty and staff) on the AUA/KMC premises as well as during AUA/KMC sponsored events.

Sexual harassment, defined as non-gender specific, is subject to disciplinary action, and includes the following:

> i. Harassment of women by men, men by women, or persons of the same gender;

> ii. Unwelcome sexual advances;

> iii. Requests for sexual favors and sexual displays of any kind;

> iv. Inappropriate sexual behavior or verbal abuse that is sexually based and offensive in nature.

# PRIVACY RIGHTS

The University adheres to the mandates of the United States Family Educational Rights and Privacy Act (FERPA):

1. The student has the right to inspect and review his educational record within 45 days of the University's receiving a written request for access. Students must submit this written request to the Dean of Student Services identifying the records they wish to inspect. The Dean of Student Services will notify the student of the time and place where the record may be inspected.

2. Students have the right to request the amendment of their educational records. Students may write to the Dean of Student Services to identify the part of the record they wish to have corrected and specify why it is inaccurate.

3. If the University decides not to make the requested amendment it notifies the student and advises the student of her right to a hearing. The University provides additional information about the hearing with the notification.

4. The student has the right to consent to disclosures of personally identifiable information contained in his educational record, except to the extent that FERPA authorizes disclosure without consent.

One exception is disclosure to school officials with legitimate educational interest. A school official is a person employed by the University in an administrative, supervisory, academic, research or support position (including law enforcement personnel and health staff); a person or company with whom the University has contracted (such as an attorney, auditor, or collection

FOREWORD

## A BRIDGE TO CLINICAL MEDICINE

The purpose of the AUA College of Medicine is to educate excellent physicians who are prepared to deliver effective and compassionate treatment and preventive care to patients and their families. The fifth semester is the beginning of a pivotal time in this process. It encompasses the transition from the basic medical sciences to the clinical disciplines.

This syllabus is carefully designed to provide students with the maximum opportunity to make this transition a productive learning experience. It will serve as the main guide for lectures, practical sessions and definitions of weekly academic goals. The syllabus is complemented by the "Fifth Semester Guidelines" booklet which includes schedules and operational instructions.

The three-fold goal of the fifth semester is a). to help student master the skills of taking a patient's history.  b). to develop the art and technique of physical examination and c) to integrate basic science into clinical diagnostics and critical patient evaluation.

The Fifth Semester Course includes lectures, oral and written case presentations, clinical rotations, review of core concepts and facts through quizzes, examinations, clinical discussions and a portfolio that includes the summary and evaluation of students' experiences.

The University strives to offer similar clinical learning opportunities for each student, however exact duplication is impossible. Each student's experience will be slightly different because of the particular characteristics of each practice site. Therefore, students need to be proactive in making their experience as productive as possible. To that end, they will have a variety of resources, including individual counseling.

The teaching and administrative staff has made significant efforts to carefully organize the Fifth Semester Course. The University expects students to respond with punctuality, outstanding professional appearance, and total, full time dedication.

Evaluation of students is based on the actual acquisition of individual skills, development of professional attitudes, efforts to reach the established goals, quizzes and examination scores. Students will have the opportunity to evaluate lectures, practices, and all activities. Their input is critical in developing and advancing the University's academic program.

# ORIGINAL

Case 2:10-cv-10978-PJD-MJH

U.S. DISTRICT COURT CLERK
EAST DIST MICH
FLINT

2010 AUG -6  A 9 22

# FILED

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

Plaintiff,

V                                    CASE No.: 2:10-cv-10978-PJD-MJH
                                     Judge Patrick J. Duggan
                                     Magistrate Judge

STEVEN WOODWARD,

Defendant,

AMENDMENT TO:
"REQUEST FOR SETTING ASSIDE MOTION FOR DEFAULT
REQUEST FOR DISSMISSAL FOR ON GROUNDS OF PERJURY, OBSTRUCTION
and CONTEMPT."

MOTION FOR DISSMISSAL FOR ON GROUNDS OF PERJURY, OBSTRUCTION
and CONTEMPT

MOTION FOR PRELIMINARY INJUNCTION FOR WWW.AUAMED.ORG

EXHIBIT 27

AMENDMENT TO:
"REQUEST FOR SETTING ASSIDE MOTION FOR DEFAULT
REQUEST FOR DISSMISSAL FOR ON GROUNDS OF PERJURY, OBSTRUCTION
and CONTEMPT."
MOTION FOR DISSMISSAL FOR ON GROUNDS OF PERJURY, OBSTRUCTION
and CONTEMPT

This amendment will add supporting evidence.

Amended: List of Exhibits:
Exhibit 7: DEFENDANTS TRINITY HEALTH-MICHIGAN and SUSAN ZONIA'S
CASE EVALUATION STATEMENT

Exhibit 8: CLINICAL CLERKSHIP AFFILIATION AGREEMENT Between
AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE And St.
JOSEPH MERCY_OAKLAND

Exhibit 9: FIFTH SEMESTER INTRODUCTION TO CLINICAL MEDICINE COURSE
SYLLABUS

Exhibit 10: From the Vice President, Jaqbir Nagra

Exhibit 11: From the Vice President, Peter Bell

Exhibit 12: Revised Lecture Schedule

Exhibit 13: Student Statement

Exhibit 14: Email from Jeffrey Yanez, dated December 10, 2007

Exhibit 15: Scholar360 Final Exam grades for Steven Woodward

Exhibit 16: Email from Nicoletti & Associates, P.C., dated December 20, 2007 6:22:22
PM

Exhibit 17: Email from JEC, Jorge E. Calderon, Dean of Clinical Sciences, dated
December 20, 2007 8:53 PM

Exhibit 18: Email from registrar@AuaMed.org date 1/6/2008, Steven Woodward Final
Course Grade.

Exhibit 19: Student Evaluation – Outpatient Rotation

Exhibit 20: In-Patient Student Evaluation

Exhibit 21: Final Grades by Component – Fall, 2007

2

Exhibit 22: The Department of Health and Human Services and The Department of Justice Health Care Fraud and Abuse Control Program Annual Report for FY 2005

Exhibit 23: Former Payne Intern Guilty of Visa Fraud

Exhibit 24: Schedule of Clinical Rotations

Exhibit 25: Email from Deneen Nicks(McCall), dated September 12, 2007.

Exhibit 26: www.AUA-MED.com

Exhibit 27: "Fifth Semester Preliminary Clinical Medicine Course Guidelines"

Original:
"In accordance with Fed. R. Civ. P. 55(c), and Fed R. Civ. P. 60 (b). I request that the Request Clerk's Entry of Default be set aside.
This is in accordance with the Honorable Judge Duggan's change in time table allowing the defendant, Steven Woodward, time to find legal counsel.  Pure logic dictates that I was not under an obligation to submit a pleading until after July 15th , 2010 because of the time  I was given to obtain legal counsel, per Fed. R. Civ. P. 12 (a), (1).  There have been no dates assigned to me for answering the claim as of yet, since I do not reside inside the United States, I am here only to defend myself.

I have made every effort to defend myself and comply more than timely in these proceedings and as such request the Default be set aside and be adequately notified of the date of which my answer and counter claim has to be filed.

Exhibit 1:
The plaintiff's attorney, Eric A. Buikema, knew I was living abroad per the conversation in the presents of the Honorable Judge Duggan stated that I was living in the "Caribbean", but in "PLAINTIFF'S VERIFIED COMPLAINT AND EX PARTE REQUEST FOR TEMPORARY RESTRAINING ORDER" states in number 3.
"Defendant Steven Woodward is a resident of Flint, Michigan who, upon last information and belief, makes his home on a sailboat in the vicinity of Flint, Michigan."
This statement is perjury USC:18:1621, obstruction and contempt.



The following exhibits is another example of perjury made by the plaintiff.  (Exhibit 2)The plaintiff's own Exhibit C from "INDEX OF EXHIBITS TO PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION" is proof of this.  The plaintiff states in "PLAINTIFF'S VERIFIED COMPLAINT AND EX PARTE REQUEST FOR TEMPORARY RESTRAINING ORDER".  (Exhibit 3) Number 21. h. "AUA students are sexually assaulted"

3

Their own Exhibit C(Exhibit 2) states "AUA student sexually assaulted". The plaintiff's attorney used the excuse of plurality in his defense in the presence of the Honorable Judge Duggan.


Exhibit 4:
This exhibit is my flight itinerary. This is proof I was living on St Maarten and traveled to Flint, Michigan to defend myself.

Exhibit 5:
This email to Andrea_Teets@mied.uscourts.gov demonstrates my intentions to defend myself and to try and obtain procedural deadlines.

Exhibit 6:
This email also to Andrea Teets demonstrates that I am trying to obtain accurate dates due to my situation of living abroad.

I quote:
"Please advise me on the waiver and motion process and process dates so I can establish dates to defend myself."

The plaintiff's attorney knew I was returning from abroad and was granted time to seek counsel until July 15, 2010.

I request this case be dismissed."

**Amended addition:**
What follows will support the statement that the plaintiff was fully aware of the true residence of the defendant. This perjury would effect court Rules, both Eric A. Buikema and "Neal S. Simon, JD" are trained in the law. 


Exhibit 7 is evidence that both the plaintiff and their attorney were aware of the defendants true residence.
Exhibit 7, page 5 states **"Since December 2007, Woodward has been living on a sailing yacht in St. Maarten, scuba diving."** This statement was received on January 19th 2009 at the "State of Michigan in the Circuit Court for the County of Oakland". It is from the "DEFENDANTS TRINITY HEALTH-MICHIGAN and SUSAN ZONIA'S CASE EVALUATION". Defendants were Trinity Health-Michigan, Susan Zonia, American University of Antigua College of Medicine.
The plaintiff and their attorney were aware of this as shown in their own document file with this court "PLAINTIFF's VERIFIED COMPLAINT AND EX PARTE REQUEST FOR TEMPORARY RESTRAINING ORDER", page 3 number 14 **"The lawsuit was filed in the Oakland County Circuit Court on or about December 20, 2007, where it was known as Case No. 07-088103-CZ and assigned to the Honorable Shalina Kumar."**

4

To continue, on Exhibit 26 www.aua-med.com under the **"Contacts"** there is a link, which clearly states "**Contact Information: info@aua-med.com**" but the plaintiff did not attempt to contact the defendant via the published contact information. Both the plaintiff and their attorney had access and were aware of this contact information, since this "Contacts" link is published on the Uniform Resource Locator, URL on the defendants "Home" page URL "www.aua-med.com" where the plaintiff's own Exhibit C(defendant Exhibit 2) was copied "**http://www.aua-med.com/main.html**" this page is a "**frame**" html file that creates the URL "**www.aua-med.com**" "**Home**" page. The defendant's URL is also published in the plaintiff's "INDEX OF EXHIBITS TO PLAINTIF'S BRIEF IN SUPPORT OF ITS MOTION FRO A PRELIMINARY INJUNCTION", "**Exhibit C – Copy of www.aua-med.com website.**"

I continue

Exhibit 16 contains Neal Simon's email address "**nssimon@auamed.org**" in the "TO" section of this email along with the defendant's alternate email address "**steve_l_woodward@yahoo.com**", this email address was commonly known and used by AUA and their partners to communicate with the defendant as shown in the "To:" and "From" sections in the Exhibit 12 email.

The plaintiff's "PLAINTIFF'S VERIFIED COMPLAINT AND EX PARTE REQUEST FOR TEMPORARY RESTRAINING ORDER" is evidence that the plaintiff lies again about the defendant by quoting on page 4 number 21(L on page 5). The plaintiff quotes "**AUA student pass rate for the USMLE medical board exams is only 22.9%**". The plaintiff's own Exhibit C(defendant Exhibit 2) is evidence of this lie "**Antigua only has a 22.9% USMLE Pass Rate!**" this is a hyperlink on the defendants URL www.aua-med.com (Exhibit 26) which links to a video.
The Exhibit 26 URL www.aua-med.com, button "**Video Index**", "**Part 16 "USMLE Step 1 Pass Rate for AUA, HUGE RED FLAG!!**" at about 0:36 timeframe the defendant states "**AUA administration   If you have more accurate data than what I have demonstrated in this video, I am more than willing to modify both this video and www.AUA-MED.com to reflect that data.**" The defendant has not received any requests from the plaintiff to correct any data on the defendant's URL.



I will now further support my claim in the following Exhibits, demonstrating the character of the plaintiff. The following will demonstrate that the plaintiff knowingly commits breach of contract, fraud, Internet fraud.

http://www.law.cornell.edu/search/index.html "Contracts: Contracts are promises that the law will enforce. The law provides remedies if a promise is breached or recognizes the performance of a promise as a duty. Contracts arise when a duty does or may come into existence, because of a promise made by one of the parties. To be legally binding as a contract, a promise must be exchanged for adequate consideration. Adequate consideration is a benefit or detriment which a party receives which reasonably and fairly induces them to make the promise/contract. For example, promises that are purely gifts are not considered enforceable because the personal satisfaction the grantor of the

promise may receive from the act of giving is normally not considered adequate consideration. Certain promises that are not considered contracts may, in limited circumstances, be enforced if one party has relied to his detriment on the assurances of the other party.

http://www.law.cornell.edu/search/index.html "Breach of contract: The violation of a contractual obligation.  One may breach a contract by repudiating a promise, failing to perform a promise, or interfering with another party's performance."

http://www.thefreedictionary.com
fraud (frôd)
*n.*
**1.** A deception deliberately practiced in order to secure unfair or unlawful gain.
**2.** A piece of trickery; a trick.
**3.**
**a.** One that defrauds; a cheat.
**b.** One who assumes a false pose; an impostor.

http://www.thefreedictionary.com
Internet fraud
The term **"Internet fraud"** generally refers to any type of fraud scheme that uses one or more online services - such as chat rooms, e-mail, message boards, or Web sites - to present fraudulent solicitations to prospective victims, to conduct fraudulent transactions, or to transmit the proceeds of fraud to financial institutions or to others connected with the scheme.

Exhibit 8 is the **contract** between American University of Antigua and St Joseph Mercy-Oakland.  On page 1 of Exhibit 8 it states **"The Hospital clerkship program will include rotations in Internal Medicine, Surgery, Family Medicine, Pediatrics, and Obstetricts and Gynecology and electives."**
Exhibit 8 page 4 shows this contract was signed by **Neal S. Simon.**

I continue

Exhibit 9 is the Fifth Semester Introduction to Clinical Medicine Course Syllabus.
On page 4 and 5 of Exhibit 9 is section **"C. Objectives"** and **"By the end of the course, students will be able to:"** continued on page 5 number **"11. Start the in-depth study of General Clinical Sciences, including Internal Medicine, Surgery, Pediatrics, Gynecology, Obstetrics, Family Medicine and Psychiatry."**  The Syllabus defines the 5th Semester course content and grading, for which the students paid for and expect to receive.

