ORIGINAL

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

Plaintiff,

V                                              CASE No.: 2:10-cv-10978-PJD-MJH
                                               Judge Patrick J. Duggan


STEVEN WOODWARD,

Defendant,


**Motion For Counterclaims**

FILED
2011 DEC 20 P 3 31
U.S. DIST COURT CLERK
EAST DIST. MICH
FLINT

1

**Motion For Counterclaims**

Now comes the Defendant, Mr. Steven Woodward's Counterclaim against the Plaintiff

American University of Antigua College of Medicine, AUA, and pursuant to Federal

Rule 13, Counterclaim and Crossclaim.

The Court's Opinion, Docket 184, proves the purpose of the Plaintiff to file Docket 1

Claims was an attempt to Shut-up Mr. Woodward by means of violating Mr.

Woodward's First Amendment, Civil Rights, forfeiture of Mr. Woodward's property and

electronic data, to blame Mr. Woodward for AUA's violation of Federal Law, 20 U.S.C.

1232g, FERPA, and to defraud Mr. Woodward.


**CLAIM 1: Breach of Contract**

**1.** Mr. Woodward requested his Student Records from AUA, via FR 34 Requests for

Documentation, **Exhibit 1**.

**2.** Mr. Woodward's Student Records were requested November 22, 2010 and due,

December 22, 2010.

**3.** AUA claims that they adhere to FERPA, Fed. Law 20 U.S.C. 1232g. Student

Handbook, **Exhibit 3**, page 25:

**"The University adheres to the mandates of the United States Family Educational**

**Rights and Privacy Act (FERPA): 1. The student has the right to inspect and review**

**his educational record within 45 days of the University's receiving a written request**

**for access."**

**A)** Mr. Woodward had to file "Motion to Compel" Docket 121, 03/24/2011, in-part for the production of his Student Records.  AUA did not produce Mr. Woodward's student records.

**B)** Court Order, Docket 124, ordered a response, including the Production of Mr. Woodward's Student Records.

**C)** Mr. Woodward had to file "Motion for Sanctions", 4/15/2011, because AUA failed to respond to Court Order, Docket 124, including the production of Mr. Woodward's student records.

**D)** The Court Order 174, again, Ordered AUA to respond to Mr. Woodward's request for production of documents.

**E)** AUA did not produce a response until **November 11, 2011**; nearly ONE YEAR after Mr. Woodward's initial request for the production of his student records.

**F)** Mr. Woodward tried to confer with the Plaintiff, December 2, 2011, concerning getting his student records, AUA failed to reply.  Mr. Woodward still does not have his student records.  AUA has not conferred with Mr. Woodward concerning the December 2, 2011 email, **Exhibit 2**.

**6.** Case Law confirms a Student Handbook is a contract between a college and their students. (Fellheimer v. Middlebury College)

**7.** AUA's own language contained in the first sentence demonstrates the existence of a contract between the college and their students.

**"The rules and regulations outlined here are binding"**, page 1, line 1 of the Student Handbook, August 2011, **Exhibit 3**.

**8.** AUA's Student Handbook, page 12, states: "**AUA/KMC students are encouraged to address any academic or non-academic concerns with their Professors, Faculty Advisors**" Lawsuit 2:10-cv-10978-PJD-MJH COUNT IV – DEFAMATION demonstrates how AUA violated their own Student Handbook, page 12, "**address any academic or non-academic concern**".

AUA does not abide to published contractual agreements. AUA, instead, blames a student, Mr. Woodward, for AUA's violation of their own policies for profit and reputation.

**9.** AUA's motives are clear as stated in their testimony April 19, 2010 page 14, line 17, **Exhibit 4**

"**disclosing the student information could cause the federal government to terminate funding**" and page 13, line 15 "**FERPA prohibits disclosure of students' information by the University itself. And has, as a consequence, the termination of federal funding, which my client does receive and some of the students receive benefit under this provision.**" and from Docket 1 page 5, number 22 "**AUA suffers irreparable injury and harm to its reputation each day that Mr. Woodward's appalling site is permitted to remain available.**"

**10.** Mr. Woodward suffers greatly, he has been denied basic and guaranteed Discovery in Federal Court. Mr. Woodward was forced to lose yet another occupation, relocate away from his home, emotional distress as documented in the Court Opinion, Docket 184, **Exhibit 5**, page 13, "**Woodward created the website exclusively as a means of expressing his anger**" and waste precious years off his life. Mr. Woodward requests damages for AUA's actions.

Mr. Woodward requests treble Punitive Damages which are just for the behavior of

AUA, a Medical College. Pure logic dictates AUA has violated FERPA, Federal Law

20U.S.C. 1232g; for which AUA blamed Mr. Woodward. AUA failed to safeguard

student records, causing irreparable damage to over 150 students, by their own testimony.

AUA has violated Mr. Woodward's FERPA PRIVACY RIGHTS (quote from their

Student Handbook), 20 U.S.C.1232g by failing to produce student records. AUA has

proven they hold no value in their own Student Handbook. AUA's unprofessional

behavior is insurmountable, yet their hypocrisy is so great, they've destroyed Mr.

Woodward's career and livelihood with the very words contained within their Student

Handbook. AUA has committed the most heinous act; blaming Mr. Woodward for their

violation of Federal Law, and their own Student Handbook; for AUA's profit, cover-up

safety concerns, and AUA's reputation. AUA has wasted a years of Mr. Woodward's life

due to their own failures and violations of Law and policies. For such an underhanded

act by an industry as a Medical Education is disgraceful and degrades the Medical

Industry as a whole. AUA violates their own advertisements of High Standards, Ethics,

and Quality Education. The violation of the production of Mr. Woodward's student

records before the United States Federal Court is just a prelude to how Mr. Woodward's

was treated by AUA's unjust behavior.


**CLAIM 2: Tort violation**

11. AUA's Student Handbook, **Exhibit 3**, states on page 25 "**PRIVACY RIGHTS The University adheres to the mandates of the United States Family Education Rights and Privacy Act (FERPA):**

12. **The Student has the right to inspect and review his educational record within 45 days of the University's receiving a written request for access.**"

13. Mr. Woodward requested his Student Records from AUA, via FR 34 Requests for Documentation, **Exhibit 1**.

14. Mr. Woodward's Student Records were requested on November 22, 2010 and due, December 22, 2010.

15. AUA failed to produce Mr. Woodward's Student Records.

16. AUA claims that they adhere to FERPA, Fed. Law 20 U.S.C.1232g.

17. AUA admits to tort concerning FERPA, **Exhibit 4**, page 13, line 11 and page 15, line 22, of the April 19, 2010 hearing.

Line 11: "**Mr. Buikema: In my view, Your Honor, it's a wrongful act predicated to a tortuous interference claim**."

Line 22: Mr. Buikema: …. "**FERPA is a tortuous interference**"

18. AUA's own language contained in the first sentence demonstrates the obligation of the college.

"**The rules and regulations outlined here are binding**", page 1, line 1 of the Student Handbook, August 2011, **Exhibit 3**.

19. AUA's Student Handbook states: "**AUA/KMC students are encouraged to address any academic or non-academic concerns with their Professors, Faculty Advisors**"

Lawsuit 2:10-cv-10978-PJD-MJH COUNT IV – DEFAMATION demonstrates how

AUA violated their own Student Handbook "**address any academic or non-academic concern**".

**20.** AUA's motives are clear as stated in their testimony April 19, 2010, **Exhibit 4**, page 14, line 17

"**disclosing the student information could cause the federal government to terminate funding**" and page 13, line 15 "**FERPA prohibits disclosure of students' information by the University itself. And has, as a consequence, the termination of federal funding, which my client does receive and some of the students receive benefit under this provision.**" and from Docket 1, **Exhibit 6**, page 5, number 22 "**AUA suffers irreparable injury and harm to its reputation each day that Mr. Woodward's appalling site is permitted to remain available.**"

**21.** Mr. Woodward suffered greatly, he has been denied basic and guaranteed Discovery in Federal Court. Mr. Woodward was forced to loss yet another occupation, relocate away from his home, emotional distress as documented in the Court Opinion, Docket 184, page 13, "**Woodward created the website exclusively as a means of expressing his anger**" and waste precious time off his life. Mr. Woodward requests damages for AUA's actions.

