

Case 2:10-cv-10978-PJD-MJH

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

Plaintiff,

V                                         CASE No.: 2:10-cv-10978-PJD-MJH
                                          Judge Patrick J. Duggan

STEVEN WOODWARD,

Defendant,


**Emergency Motion for Leave to File Motion to Dismiss, and Emergency Motion for
Renewed Motion to Dismiss Docket 16.**

1

**Emergency Motion for Leave to File Motion to Dismiss, and Emergency Motion for Renewed Motion to Dismiss Docket 16.**

The Defendant Requests Leave to File Motion to Dismiss and Motion for Renewed

Motion to Dismiss of Plaintiff's Claims per Docket 16 and Docket 27, including

Damages, Emotional Distress, Treble Punitive Damages, and Sanctions. *Expenses*

According to Case Law, per United States District Court District of Connecticut, Case no.

3:06cv00849(AWT) Radecki v. Glaxosmithkline, **Exhibit 1** and upheld in United States

Court of Appeals No. 09-3901-cv, **Exhibit 2,** that **"dismiss with prejudice as a**

**sanction for perjury"** and **"gives false testimony concerning a material matter with**

**the willful intent to provide false testimony, rather than as a result of confusion,**

**mistake, or faulty memory"**

The Defendant, Steven Woodward, will prove that according to the Plaintiff own

documentation and testimony before the Court in conjunction with testimony and

documentation by the Honorable United States Federal Judge Patrick J. Duggan; Neal

Simon, an Officer of the Court, and president of a Medical School, has committed

perjury, made False Declarations before the United States Federal Court, and committed

obstruction.

**a)** Neal Simon's verified complaint Docket 1, page 12, **Exhibit 3**, was signed and taken

under oath.  On page 5, of Docket 1, the Plaintiff swears under oath to statements

**"h. AUA students are sexually assaulted"**

**"l. AUA student pass rate for USMLE medical board exams is only 22.9%"**

These statements are repeated on page 10, number 54, of Docket 1, title **"Count IV –**

**Defamation"**  Neal Simon also swore under oath that

**"55. Each and every one of these "facts" is false."** page 10, Docket 1.

**1)** Neal Simon swore the Defendant was guilty of "Count I- Federal Trademark/Tradename Infringement", page 6 of Docket 1.

**2)** Neal Simon swore the Defendant was guilty of "Count II – Infringement Under The ACPA", page 8 of Docket 1.

**3)** Neal Simon swore the Defendant was guilty of "Count III-Willful Violation of FERPA", page 9 of Docket 1.

**4)** The Plaintiff's Docket 8, filed 04/15/2010, **Exhibit 4**, restates and confirms Plaintiff's statements and intentions to proceed with actions against Mr. Woodward on these false claims.

**A)** Docket 8, **Exhibit 4**, Plaintiff's Brief In Support Of It's Motion For A Preliminary Injunction" page 2 and 3, states:

**"h. AUA students are sexually assaulted"**

**"l. AUA student pass rate for USMLE medical board exams is only 22.9%"**

on page 4 the Plaintiff states **"a. Trademark/Tradename Infringement"**, page 7 **"b. Infringement Under the ACPA"**, page 8 **"c. Willfull Violation of the FERPA"** and **"d. Defamation"**

**B)** The Plaintiff's "Exhibit A" of Docket 8 is the Docket 1 verified complaint.

**C)** The Plaintiff's "Exhibit C" of Docket 8 is a copy of the Defendant's "http://www.aua-med.com/main.html" page.

The Plaintiff's own "Exhibit C" of Docket 8 proves the Defendant did not state **"AUA students are sexually assaulted"** or **"AUA student pass rate for USMLE medical board exams is only 22.9%",**

The Defendant's statements were in fact:

**"AUA student sexually assaulted"** and **"Antigua only has a 22.9% USMLE Pass Rate"**

The Plaintiff's own Docket 8 "Exhibit C" is evidence that Neal Simon committed perjury and made False Declarations before the United States Federal Court.

**5)** The Plaintiff confirms Neal Simons oath as well as the Defamation statements on April 19, 2010 before Honorable Judge Patrick J. Duggan, **Exhibit 5**, page 18, line 9

**"Mr. Buikema**: I will. If you look at page four of the verified complaint, paragraph 21, Your Honor, reads: "Defendant's website represents, alleges, and publishes, as if true, false and defamatory about AUA. including by way of example and not by limitation that: "And then you see the same subparagraphs "A" through "P" in that allegation. The very last page, of course, is a verification signed, under oath, by the President of the University indicating that the allegations contained in the complaint are in fact, true. He's reviewed them and the like. So, he's affirmed that those representations by Mr. Woodward's website are false in sworn testimony."


**b)** The Plaintiff had the opportunity to save themselves of any error or fault on April 19, 2010 during the hearing before the Honorable Judge Patrick J. Duggan.

Instead the Plaintiff confirms perjury before the Court and Judge Patrick J. Duggan.

Transcripts, April 19, 2010, **Exhibit 5**, page 19, line 3

**"The Court**: Let's go, for example, to small "h": "**AUA students are sexually assaulted.**" Is that a false statement?

4

**Mr. Buikema**: In and of itself, an AUA student was apparently assaulted.  The connotation of AUA students being sexually assaulted, in the tense, is a false statement.

**The Court**: In the what?

**Mr. Buikema**: In the tense utilized or represented by the website is a false statement.

**The Court**: I'm missing what you're talking about, "TENSE".

**Mr. Buikema**: The statement in the website connotes a general practice or happening as if "All students" or generally students are sexually assaulted at AUA.

**The Court**: That's the spin you put on it.  **But the statement itself is true**, "AUA students are sexually assaulted", have they?

**Mr. Buikema: An AUA student was sexually assaulted**"

Mr. Buikema and Judge Patrick J. Duggan confirm that Mr. Woodward's statement was in fact **TRUE**.  Mr. Buikema tried to defend blatant, known and willful, perjury by Neal Simon before Judge Patrick J. Duggan.  The Plaintiff's own Docket 8, Exhibit C, confirms further willful perjury.


**c)** The Plaintiff's statement **"AUA student pass rate for USMLE medical board exams is only 22.9% "** is more evidence of a statement of perjury and a False Declaration before the Court on April 19, 2010,  **Exhibit 5**, page 29, Line 13

**Mr. Woodward**: "When it says, "AUA student rate for USMLE medical board is only 22.9% percent", that is not what my website says and I have evidence to show that.  What it is, it's Antigua does."

**Exhibit 5**, page 30, Line 3

"**The Court**: You never said it?

**Mr. Woodward**: Never said it.

**The Court**: Stop, Stop, Counsel, why do you say he said it?

**Mr. Buikema**: That's my understanding of the website publication."

Mr. Woodward NEVER made that statement and the Plaintiff's own "Exhibit C"

confirmed it.


**d)** Honorable Judge Patrick J. Duggan states in Docket 184, page 23, **Exhibit 6**.

"Woodward **no longer** states on his website that "AUA students are sexually assaulted"

(see Request for Admissions No. 22 (emphasis added)); instead, he asserts; "AUA

student sexually assaulted." See http://aua-med.com.  Woodward presents evidence to

show that this is a true statement.  Similarly, Woodward **no longer** states that "AUA's

student pass rate for USMLE medical board exams is only 22.9%." (Request for

Admissions No. 28.)  Instead Woodward states that "Antigua only has a 22.9% USMLE

Pass Rate!"  See id. (emphasis added).  "A preliminary injunction is proper only to

prevent an on-going violation."

