1                **UNITED STATES DISTRICT COURT**
               **EASTERN DISTRICT OF MICHIGAN**
2                    **SOUTHERN DIVISION**

3

4 **AMERICAN UNIVERSITY OF**
   **ANTIGUA,**

5

             Plaintiff,

6                           **HONORABLE PATRICK J. DUGGAN**
     v.

7                          **No. 10-10978**
   **STEVEN WOODWARD,**

8

             Defendant.
9   _____/

10

11                **MOTION FOR SHOW CAUSE**

12       **Detroit, Michigan -- Wednesday, January 18, 2012**

13

   **APPEARANCES:**

14

15 Eric A. Buikema, Esq.        Steven L. Woodward
   Cardelli, Lanfear & Buikema,   In Pro Per
   322 West Lincoln           c/o 7211 Brittwood Lane
16 Royal Oak, Michigan 48067    Flint, Michigan 48507
   Tel: (248) 544-1100         steve_l_woodward@yahoo.com
17 ebuikema@cardellilaw.com     On behalf of Defendant
   On behalf of Plaintiff

18

19

20                      -   -   -

21

        To Obtain A Certified Transcript, Contact:
22    **Nefertiti A. Matthews, Official Court Reporter**
      **Theodore Levin United States Courthouse**
23    **231 West Lafayette Boulevard, Room 867**
          **Detroit, Michigan  48226**
24 **www.transcriptorders.com • jodi_matthews@mied.uscourts.gov**

25     Proceedings recorded by mechanical stenography.
    *Transcript produced by computer-aided transcription.*

1                           I N D E X

2                            -   -   -

3   HEARING:                              PAGE: VOL:

4   **Motion for Show Cause** .........................**3**    **1**

5   Argument By Mr. Buikema ........................3    1

6   Response By Mr. Woodward .......................5    1

7   **Contempt of Court Order** .......................**21**   **1**

8   Response By Mr. Buikema .......................22    1

9
    **Motion for Show Cause** ........................**23**   **1**
10
    Response By Mr. Woodward ......................25    1
11
    Response By Mr. Buikema .......................42    1
12
    Response By Mr. Woodward ......................45    1
13
    Response By Mr. Buikema .......................45    1
14
    **Disposition By The Court** ......................**45**   **1**
15

16  **Motion on Damages** .............................**46**   **1**

17  Argument By Mr. Buikema .......................46    1

18  **Dispostion By The Court** .......................**47**   **1**

19  Response By Mr. Buikema .......................47    1

20  Response By Mr. Woodward ......................48    1

21

22
    Certification of Reporter .....................52
23

24

25

1                              **Detroit, Michigan**

2                          **Wednesday, January 18, 2012**

3                              **10:10 a.m.**

4                              **-   -   -**

5          **THE CLERK:**  Civil action number 10-10978; American

6      University of Antigua College of Medicine versus Steven

7      Woodward.

8          **THE COURT:**  Identify yourselves, for the record.

9          **MR. BUIKEMA:**  Good morning, Your Honor.  Eric

10     Buikema, on behalf of the plaintiff, along with my

11     colleague, Paul Kittinger.

12         **MR. WOODWARD:**  Steven Woodward.

13         **THE COURT:**  All right.

14                        **Motion for Show Cause**

15     **ARGUMENT BY MR. BUIKEMA**

16         **MR. BUIKEMA:**  Judge, there are two matters before

17     you today.  The first -- well, at least what I would

18     like to do first is our Request for Show Cause as to

19     why Mr. Woodward should not be held in contempt for

20     violating this Court's December 5th, 2011 permanent

21     injunction.  The second matter is we're set for an

22     Evidentiary Hearing today on the sole remaining issue

23     in the case as to damages.

24         Because the first has an impact as to whether my

25     client deems it productive at all to proceed with the

**Argument By Mr. Buikema**
**Wednesday/January 18, 2012**

4

1        second, I suggest we take the Show Cause first.

2              **THE COURT:**  Okay.

3              **MR. BUIKEMA:**  As you know, Judge, we were granted,

4        in part, Summary Judgment on our claims in this case,

5        particularly as to certain claims for defamation.  And

6        this Court, per our request, granted a permanent

7        injunction against Mr. Woodward's publication of

8        certain false and defamatory statements, including that

9        AUA routinely commits frauds upon its students, AUA

10       falsifies its students' grades, breaches contracts,

11       conspires to commit fraud in violations of civil rights

12       and other enumerated items in the December 5th order.

13             Upon receiving of that order, Judge, I reviewed

14       the website and found it to still be up, intact, and

15       unaltered.  On the following date, I believe on

16       December 6th, 2011, it could have been the seventh, I

17       emailed Mr. Woodward to ensure he had received a copy

18       of that order and advising him that he had been

19       permanently enjoined and that we demanded he

20       immediately either withdraw or alter his website such

21       that it complies with the injunction.  The response

22       was, "No", essentially.  And Mr. Woodward remains

23       today, January 18th, 2012, in non-compliance with the

24       injunction.  His website remains unaltered from the

25       time that injunction was granted.

*10-10978; American University of Antigua v. Steven Woodward*

1        I have several examples of his willful, knowing,

2    and flagrant disregard for that injunction.  To begin

3    with, and I'd be happy to provide the Court with copies

4    of the things I have in my possession, which are

5    printouts from his website, I think, yesterday.

6        But to begin with, if you were to even look at the

7    homepage, the very first page of his website, you'll

8    see under the index publication the following five

9    underlined, highlighted items:  Fraud, falsifying

10    students grades, breach of contract, disregard for

11    student civil rights, and conspires against its

12    students.

13        That information exists intact today on his

14    website nearly 50 days after the injunction was granted

15    and at least 45 since he's been served with a copy of

16    that.

17        **THE COURT:**  All right.  Let's hear what he has to

18    say about that.

19    **RESPONSE BY MR. WOODWARD**

20        **MR. WOODWARD:**  Hold on, Your Honor, I'm trying to

21    find -- Mr. Buikema is falsely accusing me.  I emailed

22    him back and said, "Please, see dockets", and I sent

23    dockets to the Court.  I'm going to find those in a

24    second.

25        My email --

*10-10978; American University of Antigua v. Steven Woodward*

**Response By Mr. Woodward**
**Wednesday/January 18, 2012**

6

1      **THE COURT:** Please, let's move on. Please,

2      please.

3          **MR. WOODWARD:** Okay.

4      **THE COURT:** He said -- step up to the podium,

5      please. He said that the website remains unaltered

6      since the injunction, is that true?

7          **MR. WOODWARD:** Well, I took down the front page

8      and I put everything on private --

9          **THE COURT:** He says it remains unaltered, is that

10     true?

11         **MR. WOODWARD:** That is true.

12     **THE COURT:** Then that violates the injunction.

13         **MR. WOODWARD:** I don't understand, I can't find

14     these statements on that page. I sent you -- I

15     submitted documents to the Court showing that I cannot

16     find these. And if you tell me what statements you

17     want me to remove, I'll remove them.

18     **THE COURT:** He is telling you what statements to

19     remove. Hasn't he told you?

20         **MR. WOODWARD:** Your Honor, your own testimony

21     shows that he's committed perjury. Your own evidence.

22     **THE COURT:** Sir, I don't want to hear about that.

23     Listen to my question. Didn't he tell you -- first of

24     all, you read the injunction?

25         **MR. WOODWARD:** I read the injunction.

*10-10978; American University of Antigua v. Steven Woodward*

1    THE COURT:  And you know precisely what it is that

2    you had previously been doing that I enjoined you from

3    doing in the future?

4        MR. WOODWARD:  You said not to publish these seven

5    statements.

6        THE COURT:  Where did I say that?

7        MR. WOODWARD:  That's what this says.

8        THE COURT:  What does it say?

9        MR. WOODWARD:  It says, "It is further ordered

10   defendant permanently enjoined from publishing on the

11   internet by any other means or medium the following

12   statements."

