1                    **UNITED STATES DISTRICT COURT**
                     **EASTERN DISTRICT OF MICHIGAN**
2                          **SOUTHERN DIVISION**

3

4     **AMERICAN UNIVERSITY OF**
      **ANTIGUA,**
5
                     Plaintiff,
6                                          **HONORABLE PATRICK J. DUGGAN**
          v.
7                                          **No. 10-10978**
      **STEVEN WOODWARD,**
8
                     Defendant.
9     _____/

10

11                 **MOTION FOR PARTIAL SUMMARY JUDGMENT**

12         **Detroit, Michigan --  Tuesday, September 20, 2011**

13
      **APPEARANCES:**
14
      Eric A. Buikema, Esq.
15    Paul M. Kittinger, Esq.          Steven L. Woodward
      Cardelli, Lanfear & Buikema,    In Pro Per
16    322 West Lincoln                c/o 7211 Brittwood Lane
      Royal Oak, Michigan 48067       Flint, Michigan 48507
17    Tel: (248) 544-1100             steve_l_woodward@yahoo.com
      ebuikema@cardellilaw.com        On behalf of Defendant
18    pkittinger@cardellilaw.com
      On behalf of Plaintiff
19

20                              -   -   -

21
               To Obtain A Certified Transcript, Contact:
22          **Nefertiti A. Matthews, Official Court Reporter**
               **Theodore Levin United States Courthouse**
23           **231 West Lafayette Boulevard, Room 867**
                    **Detroit, Michigan  48226**
24      **www.transcriptorders.com • jodi_matthews@mied.uscourts.gov**

25            Proceedings recorded by mechanical stenography.
             *Transcript produced by computer-aided transcription.*

Motion for Partial Summary Judgment
Tuesday, September 20, 2011

2

1                        I   N   D   E   X

2                           -    -    -

3
HEARING:                                    PAGE:  VOL:

**Motion for Partial Summary Judgment  .............3      1**

Argument By Mr. Buikema  .........................3      1

Response By Mr. Woodward  ......................13      1

Response By Mr. Buikema  .......................48      1

Response By Mr. Woodward  ......................53      1

Response By Mr. Buikema  .......................61      1


Certification of Reporter .......................62

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*10-10978; American University of Antigua v. Steven Woodward*

1              **Detroit, Michigan**

2              **Tuesday, September 20, 2011**

3              **2:43 p.m.**

4                    **-   -   -**

5          **THE CLERK:**  Civil action number 10-10978; American

6      University of Antigua College of Medicine versus Steven

7      Woodward.

8          **THE COURT:**  Identify yourselves, for the record.

9          **MR. BUIKEMA:**  Good afternoon, Your Honor.  Eric

10     Buikema, Cardelli, Lanfear & Buikema, along with my

11     colleague, Paul Kittinger, on behalf of the plaintiff.

12         **MR. WOODWARD:**  Steven Woodward, Your Honor,

13     representing myself.

14         **THE COURT:**  All right.

15         **MR. BUIKEMA:**  It's my motion, Your Honor.  May I

16     proceed?

17         **THE COURT:**  Proceed.

18         **Motion for Partial Summary Judgment**

19   **ARGUMENT BY MR. BUIKEMA**

20         **MR. BUIKEMA:**  Judge, this is our Motion for

21     Partial Summary Judgment.  And let me begin by

22     indicating that the defendant, Steven Woodward,

23     publishes a website which, amongst other things,

24     admittedly accuses my client of routinely and

25     systematically committing fraud, falsifying students'

*10-10978; American University of Antigua v. Steven Woodward*

 1    grades, breaching contracts, disregarding students'

 2    civil rights, conspiring against its students, engaging

 3    in unethical practices, engaging with malicious

 4    intentions toward its students.

 5        That it has academic advisers of a quote, unquote,

 6    "heinous nature".  That its students are sexually

 7    assaulted.  That its professors teach the wrong

 8    information.  That it conspires and defrauds its

 9    students.  That it commits criminal activities

10    reportable to the FBI.  And that it has colluded with

11    St. Joseph Mercy Hospital to maliciously end his

12    career.

13        That its agents and employers engaged in

14    conspiracy.  Abused its power.  AUA committed perjury.

15    That it is immoral and unethical.  That its agents are,

16    quote, unquote, "liars", and that this university is,

17    for lack of a better term, a criminal, conspiratorial,

18    and evil enterprise.  That is the meaning of his

19    website.

20        He claims that all of these representations are

21    true.  In fact, none of them are.  We have submitted by

22    way of verified complaint, as well as affidavit of the

23    founder and president of AUA, an affidavit contesting

24    that these appalling allegations are, in fact, not

25    true.

1    Let me talk about just a procedural aspect of this
2    case which is the request for admissions that were
3    served on Mr. Woodward on November 8th, 2010.

4    As the Court knows, request for admissions are an
5    important tool for discovery and in the investigation
6    of the prosecution of any action.  They're intended to
7    limit those items, which could be considered to be
8    literally in dispute.  And we used them early on in
9    discovery, as is commonly the case, to limit our
10   investigation and make it more efficient as to
11   discovering those items which are legitimately in
12   dispute.

13   Mr. Woodward did not respond to those requests for
14   admissions.  Those requests for admissions, by the
15   rule, are therefore deemed admitted.  He did not
16   respond in 30 days.  In fact, he did respond, at one
17   point, March 24th, 2011, more than four months after
18   they were served and without leave of the Court to file
19   late responses.  That matter is only for two elements
20   of our defamation claim.

21   Even if you were to accept his late filed
22   responses to request for admissions, all of the things,
23   the laundry list of items his website publishes, as if
24   fact about this university, he admits to publishing.
25   Even under the late filed request for admissions, all

10-10978; *American University of Antigua v. Steven Woodward*

```
1        those items are admitted.

2             The history, in this case, in terms of discovery

3        is, let's say, difficult.  Mr. Woodward is not

4        represented by counsel.  I have urged the Court to,

5        nonetheless, hold him to the same standard as if he

6        were because to not do so prejudices my client's right

7        and its ability to prosecute the case and do so

8        efficiently.

9             Mr. Woodward has even declined the invitation and,

10       in fact, appointment of a pro bono counsel.  It's time

11       we start holding him to the rules.  Those rules require

12       service of response to request for admissions within 30

13       days or there is a direct consequence deemed admitted.

14       I'm entitled to rely upon those items that were deemed

15       admitted and did not conduct discovery on those items

16       that were not in dispute as a result.

17            He, rather than respond to the request for

18       admissions timely, filed three motions for protective

19       order trying to obscure different avenues of discovery,

20       including his deposition, all three of which were

21       denied.

22            The Court heard arguments on our Motion to Compel.

23       We brought a Motion to Compel on his responses to

24       interrogatories and responses to request for production

25       which were not provided within the time limits provided
```

1    by the rule and that was heard on December 22nd, 2010,

2    many months again after -- many weeks after they were

3    due and Mr. Woodward appeared, at that time, with this.

4         When he did ultimately file responses to request

5    for admissions, he did not deny request number 38 or --

6    excuse me, lost the last page.  He did not deny request

7    number 38 or 37.  Thirty-seven meaning, and in response

8    to that laundry list of things he's published as if

9    fact about this University's ugly allegations, "If you

10   published all those statements outlined in those

11   proceeding requests, for each, please admit that you

12   knew the statements were false when published."

13        Thirty-eight, "Please, admit that you had no

14   knowledge regarding the truth or falsity of the

15   statement when you published it."  There is,

16   consequently, because those two requests are deemed

17   admitted under the rule, no genuine issue of material

18   fact as to the per se defamatory comments, publications

19   made in his website about my client.

20        And even if, Judge, you were to excuse the late

21   filing of the request for admission responses, he still

22   didn't deny those items.  What he did is offer the

23   following responses to 37, "Object.  Compound

24   statement."

25        **THE COURT:**  What was item number 37?

*10-10978; American University of Antigua v. Steven Woodward*

1      **MR. BUIKEMA:**  Thirty-seven is, "Please, admit that
2   you knew these statements were false when published."
3   These statements referencing items 14 through 25, which
4   is the laundry list of appalling remarks I started
5   with.
6      **THE COURT:**  You said, "Admit that 14--", through
7   what?
8      **MR. BUIKEMA:**  Fourteen through 25, the earlier
9   request that you knew -- you knew they were false when
10   you published them.  "Them", being AUA commits fraud.
11   AUA commits crimes.  AUA's students are sexually
12   assaulted, et cetera, et cetera.
13      **THE COURT:**  Where is number 37?  Your number 37
14   asking to admit earlier statements?
15      **MR. BUIKEMA:**  Yes.  To be clear, request 14
16   through 25, request such things as, for example, number
17   16, "Please, admit that you published statement that
18   AUA breaches contracts."
19      **THE COURT:**  I understand what those are.
20      **MR. BUIKEMA:**  And then the catch-all provision as
21   to, "Were these false when you published them", is
22   request number 37.  The catch-all provision under
23   number 38 is, "Admit that you had no knowledge as to
24   the truth or falsities of these remarks."
25      **THE COURT:**  Still talking about 14 through 25?

*10-10978; American University of Antigua v. Steven Woodward*

1          **MR. BUIKEMA:**  I am.

2          **THE COURT:**  Thirty-seven and 38 deal with that?

3          **MR. BUIKEMA:**  They do.