I coninue

Exhibit 27, page 2 is the course Guideline, section "E  Clinical Rotations –Schedule".
This also defines the Clinical Rotations: "**Rotation in hospital wards (H), Emergency
Department (ED), hospital outpatient facility (HO), preceptors office (PO)"
Rotation in outpatient specialty services (either hospital or preceptor's office)
Internal Medicine (IM), Surgery (S), Pediatrics (Ped), GY/OB, Psychiatry (PS)"**

I continue

Exhibit 24 is the "University of Antigua School of Medicine Fifth Semester – Fall 2007
**Schedule of Clinical Rotations**".  It shows the students at St Joseph Mercy Oakland
hospital were offered only **3** of the at least **6** rotation they paid for per the course
Syllabus, Guidelines and the contract between the hospital and university.

I continue

Exhibit 25 is evidence that shows that the course started on **September 13, 2007**.
Exhibit 27 page 1 from the course Guidelines, shows that the course should have started
on **September 7, 2007**, Exhibit 24 is the Schedule of Clinical Rotations, at the top it
states "Week Starting on", " **September 10**".

This is evidence that two students **Steven Woodward** and **Paras Chahal** did not receive
an "**Emergency Medicine**", meaning they were cheated out of approximately **60%** worth
of training they paid for, because of the unorganized nature of the plaintiff.  Furthermore,
the "**Emergency Medicine**" rotation was not a core predefined rotation, but could only
be described as an "**elective**" in the contract between the hospital and the university.

This is evidence of the plaintiff and their partners knowingly committed fraud and breach 
of contract for not providing services per, both the course Syllabus, course Guideline, and
the contract between the hospital and university.

I will now demonstrate another example that the plaintiff knowingly commits breach of 
contract, fraud, Internet fraud, during the same 5th Semester program.  I will demonstrate
the plaintiff did not provide services promised and paid for.  The students paid for
examinations that are specifically given to prepare them for the United States Medical
Licensing Exam(USMLE).

Exhibit 10 is from www.auamed.org it is titled "From the Vice President" the last
sentence of the third paragraph states "**Our faculty prepares every student to succeed
on the National Board of Medical Examiners (NBME) Shelf Exams and the United
States Medical Licensing Exam (USMLE)**".  This statement defines the purpose of the
"**Shelf Exams**" to be used for preparing the students for the USMLE.

I continue

Exhibit 11 is from www.auamed.org it is titled "From the Vice President" from Peter
Bell.  Exhibit 11, page 2, 3rd paragraph, "**National Board of Medical Examiners**

**(NBME) Shelf Exams are used as final exams for the Basic Sciences courses, ensuring that the students meet U.S. medical education requirements."** This statement also defines the purpose of the "Shelf Exams" to ensure the students meet U.S. medical education requirements.

I continue

Exhibit 12 is an email from Deneen Nicks(McCall) dated October 8, 2007. This email contained a revised course schedule, the course started on September 13, 2007. Exhibit 12 page 4 last lines, 12/11 the students were scheduled to take a **"Shelf Like"** exam and on 12/14 the students were scheduled to take the **"Shelf Exam"**. The plaintiff did NOT administer these exams.

I continue

Exhibit 13 is the Statement of Account from the American University of Antigua for Steven Woodward. This statement is dated **3/19/2009**. On date **09/01/2007** Steven Woodward was charge for **"Testing Fees."** The plaintiff and the hospital did not give either the scheduled **"Shelf Like"** exam or the **"Shelf Exam"** which are used to prepare the student for the USMLE or to meet educational requirements.

I continue

Exhibit 18 is an email from the plaintiff, dated 1/6/2008. The attached file is page 2 of Exhibit 18 this is evidence that the student should have received a **"Shelf"** exam but the University did not administrate the exam.

I continue

Exhibits 10, 11, 12 and 13 is evidence of fraud and false advertisement using the Internet committed by the plaintiff. The plaintiff emailed the statement to Steven Woodward that showed they were billed for services that were not rendered.

 I will now show evidence of fraud, Internet fraud, and perjury with intent to commit obstruction by the plaintiff. The evidence that I will produce was from the same 5th Semester program.

http://encyclopedia.thefreedictionary.com/perjury
**Perjury** (also called **forswearing**) is the act of lying or making verifiably false statements on a material matter under oath or affirmation in a court of law or in any of various sworn statements in writing. Perjury is a crime because the witness has sworn to tell the truth and, for the credibility of the court, witness testimony must be relied on as being truthful. Perjury is considered a serious offense as it can be used to usurp the power of the courts, resulting in miscarriages of justice. In the United States, for example, the

general perjury statute under Federal law provides for a prison sentence of up to five years, and is found at 18 U.S.C. § 1621 See also 28 U.S.C. § 1746.

http://encyclopedia.thefreedictionary.com/Obstruction+of+justice
Generally, obstruction charges are laid when it is discovered that a person questioned in an investigation, who is not a suspect, has lied to the investigating officers. However, in most common law jurisdictions, the right to remain silent allows any person who is questioned by police merely to refuse to answer questions posed by an investigator without giving any reason for doing so. (In such a case, the investigators may subpoena the witness to give testimony under oath in court) It is not relevant if the person lied to protect a suspect (such as setting up a false alibi, even if the suspect is in fact innocent) or to hide from an investigation of their own activities (such as to hide their involvement in another crime). Obstruction charges can also be laid if a person alters or destroys physical evidence, even if they were under no compulsion at any time to produce such evidence.

Exhibit 14 is an email from Jeffrey Yanez, Course Director, dated December 10, 2007 8:05:42 AM
**"Due to testing irregularities**, AUA will allow you a retake on the **Vocabulary** section"
**"You will need a total score of 560 out of 800 questions.  80%(640) less the 10% curve = 560 questions"**

This email defined the requirements to **PASS** the Final Exam for the 5th Semester.  The final exam was taken using the on-line testing application Schalor360.  This email demonstrates there was to be a **10%** curve added to the Final Exam.  This email also defined the minimal number of questions the students needed to answer to obtain a "Passing" grade.

I continue

Exhibit 15 is the Final Exam Grades for Steven Woodward from the Internet testing application Scholar360.  "Total Points Earned: **568**", "Current Average:**71**", "Final Grade: **71**" and "Test – Final Exam – Block 2C(**Vocabulary**) Grade **88**.  This email is evidence that Steven Woodward **PASSED** the Final Exam.

I continue

Exhibit 16 is an email from Nicoletti & Associates, P.C. Subject: Steven Woodward v. Trinity Health-Michigan, To:billcain@comcast.net; steve_l_woodward@yahoo.com; yanezj@trinity-health.org; nssimon@auamed.org; vhrehorovich@auamed.org; zonias@trinity-health.org
The email is dated: **December 20, 2007 6:22:22 PM**
**"Enclosed please find a copy of the civil action that was filed this afternoon.  I would hope that this matter could be resolved without the need for costly and protracted litigation."**  This email establishes the date of which Steven Woodward initiated the lawsuit against the plaintiff and their partners.  In this email it clearly shows that Steven Woodward desired to resolve the situation without litigation.  Steven Woodward had

fulfilled all of his requirements to pass the 5th Semester **PRIOR** to the writing of this email.

I Continue

Exhibit 17 is an email from jecmpark@aol.com this user is Jorge E. Calderon, JEC, Dean of Clinical Sciences. This email was sent **December 20, 2007 8:53 PM**
"For those of you that took the Final exam using Scholar360, I need you to e-mail me your evaluation of that Program. **Exclude from it the vocabulary portion** that was not good because we did not have the time to correct it."

This email was sent after the lawsuit notification. This also demonstrates how corruptly the program is administered. One entire section of the Final Exam is omitted because the plaintiff "**did not have time to correct it**". Steven Woodward earned an **88%** on the "**Vocabulary**" section. The Final Exam was automatically corrected and was administered on December 7th giving them plenty of TIME to correct it.

I continue

Exhibit 18 is an email from the plaintiff, dated 1/6/2008. The attached file is page 2 of Exhibit 18 The University assigned an "**F**" to Steven Woodward for the 5th Semester course. Page 2 is also evidence that the student should have received a "**Shelf**" exam but the University did not administrate the exam.
This evidence shows that the plaintiff used the Internet to commit fraud for purposefully failing the plaintiff and for not administrating exams that were paid for by the student.

I continue

Exhibit 19 is the Student Evaluation – Outpatient Rotation for Steven Woodward
Attendance: **A**, Defined as: "Attended all scheduled sessions"
Medical Knowledge: **79%**
Attitude: **95%** – (90-100% Outstanding)
Learning Skills: **95%**
Communication Skills: **95%**
Professionalism: **95%**
Exhibit 19 page 2
General observation on the student's performance and suggestions for improvement:
"**Very Computer Literate**"
"**Excellent Student**"
Skills: (80-<90% Superior)
C) Overall skill to perform comprehensive physical examination: **80%**
D) Overall Skill to perform focused Physical examination: **80%**
This evaluation was signed by Dr. Breitenbach on **November 29, 2007**. This evidence demonstrates that **Steven Woodward** was an **OUTSTANDING** and **EXCELLENT** Student.

I continue

Exhibit 20 is the In-Patient Student Evaluation for Steven Woodward
Attendance: **A**, Defined as: "Attended all scheduled sessions"
Medical Knowledge: **80%** (80-<90% Superior)
Attitude: **90%** – (90-100% Outstanding)
Learning Skills: **90%**
Communication Skills: **90%**
Professionalism: **90%**
This evaluation was signed by Dr. Malloy. This evidence demonstrates that Steven
Woodward was a SUPERIOR and OUTSTANDING Student.

I continue

Exhibit 9 "Fifth Semester Introduction To Clinical Medicine Course Syllabus"
Pages 11 and 12 contain section "III. Evaluation and Grading"
"A) Passing Grade Minimal requirements

Minimal total course grade      **75%**
Minimal lecture attendance      **85%**
Minimal practical session attendance **85%**
Minimal hospital lecture and other academic sessions attendance **50%**
Minimal Out-patient session attendance **90%**
Minimal Correlation Course questions **80%**(1,600)
Minimal total quizzes score **60%**
Minimal final written exam score **80%**
Minimal final practical exam score **80%**"

Exhibit 9 defined the MINIMAL requirements for passing the FINAL EXAM.

I continue

Exhibit 21 is the Final Grades by Component – Fall, 2007
Steven Woodward did not have access to Exhibit 21 until after the Depositions of Susan
Zonia, Jeffrey Yanez, and Deneen McCall(Nicks) on February 3, 2009.

Per the predefined rules for grading the 5th Semester Program Final Exam, Exhibit 9:
Bulat, Elizabeth is the ONLY student that should have passed the course.
**Hampel, Nicola** did not achieve the Minimal total quizzes score of 60%, they only
earned a **54%**. This student also failed to meet the required Minimal final written exam
score of 80%, their score was **77%**.
**Jayadeep, Simbia** did not achieve the Minimal total quizzes score of 60%, they only
earned a **57%**.
**Ozuomba, Michael** did not achieve the Minimal total quizzes score of 60%, they only
earned a **56%**. This student also failed to meet the required Minimal final written exam
score of 80%, their score was **70%**.

11

According to these grades AUA failed this student.
**Chheda, Vishal** should have failed for the grade they received for, "Prac Session" attendance of only **75%**. The required minimal practical session attendance is 85%. This student should have also failed for their "Practical Ex" grades of only **75%**. The required Minimal final practical exam score is 80%.
**Evans, Lekedra** only earned a **73%** for the "Written Ex", Minimal final written exam score, the passing requirement was 80%.
**Paras Chahal** did not achieve the Minimal total quizzes score of 60%, they only received a **58%**. This student also failed to meet the required Minimal final written exam score of 80%, their score was **79%**.
**Hamed, Mousa** received a "0" for the Out-Patient score the Minimal Out-patient session attendance score is 90%.
**Kristen, Nico** received a "0" for the Out-Patient score the Minimal Out-patient session attendance score is 90%. This student also failed to meet the required Minimal final written exam score of 80%, their score was **78%**.

Without a "CURVE" for the Final Written Exam, **6 out of 10** students should have failed the course. The promised and published curve was **10%** as shown on Exhibit 14, the email from Jeffrey Yanez, Course Director. The University only applied a 4% curve without any notification.
The plaintiff passed the student that received the LOWEST Final score for the course, Chheda, Vishal, their score was only 76%, yet the plaintiff assigned them a "C".
Evans, Lekedra, earned an 83%, yet the plaintiff assigned them a "C(-)"

The plaintiff assigned an "**F**" to the Final Grade Adjusted for Steven Woodward even though they earned and **80%**!

The university wrote note (3) next to the grades for the student Steven Woodward.
This note states "**Failed Final Exam, Did take remedial and failed**" and "**Did not have OP rotation.  Toal score / 95.**"
Steven Woodward did not "**Failed Final Exam**", Exhibit 14 from the Course Director, is proof of this, stating "**Due to testing irregularities**" and "**less the 10% curve**" and Exhibit 17 from the Dean of Clinical Sciences reinforces this argument "**Exclude from it the vocabulary portion that was not good because we did not have the time to correct it**". Steven Woodward did retake the "Vocabulary" section due to the poor quality of the testing application. Exhibit 15 Scholar360 Final Grades shows that Steven Woodward earned an **88%** for the Vocabulary exam that was retaken.
The University added to the note "**Did not have OP rotation**", there were only two rotations one being "**Outpatient**", Steven Woodward earned a **95%** for his Outpatient, OP rotation.
Evans, Lekedra has note (1) added to her records, it states "Failed Final Exam. Remedial score 78. Final Grade: C(-)" and " Failed Final Exam. Has not taken remedial". This student's Final Written Ex score was only **77%** with the 4% curve, so this student should have failed.
Steven Woodward and Michael Ozuomba should not have been failed.

 I have shown how AUA unfairly falsifies and manipulates student grades defrauding their student(s). The plaintiff used the Internet to commit this fraud.

I continue

Exhibit 7 is the Trinity Health-Michigan, Susan Zonia and American University of Antigua "Defendants Trinity Health-Michigan and Susan Zonia's Case Evaluation Statement" submitted to State of Michigan in the Circuit Court for the County of Oakland. Exhibit 7, page 5 **"In any event, in early December 2007, before Dr. Zonias December 17 letter, Woodward took and failed the fifth semester Final Exam. AUA required an 80% score to pass the final exam. Based on AUA's curve for the exam, which was set by AUA in Antigua, Woodward scored a 75% on the final exam. Woodward received an "F" for the fifth semester."** a note (2) was added **"Woodward claims he actually passed the final exam"**
and from page 11 **"Woodward failed the fifth semester course, receiving an "F" for the fifth semester before he was dismissed form AUA."**
This evidence demonstrates that the plaintiff and their partners and attorneys committed fraud and perjury for the purpose of committing obstruction. This evidence was received by Oakland County Circuit Court January 19, 2009

Steven Woodward did not have access to **Exhibit 21,** Final Grades until after the depositions of Susan Zonia, Jeffrey Yanez, and Deneen McCall(Nicks) on **February 3, 2009.**

 From the exhibits presented I will now create a timeline further demonstrating that the plaintiff committed fraud with the intent to commit obstruction and perjury.