Mr. Woodward requests treble Punitive Damages which are just for the behavior of AUA, a Medical College. AUA has committed the most heinous act; blaming Mr. Woodward for their violation of Federal Law, and their own Student Handbook; for AUA's profit, cover-up safety concerns, and AUA's reputation. AUA has wasted a years of Mr. Woodward's life due to their own failures and violations of Law and policies. For

such an underhanded act by an industry as a Medical Education is disgraceful and

degrades the Medical Industry as a whole.  AUA violates their own advertisements of

High Standards, Ethics, and Quality Education. AUA's violation of the production of Mr.

Woodward's student records is an example before the United States Federal Court and is

just a prelude to how Mr. Woodward's was treated by AUA's unjust behavior.


**CLAIM 3: Conspiracy to Commit Civil Right Violation**

**22.** AUA knowingly and purposefully conspired to violate Mr. Woodward's First

Amendment Civil Rights for profit.

**23.** AUA knowingly and purposefully produced false testimony to conspire to violate Mr.

Woodward's First Amendment Civil Rights for AUA's profit and reputation.

**24.** AUA knowingly and purposefully accused Mr. Woodward of violating Federal Law,

20 U.S.C. 1232g, FERPA to cover-up their own obligations to secure Private Student

Information, which are protected by Federal Law.  Mr. Woodward is within his RIGHTS

and Civil obligation to expose the Disclosure of Private Student Information by AUA.

**25.** AUA knowingly and purposefully conspired to violate Mr. Woodward to avoid Legal

Action against AUA for their violation Federal Law and their Student Handbook.

**26.** AUA claimed Mr. Woodward was guilty of Defamation by stating **"AUA students

are sexually assaulted"**, **Exhibit 6**.  AUA then admits that a student was sexually

assaulted.  The Plaintiff knew this statement by Mr. Woodward was True, but swore

under oath that it was false.  Mr. Woodward is within his RIGHTS and Civil obligation to

expose potential harm to any student.

**27.** The Court warned AUA, on April 19, 2010, **Exhibit 4**, that these claims were "Riciculous", "not tortuous interference", "That's the spin you put on it. But the statement itself is true, "AUA students are sexually assaulted", and "it doesn't seem to me your Lanham Act has any merit at all". AUA continued to attack Mr. Woodward concerning Claims AUA knew were FALSE, including but not limited to, Docket 45 and 49.

**28.** AUA goes so far as to try to violate Mr. Woodward's RIGHT to own property, domain names. The Court's own opinion attests to this fact on Docket 184 page 1, last line **"AUA also asks the Court to order Woodward to forfeit the domain names he has registered using "AUA" and damages"**

**29.** Mr. Woodward suffered greatly, he has been denied basic and guaranteed Discovery in Federal Court. Mr. Woodward was forced to loss yet another occupation, relocate away from his home, emotional distress as documented in the Court Opinion, Docket 184, page 13, **"Woodward created the website exclusively as a means of expressing his anger"** and waste precious time off his life. Mr. Woodward requests damages for AUA's actions.

Mr. Woodward requests treble Punitive Damages which are just for the behavior of AUA, a Medical College. Pure logic dictates AUA has violated FERPA, Federal Law 20U.S.C. 1232g; for which AUA blamed Mr. Woodward. AUA failed to safeguard student records, causing irreparable damage to over 150 students, by their own testimony. AUA has violated Mr. Woodward's FERPA PRIVACY RIGHTS (quote from their Student Handbook), 20 U.S.C.1232g by failing to produce student records. AUA has

proven they hold no value in their Student Handbook.  AUA's unprofessional behavior is

insurmountable, yet their hypocrisy is so great they destroyed Mr. Woodward's career

and livelihood with the very words contained within their Student Handbook.  AUA has

committed the most heinous act; blaming Mr. Woodward for their violation of Federal

Law, and their own Student Handbook; for AUA's profit, cover-up safety concerns, and

AUA's reputation.  AUA has wasted a years of Mr. Woodward's life due to their own

failures and violations of Law and policies.  For such an underhanded act by an industry

as a Medical Education is disgraceful and degrades the Medical Industry as a whole.

AUA violates their own advertisements of High Standards, Ethics, and Quality

Education. The violation of the production of Mr. Woodward's student records before the

United States Federal Court is just a prelude to how Mr. Woodward's was treated by

AUA's unjust behavior.


**CLAIM 4: Conspiracy to Commit Fraud**

**30.** AUA knowingly and purposefully conspired, for profit, to violate Mr. Woodward's

First Amendment Civil Rights.  AUA attempted to blame of AUA's disclosure of Private

Student Information on Mr. Woodward instead of AUA.

**31.** AUA knowingly and purposefully produced false testimony to conspire to blame Mr.

Woodward's for AUA's violation of Federal Law 20 U.S.C. 1232(g), FERPA disclosure

of Private Student Information.

32. AUA knowingly and purposefully attempted to blame Mr. Woodward for AUA's violation of Federal Law to cover-up their own obligations to secure Private Student Information.

33. AUA knowingly and purposefully conspired to violate Mr. Woodward to avoid Legal Action against themselves for their violation of Federal Law 20 U.S.C. 1232g FERPA.

34. AUA claimed Mr. Woodward was guilty of Defamation by stating "**AUA students are sexually assaulted**", **Exhibit 6**.  AUA then admits that a student was sexually assaulted.  The Plaintiff knew this statement by Mr. Woodward was True, but swore under oath that it was false.

35. AUA asked the Court to order Mr. Woodward to forfeit his domain name; which is Mr. Woodward's legal property in order to cover-up facts.

36. The Court warned AUA, on April 19, 2010, **Exhibit 4**, that these claims were "Riciculous", "not tortuous interference", "That's the spin you put on it.  But the statement itself is true, "AUA students are sexually assaulted", and "it doesn't seem to me your Lanham Act has any merit at all".  AUA continued to attack Mr. Woodward concerning these obvious false declarations.

37. AUA goes so far as not only to attempt to blame Mr. Woodward for Federal Law they violated but also attempts to profit from their violations.  Docket 1, **Exhibit 6**, page 9, number 51 "**Wherefore, Plaintiff American University of Antigua, respectfully requests a judgment against Defendant, together with costs, interest, and attorney fees.**"

38. Mr. Woodward suffered greatly, he has been denied basic and guaranteed Discovery in Federal Court.  Mr. Woodward was forced to loss yet another occupation, relocate

away from his home, emotional distress as documented in the Court Opinion, Docket 184, page 13, "**Woodward created the website exclusively as a means of expressing his anger**" and waste precious time off his life.  Mr. Woodward requests damages for AUA's actions.

Mr. Woodward requests treble Punitive Damages which are just for the behavior of AUA, a Medical College.   Pure logic dictates AUA has violated FERPA, Federal Law 20U.S.C. 1232g; for which AUA blamed Mr. Woodward.   AUA failed to safeguard student records, causing irreparable damage to over 150 students, by their own testimony. AUA has violated Mr. Woodward's FERPA PRIVACY RIGHTS(quote from their Student Handbook), 20 U.S.C.1232g by failing to produce student records.  AUA has proven they hold no value in their Student Handbook.  AUA's unprofessional behavior is insurmountable, yet their hypocrisy is so great they destroyed Mr. Woodward's career and livelihood with the very words contained within their Student Handbook.  AUA has committed the most heinous act; blaming Mr. Woodward for their violation of Federal Law, and their own Student Handbook; for AUA's profit, cover-up safety concerns, and AUA's reputation.  AUA has wasted a year and a half of Mr. Woodward's life due to their own failures and violations of Law and policies.  For such an underhanded act by an industry as a Medical Education is disgraceful and degrades the Medical Industry as a whole.  AUA violates their own advertisements of High Standards, Ethics, and Quality Education. The violation of the production of Mr. Woodward's student records is an example of AUA's behavior before the United States Federal Court is just a prelude to how Mr. Woodward's was treated by AUA's unjust behavior.

12

**CLAIM 5: Fraud**

**39.** AUA knowingly and purposefully attempted to use the United States Federal Court to rob Mr. Woodward's of his domain name and electronic data. The Court Opinion testifies to this fact in Docket 184, **Exhibit 5**, page 1, last line: "**AUA also asks the Court to order Woodward to forfeit the domain names he has registered using "AUA" and to award damages**."