Judge Patrick J. Duggan knew from the April 19, 2010 Hearing as well as the Plaintiff's

own Docket 8, Exhibit C, that Woodward **NEVER** said "AUA students are sexually

assaulted" or "AUA student pass rate for USMLE medical board exams is only 22.9%".


**e)** Mr. Woodward's Docket 16, **Exhibit 7**, filed July 19, 2010 and Docket 27, **Exhibit 8**,

was filed on August 6, 2010.  The Plaintiff filed Docket 32, **Exhibit 9**, to defend against

Mr. Woodward's Docket 16 and Docket 27.

**1)** The Plaintiff asserted in Docket 32, page 1, number 1.

"**Defendant is in Default (Docket No. 14)**"

**2)** The Plaintiff Filed Docket 13, Request For Clerk's Entry Of Default, **Exhibit 10**.

The Plaintiff swore in Docket 13

"**In accordance with Fed. R. Civ. P. 55(a), I request that a Clerk's Entry Of Default be entered against STEVEN WOODWARD for failure to plead of otherwise defend.**"

The Plaintiff further testifies in Docket 13, number 4.

"**This statement is true and is signed under the penalty of perjury**"

**3)** The Honorable Judge Patrick J. Duggan files Docket 37, Opinion and Order, **Exhibit 11**, includes ruling on Docket 16, Docket 27 and The Plaintiff's Entry of Default.

It is obvious that the Plaintiff wrongfully filed Docket 13, Request For Clerk's Entry Of Default, submitted under the penalty of perjury by an Officer of the Court.

The Defendant's Docket 16 and Docket 27 was not heard because of the Plaintiff's wrongful Request for Default.

**f)** Neal Simon's Docket 1, verified complaint concerning, sworn under oath, Count I – Federal Trademark/Tradename Infringement, Count II – Infringement Under The ACPA, and Count III- Willful Violation Of FERPA have been confirmed by Judge Patrick J. Duggan in Docket 184, **Exhibit 6**, that

**Mr. Woodward is innocent of any of these False Declarations and perjury made under oath by an Officer of the Court, Neal Simon, an Officer of the Court.**

"AUA's claims under the Lanham Act, Anticybersquatting Consumer Protection

Act, and Family Educational Rights and Privacy Act of 1974 (Counts I-III,

respectively) fail as a matter of law"

Neal Simon being an Officer of the Court filed Obvious False Declarations against Mr.

Woodward amounting to perjury.  Neal Simon went as far as to include in his Docket 1,

**Exhibit 3**, Complaint

Docket 1-2 **"Order Regarding Ex Parte Request For Temporary Restraining Order"**

the obvious intentions to use the United States Federal Court to violate Mr. Woodward.


**g)** The Bad Faith of this Plaintiff could not be more clear than AUA's blatant refusal to

cooperate in Discovery, violating at least Fed Rule 26, Fed Rule 34, punishable by Fed

Rule 37.  The Plaintiff's refusal to produce Mr. Woodward's own student records,

violating Federal Law as well as the Plaintiff's Student Handbook, contractual obligation.

Combined amounts to willful refusal to produce evidence equating to Obstruction.

**1)** The Plaintiff admits to refusing to participate in Discovery before the Honorable Judge

Patrick J. Duggan during Hearing August 11, 2011, page 24, line 9, **Exhibit 12**.

**"Mr. Buikema: Yes, I refused to accept documents"**

**2)** Mr. Woodward requested the production of Documents per Fed Rule 34 on **November**

**22, 2010, Exhibit 13**.

"Attached is:

Defendant's Interrogatories to Plaintiff

**Defendant's Request for Documentation"**

**3)** It has taken the Defendant nearly a year to force the Plaintiff to just respond to the Defendant's Request for Documentation, **November 11, 2011, Exhibit 14**, and only after being forced by Court Orders.  The Plaintiff still hasn't produced to Mr. Woodward his Student Records as of the writing of this Motion.  The Plaintiff has produced four transcripts, three of which the Defendant gave to the Plaintiff which were included in the 2,500(+) pages of documentation the Defendant gave, free of charge, to the Plaintiff and Mr. Woodward's personal deposition which Mr. Woodward did not request.

Mr. Woodward's evidence produced in this Motion  is an example of the heinous and vile nature of how this so-called Medical School has treated Mr. Woodward in the past.  There is no excuse for AUA's behavior; there is no reason AUA should not be punished to the fullest extent of the Law before more irreparable damage is caused to any more students.

Steven Woodward
7211 Brittwood Ln
Flint, MI 48507
(810)235-7267

9

**List of Authority:**
Case Law Radecki v. Glaxosmithkiline 3:06cv00849(AWT) and Appeals No. 09-3901-cv
Obstruction: 18 U.S.C. 1505
Perjury: 18 U.S.C. 1621
False Declaration Before Grand Jury or Court
18 U.S.C. 1623

**List of Exhibits:**
Exhibit 1: Civil No. 3:06cv00849
Exhibit 2: Appeal Case No. 09-3901-cv
Exhibit 3: Docket 1
Exhibit 4: Docket 8
Exhibit 5: Transcript April 19. 2010
Exhibit 6: Docket 184, Opinion
Exhibit 7: Docket 16
Exhibit 8: Docket 27
Exhibit 9: Docket 32
Exhibit 10: Docket 13
Exhibit 11: Docket 37
Exhibit 12: Transcript August 11, 2011
Exhibit 13: Email Defendant's Discovery Request
Exhibit 14: Email Plaintiff's Response to Defendant's Request for Production

Certificate of Service

The undersigned certifies that the foregoing "**Emergency Motion for Leave to File Motion to Dismiss, and Emergency Motion for Renewed Motion to Dismiss Docket 16**" was served upon Plaintiff via U.S. mail to American University of Antigua, via council, Eric A. Buikema (P58379), 322 West Lincoln Ave, Royal Oak, Michigan 48067