13       THE COURT:  Okay.

14       MR. WOODWARD:  It says, "AUA routinely commits

15   fraud against its students, AUA falsifies students

16   grades, AUA breaches contracts."  If you look at this

17   website, that is not what this says.

18       THE COURT:  What's this?

19       MR. WOODWARD:  This is the web page he's talking

20   to you about.  It says, "This contains evidence about

21   AUA."  How do I remove something that is not what these

22   seven statements, that are in quote, say?

23       THE COURT:  Was there any statement in there that

24   said, "AUA routinely commits fraud upon its students"?

25       MR. WOODWARD:  I did a word search on all

1        electronic files and I did not find --

2            THE COURT:  Was there any statement that you put

3        on the web originally --

4            MR. WOODWARD:  Sir --

5            THE COURT:  Listen to me, just say yes or no.

6        --that said, "AUA routinely commits fraud upon its

7        students", was that on there?

8            MR. WOODWARD:  This is what I said on here --

9            THE COURT:  Was that statement on there?

10           MR. WOODWARD:  I don't know, I can't find that

11       statement.

12           THE COURT:  You put it on there.

13           MR. WOODWARD:  I obviously did not put it on

14       there.  If it says, "AUA committed perjury", on there,

15       I cannot find it on there.

16           THE COURT:  AUA --

17           MR. WOODWARD:  I did a search --

18           THE COURT:  Listen, you're not --

19           MR. WOODWARD:  I am listening, sir.

20           THE COURT:  No, you're not, I never said perjury.

21       Read what number one says.

22           MR. WOODWARD:  I'm reading what number seven says.

23           THE COURT:  No, I'm asking you about number one to

24       start with.

25           MR. WOODWARD:  Routinely commits fraud against its

*10-10978; American University of Antigua v. Steven Woodward*

**Response By Mr. Woodward**
**Wednesday/January 18, 2012**

9

1     students, I cannot find that statement.

2         **THE COURT:** Did you put that statement on there

3     ever?

4         **MR. WOODWARD:** That statement, no.

5         **THE COURT:** Never said that?

6         **MR. WOODWARD:** This statement, no. I cannot find

7     that statement. That statement was never on there.

8         **THE COURT:** I didn't ask you whether you could

9     find it or not, I asked if -- he said you did it

10    originally, therefore you should be enjoined from doing

11    it.

12        **MR. WOODWARD:** I did not put that statement on

13    there.

14        **THE COURT:** Ever?

15        **MR. WOODWARD:** Ever.

16        **THE COURT:** Please, raise your right hand.

17                **STEVEN WOODWARD,**

18      **at 10:19 a.m., being first duly sworn by the**

19     **Court to tell the truth, was examined and**

20     **testified upon oath as follows:**

21        **THE COURT:** You're under the penalty of perjury if

22    you're not telling the truth.

23        **MR. WOODWARD:** I can't find that statement.

24        **THE COURT:** I didn't ask you if you could find it.

25        **MR. WOODWARD:** Yes, I do.

*10-10978; American University of Antigua v. Steven Woodward*

1          **THE COURT:**  Stop.  I said to you, did you ever say

2     that on the website?

3          **MR. WOODWARD:**  I did not say this statement, "AUA

4     routinely commits fraud--"

5          **THE COURT:**  Did you say anything equal to that?

6          **MR. WOODWARD:**  Possibly.  Your own evidence --

7     that's why I've asked you to tell me what to remove.

8          **THE COURT:**  I'm not going to tell you, you have to

9     -- he's told you what you did --

10          **MR. WOODWARD:**  I can't do this, Your Honor.

11          **THE COURT:**  Then you may be in contempt.

12          **MR. WOODWARD:**  I cannot do this, Your Honor --

13          **THE COURT:**  Sir --

14          **MR. WOODWARD:**  His own statements about plurality

15     of students, sexual assaults, this is perjury.

16          **THE COURT:**  Don't go off on anything other than

17     what I'm addressing --

18          **MR. WOODWARD:**  My civil rights have been violated

19     by due process under 28455 --

20          **THE COURT:**  Are you going to listen to --

21          **MR. WOODWARD:**  Under 28455 for bias.

22          **THE COURT:**  Sir, don't speak unless I ask you to.

23     Stop.  Just listen to my question and answer it

24     precisely.

25          He has said earlier that you made these statements

*10-10978; American University of Antigua v. Steven Woodward*

**Response By Mr. Woodward**
**Wednesday/January 18, 2012**                          11

1    listed there and that they are to be enjoined.  And I

2    enjoined it.  You never previously indicated that these

3    were never on the website, you indicated that most of

4    the stuff on there was either true, but you never said,

5    "Judge, this isn't even on there."  Never said that

6    before, okay.

7         MR. WOODWARD:  Okay.

8         THE COURT:  He's saying it's on there, are you

9    telling me now that, for example, let's go to 15, that

10   you never said, ever --

11        MR. WOODWARD:  Where? What?

12        THE COURT:  Listen.  That, "AUA falsifies the

13   students grades", did you ever say that?

14        MR. WOODWARD:  I cannot find that statement on my

15   website.

16        THE COURT:  I didn't ask you if you could find it.

17   You did it.  You put the stuff on there.  Didn't you

18   put that on there?

19        MR. WOODWARD:  It could be, I don't know.  That

20   statement is not on there.  That exact statement --

21        THE COURT:  Don't tell me about the exact

22   statement, did you make a statement that they falsify

23   grades?

24        MR. WOODWARD:  I did.  And they do.

25        THE COURT:  Why did it take us five minutes to get

*10-10978; American University of Antigua v. Steven Woodward*

1    to that?

2         **MR. WOODWARD:**  Because they do.

3         **THE COURT:**  Don't say anything about, "They do."

4    So, you did put it on there.

5         **MR. WOODWARD:**  I have.

6         **THE COURT:**  And I told you to take it off, did

7    you?

8         **MR. WOODWARD:**  I did not.

9         **THE COURT:**  Then you're in contempt.  Didn't you

10   read the injunction?

11        **MR. WOODWARD:**  Your Honor, these statements are

12   not on there.

13        **THE COURT:**  Let's start again.  I just thought you

14   told me it was, that they falsify the grades?

15        **MR. WOODWARD:**  That's not this statement.

16        **THE COURT:**  Oh, counsel, don't be picky here.

17        **MR. WOODWARD:**  There are paragraphs of this stuff,

18   Your Honor, how much of it do you want me to remove?

19        **THE COURT:**  Everything relating to falsifying

20   grades.  Doesn't that make sense to you?

21        **MR. WOODWARD:**  No, it does not when I can't find

22   that exact statement on there, sir.

23        **THE COURT:**  Okay.  I'm just going to hold you in

24   contempt.  You're not playing straight with the Court.

25   You know what I want done.  You know what I told you to

*10-10978; American University of Antigua v. Steven Woodward*

1    do you and you just want to go round and round in

2    circles.

3         **MR. WOODWARD:**  That's not true, Your Honor.  You

4    violated my due process in the whole part of this case.

5         **THE COURT:**  Fine, we'll go with that.  Take that

6    up with the Court of Appeals, okay.  I've ruled.

7         **MR. WOODWARD:**  Okay.  Fine.

8         **THE COURT:**  Now, you said, you just admitted a few

9    minutes ago that you did make statements on there that

10   AUA falsifies student grades, statements to that

11   effect, you made that statement, correct?

12        **MR. WOODWARD:**  Correct.

13        **THE COURT:**  And I told you to take it off and you

14   haven't, fair enough?

15        **MR. WOODWARD:**  Correct.

16        **THE COURT:**  Okay.  Violation of the injunction.

17        Okay.  Let's go to the next one.  Did you make

18   statements that AUA breaches contracts?

19        **MR. WOODWARD:**  I don't know.