4          **THE COURT:**  And did you say, when he finally

5     responded, he admitted those two?

6          **MR. BUIKEMA:**  His response to -- he admitted the

7     earlier laundry list of items that he published all of

8     those things.  And his response, four months later,

9     after they're already deemed admitted and without leave

10    to the Court to 37 and 38 is, quote, unquote, "Object.

11    Compound statement."

12         You know the requirements under the rule, Your

13    Honor.  The party responding to request for admissions,

14    even at that late date, even for to excuse that, even

15    for failure to seek leave, even for failure of excuse

16    his ignorance of the law and the rules and everything

17    else, he doesn't respond.  He does not admit or deny,

18    which we're absolutely required to do under Rule 36.

19    The objection is improper.

20         And in the event, the responses deemed admitted

21    and there is no triable issue as to defamation under

22    56.  Nor would there be, even if we were to ignore the

23    entire, quote, unquote, "procedural issue".

24         **THE COURT:**  And what do you say is deemed

25    admitted?  He's already admitted he published them,

Argument By Mr. Buikema
Tuesday/September 20, 2011

10

1    what does 37 then, in your judgment, admit?

2        **MR. BUIKEMA:**  Thirty-seven to 38 are deemed

3    admitted as well by a function of Rule 36.

4        **THE COURT:**  Admitted, what admitted?

5        **MR. BUIKEMA:**  Admitted that all of those

6    statements were false when published and/or were

7    published without knowledge as to their truth or

8    falsity.  It's one or the other.

9        There's two elements under the defamation

10   standard, as you know and let's just take 37.  Let's

11   focus on 37, "These statements were false when

12   published."  That fact is admitted, for purposes of

13   this action.

14       Either under procedural operation of Rule 36 by

15   his inappropriate objection and refusal to answer even

16   later, and if you get pass that, Your Honor, even still

17   there's no triable fact.  There's no credible evidence,

18   in this case, to suggest, for instance, that my client

19   committed perjury that --

20       **THE COURT:**  Hold on.  You said that he admitted

21   that they're false or something else?

22       **MR. BUIKEMA:**  Yes.

23       **THE COURT:**  Or what?

24       **MR. BUIKEMA:**  That -- he admits that they're false

25   under 37.

*10-10978; American University of Antigua v. Steven Woodward*

1          **THE COURT:**  Is that what 37 said?  That's all it

2      said?

3          **MR. BUIKEMA:**  Yes, false, falsely made.

4          **THE COURT:**  What's the wording there for 37?

5          **MR. BUIKEMA:**  I'll read it to you, Your Honor,

6      request to admit number 37 states in its entirety:

7          "If you admitted that you published any of the

8      statements outlined in request 14 through 25 and 28

9      through 36, for each, please admit that you knew the

10     statements were false when published."

11         **THE COURT:**  That's 37?

12         **MR. BUIKEMA:**  That's 37.

13         **THE COURT:**  Okay.  And what's 38?

14         **MR. BUIKEMA:**  Thirty-eight reads, "If you admitted

15     that you published any of the statements outlined in

16     request 14 through 25 and 28 through 36, for each,

17     please admit that you had no knowledge regarding the

18     truth or falsity of the statement when you published

19     it."

20         And again, those are -- the publications are

21     admitted, in any event, those are admitted by

22     application of the rule and even if we get passed all

23     this, Judge, there still is no triable issue.

24         Note that all of these claims, at least the vast

25     bulk of these claims relate to Mr. Woodward's

1    dissatisfaction at the university while he was tendered

2    as a student there and discharged disfavorably from the

3    program.

4        He then brought a lawsuit in State Court having to

5    do with exactly all those claims.  Specifically, let's

6    take an example, that AUA breached some contract with

7    him.  That Circuit Court, Shalina Kuma in Oakland

8    County Circuit Court said, "No, Mr. Woodward, you have

9    no case.  Your allegations are without merit", and

10   dismissed it upon Motion for Summary Judgment.  The

11   Michigan Court of Appeals upheld that dismissal.

12       The law associated with his claims, now published

13   in the website in the form of these complaints is such

14   that AUA did not breach any contract with Mr. Woodward,

15   that is the law.  That is known to this case and it's

16   known to this participant in that litigation that he's

17   still making those claims in his website.  They are

18   false, as a matter of law.

19       There is, for example, what he's referencing in

20   terms of, quote, unquote, "perjury" committed by AUA

21   representatives is, as if fact, is his opinion that

22   they, well, must have lied during that Oakland County

23   Circuit Court case during their depositions and that

24   they committed perjury.  There's no such finding.

25   There's no such evidence.

**Argument By Mr. Buikema**
**Tuesday/September 20, 2011**                    13

1          There's nothing to support that beyond his own,
2    frankly, disturbed conspiracy theories and imaginations
3    to manufacture some reason why he should not be held
4    accountable for his dismissal from the university that
5    somehow it's someone else's fault.
6          It's time for this Court to let Mr. Woodward know
7    that he needs to take responsibility for his own
8    actions and that he needs to move on with his life.
9          **THE COURT:**  Okay.  Response.
10   **RESPONSE BY MR. WOODWARD**
11         **MR. WOODWARD:**  Your Honor, a very basic discovery
12   material for a corporation is to produce --
13         **THE COURT:**  Stop.  Stop.  Did anything counsel
14   just said, is anything he just said incorrect?
15         **MR. WOODWARD:**  Yes, sir.
16         **THE COURT:**  All right.  What is it?
17         **MR. WOODWARD:**  One is I've been trying to do
18   discovery with Mr. Buikema from the very beginning --
19         **THE COURT:**  Stop.  He didn't talk about discovery.
20         **MR. WOODWARD:**  He has.  Your Honor, he's said that
21   I'm failing to provide him admissions.
22         **THE COURT:**  Just now -- well, fine, isn't that
23   true?  You failed to file admissions?
24         **MR. WOODWARD:**  That is not true.  That is
25   absolutely not true.

*10-10978; American University of Antigua v. Steven Woodward*

1          THE COURT:  Did you file it timely?

2          MR. WOODWARD:  I had a motion for protection order

3     and my understanding on motion for protection order,

4     which was not held moot until December 22nd for written

5     and verbal things because they were deleting evidence

6     off of their website pertinent to this case and that

7     was my motion for protective order and that was my

8     motion for dismissal.

9          THE COURT:  Did you file the answers timely?

10         MR. WOODWARD:  I filed his answers per the Rule 36

11    on a motion to the Court for a protective order and on

12    December 22nd I brought that information to him.

13         THE COURT:  What are you saying Rule 36 says that

14    allowed you not to file these timely?

15         MR. WOODWARD:  I motioned --

16         THE COURT:  Motioned to do what?

17         MR. WOODWARD:  Protective order.

18         THE COURT:  For what?

19         MR. WOODWARD:  For written and verbal information

20    for him.

21         THE COURT:  What's that have to do with the

22    requirement you respond to request for admissions in a

23    timely fashion?  The rule is explicit.

24         MR. WOODWARD:  The rules on motion for protective

25    --

10-10978; American University of Antigua v. Steven Woodward

**Response By Mr. Woodward**
**Tuesday/September 20, 2011**                          15

1    THE COURT:  That's a different issue.  We're

2  talking about the admissions.  Request for admissions.

3  You have so much time to file it, you didn't do it.

4    MR. WOODWARD:  I had a motion for protective order

5  against that.

6    THE COURT:  What's that got to do with the

7  admissions?  What did the protective order ask for?

8    MR. WOODWARD:  The protective order asked for a

9  written and verbal protection from discovery from Mr.

10  Buikema.

11    THE COURT:  That's not discovery, request for

12  admissions.

13    MR. WOODWARD:  It's under the rule of discovery.

14    THE COURT:  Did it -- did the motion ask

15  specifically for additional time in which to respond to

16  the request for admissions?

17    MR. WOODWARD:  It said written and verbal or --

18    THE COURT:  Let's try it again.  Did the motion --

19    MR. WOODWARD:  It did not specifically say for

20  written admissions.

21    THE COURT:  Then you didn't ask him to extend the

22  time for that.  So, you didn't file them timely, then

23  they're deemed admitted.

24    MR. WOODWARD:  Under my understanding of a

25  protective order, I did.

*10-10978; American University of Antigua v. Steven Woodward*

1          **THE COURT:**  Protective order is protective order

2     for what and I just asked you did the protective order

3     ask directly --

4          **MR. WOODWARD:**  Not specifically for admissions.

5          **THE COURT:**  Counsel -- sir, then you didn't ask to

6     even request additional time to respond.

7          **MR. WOODWARD:**  I asked for a protective order

8     against discovery from this man totally.

9          **THE COURT:**  I'm not talking about discovery at

10    all.  I'm talking about a specific rule, you knew that

11    you had to respond, you didn't ask for additional time

12    to respond.  You filed motions all over the place.  You

13    never asked for additional time, giving a reason why

14    you would need time to respond, you just didn't

15    respond.

16         **MR. WOODWARD:**  No, that's not true, sir, I did

17    respond and I --

18         **THE COURT:**  When?

19         **MR. WOODWARD:**  I tried to confer with this client.

20    His motion for compel is totally wrong.

21         **THE COURT:**  I'm not on a motion to compel.

22         **MR. WOODWARD:**  I know, it's on a motion under

23    discovery under a motion of admissions.

24         **THE COURT:**  It's a request for admissions.