**Prior to December 10, 2007** the Course Director, Jeffrey Yanez notifies the students of a 10% curve that will be added to the Final Written Exam. Steven Woodward had completed the requirements for passing the 5th Semester prior to December 20, 2007.

**December 20, 2007 6:22:22 PM** The plaintiff is notified of a civil action between Steven Woodward and Trinity Health-Michigan. (Exhibit 16).

**December 20, 2007 8:53 PM** the plaintiff sends out an email stating that the "Vocabulary" portion of the Final Written Exam will be excluded because the plaintiff did not have the time to correct it. The final exam was given on Friday, December 7, 2007. Scholar360 is an Internet testing application, it's automatically graded. Even with "testing irregularities" the plaintiff had from December 7th to December 20th to correct these exams.

The plaintiff adds only a 4% curve, without notifying the students of the change. If they did not add a curve, 6 out of 10 students would have failed the Final Exam.

The plaintiff passes students that should have failed the class per the course Syllabus grading policy.

13

**January 6, 2008** Steven Woodward's 5th Semester course grades "F" are posted. The plaintiff uses this falsified failing grades in court proceedings.

**January, 19 2009**, Defendants: Trinity Health-Michigan, Susan Zonia, and American University of Antigua publish perjured statements in Exhibit 7, Case Evaluation Statement to the State of Michigan in the Circuit Court for the County of Oakland. **"Woodward took and failed the fifth semester Final Exam."** on page 5 a note (2) was even added **"Woodward claims he actually passed the final exam"** and on page 11 **"Woodward failed the fifth semester course, receiving an "F" for the fifth semester before he was dismissed from AUA."**

Steven Woodward did not have access to Exhibit 21 until after the depositions of Susan Zonia, Jeffrey Yanez, and Deneen McCall(Nicks) on **February 3, 2009**.

Exhibit 22 is "The Department of Health and Human Services and The Department of Justice Health Care Fraud and Abuse Control Program Annual Report For FY 2005. Exhibit 22, page 2, (Page 20 of the report)

"St Joseph Mercy-Oakland Hospital in Michigan agreed to pay $4 million for allegedly violating the anit-kickback statute and Stark law in connection with financial arrangements between the hospital and more than a dozen physician groups. The hospital voluntarily disclosed the potential violations under the HHS/OIG's "Provider Self-Disclosure Protocol."
This evidence demonstrates that the plaintiff's partners commit fraud against the members of their community.

Exhibit 23 News article "Former Payne Intern Guilty of Visa Fraud". This evidence demonstrates that Donald Payne's office is tied to criminal activities.

Exhibit 10 and 11 demonstrate that the content under the Uniform Resource Locator, URL www.auamed.org has been modified.

14

MOTION FOR PRELIMINARY INJUNCTION FOR WWW.AUAMED.ORG

I request a Preliminary Injunction for the Uniform Resource Locator, URL
www.auamed.org.
I request that the URL is either shut down or restored using backup recovery files only
from a point and time of when the plaintiff filed their claims.  I request that the URL be
shut down until the site is restored.
I request that any files linked to this URL that are controlled by the plaintiff or any
partner be reverted to a point prior to the filing of claims against the defendant.  This
includes any files that can be downloaded from links under this URL.
I request that the plaintiff is prohibited from making any more modifications of any kind
to this URL or any documents linked to this site for the duration of these court
proceedings.

15

## STATE OF MICHIGAN
### IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

STEVEN WOODWARD,

        Plaintiff,

v.

TRINITY HEALTH-MICHIGAN,
a Michigan Nonprofit corporation,
SUSAN CATHERINE ZONIA, an Individual,
AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE,
a Foreign corporation,

        Defendants.

RECEIVED JAN 1 9 2009

BY:_____

07-088103-CZ

JUDGE SHALINA KUMAR
WOODWARD,STEV v TRINITY HEALT

---

NICOLETTI & ASSOCIATES, P.C.
Paul J. Nicoletti (P44419)
*Attorney for Plaintiff*
39520 Woodward Avenue, Suite 200
Bloomfield Hills, MI 48304
248.203.7800

LAW OFFICE OF DAVID B. GUNSBERG, P.C.
David B. Gunsberg (P24235)
*Attorney for Defendants Trinity Health-Michigan and Susan Catherine Zonia; Co-Counsel for Defendant American University of Antigua College of Medicine*
322 North Old Woodward Avenue
Birmingham, MI 48009
248.646.9090

LAW OFFICES OF BRYAN L. SCHEFMAN
Bryan L. Schefman (P35435)
*Attorney for Defendant American University of Antigua College of Medicine*
322 North Old Woodward Ave.
Birmingham, MI 48009
248-723-1650

---

## DEFENDANTS TRINITY HEALTH-MICHIGAN and SUSAN ZONIA'S CASE EVALUATION STATEMENT

### DATE & TIME:

8:40 a.m., January 22, 2009

### EVALUATORS:

Robert L. Stefani, Douglas C. Bernstein, Thomas J. Gagne

*Exhibit 7*
*P91*

Steven Woodward filed Defamation and Interference with Contract claims against Dr. Susan Zonia and Trinity Health-Michigan/St. Joseph Mercy Oakland Hospital (SJMO) arising out of a December 17, 2007 letter written by Dr. Susan Zonia to Dr. Ernesto Calderon, of American University of Antigua (AUA) Medical School (**Exhibit 1**).[1]

Woodward was a fifth semester medical student at American University of Antigua (AUA) Medical School, who was assigned to SJMO for AUA's fifth semester (V semester) program. Zonia was the Director of Medical Education at SJMO and on site AUA Dean of AUA's SJMO program. Thus, Zonia worked for both SJMO and AUA with respect to the fifth semester program. Zonia was "in charge" of AUA's fifth semester program at SJMO.

Dr. Jeffrey Yanez was the SJMO Medical Director for the fifth semester program. Dr. Yanez was also an AUA Assistant Professor with regard to the Fifth semester program. Deneen McCall was the Program Coordinator for SJMO.

AUA is a private medical school located in Antigua. Woodward believes it is "owned" by Neil Simon.

The "fifth semester" is an AUA program which placed medical students in hospitals in Miami, Baltimore and Pontiac, where basic sciences are reviewed and students are exposed to clinical medicine. Passing the fifth semester was a requirement of AUA. After passing the fifth semester, AUA students would take the first step of the "Medical Boards" Tests (USMLE), which are required of all medical students

---

[1] Woodward also filed a claim against American University of Antigua (AUA) which was dismissed. The Court allowed an amended complaint to be filed for "breach of contract" which Woodward filed untimely and never served. AUA is not a party.

2

*Exhibit 7*

in the United States.  Part of Zonia's/Yanez's job was to evaluate and communicate Woodward's performance (including his professional demeanor).

Woodward, who is 45 years old, came to medical school after an adult work life. Prior to the fifth semester, he was barely hanging on in medical school, having failed three courses and accumulated a 1.83 (out of 4.0) GPA (See **Exhibit 2** – Transcript).

Under the AUA Student Handbook (**Exhibit 9**), there is a student disciplinary process.  On November 2, 2006, Woodward was placed on non-academic disciplinary probation for inappropriate behavior toward a professor (see **Exhibit 3**-Disciplinary Notice).  Woodward appealed the discipline to Neil Simon.  Woodward claimed the disciplinary requirement he have "anger management" treatment was removed and he was told the discipline would be removed from his record after successful completion of the fifth semester.  Woodward was also "brought up" on complaints before the Disciplinary Committee on two other occasions, but Woodward talked the professors involved out of proceeding against him before the Disciplinary Committee.

Woodward did not want to be in Pontiac, Michigan.  He wanted to transfer to the fifth semester program in Miami and concentrate on taking a Kaplan review course for the USMLE.  Woodward tried to transfer to the Miami program, but was unsuccessful. (See **Exhibit 4** – email).  Woodward vocally and repeatedly expressed his dissatisfaction with the fifth semester at SJMO to other students, AUA and SJMO staff, referring to the fifth semester as a "waste of time", a "failure", and "bullshit".  Woodward also created on online test login password of "AUASUCKS".  When confronted about the login as being "unprofessional" by AUA Program Director, Dr. Hrehorovich, Woodward defended the epithet, and issued vitriolic diatribes against AUA (see **Exhibit**

3

*Exhibit 7*

5 – October 23 emails).  Woodward also sent Dr. Hrehorovich an email on October 28, 2007, acknowledging that Dr. Hrehorovich had "called me (Woodward) unprofessional" with a nasty, curse-filled email about the school (**Exhibit 6**).

Woodward admitted he did not answer pages made to him but claimed it was because his pager didn't work.  Woodward acknowledged that he answered a required 80 question review exam using the <u>same answer</u> for all questions.

Woodward also completed his patient log in a short time and repeatedly asked to not have to do patient clinical rounds so he could study.

In short, Woodward's actions referenced in Zonia's letter are an accurate reflection of Woodward's repeated behavior while in the fifth semester.

At deposition, Woodward acknowledged he "had no idea" why Dr. Zonia wrote **Exhibit 1**, or what motivated Dr. Zonia in writing the letter.

After Dr. Calderon received **Exhibit 1**, AUA referred Woodward to the Grievance and Disciplinary Committee in Antigua.  Specifically, Dr. Cain of AUA notified Woodward of a Committee meeting to be held at 10 a.m. on December 21, 2007 and referred to specific charges of continued inappropriate demeanor, rude and unprofessional behavior toward AUA curriculum, failing to answer hospital pages, and selecting an "unseemly" user name in examinations (AUASUCKS) and defending the epithet when challenged.  (See **Exhibit 7**).  Woodward emailed Dr. Cain that he was "unavailable" on 12/21, although Woodward did not explain why he could not attend.  When Dr. Cain reiterated the 12/21 Hearing date, Woodward again, without explanation, refused to attend (**Exhibit 8**).  The Committee recommended his dismissal from AUA.  Woodward has no information that Zonia appeared at/participated in the Committee hearing.

4


Exhibit 7

In any event, in early December 2007, <u>before</u> Dr. Zonia's December 17 letter, Woodward took and <u>failed</u> the fifth semester Final Exam. AUA required an 80% score to pass the final exam. Based on AUA's curve for the exam, which was set by AUA in Antigua, Woodward scored a 75% on the final exam. Woodward received an "F" for the fifth semester.[2]

Woodward appealed his dismissal (but not the "F" for fifth semester) to Neil Simon at AUA. An appeal hearing was scheduled for July 10, 2008, but (again) Woodward refused to appear. The appeal was (apparently) denied. Zonia was not involved in the scheduling of the appeal procedures.

Woodward has not invoked in any appeals of his failing grade, requested to retake the fifth semester, sought readmission to AUA, or tried to enter any other medical school. Since December 2007, Woodward has been living on a sailing yacht in St. Maarten, scuba diving.

AUA issues a Student Handbook (**Exhibit 9**) which has disciplinary procedures. Woodward claims the Student Handbook is a "contract" between Woodward and AUA which was "interfered with" by Dr. Zonia. Woodward acknowledged that the AUA Disciplinary Committee could consider his unprofessional behavior and discipline him, <u>including dismissal</u> (Woodward Dep., pp. 149-150). In his amended complaint, which was untimely filed and not served, Woodward claims that the "breach" by AUA was that he was not given a "timely" appeal hearing on July 10, 2008, i.e. within 14 days of filing his appeal. Woodward, however, testified that he made a conscious decision not to

---

[2] Woodward claims he actually passed the final exam, but he never appealed his failing grade, although allowed to appeal under the Student Handbook.

5

*Exhibit 7*

attend the July 10, 2008 hearing because it "would have made no difference" (Dep. p. 178).

<u>LIABILITY</u>

Discovery is open in this case until case evaluation.  Trinity/Zonia anticipate filing a Motion for Summary Disposition after discovery closes which has a high likelihood of success.

## <u>WOODWARD HAS NO VIABLE CLAIM OF DEFAMATION.</u>

A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.  *Swenson-Davis v Martel*, 135 Mich App 632, 354 NW2d 288 (1984) A *prima facie* case of defamation requires a showing that 1) the defendant made a false and defamatory statement concerning the plaintiff; 2) that the defendant published the defamatory statement to a third party; 3) that the defendant was at least negligent publishing the statement; and 4) either actionability of the statement respective of special harm or existence of special harm caused by publication.  *Colista v Thomas*, 241 Mich App 529, 616 NW2d 249 (2000).

A publication, even if false, may be protected by qualified privilege.  Essential elements of a qualified privilege are enumerated as 1) good faith, 2) an interest to be upheld, 3) a statement limited in its scope to this purpose, 4) a proper occasion, and 5) publication in a proper manner and to proper parties only.  *Bufalino v Maxon Bros., Inc.*, 368 Mich 140, 153, 117 NW2d 150 (1960).  A qualified privilege may only become been overcome by a showing of actual malice.  Actual malice does not constitute ill will, but a

6


Exhibit 7

showing that the publisher knew or should have known that its statements published were false.

Statements of opinion are not defamatory in particular, generalized statements regarding lack of professionalism. *Swenson-Davis*, supra. See, for example, *Johnson v. Millennium Treatment Services, L.L.C.*, 2007 WL 1263981 UNPUBLISHED OPINION; *Mino v Clio School District*, 255 Mich App 60, 661 NW2d 586 (2003).

In this case, the allegations contained in **Exhibit 1** are statements of opinion and did/do not amount to defamation. Moreover, it is unlikely the statement made by Zonia alone would have harmed Woodward's "reputation in the community", i.e. <u>AUA</u>, given that Woodward was already on probation for unprofessional conduct as of November 2006 (see **Exhibit 3**) <u>and</u> Dr. Hrehorovich had already labeled Woodward as "unprofessional" in late October 2007 (see **Exhibits 5 and 6**).

In any event, the asserted facts are <u>substantially</u> true and are so admitted by Woodward.[3]

Woodward admitted he repeatedly expressed his unhappiness and dissatisfaction with AUA, that the fifth semester was a "a failure", "a waste of time", "bullshit", that he used the login "AUASUCKS" and continued to defend the login when challenged by Dr. Hrehorovich, that he did not answer pages, that he sought to discontinue clinical rounds so that he could study upon completion of his patient log (a request which was denied), and that he used the same answer to each question on at least one 80-question review exam. In short, the factual allegations upon which the opinions of Zonia are based are substantially true.

---

[3] In deposition, Woodward claimed that the "entire letter" was defamatory.

7

*Exhibit 7*

Nor did Zonia "publish to a third party". After all, the publication was to Dr. Calderon, another AUA official. Woodward does not state a *prima facie* case of defamation.