**40.** AUA knowingly and purposefully produced false testimony to conspire to blame Mr. Woodward's for AUA's violation of Federal Law 20 U.S.C. 1232(g), FERPA disclosure of Private Student Information.

**41.** AUA knowingly and purposefully accused Mr. Woodward of violating Federal Law 20 U.S.C. 1232(g) with the intent to blame Mr. Woodward for AUA's disclosure of Private Student Information, AUA intended to profit as documented in Docket 1, **Exhibit 6**, page 9, number 51, "**Wherefore, Plaintiff American University of Antigua, respectfully requests a judgment against Defendant, together with costs, interest, and attorney fees**."

**42.** AUA knowingly and purposefully conspired to violate Mr. Woodward to avoid Legal Action against themselves for their violation of Federal Law 20 U.S.C. 1232g FERPA.

**43.** AUA claimed Mr. Woodward was guilty of Defamation by stating "**AUA students are sexually assaulted**", **Exhibit 6**. AUA then admits that a student was sexually assaulted. The Plaintiff knew this statement by Mr. Woodward was True, but AUA swore under oath that it was false.

**44.** AUA asked the Court to order Mr. Woodward to forfeit his domain name; which is Mr. Woodward's legal property.

**45.** The Court warned AUA, on April 19, 2010, **Exhibit 4**, that these claims were "Riciculous", "not tortuous interference", "That's the spin you put on it.  But the statement itself is true, "AUA students are sexually assaulted", and "it doesn't seem to me your Lanham Act has any merit at all".  AUA continued to press obvious false declarations against Mr. Woodward.

**46**. Mr. Woodward suffered greatly, he has been denied basic and guaranteed Discovery in Federal Court.  Mr. Woodward was forced to loss yet another occupation, relocate away from his home, emotional distress as documented in the Court Opinion, Docket 184, page 13, **"Woodward created the website exclusively as a means of expressing his anger"** and waste precious time off his life.  Mr. Woodward requests damages for AUA's actions.

Mr. Woodward requests treble Punitive Damages which are just for the behavior of AUA, a Medical College.   Pure logic dictates AUA has violated FERPA, Federal Law 20U.S.C. 1232g; for which AUA blamed Mr. Woodward.   AUA failed to safeguard student records, causing irreparable damage to over 150 students, by their own testimony.  AUA has violated Mr. Woodward's FERPA PRIVACY RIGHTS(quote from their Student Handbook), 20 U.S.C.1232g by failing to produce student records. AUA has proven they hold no value in their Student Handbook.  AUA's unprofessional behavior is insurmountable, yet their hypocrisy is so great they destroyed Mr. Woodward's career and livelihood with the very words contained within their Student Handbook.  AUA has

committed the most heinous act; blaming Mr. Woodward for their violation of Federal Law, and their own Student Handbook; for AUA's profit, cover-up safety concerns, and AUA's reputation. AUA has wasted a years of Mr. Woodward's life due to their own failures and violations of Law and policies. For such an underhanded act by an industry as a Medical Education is disgraceful and degrades the Medical Industry as a whole. AUA violates their own advertisements of High Standards, Ethics, and Quality Education. The violation of the production of Mr. Woodward's student records before the United States Federal Court is just a prelude to how Mr. Woodward's was treated by AUA's unjust behavior.

**CLAIM 6: Defamation**

**47.** The Plaintiff testified on April 19, 2010, page 18, line 17, **Exhibit 4**, that Neal Simon, JD, General Counsel and President of the University for AUA:

**"The very last page, of course, is a verification signed, under oath, by the President of the University indicating that the allegations contained in the complaint are, in fact true. He's reviewed them and the like. So, he's affirmed that those representations by Mr. Woodward's website are false in sworn testimony."**

**48.** AUA claimed Mr. Woodward was guilty of violating Anticybersquatting Consumer Protection Act, ACPA, 15 U.S.C. 1125(d), Docket 1, page 2, **Exhibit 6**

**49.** AUA claimed Mr. Woodward was guilty of violating United States Trademark Act of 1946 (Lanham Act) 15 USC 1125(c), Docket 1, page 2, **Exhibit 6**

**50.** AUA claimed Mr. Woodward was guilty of violating Family Educational Rights and Privacy Act (FERPA) 20 USC 1232(g), Docket 1, page 2. **Exhibit 6**

51. AUA claimed Mr. Woodward was guilty of Defamation by stating **"AUA students are sexually assaulted"**, **Exhibit 6**. AUA then admits that a student was sexually assaulted. The Plaintiff knew this statement by Mr. Woodward was True, but swore under oath that it was false.

52. The Court warned AUA, on April 19, 2010, **Exhibit 4**, that these claims were **"Riciculous"**, **"not tortuous interference"**, **"That's the spin you put on it. But the statement itself is true, "AUA students are sexually assaulted"**, and **"it doesn't seem to me your Lanham Act has any merit at all"**.

53. AUA continued to publish these Claims knowing they were false.

54. AUA persistence in these Defamatory Claims have been published on the Internet with open access across the world, Mr. Woodward's professional name in the Computer Information Technology Industry has forever been tarnished by these known false Claims. It is widely known that in the Computer Industry a company will search the Internet for the potential employee's name. **Exhibit 7**

55. AUA's motives are clear for destroying Mr. Woodward's reputation are testified repeatedly by the Plaintiff, on April 19, 2010, page 13, line 17, **Exhibit 4** **"the termination of federal funding, which my client does receive"** and Docket 1, page 2, **Exhibit 6** **"AUA suffers irreparable injury and harm to its reputation each day that Mr. Woodward's appalling site is permitted to remain available"** and **"Irreparable injury to AUA and its affected students occurs, for which there is not an adequate remedy at law"**.

**56.** Mr. Woodward suffered greatly, he has been denied basic and guaranteed Discovery

in Federal Court.  Mr. Woodward was forced to loss yet another occupation, relocate

away from his home, emotional distress as documented in the Court Opinion, Docket

184, page 13, "**Woodward created the website exclusively as a means of expressing**

**his anger**" and waste precious time off his life.  Mr. Woodward requests damages for

AUA's actions.


Mr. Woodward requests treble Punitive Damages which are just for the behavior of

AUA, a Medical College.   Pure logic dictates AUA has violated FERPA, Federal Law

20 U.S.C. 1232g; for which AUA blamed Mr. Woodward.   AUA failed to safeguard

student records, causing irreparable damage to over 150 students, by their own testimony.

AUA has violated Mr. Woodward's FERPA PRIVACY RIGHTS(quote from their

Student Handbook), 20 U.S.C.1232g by failing to produce student records.  AUA has

proven they hold no value in their Student Handbook.  AUA's unprofessional behavior is

insurmountable, yet their hypocrisy is so great they destroyed Mr. Woodward's career

and livelihood with the very words contained within their Student Handbook.  AUA has

committed the most heinous act; blaming Mr. Woodward for their violation of Federal

Law, and their own Student Handbook; for AUA's profit, cover-up safety concerns, and

AUA's reputation.  AUA has wasted a years of Mr. Woodward's life due to their own

failures and violations of Law and policies.  For such an underhanded act by an industry

as a Medical Education is disgraceful and degrades the Medical Industry as a whole.

AUA violates their own advertisements of High Standards, Ethics, and Quality

Education. The violation of the production of Mr. Woodward's student records is an

example of AUA's behavior before the United States Federal Court is just a prelude to how Mr. Woodward's was treated by AUA's unjust behavior.

**CLAIM 7: Obstruction**

**57.** AUA has committed Obstruction **"willfully withholds"** Mr. Woodward's Student Records.

**58.** Mr. Woodward's Student Records are guaranteed by AUA's Student Handbook in conjunction with Federal Law, 20 U.S.C. 1232g, FERPA.

**59.** AUA's Student Handbook, **Exhibit 3**, states on page 25

 **"PRIVACY RIGHTS The University adheres to the mandates of the United States Family Education Rights and Privacy Act (FERPA):**

**1. The Student has the right to inspect and review his educational record within 45 days of the University's receiving a written request for access."**

**60.** Mr. Woodward requested access to his Student Records November 22, 2010.

**A)** Mr. Woodward had to file "Motion to Compel" his student records Docket 121, 03/24/2011.

**B)** AUA did not produce Mr. Woodward's student records after Court Order, Docket 124.

**C)** Mr. Woodward had to file "Motion for Sanctions", 4/15/2011, for the failure of AUA to respond to Court Order, Docket 124, including the production of Mr. Woodward's student records.