Steven Woodward
7211 Brittwood Ln
Flint, Michigan 48507

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------x
                                    :
D. BRIAN RADECKI,                   :
                                    :
          Plaintiff,                :
                                    :
v.                                  :  Civil No. 3:06cv00849(AWT)
                                    :
GLAXOSMITHKLINE                     :
                                    :
          Defendant.                :
                                    :
------------------------------------x
```

## RULING ON MOTION TO DISMISS WITH PREJUDICE AND FOR COSTS AND FEES

The defendant has moved for a sanction in the form of dismissal with prejudice of the plaintiff's claims in this action or, in the alternative, for an award of costs and fees associated with the mistrial declared in this action and the instant motion. For the reasons set forth below, the court is dismissing the plaintiff's case with prejudice.

I.    **STATEMENT OF FACTS**

Plaintiff D. Brian Radecki ("Radecki") commenced employment with defendant GlaxoSmithKline ("GSK") on February 5, 2001 as a pharmaceutical sales representative.  Radecki injured his knee in May 2004 and went on leave from May 25 to July 29, 2004 under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq..  He subsequently took a second medical leave from August 13 to August 31, 2004 and a third medical leave from February 18 to May 27, 2005, both relating to the same knee injury.  On June 7, 2005, GSK terminated his employment.

**EXHIBIT** 1

Q.  When you walked out of the door, what was your understanding-- when you walked out of that meeting . . ., what was your understanding of your health condition at that time?
A.   That I definitely had prostate cancer and probably had a brain tumor.
Q.  Did you later learn that that wasn't -- that you did not have the brain tumor?
A.   Yes, when I sat in my car on the 6th of November and opened this up.

(Radecki Dep. 550:6-15, June 19, 2009.)  Thus, Radecki concedes that by November 6, 2008, he knew that he did not have a metastatic brain lesion.

## II.  DISCUSSION

After considering Radecki's testimony on May 7, 2009 and the other relevant evidence, the court concludes, on the basis of clear and convincing evidence, that he committed perjury and that a sanction is appropriate.  After considering the possible sanctions available, the court concludes that a sanction of dismissal with prejudice is most appropriate, under the circumstances of this case, in view of the fact that Radecki committed perjury in a formal proceeding.

### A.   Perjury

Perjury is "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." U.S. v. Dunnigan, 507 U.S. 87, 94 (1993).

Radecki gave false testimony when he stated "I had -- have stage III prostate cancer with a metastatic brain lesion."

-8-

2

+You  Search  Images  Videos  Maps  News  Shopping  Gmail  More ·        auatruth1@gmail.com ·

Google scholar    [ Radecki v. GlaxoSmithKline ]    [ Search ]    Advanced Scholar Search

|                        |             | **Radecki v. GLAXOSMITHKLINE, Court of Appeals, 2nd Circuit 2010** |
|------------------------|-------------|---|
| **Read this case**     | How cited   | |

Highlighting **Radecki v. GlaxoSmithKline**  Remove highlighting

### D. BRIAN RADECKI, Plaintiff-Appellant,

### v.

### GLAXOSMITHKLINE, Defendant-Appellee.[**]

No. 09-3901-cv.

**United States Court of Appeals, Second Circuit.**

April 27, 2010.

CRAIG T. DICKINSON, Dickinson & Mallow, Waterbury, CT, for Plaintiff-Appellant.

FELIX J. SPRINGER (Stacy Smith Walsh, on the brief), Day Pitney LLP, Hartford, CT, for Defendant-Appellee.

Present: BARRINGTON D. PARKER, DEBRA ANN LIVINGSTON, DENNY CHIN, Circuit Judges.[*]

## SUMMARY ORDER

UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be AFFIRMED.

Plaintiff-Appellant D. Brian **Radecki** ("**Radecki**") appeals from an August 21, 2009, opinion of the United States District Court for the District of Connecticut (Thompson, *J.*) granting the motion of Defendant-Appellee **GlaxoSmithKline** ("GSK") to dismiss with prejudice as a sanction for perjury. We assume the parties' familiarity with the underlying facts, procedural history, and specification of the issues on appeal.

We review the district court's decision to impose sanctions under its inherent power for abuse of discretion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991); *United States v. Seltzer*, 227 F.3d 36, 39 (2d Cir. 2000). "Whether a litigant was at fault or acted willfully or in bad faith are questions of fact, and we review the District Court's determinations for clear error." *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir. 2009).

"A witness testifying under oath or affirmation" commits perjury if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). Perjury is committed with willful intent when "made `with the specific purpose of obstructing justice,'" and the material matter must be "material to the proceeding in which it is given." *United States v. Ben-Shimon*, 249 F.3d 98, 102 (2d Cir. 2001) (quoting *United States v. Zagari*, 111 F.3d 307, 329 (2d Cir. 1997)).

We find that the district court did not commit clear error in its determination that **Radecki** gave willfully false testimony concerning a material matter. The record shows that **Radecki** stated that he stopped looking for work "[b]ecause ... I learned that I had have Stage III prostate

**EXHIBIT    2**

cancer with a metastatic brain lesion." His medical records indicate that this statement was false as to the brain lesion. Moreover, **Radecki's** deposition evidences that he was aware at the time that he testified that he did not have and had never had such a lesion. **Radecki** relies on an initial statement by the district court that the specifics of **Radecki's** medical condition were "not material" to suggest that the testimony did not concern a material matter. This off-the-cuff, oral statement, made when all parties believed **Radecki's** statement to be truthful and were attempting to craft a remedy accordingly, did not constitute a ruling on the materiality of **Radecki's** statement to the proceeding and in no way undercuts the district court's later, well-reasoned written decision, made with the benefits of briefing from the parties and a review of the record, that **Radecki's** statement did constitute perjury.

We also find that the district court did not abuse its discretion in granting the motion to dismiss with prejudice. Although dismissal is a "harsh sanction" and we therefore generally require a district court to consider the appropriateness of lesser remedial measures, *In re Harris,* 464 F.3d 263, 272 (2d Cir. 2006), a showing of "willfulness, bad faith, or fault on the part of the sanctioned party" may nonetheless justify such measures. *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999). As the Supreme Court has stated, "[f]alse testimony in a formal proceeding is intolerable" and therefore "[p]erjury should be severely sanctioned in appropriate cases." *ABF Freight Sys., Inc. v. NLRB,* 510 U.S. 317, 323 (1994). Here, the district court thoughtfully considered the nature and motivation of the perjured testimony, **Radecki's** later attempt to conceal the perjury with additional misleading statements to the court, the prejudice to GSK, and the affront to the court that would be tolerated by imposition of a lesser sanction and concluded that dismissal was warranted. This was not an abuse of the district court's inherent power to sanction.

We have considered all of the parties' remaining arguments and find them to be without merit.

For the foregoing reasons, the judgment of the district court is hereby affirmed.

[**] The Clerk of the Court is directed to amend the official caption in this case to conform to the listing of the parties stated above.

[*] At the time of oral argument, Judge Chin was a member of the United States District Court for the Southern District of New York, sitting by designation.

©2011 Google

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

     Plaintiff,

V                                                         Case No.

STEVEN WOODWARD,

     Defendant.

---

ERIC A. BUIKEMA (P58379)
Cardelli, Lanfear, & Buikema, PC
Attorneys for Plaintiff
322 W. Lincoln
Royal Oak, MI 48067
(248) 544-1100

---

## PLAINTIFF'S VERIFIED COMPLAINT AND EX PARTE REQUEST FOR TEMPORARY RESTRAINING ORDER

     NOW COMES Plaintiff, American University of Antigua, College of Medicine, by and through its attorneys, CARDELLI, LANFEAR & BUIKEMA, P.C., and for its Verified Complaint and Ex Parte Request for Temporary Restraining Order, states as follows:

     1.     Plaintiff American University of Antigua, College of Medicine ("AUA") is an Antiguan corporation located at University Place, Antigua, West Indies.

     2.     Plaintiff places students in certain Michigan hospitals for clinical education and training.