20        **THE COURT:**  What do you mean you don't know?

21        **MR. WOODWARD:**  You'd have to find it.

22        **THE COURT:**  Why should I have to find it?

23        **MR. WOODWARD:**  "AUA contains evidence of", that is

24   not the same thing.  That is as subjective -- that's

25   subjective as you even have said.

---

*10-10978; American University of Antigua v. Steven Woodward*

**Response By Mr. Woodward**
**Wednesday/January 18, 2012**                                      14

1          **THE COURT:**  Did you make a statement that AUA

2    conspires to commit fraud in violation of civil rights?

3          **MR. WOODWARD:**  I don't know, does it say that?

4          **THE COURT:**  You don't know what's on there?

5          **MR. WOODWARD:**  It doesn't say it, sir.

6          **THE COURT:**  I don't care if it says those exact

7    words --

8          **MR. WOODWARD:**  That's what you're saying.

9          **THE COURT:**  Well, you don't want to comply with

10   the Court's Order.  It's obvious.

11         **MR. WOODWARD:**  I want fairness.  I want unbias

12   fairness and due process out of this and you have not

13   given me that.

14         **THE COURT:**  I understand you don't think I have --

15         **MR. WOODWARD:**  And you haven't.

16         **THE COURT:**  I believe I have and I'm going to hold

17   you in contempt and jail you.  That's the way the

18   system goes.  You could take it up with another Court.

19   But when I issue an injunction, whether you like it or

20   not, whether you think due process was given or not,

21   whatever you think you have to obey the injunction,

22   those are the rules.

23         Now, if you disagree with the injunction, you have

24   a right to challenge the injunction --

25         **MR. WOODWARD:**  I did challenge that.

*10-10978; American University of Antigua v. Steven Woodward*

**Response By Mr. Woodward**
**Wednesday/January 18, 2012**                    15

1          THE COURT:  -- you don't have a right to disobey.

2     Regardless of the injunction, if I'm totally wrong,

3     I've enjoined you from something, then our rules of the

4     court say you must obey that injunction and you choose

5     not to do it.

6          MR. WOODWARD:  I could not find these statements.

7          THE COURT:  That's not what I'm talking about.

8     I'm satisfied they were on there.  You know where they

9     are, you think your due process rights have been

10    violated and therefore you don't have to comply with

11    the injunction.

12         MR. WOODWARD:  That's not true at all.  That is

13    not true at all.  He has committed perjury in this case

14    and you allowed him to commit perjury --

15         THE COURT:  That has nothing to do with it.

16         MR. WOODWARD:  Yes, it does, Your Honor.  Back on

17    July 19th of 2010, day one you should have dismissed

18    this case.

19         THE COURT:  That has nothing to do -- do you

20    understand the issue?  The issue is I've issued an

21    injunction and --

22         MR. WOODWARD:  The issue is you've violated my

23    rights of due process, sir.

24         THE COURT:  If I issued an injunction you must

25    obey it, that's the rules.  Now, you can challenge the

*10-10978; American University of Antigua v. Steven Woodward*

1    injunction, you can disagree with it, you can ask me to

2    reverse it --

3         **MR. WOODWARD:**  And I did ask you that.

4         **THE COURT:**  But I'm not doing it.  Until that's

5    done, the injunction is there and you must obey it and

6    you're choosing not.  You're choosing to go around,

7    wasn't fair, due process, I don't have to obey it.

8         **MR. WOODWARD:**  I looked for these seven rules and

9    whether they're there or not, hey, you asked me to find

10   these seven things and this is just more example of

11   them publishing crap that doesn't even exist.  Making

12   statements that don't exist.  I mean, your own opinions

13   contradict each other.  Your own opinions, sir.

14        **THE COURT:**  That's your opinion.

15        **MR. WOODWARD:**  How is it any other opinion?  Your

16   own testimony proves --

17        **THE COURT:**  Sir, I didn't give any testimony.

18        **MR. WOODWARD:**  You made statements on April 19th

19   that the statements I'm making are true.  How did you

20   even let this case go this far?

21        **THE COURT:**  Go how far?

22        **MR. WOODWARD:**  To this point.

23        You want to throw me in jail?  Fine.  Gandhi went

24   to jail, Mandela went to jail, Christ went to jail, but

25   Pilot didn't even lie about Christ.

1          **THE COURT:**  As long as you're willing to accept

2     the consequences of disobeying my injunction, fine.

3     Okay.

4          **MR. WOODWARD:**  You want to throw me in jail, throw

5     me in jail, I have nothing left.  Throw me in jail.

6          You have the keys to my car?  Take all of this

7     stuff.  This is going to be -- I don't care.

8          **THE COURT:**  That's fine, if you don't want to obey

9     the injunction --

10         **MR. WOODWARD:**  I will obey the injunction if you

11    tell me what to remove and how much of it you want me

12    to remove because you know what, these statements right

13    here are as subjective as they get.  It says, "This

14    site contains evidence AUA committed fraud, falsifying

15    students grades", how much more subjective is that?

16         **THE COURT:**  What's subjective of falsifying

17    grades?

18         **MR. WOODWARD:**  Because under the rules of what you

19    even said, they have to be subjective.  Is the

20    statements subjective or not subjective?  Is it

21    subjective or is it not or is it -- what else do you

22    call it?

23         **THE COURT:**  There's nothing subjective about a

24    statement that they falsify grades.

25         **MR. WOODWARD:**  But that's not what this statement

1       says.

2           **THE COURT:**  What does it say?

3           **MR. WOODWARD:**  It says, "This site contains

4       evidence about AUA, fraud, falsifying student grades",

5       how much more subjective is that statement, sir?

6           **THE COURT:**  Does the statement contain statements

7       about falsifying grades?

8           **MR. WOODWARD:**  Contains evidence that they did.

9       You won't let me prove it because you're violating my

10      right of even -- I mean, you've even lied in there

11      about them refusing to take documentation, sir.

12          **THE COURT:**  I'm not talking about evidence, I'm

13      talking about a statement that they falsified grades,

14      the statement.

15          **MR. WOODWARD:**  It says, "Falsifying student

16      grades", you can twist that as much as you want.

17          **THE COURT:**  I'm not going to twist it, it's pretty

18      simple to me, either you said it or you didn't.

19          **MR. WOODWARD:**  Well, is it subjective or is it not

20      subjective?

21          **THE COURT:**  What's subjective about that?

22          **MR. WOODWARD:**  Because in your opinion a statement

23      is not actionable if it's subjective.

24          **THE COURT:**  No, counsel, you're totally

25      misunderstanding.  You understand a statement, "AUA

*10-10978; American University of Antigua v. Steven Woodward*

**Response By Mr. Woodward**
**Wednesday/January 18, 2012**

19

1    falsifies grades", you understand that statement?

2         **MR. WOODWARD:** I understand that statement.

3         **THE COURT:** That's a fact, okay, that's an

4    assertion of a fact.

5         **MR. WOODWARD:** Okay.

6         **THE COURT:** Nothing subjective about it, assertion

7    of a fact. If you said it, and they say you did, I

8    said, "Take it off."

9         **MR. WOODWARD:** And I said that statement does not

10   exist. It says, "This site contains evidence AUA--",

11   and then it's, colon, "--evidence of falsifying

12   students grades."

13        **THE COURT:** Okay.

14        **MR. WOODWARD:** How does it not get more subjective

15   than that? This whole site is subjective. You even

16   said that this site is totally subjective. That

17   anybody that goes to this site knows exactly what this

18   site is. Anybody that goes to this site, you said it,

19   knows exactly what's on this site. It's a subjective

20   site.

21        I hate these bastards as much as anybody can hate

22   anybody and everything on this site is subjective. It

23   is not -- what do you call it? You called it --

24   there's two different types of claims, they are the

25   ones that you remove something from. It's subjective

*10-10978; American University of Antigua v. Steven Woodward*

 1    and another one is -- you wrote it in here.