25         **MR. WOODWARD:**  Correct, under discovery.

*10-10978; American University of Antigua v. Steven Woodward*

1          **THE COURT:** I'm not saying whether it's under

2      discovery or not, it's a specific rule.

3          **MR. WOODWARD:** Correct, Rule 36.

4          **THE COURT:** That deals with request for admissions

5      and it spells out what you have to do.

6          **MR. WOODWARD:** Correct.

7          **THE COURT:** You have so much time to answer them.

8          **MR. WOODWARD:** Correct.

9          **THE COURT:** Or they'll be deemed admitted.

10         **MR. WOODWARD:** Correct.

11         **THE COURT:** You didn't do it.

12         **MR. WOODWARD:** I tried to tell him that I was

13     going to bring this stuff on the 22nd.  I submitted a

14     motion for protective order against this case.

15         **THE COURT:** Not with respect to the request for

16     admissions.

17         **MR. WOODWARD:** Written and verbal.

18         **THE COURT:** No, you didn't.

19         **MR. WOODWARD:** It's specifically in there --

20         **THE COURT:** Show me the motion for protective

21     order that deals with the request for admissions.

22         **MR. WOODWARD:** It doesn't specifically say --

23         **THE COURT:** Well, then I don't need to see it

24     because you didn't ask for additional time.  You just

25     plain didn't respond and you read the rule.  You knew

_10-10978; American University of Antigua v. Steven Woodward_

1    that you had to do it within so many days, you didn't

2    do it.

3         **MR. WOODWARD:**  That's not how I see it, Your

4    Honor, and that's not true.

5         **THE COURT:**  It may not be how you see it, that's

6    what the rule says, isn't it?

7         **MR. WOODWARD:**  I filed a motion for protection

8    against these guys.

9         **THE COURT:**  Counsel, you can file protection about

10    all different things, that hasn't got anything to do

11    with this.  If you had wanted to be relieved of the

12    obligation to timely file a response, that's what you

13    say, "I need additional time", you explain why, et

14    cetera.  You didn't do that.  You just plain didn't

15    respond and you could have responded.

16         **MR. WOODWARD:**  That is not true.  What he's saying

17    about me not giving him these admissions is totally

18    untrue.

19         **THE COURT:**  You didn't submit them timely, did

20    you?

21         **MR. WOODWARD:**  Sir, I was under --

22         **THE COURT:**  Let me try the question again, you

23    didn't submit them timely, did you?

24         **MR. WOODWARD:**  I had a motion for protective order

25    against them.

10-10978; *American University of Antigua v. Steven Woodward*

1      **THE COURT:**  Let me try again.  You didn't submit

2  --

3      **MR. WOODWARD:**  I did not submit them on

4  December 8th.

5      **THE COURT:**  You didn't submit the responses to

6  request for admissions as required by the rule, did

7  you?

8      **MR. WOODWARD:**  I did not.

9      **THE COURT:**  Boy, it takes a lot.  Okay.

10      **MR. WOODWARD:**  Under my understanding --

11      **THE COURT:**  Counsel, I don't care about your

12  understanding, okay, the rule says what the rule says.

13      **MR. WOODWARD:**  Okay.

14      **THE COURT:**  And you didn't file.

15      **MR. WOODWARD:**  I didn't file it.

16      **THE COURT:**  You could have answered them.

17      **MR. WOODWARD:**  What's that?

18      **THE COURT:**  You could have responded, couldn't

19  you?

20      **MR. WOODWARD:**  At that particularly time I needed

21  some information.

22      **THE COURT:**  Really?

23      **MR. WOODWARD:**  I did.

24      **THE COURT:**  To know whether or not these were

25  true?  You made the statements.

1          **MR. WOODWARD:**  I had them filled out.

2          **THE COURT:**  Had what filled out?

3          **MR. WOODWARD:**  The admissions.

4          **THE COURT:**  "Filled out", what does that mean?

5          **MR. WOODWARD:**  Whatever.  No, I did not file them

6     on December 8th, no.  And I had them on December 22nd

7     of which I told him -- matter of fact, the motion for

8     dismissal and the motion for protective order, you

9     didn't even rule on it until December 16th.

10         **THE COURT:**  Counsel, I'm not on any protective

11    order and motion.

12         **MR. WOODWARD:**  These were all motions to protect

13    me against discovery against him.  And did it

14    specifically say, "Admissions"?  Your Honor, no, it did

15    not specifically say, "Admissions".  It said, "Written

16    and verbal discovery", from me.

17         **THE COURT:**  Why shouldn't you have responded to

18    the request for admissions?

19         **MR. WOODWARD:**  I thought my protective order would

20    have.

21         **THE COURT:**  Why should you get a protective order

22    from it?

23         **MR. WOODWARD:**  Because he was deleting things off

24    of his website and evidence.

25         **THE COURT:**  What does that have to do with --

*10-10978; American University of Antigua v. Steven Woodward*

**Response By Mr. Woodward**
**Tuesday/September 20, 2011**                     21

1          **MR. WOODWARD:**  If you want to know why I filed

2     that order, that's why I filed that order.

3          **THE COURT:**  What order?

4          **MR. WOODWARD:**  Or motion, that's why I filed those

5     motions.

6          **THE COURT:**  Why couldn't you answer the request

7     for admissions?  You could have.

8          **MR. WOODWARD:**  You know, and I did.  I just filed

9     them on December 22nd.  I brought them with me like I

10    said I would try to bring everything else with me.

11         I think this is extremely bias.  You're attacking

12    me for admissions and this man admits to not even

13    giving me my student records.

14         **THE COURT:**  We'll talk about that.  Don't compare

15    apples and oranges.  I didn't say we won't deal with

16    these other things, but one doesn't deal with the

17    other.

18         **MR. WOODWARD:**  Okay.  Under my understanding, I

19    was under the impression that it did and I thought a

20    motion for protective order would protect me.

21         **THE COURT:**  It might, provided the protective

22    order ask for some specific things.

23         **MR. WOODWARD:**  Written and verbal --

24         **THE COURT:**  That's too vague.

25         **MR. WOODWARD:**  I'm sorry, that's what I wrote.

*10-10978; American University of Antigua v. Steven Woodward*

Response By Mr. Woodward
Tuesday/September 20, 2011                              22

1          THE COURT:  That's too vague.  That's fine.

2          MR. WOODWARD:  Okay.  If that's the case, that's

3      what I wrote, then that's my pleading on that, Your

4      Honor.

5          THE COURT:  Okay.  So, you've admitted all these

6      things?

7          MR. WOODWARD:  I did not file it on December 8th,

8      no, I did not.

9          THE COURT:  When did you file it?

10         MR. WOODWARD:  I brought it with me on

11     December 22nd.

12         THE COURT:  What do you mean you brought it with

13     you, did you ever submit it?

14         MR. WOODWARD:  Your Honor, yes, I brought it on

15     December 22nd.  I told Judge Hluchaniuk that I was

16     going to give it to him.  It was there present and he

17     just refused to ever take it.

18         THE COURT:  Did you ever file it?

19         MR. WOODWARD:  File admissions?

20         THE COURT:  Sure.

21         MR. WOODWARD:  Turn it into the County Court?

22         THE COURT:  Yes.

23         MR. WOODWARD:  No, I brought it with me to court,

24     I said, "Here it is, sir, take it."

25         THE COURT:  Why didn't you file it?

*10-10978; American University of Antigua v. Steven Woodward*

**Response By Mr. Woodward**
**Tuesday/September 20, 2011**                    23

1          **MR. WOODWARD:**  Discovery material, can you submit

2     discovery material?  They wouldn't take my, what was it

3     that I filed that they wouldn't take?  They wouldn't

4     take my discovery material.

5          **THE COURT:**  Some material you can't because it's

6     so voluminous.  In any event, the request for

7     admissions were never submitted.  You had them with you

8     and you wanted to submit it and that was on what date?

9          **MR. WOODWARD:**  Had it with me?  I told Judge

10    Hluchaniuk that I had them with me, he agreed he would

11    take them and he walked out of the courtroom.  I have

12    his deposition or the transcript that show it.

13         **THE COURT:**  Okay.  So, you had them on the 22nd?

14         **MR. WOODWARD:**  I had them on the 22nd.

15         **THE COURT:**  You offered them to him?

16         **MR. WOODWARD:**  I offered it to him.

17         **THE COURT:**  He wouldn't take it?

18         **MR. WOODWARD:**  He agreed he would take them and he

19    walked out.  And last, on August 11th, he told you he

20    refused to take it because he said all this stuff is

21    voluminous.

22         Sir, these are his requests.  Sir, these are his

23    requests, if I may give you these?  These are his

24    requests, "Please, produce any and all documentation

25    and evidence you intend to rely upon in trial and

*10-10978; American University of Antigua v. Steven Woodward*

1      establish the following claims."  "Please, produce any

2      and all exhibits, tangential things and any addendum,

3      amendments to Rule 26."  These are -- he's asking for

4      all of my documentation.

5           That 2,600 pages, sir, this is exactly the copy of

6      2,600 pages as you can get.  This is an exact copy of

7      it.  Why is this an exact copy of it?  Because of my

8      ignorance of the law.  I tried to turn this in to the

9      Court -- these are my receipts -- I tried to turn this

10     in to the Court and so I made a duplicate copy that

11     cost me $246, it included collating and hand-stapling.