Even if the words were defamatory, Zonia's letter was protected by a qualified privilege: Zonia was the head of the AUA Medical Education Program; part of her job responsibilities was to evaluate students. As such, expressing her opinion as to student Woodward's "professionalism" was well within the "interest" encompassed by her job responsibilities. See, for example, *Feaheny v Caldwell*, 175 Mich App 291, 437 N.W.2d 358 (1989) (defendants who were superiors of plaintiff whose responsibilities required them to exercise their independent judgment in evaluating plaintiff's performance and in making recommendations to the Board of Directors exercised a proper interest. The fact that plaintiff's' managerial style differed from his superiors was clear. Plaintiff's opinion regarding how management should behave and what decisions would have been in the best interest of the (Company) may or may not have been better from an objective standpoint. However, defendants' job responsibilities were to make those decisions, and it is not the task of the Court or jury to evaluate the (business) judgment of such individuals). In short, Zonia had an interest, in fact a responsibility, to advise AUA regarding her (and other medical educators') opinion of student Woodward's "professionalism".

Moreover, Zonia's publication was limited to one person, Dr. Calderon, the individual in charge of the fifth semester at AUA in Antigua. Zonia's publication was limited to those who "had an interest". That Dr. Calderon passed along any complaint was of no doing by Zonia.

8



Exhibit 7

As such, Zonia's statement qualifies for qualified privilege protection.

Nor can Woodward show that Zonia acted with actual malice. Woodward can identify no basis upon which Zonia knew or should have known that her statements were false. To the contrary, Woodward substantially admits (although he disagrees with the conclusions reached), and his e-mails acknowledge, the allegations made against him. Woodward cannot identify any basis upon which Zonia should have known that the allegations were false. He is unaware of her investigation or the source(s) of her information. In short, Woodward's defamation claim against Zonia fails.

## WOODWARD STATES NO CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACT

Setting aside the question of whether a student handbook published by a private university constitutes a "contract" under Michigan law (and Plaintiff cites no Michigan law to support such proposition), Woodward's claim of Intentional Interference with Contract fails.

To state a *prima facie* case of interference with contract, Woodward must show 1) the existence of a contract; 2) breach of the contract; 3) instigation of the breach by an alleged tortfeasor. *Bonelli v Volkwagen of America, Inc.*, 166 Mich 483, 421 NW 2d 213 (1988). A third-party must intentionally do an act that is per se wrongful or do a lawful act with malice and that is unjustified in law for the purpose of invading the contractual rights of another. *Feaheny* supra. Wrongful conduct means illegal, unethical, or fraudulent conduct. Where the alleged tortfeasor is also a party to the contract, there is "a very difficult obstacle" to overcome. Plaintiff needs to prove that Zonia's *actions were strictly for personal reasons* unrelated to the business.

9

*Exhibit 7*

*Feaheny*, supra.  This is so because Zonia's acts are privileged when acting for and on behalf of AUA.  As such, Woodward must show that Zonia acted "to further strictly personal motives".  *Id.*  Here, Woodward can show no per se wrongful act.  Woodward testified AUA and Zonia are "one in the same" (Dep., p. 108) and that in her capacity <u>as an AUA professor</u>, she caused AUA to breach the Student Handbook (Dep., p. 143).  As Acting Dean for AUA Zonia had a responsibility, in fact a duty, to address what she, as an educator, believed to be unprofessional/inappropriate conduct by *student* Woodward.  Her actions (writing **Exhibit 1**) were privileged in that she was communicating her opinion to another AUA person in charge of the fifth semester at AUA.  Woodward cannot show she had any personal motive.  When asked, Woodward repeatedly testified that until the letter was written, he had "no problem" with Zonia and he "had no idea" why Zonia wrote the letter (Dep. p. 59).  Moreover, the Disciplinary Committee had an interest in the letter because, as Woodward admitted, the Committee had the authority to discipline/dismiss Woodward for unprofessional conduct and in order to carry out its function, the Committee would need to know what he was charged with. (Dep. pp. 149-150, 168).  Zonia's actions did not constitute any illegal, fraudulent, or unethical conduct, were privileged, and Zonia is not a third party to the contract because she is an agent/employee of AUA.

No claim for interference with contractual relationship (even assuming there was a contractual relationship) between AUA and Woodward will lie.  *Feaheny*, supra.[4]

---

[4] The AUA Handbook does not create a "contract".  The Handbook refers to <u>students'</u> "obligation" only (Exhibit 9, pp. 1, 2).  There is no published Michigan case which stands for the proposition that a student handbook is a contract.  The trial court already dismissed Woodward's claim of implied contact against AUA as no such legal claim exists in Michigan.  Woodward's failed amended complaint against AUA claimed breach by AUA not giving Woodward a hearing within 14 days of filing his appeal in July 2008.

10

*Exhibit 7*

Finally, Woodward cannot show that he was damaged by Zonia's letter. To the extent that the Committee recommended his dismissal, the Committee had <u>independent</u> information regarding Woodward's lack of professionalism. After all, Woodward was already on probation for being unprofessional (**Exhibit 2**) and Dr. Hrehorovich previously stated that he believed Woodward acted unprofessionally, a statement that was published to other AUA management (**Exhibits 5 & 6**). Woodward failed to appear at either his disciplinary hearing December 21, 2007 or his appeal hearing held July 10, 2008.

Moreover, Woodward failed the fifth semester course, receiving an "F" for the fifth semester before he was dismissed from AUA. Woodward would have had to retake the fifth semester before he could move forward with his medical education or take the Step 1 USMLE exam. Rather than appeal or retake the fifth semester, Woodward elected to file suit. Woodward took no action to reverse his failure of the fifth semester, retake the fifth semester, or seek readmission, all of which he had as potential remedies. Instead, Woodward appears to be spending his life on his yacht in St. Maarten scuba diving rather than attempting to further his medical education (Dep. pp. 17-18). <u>He is entitled to no consideration</u>.

---

However, Zonia had nothing to do with scheduling Woodward's appeal hearing (which was held within 14 days) and at which Woodward <u>never intended</u> to appear (Dep., p. 178).

11

*Exhibit 7*

Respectfully submitted

LAW OFFICE OF DAVID B. GUNSBERG, P.C.

By: _____

    David B. Gunsberg (P24235)
    *Attorney for Defendants*
    322 North Old Woodward Avenue
    Birmingham, MI 48009
    248.646.9090

Dated: January 16, 2009

Exhibit 7

# CLINICAL CLERKSHIP AFFILIATION AGREEMENT
### Between
## AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE
### And
### St. JOSEPH MERCY-OAKLAND

*THIS AGREEMENT, made the    of May, 2007 by and between the American University of Antigua College of Medicine (hereinafter referred to as "College") and St. Joseph Mercy Oakland (hereinafter called "Hospital").*

*WHEREAS, the College of Medicine, is engaged in the education of physicians at American University of Antigua College of Medicine, Antigua*

*WHEREAS, the Hospital, organized under the laws of the State of Michigan with its principal place of business at 44405 Woodward Avenue, Pontiac, Michigan, is providing health care services in appropriate facilities for the implementation of a program of clinical clerkships to improve the educational and clinical opportunities of qualified students*

*NOW, THEREFORE, in consideration of the mutual covenants herein contained, and intending to be legally bound hereby, it is agreed as follows;*

*The goals of the Program are to (1) improve the opportunities for professional training of students of the College; (2) increase the students' exposure to the clinical discipline at the Hospital; (3) educate the students in such a manner as to maximize the efficiency and success of the students.*

*This Agreement shall take effect for a period of one year from the signing of this Agreement and is subject to annual renewal upon mutual consent.   The College has the responsibility for preparing the affiliation clerkship curriculum for implementation by the Hospital, appoint the individuals who will be responsible for supervising and monitoring each clinical discipline and who will implement the clerkship program. The discipline coordinators at the Hospital will receive academic appointments according to the College's criteria and prevailing academic standards, and will be subject to regular review by the College's Committee on Academic Ranking System, and shall receive the same rights, tenure and fringe benefits as clinical faculty staff members of the College. The College assumes responsibility for the continuity of the program both financially and academically.*

*The Hospital clerkship program will include rotations in Internal Medicine, Surgery, Family Medicine, Pediatrics, and Obstetrics and Gynecology and electives*

*The structure of the clerkship program is subject to annual review and modification by the College, provided that such modifications are consistent with the goals and objectives of the program and are in compliance with New York State regulations.*

DEPOSITION
EXHIBIT

Exhibit 8 pg1

*The performance of each student shall be subject to the College's system of evaluation. Such evaluations shall be submitted to the College within thirty (30) from the completion of the rotation and are requirements for graduation.*

*Periodic visits will be made to the Hospital by the representative of the College and appropriate clinical department chairmen and vice-versa. The College's coordinator for clerkships at the hospital or his designate will make periodic reports to the College to assure that the objectives of the program are being fulfilled. The cost of periodic visits will be assumed by the College.*

*The College will maintain student records, updating them as letters of evaluation from the Hospital are received;*

*Either party may terminate this Agreement, with or without cause, upon sixty (60) days prior written notice to the other Party.*

### INSURANCE AND LIABILITY

*The College shall at all times maintain or provide professional liability insurance coverage issued on an occurrence basis with limits of not less than $1,000,000 per occurrence and $3,000,000 annual aggregate, and general liability insurance coverage with limits not less than $1,000,000 for personal injury and $100,000 for property damage, in each instance covering the College and any corporation, officer, employee or agent of the College acting within the scope of employment by the College. All insurance maintained hereunder shall be issued from an insurance carrier licensed to do business in the State of New York. The College shall ensure that the Hospital shall receive notice from the College of cancellation or reduction of coverage with respect to any insurance policy maintained hereunder.*

*The College hereby indemnifies and holds harmless the Hospital and its officers, trustees, directors, employees and agents, from and against any and all liabilities, costs, claims, judgments, settlements and expenses, including reasonable attorney's fees, arising out of or in connection with the negligent act or omission of the College or any of its employees, agents or students.*

*The college, at its own expense, must also maintain a Student Accident and Health Insurance policy.*

### CHOICE OF LAW

Exhibit B Pg 2

This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to choice of law provisions thereof. Any action commenced by a Party hereto relating to this Agreement shall be brought in the United States District Court for the Southern District of New York or in the Supreme Court of the State of New York, County of New York.

## GENERAL

The Hospital and the College shall each continue their independent corporate existence and, except as set forth herein, their respective corporate powers shall not be enlarged, impaired, or otherwise affected by this Agreement, they shall continue to be operated under the direction and control of their respective governing boards. Nothing in this Agreement shall impair or modify any existing agreements between any of the parties; or modification of old agreements between any of the parties.

## COVENANTS

The College hereby agrees:

That each student who participates in this program will have the same rights to examinations and credits as those students who participate in the traditional curriculum of the College.

That identification and selection of students qualified to participate in the program will be done by a Faculty Committee selected by the Dean; the Hospital shall have the right to either accept or reject the student.

That all selected students will have all the necessary physical examinations and immunizations at American University of Antigua prior to the time of rotation. The College shall ensure that, prior to their affiliation assignment, all students shall have such physical examinations and tests (including, but not limited to, a skin test for tuberculosis and, where positive, a chest x-ray) titers to ensure that students are not in the infectious stage of any communicable disease. The College shall advise its students that they are required to provide proof to the Hospital of drug testing that verifies that they are not habituated or addicted to depressants, stimulants, narcotics, alcohol or other drugs or substances which may alter their behavior. Students shall also be immunized against smallpox, diphtheria and tetanus prior to their rotation.

The College will ensure that students participating in the Clinical Clerkship program will have appropriate housing.

The medical students shall follow all the rules and regulations and policies of the Hospital. Each student at the Hospital shall carry an identification card issued by the Hospital and shall be responsible for the following:

    a.  Conforming to and abiding by the administrative policies, rules, regulations, standards and practices of the Hospital.

Exhibit 8 pg 3

b. *Conspicuously displaying his/her name badge, when engaging in activities at the Hospital.*

*In the event that a student is involved in any situation which requires filing an "incident report" by the Hospital pursuant to the Public Health Law, the College shall be advised of the nature of the situation giving rise to the report and the parties shall discuss the potential impact, if any, on this Agreement, including but not limited to appropriate corrective action to be taken.*

*The hospital agrees to provide support services including counseling for students.*

*College agrees to fund the clinical clerkship program provided to its student in accordance with the provision of exhibit (1) one.*

**IN WITNESS WHEREOF** *the parties hereto have executed this Agreement on the day and year first above written.*

Signatures,

Neal S. Simon

AMERICAN UNIVERSITY OF ANTIGUA

St JOSEPH MERCY-OAKLAND

Exhibit B Pg 4

## *EXHIBIT 1*

*College agrees to pay Hospital at the rate of $350 per week per student for all core clinical clerkships provided by Hospital to College's Clinical Students*

Exhibit 8
Pg 5



AMERICAN
UNIVERSITY
OF ANTIGUA
COLLEGE OF
MEDICINE

*C/O Greater Caribbean Learning Resources*



KASTURBA
MEDICAL
COLLEGE

# FIFTH SEMESTER
# INTRODUCTION TO CLINICAL
# MEDICINE

## <u>COURSE SYLLABUS</u>
## 15 CREDITS

**Administrative Office:** 2 Wall Street 10th Fl
New York, NY 10005
**Tel:** 212 - 661-8899 Fax: 212 - 661-8864
1-888-AUA-UMED (1-888-282-8633)
**Email:** info@auamed.org  www.auamed.org

**Manipal Education & Medical Group**
Manipal 576104 India
**Tel:** 91-820 2571978/79 Fax: 01-820 2571982/257062
**Email:** kmc_auamed.@manipal.edu
www.manipal.edu

Exhibit 9
Pg 1

# TABLE OF CONTENTS

**FOREWORD**

I. GENERAL ........................................................ 4 – 11

  A PREREQUISITES ......................................... 4

  B. PURPOSE ................................................ 4

  C. OBJECTIVES ........................................... 4 – 5

  D. THEMES AND FINAL OUTCOMES ................................. 5

  E. COMPONENTS ........................................ 5 – 10

    a) Course on History and Physical examination    5
    b) In-Hospital Clinical Rotation    6
    c) Out-Patient Clinical Rotation    7
    d) Basic Sciences – Clinical Correlation Course    8
    e) Presentation of Clinical Cases    9
    f) Portfolio    9
    g) Quizzes and Exams    10

II. ACADEMIC POLICIES........................................ 10 – 11

III. EVALUATION AND GRADING ......................................... 11

    a) Passing Grade Minimal requirements    11
    b) Components included in Grade Calculation    12
    c) Student Evaluation of Academic Activities    13

IV. BOOKS, LIBRARIES AND ON-LINE RESOURCES ................ 12

V. STUDENT RESOURCES AND CONTACTS ........................... 13



Exhibit 9

## FOREWORD

## A BRIDGE TO CLINICAL MEDICINE

The purpose of the AUA College of Medicine is to educate excellent physicians who are prepared to deliver effective and compassionate treatment and preventive care to patients and their families. The fifth semester is the beginning of a pivotal time in this process. It encompasses the transition from the basic medical sciences to the clinical disciplines.