**D)** The Court Order 174, again, Ordered to respond to Mr. Woodward's request for production of documents.

**E)** AUA did not produce a response until November 11, 2011; nearly ONE YEAR after

Mr. Woodward's initial request for the production of his student records.

**61.** Mr. Woodward tried to confer with the Plaintiff, December 2, 2011, concerning

getting his student records, AUA failed to reply.  Mr. Woodward still does not have his

student records.

**62,** Mr. Woodward suffered greatly, he has been denied basic and guaranteed Discovery

in Federal Court.  Mr. Woodward was forced to loss yet another occupation, relocate

away from his home, emotional distress as documented in the Court Opinion, Docket

184, page 13, **"Woodward created the website exclusively as a means of expressing**

**his anger"** and waste precious time off his life.  Mr. Woodward requests damages for

AUA's actions.


Mr. Woodward requests treble Punitive Damages which are just for the behavior of

AUA, a Medical College.   Pure logic dictates AUA has violated FERPA, Federal Law

20U.S.C. 1232g; for which AUA blamed Mr. Woodward.   AUA failed to safeguard

student records, causing irreparable damage to over 150 students, by their own testimony.

AUA has violated Mr. Woodward's FERPA PRIVACY RIGHTS(quote from their

Student Handbook), 20 U.S.C.1232g by failing to produce student records.  AUA has

proven they hold no value in their Student Handbook.  AUA's unprofessional behavior is

insurmountable, yet their hypocrisy is so great they destroyed Mr. Woodward's career

and livelihood with the very words contained within their Student Handbook.  AUA has

committed the most heinous act; blaming Mr. Woodward for their violation of Federal

Law, and their own Student Handbook; for AUA's profit, cover-up safety concerns, and

AUA's reputation. AUA has wasted a years of Mr. Woodward's life due to their own failures and violations of Law and policies. For such an underhanded act by an industry as a Medical Education is disgraceful and degrades the Medical Industry as a whole. AUA violates their own advertisements of High Standards, Ethics, and Quality Education. The violation of the production of Mr. Woodward's student records before the United States Federal Court is just a prelude to how Mr. Woodward's was treated by AUA's unjust behavior.

**CLAIM 8 PERJURY**

**63.** AUA committed perjury by making statements concerning **"Count I – Federal Trademark/Tradename Infringement"**

**A)** AUA states in Docket 1, **Exhibit 6**, page 7, number 31

**"Defendant's actions, along with the use on the offending website of information purportedly, from, sponsored or published by AUA (including items bearing the AUA logo) constitute willful infringement upon AUA's exclusive rights in its tradename and trademark under 15 U.S.C. 1114."**

**B)** AUA states in Docket 1, **Exhibit 6**, page 7, number 37

**"Defendant publishes false information in conjunction with the tradename and marks that dilutes, blurs and tarnishes the distinctiveness and positive association of the same."**

**64.** AUA commits Perjury by making statements concerning **"Count II – Infringement Under The ACPA"**

**A)** AUA states in Docket 1, **Exhibit 6**, page 8, number 41

20

"**Defendant has registered, in bad faith and with intent to profit, a domain name**

**confusingly similar to that utilized by AUA in the course of its business.**"

**B)** AUA states in Docket 1, page 8, number 44

"**Defendant's conduct is not a fair usage.**"

**C)** The Court warned the Plaintiff that these statements were without merit.

**65.**   AUA commits Perjury by making statements concerning "**Count III – Willful**

**Violation Of FERPA**"

**A)** AUA states in April 19, 2010, **Exhibit 4**, page 15, line 20

Mr. Buikema "**What I'm arguing is that Mr. Woodward's publication of private**

**student information which would be violative of FERPA is a tortuous interference**

**with a third-party expectancy—**"

**B)** The Court warned AUA that this statement is false on April 19, 2010, **Exhibit 4**, page

15, line 24

"**The Court: It's not tortuous interference.**"

**66.** AUA states in Docket 1, **Exhibit 6**, page 2, line 4

"**This action arises, in most basic summary, out of Defendant's ownership and**

**publication of a website, and derivative publications, containing false and**

**defamatory information about AUA, as well as private information about AUA**

**students protected from disclosure under the Family Education Educational Rights**

**and Privacy Act ("FERPA"), 20 U.S.C. 1232(g) and by his use of a confusingly**

**similar domain name ('www.aua-med.com') that infringes upon and/or dilutes**

**AUA's protected trade name under Federal Statutory and common law including,**

**but not limited to, the United States Trademark Act of 1946 (the "Lanham Act"), 15**

U.S.C. 1125(c), and the Anticybersquatting Consumer Protection Act ("ACPA"), 15

U.S.C. 1125(d)."

AUA knew these allegations were false.  Neal Simon is an attorney, general counsel for

AUA.  Neal Simon was warned that each element of this statement was false by Judge

Patrick Duggan, April 19, 2010.

A) Judge Patrick Duggan states, **Exhibit 4**, page 14, line 24

**"The Court: It's just ridiculous.  I don't know why you're arguing that**."

B) Judge Patrick Duggan states, **Exhibit 4,** page 15, line 24

**"The Court: It's not tortuous interference"**

**67.** AUA states on pages 5 and page 10 of Docket 1, **Exhibit 6**

**"h. AUA students are sexually assaulted;"**

and

**"l. AUA student pass rate for USMLE medical board exams is only 22.9%;"**

AUA's own **Exhibits 8**, from Docket 8, proves AUA knew these statements made under

oath were false.

A) The Plaintiff writes, under oath, on page 10 of Docket 1.

**"55. Each and every one of these "facts" is false."**  AUA's own Docket 8 Exhibit

proves AUA knew they lied under oath.

B) The Plaintiff states April 19, 2010, page 18, line 17, **Exhibit 4**

**"The very last page, of course, is a verification signed, under oath, by the President**

**of the University indicating that the allegations contained in the complaint are in**

**fact, true.  He's reviewed them and the like.  So, he's affirmed that those**

**representations by Mr. Woodward's website are false in sworn testimony."**

22

**C)** AUA's own exhibit, Docket 8, Plaintiff's Exhibit C, **Exhibit 8**, proves without a doubt that these statements were known false made by the Plaintiff under oath.

**D)** The Court told AUA the statement made by Mr. Woodward was in fact TRUE April 19. 2010, page 19, line 19

**"The Court: That's the spin you put on it.  But the statement itself is true"**

**E)** AUA continued to use these known false statements in subsequent Court Motions.

**F)** The court has ruled that these statements/claims by AUA are in fact "FALSE" in Docket 184.

**68.**  AUA wrote in Docket 1, page 3, number 13.

**"As a result of his dismissal from the University, Defendant initiated a lawsuit against AUA and its educational partner hospital Trinity-Health Michigan's St. Joseph Mercy Hospital in Pontiac, Michigan."**

This statement is known to be a lie and the sole purpose was to defame Mr. Woodward before the Court.  Neal Simon himself knew this statement was false.

Neal Simon was copied on the December 20, 2007 notice of Mr. Woodward's lawsuit, **Exhibit 9**.

Neal Simon was copied on Mr. Woodward's wrongful dismissal May 28, 2008, **Exhibit 10**.

**69.** Mr. Woodward suffered greatly, he has been denied basic and guaranteed Discovery in Federal Court.  Mr. Woodward was forced to loss yet another occupation, relocate away from his home, emotional distress as documented in the Court Opinion, Docket 184, page 13, **"Woodward created the website exclusively as a means of expressing**

**his anger**" and waste precious time off his life. Mr. Woodward requests damages for AUA's actions.

Mr. Woodward requests treble Punitive Damages which are just for the behavior of AUA, a Medical College. Pure logic dictates AUA has violated FERPA, Federal Law 20U.S.C. 1232g; for which AUA blamed Mr. Woodward. AUA failed to safeguard student records, causing irreparable damage to over 150 students, by their own testimony. AUA has violated Mr. Woodward's FERPA PRIVACY RIGHTS(quote from their Student Handbook), 20 U.S.C.1232g by failing to produce student records. AUA has proven they hold no value in their Student Handbook. AUA's unprofessional behavior is insurmountable, yet their hypocrisy is so great they destroyed Mr. Woodward's career and livelihood with the very words contained within their Student Handbook. AUA has committed the most heinous act; blaming Mr. Woodward for their violation of Federal Law, and their own Student Handbook; for AUA's profit, cover-up safety concerns, and AUA's reputation. AUA has wasted a years of Mr. Woodward's life due to their own failures and violations of Law and policies. For such an underhanded act by an industry as a Medical Education is disgraceful and degrades the Medical Industry as a whole. AUA violates their own advertisements of High Standards, Ethics, and Quality Education. The violation of the production of Mr. Woodward's student records before the United States Federal Court is just a prelude to how Mr. Woodward's was treated by AUA's unjust behavior.