**EXHIBIT**

**3**

3.     Defendant Steven Woodward is a resident of Flint, Michigan who, upon last information and belief, makes his home on a sailboat in the vicinity of Flint, Michigan.

4.     This action arises, in most basic summary, out of Defendant's ownership and publication of a website, and derivative publications, containing false and defamatory information about AUA, as well as private information about AUA students protected from disclosure under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g), and by his use of a confusingly similar domain name ("www.aua-med.com") that infringes upon and/or dilutes AUA's protected trade name under Federal Statutory and common law including, but not limited to, the United States Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1125(c), and the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).

5.     The amount in controversy exceeds $75,000 exclusive of fees, costs or interest.

6.     This court has jurisdiction over Plaintiff's Federal Statutory claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's common law claims pursuant to 28 U.S.C. § 1367. As there exists complete diversity of citizenship amongst the parties, this court further has jurisdiction pursuant to 28 U.S.C. § 1332.

7.     As the sole Defendant is a resident of this judicial district, venue is proper pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

8.      AUA is a foreign medical school catering, in part, to students from the United States including Michigan.

9.      AUA regularly places and directs students in clinical education in association with Michigan hospitals.

10.     Defendant Steven Woodward is a former student of AUA.

11.     As a result of misconduct, Defendant was discharged from AUA without completion of his degree.

12.     That is, Defendant is a disgruntled former student of AUA.

13.     As a result of his dismissal from the University, Defendant initiated a lawsuit against AUA and its educational partner hospital Trinity-Health Michigan's St. Joseph Mercy Hospital in Pontiac, Michigan.

14.     The lawsuit was filed in the Oakland County Circuit Court on or about December 20, 2007, where it was known as Case No. 07-088103-CZ and assigned to the Honorable Shalina Kumar.

15.     In the suit, Mr. Woodward alleged that AUA and/or Trinity slandered him, intentionally inflicted emotional distress, tortiously interfered with a contractual relationship, invaded a right to privacy and breached a contract.

16.     The court concluded that Mr. Woodward's allegations were baseless and granted AUA summary disposition of the same on June 30, 2008.  The court similarly granted summary disposition to Trinity on April 29, 2009 finding, on the merits, that the claimed defamatory remarks as to Woodward's misconduct were actually, in fact, true.

3

17.     As a result of Mr. Woodward's apparent dissatisfaction with this result and with everyone and everything other than the party truly responsible for his circumstance (himself), he has now registered an internet domain name of www.aua-med.com at which he publishes reckless, false, and malicious purported "facts" about AUA in addition to other objectionable content.

18.     A specific date when Mr. Woodward commenced his endeavor is not known but it is well after AUA's first usage in trade of its own similar name and website www.auamed.org.

19.     A copy of the legitimate www.auamed.org website homepage is attached as Exhibit 1.

20.     A copy of Defendant's www.aua-med.com website homepage is attached as Exhibit 2.

21.     Defendant's website represents, alleges and publishes, as if true, false and defamatory information about AUA including, by way of example and not limitation, that:

    a.     AUA routinely commits fraud upon its students;

    b.     AUA falsifies its students grades;

    c.     AUA breaches contracts;

    d.     AUA disregards student civil rights;

    e.     AUA conspires against its students;

    f.     AUA pursues unspecified and other unethical practices;

    g.     AUA has "malicious intensions" and administration and academic advisors of a "heinous nature";

h.   AUA students are sexually assaulted;

i.   AUA professors teach students wrong information;

j.   AUA conspires to commit fraud and violations of civil rights;

k.   AUA commits criminal activities reportable to the FBI;

l.   AUA student pass rate for USMLE medical board exams is only 22.9%;

m.   AUA contrives false evidence in student disciplinary proceedings (i.e, the hearing Mr. Woodward was provided prior to dismissal and refused to even attend);

n.   AUA colluded with St. Joseph Hospital to maliciously end Mr. Woodward's career, conspired, abused its power, committed perjury and is otherwise immoral and unethical;

o.   AUA agents are liars;

p.   The locality of AUA is full of "rape, murder, fraud, and government corruption."

22.   Defendant's website further publishes, in a manner not repeated here, and without consent of the university or its affected students, other students' identities and personal information including grades and academic information.

22.   In that Plaintiff utilizes its own website to market and provide useful information to prospective students, AUA suffers irreparable injury and harm to its reputation each day that Mr. Woodward's appalling site is permitted to remain available.

23.   Moreover, irreparable injury to AUA and its affected students occurs, for which there is not an adequate remedy at law, by virtue of Mr. Woodward's unsanctioned and unauthorized publication of federally protected private academic information.

24.     Consequently, AUA respectfully requests an immediate, but temporary (until such time as opportunity for hearing can be afforded) restraining order prohibiting further publication of this offending information by any means and further prohibiting use, of any kind, of the confusingly similar domain name.

25.     Pursuant to FRCP 65(b)(1), AUA seeks temporary restraining order relief on an immediate and ex parte basis because, as demonstrated by this verified complaint, irreparable injury is occurring and will continue to occur and because Mr. Woodward cannot be located for purpose of immediate service.  Undersigned counsel has made reasonable and diligent search of the prior lawsuit file and record, including the deposition of Mr. Woodward, which reveals, solely, that he resides on a movable sailboat and utilizes his sister's Flint address as a mailing address.

26.     A proposed temporary restraining order is appended as Exhibit 3.

## COUNT I- FEDERAL TRADEMARK/TRADENAME INFRINGEMENT

27.     Plaintiff incorporates and restates its answers to paragraphs 1 through 26 above.

28.     Defendant publishes information under a domain name of www.aua-med.com.

29.     Plaintiff has published legitimate information about its educational institution under the domain name www.auamed.org and has otherwise utilized the root term "auamed" in trade since long before Defendant first utilized the above referenced domain name.

30.     Defendant's use of the confusingly similar name, and resultant accessibility by any consumer utilizing common search terms employed to glean

legitimate information about the University is likely to cause confusion as to whether the Defendant's website is somehow endorsed, sponsored, licensed or affiliated with the AUA.

31.     Defendant's actions, along with the use on the offending website of information purportedly from, sponsored or published by AUA (including items bearing the AUA logo) constitute willful infringement upon AUA's exclusive rights in its tradename and trademarks under 15 U.S.C. § 1114.

32.     Defendant's use of the similar domain name, including copies, reproductions and/or counterfeits of the AUA logo on the site itself has been, and continues to be done with the intent to cause confusion, mistake and harm as to the source or sponsorship of the information disseminated.

33.     As a direct and proximate result, AUA has suffered irreparable harm to its protected tradename and trademarks.

34.     AUA has no adequate remedy at law that will compensate it for the continued harm it will suffer if Defendant's acts are allowed to continue.

35.     AUA has gained a reputation as a well respected educational institution and there is an association of its tradename and marks with this reputation.

36.     Defendant has utilized that name and the marks with the intention of maliciously attacking that reputation and goodwill to satisfy some misguided personal vendetta against the University.

37.     Defendant publishes false information in conjunction with the tradename and marks that dilutes, blurs and tarnishes the distinctiveness and positive association of the same.

38.    Accordingly, this is an exceptional case within the meaning of the Lanham Act.