 2          Hell, you even wrote -- you lied about, "Mr.

 3    Woodward no longer states on his website students are

 4    sexually assaulted", that never existed under your own

 5    statement.  You've lied in your own opinion, sir.

 6          **THE COURT:**  I don't know what you're talking about

 7    I lied.

 8          **MR. WOODWARD:**  Page 23, you lied.

 9          **THE COURT:**  What did I say that was not correct?

10          **MR. WOODWARD:**  You said, "Woodward no longer

11    states on his website that AUA students are sexually

12    assaulted (see request for admissions number 22

13    (emphasis added)); instead, he asserts:  AUA student

14    sexually assaulted.  See, http://aua-med.com Woodward

15    presents evidence to show that this is a true

16    statement.  Similarly, Woodward no longer states that

17    AUA's student pass rates for USMLE medical board exam

18    is only 22.9 percent, (request for admissions number

19    28).  Instead--"

20          **THE COURT:**  Hold on.  Which of those am I

21    incorrect on?

22          **MR. WOODWARD:**  "No longer", I've never said that,

23    sir.  I never said that statement and you knew it day

24    one.  You knew that blatant perjury by this son of a

25    bitch Neil Simon and his affidavit --

**Response By Mr. Woodward**
**Wednesday/January 18, 2012**

1        **THE COURT:**  Sir, you're in contempt.  Did you hear

2        what you just said to the Court?

3        **MR. WOODWARD:**  What?

4        **THE COURT:**  You're in contempt.

5        **AUDIENCE MEMBER:**  Steven, calm down.

6        **THE COURT:**  You totally disrespected the Court.

7        Get the Marshals up here.  We're going to take you and

8        put you in contempt.

9        **MR. WOODWARD:**  I'm right here.  Neil Simon's sworn

10       affidavit --

11                          **Contempt of Court Order**

12       **THE COURT:**  Please, take him to the lockup until

13       such time he's ready to respect the Court.

14            While we're waiting, counsel, he's going to remain

15       in custody until such time as he's indicated to the

16       Marshals he's ready to show respect to the Court.  When

17       we continue the hearing, I want you to be prepared

18       quickly to articulate, on this website, where these

19       things he says he can't find are.

20       **MR. BUIKEMA:**  I'm prepared to do that now and

21       happy to do that.

22       **THE COURT:**  We'll resume when he's ready to show

23       some respect for the Court.

24            I'm ordering him held in custody for contempt of

25       this Court for his use of inappropriate language and

_10-10978; American University of Antigua v. Steven Woodward_

1    his disrespect for the Court.  He will be detained

2    until such time as he demonstrates that he's willing to

3    show respect for the Court.

4        We're going to resume this hearing at two o'clock,

5    and we'll see whether or not he's prepared to address

6    the Court in a proper manner.

7    **(At 10:38 a.m., Steven Woodward held in contempt of Court)**

8        **THE COURT:**  Yes, sir.

9        **AUDIENCE MEMBER:**  Your Honor, I'm Steven's uncle,

10   what am I supposed to do with all his documents?

11       **THE COURT:**  Leave them right there.

12       **AUDIENCE MEMBER:**  They'll be all right there?  It

13   won't be in nobody's way?

14       **THE COURT:**  No.

15   **RESPONSE BY MR. BUIKEMA**

16       **MR. BUIKEMA:**  For what it's worth, Judge, I know

17   you don't either, but we take no joy in what just

18   happened and I know that you don't either.  We're going

19   to excuse ourselves until two o'clock, if that's okay

20   with you?

21       **THE COURT:**  Then at that time I want you to be

22   prepared to quickly go and identify each of these

23   statements on the website so I can see it, he can see

24   it, and he can indicate it either is or is not there.

25       **MR. BUIKEMA:**  I'm happy to do that.  In fact, we

1    have some exhibits that might be helpful to you, do you

2    want me to delay those until two o'clock?

3         **THE COURT:**  Why don't you furnish those to him and

4    the Court before you started.  You've got copies for

5    him?

6         **MR. BUIKEMA:**  I do.

7         **THE COURT:**  Leave them on the table there.

8         **MR. BUIKEMA:**  I will.  May I approach?  Thank you,

9    Judge.

10        **THE COURT:**  All right.  We'll see you at

11   two o'clock.

12    (A break was taken from 10:41 a.m. to 2:08 p.m.)

13                          -    -    -

14        **THE COURT:**  Identify yourselves, for the record.

15        **MR. BUIKEMA:**  Again, Your Honor, Eric Buikema, on

16   behalf of the plaintiff, American University of

17   Antigua, along with my colleague, Paul Kittinger.

18        **MR. WOODWARD:**  Steven Woodward.

19        **THE COURT:**  Mr. Woodward, let us begin -- come to

20   the podium, please, stand at the podium -- with my

21   admonition to you, that you, and any lawyer the same,

22   must show respect for the Court, number one.

23        Number two, you and any lawyer must obey the

24   orders of the Court.  Disagree with them, you may have

25   every right to disagree with the rulings, you may feel

*10-10978; American University of Antigua v. Steven Woodward*

1    the rulings are wrong, but you have to obey them until

2    such time as another Court has said they're wrong.

3          If you didn't follow that procedure and every time

4    the Court made a ruling, obviously one side is not

5    happy with the ruling and they would go on and on and

6    on and complain about the ruling.  You can't have that.

7          The situation is, follow the ruling, right or

8    wrong, there is a record.  And if some Appellate Court

9    thinks the record was wrong, it will be dealt with at

10   that time.

11         The only way we can deal with handling court

12   matters is the parties must understand and must accept

13   the rulings of the Court.  The parties should be given

14   an opportunity to express themselves, but once the

15   Court has made a ruling, that ruling must be followed.

16         Now, can you follow that procedure?

17         **MR. WOODWARD:**  I can.

18         **THE COURT:**  Do you have a copy of the injunction

19   in front of you?  Can you pull one quickly?

20         **MR. WOODWARD:**  I believe this is the order.

21         **THE COURT:**  Sure, bring it up to the podium.  All

22   right.  And you'll see on the bottom of the first page

23   of the order it lists a number of things that you are

24   enjoined from doing, correct?

25         **MR. WOODWARD:**  Correct, sir.

1       **THE COURT:**  Number one, did your website, at any

2       time, past or present, assert that AUA routinely

3       commits fraud upon its students?

4   **RESPONSE BY MR. WOODWARD**

5       **MR. WOODWARD:**  I need to take the Fifth.  I can't

6       answer that.

7       **THE COURT:**  Why?

8       **MR. WOODWARD:**  I can't answer that.

9       **THE COURT:**  Well, why can't you?  It's your

10      website.

11      **MR. WOODWARD:**  I can't answer that.  I can't

12      answer that without condemning myself.  I can't answer

13      that.  You've asked me to ask two different things.

14      **THE COURT:**  I'm sorry, two different things?

15      **MR. WOODWARD:**  I can't answer that, sir.

16      **THE COURT:**  You can't or you won't?

17      **MR. WOODWARD:**  Sir, what do you want me to say?

18      **THE COURT:**  I want to know whether or not your

19      website made that statement.

20      **MR. WOODWARD:**  Sir, under Rule 34, in production

21      of documents, if a party does not produce documents

22      what is the penalty of a party not producing documents,

23      it's Rule 37, they cannot produce those documents in

24      court, correct?

25      **THE COURT:**  I don't know what you're talking

*10-10978; American University of Antigua v. Steven Woodward*

1    about.

2        **MR. WOODWARD:**  If a party is requested to produce

3    documentation to support their claim and they've been

4    requested to produce that documentation to support

5    their claim and they refuse to produce the

6    documentation to support their claim, can they use that

7    claim in a hearing?