12          And it says right here exactly how many copies,

13     there are 2,605 copies.  It's 2,605 copies of which he

14     requested, are collated, hand-stapled, exact duplicates

15     of what I gave him.

16          This documentation here, sir --

17          **THE COURT:**  What does this have to do with what

18     we're talking about?

19          **MR. WOODWARD:**  Well, I'm going to tell you, sir.

20          **THE COURT:**  Well, do it.  You're going to be done

21     in just a few minutes because --

22          **MR. WOODWARD:**  Okay, sir.  This information here

23     is information I had to have notarized because it's

24     information that they couldn't take and modify --

25          **THE COURT:**  What does this got to do with what

**Response By Mr. Woodward**
**Tuesday/September 20, 2011**                    25

1      we're dealing with here?

2          **MR. WOODWARD:**  He's saying that I did not try to

3      give him discovery.

4          **THE COURT:**  No, right now he's saying you didn't

5      file your request for response on time.

6          **MR. WOODWARD:**  I didn't file it, I brought it on

7      December 22nd like I tried to tell him I was going to

8      bring it every time.  On 12-16, after you filed a

9      motion against --

10          **THE COURT:**  I didn't file any motion.

11          **MR. WOODWARD:**  Your order, your order for

12      dismissal, which is on the 16th, I told him in an

13      email, which I have right here, that I would bring that

14      information to him.  This is on the 16th, the day that

15      you ordered the dismissal removed.

16          I said, "Mr. Buikema, depending on the decision

17      and order by Honorable Judge Michael Hluchaniuk--",

18      there's my words, right there and it was copied to

19      Ms. Orem, "--depending on the decision and order by the

20      Honorable Judge Michael Hluchaniuk, please schedule a

21      time after the December 22nd hearing to sign for,

22      verify receipt and receive approximately 2,500 pages of

23      my exhibits and Rule 26 discovery, my answers to your

24      interrogatories, request for admissions and request for

25      production.  You will receive -- what you will receive

*10-10978; American University of Antigua v. Steven Woodward*

1    depends on the order and decision of the Court."

2        THE COURT:  Did Judge Hluchaniuk rule on your

3    motion?

4        MR. WOODWARD:  We agreed that it was moot because

5    -- we agreed that it was moot.

6        THE COURT:  Who is, "We"?

7        MR. WOODWARD:  Judge Hluchaniuk --

8        THE COURT:  Time out.  "We agreed", who is we?

9        MR. WOODWARD:  I can give you the exact --

10       THE COURT:  Counsel, answer the question, who is

11   "We"?

12       MR. WOODWARD:  I think the exact quote is, "I

13   guess this is moot now", according to the motion for

14   protective order.

15       THE COURT:  You said that to whom?

16       MR. WOODWARD:  Judge Hluchaniuk.

17       THE COURT:  Okay.  And then --

18       MR. WOODWARD:  On December 22nd.

19       THE COURT:  So, then you said, "I'm going to

20   produce all this stuff he wants"?

21       MR. WOODWARD:  I've already produced it.

22       THE COURT:  Listen to my question.  Did you then

23   say to Judge Hluchaniuk --

24       MR. WOODWARD:  Yes.

25       THE COURT:  Listen, did you say to him, "I'm going

1    to produce all that's been requested"?

2         MR. WOODWARD:  Not in those exact words; but yes.

3         THE COURT:  Well, what kind of words did you use?

4         MR. WOODWARD:  I said, "I brought all this

5    information", and Judge Hluchaniuk said -- he

6    encouraged Mr. Buikema to take the information.  I have

7    the exact transcripts of what was said.

8         THE COURT:  Did you indicate that you were

9    prepared to produce all that was requested?

10        MR. WOODWARD:  Yes, sir.

11        THE COURT:  And then how did Judge Hluchaniuk

12   respond to that?

13        MR. WOODWARD:  One moment, sir.  He strongly

14   encouraged Mr. Buikema to take this information and Mr.

15   Buikema said, "I will."  Here it is right here.  Any

16   documents that he requested, all of his answers to his

17   interrogatories, all of his answers for his admissions,

18   all of his documentation is here.  It's there but I

19   didn't address it -- this is Mr. Buikema, "It's there

20   but I did not address it quite intentionally.  It's not

21   before us today."

22        The Court said, "It's not scheduled for today, I'm

23   just noting the existence of it and Mr. Woodward is

24   saying he intends to comply with that today.  Whether

25   that actually comes to pass, is another issue, which we

**Response By Mr. Woodward**
**Tuesday/September 20, 2011**                                          28

1          may address at a later time.  But certainly I would

2          invite Mr. Buikema to look at what Mr. Woodward has

3          brought to court today and accept what he has and then

4          make a determination of whether that satisfies your

5          motion."

6              The next thing Judge Hluchaniuk asks him, it says,

7          "It is certainly not unreasonable that you'll be able

8          to inspect those documents today under the

9          circumstances but if he has documents for you to take

10         with you, I'll certainly encourage you to take those

11         and assess the completeness of the production as soon

12         as you possibly can."

13             Mr. Buikema says, "I will.  Judge, would you like

14         my office to prepare the written order?"

15             I brought them.  He said he would on August 11th.

16         He came right out and said that he refused to take the

17         documentation and it's exactly what he wanted.  That is

18         what he asked for.

19             **THE COURT:**  And I haven't heard today that he is

20         complaining about not getting those other documents.

21         The issue today is the request for admissions.  He

22         isn't complaining today that you didn't comply with

23         this discovery or that discovery or whatever, that's

24         not before me.

25             So, the fact that you provided, it was all

*10-10978; American University of Antigua v. Steven Woodward*

1      available, that's fine but it doesn't have anything to

2      do with the issue today as to whether you submitted

3      responses to request for admissions in a timely

4      fashion.

5          **MR. WOODWARD:**  There was a motion for dismissal.

6      There was a motion for protective orders.

7          **THE COURT:**  So what?  There's all kinds of

8      motions, what's that got to do with anything?

9          **MR. WOODWARD:**  Even my emails to Mr. Buikema

10     indicate that I was going to give him this information.

11     I was trying to confer with him to give him this

12     information on December 22nd.

13         **THE COURT:**  You haven't told me yet why you didn't

14     respond to the request for admissions on time.

15         **MR. WOODWARD:**  Because he was deleting information

16     off of his website.

17         **THE COURT:**  The request for admissions were very

18     precise.  You had the ability to answer them.

19         **MR. WOODWARD:**  And I had a motion for dismissal

20     out there also.

21         **THE COURT:**  You had an ability to answer them and

22     you chose not to.

23         **MR. WOODWARD:**  If that's how you want to see it,

24     that's how you see it.  I see it totally different.

25         **THE COURT:**  That's how I have to deal with it

*10-10978; American University of Antigua v. Steven Woodward*

1    then.

2         **MR. WOODWARD:**  Okay.  If that's how you want to

3    see it, I cannot argue with you on that.  That's not

4    how I see it.  I had motions to a dismissal, I had

5    motions to protective order specifically about verbal

6    and written information against him.  But if that's

7    your ruling, then so be it.

8         **THE COURT:**  We'll deal with the motions

9    separately, if you have those, we'll deal with those.

10   That has nothing to do with your obligations to submit

11   your admissions.

12        **MR. WOODWARD:**  I was under the impression that

13   they didn't need to be submitted --

14        **THE COURT:**  I have no idea where you get these

15   impressions.  Anything else you want to say in

16   opposition to the Motion for Summary Judgment?

17        **MR. WOODWARD:**  Yeah, if this is the case, a Motion

18   for Summary Judgment on admissions, Mr. Buikema hasn't

19   even produced my own student records.

20        **THE COURT:**  Counsel, that doesn't have anything to

21   do with this motion.

22        **MR. WOODWARD:**  It does, Your Honor, because I mean

23   this is about discovery for defamation claim.

24        **THE COURT:**  Right.

25        **MR. WOODWARD:**  Well, I think I should be able to

1        defend myself against these defamation claims.

2            THE COURT:  Well, you had an opportunity to

3        respond to the motion.

4            MR. WOODWARD:  I did the best I could do on that.

5            THE COURT:  Well, what is your defense to the

6        motion?

7            MR. WOODWARD:  I had a motion for dismissal --

8            THE COURT:  What is your defense to their motion?

9            MR. WOODWARD:  For what, the admissions?

10           THE COURT:  No, defamation.

11           MR. WOODWARD:  What I'm saying is true.

12           THE COURT:  What do you mean what you're saying?

13           MR. WOODWARD:  What I say on my website is true.

14       They say, and they're -- in docket one, number 55, they

15       claim that everything in their list is totally lies.

16       He comes right up and he says, "Mr. Woodward says that

17       students are sexually assaulted", and yet on April 19th

18       he admitted that one of their students were sexually

19       assaulted.

20           THE COURT:  Stop.  Time out.  It's one thing, "the

21       students are"; now we have, "a student".

22           MR. WOODWARD:  And it was and I only say, "a

23       student."

24           THE COURT:  No, you said, "Students", didn't you?

25           MR. WOODWARD:  I did not.

**Response By Mr. Woodward**
**Tuesday/September 20, 2011**                    32

1          **THE COURT:**  Never?

2          **MR. WOODWARD:**  Matter of fact, his own discovery

3      information --

4          **THE COURT:**  Are you telling me that your website

5      never said, "Students"?

6          **MR. WOODWARD:**  Not to my knowledge, no.