This syllabus is carefully designed to provide students with the maximum opportunity to make this transition a productive learning experience. It will serve as the main guide for lectures, practical sessions and definitions of weekly academic goals. The syllabus is complemented by the "Fifth Semester Guidelines" booklet which includes schedules and operational instructions.

The three-fold goal of the fifth semester is a). to help student master the skills of taking a patient's history. b). to develop the art and technique of physical examination and c) to integrate basic science into clinical diagnostics and critical patient evaluation.

The Fifth Semester Course includes lectures, oral and written case presentations, clinical rotations, review of core concepts and facts through quizzes, examinations, clinical discussions and a portfolio that includes the summary and evaluation of students' experiences.

The University strives to offer similar clinical learning opportunities for each student, however exact duplication is impossible. Each student's experience will be slightly different because of the particular characteristics of each practice site. Therefore, students need to be proactive in making their experience as productive as possible. To that end, they will have a variety of resources, including individual counseling.

The teaching and administrative staff has made significant efforts to carefully organize the Fifth Semester Course. The University expects students to respond with punctuality, outstanding professional appearance, and total, full time dedication.

Evaluation of students is based on the actual acquisition of individual skills, development of professional attitudes, efforts to reach the established goals, quizzes and examination scores. Students will have the opportunity to evaluate lectures, practices, and all activities. Their input is critical in developing and advancing the University's academic program.


*Exhibit 9*

# I. GENERAL

## A. PREREQUISITES FOR ENROLLMENT INTO 5TH SEMESTER

1. Successful completion of four semesters in Basic Medical Sciences, including Anatomy, Embryology, Histology, Behavioral Sciences, Biochemistry, Genetics, Physiology, Microbiology, Immunology, Pathology, Pharmacology, Biostatistics, Doctor, Patient and Society, and Introduction to Clinical Medicine.

2. Completion of Registration procedures via AUA policies and specific requirements of the Hospital training sites.

3. Commitment to <u>full time involvement in and dedication to the academic activities of the Course.</u>

## B. PURPOSE AND GOAL

The purpose of the course is for students to acquire the necessary clinical skills, to formulate diagnostic hypothesis and to correlate the latter with the fundamental facts and concepts of the Basic Sciences.

The goal of the course is to prepare students to successfully complete subsequent clinical clerkships.

## C. OBJECTIVES

By the end of the course, students will be able to:

1. Obtain comprehensive and relevant health histories through effective communication with patients and families.

2. Carry out full general physical examination of all body systems.

3. Distinguish normal conditions from abnormal symptoms and signs.

4. Understand the role of diagnostic testing in the medical examination process.

Exhibit 9

5. Collect, logically organize, and document the information related to patients' condition.

6. Formulate working diagnoses expressed as syndromes, specific pathological processes, or diseases.

7. Understand the interaction between physicians and other health professionals.

8. Present in an effective manner clinical cases in both verbal and written form before peers, preceptors and other medical audiences.

9. Identify and learn the links between basic and clinical sciences.

10. Explain symptoms and signs on the basis of physiological, pathological, and biochemical changes occurring in the human body.

11. Start the in-depth study of General Clinical Sciences, including Internal Medicine, Surgery, Pediatrics, Gynecology, Obstetrics, Family Medicine and Psychiatry.

12. Collect clinical data from individual patients related to primary prevention based on life cycles and secondary prevention of prevalent illnesses in the USA.

13. Understand and properly apply the clinical and technical terms used by the medical profession to describe symptoms, signs and syndromes.

## D. THEMES AND FINAL OUTCOMES

The booklet "Fifth Semester Guidelines" includes Schedules, Themes and Final Outcomes by academic activity.

## E. COMPONENTS

The first twelve (12) weeks of the fifteen- week semester are dedicated to lectures and clinical rotations.  Students will use the final three (3) weeks for

**Exhibit 9**

completing their portfolio, reviewing and studying the course materials, testing, and evaluation activities.

**a)   Course on History and Physical Examination**

This course provides an in-depth review of the techniques and methods for the elaboration of clinical histories and the examination of the human body systems.  The course consists of twenty (20) core lectures and nine (9) Practical Sessions by experienced specialists.

**b)   In-Hospital Clinical Rotation**

The objective of the In-Hospital Clinical rotation is to demonstrate the practical aspects of elaborating clinical histories and performing physical examinations on patients admitted to the Hospital.  This is a valuable tool in reinforcing the concepts, theories, techniques and facts presented in Course lectures.

During this rotation the students will engage in proactive learning with the residents and preceptors assigned to them.    Students' responsibilities include:

1.  Observing residents' work, asking pertinent questions and taking notes in their Journal.

2.  Developing a good rapport with patients, attending physicians, nurses and other health professionals

3.   Assisting practicing physicians in examining patients when requested.

4.  Communicating with patients face-to face, taking clinical histories and observing examination techniques.

5.   Accessing and reviewing charts as authorized by physicians and elaborating full write-ups on selected patients. **Due to confidentiality laws and regulations, students cannot use or disclose the names of patients or give other identifying information in the write-up of cases.**

*Exhibit 9*

6. Assisting in medical procedures when requested.

7. Participating in case discussions and presentations.

8. Discussing the interpretation of laboratory tests and other diagnostic exams and procedures.

9. Discussing differential diagnoses and treatment plans with the residents and attending-physicians.

10. Attending all available lectures and other academic activities scheduled in the Hospital, including morning rounds, sign-in and sign-out rounds, morning and afternoon lectures.

### c) Out-Patient Clinical Rotation

During this rotation, students will work in pairs to see patients in the offices of physician-preceptors, who will mentor according to the schedule provided by each Course Director.  The physician-preceptors have been in medical practice for several years and will provide students with an exceptional opportunity to observe both the operation of a private practice and the management of patients in an outpatient setting. **Due to confidentiality laws and regulations, students cannot use or disclose patients' names or give other identifying information in writing-up cases during their clinical rotations.**

Under the continuous supervision of the physician-preceptors, students will carry out the following activities:

1. Observing the preceptors performing physical examination of their patients with special attention to the system presented and discussed during the previous week's lecture.

2. Performing portions of the examination demonstrated and allowed by the preceptor.

3. Gathering the necessary information and writing the clinical history of the patients assigned by the preceptor.

*Exhibit 9*

4. Identifying new patients and following-up with patients on whom the student wishes to do full write-ups using the formats suggested during the Course or included in the textbook. The preceptor must approve the student's request to use the clinical information contained in the charts.

5. Verbally presenting to the preceptor a minimum of one case per day during the rotation in the preceptor's office.

The Outpatient Rotation Schedule appears in the "Fifth Semester Guidelines" booklet.

**d)   Basic Sciences – Clinical Correlation On-line Course**

This On-line based Course is scheduled and managed at the AUA Headquarters in New York. It will help students establish the necessary correlation between Basic Sciences and Clinical Sciences. The case studies will challenge students with both diagnoses and management of relevant clinical cases.

Students will answer an average of 200 questions weekly and a total of 2,000 questions within a three- day testing period assigned by the Course Director. The purpose of the test is to identify gaps in students' knowledge. The On-line Course will provide the correct answers, enabling students to refine study skills, improve basic and clinical science correlations, as well as, provide guidance in addressing individual knowledge needs.

In addition to working on-line individually, students are encouraged to study the questions collectively to optimize academic success. Ultimately, the On-line course is only one of many tools enabling students to successfully meet the challenge of future evaluations. There is no substitute for the assiduous study of texts and the regular attendance of lectures.

Although the University will not factor On-line test scores into the final grade for the fifth semester, each student must answer a minimum of 1600 questions in order to obtain a passing grade.

**e)  Presentation of Clinical Cases**


Exhibit 9

The goal of this component is to develop students' ability to write concise and relevant medical histories and to make concise and well- structured verbal case presentations before peers and teaching staff.

To that end, students need to use and apply the knowledge and skills which they have learned and developed in questioning and examining patients during both the In-patient and Out-patient rotations.

Practicing this valuable skill at every opportunity will guarantee success in future clerkships, obtaining the M.D. degree, and securing a residency position.

### f) Portfolio

Students will register all their individual academic and practical experiences in a Portfolio which will be submitted at the end of the 11th week of the Course.

This indexed document will include:

1. Fifteen "two minutes" write-ups of clinical cases the students saw during hospital and outpatient rotations, including two respiratory cases, three cardiovascular cases, two GI cases, and one case related to each one of the other body systems. Out of these cases, the student will pick three for verbal presentation.

2. Fifteen written templates of the most significant illness, syndrome or pathological condition affecting the above patients. (The templates are summaries from Medical Textbooks of the most frequent symptoms, epidemiological (risk) factors, and signs that characterize each entity and of the state of the art diagnostic confirmatory tests and treatments).

3. Two full write-ups of hospital admissions of patients that the student has seen and followed up. They include full descriptions of the Admission History and Physical, the Hospital Course, the discharge disposition and a brief clinical discussion of one of the health issues affecting the patient.

Exhibit 9

4. The form *Clinical Cases Discussed, Observed, and Examined During Fall 2007* which includes the list of all new patients that the student saw during clinical rotations as well as previous patients who presented with new clinical problems.

5. The form *Academic Activities Attended* listing all academic sessions that the students actually attended in and outside the Hospital.

6. The form *Correlation Course Tests Taken* including the number of questions answered and the individual scores.

7. A general student evaluation of the Course and of individual lectures, practical sessions and rotations.

The booklet "Fifth Semester Guidelines" provides detailed suggestions on how to prepare the Portfolio.

### g. Quizzes and Exams

Quizzes and exams will be important tools in the evaluation and grading of students. The Course also uses them as important learning tools. To that end the teaching staff will routinely discuss with students the quizzes and exam questions as part of the core curriculum of the course. The Course provides ample opportunities to reinforce concepts and facts.

Students will take approximately fourteen (14) quizzes and tests related to the Course lectures and practical sessions. The final written exam will include the same material covered by the quizzes. The practical exam will consist on the interview and examination of a patient at the Preceptors' office.

## II.  ACADEMIC POLICIES

### A. Mandatory Attendance and Punctual Arrival at Sites

AUA/KMC students must <u>attend at least 85% of lectures</u> and practical sessions. The university permits three (3) absences of clinical sessions per student during



the entire semester. Only the Course Director or the Dean of Clinical Sciences can authorize any deviation from this policy.

To request an absence from a clinical assignment, students must submit to the Course Director a written request one week prior the requested absence.

Failure to comply with attendance policy may result in the lowering of the final grade, failing the rotation, or dismissal.

**B. Conduct**

The AUA expects students to exhibit the highest level of professional standards, behavior, and integrity. Professional appearance and attitude are essential to a quality doctor-patient relationship.

**C) Mandatory Attire**

The attire for males is a dress shirt, tie and trousers and for females, a dress, skirt or slacks with blouses. Students must wear white coats and AUA/KMC identification tags when at the Hospital or on its grounds and when seeing patients at any location. Teachers and preceptors will not allow violators to participate in the academic or practical sessions

**D) Disaster Precautions**

A Disaster Preparation Booklet includes a safety plan for students attending the Hospital and is available upon request at the Hospital.

## III. EVALUATION AND GRADING

    **A)**    **Passing Grade Minimal requirements**

      ❖ Minimal total course grade      75%
      ❖ Minimal lectures attendance      85% (18 lectures)
      ❖ Minimal practical sessions attendance      85%
      ❖ Minimal Hospital lectures and other
    Academic sessions attendance      50%*

11

Exhibit 9

❖ Minimal Out-patient sessions attendance 90%
❖ Minimal Correlation Course questions 80% (1,600)
❖ Minimal total quizzes score 60%
❖ Minimal final written exam score 80%
❖ Minimal final practical exam Score 80%

*During Hospital rotations*

**B)** **Components included in Grade Calculation**

❖ Attendance to Course lectures 10 %
❖ Practical session reports 5%
❖ Outpatient Preceptor evaluation 5%
❖ Verbal 2-minutes presentation of clinical cases 5%
❖ Portfolio 1 10%
❖ Quizzes 35%
❖ Final written Exam 20%
❖ Final Practical Exam 10%

**C)** **Student Evaluation of Academic Activities**

Students will submit an evaluation of every lecture and academic activity in which they have been involved, making suggestions for improvement. The *Fifth Semester Guidelines* booklet includes the respective forms and instructions.

## IV. BOOKS, LIBRARIES AND ON-LINE RESOURCES

1. **Mosby's Guide to the Physical Exam**, 6th Edition, Mosby, 2006 and accompanying CD which is the required textbook.

2. **MKSAP for Students 3** Developed by the American College of Physicians - Clerkship Directors n Internal medicine, 2005 and accompanying CD

3. **Harrison's Principles of Internal Medicine**, 16th Edition, McGraw-Hill, 2005 printing

4. **The on-site Hospital Library** containing collections of updated books, journals, and modern audiovisual equipment.

5. **American College of Physicians/ACP**: Enroll for a free Student Membership on line or by phone at 800-523-1546, extension 2711.  Some enrollment benefits, in addition to membership in the largest medical specialty society include the opportunity to explore the internal medicine profession, access to members-only sections of ACP Online, free attendance at scientific meetings, a subscription to *IMpact*, an on-line newsletter for medical students, and discount eligibility to some programs and  products.

6. **Exam Master.** The Fifth Semester entry is:

http://www.exammaster2.com/wdsentry/aua-balt.htm

## V.    STUDENT RESOURCES AND CONTACTS

### A. Student Services Coordinator

Dr. J. Ernesto Calderon, Dean, Clinical Sciences, AUA

| | |
|---|---|
| Office: | 410 636  - 2222 |
| Cellular: | 443 463 – 6182 |
| E-mail: | jecmpark@aol.com |

### B. Academic Counseling

Course Directors (Miami, Baltimore, Pontiac)

Dr. Jorge E. Calderon, Dean, Clinical Sciences

Dr. Victor Hrehorovich, Vice Chancellor and Executive Dean, AUA

Office:    212 661-8899   ext. 119

### C. Psychological Support

The aforementioned faculty is available to provide psychological support and make referrals to specialists.

DOCS – Fifth Semester Syllabus
VH, JEC
08/31/07

13

*Exhibit 9*



http://www.auamed.org/from-vice-president

QUICK FACTS
**FROM THE PRESIDENT**
ACADEMIC PROGRAMS
FACULTY & STAFF
CAMPUS & FACILITIES
FINANCIAL AID
UNIVERSITY AFFILIATIONS
PLYMOUTH STATE
UNIVERSITY AFFILIATION
RESOURCES & SERVICES
CENTER FOR TROPICAL
DISEASES
STUDENT GOVERNMENT
AND CLUBS
NEWS AND EVENTS
CAREERS AT AUA
SPEAKING INVITATION TO
HOSPITAL ADMINISTRATORS
IMAGE GALLERY

# From the Vice President

As the new Vice President of Academic Affairs and Executive Dean, it is my honor to serve with the distinguished administration of the American University of Antigua, one of the finest medical institutions in the Caribbean.