## CLAIM 9 False Declarations Before Grand Jury or Court

70. AUA made false declarations by making statements concerning "**Count I – Federal Trademark/Tradename Infringement**"

A) AUA states in Docket 1, **Exhibit 6**, page 7, number 31

"**Defendant's actions, along with the use on the offending website of information purportedly, from, sponsored or published by AUA (including items bearing the AUA logo) constitute willful infringement upon AUA's exclusive rights in its tradename and trademark under 15 U.S.C. 1114.**"

B) AUA states in Docket 1, **Exhibit 6**, page 7, number 37

"**Defendant publishes false information in conjunction with the tradename and marks that dilutes, blurs and tarnishes the distinctiveness and positive association of the same.**"

71. AUA knowingly made false declarations concerning "**Count II – Infringement Under The ACPA**"

A) AUA knowingly made false declarations in Docket 1, **Exhibit 6**, page 8, number 41

"**Defendant has registered, in bad faith and with intent to profit, a domain name confusingly similar to that utilized by AUA in the course of its business.**"

B) AUA knowingly made false declarations in Docket 1, **Exhibit 6** , page 8, number 44

"**Defendant's conduct is not a fair usage.**"

C) The Court warned the Plaintiff that these statements were without merit, but the Plaintiff continued making these false declarations.

72. AUA knowingly made false declarations concerning "**Count III – Willful Violation Of FERPA**"

A) AUA states in April 19, 2010, **Exhibit 4** page 15, line 20

Mr. Buikema "**What I'm arguing is that Mr. Woodward's publication of private**

**student information which would be violative of FERPA is a tortuous interference**

**with a third-party expectancy—**"

B) The Court warned AUA that this statement is false on April 19, 2010, **Exhibit 4**, page

15, line 24

"**The Court: It's not tortuous interference.**"

C) Neal Simon is an Officer of the Court, general counsel for a college, and President.

**73.** AUA states in Docket 1, **Exhibit 6**, page 2, line 4

"**This action arises, in most basic summary, out of Defendant's ownership and**

**publication of a website, and derivative publications, containing false and**

**defamatory information about AUA, as well as private information about AUA**

**students protected from disclosure under the Family Education Educational Rights**

**and Privacy Act ("FERPA"), 20 U.S.C. 1232(g) and by his use of a confusingly**

**similar domain name ('www.aua-med.com') that infringes upon and/or dilutes**

**AUA's protected trade name under Federal Statutory and common law including,**

**but not limited to, the United States Trademark Act of 1946 (the "Lanham Act"), 15**

**U.S.C. 1125(c), and the Anticybersquatting Consumer Protection Act ("ACPA"), 15**

**U.S.C. 1125(d).**"


AUA knew these declarations were false. Neal Simon is an attorney, general counsel for

AUA. The Plaintiff was warned that these statements were false by Judge Patrick

Duggan, April 19, 2010.

A) Judge Patrick Duggan states, **Exhibit 4**, page 14, line 24

"**The Court: It's just ridiculous.  I don't know why you're arguing that.**"

B)  Judge Patrick Duggan states, **Exhibit 4,** page 15, line 24

"**The Court: It's not tortuous interference**"

**74.** AUA states pages 5 and page 10 of Docket 1

"**h. AUA students are sexually assaulted;**"

and

"**l. AUA student pass rate for USMLE medical board exams is only 22.9%;**"

**A)** The Plaintiff writes, under oath, on page 10 of Docket 1.

"**55. Each and every one of these "facts" is false.**"

**B)** The Plaintiff states April 19, 2010, page 18, line 17,

"**The very last page, of course, is a verification signed, under oath, by the President of the University indicating that the allegations contained in the complaint are in fact, true.  He's reviewed them and the like.  So, he's affirmed that those representations by Mr. Woodward's website are false in sworn testimony.**"

**C)** AUA's own **Exhibit 8,** Docket 8, Plaintiff's Exhibit C proves without a doubt that these statements were known false made by the Plaintiff under oath.

**D)** The Court told AUA the statement made by Mr. Woodward was in fact TRUE April 19. 2010, page 19, line 19

"**The Court: That's the spin you put on it.  But the statement itself is true**"

**E)** AUA continued to use these known false statements in at least Docket 8, Docket 45, Docket 141-3, and Docket143 (exhibit H)

**F)** The court has ruled that the Plaintiff's statements are in fact "FALSE" in Docket 184.

**75.**  AUA wrote in Docket 1, page 3, number 13.

**"As a result of his dismissal from the University, Defendant initiated a lawsuit against AUA and its educational partner hospital Trinity-Health Michigan's St. Joseph Mercy Hospital in Pontiac, Michigan."**

This statement is known to be false by Neal Simon himself.

Neal Simon was copied on the December 20, **2007** notice of Mr. Woodward's lawsuit, **Exhibit 9**.

Neal Simon was copied on Mr. Woodward's wrongful dismissal May 28, **2008**, **Exhibit 10**.

76. Mr. Woodward requests damages, suffered greatly, he has been denied basic and guaranteed Discovery in Federal Court. Mr. Woodward was forced to lose yet another occupation, relocate away from his home, emotional distress as documented in the Court Opinion, Docket 184, page 13, **"Woodward created the website exclusively as a means of expressing his anger"** and waste precious time off his life. Mr. Woodward requests damages for AUA's actions.

Mr. Woodward requests treble Punitive Damages which are just for the behavior of AUA, a Medical College.  Pure logic dictates AUA has violated FERPA, Federal Law 20U.S.C. 1232g; for which AUA blamed Mr. Woodward.  AUA failed to safeguard student records, causing irreparable damage to over 150 students, by their own testimony. AUA has violated Mr. Woodward's FERPA PRIVACY RIGHTS(quote from their Student Handbook), 20 U.S.C.1232g by failing to produce student records. AUA has proven they hold no value in their Student Handbook.  AUA's unprofessional behavior is insurmountable, yet their hypocrisy is so great they destroyed Mr. Woodward's career

and livelihood with the very words contained within their Student Handbook.  AUA has

committed the most heinous act; blaming Mr. Woodward for their violation of Federal

Law, and their own Student Handbook; for AUA's profit, cover-up safety concerns, and

AUA's reputation.  AUA has wasted a years of Mr. Woodward's life due to their own

failures and violations of Law and policies.  For such an underhanded act by an industry

as a Medical Education is disgraceful and degrades the Medical Industry as a whole.

AUA violates their own advertisements of High Standards, Ethics, and Quality

Education. The violation of the production of Mr. Woodward's student records before the

United States Federal Court is just a prelude to how Mr. Woodward's was treated by

AUA's unjust behavior.

Steven Woodward
7211 Brittwood Ln
Flint, MI 48507
(810)235-7267

**List of Authority:**

**Claim 1** Breach of Contract

. (Fellheimer v. Middlebury College, 1994), (Balxock v. New Orleans Baptist Theological Seminary, 1989), (Merrow v. Goldberg, 1987; Holert v. University of Chicago, 1990; Mangla v. Brown University, 1998; Dinu v. President & Fellows of Harvard College, 1999; Bhandari v. Trustees of Columbus Univestiy, 2000; Schear v. Brandeis Universtiy, 2000)

**Claim 2** Tort Violation,

Plaintiff's own admission of tortuous liability and obligation

**Claim 3** Conspiracy to Commit Civil Right Violation

42 U.S.C. 1985

MCL 750.157a Conspiracy to commit offense or legal act in illegal manner

**Claim 4** Conspiracy to Commit Fraud

MCL 750.157a Conspiracy to commit offense or legal act in illegal manner

**Claim 5** Fraud

18 U.S.C. 1030 (forfeit of Mr. Woodward's domain, and blame Mr. Woodward for AUA's violation of 20 U.S.C. 1232g)

18 U.S.C. 1002

MCL 750.357

**Claim 6** Defamation

Plaintiff Docket 8, (defamation per quod) Campbell v. Bank One, 79 Fed. Appx. 760, 762 (6th Cir. Mich. 2003)

**Claim 7** Obstruction

18 U.S.C. 1505

**Claim 8** Perjury

18 U.S.C. 1621

**Claim 9** False Declaration Before Grand Jury or Court

18 U.S.C. 1623

**Domain Names are property**: *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003)

"United States Court of Appeals, Ninth Circuit, held that a domain name is intangible property because it satisfies the three-part test for the existence of a property right."