39.    In addition to the temporary relief prayed for elsewhere in this verified complaint AUA respectfully requests permanent injunction as well as all rights, remedies and damages available at law including but not limited to treble damages and attorney fees.

WHEREFORE, Plaintiff American University of Antigua, respectfully requests a judgment against Defendant, together with costs, interest, and attorney fees.

## COUNT II- INFRINGEMENT UNDER THE ACPA

40.    Plaintiff incorporates and restates its answers to paragraphs 1 through 39 above.

41.    Defendant has registered, in bad faith and with intent to profit, a domain name confusingly similar to that utilized by AUA in the course of its business.

42.    The AUA domain is distinctive and has been utilized in trade (as has its root tradename ("AUAMED") since long before Defendant's offending registration and use of www.aua-med.com.

43.    The AUA tradename and domain name are widely recognized by the general consuming public as a designation of services and source of same from AUA.

44.    Defendant's conduct is not a fair usage.

45.    Defendant has attempted to profit from the use of this site directly and by leveraging the same in the prior litigation in which he was a plaintiff.

WHEREFORE, Plaintiff American University of Antigua, respectfully requests a judgment against Defendant, together with costs, interest, and attorney fees.

8

## COUNT III- WILLFUL VIOLATION OF FERPA

46.     Plaintiff incorporates and restates its answers to paragraphs 1 through 45 above.

47.     Defendant has published private educational information about other students including names and grades on his website.

48.     This publication is without the consent of the University or its affected students and is otherwise unauthorized.

49.     The academic records are otherwise private and are protected from public disclosure under federal law.

50.     The consequence of disclosure has an immediate and obvious impact on the affected students' privacy rights for which there is no adequate remedy at law.

51.     Further, as a direct and proximate result of Defendant's actions, AUA could lose significant access to federal educational funding and student aid.

WHEREFORE, Plaintiff American University of Antigua, respectfully requests a judgment against Defendant, together with costs, interest, and attorney fees.

## COUNT IV- DEFAMATION

52.     Plaintiff incorporates and restates its answers to paragraphs 1 through 51 above.

53.     Defendant publishes a website in which he intentionally, maliciously and/or recklessly or negligently publishes falsehoods about AUA.

54.     By use of direct words, narrated video clips, weblinks and "YOUTUBE" videos of his making, Defendant promulgates as if true the following "facts" about AUA:

a.      AUA routinely commits fraud upon its students;

9

b.      AUA falsifies its students grades;

c.      AUA breaches contracts;

d.      AUA disregards student civil rights;

e.      AUA conspires against its students;

f.      AUA pursues unspecified and other unethical practices;

g.      AUA has "malicious intensions" and administration and academic advisors of a "heinous nature";

h.      AUA students are sexually assaulted;

i.      AUA professors teach students wrong information;

j.      AUA conspires to commit fraud and violations of civil rights;

k.      AUA commits criminal activities reportable to the FBI;

l.      AUA student pass rate for USMLE medical board exams is only 22.9%;

m.      AUA contrives false evidence in student disciplinary proceedings (i.e, the hearing Mr. Woodward was provided prior to dismissal and refused to even attend);

n.      AUA colluded with St. Joseph Hospital to maliciously end Mr. Woodward's career, conspired, abused its power, committed perjury and is otherwise immoral and unethical;

o.      AUA agents are liars;

p.      The locality of AUA is full of "rape, murder, fraud, and government corruption."

55.     Each and every one of these "facts" is false.

56.    Defendant knew at the time of publication, or reasonably should have known, that each of his representations was false.

57.    The publication of these purported "facts" about AUA is misleading, damaging and in certain circumstances per se actionable inasmuch as they allege criminal activity or the like.

58.    AUA has suffered damages to its reputation as a direct and proximate result of Defendant's actions.

WHEREFORE, Plaintiff American University of Antigua, respectfully requests a judgment against Defendant, together with costs, interest, and attorney fees.

Respectfully submitted,


/s/ Eric A. Buikema
Cardelli, Lanfear, & Buikema, P.C.
322 West Lincoln Avenue
Royal Oak, MI  48067-2505
(248) 544-1100/(248) 544-1191(fax)
ebuikema@cardellilaw.com
(P58379)

DATED:  March 9, 2010

Being First duly sworn:

I, Neil Simon, am an officer of the American University of Antigua and its general counsel. I have personal knowledge of the facts set forth in this complaint and, having read the same, I hereby attest that each and every allegation contained herein is true to the best of my knowledge, information and belief.

Neil Simon
Its: President

Subscribed and sworn to before me this
____ day of _____, 2010.

Notary Public
My commission expires:

LEONARD A. SCIAFANI
Notary Public, State of New York
No. 02SC6120579
Qualified in Westchester County
Commission Expires December 20, 20__

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA,
COLLEGE OF MEDICINE, a foreign corporation,

      Plaintiff,

V                                                Case No.

STEVEN WOODWARD,

      Defendant.

---

ERIC A. BUIKEMA (P58379)
Cardelli, Lanfear, & Buikema, PC
Attorneys for Plaintiff
322 W. Lincoln
Royal Oak, MI  48067
(248) 544-1100
ebuikema@cardellilaw.com

---

## ORDER REGARDING EX PARTE REQUEST FOR
## TEMPORARY RESTRAINING ORDER

At a session of said court held in the United States District Court, Eastern District, Southern Division, State of Michigan on _____

PRESENT: _____
                    Honorable
                    United States District Court Judge

Having reviewed the Plaintiff's verified complaint and certification of its counsel pursuant to FRCP 65(b), this court is satisfied that irreparable injury including public dissemination of private educational records of AUA students and damage to AUA's reputation will occur if the publication complained of is not temporarily enjoined.  The court is further

satisfied that notice to the opposing party is not practicable under the circumstances and HEREBY ORDERS that:

    1.    Defendant Steven Woodward, as well as any agent, internet service provider, domain registry and/or website host acting at his direction or request shall immediately cease and desist from all further publication under the internet domain name "www.aua-med.com." .

    2.    Defendant Steven Woodward, as well as any agent, internet service provider, domain registry and/or website host acting at his direction or request shall immediately cease and desist unlicensed publication, in any manner, of AUA student academic records (other than his own) and shall, further, be temporarily enjoined from publication of all other contents presently disseminated through his website "www.aua-med.com" by any other means or medium.

    3.    This order is entered on _____, 2010, at _____ am/pm and shall expire, absent good cause shown as to why it should be extended, 14 days after entry.

    4.    The matter is to be set for hearing at the earliest convenience of the court and parties.

                           SO ORDERED,

                           _____
                           United States District Court Judge

*8*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, a foreign corporation,

          Plaintiff,

                                  United States District Court Judge
                                  Patrick J. Duggan, presiding
                                  Michael Hluchaniuk, referral
V                                       Case No.:  2:10-cv-10978

STEVEN WOODWARD,

          Defendant.

| | |
|---|---|
| Eric A. Buikema (P58379)<br>CARDELLI, LANFEAR & BUIKEMA, P.C.<br>Attorneys for Plaintiff<br>322 W. Lincoln<br>Royal Oak, MI 48067<br>(248) 544-1100<br>ebuikema@cardellilaw.com | STEVEN L. WOODWARD<br>In Pro Per<br>c/o 7211 Brittwood Lane<br>Flint, MI  48507<br>Steve_L_woodward@yahoo.com |

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

NOW COMES Plaintiff, American University of Antigua College of Medicine "AUA",

and pursuant to FRCP 65 moves this Court for entry of a preliminary injunction, for the

following reasons:

1. This action arises, in most basic summary, out of Defendant's ownership and publication

    of a website, and derivative publications, containing false and defamatory information

    about American University of Antigua College of Medicine ("AUA"), as well as private

    information about AUA students protected from disclosure under the Family Educational

    Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g), and by his use of a confusingly