8        **THE COURT:**  Probably, I don't know, every case is

9    different.  Maybe they have an explanation, I don't

10   know.  The rule says what it says.

11       **MR. WOODWARD:**  Okay.  So, if I asked them to

12   produce documentation and they have blatantly refused

13   to produce documentation, then under Rule 34 and 37,

14   they cannot produce documentation in court; is that

15   correct?

16       **THE COURT:**  I'm not ruling on that at all, you're

17   asking me an academic question.

18       **MR. WOODWARD:**  That's my understanding of the law.

19   And my understanding of the law, this is the only

20   evidence that they've produced to support their claims.

21   This one document.  This one page.  This documentation

22   was due December 22nd, 2010.

23       On November 11th, 2011, they gave me four

24   depositions and I was owed -- this is all of the

25   documentation that they have produced, documentation

1    that should have accounted for two and a half years of

2    medical school student records and four years of court

3    cases and this is what I get.  He's admitted to

4    refusing to take documentation, to take evidence,

5    blatantly refused, okay, he's admitted that to you, all

6    right, so I cannot answer this properly because of the

7    rulings you've put in front of me.

8        Now, under the law he should be estated for what

9    he's presented as evidence that he's producing in

10   court, what he produced in court, which is this

11   document.  This is the document.  And according to this

12   document there's objective and subjective comments.

13   That's my understanding of the law.

14       I have looked for your quoted comments using

15   search engines to search for my website for these

16   quoted comments, I did not find those comments.  I

17   communicated to you that I did not find these comments.

18   I communicated to you that if you want me to remove

19   anything, I'll cooperate with but please tell me what

20   it was.  I communicated with you through dockets.

21       This is the only documentation that he has ever

22   produced, to my knowledge, and I have all of the

23   dockets sitting here for which his claims are based,

24   besides three deposition of which -- four depositions,

25   three of which I gave him and my 2,600 pages of

1      documentation that I gave to him for free, that I had

2      stapled, collated and produced to him and which you

3      criticized me for like I implanted requests for

4      admissions inside these documents to hide request for

5      admissions on December 22nd.

6          **THE COURT:**  None of that has anything to do with

7      what we're talking about now.  The question is simple,

8      do you have a listing of the things you are enjoined

9      from doing and I asked you did you do those things and

10     you go off on a tangent about how bad the other guy is.

11     And maybe you're correct, I'm not suggesting that the

12     allegations you're making lack merit or anything, they

13     don't have anything to do with my questions.

14          You have in front of you the things you were

15     enjoined from doing.  Simple question, did you post any

16     of those on the website?

17          **MR. WOODWARD:**  And I replied to the Court that

18     these quoted sentences, that you said I cannot say of

19     which I cannot even -- that you told me that I cannot

20     even defend as being right or wrong.

21          **THE COURT:**  Wait, where is the issue of defending

22     right or wrong?  The question is, did you make the

23     statements?

24          **MR. WOODWARD:**  Your Honor, I cannot find these

25     documents, these statements, in quotes, on this page.

1          **THE COURT:**  I'm not interested in, "This page",

2     I'm interested in whether they're on your website or

3     not.

4          **MR. WOODWARD:**  Let me give you an example, if you

5     will.  Let me give you a simple example.  You,

6     yourself, say I cannot longer say or do anything that

7     says that AUA committed perjury, that's your very last

8     statement here.  You say that, that I cannot longer say

9     that.

10         **THE COURT:**  Okay.

11         **MR. WOODWARD:**  Okay.  Is that fair?  So, I'm

12     enjoined from ever saying that statement.

13         **THE COURT:**  Okay.  Are you acknowledging that the

14     website did say it?

15         **MR. WOODWARD:**  Please, sir, can I --

16         **THE COURT:**  No, I want you to answer the question.

17     That's the question before you.

18         **MR. WOODWARD:**  The attorney here told you on page

19     18, on April 19th, on line 17, the very last page, of

20     course, is a verified, signed under oath, by the

21     President of the University, indicated that the

22     allegations contained here, in this complaint are, in

23     fact, true.  He has reviewed them and the like.

24         **THE COURT:**  That doesn't answer my question to

25     you.

**Response By Mr. Woodward**
**Wednesday/January 18, 2012**                    30

1      **MR. WOODWARD:**  Sir, one second.  One second.  This

2      is your comment concerning the sexual harassment of a

3      student.  Page 19, line 19, this is your statement,

4      "That's the spin you put on it--", you're saying this

5      to him, "--but the statement itself is actually true,

6      AUA students are sexually assaulted, have they?"

7          Mr. Buikema replies, "An AUA student was sexually

8      assaulted."  Under oath, Neil Simon has made a false

9      statement.

10         **THE COURT:**  So, what does that have to do with the

11     question I'm asking you?

12         **MR. WOODWARD:**  Sir, you've told me now that I

13     cannot ever say again that this person committed

14     perjury.

15         **THE COURT:**  Time out.  You say, "Ever say again",

16     are you acknowledging that you said it?

17         **MR. WOODWARD:**  That's what you're saying.

18         **THE COURT:**  Yeah, but are you acknowledging that

19     you said it?

20         **MR. WOODWARD:**  I don't think I put, "AUA committed

21     perjury", on my website.

22         **THE COURT:**  Then why are you discussing it now?

23         **MR. WOODWARD:**  Because you're telling me that I

24     can never say AUA committed perjury and I've just given

25     you evidence that they do commit perjury.

**Response By Mr. Woodward**
**Wednesday/January 18, 2012**                    31

---

1           **THE COURT:**  Than didn't convince me at all.  The

2       fact of the matter is you were told you can't say it.

3       And personally you're now acknowledging --

4           **MR. WOODWARD:**  I didn't say that on my website.

5       If you please find, "AUA commits perjury", on my

6       website --

7           **THE COURT:**  Why should I have to find it?  Don't

8       you know what you put on your website?

9           **MR. WOODWARD:**  I've looked for it and I gave you

10      documentation saying I cannot find that statement, "AUA

11      committed perjury", on my website.  There are objective

12      and subjective comments.  And this comment here that

13      says, "This site contains evidence about AUA", that's

14      pretty subjective.  Please, find me the statement that

15      says, "AUA committed perjury", I can't find that

16      statement.

17          **THE COURT:**  We'll get to that one and I'll ask the

18      Plaintiff's attorney to point it out, okay.

19          **MR. WOODWARD:**  Okay, please --

20          **THE COURT:**  Just hold on, let's go through the

21      other one.

22          **MR. WOODWARD:**  I would rather -- can we do one at

23      a time?

24          **THE COURT:**  No, we're going to do it my way.  If

25      you're going to deny that you said any of these things,

---

*10-10978; American University of Antigua v. Steven Woodward*

1     that's one thing, but remember, you're under oath.

2         **MR. WOODWARD:**  Okay.  Next one, "AUA colluded with

3     St. Joseph Mercy Oakland to maliciously end Woodward's

4     career", okay.

5         **THE COURT:**  Okay.  Was that statement on the

6     website?

7         **MR. WOODWARD:**  That statement, in quotes, is not

8     on the website.

9         **THE COURT:**  In essence, did you allege that, that

10    they colluded?

11        **MR. WOODWARD:**  Well, that's totally different

12    because you, in your own opinion, have given evidence,

13    under your own opinion, that they committed perjury.

14        **THE COURT:**  We're not on that, we'll get to that

15    at a different point.  I understand you want to

16    criticize them and you have a right to, but not right

17    now.

18        I want to know whether you made this statement

19    that, "AUA colluded with St. Joseph to maliciously end

20    Woodward's career", does the website say that?

21        **MR. WOODWARD:**  I cannot answer that question.

22        **THE COURT:**  Why?

23        **MR. WOODWARD:**  Because it's your opinion, sir,

24    it's not my opinion.

25        **THE COURT:**  No, I'm asking you if you said it.

 1          **MR. WOODWARD:**  It's your opinion, it's not my

 2     opinion.