7          **THE COURT:**  Don't say, "Not to my knowledge."

8          **MR. WOODWARD:**  No, it does not.

9          **THE COURT:**  Okay.  What other defense do you have

10     to the defamation?

11         **MR. WOODWARD:**  What other defense do I have?

12     Well, obviously he's a liar because that right there is

13     a lie.

14         **THE COURT:**  What's a lie?

15         **MR. WOODWARD:**  About students being sexually

16     assaulted.  His claim that --

17         **THE COURT:**  You said, "students", again.

18         **MR. WOODWARD:**  I'm paraphrasing what he said.

19     He's claiming that's what I say.  That is a total lie.

20     That is a total lie.

21         **THE COURT:**  What's a lie, that you didn't say it?

22         **MR. WOODWARD:**  I did not say it, correct.  That's

23     a lie by two officers of the court, Neil Simon and this

24     guy right here.

25         **THE COURT:**  You said, "Students were assaulted"?

*10-10978; American University of Antigua v. Steven Woodward*

1        **MR. WOODWARD:**  I said, "An AUA student was

2    sexually assaulted."

3        **THE COURT:**  Okay.

4        **MR. WOODWARD:**  I mean, I can give you the exact

5    date.

6        **THE COURT:**  No, I said that's fine.

7        **MR. WOODWARD:**  Here it is right here.

8        **THE COURT:**  No, that's fine.  You're going to be

9    running out of time in about five minutes.

10        **MR. WOODWARD:**  Let's go with the Lanham Act.  He's

11    claiming that I violated trademark.  Impossible.  I

12    would have to be in medical school to violate the

13    Lanham Act.  To violate the Lanham Act, I would have to

14    be -- in his own business, I would have to be in his

15    own business.

16        And according to their own Michigan Court laws in

17    the Eastern District would be <u>Taubman Company versus

18    Webfeats</u>.  I mean, I am non-commercial.  My site is

19    totally non-commercial.  It's totally first amendment

20    and that completely is exclusionary from any Lanham

21    Acts.  You agreed to that in your own statements on

22    April 19th; and yet, this guy has been attacking me for

23    a year and a half on this issue.  "It doesn't seem the

24    Lanham Act has any merit at all", that's your quote.

25        And the case study to back it up are right here,

**Response By Mr. Woodward**
**Tuesday/September 20, 2011**

1    the Lanham Act.  I mean, no commercial speech is bound

2    by Lanham Act or trademark law and is guaranteed

3    complete and full and first amendment protection.  And

4    there's two case studies here in Michigan, it's Lucas

5    Nursery & Landscaping versus Grosse and the Taubman

6    Company versus Webfeats.

7        His whole trademark violation, anticybersquatting,

8    that's another lie.  That's a conspiracy to commit a

9    first amendment civil rights against me.  He's trying

10   to refuse me my first amendment freedom of speech.

11   He's trying to take away my website under a lie.  Two

12   officers of the court, him and Neil Simon, that's

13   another lie that they've committed against me.

14       Let's go to FERPA rules, you want another lie?

15   FERPA.  Here's FERPA, I'm a whistleblower.  I admit

16   that I found over 150 students' names and their grades.

17   He admits that there's 150 plus -- he admits that I've

18   shown these grades, that I've disclosed them.

19       Who's the guilty party?  Me, that I contacted the

20   department of education and these students or him who's

21   trying to silence me and say, "Oh, this never worked,

22   Mr. Woodward is a liar"?  Here they are, he's admitted

23   to them that those contained grades.  I'm the

24   whistleblower, he's the robber.  He's the one that

25   disclosed them to me, I wouldn't have them.

10-10978; *American University of Antigua v. Steven Woodward*

1          To back it up, I've asked for him to produce

2     discovery, Rule 34 discovery, everything in here that's

3     marked in blue are requests for my personal student

4     records, he's produced nothing.  Zero.

5          **THE COURT:**  How are your personal records relevant

6     to the issues, in this case?

7          **MR. WOODWARD:**  Oh my God, because I'm claiming

8     that they committed perjury in these courts and they

9     have.  You want to know perjury in these courts?

10         **THE COURT:**  Let me try my question again.  Listen

11    to the question.  How are your grades relevant to the

12    issue in this case?

13         **MR. WOODWARD:**  Because they falsified them.  They

14    changed my grades.

15         **THE COURT:**  What's that got to do with this case?

16         **MR. WOODWARD:**  Because he's saying his defamation

17    claim against me is they do not falsify student's

18    grades and they absolutely do falsify student's grades.

19    They falsify student's grades so they can tell courts

20    like this that they don't do it, that I am this evil

21    person and that is so untrue.  Falsified their

22    defamation claims, AUA falsifies students grades,

23    they're saying that they don't.  They absolutely do.

24         **THE COURT:**  Did they falsify your grades?

25         **MR. WOODWARD:**  Yes.

*10-10978; American University of Antigua v. Steven Woodward*

1          **THE COURT:**  Is that what you're saying?

2          **MR. WOODWARD:**  Yes, and everybody in that whole

3     class.

4          **THE COURT:**  Stop.  Tell me about the falsification

5     of your grades.  How did they do it?  When did they do

6     it?

7          **MR. WOODWARD:**  On December 20th.

8          **THE COURT:**  What year?

9          **MR. WOODWARD:**  This would be 2007.

10         **THE COURT:**  All right.

11         **MR. WOODWARD:**  These are my grades.  These are

12    everybody's grades?

13         **THE COURT:**  Counsel, listen to my question, I only

14    asked you about yours, so don't go into everybody.

15         **MR. WOODWARD:**  Okay.  I earned an 80 percent in

16    that class, they gave me an "F".

17         **THE COURT:**  So, why is that -- is that what you

18    mean by falsifying?

19         **MR. WOODWARD:**  No, they said, "Failed final exam.

20    Didn't take remedial and failed."  That's a total lie.

21         **THE COURT:**  Okay.  Tell me what the true facts

22    are.

23         **MR. WOODWARD:**  Here are those true facts that --

24         **THE COURT:**  Just tell me.

25         **MR. WOODWARD:**  Okay.  I actually got an 88 percent

1    on that test that I redid and I had to redo it because

2    their software application is such a piece of junk, it

3    didn't grade the test.

4        **THE COURT:**  Let's try it again without all the

5    other stuff, answer the question.  What grade did they

6    falsify of yours?

7        **MR. WOODWARD:**  What grade did they falsify?

8        **THE COURT:**  I thought you said they falsify

9    grades.

10        **MR. WOODWARD:**  These are the final grades, I think

11    from an 80 percent to an "F" is pretty much fraud.

12        **THE COURT:**  No, is it false?

13        **MR. WOODWARD:**  It is false.

14        **THE COURT:**  It's in correct, in your judgment, but

15    what's false about it?

16        **MR. WOODWARD:**  Okay.  You want something else

17    false about it?  They guaranteed us a ten percent curb

18    here for this final written exam, they gave us four but

19    they gave this guy five.

20        **THE COURT:**  Let's try the question, the question

21    is, "falsifying grades", that's what you said.  And you

22    said they falsified my grades and I'm asking you

23    specifically, tell me when and how did they falsify

24    your grades?  I'm not asking you whether you got the

25    grade you deserved, I'm asking whether they falsified

*10-10978; American University of Antigua v. Steven Woodward*

1    it or not.

2        **MR. WOODWARD:**  This comment right here is exactly

3    what I'm telling you, "He failed final exam.  Didn't

4    take remedial and failed", is totally a lie.

5        **THE COURT:**  You didn't fail the final exam?

6        **MR. WOODWARD:**  I did not fail that final exam, no,

7    I did not.  I did not fail that final exam, sir.  But

8    they did the same thing to everybody else's grades --

9        **THE COURT:**  I said don't go into everybody else,

10   we've got to focus on you.

11       **MR. WOODWARD:**  Here's another one, you want

12   another one that ties directly to this?  Shelf exams.

13   Shelf exams are to be used for final --

14       **THE COURT:**  Does this got to do with your falsify

15   grade of you?

16       **MR. WOODWARD:**  Yes, it does.

17       **THE COURT:**  Well, tell me about that, don't go

18   into everything in the world.

19       **MR. WOODWARD:**  They claimed that they give these

20   exams as final exams, we pay for these final exams and

21   they didn't give them to us.  We can pass this course

22   if they would give us the tests, but they didn't give

23   them to us.

24       **THE COURT:**  What does that have to do with

25   falsifying your grade?

*10-10978; American University of Antigua v. Steven Woodward*

1       **MR. WOODWARD:** Because I would have an opportunity

2       to go ahead and pass this class if they didn't commit

3       fraud against me.

4           **THE COURT:** Oh, that's a different issue, that's

5       not falsifying a grade. They may have treated you

6       unfairly but that's not falsifying a grade.

7           **MR. WOODWARD:** How do you get from an 80 to an "F"

8       if that's not falsifying a grade?

9           **THE COURT:** That may be an incorrect grade but if

10      you got an "F" and they said you've got an "F".

11          **MR. WOODWARD:** Sir, they used that information

12      right there against me. That was issued to me, that

13      was sent to me via email and by U.S. mail and they used

14      that in court documents, Oakland County Court

15      documents, to influence the Judge: "Barely hanging on

16      to medical school having failed three courses,

17      accumulated the score, GPA, Mr. Woodward received an

18      "F" in the fifth semester." That's information they

19      gave to a Judge after they falsified my grades.