With our new campus now open, students and faculty have access to the most technodigically modern medical education facilities. Campus-wide wireless Internet access, Blackboard Learn and Connect, and our new lecture capture service, Echo360, are only a few of the amenities AUA provides to ensure that our students receive the most comprehensive educational experience possible.

Even though the new campus is much larger than our old one, we have not forgotten what matters most our students. We have built every room at the new campus with small class sizes in mind, which allows for greater interaction between our students and our faculty. Our hospital-integrated curriculum is modeled after those of U.S. medical schools and allows our students to interact with patients from the first semester onward. Our faculty prepares every student to succeed on the National Board of Medical Examiners (NBME) Shelf Exams and the United States Medical Licensing Exam (USMLE).

Our illustrious faculty's research has helped advance medical sciences throughout the world. Dr. Segun Dipeolu, the Chair of the Microbiology Department, is a Fulbright Scholar whose research on Dengue Fever has been recognized by the World Health Organization (WHO). Dr. Steven Glasser, the Chair of the Neuroscience Department, has won numerous teaching awards and helped AUA become the first international medical school to administer a web-based NBME exam.

Ultimately, AUA provides each of our students with the tools necessary to succeed in the evolving field of health care, and our success hinges on that of our students.

I look forward to seeing you on campus.

Done





From the Vice President | The American University of Antigua - Windows Internet Explorer

http://www.auamed.org/from-vice-president

File   Edit   View   Favorites   Tools   Help

DISEASES

STUDENT GOVERNMENT AND CLUBS

NEWS AND EVENTS

CAREERS AT AUA

SPEAKING INVITATION TO HOSPITAL ADMINISTRATORS

IMAGE GALLERY

Our hospital integrated curriculum is modeled after U.S. medical school curricula and provides the students the opportunity to interact with patients from the very first semester onward.

The state of the art educational equipment in conjunction with the superior library facilities and campus wide wireless Internet access supply the students with the resources to advance throughout the challenging academic program.

National Board of Medical Examiners (NBME) Shelf Exams are used as final exams for the Basic Sciences courses, ensuring that the students meet U.S. medical education requirements.

AUA is internationally recognized for its students' and faculty's commitment to research in various areas ranging from Anatomy to Microbiology.

Our faculty is extremely proud of the students' sincere dedication to their medical education and of their concern for the multitude of university's community outreach programs.

Students and faculty are looking forward to the completion of our New Campus Project.

We hope that you are interested in being educated in our institution and discovering the anatomy of your dream.

I look forward to seeing you on campus.

Peter Bell, MD
Vice President Academic Affairs & Executive Dean, Antigua Campus

Exhibit 11 pg 2

**From:** Deneen Nicks (NICKSD@trinity-health.org)
**To:** elizabethbulat@comcast.com; m.hamed01@gmail.com; vishal.doctor@gmail.com;
lakedra_evans@hotmail.com; n_hampel@hotmail.com; ozuomba@hotmail.com;
chahalparas@yahoo.com; jaya18_221@yahoo.com; nicokristen@yahoo.com;
steve_l_woodward@yahoo.com;
**Date:** Mon, October 8, 2007 8:10:17 AM
**Cc:** YANEZJ@trinity-health.org;
**Subject:** Revised Lecture Schedule - Pontiac Site

** High Priority **

Good Morning,

Please see the attached revised lecture schedule for Pontiac.  These changes were given to us by AUA, effective Today.

Sincerely,
Deneen Nicks
Coordinator, Student Services
St. Joseph Mercy Oakland Hospital
Pontiac, Michigan

Exhibit 12
Pg 1

*University of Antigua School of Medicine*
*Course on Physical Diagnosis (September 06 - December 12, 2007)*
*Site:   St. Joseph Mercy Oakland Hospital*
*Pontiac, Michigan*

**SCHEDULE OF LECTURES, PRACTICAL SESSIONS AND QUIZZES**

| Date | Hour | Activity | Theme | Lecturer |
|------|------|----------|-------|----------|
| 09/14 | 8:00-9:00A | Dept. of Medicine | Journal Club | Conf. Rm. E |
| 9/14 | 9:00-11:00A | Lecture | Clinical History | Dr. Yanez |
| 9/14 | 11:00-1:00N | Lecture/Practice | Vital Signs and Practice | Dr. Yanez |
| 9/21 | 8:00-9:00 | Dept. of Medicine | Grand Rounds | Conf. Rm. E |
| 9/21 | 900 – 11 00A | Lecture/Practice | HENT Exam and Practice | Dr. Nicola |
| 9/21 | 11:00-1:00 N | Lecture/Practice | Lungs, Respiratory Syst Exam | Dr. Khan |
| 9/28 | 8:00-9:00A | Dept. of Medicine | Morbidity & Mortality | Conf. Rm. E |
| 9/28 | 9:00-10:00A | Lecture | Imaging (I) | Dr. Saber |
| 9/28 | 10:00-11:00A | Lecture | Heart, CV system Exam (I) | Dr. Diaczok |
| 9/28 | 11:00-12:00N | Presentation | Two-minutes case # 1 | Dr. Yanez |
| 9/28 | 12:00-1:00N | Quizzes 1,2 | Clinical HX, VS, Respiratory | Staff |
| 10/5 | 7:00-8:00A | Lecture | Ethics | Conf. Rm. E |
| 10/5 | 9:00-11:00 | Lecture | Heart, CV System Exam (II) | Dr. Yanez |
| 10/5 | 11:00-12 N | Practice | Heart, CV System Exam | Staff |
| 10/12 | 8:00-9:00 A | Dept. of Medicine | Grand Rounds | Conf. Rm. |
| 10/12 | 9:00-10:00A | Practice | Heart, CV System Exam | Staff |
| 10/12 | 10:00-11:00 A | Lecture | Abdomen, GI System | Dr. Nicola |
| 10/12 | 11:00-12 N | Practice | Heart, CV System Exam | Dr. Yanez |

**Revised 10/08/07 (Per: AUA)**

Exhibit 12
Pg 2

*University of Antigua School of Medicine*
*Course on Physical Diagnosis (September 06 - December 12, 2007)*
*Site:   St. Joseph Mercy Oakland Hospital*
*Pontiac, Michigan*

### SCHEDULE OF LECTURES, PRACTICAL SESSIONS AND QUIZZES

| 10/12 | 12:00 - 2:00 | Quiz #3 | Lungs, Respiratory | Staff |
|---|---|---|---|---|
| 10/19 | 8:00-9:00 A | Dept. Of Medicine | Grand Rounds | Conf. Rm. |
| 10/19 | 9:00-10:00A | Lecture | Eyes Exam | Dr. Khan |
| 10/19 | 10:00-11:00 A | Presentation | Two-minutes Case # 2 | Dr. Yanez |
| 10/19 | 11:00-12:00N | Lecture | Hemopoietic, Lymphopoietic | Dr. Nicola |
| 10/19 | 12:00-1:00N | Quiz 4 | Heart, CV System Exam | Staff |
| 10/26 | 8:00-9:00 A | Dept. Of Medicine | Grand Rounds | Conf. Rm. |
| 10/26 | 9:00-10:00A | Lecture | Skin Exam | Dr. Khan |
| 10/26 | 10:00-11:00A | Lecture | Acute Abdomen | Dr. Nicola |
| 10/26 | 11:00-12 N | Quiz 5 | Imaging | Staff |
| 11/2 | 7:00-8:00A | Lecture | Ethics | Conf. Rm. E |
| 11/2 | 8:00-9:00 A | Dept of Medicine | Grand Rounds | Conf. Rm. |
| 11/2 | 9:00-10:00 A | Lecture | Kidney, GU System Exam | Dr. Yanez |
| 11/2 | 10:00-11:00 A | Lecture | Neurological Exam | Dr. Nicola |
| 11/2 | 11:00-12:00N | Practice | Neurological Exam | Dr. Nicola |
| 11/2 | 12:00-1:00 N | Quizzes 6,7 | Eyes, Skin | Staff |
| 11/9 | 8:00-9:00 A | Dept. of Medicine | Grand Rounds | Conf. Rm. |
| 11/9 | 9:00-11:00 A | Lecture/Practice | Breast Exam, GYN/ GU | Dr. Yanez |
| | NO Scheduled Quizzes | | | |
| 11/16 | 8:00-9:00 A | Dept. of Medicine | Grand Rounds | Conf. Rm. |
| 11/16 | 9:00-10:00A | Lecture | Psychiatry Exam | Dr. Yanez |

**Revised 10/08/07 (Per: AUA)**

Exhibit 12
Pg 3

University of Antigua School of Medicine
Course on Physical Diagnosis (September 06 - December 12, 2007)
Site:   St. Joseph Mercy Oakland Hospital
Pontiac, Michigan

## SCHEDULE OF LECTURES, PRACTICAL SESSIONS AND QUIZZES

| 11/16 | 10:00-11:00 A | Lecture | Musculo-skeletal exam | Dr. Khan |
|-------|---------------|---------|----------------------|----------|
| 11/16 | 11:00-12:00 A | Practice | Musculo-skeletal Exam | Dr.Khan |
| 11/16 | 12:00-1:00 N | Lecture | OB/Gyn Exam / Practice | Dr. Yanez |
| 11/16 | 1:00-2:00 N | Quiz  9,10 | Urology, Neurology | Staff |
| 11/19 | 9:00-10:00 A | Lecture | Pediatric Exam | Dr. Yanez |
| 11/19 | 10:00-12:00 N | Lecture | Health Maintenance / Stats | Dr. Malloy |
| 11/19 | 12:00-1:30 N | Quiz 11,12,13,14 | M-S, Psy, Ped, OB/GYN | Staff |
| 11/30 | 8:00-9:00 | Dept of Medicine | Grand Rounds | Conf. Rm. |
| 11/30 | 9:00-11:00 A | Presentation | Two-minutes # 3 | Dr. Yanez |
| 11/30 | 11:00-12:00 N | Quiz # 15, 16 | Hemopoietic, Lymph, H Maint | Staff |
| 11/30 | 12:00-1:00 N | | Portfolio due | Staff |
| 12/7 | 8:00-12 N | Final written exam | Textbook, lectures, Practices | Staff |
| 12/3-12/7 | By appointment with preceptors | Final Practical Exam | Examination of a patient, write-up, case presentation | Preceptors |
| 12/11 | 2:00- 7:00 P | Exam | Shelf-like | On-line |
| 12/14 | 8:00-12 N | Exam | Shelf | Staff |

**( Lectures are in Conference Room C )

**( Lecture on 11/16/07 will be in Conference Room D )

Ex.6, ¶ 12
Pg 4

Revised 10/08/07 (Per: AUA)

**American University of Antigua - KMC**

**Statement of Account**

c/o GCLR LLC
Phone: 212.661.8899 option 5
2 Wall Street, 10th Floor
New York, NY 10005

| Date |
|------|
| 3/19/2009 |

| Bill To |
|---------|
| Steven Woodward |
| 7211 Brittwood Lane |
| Flint, MI 48507 |

This statement reflects your balance from January 2009.  If you are on a payment plan your last payment was due on the first of March or a 1.25% late fee will be assessed to your outstanding balance.  If you have already made your payment please disregard this notice. If your account is not paid in full you will not be allowed to register for the May semester, receive grades or a transcript.  If you feel this bill is in error please contact the Bursar office @ 212-661-8899 option #5.

| __Payment is due upon receipt__ | Amount Due |
|---|---|
| | $-5,681.00 |

| Date | Item | Description | Amount | Balance |
|------|------|-------------|--------|---------|
| 08/20/2007 | | Balance forward | | 210.00 |
| 08/21/2007 | | PMT GL 9/5/07 to 4/25/08 1 of 2 | -20,681.00 | -20,471.00 |
| 08/30/2007 | | CHK #1578. Student Refund - Michigan | 8,933.00 | -11,538.00 |
| 09/01/2007 | 5th Semester | #BO 2. | 10,675.00 | -863.00 |
| 09/01/2007 | Admin Fee | #BO 2. | 175.00 | -688.00 |
| 09/01/2007 | Testing Fee | #BO 2. | 125.00 | -563.00 |
| 09/01/2007 | Insurance - Student | #BO 2. | 563.00 | 0.00 |
| 12/20/2007 | | PMT GL  09/05/2007 to 04/25/2008     2 of 3 | -15,000.00 | -15,000.00 |
| 03/01/2008 | | GENJRNL #5025. Disb. 2/5/08 GL 9/5/07 to 4/25/08 3 of 3 | -5,681.00 | -20,681.00 |
| 03/27/2008 | | CHK #1307. Student Refund-Home | 15,000.00 | -5,681.00 |
| 03/19/2009 | | Amount Due | | -5,681.00 |

*Exhibit 13*

http://us.mg1.mail.yahoo.com/dc/launch?freeacct=1&&.g:

**From:** Jeffrey Yanez (YANEZJ@trinity-health.org)
**To:** steve_l_woodward@yahoo.com;
**Date:** Mon, December 10, 2007 8:05:42 AM
**Cc:** MCCALLDY@trinity-health.org; ZONIAS@trinity-health.org;
**Subject:** test

Steve,

Due to testing irregularities, AUA will allow you a retake on the Vocabulary section on Tuesday between 3 and 4 PM. Please see Deneen for further details and arrangements. Please note that the test may look different and have new/different content?