**List of Exhibits:**
Exhibit 1: Defendant's Request for Production Pursuant to FRCP 34
Exhibit 2: Email From Woodward To Buikema
Exhibit 3: AUA Student Handbook
Exhibit 4: April 19, 2010 Hearing Transcript
Exhibit 5: Docket 184 Opinion
Exhibit 6: Docket 1
Exhibit 7: Web Search for Woodward
Exhibit 8: Docket 8-4 Exhibit C
Exhibit 9: Email Nicoletti CC Neal Simon
Exhibit 10: Letter of Dismissal CC Neal Simon

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, Plaintiff

United States District Court
Judge Patrick J. Duggan, presiding
Michael Hluchaniul, referral
Case No.: 2:10-cv-10978

V
Steven Woodward, Defendant

Eric A. Buikema (P58379)                    Steven Woodward
Cardelli, Lanfear & Buikema, P.C.           7211 Brittwood Ln
Attorneys for Plaintiff                     Flint, MI 48507
322 W. Lincoln                              steve_L_woodward@yahoo.com
Royal Oak, MI 48067
(248)544-1100
ebuikema@cardellilaw.com

---

### Defendant's Requests for Production Pursuant to FRCP 34

Defendant Steven Woodward pursuant to Fed. R. Civ. P. 34 requests production of
documents, electronically stored information and tangible things as identified below.
Pursuant to Fed. R. Civ. P. 34(b)(2), you have 30 days form being served to respond.
You must produce this information as kept in the ordinary course of business or organize
and label to correspond to the categories in the request. Fed. R. Civ. P. 34(b)(2)(E). Fed.
R. Civ. P. 26(e) imposes a duty upon you to timely supplement your responses.

**EXHIBIT 1**

1

## Definitions

1. The letters "AUA" define the American University of Antigua College of Medicine, Greater Caribbean Learning Resources, GCLR, St Joseph Mercy Oakland Hospital, and any company or partner of the American University of Antigua College of Medicine; unless otherwise specified.

2. The words documents, records, communications, prescriptions, files, minutes, notifications, findings, process, petitions, warnings, reports, and things refer to all tangible material of any nature, including but not limited to, all written material such as graphs, charts, maps, drawings, correspondence, memoranda, records, notes, writings, manuals, books, photographs, recordings, images and all information stored electronically on a computer or archived software capable of reduction to a written document as well as all objects such as parts, pieces, samples, and related tangible things.

3. The words possession, custody, or control apply to all documents and things belonging to you that are in your possession, all documents and things belonging to others over which you have custody, and all documents and things in the custody of others over which you have the right of control.

## Defendant's Request for Documentation

1. Please produce a copy of all Nellie Mae Loan Certifications signed by any AUA employee.

 2. Please produce a copy of all patient records for Steven Woodward concerning any clinical treatment provided by any AUA employee.

 3. Please produce a copy of all patient records for Steven Woodward written by any AUA employee.

 4. Please produce a copy of all counseling records for Steven Woodward written by any AUA employee.

 5. Please produce a copy of all prescriptions for Steven Woodward for any clinical treatments provided by any AUA employee.

 6. Please produce a copy of all records and documents between Peter Bell and Steven Woodward.

7. Please produce a copy of all communications between any AUA employee and Stuart A Lockhart concerning Steven Woodward.

2

8. Please produce a copy of all communications to or from Neal S. Simon concerning Steven Woodward.

9. Please produce a copy of all communications to or from Peter Bell concerning Steven Woodward.

10. Please produce a copy of all communications between any AUA employee and any St Joseph Mercy Oakland Hospital employee concerning Steven Woodward.

11. Please produce a copy of the email written by Jorge Calderon to Susan Zonia dated Saturday, December 15, 2007 subject: Fwd: Planning the grievance hearing including the "note" from Dr. Cain.

12. Please produce all communications by Victor Hrehorovich concerning Steven Woodward.

13. Please produce all communications by Jorge Calderon concerning Steven Woodward.

14. Please produce all communications by Jeffrey Yanez concerning Steven Woodward.

15. Please produce all communications by Susan Zonia concerning Steven Woodward.

16. Please produce all communications by Deneen McCall concerning Steven Woodward.

17. Please produce all communications by William Cain concerning Steven Woodward.

18. Please produce a copy of all documentation identified by Plaintiff's Rule 26 disclosures.

19. Please produce a copy of all exhibits or demonstrative aids which the Plaintiff intends to rely upon at trail.

20. Please produce a complete copy of the AUA student file for Steven Woodward.

21. Please produce a copy of all files AUA has concerning Steven Woodward.

22. Please produce a copy of all meeting minutes pertaining to Steven Woodward.

23. Please provide a copy of all reports, findings, and recommendations used to form the basis for all Grievance Committee Meeting findings concerning Steven Woodward.

24. Please produce a copy of all written communications between AUA and St Joseph Mercy Oakland Hospital pertaining the December 2007 Grievance with Steven Wooward.



25.  Please produce a copy of all voice recordings regarding the December 2007 Grievance concerning Steven Woodward.

26.  Please produce meeting minutes for any appeal Steven Woodward filed with AUA.

27.  Please produce a copy of all grievance meeting minutes concerning Steven Woodward and AUA.

28.  Please produce a copy of all findings regarding any grievances AUA had with Steven Woodward.

29.  Please produce a copy of all grievance meeting notifications between William Bullock Stewart and AUA.

30.  Please produce a copy of all grievance meeting findings AUA documented concerning the William Bullock Stewart.

31.  Please provide a copy of all reports, findings, and recommendations used to form the basis for any Grievance Committee Meeting finding for William Bullock Stewart.

32.  Please produce a copy of all grievance meeting notifications between Syed Noori and AUA.

33.  Please produce a copy of all grievance meeting findings AUA documented concering Syed Norri.

34.  Please provide a copy of all reports, findings, and recommendations used to form the basis for any Grievance Committee Meeting findings for Syed Noori.

35.  Please produce a copy of all grievance meeting notifications to any AUA student.

36.  Please produce a copy of all findings regarding all grievances AUA has had with any of their students.

37.  Please produce a copy of the process used by Neal Simon to ensure wrong information is not taught on Antigua at AUA while he is at his Wall Street Office or away from Antigua.

38.  Please produce a copy of all communications between AUA employees and St Joseph Mercy Oakland Hospital employees concerning the use of pagers during the 5th Semester Course.

39.  Please produce a copy of all communications between AUA and St Joseph Mercy Oakland Hospital concerning the number of patients students need to document during the 5th Semester cours.

4

40. Please produce a copy of all communications between AUA and St Joseph Mercy Oakland Hospital concerning defending an epithet.

41. Please produce a copy of the "Final Grades by Component – Fall, 2007".

42. Please produce a copy of all safety warnings AUA has issued to their students.

43. Please produce a copy of all reports on crime published by AUA for any site where their students reside.

44. Please produce a copy of all petitions submitted to AUA by any members of their student population.

45. Please produce a copy of all documentation concerning Shelf Exam policies concerning AUA students passing courses.

46. Please produce a copy of all documentation

11/22/2010

5

| | |
|---|---|
| **Subject:** | Re: AUA v Woodward - FR34 Confer |
| **From:** | Steve Woodward (steve_l_woodward@yahoo.com) |
| **To:** | ebuikema@cardellilaw.com; kzalewski@cardellilaw.com; |
| **Date:** | Friday, December 2, 2011 11:31 AM |

Let me know the approximate number of pages there are to be copied.

Is there a copy center in your building?
If not, where is the closest copy center I can take the documents.
If you do not have a copy center or are not going to allow me to take the documents to be copied let me know so I can bring a scanner.