1

**EXHIBIT**     *4*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, a foreign corporation,

        Plaintiff,

                                United States District Court Judge
                                Patrick J. Duggan, presiding
                                Michael Hluchaniuk, referral
V                                  Case No.: 2:10-cv-10978

STEVEN WOODWARD,

        Defendant.

| | |
|---|---|
| Eric A. Buikema (P58379)<br>CARDELLI, LANFEAR & BUIKEMA, P.C.<br>Attorneys for Plaintiff<br>322 W. Lincoln<br>Royal Oak, MI 48067<br>(248) 544-1100<br>ebuikema@cardellilaw.com | STEVEN L. WOODWARD<br>In Pro Per<br>c/o 7211 Brittwood Lane<br>Flint, MI 48507<br>Steve_L_woodward@yahoo.com |

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

NOW COMES Plaintiff, American University of Antigua College of Medicine "AUA",

and pursuant to FRCP 65 moves this Court for entry of a preliminary injunction, for the

following reasons:

1. This action arises, in most basic summary, out of Defendant's ownership and publication

    of a website, and derivative publications, containing false and defamatory information

    about American University of Antigua College of Medicine ("AUA"), as well as private

    information about AUA students protected from disclosure under the Family Educational

    Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g), and by his use of a confusingly

similar domain name ("www.aua-med.com") that infringes upon and/or dilutes AUA's

protected trade name under Federal Statutory and common law including, but not limited

to, the United States Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1125(c),

and the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).

2. For the reasons set for in Plaintiff's Brief in Support of its Motion for a Preliminary
Injunction, Plaintiff has a strong likelihood of success on the merits on each of its claims.

3. For the reasons set for in Plaintiff's Brief in Support of its Motion for a Preliminary
Injunction, Plaintiff would suffer irreparable injury without and injunction.

4. For the reasons set for in Plaintiff's Brief in Support of its Motion for a Preliminary
Injunction, the issuance of an injunction would not cause substantial harm to Defendant.

5. For the reasons set for in Plaintiff's Brief in Support of its Motion for a Preliminary
Injunction, the public interest would be served by issuance of injunction.

WHEREFORE, AUA respectfully requests that this Court enter an Order:

A. Granting AUA's Motion in its entirety;

B. Enjoining Defendant Steven Woodward, as well as any agent, internet service
provider, domain registry and/or website host acting at his direction or request:

1. From all further publication under the internet domain name "www.aua-med.com"

2. From the unlicensed publication, in any manner, of AUA student academic records (other than his own); and

3. From publication of all other contents presently disseminated through his website "www.aua-med.com" by any other means or medium; and

C. Granting AUA any other relief that this Honorable Court deems appropriate.

Respectfully submitted,


/s/ Eric A. Buikema
Cardelli, Lanfear, & Buikema, P.C.
322 W. Lincoln
Royal Oak, MI  48067
(248) 544-1100
ebuikema@cardellilaw.com
(P58379)

Dated:  April 15, 2010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN UNIVERSITY OF ANTIGUA COLLEGE
OF MEDICINE, a foreign corporation,

Plaintiff,

United States District Court Judge
Patrick J. Duggan, presiding
Michael Hluchaniuk, referral

V                                                        Case No.: 2:10-cv-10978

STEVEN WOODWARD,

Defendant.

| Eric A. Buikema (P58379) | STEVEN L. WOODWARD |
|---|---|
| CARDELLI, LANFEAR & BUIKEMA, P.C. | In Pro Per |
| Attorneys for Plaintiff | c/o 7211 Brittwood Lane |
| 322 W. Lincoln | Flint, MI 48507 |
| Royal Oak, MI 48067 | Steve_L_woodward@yahoo.com |
| (248) 544-1100 | |
| ebuikema@cardellilaw.com | |

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION
## FOR A PRELIMINARY INJUNCTION

Plaintiff American University of Antigua College of Medicine ("Plaintiff"), by and through

its attorneys Cardelli, Lanfear & Buikema, P.C., and for its Brief in support of its Motion for a

Preliminary Injunction, states as follows:

## TABLE OF CONTENTS

I.    INDEX OF AUTHORITIES...................................................................iii

II.   INTRODUCTION.................................................….........................1

III.  FACTUAL SUMMARY..................................................................1

IV.  ARGUMENT ................................................................................4

        **A. Plaintiff's Request for a Preliminary Injunction Must be Granted**...............4

V.   CONCLUSION AND RELIEF REQUESTED...........................................11

## I.   INDEX OF AUTHORITIES

## CASES

*Audi AG v. D'Amato*
341 F. Supp. 2d 734, 746 ( E.D. Mich. 2004)..........................................................10

*Bird v. Parsons,*
289 F.3d 865 (6th Cir. Ohio 2002) ....................................................................7

*Brookfield Communications,*
174 F.3d at 1055 ....................................................................................5, 6

*Campbell v. Bank One,*
79 Fed. Appx. 760 (6th Cir. Mich. 2003) ..............................................................8

*Cardservice Int'l, Inc. v. McGee,*
129 F.3d 1258 (4th Cir. 1997) .........................................................................6

*Church of Scientology Int'l v. Elmira Mission of the Church of Scientology,*
794 F.2d 38  (2d Cir. 1986) ...........................................................................9

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,*
109 F.3d 275 (6th Cir. 1997). ..........................................................................5

*Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.,*
670 F.2d 642, (6th Cir. 1982). ..........................................................................5

*Gonzaga Univ. v. Doe,*
536 U.S. 273 (U.S. 2002) ...............................................................................8

*GoTo.com v. Walt Disney Corp.,*
202 F.3d 1199 (9th Cir. 2000) .........................................................................5

*Green Prods. Co. v. Independence Corn By-Prods. Co.,*
992 F. Supp. 1070 (N.D. Iowa 1997) ..................................................................6

*Ignition Ath. Performance Group, LLC v. Hantz Soccer U.S.A., LLC,*
245 Fed. Appx. 456 (6th Cir. Mich. 2007) ............................................................11

*Kelly Servs. v. Eidnes,*
530 F. Supp. 2d 940 (E.D. Mich. 2008). ...............................................................9

*Merril Lynch v. Grall,*
836 F. Supp. 428 (WD Mich. 1993). ...................................................................4

*Mich. Rehab. Clinic Inc., P.C. v City of Detroit* (2004, ED Mich)
310 F Supp 2d 867. …………………………………………………………………...4

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
920 F.2d 187 (3d Cir. 1990). ……………………………………………………..9

*Overstreet v. Lexington-Fayette Urban County Government*,
305 F.3d 566, 578 (6th Cir. 2002). ……………………………………………… .9

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316, 1327 (9th Cir. 1998) …………………………………………… 5, 6

*People for the Ethical Treatment of Animals v. Doughney*,
263 F.3d 359 (4th Cir. 2001) ……………………………………………………… 5

*Performance Unlimited v. Questar Publishers, Inc.*
52 F.3d 1373, 1381 (6th Cir. 1982). ………………………………………….. 4

*Valvoline Co. v. Magic Quick Lube*,
2009 U.S. Dist. LEXIS 100944 ( E.D. Mich. Oct. 29, 2009) …………………………… 9

*Wynn Oil Co. v. Thomas*,
839 F.2d 1183, 6th Cir. 1988). …………………………………………………… .5

## **STATUTES AND COURT RULES**

15 U.S.C. § 1114(1). …………………………………………………………… 4, 7

20 U.S.C. § 1232(g) ………………………………………………………….....1, 8

15 U.S.C. § 1125(c) ………………………………………………………………… 1

15 U.S.C. § 1125(d). …………………………………………………………….....1

## I.    Introduction

This action arises, in most basic summary, out of Defendant's ownership and publication of a website, and derivative publications, containing false and defamatory information about American University of Antigua College of Medicine ("AUA"), as well as private information about AUA students protected from disclosure under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g), and by his use of a confusingly similar domain name ("www.aua-med.com") that infringes upon and/or dilutes AUA's protected trade name under Federal Statutory and common law including, but not limited to, the United States Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1125(c), and the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).