 3          **THE COURT:**  I'm not giving you an opinion, I'm

 4     asking you if you said it.

 5          **MR. WOODWARD:**  That statement, in parentheses,

 6     does not exist.

 7          **THE COURT:**  Did you allege in that website that

 8     they colluded with St. Joseph to maliciously end your

 9     career?

10          **MR. WOODWARD:**  That's a different statement.

11          **THE COURT:**  I'm asking you, did you?

12          **MR. WOODWARD:**  Did I say that they worked

13     together?  I'm asking -- I don't know what the entire

14     statement says and I asked you to verify that.  I asked

15     you, in your documents, to verify that.

16          **THE COURT:**  I'm not verifying anything.  You tell

17     me whether or not --

18          **MR. WOODWARD:**  Please, let them give their --

19          **THE COURT:**  I don't understand why --

20          **MR. WOODWARD:**  Please, let them give their

21     information and if you rule against it -- let them tell

22     you what they said and if you rule against it then,

23     please, I'll remove it.  I've asked you to do that.  If

24     they give you information that verifies this, I'll

25     remove it and I told you that.

---

*10-10978; American University of Antigua v. Steven Woodward*

1          **THE COURT:** I'm going to go to that but I don't

2     understand why you, who put out that website, refuses

3     to acknowledge whether or not there are statements on

4     the website to the effect that AUA committed --

5     colluded with St. Joseph to maliciously end Woodward's

6     career.

7          **MR. WOODWARD:** Your Honor, please let them produce

8     their evidence, if you agree with it, I'll remove it.

9     If you agree with it, then I'll remove it.

10         **THE COURT:** You didn't follow the rule. I'm

11    running the show. You may want it done in a different

12    manner, but I'm running the show. And the question is

13    very simple, does your website indicate or communicate

14    to the public that AUA colluded with St. Joseph to

15    maliciously end Woodward's career?

16         **MR. WOODWARD:** I can't answer that.

17         **THE COURT:** Why?

18         **MR. WOODWARD:** I did a word search for it and I

19    cannot find that statement. If you're asking me to

20    come up with intention or something that's objective

21    versus subjective, I can't answer that. Please, let

22    them --

23         **THE COURT:** Sir, listen to me, I'm running the

24    show. We're not going to do that. We're going to get

25    to that. But I want you to tell me, under oath,

10-10978; *American University of Antigua v. Steven Woodward*

1      whether or not, for example, the website says, in

2      effect, that AUA breaches contracts, did you say that?

3          **MR. WOODWARD:**  I don't know.

4          **THE COURT:**  You don't know?

5          **MR. WOODWARD:**  I don't know.

6          **THE COURT:**  Why don't you know?

7          **MR. WOODWARD:**  It could -- I don't know.  I don't

8      know.  I looked for those statements that you told me

9      to look for, I did not find them.

10         **THE COURT:**  So, you looked at the website to see

11     whether or not there's anything on there about AUA --

12         **MR. WOODWARD:**  I did the research, here's the

13     text, here's the files.  I searched for all those

14     statements that you told me to look for and I didn't

15     find them.

16         Now, did I go through the hundreds of pages of

17     documentation, the hours of videos to find each one of

18     these statements?  I went and I watched the videos,

19     I've listened to the videos, right, and I tried to

20     watch these videos to find where I said that.  If they

21     produce that information -- and I told you I'll happily

22     remove this.  I did a word search on my site and I

23     could not find these quoted statements that you

24     requested that I remove.

25         Now, if you're saying, okay, "Mr. Woodward, could

**Response By Mr. Woodward**
**Wednesday/January 18, 2012**                        36

1          you have intended to do this?  Could you have intended

2          to do that?"  How many blocks of this data do you want

3          me to remove?

4              I will shut down that website for you, if that's

5          what it takes to just get this done.  If you want me to

6          do that, I'll shut off everything and I'll go to the

7          Appeals Court, if that will solve this whole problem

8          and I'll shut it off and tell the Appeals Court.

9              But how do I go to the FBI and produce

10         documentation that supports these claims?  How do I go

11         to the Courts and say these claims are actually true?

12         You've prevented me to even determine if these claims

13         are true.

14             **THE COURT:**  Well, as I recall, there were request

15         for admissions submitted to you in which one, for

16         example, asked you to admit that the statement that AUA

17         breaches contracts was made and it's not true and you

18         didn't answer that.

19             **MR. WOODWARD:**  Hold on, now you're saying I did

20         not answer that question?

21             **THE COURT:**  Right.

22             **MR. WOODWARD:**  I did answer their questions and I

23         gave them their answers on December 22nd.

24             **THE COURT:**  Which is much later than were

25         required?

*10-10978; American University of Antigua v. Steven Woodward*

1          **MR. WOODWARD:**  I had a motion, which according to

2      Rule 36, my understanding of Rule 36 and according to

3      the United States District Court Western District of

4      Washington, a motion for protective order is allowed to

5      be used as an -- on motion.

6          **THE COURT:**  You're rehashing issues that had been

7      decided, right or wrong, they've been decided.  So, I

8      issued an order.  A lot of things that they wanted me

9      to enjoin you, I didn't, okay, I didn't enjoin

10     everything they asked; is that correct?

11         **MR. WOODWARD:**  You've let them get away with

12     perjury by filing a default wrongfully.

13         **THE COURT:**  Is it true that they requested you be

14     enjoined from a lot of things --

15         **MR. WOODWARD:**  I have no idea.  I think I deserved

16     those enjoinments and the merit of my case proves it.

17          And the fact that the first three counts that

18     they're accusing me of aren't even meritable by law.

19     And the guy who made that sign, under oath, Neil Simon,

20     an officer of the Court, said that I'm guilty of these

21     things.

22         **THE COURT:**  Sir, you're not dealing with the

23     issue.  Did you know -- were you served with a request

24     for an injunction?

25         **MR. WOODWARD:**  Okay.  Now, you're going back to

1    the request for injunction.  Okay.  You told me --

2        **THE COURT:**  Were you served?

3        **MR. WOODWARD:**  This right here, I received this

4    documentation.

5        **THE COURT:**  Motion for injunction?

6        **MR. WOODWARD:**  I did.

7        **THE COURT:**  Did it ask what things they wanted you

8    to be enjoined from?

9        **MR. WOODWARD:**  There are seven things I'm enjoined

10   from --

11       **THE COURT:**  No, I didn't ask you what were you

12   enjoined from.  I asked you in their motion did they

13   request that you be enjoined from certain things?

14       **MR. WOODWARD:**  I don't understand your question.

15       **THE COURT:**  Didn't they want you to be enjoined

16   from doing a lot more than I actually enjoined you from

17   doing?

18       **MR. WOODWARD:**  Correct, like counts one through

19   three, which I'm innocent of.

20       **THE COURT:**  We're not on counts.  Didn't they

21   itemized the number of things they wanted you --

22       **MR. WOODWARD:**  You mean the statements, the

23   statements they wanted me to be enjoined from?

24       **THE COURT:**  Yes, right.

25       **MR. WOODWARD:**  And you ruled that those statements

**Response By Mr. Woodward**
**Wednesday/January 18, 2012**                                    39

---

1       did not either -- were subjective and were not part of

2       this or that the statements were actually true.

3              **THE COURT:**  So, I refused to enjoined you from

4       some of those things that they wanted, right?

5              **MR. WOODWARD:**  Well, I mean, that's kind of a

6       violation of my due process if you're letting them get

7       away with perjury and you're telling me I cannot say

8       that AUA committed perjury.

9              **THE COURT:**  What's that got to do with my

10      question?  Didn't they request a number of things and

11      you just said that I ruled I wouldn't enjoin you from

12      doing certain things, right?

13             **MR. WOODWARD:**  Okay.  Were they merited by law?