20          **THE COURT:** What happened in the Oakland County

21      case?

22          **MR. WOODWARD:** They totally ruled against me.

23          **THE COURT:** Okay.

24          **MR. WOODWARD:** Plaintiff later notice he received

25      an "F" -- I mean, all these documents that they

*10-10978; American University of Antigua v. Steven Woodward*

1    submitted to Oakland County they -- "Plaintiff washed

2    out", that's the first page that they sent to the

3    Judge, which is a total lie.

4         **THE COURT:**  I'm not going back into that case, I

5    have to accept what that Judge ruled.

6         **MR. WOODWARD:**  It's evidence of perjury.

7         **THE COURT:**  Don't you agree?

8         **MR. WOODWARD:**  Heck no.

9         **THE COURT:**  You don't agree I have to accept --

10        **MR. WOODWARD:**  You can do whatever you want.  Do I

11   think it's fair? No, I don't think it's fair.

12        **THE COURT:**  Time out.  I can't do whatever I want,

13   okay.

14        **MR. WOODWARD:**  In this court you can.

15        **THE COURT:**  No, I can't.  I have to accept the

16   State Court judgments, I have to accept them, that's

17   the rule.  You may not like it, but that's the rule.

18        Anything else you want to say in opposition for

19   Motion for Summary Judgment?

20        **MR. WOODWARD:**  Do you want me to defend every

21   single one of these lies that they've been telling the

22   Court?

23        **THE COURT:**  Not necessarily.  What other defense

24   do you have?  You filed a response, right?

25        **MR. WOODWARD:**  I did file a response.

*10-10978; American University of Antigua v. Steven Woodward*

1        **THE COURT:**  Okay.

2        **MR. WOODWARD:**  "Patient logs" -- well, let's hold

3    off -- here's a really good one, I love this one.  This

4    one gives you what kind of lies this guy produces,

5    okay.  In Michigan Court I'm now considered a sabatore,

6    this is a court order, sabotaging exams over something

7    that's so insignificant it's like a Sunday crossword

8    puzzle.

9        **THE COURT:**  What does this got to do with it?

10   What are we talking about?

11       **MR. WOODWARD:**  This has to do with my defamation

12   claim -- all their defamation claims.

13       **THE COURT:**  Go slow.  Is this one of the claims

14   that they say you stated was false?

15       **MR. WOODWARD:**  This is one of the claims that I

16   state on my website to show what they produced the

17   Court.

18       **THE COURT:**  Are they claiming constant defamation

19   or not?

20       **MR. WOODWARD:**  It would be disregard for civil

21   rights, yes.

22       **THE COURT:**  Why are you going into that particular

23   claim?  Which one of the claims do you claim that

24   supports your claim?

25       **MR. WOODWARD:**  "Routinely commits fraud upon its

1    students", would be disregard for students civil

2    rights --

3         THE COURT:  Hold on.  What number for request for

4    admission would that be?

5         MR. WOODWARD:  These are all of their claims for

6    their depositions, persues unethical or other unethical

7    practices, malicious intentions and heinous nature.

8         For God's sake, medical school is so hard, 300 to

9    400 doctors kill themselves each year; fifty percent of

10   medical students are suffering from burnout in the

11   United States according to their own clinic research;

12   and ten to 11 percent want to commit suicide.  And you

13   think that I don't have -- I'm upset over this?

14        THE COURT:  I'll not concerned about being upset

15   at all.

16        MR. WOODWARD:  Do you think --

17        THE COURT:  I'm not concern whether you like the

18   university or you don't.  I'm not concerned whether

19   you're upset or not.  I'm concerned with the facts and

20   the rules.  And so far we've determined that you've

21   admitted these statements by failing to deny them in a

22   timely fashion.

23        MR. WOODWARD:  So, I admit that I published that

24   stuff on the website, I admit it.  How's that?  I admit

25   that I publish the stuff on the website.  Is it true?

**Response By Mr. Woodward**
**Tuesday/September 20, 2011**                               43

1       Heck yeah, it's true.  I mean, now I'm a sabatore in

2       court because of this lie by Susan.

3           **THE COURT:**  Wait a minute, who said you're a

4       sabatore in court?

5           **MR. WOODWARD:**  He does.  I am now -- I sabotage

6       exams.

7           **THE COURT:**  I didn't hear him say that.

8           **MR. WOODWARD:**  He's the one that prosecuted this

9       case, there's the order against me.

10          **THE COURT:**  What evidence do you have that they

11      breached contracts?

12          **MR. WOODWARD:**  Evidence of breach of contracts?

13          **THE COURT:**  Just give me one example, that's all I

14      want.

15          **MR. WOODWARD:**  One example would be rotations --

16      I'll give you two, rotations and medical fraud.

17      Contracts for medical fraud.

18          **THE COURT:**  Did you address these in your response

19      brief, tell me exactly --

20          **MR. WOODWARD:**  I don't recall, I gave you a brief

21      that thick.

22          **THE COURT:**  That's the bad thing, keep it down to

23      precisely.  What evidence do you have that they

24      committed criminal activities reportable to the FBI?

25          **MR. WOODWARD:**  On Docket 51 filed on November 8th;

*10-10978; American University of Antigua v. Steven Woodward*

1      Docket 56, the 19th; Docket 101; Docket 118; Docket 120

2      and 139.

3             THE COURT:  What is all that?

4             MR. WOODWARD:  Those are dockets that I filed with

5      this court.

6             THE COURT:  Listen to my question.

7             MR. WOODWARD:  All right.  I'm going to show you.

8             THE COURT:  I don't want to hear docket numbers, I

9      want you to tell me, in plain English --

10            MR. WOODWARD:  Sallie Mae has no records that I

11     ever went to American University of Antigua; and yet,

12     the information submitted by their own dean of student

13     services, Mr. Barry, filed two notifications under

14     another school's heading to Sallie Mae and the office

15     says this, "This letter is in response to your inquiry,

16     assistance with an issue you're having with St. Joseph

17     Mercy Oakland Hospital and American University of

18     Antigua.  I have researched your account and have

19     confirmed that you have three Excel grad loans that are

20     serviced by Sallie Mae.  These loans are borrowed to

21     finance your attendance through medical college, not

22     American University of Antigua.  Enclosed, please find

23     copies of your promissory notes."

24            Sallie Mae has no information that I went to

25     American University of Antigua.

**Response By Mr. Woodward**
**Tuesday/September 20, 2011**                     45

 1          THE COURT:  So, what's the criminal activity

 2     that's reportable to the FBI?

 3          MR. WOODWARD:  Well, I believe that's evidence of

 4     wire fraud.  I believe that's evidence of bank fraud.

 5          THE COURT:  Anything else?

 6          MR. WOODWARD:  I have two things right here that

 7     you just asked for rotations, these right here.  St.

 8     Joseph Mercy Oakland contract --

 9          THE COURT:  Stop.  What are you dealing with now?

10     What issue?

11          MR. WOODWARD:  This is -- you asked me for breach

12     of contract.

13          THE COURT:  Okay.

14          MR. WOODWARD:  Okay.  This contract is a

15     third-party beneficiary, states that, "The hospital

16     clerkship program will include rotations and internal

17     medicine, surgery, family medicine, pediatrics,

18     obstetrics, gynecology and electives."  It also says --

19     this contract also says, "The hospital agrees to

20     provide support services including counseling for

21     students", this contract right here.

22          We were never given but two rotations.  We were

23     supposed to get three but because they didn't start

24     their semester late, I missed emergency rotation, so I

25     got two:  One in internal medicine and another one in

*10-10978; American University of Antigua v. Steven Woodward*

1        family practice.  We paid $12,000 about for this

2        semester, that's 12 weeks long, and there's only two

3        doctors that I saw, okay.

4             Now --

5             **THE COURT:**  What contract did they breach?

6             **MR. WOODWARD:**  What contract?  Well, I'm a

7        third-party beneficiary, I believe, to this contract

8        that they have between the hospital and me.

9             Both the syllabus and the course guidelines state

10       the same exact thing.  The syllabus and the court

11       guidelines state out-patient rotations with this

12       semester.  Here's the syllabus, "Start in-depth study

13       in general clinical sciences, including internal

14       medicine, surgery, pediatrics, gynecology, obstetrics,

15       family medicine and pediatrics", we did not get that.

16            Right here, course guidelines, page nine,

17       rotations and hospital wards, emergency department,

18       hospital out-patient facility and preceptors:

19       "Rotation and out-patient either at hospital or

20       preceptor's office, internal medicine, surgery,

21       pediatrics, GYNOB, and psychiatry", we received two,

22       but we paid for six.

23            **THE COURT:**  Okay.  Here's what we're going to do,

24       okay, get a piece of paper and note of what I want you

25       to do, write it down.

1          I want you to submit, in writing, no more than

2     three pages for each of these items.  I want you to

3     submit, in writing, your evidence that they falsified

4     students' grades, that they breached contracts, that

5     they've committed criminal activities reportable to the

6     FBI, and they've committed perjury.  Got that?

7          **MR. WOODWARD:**  Yes, three pages each.  That's 15

8     pages, double spaced?

9          **THE COURT:**  No, how many items did you list?

10         **MR. WOODWARD:**  Or 12.

11         **THE COURT:**  Twelve pages, submit that.  Submit

12    that.  Okay.  That's what I need.  You can go on and on

13    and on but I want you to focus, be precise, okay.  How

14    much time do you need to do that?