You will need a total score of 560 out of 800 questions.  80% (640 questions) less the 10% curve = 560 questions

Exhibit 14

Scholar360

Page 1 of 1

Home | Profile | Blog | Contacts , Messages
PSS Reader | Calendar
My Classes | All Classes
My Communities | All Communities
My Grades | My Files | Digital Dropbox
Search | Help | Logout

## My Grades

| Item | Date | Available Points | Grade |
|---|---|---|---|
| AUA Online | | | |
| Final Grade: 71 | | | |
| Test - Final Exam - Block 4 (Dermatology, Imaging, Gyn, Psychiatry) | 2007-12-06 | 200 | 142 |
| Test - Final Exam - Block 2B (Opthalmology) | 2007-12-06 | 50 | 43 |
| Test - Final Exam - Block 2A (History and Physical Exam) | 2007-12-06 | 50 | 37 |
| Test - Final Exam - Block 2C (Vocabulary) | 2007-12-06 | 100 | 88 |
| Test - Final Exam - Block 3B (Hemopoietic/Lymphopoietic System) | 2007-12-05 | 50 | 21 |
| Test - Final Exam - Block 3A (Cardiovascular) | 2007-12-05 | 100 | 47 |
| Test - Final Exam - Block 3C (GI System) | 2007-12-05 | 50 | 37 |
| Test - Final Exam - Block 1B (ENT) | 2007-12-03 | 100 | 71 |
| Test - Final Exam - Block 1A (Respiratory) | 2007-12-03 | 100 | 82 |

**Total Points Possible: 800**
**Total Points Earned: 568**
**Current Average: 71**

Terms of Service | Help | Support



DEPOSITION
EXHIBIT

Exhibit 15

2:10-cv-10978-PJD-MJH   Doc # 27-1   Filed 08/06/10   Pg 6 of 21   Pg ID 504

http://usmg1.mail.yahoo.com/dc/launch?freeacct=1&t.g

**From:** Paul J. Nicoletti (paul@nicoletti-associates.com)
**To:** billcain@comcast.net; steve_l_woodward@yahoo.com; yanezj@trinity-health.org; nssimon@auamed.org; vhrehorovich@auamed.org; zonias@trinity-health.org;
**Date:** Thu, December 20, 2007 6:22:22 PM
**Cc:**
**Subject:** Steven Woodward v. Trinity Health-Michigan

Enclosed please find a copy of the civil action that was filed this afternoon. I would hope that this matter could be resolved without the need for costly and protracted litigation.


NICOLETTI & ASSOCIATES, P.C.
Paul J. Nicoletti
39520 Woodward Avenue, Suite 200
Bloomfield Hills, Michigan 48304
(248) 203-7800
Fax (248) 203-7801

* * * * * * * * * *

IRS Circular 230 Disclosure:  To ensure compliance with requirements imposed by the Internal Revenue Service, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any person for the purpose of (i) avoiding tax-related penalties or (ii) promoting, marketing or recommending to another person any transaction or matter addressed in this communication.

* * * * * * * * * *

The information contained in this message is intended only for the personal and confidential use of the designated recipients named above.  This message may be an attorney-client communication, and as such would be privileged and confidential.  If the reader of this message is not the intended recipient or any agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone and destroy the original message.  Thank you.


No virus found in this outgoing message.
Checked by AVG.
Version: 7.5.503 / Virus Database: 269.17.4/1189 - Release Date: 12/18/2007 9:40 PM


Exhibit 16

of 1                                                                                          8/1/2010 10:05 AM

| | |
|---|---|
| **From:** | <jecmpark@aol.com> |
| **To:** | <shileola_11@yahoo.com>; <nisha.abraham@gmail.com>; <skbanergt@yahoo.com>; <mbuzz20@hotmail.com>; <eurowillo@hotmail.com>; <jagrew@gmail.com>; <jakeiknight@yahoo.com>; <bhelmer68@hotmail.com>; <jenellejanet@yahoo.com>; <okey@excite.com>; <merlynnj@gmail.com>; <shamz1000@hotmail.com>; <simkapur@hotmail.com>; <Jkim246@aol.com>; <miknom79@yahoo.com>; <anirbann@hotmail.com>; <rasmansolo@yahoo.com>; <ifyboy_us@yahoo.com>; <greeningwsu@yahoo.com>; <tammalarice@netscape.net>; <funjolt@yahoo.com>; <ninashojayi@gmail.com>; <dsinha1@gmail.com>; <priya.umapathi@yahoo.com> |
| **Cc:** | <yanezi@trinity-health.org>; <vbrehorovich@auamed.org>; <nssimon@auamed.org> |
| **Sent:** | Thursday, December 20, 2007 8:53 PM |
| **Subject:** | scholar360 |

Hi class !:

I hope that now you are resting and getting ready for your clinical rotations:

For those of you who took the Final exam using Scholar360, I need you to e-mail me your evaluation of that Program.  Exclude from it the vocabulary portion that was not good because we did not have the time to correct it.

Include in your evaluation how did you like the format, grade of difficulty to understand and answer questions, the format and clarity of screens, including images and graphics, the speed with which you received the scores and any other aspect that you like to talk about.  Finally, your suggestions about possible improvements.

JEC

---

More new features than ever. Check out the new AOL Mail!

Exhibit 17

Print               2:10-cv-10978-PJD-MJH   Doc # 27-1   Filed 08/06/10   Pg 8 of 21   Pg ID 506
                                                          http://us.mg1.mail.yahoo.com/dc/launch?freeacct=1&& .g

**From:** Woodward, Steven (stevenw@auamed.net)
**To:** steve_l_woodward@yahoo.com;
**Date:** Sat, January 12, 2008 2:29:35 PM
**Cc:**
**Subject:** FW: Grade report for Steven Woodward


**From:** Registrar [mailto:registrar@AuaMed.org]
**Sent:** Sun 1/6/2008 3:03 PM
**To:** steve_l_woodward@yahoo.com
**Cc:** Woodward, Steven
**Subject:** Grade report for Steven Woodward

Dear Steven,

Attached is your grade report for the September - December 2007 period.


The attached report is in HTML format and should open with your default browser by double clicking on the attachment.

Exhibit 18
Pg 1

of 1                                                                                        8/1/2010 10:01 AM

# AMERICAN UNIVERSITY OF ANTIGUA COLLEGE OF MEDICINE
## KASTURBA MEDICAL COLLEGE / TWINNING PROGRAM

*Semester Grade Results*
January 6, 2008

**Student ID**

**53054   Woodward, Steven**

stevenw@students.auamed.net

steve_l_woodward@yahoo.com

Listed below are your September - December 2007 semester grades from The American University of Antigua, College of Medicine, as submitted to the Registrar's Office.

| Course | Grade | Shelf |
|---|---|---|
| 7000  Foundations of Clinical Medicine | F | |

The above grades are for reference only.
If you think they are not correct, please contact the Course Director.

Registrar's Office
Phone: 268-481-8886
Fax: 268-481-8885

Administrative Office: Two Wall Street 10th Fl, New York, NY, 10005
Antigua Campus: Jasmine Court, Friar's Hill Road, Woods, Antigua, W.I.

Exhibit 18
Pg 2

AMERICAN
UNIVERSITY
OF ANTIGUA
COLLEGE OF
MEDICINE

KASTURBA
MEDICAL
COLLEGE

*(?) Greater Caribbean Learning Resources*

**SEMESTER V: PRELIMINARY CLINICAL TRAINING**
SITE __Pontiac, Michigan__ - FALL 2007
**STUDENT EVALUATION - OUTPATIENT ROTATION**

DEPOSITION
EXHIBIT
8
McCall

| Student's Name: Steven Woodward | Preceptor's Name: Dr. Breitenbach | Dates: From: 10/29/07 - To: 11/30/07 |
|---|---|---|

## 1) PLEASE, RATE THE STUDENT FROM A TO F:

**1.0**
**Attendance:** Attended scheduled sessions at your Office

| F | C | B | A | RATE |
|---|---|---|---|---|
| (Missed 3 or more sessions in 6 weeks) | (Missed 2 sessions in 6 weeks) | (Missed 1 session in 6 weeks) | (Attended all scheduled sessions) | **A** |

## 2) PLEASE, GIVE THE STUDENT A PERCENTAGE SCORE AS FOLLOWS:

| | |
|---|---|
| < 60% | Substandard |
| 60 - <70% | Borderline adequate |
| 70 - <80% | Competent |
| 80 - <90% | Superior |
| 90 - 100% | Outstanding |

**2.1**
**Medical Knowledge:** Demonstrated appropriate knowledge of basic sciences and was able to apply it to the clinical situations he/she encountered.
SCORE: **79**

**2.2**
**Attitude:** Displayed initiative and positive disposition to learn, cooperative and constructive attitude toward the members of team or Group that he/she was assigned to (As opposite to being negative and conflictive)
SCORE: **95**

**2.3**
**Learning Skills:** Gradually started to master proper skills concerning elaboration of clinical history and examination of the different body systems, analyses of the results, and formulation of working diagnosis.
SCORE: **95**

**2.4**
**Communication Skills:** Demonstrates listening skills, interchange medically related information with other members of the team, shows progress in concisely and effectively presenting clinical cases both in written and verbal form.
SCORE: **95**

**2.5**
**Professionalism:** a) Demonstrated commitment to professional development and solid ethical principles and sensitivity to patients/family and peer diversity; b) showed compassion, respect and honesty; c) Accepted responsibility for his/her acts.
SCORE: **95**

Exhibit 19
Pg 1

STUDENT EVALUATION - OUTPATIENT ROTATION                                    **Page 2**

3. - General observations on the student's performance and suggestions for improvement:

(Very Computer Literate)

(Excellent Student.)

4. - Please, fill the following portion for the students rotating at your Office from March 1 through March 29, 2007.

The student has mastered the following skills:

| < 60% | Substandard |
| 60 - <70% | Borderline adequate |
| 70 - <80% | Competent |
| 80 - <90% | Superior |
| 90 - 100% | Outstanding |

| Skills | Score | Pointed Suggestions for improvement |
|---|---|---|
| A) Elaboration of solid comprehensive clinical history | 90 | |
| B) Elaboration of focused clinical History | 90 | |
| a) General examination of the eyes | 90 | |
| b) Examination of HENT and Neck | 90 | |
| c) Examination of Chest and Lungs | 90 | |
| d) Examination of Heart and CV System | 90 | |
| e) Examination of Abdomen | 90 | |
| f) Examination of Breast | 80 | |
| g) Examination of Female GU System | | Not Done This Office |
| h) Examination of Male GU System | 80 | |
| i) Examination of Nervous System | 80 | |
| j) Gross examination of Mental Condition | 80 | |
| k) Examination of Musculoskeletal System | 80 | |
| l) Examination of Skin | 80 | |
| C) Overall skill to perform comprehensive physical examination | 90 | |
| D) Overall skill to perform focused Physical examination | 90 | |

4. - Evaluation discussed with student:

_____   11/29/07            _____   11/29/07
Preceptor's Signature            Date            Student's Signature            Date
                                                 Form DOCS- EVALUATION 05 - 09/01/07 JEC

Exhibit 19
Pg 2



AMERICAN
UNIVERSITY
OF ANTIGUA
COLLEGE OF
MEDICINE

KASTURBA
MEDI...
COL...

DEPOSITION
EXHIBIT
9
McCall

*C/O Greater Caribbean Learning Resource*

SEMESTER V: PRELIMINARY CLINICAL TRAINING

## St. Joseph Mercy Oakland Hospital, Pontiac Michigan – Fall 2007

### IN-PATIENT STUDENT EVALUATION - TEAM ____

| Student's Name: **Steven Woodward** | Preceptor's Name: **D. Malloy, M.D.** |
|---|---|

### 1) PLEASE, RATE THE STUDENT FROM A TO F:

**1.0**
**Attendance: Attended academic sessions:** including: a) morning rounds, b) morning case presentations, c) questions/discussion, d) ward rounds, e) morning lectures, f) grand rounds

| F | B | C | A | **RATE** |
|---|---|---|---|---|
| (Missed 3 or more sessions in 2 weeks) | (Missed 2 sessions in 2 weeks) | (Missed 1 session in 2 weeks) | (Attended all scheduled sessions) | A+ |

### 2) PLEASE, GIVE THE STUDENT A PERCENTAGE SCORE AS FOLLOWS:

|  |  |
|---|---|
| <60% | Substandard |
| 60 - <70% | Borderline adequate |
| 70 - <80% | Competent |
| 80 - <90% | Superior |
| 90 - 100% | Outstanding |

**2.1**
**Medical Knowledge:** Demonstrated appropriate knowledge of basic sciences and was able to apply it to the clinical situations he/she encountered..

**SCORE** 80

**2.2**
**Attitude:** Displayed initiative and positive disposition to learn, cooperative and constructive attitude toward the members of team or Group that he/she was assigned to (As opposite to being negative and conflictive)

**SCORE** 90

**2.3**
**Learning Skills:** Gradually started to master proper skills concerning elaboration of clinical history and examination of the different body systems, analyses of the results, and formulation of working diagnosis.

**SCORE** 90

**2.4**
**Communication Skills:** Demonstrates listening skills, interchange medically related information with other members of the team, shows progress in concisely and effectively presenting clinical cases both in written and verbal form.

**SCORE** 90

**2.5**
**Professionalism:** a) Demonstrated commitment to professional development and solid ethical principles and sensitivity to patients/family and peer diversity; b) showed compassion, respect and honesty; c) Accepted responsibility for his/her acts.

**SCORE** 90

FORM DOCS_EVALUATION.015

*Exhibit 20 Pg1*

Page 2

**2.6**

**Suggestions for Improvement**

Evaluation reviewed with the student:

Preceptor                    Date            Student                    Date
12/5/01                                        12/5/07

FORM DOCS  EVALUATION.OLS

*Exhibit 20 Pg 2*

American University of ... College of Medicine
V Semester - Preliminary Clinical Training
Pontiac Michigan - St. Joseph Mercy Oakland

## Final Grades by Component - Fall 2007

| | Code | Attendance 10% | | Prac Session 5% | | Oral Ex / Verbal Presentation 5% | | Portfolio 10% | | Quizzes 35% | | Written Ex 20% | | | Practical Exam 10% | | Final Grade | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Score | PT | Score | PT | Score | PT | Score | PT | Score | PT | Score | Curv | PT | Score | PT | Final | Adjusted |
| 1 | Hampel, Nicola | 82 | 9.2 | 92 | 4.6 | 100 | 5.0 | 100 | 10.0 | 68 | 23.9 | 76 | 78 | 18.4 | 80 | 8.0 | C | |
| 2 | Jayadeep, Simbla | 100 | 10.0 | 100 | 5.0 | 100 | 5.0 | 100 | 10.0 | 83 | 24.4 | 87 | 82 | 18.8 | 93 | 9.3 | B | |
| 3 | Ozuomba, Michael | 100 | 10.0 | 80 | 4.0 | 100 | 5.0 | 100 | 10.0 | 82 | 21.6 | 75 | 83 | 15.0 | 80 | 8.0 | C(-) | (1) |
| 4 | Chhieda, Vishal | 100 | 10.0 | 80 | 4.2 | 100 | 5.0 | 100 | 10.0 | 80 | 20.1 | 84 | 84 | 16.8 | 86 | 8.5 | C | |
| 5 | Bulet, Elizabeth | 24.5 | 10.0 | 96 | 3.8 | 88 | 4.3 | 100 | 10.0 | 80 | 19.8 | 74 | 74 | 14.8 | 80 | 8.0 | F | |
| 6 | Evans, Lekedra | 100 | 10.0 | 100 | 5.0 | 96 | 4.8 | 100 | 10.0 | 70 | 21.7 | 86 | 80 | 16.0 | 77 | 7.5 | F | (1) |
| 7 | Woodward, Steve | 100 | 10.0 | 100 | 5.0 | 96 | 4.8 | 100 | 10.0 | 86 | 24.4 | 84 | 84 | 17.6 | 85 | 8.5 | B | |
| 8 | Paras, Chehal | 100 | 10.0 | 100 | 5.0 | 96 | 4.8 | 100 | 10.0 | 83 | 22.6 | 73 | 83 | 15.4 | 85 | 8.5 | C(-) | (1) |
| 9 | Hamed, Mousa | 100 | 10.0 | 100 | 5.0 | 100 | 5.0 | 100 | 10.0 | 82 | 21.8 | 75 | 75 | 15.0 | 80 | 8.0 | B | (3) |
| 10 | Kristen, Nico | 100 | 10.0 | 100 | 5.0 | 100 | 5.0 | 100 | 10.0 | 88 | 20.4 | 78 | 82 | 16.4 | 83 | 8.0 | B | (4) |

(1) Failed Final Exam. Remedial score 78. Final Grade: C(-)
(2) Failed Final Exam. Has not taken remedial
(3) Failed Final Exam. Did take remedial and failed
(4) Did not have OP rotation. Total score / 95
Did not take OP rotation. Total Score / 95

- A certified nurse aide (CNA) in Colorado was excluded for 25 years as a result of being convicted for sexual assault against an elderly nursing home patient who suffered from Alzheimer's. The aide was sentenced to serve 15 years-to-life in prison.