This email and any attachments are intended for the sole use of the named recipient(s) and contain(s) confidential information that may be proprietary, privileged or copyrighted under applicable law. If you are not the intended recipient, do not read, copy, or forward this email message or any attachments. Delete this email message and any attachments immediately.

---

**From:** Eric A Buikema <ebuikema@cardellilaw.com>
**To:** Steve Woodward <steve_l_woodward@yahoo.com>
**Cc:** Kathryn Zalewski <kzalewski@cardellilaw.com>; Paul M. Kittinger <pkittinger@cardellilaw.com>
**Sent:** Thursday, December 1, 2011 4:55 PM
**Subject:** Re: AUA v Woodward - FR34 Confer

Apologies for the delayed reply. I was out for a protracted holiday and have been catching up on some other matters. You are welcome to come inspect the AUA document production anytime that is convenient for you (within our normal business hours). Just so that there are no surprises, AUA searched for and is producing those documents it found which are responsive to your Requests for Production as best as we could understand them. Note however that in many instances the materials requested are either items not in AUA's possession or control or otherwise retained in the course of its business.

Your student file and files related to the grievance proceedings were retained and will be produced. We do have additional materials arguably responsive to your requests in the form of pleadings, court filings and the like (in both cases) that you either generated or should already have as a party to the same. Similarly, we have but are not producing materials to you that were published or generated by you as you should already have these.

You can coordinate a specific time with my assistant Kathy Zalewski who will make sure a conference room is made available to you for your visit.

Regards,

Eric A. Buikema, Attorney at Law
Cardelli, Lanfear & Buikema, P.C.
322 West Lincoln Avenue
Royal Oak, Michigan 48067

 **EXHIBIT**



(248) 544-1100
(248) 544-1191 fax
ebuikema@cardellilaw.com

On 11/28/11 2:47 PM, "Steve Woodward" <steve_l_woodward@yahoo.com> wrote:

MR. Buikema,

This is my 3rd attempt to schedule a date and time to come down to your office obtain
copies of documentation per FR34.
You have not replied to any of them.

Attached is another certified attempt to confer.

Steven Woodward

This email and any attachments are intended for the sole use of the named recipient(s) and
contain(s) confidential information that may be proprietary, privileged or copyrighted under
applicable law. If you are not the intended recipient, do not read, copy, or forward this email
message or any attachments. Delete this email message and any attachments immediately.

**From:** Steve Woodward <steve_l_woodward@yahoo.com>
**To:** Eric A Buikema <ebuikema@cardellilaw.com>; KathrynZalewski plaintiff
<kzalewski@cardellilaw.com>; Orem Court <marilyn_orem@mied.uscourts.gov>;
Tammy Court <Tammy_Hallwood@mied.uscourts.gov>
**Sent:** Thursday, November 17, 2011 4:00 PM
**Subject:** AUA v Woodward - FR34 Confer

Dear Mr. Buikema,

Attached is my attempt to confer with you concerning the production of documentation per
FR 34.
A copy will be mailed to you.

Steven Woodward

# AMERICAN UNIVERSITY of ANTIGUA

# COLLEGE of MEDICINE

# STUDENT HANDBOOK



**T**he Student Handbook is published by the American University of Antigua College of Medicine for the students in the College of Medicine.

The rules and regulations outlined here are binding and must be adhered to by all AUA/KMC students, including those on leave.  The rules and regulations of this institution are reviewed and revised periodically.   Students are expected to be familiar with the most recent revisions of all AUA/KMC manuals and publications.

EXHIBIT 3            3

A student may withdraw before the second week of a semester without academic consequences.

In exceptional circumstances, determined on a case-by-case basis, the Promotions Committee reserves the right to allow a student to continue at the University while on probation, even if the student has not met all of the above requirements. **In such circumstances, however, the student may be ineligible for financial aid.**

# GRIEVANCES and DISCIPLINARY ACTION

The University's policies regarding disciplinary action apply to non-academic matters. Disciplinary actions may include, but are not limited to, verbal reprimand, written reprimand, required restitution, and suspension or expulsion from the University.

AUA/KMC students are encouraged to address any academic or non-academic concerns with their Professors, Faculty Advisors or Deans.

The Grievance and Disciplinary Committee is composed of faculty and student representatives. It is the investigative and judicial arm of the Dean's Office. The Grievance and Disciplinary Committee has authority over all matters referred by the Dean, the Dean of Student Affairs, the Student Government Association, students, and faculty. The Dean reviews the decisions and issues a final determination to the Grievance and Disciplinary Committee that is forwarded to the President.

A student may appeal any recommendation of suspension or dismissal authorized by the Grievance and Disciplinary Committee and executed by the Dean. The student must give written notice of intent to appeal the Committee's decision to the President's Office within ten days of receiving a decision.

The student has the right to counsel and to present witnesses and documentary evidence. The President and at least one other non-involved member of the administration will hear the appeal.

The three part appeal process is as follows:

- The written appeal must be received by the President's office no later than 14 days after receipt of the notice to appeal.

- The appeal must be heard within 2 weeks after receipt of the written appeal.

- The decision on the appeal will be communicated to the student in writing within one week after the final decision has been made by the President.

# PROFESSIONAL CONDUCT and ETHICAL BEHAVIOR

It is incumbent upon each student at the University to maintain the highest level of ethics and morals, and to conduct himself in a manner befitting a physician.

# POLICY of NON-DISCRIMINATION

The University does not discriminate nor does it condone harassment based upon race, creed, ethnicity, religion, gender, national origin, age, disability, sexual orientation or any other characteristic protected by law.

This applies to all students and employees (faculty and staff) on the AUA/KMC premises as well as during AUA/KMC sponsored events.

Sexual harassment, defined as non-gender specific, is subject to disciplinary action, and includes the following:

    i. Harassment of women by men, men by women, or persons of the same gender;

    ii. Unwelcome sexual advances;

    iii. Requests for sexual favors and sexual displays of any kind;

    iv. Inappropriate sexual behavior or verbal abuse that is sexually based and offensive in nature.

# PRIVACY RIGHTS

The University adheres to the mandates of the United States Family Educational Rights and Privacy Act (FERPA):

1. The student has the right to inspect and review his educational record within 45 days of the University's receiving a written request for access. Students must submit this written request to the Dean of Student Services identifying the records they wish to inspect. The Dean of Student Services will notify the student of the time and place where the record may be inspected.

2. Students have the right to request the amendment of their educational records. Students may write to the Dean of Student Services to identify the part of the record they wish to have corrected and specify why it is inaccurate.

3. If the University decides not to make the requested amendment it notifies the student and advises the student of her right to a hearing. The University provides additional information about the hearing with the notification.

4. The student has the right to consent to disclosures of personally identifiable information contained in his educational record, except to the extent that FERPA authorizes disclosure without consent.

One exception is disclosure to school officials with legitimate educational interest. A school official is a person employed by the University in an administrative, supervisory, academic, research or support position (including law enforcement personnel and health staff); a person or company with whom the University has contracted (such as an attorney, auditor, or collection

AUA-KMC_2007 Student Handbook_v31407                                              25

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Argument By Mr. Buikema
Monday/April 19, 2010

13

1   claim which is, "Willful violation of Family

2   Educational Rights and Privacy Act"?

3       MR. BUIKEMA:  Correct.

4       THE COURT:  I'm reading from your brief, "The

5   Family Educational Rights and Privacy Act of 1974

6   prohibits the federal funding of educational

7   institutions that have a policy of practice of

8   releasing education records without authorized

9   persons."  What's that got to do with this case?

10       MR. BUIKEMA:  In my view, Your Honor, it's a

11  wrongful act predicate to a tortious interference

12  claim.  And perhaps that's not made as clear as it

13  should be by our pleadings but that's how I regard this

14  claim.

15       FERPA prohibits disclosures of students'

16  information by the University itself.  And has, as

17  consequence, the termination of federal funding, which

18  my client does receive and some of the students receive

19  benefits under that provision.

20       It's my view that Mr. Woodward's conduct in

21  disclosing student information grades, which he admits

22  to doing and, in fact, has muddied this record by

23  attaching yet more of that information, creates

24  standing to my client -- gives standing to my client

25  the challenge on behalf of its students.

*10-10978; American University of Antigua v. Steven Woodward*

**EXHIBIT 4**

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Argument By Mr. Buikema
Monday/April 19, 2010
                                                    14

1        But more importantly --

2        THE COURT:  Why, he's not an agent of the

3   university in any way, shape or form?