## II.    Factual Summary

AUA is a foreign medical school catering, in part, to students from the United States including Michigan. (Exhibit A, Plaintiff's Verified Complaint).  AUA regularly places and directs students in clinical education in association with Michigan hospitals (Exhibit A). Defendant Steven Woodward is a former student of AUA (Exhibit A).  As a result of misconduct, Defendant was discharged from AUA without completion of his degree (Exhibit A). Because of his dismissal from the University, Defendant initiated a lawsuit against AUA and its educational partner hospital Trinity-Health Michigan's St. Joseph Mercy Hospital in Pontiac, Michigan.[1]  Mr. Woodward alleged that AUA and/or Trinity slandered him, intentionally inflicted emotional distress, tortiously interfered with a contractual relationship, invaded a right to privacy and breached a contract.  The court concluded that Mr. Woodward's allegations were baseless and granted AUA summary disposition of the same on June 30, 2008.  The court

---

[1] The lawsuit was filed in the Oakland County Circuit Court on or about December 20, 2007, where it was known as Case No. 07-088103-CZ and assigned to the Honorable Shalina Kumar.

similarly granted summary disposition to Trinity on April 29, 2009 finding, on the merits, that the claimed defamatory remarks as to Woodward's misconduct were actually, in fact, true.

As a result of Mr. Woodward's apparent dissatisfaction with this result and with everyone and everything other than the party truly responsible for his circumstance (himself), he has now registered an internet domain name of www.aua-med.com at which he publishes reckless, false, and malicious purported "facts" about AUA in addition to other objectionable content. A specific date when Mr. Woodward commenced his endeavor is not known but it is well after AUA's first usage in trade of its own similarly named website www.auamed.org. A copy of the legitimate www.auamed.org website homepage, which Plaintiff utilizes to market and provide useful information to current and prospective students, is attached as Exhibit B. Defendant's www.aua-med.com website homepage is attached as Exhibit C.

Defendant's website represents, alleges and publishes, as if true, false and defamatory information about AUA including, by way of example and not limitation, that:

a.   AUA routinely commits fraud upon its students;

b.   AUA falsifies its students grades;

c.   AUA breaches contracts;

d.   AUA disregards student civil rights;

e.   AUA conspires against its students;

f.   AUA pursues unspecified and other unethical practices;

g.   AUA has "malicious intensions" and administration and academic advisors of a "heinous nature";

h.   AUA students are sexually assaulted;

i.   AUA professors teach students wrong information;

j.      AUA conspires to commit fraud and violations of civil rights;

k.      AUA commits criminal activities reportable to the FBI;

l.      AUA student pass rate for USMLE medical board exams is only 22.9%;

m.      AUA contrives false evidence in student disciplinary proceedings (i.e., the hearing Mr. Woodward was provided prior to dismissal and refused to even attend);

n.      AUA colluded with St. Joseph Hospital to maliciously end Mr. Woodward's career, conspired, abused its power, committed perjury and is otherwise immoral and unethical;

o.      AUA agents are liars;

p.      The locality of AUA is full of "rape, murder, fraud, and government corruption."

(See Exhibits A and C).

Defendant's website further publishes, in a manner not repeated here, and without consent of the university or its affected students, other students' identities and personal information including grades and academic information.  AUA suffers irreparable injury and harm to its reputation each day that Mr. Woodward's appalling site is permitted to remain available. Moreover, irreparable injury to AUA and its affected students occurs, for which there is not an adequate remedy at law, by virtue of Mr. Woodward's unsanctioned and unauthorized publication of federally protected private academic information. As such, Plaintiff was forced to file this lawsuit and now appropriately seeks injunctive relief from this Honorable Court.

### III.   Legal Argument

#### A.  Plaintiff's Request for a Preliminary Injunction Must be Granted.

There are four factors to be balanced when considering a motion for preliminary injunction; (1) whether movant has a strong likelihood of success on the merits, (2) whether movant would suffer irreparable injury without injunction, (3) whether issuance of an injunction would cause substantial harm to others, and (4) whether the public interest would be served by issuance of injunction. *Mich. Rehab. Clinic Inc., P.C. v City of Detroit* (2004, ED Mich) 310 F Supp 2d 867.  None of the four factors considered for injunctive relief is a prerequisite to the issuance of a preliminary injunction; rather, the Court must balance the factors in deciding the propriety of a preliminary injunction.  *Performance Unlimited v. Questar Publishers, Inc*. 52 F.3d 1373, 1381 (6th Cir. 1982). Further, "[t]he moving party need show less likelihood of success on the merits if the other factors indicate the Court should issue a preliminary injunction." *Merril Lynch v. Grall*, 836 F. Supp. 428, 432 (WD Mich. 1993).  As described in more detail below, each of these factors weighs in favor of Plaintiff's request that a Preliminary Injunction be issued.

#### 1.  Plaintiff can Demonstrate a Strong Likelihood of Success on the Merits

##### a.  *Trademark/Tradename Infringement*

Section 32 of the Lanham Act provides a cause of action against "[a]  person who . . . uses in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion." 15 U.S.C. § 1114(1).

The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by

the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). In determining whether a "likelihood of confusion" exists, we examine eight factors: (1) strength of the plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) intent of the defendant in selecting the mark; and (8) likelihood of expansion of the product lines. *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). These factors "imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988). "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Daddy's Junky Music Stores*, 109 F.3d at 280. In the Internet context, similarity of the marks, relatedness of the goods or services, and simultaneous use of the Internet as a marketing channel are the three most important factors in finding a likelihood of confusion. *GoTo.com v. Walt Disney Corp.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (citing *Brookfield*, 174 F.3d at 1054 n.16)

Words in many domain names can and do communicate information as to the source or sponsor of the web site. *See, e.g., People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 366 (4th Cir. 2001) ("The domain name peta.org simply copies PETA's Mark, conveying the message that it is related to PETA."); *Brookfield Communications*, 174 F.3d at 1055, 1066 ("The domain name is more than a mere address: like trademarks, second-level domain names communicate information as to source. . . . When a firm uses a competitor's trademark in the domain name of its web site, users are likely to be confused as to its source or sponsorship."); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1327 (9th Cir. 1998) ("We

5

reject [the] premise that a domain name is nothing more than an address. A significant purpose of a domain name is to identify the entity that owns the web site."); *Cardservice Int'l, Inc. v. McGee,* 950 F. Supp. 737, 741 (E.D. Va.), *aff'd,* 129 F.3d 1258 (4th Cir. 1997) ("[A] domain name is more than a mere internet address. It also identifies the internet site to those who reach it, much like ... a company's name identifies a specific company."). In fact, "customers who do not know what a company's domain name is will often guess that the domain name is the same as the company's name" or trademark. *Green Prods. Co. v. Independence Corn By-Prods. Co.*, 992 F. Supp. 1070, 1076-77 (N.D. Iowa 1997); *see also Brookfield*, 174 F.3d at 1044-45 ("Web users often assume, as a rule of thumb, that the domain name of a particular company will be the company name followed by '.com.' . . . Sometimes, a trademark is better known than the company itself, in which case a Web surfer may assume that the domain address will be 'trademark'.com."); *Panavision Int'l*, 141 F.3d at 1327 ("A customer who is unsure about a company's domain name will often guess that the domain name is also the company's name.").

Here, Defendant publishes information under a domain name of www.aua-med.com. Plaintiff has published legitimate information about its educational institution under the domain name www.auamed.org and has otherwise utilized the root term "auamed" in trade since long before Defendant first utilized the above referenced domain name. Defendant's use of the confusingly similar name, and resultant accessibility by any consumer utilizing common search terms employed to glean legitimate information about the University is likely to cause confusion as to whether the Defendant's website is somehow endorsed, sponsored, licensed or affiliated with the AUA.