14      Yeah, probably.

15             **THE COURT:**  I don't know that they agreed with my

16      ruling, okay, but too bad.  I mean, that's my ruling.

17      Like it or not, they can go to the Sixth Circuit on it.

18             But my point is, out of all of the number of

19      things they wanted you to be enjoined from doing --

20             **MR. WOODWARD:**  Twenty-one.

21             **THE COURT:**  Okay.  Fair enough.

22             **MR. WOODWARD:**  And I --

23             **THE COURT:**  And I only enjoined you from doing --

24             **MR. WOODWARD:**  Seven.

25             **THE COURT:**  Seven.  Okay.  So --

---

*10-10978; American University of Antigua v. Steven Woodward*

**Response By Mr. Woodward**
**Wednesday/January 18, 2012**                    40

1          **MR. WOODWARD:**  It's interesting that these seven

2     things, "AUA falsifies find grades, AUA breaches

3     contracts, AUA commits perjury", your own -- AUA

4     commits perjury, are things that you support.

5          **THE COURT:**  You're going back to the issue again.

6     I don't agree with you.  I've made my ruling.  I've

7     heard you out --

8          **MR. WOODWARD:**  Right, and my understanding is I

9     could not type these six sentences.  Now, if you say,

10    "Mr. Woodward, you cannot type these six sentences and

11    all the entire paragraph and the video that goes along

12    with it and everything that goes along with that and

13    every sentence in every video that goes along with

14    that", then please tell me and I'll remove it and I

15    sent you a docket saying that I will do that.  I said I

16    would cooperate with you if you tell me that, right?

17         You said I cannot say these seven things.  I told

18    you I cannot find these seven things, okay.  If you

19    say, "Oh, but this infers to this, this infers to this

20    statement", then I can't make that judgment because I'm

21    subjective.  I believe that this is true.  But you've

22    prevented me from proving that it's true.

23         And --

24         **THE COURT:**  I haven't -- we're not on --

25         **MR. WOODWARD:**  And now you're saying I can't say

*10-10978; American University of Antigua v. Steven Woodward*

1      these.  If you just come up and say, "Mr. Woodward,

2      just shut down your whole website", I'll shut it down.

3          **THE COURT:**  Maybe that's the best way to deal with

4      this.

5          **MR. WOODWARD:**  And I will.  If you want me to do

6      that, I'll do that, sir.

7          **THE COURT:**  If the that's the only way you can

8      comply with my order --

9          **MR. WOODWARD:**  That's the only way I can comply

10     with your order because they'll come back and say, "Oh,

11     but this particular statement right here infers that

12     Mr. Woodward is saying 'I'm committing perjury' because

13     of this thing."  I cannot -- that's why I cannot answer

14     your question, sir, because they can always come back

15     and say, "The students are sexually assaulted, oh, it's

16     plural, which is totally wrong".

17         **THE COURT:**  I think you're building something

18     that's not true at all.

19         **MR. WOODWARD:**  I'm not, sir.  I sent you a docket

20     saying, "If you want me to turn this stuff off, please

21     tell me what you want me to turn off."  I cannot find

22     these seven statements.

23         **THE COURT:**  Or statements that relate to them.

24         **MR. WOODWARD:**  That's a different question.  If

25     you want me to shut off my websites, I will shut off my

---

*10-10978; American University of Antigua v. Steven Woodward*

1     websites until I'm through with the Appeals Court.

2          **THE COURT:**  I don't care whether you shut it off

3     or not but if that's the only way that you can comply

4     with my order, I suggest you do it.

5          **MR. WOODWARD:**  Yes, sir.

6          **THE COURT:**  When will it be shut off?

7          **MR. WOODWARD:**  I'll delete everything on them

8     tonight.  They'll be blank, empty vessels.

9          **THE COURT:**  Anything by Plaintiff's counsel?

10    **RESPONSE BY MR. BUIKEMA**

11         **MR. BUIKEMA:**  No, if the website is shut off,

12    we're satisfied.

13         **MR. WOODWARD:**  And I'll shut off all the Youtube

14    videos.  If you find any other videos, I'll shut them

15    off.

16         **MR. BUIKEMA:**  Hold on, it's my turn, Mr. Woodward.

17         He raises an interesting issue which there are

18    derivative products.  There's a secondary website.

19    There are Youtube videos that are published.  So long

20    as we're encompassing the entire universe of the

21    publications Mr. Woodward makes concerning my clients,

22    if those are removed, shut down, I'm satisfied that he

23    would have, in the future, at least, complied with the

24    injunction by so doing.

25         Having said that, there's a period of time for

1    which he has still been in contempt, a lengthy one for

2    which he's offered no excuse or explanation.  That was

3    willful.  It was intentional.  It was flagrant.  I

4    think he needs to be punished for that.

5        **THE COURT:**  Well, I was trying to avoid going into

6    detail on each one of these since he's offered to shut

7    down the website in order to comply with my order,

8    which I would then consider not holding him in contempt

9    if he does that.

10       But I'm wondering if you, counsel, can articulate

11   to him, in writing, that which you want shut down, less

12   than the entire website to comply with the injunction.

13       **MR. BUIKEMA:**  And the answer is I will certainly

14   try to met that request.  I'll certainly try to work

15   with him to do that.

16       Let me observe first, with the Court's patience,

17   that it's not our obligation to insure that he

18   complies.  And observe second, that he is the publisher

19   of all these statements and therefore it is unknown to

20   us the extent, the medium, the means, in entirety, by

21   which he's published these things.

22       I can certainly explain to the Court now and to

23   him what I think or what I have observed or seen but I

24   don't want that to be used as a limitation in terms of

25   enjoining his future conduct as this is the entire

1    universe of things that are objectionable.  He has to

2    comply with the written order, period.  Those

3    categories of items that he is enjoined from doing.

4        I can't articulate and exhaust all the sources,

5    means, methods by which he's done that but I can

6    articulate some.

7        THE COURT:  Well, articulate some now so we get an

8    example.

9        MR. BUIKEMA:  I'd be happy to.  Judge, I provided

10   you at the end of the last hearing some exhibits which

11   begin with the home page for his website and that lists

12   several categories which are specifically on point --

13       THE COURT:  I asked him to put copies on your

14   side.

15       MR. BUIKEMA:  I did.  I provided Mr. Woodward

16   copies of all the things I provided to the Court.  And,

17   you know, again, you pull up the front page --

18       THE COURT:  Let's all be on the same page, looking

19   at the same thing, at the same time.

20       MR. BUIKEMA:  If you pull up Mr. Woodward's home

21   page, this is -- and this will be the top copy or top

22   item that we produced to you in that stack.  You see

23   this site contains evidence about AUA and five bullet

24   point items:  Fraud, falsifying student grades, breach

25   of contract, disregard for student civil rights and

1        conspiring against the students.  This is the first

2        thing you see are these five items specifically

3        enjoined by this Court.

4    **RESPONSE BY MR. WOODWARD**

5             **MR. WOODWARD:**  I'm willing to delete all of this.

6             **MR. BUIKEMA:**  He's willing to delete all of that

7        and he should have as of December 5th.

8             **MR. WOODWARD:**  I'm deleting the whole website.

9             **MR. BUIKEMA:**  Right.

10            **MR. WOODWARD:**  I'm deleting all the Youtube

11       videos, both websites, and I don't know where these

12       videos have gone because of the nature of the internet.

13       If you find something, then please tell me and I'll

14       delete it.  I don't know how deep this goes.  It's the

15       internet, for God's sake.

16            **MR. BUIKEMA:**  If he's deleting everything --

17            **MR. WOODWARD:**  I will delete everything I said

18       about St. Joseph Oakland, I'll delete -- I mean, both

19       websites, to the best of my knowledge, will be deleted

20       tonight.

21   **RESPONSE BY MR. BUIKEMA**

22            **MR. BUIKEMA:**  If he does that, I'm satisfied that

23       there's no continuing violation.