15         **MR. WOODWARD:**  Is that 12 pages, plus exhibits or

16    just 12 pages?

17         **THE COURT:**  Just 12 pages.

18         **MR. WOODWARD:**  You don't want the exhibits?

19         **THE COURT:**  No, you can explain, you know.

20         Okay.  How much time do you need to do that?

21         **MR. WOODWARD:**  A week.

22         **THE COURT:**  Okay.  Fair enough.  And submit them

23    to the Court, with a copy to him so he can respond to

24    you.

25         **MR. WOODWARD:**  Correct.

Response By Mr. Woodward
Tuesday/September 20, 2011

48

1      **THE COURT:** Okay. All right. Let me address him

2      for a moment. What is your version, let him have the

3      podium, please, of his statement before Magistrate

4      Judge Hluchaniuk, these documents that you wanted

5      produce were, in his judgment, produced and you refused

6      to take them?

7   **RESPONSE BY MR. BUIKEMA**

8      **MR. BUIKEMA:** There is a record, Your Honor. And

9      if you were to review that record, which would speak

10     for itself, you will find, number one, that I appeared

11     at that hearing without an expectation of any

12     production of any kind because Mr. Woodward had

13     resisted production up until that time and conditioned

14     it upon Judge Hluchaniuk's ruling on that date, which,

15     by the way, was on my Motion to Compel, had nothing to

16     do with his protective orders. All three of those

17     protective orders, all three of those requests were

18     either denied or regarded as moot.

19         I did appear at that hearing. Again, the record

20     would bear out that Mr. Woodward showed up with this or

21     something like it, "this", being multiple banker's

22     boxes, blow-ups, equipment, none of which, in my

23     estimation, were readily ascertainable or reviewable at

24     that time.

25         My recollection is I had an afternoon hearing, it

*10-10978; American University of Antigua v. Steven Woodward*

1    was snowing outside, I was alone.  And I said, on the

2    record, when I first saw those materials and the

3    discussion was first had that, quote, unquote, "I had a

4    logistical issue with that today, Judge."

5         **THE COURT:**  What did that mean to the Judge?

6         **MR. BUIKEMA:**  I think -- I took that to mean, and

7    I intended by saying it, that I can't, myself, carry

8    out all these boxes to my car or sit here and inspect

9    them for the remainder of the day.  It would take me to

10   go through them and decipher whether they're responsive

11   to the request for production --

12        **THE COURT:**  But you had made requests?

13        **MR. BUIKEMA:**  I did.

14        **THE COURT:**  They're going to be produced and they

15   may be voluminous.  So, he's now providing you with

16   them.

17        **MR. BUIKEMA:**  He is.  But as the Court has pointed

18   out, has absolutely nothing to do with the request for

19   admissions issue.

20        **THE COURT:**  I understand that but I'm interested

21   in knowing why you didn't.  I understand maybe on that

22   day you couldn't.

23        **MR. BUIKEMA:**  Yes, exactly, simple logistics.  And

24   then at that hearing -- the subject at that hearing was

25   to schedule Mr. Woodward's deposition at which time or

*10-10978; American University of Antigua v. Steven Woodward*

1      the notice stated a duces tecum request for all of the

2      same materials.

3           So, having the benefit of that planning, I

4      intended to take the documents at his deposition.  It

5      turned out I was sick on the scheduled date of his

6      deposition, it was adjourned to a future date.  When we

7      appeared at that deposition, my colleague, Mr.

8      Kittinger covered it, Mr. Woodward produced an exhibit

9      list and boxes of information.  That exhibit list is in

10     my hand.  It contained 816 enumerated items, none of

11     which is a request for admission responses.

12          It does, however, provide his Certificate of

13     Diploma from the Army Defense Artery School, it

14     provides a picture of his aunt and uncle shark fishing,

15     amongst other things, Judge.  But it doesn't have nor

16     does the boxes that we took from that deposition,

17     request for admission responses which, of course, were

18     due several months beforehand anyway.  And for which

19     there's no viable explanation, certainly no good cause

20     from relief from same and today is the motion for a

21     dispositive hearing.

22          I said at the hearing with Judge Hluchaniuk on

23     December 22nd, and it's on the record, that we did not

24     have an issue with Mr. Woodward's request for admission

25     responses, even though they were overdo today because

*10-10978; American University of Antigua v. Steven Woodward*

1    the rule takes care of that.  There was not an

2    opportunity to file a motion to compel nor a reason to

3    file a motion to compel our request for admission

4    responses, the rule takes care of that.  That gave

5    Mr. Woodward fair notice, that we intended to deem them

6    admitted.

7         As did our subsequent motions and pleadings in

8    this case, including this Motion for Summary

9    Disposition, Judge, which was filed in April stating

10   this as the basis for the relief sought.

11        Not to this date and including this presentation

12   today did he request relief in accordance with Rule 36.

13   Nor did he give basis which would support such relief

14   under Rule 36.

15        **THE COURT:**  Okay.  You heard what I've asked him

16   to do?

17        **MR. WOODWARD:**  I did.

18        **THE COURT:**  He's going to submit those to you and

19   I want a response from you within seven days after you

20   get it as to your disagreement, whatever he says.

21        **MR. BUIKEMA:**  I understand, Your Honor, and I will

22   do that.  May I address his other statements in very

23   brief fashion?

24        **THE COURT:**  What other statements?

25        **MR. BUIKEMA:**  I think to summarize, and I think

1    the Court has seen this, what Mr. Woodward perceives as

2    conspiracies, as perjury, as crimes, and what actually

3    are those things or what legally constitute such things

4    as a breach of contract, are two vastly different

5    things.

6         And when Mr. Woodward uses that vernacular, in his

7    own mind, there's no injury; when Mr. Woodward

8    publishes that on the worldwide web, that's defamation.

9    And it makes no difference that he's ignorant of the

10   law.  It makes no difference that he's ignorant to the

11   proceedings, he's held to the same standard as are we

12   all.  And it makes no difference that he misunderstands

13   the meanings of those terms.

14        Just for example, and only by example, he

15   continually says, "Breach of contract", Judge, that

16   matter is resolved as a matter of law.  That was a

17   claim in a State Court case that was dismissed and

18   upheld on appeal.  He knows that when he publishes it,

19   that publication is still there today.

20        In relationship to the crimes that he claims my

21   client has committed, he offers no evidence.  He offers

22   --

23        **THE COURT:**  He's going to do that, okay.  Wait

24   until you see what he says and then you can respond to

25   it.

*10-10978; American University of Antigua v. Steven Woodward*

**Response By Mr. Buikema**
**Tuesday/September 20, 2011**                    53

1              **MR. BUIKEMA:**  Let me just say one thing, on the
2       sexually assaulted issue, which is particularly
3       insulting.  If you were to take the time to review the
4       videos narrated, produced by Mr. Woodward and published
5       on his website or any links to companion websites such
6       as Youtube, he says such things as, quote, unquote,
7       "AUA's blatant lies, bias, false evidence,
8       intentionally endanger your life or that of your
9       children", that is a quote from one of his videos.
10             That, "AUA commits the crime of reckless
11      endangerment", a direct quote from one of his videos.
12      He is accusing us of risking life and limb and of
13      potentially exposing students or the parents of
14      students, children, to death or sexual assault.
15             He goes on to describe in these videos the manner
16      in which the particular student was raped.  He's
17      discussing graphically, penis in the face, removal of
18      the painty, et cetera, et cetera.  It's appalling and
19      it has got to stop.
20      **RESPONSE BY MR. WOODWARD**
21             **MR. WOODWARD:**  Your Honor, to address those.  I
22      did have every intention to provide you, like I've
23      said, all of his documentation.  I notified him when my
24      motion was dismissed on 12-16, copying here what I was
25      going to bring to court, including admissions,

*10-10978; American University of Antigua v. Steven Woodward*

1    including interrogatories, including every piece of

2    documentation that he requested, it was one box.

3         He had to look at a fiber-optic training device

4    and take a box.  That's all he had to do, pick up a box

5    and leave.  When he came on February 1st, I have video

6    of him taking a box.  And when he left on February 1st,

7    he didn't take his interrogatories either.

8         As far as reckless endangerment, Your Honor, this

9    is my patient log --

10        **THE COURT:**  What about this last statement about

11   the sex, he stated you published detailed descriptions?

12        **MR. WOODWARD:**  Your Honor, that's public

13   information.

14        **THE COURT:**  So what?

15        **MR. WOODWARD:**  What it is --

16        **THE COURT:**  Why do you want to put that out there?

17        **MR. WOODWARD:**  Because it's already out there.

18   It's featured in Antigua News.

19        **THE COURT:**  Why do you want it?

20        **MR. WOODWARD:**  Because it's the Clery Act and

21   Public Law 101542.  They don't state anything on their

22   -- Your Honor, that school has been in business for six

23   years when this student died.

24        **THE COURT:**  What does that have to do with my last

25   question?

*10-10978; American University of Antigua v. Steven Woodward*

1      **MR. WOODWARD:**  Why would I want to put it out

2      there?

3          **THE COURT:**  Why would you want to put graphic

4      detail?

5          **MR. WOODWARD:**  You can read it on the newspaper.

6      That's exactly what's read.

7          **THE COURT:**  I don't think it should be in the

8      newspaper.  Why do you want it out there?