- An Oklahoma pediatrician was excluded for 50 years based on his conviction for abuse of minor patients. The physician confessed to abusing 18 children, all under the age of 16, over a period that spanned 20 years.

- A DME sales representative in Florida was excluded for 28 years after his conviction for participating in a scheme to bill Medicare for millions of dollars in medically unnecessary DME items.

- A South Carolina physician was excluded for 26 years after his conviction for his part in a scheme to sell prescriptions for controlled substances such as OxyContin and Percocet.

## Other Administrative Enforcement Actions – Civil Monetary Penalties

The Office of Inspector General has authority to impose civil monetary penalties (CMPs) against providers and suppliers who knowingly submit false claims to the government, who participate in unlawful patient referral or kickback schemes, who fail to appropriately treat or refer patients who present at hospital emergency rooms, or who engage in other activities prescribed in statute. The HHS/OIG has stepped up its affirmative enforcement actions under these authorities. The PharMerica case discussed previously is one example. Others are:

- The Visiting Nurse Association of Washington, D.C. (now MedStar Health Visiting Nurse Association) and its home office, Visiting Nurse Association, Inc., agreed to pay more than $1.3 million to resolve its liability for allegedly filing Medicare cost reports containing services that were not provided as claimed. The inquiry involved alleged transactions with related third parties that were not disclosed or documented. The company also entered a five-year CIA.

- A former hospital Chief Executive Officer (CEO) in Nebraska entered an agreement with the HHS/OIG to resolve his potential liability for allegedly paying kickbacks to a physician in the form of loan guarantees, consultant fees and discounts in exchange for referral of Medicare business. The CEO, too, received annual bonuses that allegedly were based on the referrals. The hospital previously entered a settlement agreement with the United States to resolve potential liability under the FCA for the same alleged conduct.

- St. Joseph Mercy-Oakland Hospital in Michigan agreed to pay $4 million for allegedly violating the anti-kickback statute and Stark law in connection with financial arrangements between the hospital and more than a dozen physician groups. The hospital voluntarily disclosed the potential violations under the HHS/OIG's "Provider Self-Disclosure Protocol."





Exhibit 23

Roll Call
News

HOME   CONGRESS.ORG   CQ POLITICS   CQ.COM   RCJOBS

NEWS   OPINION   POLITICS   LOBBYING   AROUND THE HILL   INVESTIGATIONS   SPORTS   SPECIAL REPORTS
HOUSE   SENATE   WHITE HOUSE   HEARD ON THE HILL   THE ROSE GARDEN   ROAD MAP   LATEST PAPER

*An educated world is a better world.*

University of Phoenix

# Former Payne Intern Guilty of Visa Fraud

By Elizabeth Brotherton
Roll Call Staff
July 5 2007  12 a.m

A former intern for Rep. Donald Payne (D-N.J.) pleaded guilty Thursday to illegally using the Congressman's stationery and stamped signature in an attempt to obtain U.S. visas for 11 people from Cameroon.

LOGIN

Username

Password

NOT A SUBSCRIBER

Subscribe to Print and/or Online
Click Here

Hill Users have Free access.

SIGN IN

Username

Forgot your password?   Subscribe

Learn More

Most Popular                Most E-Mailed

• Biden: Pelosi Most Powerful Person in U.S. Politics — Except Obama
• Democratic Caveat Races Heat Up
• Obama Salonia Berwick Nomination to Senate

GET THE REAL FACTS

BOEING

KC-X NewGen Tanker

DEPOSITION EXHIBIT
Yanez   2-3-09

Ex. 6. i. 24

# University of Antigua School of Medicine
## Fifth Semester - Fall 2007
### SCHEDULE OF CLINICAL ROTATIONS
SITE:

| # | Students name | e-mail | SEP 10 | SEP 17 | SEP 24 | OCT 1 | OCT 8 | OCT 15 | OCT 22 | OCT 29 | NOV 5 | NOV 12 | NOV 19 | NOV 26 | DEC 3 | DEC 10 | DEC 17 |
|---|---------------|--------|--------|--------|--------|-------|-------|--------|--------|--------|-------|--------|--------|--------|-------|--------|--------|
| 1 | Nicola Hampel | (illegible) | K | K | K | K | K | EM | K | C | C | C | C | C | PC | S | E |
| 2 | Jayadeep Sibia | (illegible) | K | K | K | K | K | K | EM | C | C | C | C | N | PC | S | E |
| 3 | Michael Ozuomba | (illegible) | N | N | N | N | N | K | K | EM | N | A1 | A1 | N | PC | S | E |
| 4 | Vishal Chheda | (illegible) | N | N | N | N | N | A1 | A1 | A1 | A1 | A1 | A1 | N | PC | S | E |
| 5 | Elizabeth Bulat | (illegible) | C | C | C | C | C | C | H | H | H | H | H | EM | PC | S | E |
| 6 | Lekedra Evans | (illegible) | C | C | C | C | C | H | H | EM | H | EM | H | H | PC | S | E |
| 7 | Steven Woodward | (illegible) | EM | EM | M | M | M | M | H | M | EM | A2 | A2 | A2 | PC | S | E |
| 8 | Paras Chahal | (illegible) | M | EM | M | M | M | M | M | M | A2 | A2 | A2 | A2 | PC | S | E |
| 9 | Mousa Hamed | (illegible) | D | D | D | EM | D | D | D | D | A3 | A3 | A3 | A3 | PC | S | E |
| 10 | Nico Kristen | (illegible) | D | D | D | D | D | D | D | D | A3 | A3 | A3 | A3 | PC | S | E |

## KEY

| Code | | Duration |
|------|---|----------|
| EM - Emergency Medicine | | (1 week) |
| K - Dr. Khan | | (Inpatient Team - 6 weeks) |
| M - Dr. Malloy | | (Inpatient Team - 6 weeks) |
| N - Dr. Nicola | | (Inpatient Team - 6 weeks) |
| H - Dr. Hodarnau | | (Inpatient Team - 6 weeks) |
| D - Dr. Diaczok | | (Inpatient Team - 6 weeks) |
| C - Clinic - Dr. Yanez/Dr. Lamb | | (5 weeks) |
| A1 - Dr. Govolia | | (Ambulatory Office - 5 weeks) |
| A2 - Dr. Breitenbach | | (Ambulatory Office - 5 weeks) |
| A3 - Dr. I. Mansoor / F. Mansour | | (Ambulatory Office - 5 weeks) |
| PC - Completion of Student Portfolio | | |
| S - Study Time | | |
| E - Exam (shelf) | | |

http://us.mg1.mail.yahoo.com/dc/launch?.gx=1&.rand=fpbap4i6csm

**From:** Deneen Nicks (NICKSD@trinity-health.org)
**To:** elizabethbulat@comcast.net; m.hamed01@gmail.com; vishal.doctor@gmail.com;
lakedra_evans@hotmail.com; n_hampel@hotmail.com; ozuomba@hotmail.com;
chahalparas@yahoo.com; jaya18_221@yahoo.com; nicokristen@yahoo.com;
steve_l_woodward@yahoo.com;
**Date:** Wed, September 12, 2007 3:15:13 PM
**Cc:**
**Subject:** 5th Semester

Good Afternoon,

You should report tomorrow at 8:00 to the Medical Education Department.  You will need to see me first, so I can give out the following information:

Schedules
Senior Beeper #'s
Lecture Schedule
Contact Information
Wireless Internet Information
Badges

Also, please be mindful to have your documents with you.  I am leaving for the day and I will see you in the Morning.

Sincerely,
Deneen Nicks
Coordinator, Student Services
St. Joseph Mercy Oakland Hospital
Pontiac, Michigan

*Exhibit 25*

| | By appointment | Final practical exam | |
| | Four hours | Shelf-like Exam on line (3 h) | |
| | Four hours | Shelf Exam | |

### D   Clinical and Basic Sciences Correlation Course Tests - Schedule

| Test No. | Subject | No Q ~ | Date Posted | Date due |
|---|---|---|---|---|
| 001 | 1.00 Biochemistry and Molecular Biology<br>1.01 Gene Expression: DNA Structure, Replication and Exchange | 50 | 09/07 | 9/12 |
| 002 | 1.02 Gene Expression: Translation | 20 | 09/07 | 9/14 |
| 003 | 1.03  Structure and Function of Proteins; Energy Metabolism; Metabolic pathways of small molecules and associated diseases | 80<br>35 | 09/07<br>09/07 | 9/16<br>9/17 |
| 004 | 1.04  Biosynthesis and degradation of macromolecules and associated abnormalities; Carbohydrates, Bioenergetics | 50 | 09/07 | 9/18 |
| 005 | 1.05 Lipids, Cell communication, Specific Functions of Proteins and Disorders of Metabolism. | 35 | 09/07 | 9/19 |
| 006 | 1.06 Enzymes; Individual hormones; Cellular Metabolism and energy Production; Water and pH, biomolecular and biochemical methods | 35 | 09/07 | 9/21 |
| 007 | 2.00  Biology of Cells | 26 | 09/07 | 9/22 |
| 008 | 3.00   Human development and Genetics<br>3.01  Genetics 1 | 65 | 09/07 | 9/23 |
| 009 | 3.02  Genetics 2 | 65 | 09/07 | 9/23 |
| 010 | 3.04  Clinical Genetics 1 | 55 | 09/07 | 9/24 |
| 011 | 3.06  Clinical genetics 2 | 55 | 09/07 | 9/25 |
| 012 | 4.00  Biology of Tissues and responses to diseases | 40 | 09/07 | 9/28 |
| 013 | 5.00 Psychosocial, cultural, environmental influences | 50 | 09/07 | 9/29 |
| 014 | 6.00 Multisystem Processes | 40 | 09/07 | 9/30 |
| 015 | 7.00 Pharmacodynamic and Phamacokinetic Processes | 40 | 09/07 | 9/30 |
| 016 | 8.00 Microbial Biology and Infection | | | |
| 017 | 8.01  Bacterial, fungal and viral diseases 1 | 40 | 09/07 | 10/01 |
| 018 | 8.02  Bacterial, fungal and viral diseases 2 | 45 | 09/07 | 10/02 |
| 019 | 8.03  Parasitic diseases | 40 | 09/07 | 10/04 |
| 020 | 8.04  Antimicrobials | 40 | 09/07 | 10/05 |
| 021 | 8.05  Mycobacteria, G (+) and G(-) Cocci | 40 | 09/07 | 10/06 |
| 022 | 8.06  Bacilli, Vibrio, Spirochetas and others | 80 | 09/07 | 10/09 |
| 023 | 9.00 Immune responses<br>9.01  Immune responses 1 | 50 | 09/07 | 10/11 |
| 024 | 9.02  Immune responses 2 | 50 | 09/07 | 10/12 |
| 025 | 9.03  Immunological disorders and Immunology | 40 | 09/07 | 10/13 |

Exhibit 27
PS1
8

| 026 | 10.00 Quantitative methods (Epidemiology and Statistics), Others | 80 | 09/07 | 10/15 |
| | 11.00 Hematopoietic, Lymphoreticular systems | | | |
| 027 | 11.01 Hematopoietic and LR Sytems 1 | 50 | 09/07 | 10/16 |
| 028 | 11.02 Hematopoietic and LR 2 | 45 | 09/07 | 10/18 |
| | 12.00 Nervous System | | | |
| 029 | 12.01 Nervous System 1 | 50 | 09/07 | 10/20 |
| 030 | 12.02 Nervous System 2 | 45 | 09/07 | 10/21 |
| 031 | 13.00 Skin | 25 | 09/07 | 10/23 |
| | 14.00 Musculo Skeletal System | | | |
| 032 | 14.01 Musculo Skeletal System 1 | 50 | 09/07 | 10/26 |
| 033 | 14.02 Musculo Skeletal System 2 | 50 | 09/07 | 10/28 |
| 034 | 14.03 Musculo Skeletal System 3 | 40 | 09/07 | 10/29 |
| 035 | 15.00 Respiratory System | 50 | 09/07 | 11/03 |
| | 16.00 Cardiovascular System | | | |
| 036 | 16.01 Cardiovascular System 1 | 50 | 09/07 | 11/03 |
| 037 | 16.02 Cardiovascular System 2 | 50 | 09/07 | 11/04 |
| 038 | 16.03 Cardiovascular System 3 | 50 | 09/07 | 11/07 |
| 039 | 17.00 Gastrointestinal System | 70 | 09/07 | 11/09 |
| 040 | 18.00 Renal and Urinary system | 50 | 09/07 | 11/10 |
| 041 | 19.00 Reproductive System | 65 | 09/07 | 11/12 |
| | 20.00 Endocrine System | | | |
| 042 | 20.01 Endocrine System 1 | 50 | 09/07 | 11/13 |
| 043 | 20.02 Endocrine System 2 | 50 | 09/07 | 11/14 |
| 044 | 21.03 Vignettes | 100 | 09/07 | 11/17 |
| 045 | 21.00 Shelf - Like (#1) | 50 | 09/17 | 12/05 |
| 046 | 21.00 Shelf - Like (#1) | 50 | 09/17 | 12/05 |
| 047 | 21.00 Shelf - Like (#1) | 50 | 09/17 | 12/05 |
| 048 | 21.00 Shelf - Like (#1) | 50 | 09/17 | 12/05 |

E   Clinical Rotations – Schedule

   Clinical rotations are identified as follows:

   Rotation in  hospital wards (H),  Emergency Department (ED), hospital
   outpatient facility (HO), preceptors office (PO)

   Rotation in outpatient specialty services (either hospital or preceptor's office)
   Internal Medicine (IM), Surgery (S), Pediatrics (Ped), GYN/OB,
   Psychiatry (PS))


Exhibit 27
Pg 2