4        MR. BUIKEMA:  But we are an agent of our students

5   whose information has been --

6        THE COURT:  But this prohibits the University from

7   doing it.  How could you possibly argue that the

8   University is doing it, when they're not?

9        MR. BUIKEMA:  I'm not sure I understand Your

10  Honor's question.

11       THE COURT:  It says, "It prohibits federal funding

12  of educational institutions who have a policy or

13  practice."  You don't contend the education has a

14  policy or practice, do you?

15       MR. BUIKEMA:  I do not contend that it has a

16  policy or practice.  But Mr. Woodward's actions in

17  disclosing the student information could cause the

18  federal government to terminate funding --

19       THE COURT:  How could that be a policy or practice

20  of the University?  How would anyone ever believe his

21  conduct is a practice or policy of the University?

22       MR. BUIKEMA:  I'd rather not find out, frankly,

23  Your Honor.

24       THE COURT:  It's just ridiculous.  I don't know

25  why you're arguing that.  His conduct can't be

_10-10978; American University of Antigua v. Steven Woodward_

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY
Argument By Mr. Buikema
Monday/April 19, 2010                                    15

1     considered a policy or practice of the University.  You

2     said that from the very beginning, it's not.  I don't

3     know why you're arguing these claims that have very

4     little, if any, merit.

5          And the problem is you can -- obviously, an

6     attorney can argue alternate theories, but you've got

7     to have some basis for the alternate theory or what

8     happens is, the Court says, "Wow, he's just throwing

9     everything in there so if they're weak, all his claims

10    must be equally weak."

11         And it's just a bad practice, in my judgment, to

12    assert any claim unless you have solid evidence that

13    there's at least some good merit to it and I don't

14    think there's any merit to this claim at all.

15         MR. BUIKEMA:  Again, Your Honor, I think my

16    pleadings are confusing in that regard and I'm not

17    intending to argue to this Court that there is an

18    independent clause of action that exist in my client

19    because of FERPA.

20         What I'm arguing is that Mr. Woodward's

21    publication of private student information which would

22    be violative of FERPA is a tortious interference with a

23    third-party expectancy --

24         THE COURT:  It's not tortious interference.

25         MR. BUIKEMA:  -- because the federal funding

*10-10978; American University of Antigua v. Steven Woodward*

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Argument By Mr. Buikema                    18
Monday/April 19, 2010

1    allegations in our complaint are true", and it's signed

2    by the President of the University.

3        THE COURT:  Hold on.

4        MR. BUIKEMA:  In fact, that's the only evidence

5    you have, in this case, thus far.

6        THE COURT:  Hold on.  Tell me what the verified

7    complaint says with respect to these individual items.

8        MR. BUIKEMA:  I will.

9        If you look at page four of the verified

10   complaint, paragraph 21, Your Honor, reads:

11   "Defendant's website represents, alleges, and

12   publishes, as if true, false and defamatory about AUA,

13   including by way of example and not by limitation

14   that:"

15       And then you see the same subparagraphs "A"

16   through "P" in that allegation.

17       The very last page, of course, is a verification

18   signed, under oath, by the President of the University

19   indicating that the allegations contained in the

20   complaint are, in fact, true.  He's reviewed them and

21   the like.

22       So, he's affirmed that those representations by

23   Mr. Woodward's website are false in sworn testimony.

24       THE COURT:  Who signed the affidavit?

25       MR. WOODWARD:  The President of the University.

10-10978; American University of Antigua v. Steven Woodward

AVAILABLE AT PUBLIC TERMINAL FOR VIEWING ONLY

Argument By Mr. Buikema
Monday/April 19, 2010

19

1   His name is Neil Simon, not to be confused with the

2   playwright.

3       THE COURT:  Let's go, for example, to small "h":

4   "AUA students are sexually assaulted."  Is that a false

5   statement?

6       MR. BUIKEMA:  In and of itself, an AUA student was

7   apparently assaulted.  The connotation of AUA students

8   being sexually assaulted, in the tense, is a false

9   statement.

10      THE COURT:  In the what?

11      MR. BUIKEMA:  In the tense utilized or represented

12  by the website is a false statement.

13      THE COURT:  I'm missing what you're talking about,

14  "Tense".

15      MR. BUIKEMA:  The statement in the website

16  connotes a general practice or happening as if "All

17  students" or generally students are sexually assaulted

18  at AUA.

19      THE COURT:  That's the spin you put on it.  But

20  the statement itself is true, "AUA students are

21  sexually assaulted", have they?

22      MR. BUIKEMA:  An AUA student was sexually

23  assaulted.

24      THE COURT:  Only one?

25      MR. BUIKEMA:  To my knowledge, yes.

*10-10978; American University of Antigua v. Steven Woodward*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA
COLLEGE OF MEDICINE,

        Plaintiff,

v.

STEVEN L. WOODWARD,

        Defendant.

_____/

Case No. 10-10978
Honorable Patrick J. Duggan

## OPINION

On March 11, 2010, Plaintiff American University of Antigua College of Medicine
("AUA") filed this lawsuit against Defendant Steven L. Woodward ("Woodward"),
seeking to quiet his complaints about AUA and shut down his internet website with the
domain name www.aua-med.com where many of his complaints are being published.
AUA alleges the following claims against Woodward in its Complaint: (I) trademark
infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (II) infringement under
the Anticybersquatting Consumer Protection Act of 1999 ("ACPA"), 15 U.S.C.
§ 1125(d); (III) violation of the Family Educational Rights and Privacy Act of 1974, 20
U.S.C. § 1232g; and (IV) defamation in violation of Michigan law.  AUA seeks a
permanent injunction prohibiting Woodward from publishing, on his website or by any
other means or medium, defamatory content or AUA proprietary information (including
student academic records other than his own).  AUA also asks the Court to order
Woodward to forfeit the domain names he has registered using "AUA" and to award

Counter
Claim

**EXHIBIT 5**

5

> trade on the names and reputations of established brands. The practice of
> informing fellow consumers of one's experience with a particular service
> provider is surely not inconsistent with this ideal.

*Id.* at 811. Other courts have reached the identical conclusion: that registering a website

with a domain name identical to or confusingly similar to the plaintiff's for the sole

purpose of "cyber-griping" is not the type of activity made illegal by the ACPA. *See*

*Mayflower Transit*, 314 F. Supp. 2d at 369 (cases cited therein); *Utah Lighthouse*

*Ministry*, 527 F.3d at 1058 (cases cited therein).

In the present matter, Woodward, according to AUA, is a disgruntled former

medical student seeking revenge for his discharge from AUA's medical program. There

is no evidence that he is seeking to profit from his use of the aua-med.com website,

specifically that he ever attempted to sell the domain name to AUA or anyone else or that

his website advertises or provides links to any goods or services. Instead, the evidence

indicates that Woodward created the website exclusively as a means of expressing his

anger and dissatisfaction with AUA and its medical program. Therefore, there is no

evidence supporting a finding that Woodward's conduct violates the ACPA.

AUA accordingly is not entitled to summary judgment based on its ACPA claim

(Count II). Furthermore, the Court concludes that summary judgment for Woodward

pursuant to Federal Rule of Civil Procedure 56(f) is appropriate with respect to this claim.

## Defamation

### Establishing Defamation

To establish a claim for defamation under Michigan law, a plaintiff must show the

13

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

     Plaintiff,

V                                                       Case No.

STEVEN WOODWARD,

     Defendant.

ERIC A. BUIKEMA (P58379)
Cardelli, Lanfear, & Buikema, PC
Attorneys for Plaintiff
322 W. Lincoln
Royal Oak, MI 48067
(248) 544-1100

## PLAINTIFF'S VERIFIED COMPLAINT AND EX PARTE REQUEST FOR TEMPORARY RESTRAINING ORDER

NOW COMES Plaintiff, American University of Antigua, College of Medicine, by and through its attorneys, CARDELLI, LANFEAR & BUIKEMA, P.C., and for its Verified Complaint and Ex Parte Request for Temporary Restraining Order, states as follows:

1.     Plaintiff American University of Antigua, College of Medicine ("AUA") is an Antiguan corporation located at University Place, Antigua, West Indies.

2.     Plaintiff places students in certain Michigan hospitals for clinical education and training.



**EXHIBIT 6**