Defendant's actions, along with the use on the offending website of information purportedly from, sponsored or published by AUA (including items bearing the AUA logo)

constitute willful infringement upon AUA's exclusive rights in its tradename and trademarks under 15 U.S.C. § 1114. Defendant's use of the similar domain name, including copies, reproductions and/or counterfeits of the AUA logo on the site itself has been, and continues to be done with the intent to cause confusion, mistake and harm as to the source or sponsorship of the information disseminated.

### b. Infringement Under the ACPA

Plaintiff is likely to succeed on the merits of its claim for infringement under the ACPA. The ACPA was enacted in 1999 to address "a new form of piracy on the Internet caused by acts of 'cybsersquatting,' which refers to the deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners." S. Rep. No. 106-140, at 4 (1999). Cybersquatting involves the registration as domain names of well-known trademarks by non-trademark holders who then try to sell the names back to the trademark *Bird v. Parsons*, 289 F.3d 865, 880 (6th Cir. Ohio 2002)

The ACPA provides, in pertinent part, as follows:

> A person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person (i) has a bad faith intent to profit from that mark . . . and (ii) registers, traffics in, or uses a domain name that--
>
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>
> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark . . . .

*Bird v. Parsons*, 289 F.3d 865, 880 (6th Cir. Ohio 2002)

Here, Defendant has registered, in bad faith and with intent to profit, a domain name confusingly similar to that utilized by AUA in the course of its business. The AUA domain is

7

distinctive and has been utilized in trade (as has its root tradename ("AUAMED") since long before Defendant's offending registration and use of www.aua-med.com. The AUA tradename and domain name are widely recognized by the general consuming public as a designation of services and source of same from AUA. Defendant's conduct is not a fair usage. Defendant has attempted to profit from the use of this site directly and by leveraging the same in the prior litigation in which he was a plaintiff.

### c.  Willful Violation of the FERPA

The Family Educational Rights and Privacy Act of 1974, 20 U.S.C.S. § 1232g, prohibits the federal funding of educational institutions that have a policy or practice of releasing education records to unauthorized persons. *Gonzaga Univ. v. Doe*, 536 U.S. 273 (U.S. 2002). Plaintiff's actions of releasing sensitive educational records of other students puts AUA in violation of the FERPA. Plaintiff's actions could cause the federal government to cease providing funds which AUA relies upon to operate its school. Plaintiff's selfish and slanderous actions undoubtedly constitute a willful violation of the FERPA. As such, AUA is likely to prevail on the merits on this claim.

### d.  Defamation

To establish a claim for defamation, Plaintiff "must establish each of the following four elements: '(a) a false and defamatory statement concerning plaintiff; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm, (defamation per se) or the existence of special harm caused by the publication (defamation per quod).'" *Campbell v. Bank One*, 79 Fed. Appx. 760, 762 (6th Cir. Mich. 2003).

8

Defendant publishes a website in which he intentionally, maliciously and/or recklessly or negligently publishes falsehoods about AUA. By use of direct words, narrated video clips, weblinks and "YOUTUBE" videos of his making, Defendant promulgates as if true the above-listed "facts" about AUA. Each and every one of these "facts" is false. Defendant's statements are undisputedly unprivileged because he is knowingly and deliberately publishing false statements about AUA. Further, Plaintiff's falsehoods are published to millions of third party users of the various websites listed above.

### 2. Plaintiff is Suffering and will Continue to Suffer Irreparable Harm if a Preliminary Injunction is not Issued Against Defendant.

A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages. *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 578 (6th Cir. 2002). *Kelly Servs. v. Eidnes*, 530 F. Supp. 2d 940, 951 (E.D. Mich. 2008). "[M]any courts have stated that where the plaintiff makes a strong showing of likely confusion, irreparable injury follows as a matter of course." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 196 (3d Cir. 1990). As stated by the Second Circuit,[f]or many years we have consistently held that a preliminary injunction should usually issue when the use of a mark creates a likelihood of confusion in the consumers' minds as to the ownership or sponsorship of a product. Our cases clearly say that establishing a high probability of confusion as to sponsorship almost inevitably establishes irreparable harm. *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 41 (2d Cir. 1986) (citations omitted). *Valvoline Co. v. Magic Quick Lube*, 2009 U.S. Dist. LEXIS 100944 ( E.D. Mich. Oct. 29, 2009) The *Valvoline* Court found that the loss sustained by a trademark holder from the unauthorized use of its trademarks is the loss of the trademark holder's ability to control its reputation. "In the context of trademark litigation, 'grounds for irreparable harm include loss

of control of reputation, loss of trade, and loss of goodwill,' regardless of whether the infringer is putting the mark to a good or favorable use." *Audi AG v. D'Amato*, 341 F. Supp. 2d 734, 746 ( E.D. Mich. 2004)

Plaintiff utilizes its own website to market and provide useful information to prospective students, AUA suffers irreparable injury and harm to its reputation each day that Mr. Woodward's appalling site is permitted to remain available. Moreover, irreparable injury to AUA and its affected students occurs, for which there is not an adequate remedy at law, by virtue of Mr. Woodward's unsanctioned and unauthorized publication of federally protected private academic information. As explained above, Defendant's actions could result in the federal government ceasing to provide funding to AUA pursuant to the FERPA. It is clear that AUA will suffer irreparable harm if injunctive relief is not granted.

### 3. An Issuance of Injunction Against Defendant Would Not Cause Substantial Harm to Others

Here, Defendant cannot seriously argue that he would be harmed by the issuance of a Preliminary Injunction. Defendant simply uses this website as an avenue to disseminate false and disparaging "information" about AUA. Defendant is simply a disgruntled former student seeking to exact revenge against AUA in any manner possible. An injunction preventing Defendant's illegal and improper actions will not serve to "harm" Defendant. If anything, it will serve to help Defendant by ending his tortious and illegal conduct. This factor again weighs in favor of granting the preliminary injunction because the harm to Plaintiff far outweighs any potential harm to Defendant.

**4. Public Interest would be Served by the Issuance of Injunction**

The Court of Appeals has held that there is a public interest in "preventing confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Ignition Ath. Performance Group, LLC v. Hantz Soccer U.S.A., LLC*, 245 Fed. Appx. 456, 460 (6th Cir. Mich. 2007). Here, this is exactly the harm that Plaintiff seeks to avoid by requesting a preliminary injunction. Defendant is publishing a website with a confusingly similar name to Plaintiff's through which is his promulgating false and defamatory statements about AUA. AUA's current and prospective students utilize AUA's legitimate website to access important information. Plaintiff's defamatory website serves <u>no public interest</u> whatsoever; its sole purpose is to spread lies and slanderous remarks about AUA. This final factor clearly weighs in favor of AUA.

**IV. CONCLUSION AND RELIEF REQUESTED**

WHEREFORE, AUA respectfully requests that this Court enter an Order:

A. Granting AUA's Motion in its entirety;

B. Enjoining Defendant Steven Woodward, as well as any agent, internet service provider, domain registry and/or website host acting at his direction or request:

    1. From all further publication under the internet domain name "www.aua-med.com"

    2. From the unlicensed publication, in any manner, of AUA student academic records (other than his own); and

    3. From publication of all other contents presently disseminated through his website "www.aua-med.com" by any other means or medium; and

C. Granting AUA any other relief that this Honorable Court deems appropriate.

Respectfully submitted,

/s/ Eric A. Buikema
Cardelli, Lanfear, & Buikema, P.C.
322 W. Lincoln
Royal Oak, MI  48067
(248) 544-1100
ebuikema@cardellilaw.com
(P58379)

Dated:  April 15, 2010

# EXHIBIT

# A