24                     **Disposition By The Court**

25            **THE COURT:**  All right.  Then with that

*10-10978; American University of Antigua v. Steven Woodward*

1      understanding, the Court will adjourn at least the

2      hearing on contempt and if he complies with what he

3      said he's going to do now, I don't know that there's

4      any need on the hearings on contempt.

5           You want to say something more?

6           **MR. WOODWARD:**  No, sir.

7           **THE COURT:**  And you'll have it done by tonight?

8           **MR. WOODWARD:**  Soon as I get home, I'll delete all

9      this stuff.  I won't just change, it's deleted.

10          **THE COURT:**  And you have a way of verifying

11     whether he did it or not?

12          **MR. BUIKEMA:**  Within reason, yes.

13          **THE COURT:**  Then I want you to communicate to the

14     Court, with copies to him, that you're satisfied or he

15     did most of it, Judge, but he failed to do "A", "B",

16     and "C", so he knows what it is that you think he

17     didn't do, and he could deal with that.

18          **MR. BUIKEMA:**  I think that's fair.

19          **THE COURT:**  Okay.  Now, are you satisfied that if

20     he does that, we can pass on the hearing on damages?

21                         **Motion on Damages**

22     **RESPONSE BY MR. BUIKEMA**

23          **MR. BUIKEMA:**  Let me put it this way, Judge, and

24     I'll be perfectly candid with the Court.  Mr. Woodward

25     has exemplified and represented to this Court that he's

*10-10978; American University of Antigua v. Steven Woodward*

1      indigent.  There's no likelihood of us recovering the

2      money if you were to grant us one in that circumstance.

3      So, our biggest goal today, of course, was to ensure

4      compliance with the injunctive portion of your order.

5          My client has been damaged by his conduct.

6      Significantly damaged by his conduct.  It was my

7      intention today to put on, at least, de minimus proofs

8      as to damages and ask you for at least a nominal award.

9          But given what's transpired here today, I'd be,

10     let's say, content to pass on that issue, without

11     waiving it for now if that means the Court's approval.

12                    **Disposition By The Court**

13         **THE COURT:**  Okay.  We'll pass on that issue, I'm

14     not ruling one way or another; but frankly, it's my

15     belief that if he's cooperative and does what we're

16     talking about, that the contempt hearing will go away

17     and the damages claim will go away.  If he doesn't

18     satisfactorily do what he said he'd do, we can deal

19     with that at a later date.

20     **RESPONSE BY MR. BUIKEMA**

21         **MR. BUIKEMA:**  Thank you.  Let me just raise one

22     more wrinkle and I don't mean to cause any wrinkles or

23     ripples.  But Mr. Woodward has indicated an intention

24     to appeal, which is fine, and is, of course, his right.

25         But one thing I do need to consult with my client,

1    before we actually waive a damages claims as oppose to

2    pass on one today, is whether or not such an activity

3    may cause him to have to post a bond to do that.  For

4    obvious reasons, I just want to be clear I'm not

5    waiving.

6         MR. WOODWARD:  Excuse me, can I speak?

7         THE COURT:  Sure.

8    RESPONSE BY MR. WOODWARD

9         MR. WOODWARD:  I'd like to thank Mr. Buikema for

10    his comment.  And I feel that shutting down all of my

11    website and any kind of first amendment right to say

12    whatever I want to say has been -- I'm willing to,

13    right now, give up -- I mean, anything on my website

14    that's true, I'm actually shutting off.  So, I think

15    it's probably a fair deal however it goes.  Because you

16    only told me to enjoined from seven statements out of

17    21 of which the majority of them are actually not

18    actionable.  So, I mean, that seems like a pretty fair

19    deal, I would think.

20         THE COURT:  I think that's a reasonable position.

21    Did you understand what he indicated about --

22         MR. WOODWARD:  I did not, sir.

23         THE COURT:  He's seeking damages for what he

24    believes they've suffered as a result of your violating

25    the injunction.  He's claiming that they suffered

*10-10978; American University of Antigua v. Steven Woodward*

**Response By Mr. Woodward**
**Wednesday/January 18, 2012**

49

1    damages, all right?

2         **MR. WOODWARD:**  Okay.

3         **THE COURT:**  All right.  Now, if I determine that,

4    in fact, you did violate that, then --

5         **MR. WOODWARD:**  I don't understand, violate what?

6         **THE COURT:**  The injunction.  If you did that and

7    they were damaged by it, they have a right to seek

8    money damages from you.

9         **MR. WOODWARD:**  Are you saying if I don't shut it

10   down tonight?  I don't understand.  I guess I don't

11   understand.

12        **THE COURT:**  Go slow.  Prior to your agreeing to

13   shut it down, okay, they said in their pleadings,

14   "Judge, he violated these things and we suffered

15   damages."

16        **MR. WOODWARD:**  For the last 20-something days.

17        **THE COURT:**  Whatever.  I said we'll have a hearing

18   on whether or not he violated, number one; and then

19   number two, if I decide he did, then we'll have a

20   hearing on how much damages he should pay.

21        Counsel has just said to me, correct me if I'm

22   wrong, that based on what you've indicated, you're

23   willing to withdraw the website, he's willing to ask

24   this client to waive any claims for damages.

25        And what he said in addition, this is his words,

*10-10978; American University of Antigua v. Steven Woodward*

1      not mine, that he may want to find out whether or not

2      you're going to appeal this decision because if you do,

3      he may then want, if he's successful, to seek damages;

4      if you don't appeal, I think he's saying he won't seek

5      damages, is that what you're saying?

6          **MR. BUIKEMA:**  I don't have the authority to make

7      that deal on behalf of my client, but that's certainly

8      what I think they will do, yes.

9          **THE COURT:**  You have a right to appeal and he has

10     a right to seek damages.  You both have a right to give

11     up those rights.  Now, do you fully understand what's

12     going on today?

13         **MR. WOODWARD:**  I believe so.  I'll re-read it when

14     I get it in the docket.  But again, he hasn't even

15     received information from his client.  He hasn't

16     received permission from this client yet, I mean, we

17     have to find out then.

18         **THE COURT:**  Well, let's put it this way,

19     regardless of what his client says if, in fact, you do

20     what you said you'll do and you don't further burden

21     this plaintiff with litigation, appellate or otherwise,

22     I am not going to look favorable on him pursuing

23     damages.  That's as much as I can tell you.  I can't

24     tell you you shouldn't appeal, that's up to you.

25         **MR. WOODWARD:**  I understand the situation we're in

**Response By Mr. Woodward**
**Wednesday/January 18, 2012**                              51

1      now.

2             **THE COURT:**  But it seems to me that if that's the

3      way things lie, that may be the best resolution to this

4      case.  Saves you from further contempt proceedings,

5      saves you from further possible monetary damages, gives

6      them what they want, okay?

7             **MR. BUIKEMA:**  Yes Judge.  Thank you.

8             **MR. WOODWARD:**  Sir, am I released from contempt?

9             **THE COURT:**  You are.

10          (Whereupon proceedings concluded at 2:46 p.m.)

11                          -    -    -

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*10-10978; American University of Antigua v. Steven Woodward*

1

2

3

4

5

6

7                                -   -   -

8                    C E R T I F I C A T I O N

9            I, Nefertiti A. Matthews, official court reporter

10     for the United States District Court, Eastern District of

11     Michigan, Southern Division, appointed pursuant to the

12     provisions of Title 28, United States Code, Section 753,

13     do hereby certify that the foregoing is a correct

14     transcript of the proceedings in the above-entitled cause

15     on the date hereinbefore set forth.

16            I do further certify that the foregoing

17     transcript has been prepared by me or under my direction.

18

19     Date: January 23, 2011

20

21     s:/Nefertiti A. Matthews
        Nefertiti A. Matthews,
22     Official Court Reporter

23                                -   -   -

24

25