9          **MR. WOODWARD:**  So students know what's going on at

10     Antigua.

11         **THE COURT:**  They need to know the graphics?

12         **MR. WOODWARD:**  You need to know what's going on at

13     Antigua.

14         **THE COURT:**  Why do you think papers put out stuff

15     with graphic detail, why does the Enquire do that?  No

16     good purpose except to sell.

17         **MR. WOODWARD:**  I don't sell anything.

18         **THE COURT:**  I understand.

19         **MR. WOODWARD:**  I sell nothing.

20         **THE COURT:**  I don't know why you think you need to

21     put that out there like that.

22         **MR. WOODWARD:**  This right here, as far as reckless

23     endangerment, I cannot read this to you because this is

24     a HIPAA violation that I have it, but I will give it

25     to you.  And if you read this section of which I gave

**Response By Mr. Woodward**
**Tuesday/September 20, 2011**                                    56

1    them, according to my patient logs, these are my

2    patient logs, they exposed us to pathogen --

3         **MR. BUIKEMA:**  Now, hold on, if he's acknowledging

4    that he's got private and federally protected patient

5    information, I don't want to disclose it in any way,

6    shape, or form on this record.

7         **MR. WOODWARD:**  I never planned on it.  I just have

8    it for the Judge --

9         **THE COURT:**  I don't need it.  You know what I want

10   from you.

11        **MR. WOODWARD:**  I'm just covering his reckless

12   endangerment, that's just part of it.

13        **THE COURT:**  This session has now ended and you'll

14   --

15        **MR. WOODWARD:**  Your Honor, could I take five

16   minutes of time to show a video, which you promised

17   last August 11th, that I could show?

18        **THE COURT:**  What are you going to show that has

19   relevance?  I'm concerned that you're presenting so

20   much stuff that's not relevant, you think it is, but it

21   isn't.  But hold on one minute.  I think I'm going to

22   answer your question, but I've got to take a break

23   before we do it.  Want to set it up?  Five-minute

24   video?

25        **MR. WOODWARD:**  Yes.

*10-10978; American University of Antigua v. Steven Woodward*

1          THE COURT:  You're equipped to do it?

2          MR. WOODWARD:  Yes.

3          THE COURT:  What's going on with your matter?  I'm

4     going to take a ten-minute recess.

5        (A break was taken from 3:50 p.m.to 4:10 p.m.)

6          THE COURT:  All right.  You have a video.  You

7     want to tell me briefly what this video is?

8          MR. WOODWARD:  According to Fox News New York,

9     this is statements by students from the American

10    University of Antigua Nursing School?

11         THE COURT:  A statement by a student?

12         MR. WOODWARD:  This is an interview by a news

13    reporter of nursing students.

14         THE COURT:  One student?

15         MR. WOODWARD:  Three.

16         THE COURT:  Three students, done by a reporter?

17         MR. WOODWARD:  Done by a reporter?

18         MR. BUIKEMA:  I retain an objection, Your Honor,

19    it's not admissible.  It's hearsay under 802 and not

20    admissible under 803, nor is it relevant to the issues

21    in this proceeding.

22         THE COURT:  I'll watch it and obviously if I don't

23    think it's relevant, I'll so rule.

24                        -  -  -

25         (Video played by Mr. Woodward at 4:11 p.m.)

*10-10978; American University of Antigua v. Steven Woodward*

```
 1                        -  -  -

 2          THE COURT:  Now, tell me why a nursing program at

 3     that school, which may have some deficiencies and did

 4     not allow the nurses in New York to take the exam, has

 5     any relevance to your claim against you about

 6     publishing matters that they don't believe you should

 7     publish?

 8          MR. WOODWARD:  Are these students not saying,

 9     "We've been robbed"?  Are they not saying, "We should

10     expose the situation?"  Did it take a news reporter to

11     get it exposed?

12          THE COURT:  What does that have to do with your

13     issue?  What does that have to do with you?

14          MR. WOODWARD:  And is it not printed under 20

15     U.S.C. 10118 that an organization, that a class, that a

16     program should -- that a program should meet its

17     educational goals?

18          THE COURT:  It said that they could take the exam

19     in Florida.

20          MR. WOODWARD:  Not in their home state.  Their

21     head office is in Wall Street, New York and they can't

22     sit for the medical exam in their own state that they

23     practice in.  Should that program have been set up, day

24     one?  Should that program had been taken care of day

25     one?
```

1      **THE COURT:**  I have no idea.  I'd have to have a

2      trial.  I'd have to have witnesses.  I'd have to hear

3      the school's side of the story and even then, it isn't

4      relevant to the claims that are involved in your case.

5      You're going all over the place to show that it's a bad

6      school, that's not the issue.

7          **MR. WOODWARD:**  Your Honor, the very first class

8      that they had at St. Joseph Mercy Hospital that I was

9      at, they didn't give us shelf exams, they changed my

10     grade from an 80 to an "F", they didn't give us the

11     rotations that they promised.  I can show you over 20

12     changes to a schedule.  Some of the changes, the

13     Thursday before you have an exam, we need to know an

14     entire, like, dermatology tomorrow.  Tomorrow?  "Okay,

15     guys, you need to know this information", it wasn't

16     even scheduled.

17         **THE COURT:**  You're obviously a very disgruntle

18     person and you believe that they operate in a deficient

19     manner, maybe they do, maybe they don't, it doesn't

20     have anything to do with the precise issue in this

21     case.  You either published defamatory stuff that you

22     shouldn't have or you didn't.  And if you did, you

23     should be accountable for it; if you didn't, then you

24     should be able to publish it.  That's what the case is

25     about.

1          **MR. WOODWARD:**  Correct.

2          **THE COURT:**  Not about the nursing program.  You're

3      bringing in all these other things.

4          **MR. WOODWARD:**  Does it support my case?

5          **THE COURT:**  Doesn't support your case at all.

6      Either you published defamatory statements or you

7      didn't.

8          **MR. WOODWARD:**  Is that moral and ethical to have a

9      program and somebody go down to Antigua?

10          **THE COURT:**  I have no idea.

11          **MR. WOODWARD:**  That's what they're telling me.

12      That's what they're claiming in their defamation that

13      they don't lie.  These students right here did say that

14      they lied.

15          **THE COURT:**  Each one of the claims, all right,

16      that's what we're talking about, not, you know, a

17      deficient nursing program.

18          **MR. WOODWARD:**  Being cheated?  Your Honor, these

19      guys, under Rule 34, haven't even given me my own

20      student records which are guaranteed by law for

21      discovery, they haven't even given me that and yet I'm

22      being accused for answering admissions.

23          **THE COURT:**  No, for not answering.

24          **MR. WOODWARD:**  In a timely fashion.  And Your

25      Honor, can I show you my admissions versus their

*10-10978; American University of Antigua v. Steven Woodward*

1      admissions?

2            **THE COURT:**  No.

3            **MR. WOODWARD:**  Because that's so bias, they

4      answered the same objection that wasn't covered in

5      anything and 66 percent of the admissions that I asked

6      him, he objected exactly the same way for his

7      admissions.

8      **RESPONSE BY MR. BUIKEMA**

9            **MR. BUIKEMA:**  For completeness of the record, Your

10     Honor, can I ask for the date of the news report and

11     also the date of first publication of Mr. Woodward's

12     website?

13           **THE COURT:**  Of this publication?

14           **MR. BUIKEMA:**  Of this publication.

15           **THE COURT:**  Can you answer his questions?

16           **MR. WOODWARD:**  I don't know what that is or the

17     exact publication of the website either.

18           **MR. BUIKEMA:**  I'll submit, if you were to review

19     the same, this news report is several years after

20     Mr. Woodward makes the claims that he makes on his

21     website.

22           **MR. WOODWARD:**  And they haven't got it processed

23     right yet since.

24           **MR. BUIKEMA:**  It's not about us being good or bad

25     or making mistakes or not making mistakes, that might

*10-10978; American University of Antigua v. Steven Woodward*

**Response By Mr. Buikema**
**Tuesday/September 20, 2011**

62

1    be fair game, in which somebody, including Mr. Woodward

2    chooses to point that out.

3         But when you accuse my client of crimes,

4    conspiracy, fraud, breach of contract, student sexually

5    assaulted, these types of things are well beyond the

6    protection of any law and order.

7         **THE COURT:**  All right.  As I indicated, the Court

8    is in recess and you know what I want from you in

9    response, submit it.

10       (Whereupon proceedings concluded at 4:22 p.m.)

11                    -    -    -

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*10-10978; American University of Antigua v. Steven Woodward*

Response By Mr. Buikema
Tuesday/September 20, 2011

1                          -   -   -

2                C E R T I F I C A T I O N

3          I, Nefertiti A. Matthews, official court reporter

4     for the United States District Court, Eastern District of

5     Michigan, Southern Division, appointed pursuant to the

6     provisions of Title 28, United States Code, Section 753,

7     do hereby certify that the foregoing is a correct

8     transcript of the proceedings in the above-entitled cause

9     on the date hereinbefore set forth.

10         I do further certify that the foregoing

11    transcript has been prepared by me or under my direction.

12

13    Date: February 7, 2012

14

15    s:/Nefertiti A. Matthews
      Nefertiti A. Matthews,
16    Official Court Reporter

17                          -   -   -

18

19

20

21

22

23

24

25

      10-10978; American University of Antigua v. Steven Woodward